**1**



**BCE**
*Bell Canada
Enterprises*

## MEMORANDUM

TO:
Jean C. Monty
Michael J. Sabia
Siim Vanaselja
William D. Anderson
Michael T. Boychuk
Leonard F. Ruggins
Pierre Van Gheluwe
Barry Pickford
François Gauvin
Stephen Skinner
Leo Houle
Charles Pagé
Ida Teoli
Maarika Paul

C.C.:
Martine Turcotte
Martin Cossette
Gérald Tremblay and François Giroux, McCarthy Tétrault
Steven M. Farina and Heidi E. Murdy, Williams & Connolly
Mary K. Warren and Daniel Schimmel, Shearman & Sterling

FROM:        Michel Lalande

DATE:         June 12, 2002

SUBJECT:    Teleglobe Document Retention and Gathering

**PRIVILEDGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT**

In anticipation of any potential lawsuit that could be launched against BCE in connection with the Teleglobe situation, it is required that we preserve any evidence that we currently have that might be related to Teleglobe. Since no lawsuit has been launched, we cannot predict in advance what would be the allegations. Accordingly, we must preserve the evidence in whatever form it may exist, including both paper (including personal notes) and electronic copies (including computer files and e-mail). It is very important that you not throw out or destroy any information that might relate to Teleglobe even if you would ordinarily have disposed of the information. If you are uncertain about whether any particular document or data file may be relevant to a potential lawsuit, please preserve the document and contact Martine Turcotte, Martin Cossette or myself.

Page 1 of 2



**BCE**
*Bell Canada*
*Enterprises*

To that effect, we would require that you locate within your respective groups and organize any relevant files (including e-mails and working files) that might exist and contact Martin Cossette at 391-5213 when ready.  All such files should be assembled in separately identified boxes with the names of the people who had these files.  DO NOT ATTEMPT TO CLEAN ANY FILES.  This process must be completed by the end of June at the latest.  We have only addressed this memorandum to you and we understand that you will be responsible for gathering all relevant files within your respective groups/organizations.

Should you have any question with regard to the foregoing, please call me at 391-8386.

**Page 2 of 2**

CONFIDENTIAL-FOR ATTORNEY'S EYES ONLY

BCE-AD  0029372

**2**



**BCE**
*Bell Canada
Enterprises*

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

| | |
|---|---|
| To: | Richard J. Currie |
| | Anthony S. Fell |
| | Thomas E. Kierans |
| | Brian M. Levitt |
| | Judith Maxwell |
| | John H. McArthur |
| | J. Edward Newall |
| | Robert C. Pozen |
| | Guy Saint-Pierre |
| | Donna Soble Kaufman |
| | Paul M. Tellier |
| | Victor L. Young |
| | Lynton R. Wilson |
| | Ralph M. Barford |
| | Jeannine Guillevin Wood |
| | Micheline Charest |

Michel Lalande
Vice-President - General Counsel

Date:    August 23, 2002

Subject:    Teleglobe Document Collection

---

A lawsuit has been filed in Ontario by a syndicate of banks against BCE Inc. in connection with certain credit facilities contracted by Teleglobe Inc. In order to respond to and defend against the claims and allegations made in this lawsuit, we require your assistance in retrieving all relevant documents.

The lawsuit alleges the following regarding the outstanding unpaid redemption of the above-mentioned credit facilities, amounting to a claim of over US$1,190,000,000.00: (a) BCE Inc. is in breach of contract; or alternatively, (b) BCE Inc. made misrepresentations to the syndicate of banks; or alternatively, (c) BCE Inc. is the "alter ego" of Teleglobe Inc.; or alternatively, (d) BCE Inc. acted in a manner so as to oppress the members of the bank syndicate.

BCE Inc.
Bureau 3700
1000, rue de La Gauchetière Ouest
Montréal (Québec) H3B 4Y7

Telephone: (514) 391-8386
Facsimile: (514) 391-8389
michel.lalande@bell.ca

CONFIDENTIAL-FOR ATTORNEY'S EYES ONLY



- 2 -

BCE Inc. has instructed outside litigation counsel, McCarthy Tétrault LLP, to defend against the allegations made in this lawsuit. To this effect, a questionnaire entitled "BCE/TELEGLOBE Document Questionnaire" has been produced to ensure that all Teleglobe-related documents have been located in order to be collected and reviewed. Given the broad scope of the allegations made by the plaintiffs in this lawsuit, **Teleglobe-related documents are all documents, in whatever form, which discuss or refer to Teleglobe Inc. and its subsidiaries.** We understand that our request will cover many documents in a number of formats and we kindly request that you provide the time necessary to locate and segregate all Teleglobe-related documents. The thorough collection of documents at this stage will allow us to properly prepare for this litigation.

The BCE/TELEGLOBE Document Questionnaire is attached to the present letter and should be returned to Martin Cossette prior to as soon as possible. Please note that the necessary contact information for Mr. Cossette is found on the questionnaire itself.

Although the data collection process used shall be determined in accordance with your specific situation, we envisage that this process will occur in several steps.

First, shortly following your return of the attached questionnaire to Martin Cossette, a representative of McCarthy Tétrault LLP will contact you to arrange an appointment for a brief (approximately 20 minutes) interview with you, and/or your direct reports if appropriate, to ascertain what kinds of Teleglobe-related documents and electronic data you possess.

Next, outside counsel will offer to make the appropriate arrangements to have your hard copy documents collected for copying and the originals shall be returned to you promptly after they have been copied. Arrangements can be made to copy immediately any working files that you cannot spare for more than two days so that you can have the originals back quickly.

During that same time period, outside counsel, with the help of Stéphane Bourbonniere, BCE's Law/Secretariat Systems Analyst, and True Data Partners ("TDP"), a computer consulting company, will contact you to arrange for copying of your electronic data (from your hard drives and other devices). TDP will then collect this electronic data, including email, from the company's servers, back up tapes, individual computer hard drives, and other sources. In general, TDP plans to copy and replace the hard drives of all individuals who were involved on Teleglobe

CONFIDENTIAL-FOR ATTORNEY'S EYES ONLY



**BCE**
*Bell Canada*
*Enterprises*

- 3 -

matters in recent years. We recognize that you may have non-Teleglobe information stored on your hard drives; however, we do not anticipate that any of this non-Teleglobe information will be relevant and have every intention of restricting access to such information. We anticipate that TDP will require approximately one or two hours per machine to obtain the data. To minimize disruption, they will work on a by-scheduled basis based upon a convenient time for you

Please note that should your specific situation warrant a modified method of data collection, do not hesitate to inform us of your concerns and appropriate measures shall be considered and adopted as required.

Because a Statement of Claim has been filed in this matter, we must ensure that our collection of Teleglobe-related documents and electronic data is as broad as possible. When completing the questionnaire and during your interview, **please inform outside counsel about any Teleglobe-related documents or electronic data that you may have, from any time period whatsoever, wherever it may be located, including non-BCE premises.**

We would like to underline the fact that we must preserve any potential evidence in whatever form it may exist, including both paper (including personal notes and agendas) and electronic copies (including computer files and e-mail). It is very important that you do not dispose of any information that might relate to Teleglobe even if you would have usually done so in the ordinary course of business. This includes information that may be located on your personal computers or other electronic devices such as a Personal Digital Assistant.

A representative of McCarthy Tétrault LLP will contact you or your assistant soon to schedule a time when interviews can be conducted with you and/or your staff, if appropriate, and when documents and electronic data can begin to be collected. We would like to begin the process as soon as possible. Should you have any questions, please contact Martine Turcotte at (514) 870-4637, Michel Lalande at (514) 391-8386 or Martin Cossette at (514) 391-5213.

CONFIDENTIAL-FOR ATTORNEY'S EYES ONLY

BCE-AD 0029370

**3**



**BCE**
*Bell Canada Enterprises*

<div align="right">

**PRIVILEGED & CONFIDENTIAL**
**ATTORNEY WORK PRODUCT**

</div>

To:        Distribution List (Schedule A)
From:    Michel Lalande
Date:     September 16, 2002

Subject:  Teleglobe Document Collection
          *****Your immediate attention to this memo is required**

---

Michel Lalande
Vice-President - General Counsel

A lawsuit has been filed in Ontario by a syndicate of banks against BCE Inc. in connection with certain credit facilities contracted by Teleglobe Inc. In order to respond to and defend against the claims and allegations made in this lawsuit, we require your assistance in retrieving all relevant documents.

The lawsuit alleges the following regarding the outstanding unpaid redemption of the above-mentioned credit facilities, amounting to a claim of over US$1,190,000,000.00: (a) BCE Inc. is in breach of contract; or alternatively, (b) BCE Inc. made misrepresentations to the syndicate of banks; or alternatively, (c) BCE Inc. is the "alter ego" of Teleglobe Inc.; or alternatively, (d) BCE Inc. acted in a manner so as to oppress the members of the bank syndicate.

BCE Inc. has instructed outside litigation counsel, McCarthy Tétrault LLP, to defend against the allegations made in this lawsuit. To this effect, a questionnaire entitled "BCE/TELEGLOBE Document Questionnaire" has been produced to ensure that all Teleglobe-related documents have been located in order to be collected and reviewed. Given the broad scope of the allegations made by the plaintiffs in this lawsuit, **Teleglobe-related documents are all documents, in whatever form, which discuss or refer to Teleglobe Inc. and its subsidiaries.** We understand that our request will cover many documents in a number of formats and we kindly request that you provide the time necessary to locate and segregate all Teleglobe-related documents. The thorough collection of documents at this stage will allow us to properly prepare for this litigation.

The BCE/TELEGLOBE Document Questionnaire is attached to the present letter and should be returned to Martin Cossette as soon as possible. Please note that the necessary contact information for Mr. Cossette is found on the questionnaire itself.

BCE Inc.
Bureau 3700
1000, rue de La Gauchetière Ouest
Montréal (Québec) H3B 4Y7

Telephone: (514) 391-8386
Facsimile: (514) 391-8389
michel.lalande@bell.ca

                              BCE-AD  0029373



**BCE**
*Bell Canada*
*Enterprises*

- 2 -

On June 12, 2002, we sent to some of you a memorandum asking you to identify and collect any Teleglobe-related files, in anticipation of this litigation. However, we would ask that those of you who received the memorandum dated June 12, 2002 also complete the attached questionnaire in order to ensure that all Teleglobe-related documents have been located.

This document collection process will occur in several steps. First, shortly following your return of the attached questionnaire to Martin Cossette, a representative of McCarthy Tétrault LLP will contact you to arrange an appointment for a brief (approximately 20 minutes) interview with you, and/or your direct reports if appropriate, to ascertain what kinds of Teleglobe-related documents and electronic data you and your group possess.

Next, outside counsel will collect your hard copy documents and return the originals to your files after they are copied. Arrangements can be made to copy immediately any working files that you cannot spare for more than two days so that you can have the originals back quickly.

During the same time period, outside counsel, with the help of Stéphane Bourbonniere, BCE's Law/Secretariat Systems Analyst, and True Data Partners ("TDP"), a computer consulting company, will contact you to arrange for copying of your electronic data (from your hard drives and other devices). TDP will then collect this electronic data, including email, from the company's servers, back up tapes, individual computer hard drives, and other sources. In general, TDP plans to copy and replace the hard drives of all individuals who worked on Teleglobe matters in recent years. We recognize that many individuals at the company may have non-Teleglobe information stored on their hard drives; however, we do not anticipate that any of this non-Teleglobe information will be relevant and have no intention of providing it to others. We anticipate that TDP will require approximately one or two hours per machine to obtain the data. To minimize disruption, they will work on a by-scheduled basis; please cooperate with outside counsel and TDP in scheduling a time for them to access your machine.

Because a Statement of Claim has been filed in this matter, we must ensure that our collection of Teleglobe-related documents and electronic data is as broad as possible. When completing the questionnaire and during your interview, please **inform outside counsel about any Teleglobe-related documents or electronic data that you or your department may have, from any time period whatsoever, wherever it may be located, including non-BCE premises.**

We would like to insist on the fact that we must preserve any potential evidence in whatever form it may exist, including both paper (including personal notes and

CONFIDENTIAL-FOR ATTORNEY'S EYES ONLY

**BCE**
Bell Canada
Enterprises

- 3 -

agendas) and electronic copies (including computer files and e-mail). It is very important that you do not dispose of any information that might relate to Teleglobe even if you would have usually done so in the ordinary course of business. This includes information that may be located on your personal computers or other electronic devices such as a Personal Digital Assistant

A representative of McCarthy Tétrault LLP will contact you or your assistant soon to schedule a time when interviews can be conducted with you and/or your staff, if appropriate, and when documents and electronic data can begin to be collected. We would like to begin the process as soon as possible. Should you have any questions, please contact Martine Turcotte at (514) 870-4637, Michel Lalande at (514) 391-8386 or Martin Cossette at (514) 391-5213.

CONFIDENTIAL-FOR ATTORNEY'S EYES ONLY

## DISTRIBUTION LIST

| | | |
|---|---|---|
| Bill Anderson | Brian Kouri | Barry Pickford |
| Mounir Batty | Maria Kuchel | Ildo Ricciuto |
| Danielle Berrut | Louis Laplante | Isabelle Rioux |
| Pierre Blouin | Lucie Larocque | Eugene Roman |
| Mike Boychuk | Odin Larocque | Jannina Romanini |
| Yves Caron | Andrea LeBlanc | Len Ruggins |
| Frédéric Châtel | Bernard Leduc | Marc Ryan |
| John Ciccarelli | Denis Lefort | Michael Sabia |
| Josie Ciccotelli | Pierre Lessard | Frank Sciannamblo |
| Martin Cossette | Jim Leung | Wes Scott |
| Bernard Courtois | Eric Lévy | Sheridan Scott |
| France Coutu | Patrick Loulou | John Sheridan |
| Elie Daher | Richard Mannion | Vincent Sita |
| Kit Dalaroy | Bruno Marchand | Stephen Skinner |
| Yannick De Grandpré | Claudine Marineau | David Southwell |
| Don Doucette | David Masse | Ida Teoli |
| Alain Dussault | Tim McGee | Peter Thom |
| Isabelle Emond | David McGraw | Angela Tullo |
| Tony Gaffney | Monique Mercier | Martine Turcotte |
| Louise Gagné | Perry Miles | André Vachon |
| Lorraine Gagnon | Jean Monty | Pierre Van Gheluwe |
| François Gauvin | Isabelle Morin | Siim Vanaselja |
| Mark Hanlon | Anick Morin | Peter Wachter |
| Leo Houle | Peter Nicholson | George Walker |
| Jean-Guy Huneault | Patricia Olah | Glenn Ward |
| Jérôme Huret | Charles Pagé | Stephen Wetmore |
| Andrew Jones | Maarika Paul | Sally Wong |
| Nick Kaminaris | Eric Paul-Hus | |
| David Kidd | Patrick Pichette | |

CONFIDENTIAL-FOR ATTORNEY'S EYES ONLY

Attorney Work Product
Privileged and Confidential

*Please Attach Business Card Here*

## BCE/TELEGLOBE Document Questionnaire

The following questionnaire has been developed in order to locate all materials which are related to Teleglobe. Please provide as much information as possible in answering this questionnaire, and include more rather than less information. An electronic version of the present questionnaire is being distributed to follow delivery of this hard copy. The electronic version may be more convenient for you to complete; simply add your response following each question. A representative of McCarthy Tétrault LLP will be in touch with you shortly following your return of this questionnaire.

PLEASE RETURN THIS QUESTIONNAIRE AS SOON AS POSSIBLE, to:

> Martin Cossette
> Legal Counsel
> BCE Inc.
> 1000 de La Gauchetière West, Suite 3700
> Montreal, Quebec
> H3B 4Y7
> martin.cossette@bell.ca
> (514) 391-5213

If you haven't already done so, please go back and read the attached memorandum from Michel Lalande, which contains the following definition of Teleglobe-related documents: **Teleglobe-related documents are all documents, in whatever form, which discuss or refer to Teleglobe Inc. and its subsidiaries.**

Name: _____

Position: _____

| | | |
|---|---|---|
| How long have you been in this position? _____ | How long have you been employed at BCE? _____ | |
| Did you inherit any files (paper or electronic) when you assumed this position?  Y/N _____ | | |
| Where are they? _____ | | |
| _____ | | |

I

BCE-AD 0029377

## BCE/TELEGLOBE Document Questionnaire

Attorney Work Product
Privileged and Confidential

Who do you report to?                    Who reports to you?

_____                  _____

_____                  _____

_____                  _____

_____                  _____

_____                  _____


1.      Please describe you responsibilities:


2.      General Questions:

   (a)      Please indicate the different positions you've held within the BCE group
            of companies since 1999.



   (b)      Do you regularly prepare any documents or reports?    Y/N

        (i)      Describe the nature of the documents or reports:



        (ii)     Who receives the documents?



        (iii)    How are they transmitted (email, by hand, etc.)?


2

**BCE/TELEGLOBE Document Questionnaire**

Attorney Work Product
Privileged and Confidential

(iv)    Do you keep copies?  Where/how? Who else has them?

(c)    Do you have any Teleglobe-related paper documents located on-site? Y/N

If yes, please give general details about those documents in the chart below, their quantity and their on-site location.

**NOTE: Please mark with a double asterisk (\*\*) any documents you continue to use on a regular, ongoing basis.**

For example:

- "BCE internal documentation on Teleglobe share acquisition ...100 pages...left-hand bottom row of filing cabinet (locked)"

| Document description | Estimated quantity | On-site location details |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

(For those who are completing the electronic version of this questionnaire, hit [Tab] when you are at the end of the table to create new rows if required.)

(d)    Have you sent any Teleglobe-related paper documents off-site? (Y/N)

If yes, please give general details in the chart below about those documents, their quantity and when and where they were sent off-site.

3

BCE-AD  0029379

## BCE/TELEGLOBE Document Questionnaire

Attorney Work Product
Privileged and Confidential

For example:

- "Financial information regarding Teleglobe for annual report...approximately 2 boxes...sent off-site to auditors in the Spring of 2001"

| Document description | Estimated quantity | Off-site location details |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

(For those who are completing the electronic version of this questionnaire, hit [Tab] when you are at the end of the table to create new rows if required.)

(e)    Do you or did you participate in any BCE committees or groups dealing with Teleglobe-related issues or transactions?  Y/N

(i)    Which committee or group:

(ii)    Who else is/was on the committee or group?

(iii)    How often does it/did it meet?

4

## BCE/TELEGLOBE Document Questionnaire

Attorney Work Product
Privileged and Confidential

    (iv)    Are/were documents regularly prepared (e g , meeting minutes)?: Y/N

        A.    Describe the nature of the documents:

        B    Who prepares them?  Where are they kept?  How are they kept (e.g., electronically)?

    (f)    Of those who report/reported to you, do/did any prepare Teleglobe-related reports or documents for you?  Y/N

        (i)    Describe who reports/reported to you on Teleglobe-related matters and the nature of the documents produced:

        (ii)    Who else receives/received these items?

        (iii)    How are/were they transmitted (email, by hand, etc.)?

        (iv)    Do you have copies?  Y/N

            A.    Where are they kept?

            B.    In what format are they kept (e.g. hardcopy or electronic)?

    (g)    Which individuals have worked with you/reported to you or have you reported to with regard to Teleglobe-related matters?

CONFIDENTIAL-FOR ATTORNEY'S EYES ONLY

BCE-AD 0029381

## BCE/TELEGLOBE Document Questionnaire

Attorney Work Product
Privileged and Confidential

    (i)    Please list the above individuals

    (ii)    General scope of their involvement/responsibilities?

(h)    Did you ever communicate with any Teleglobe employee/representative in the course of your employment with BCE with respect to any Teleglobe-related business?

    (i)    Name of Teleglobe employee/representative:

    (ii)    General nature of communications:

(i)    If you possess other hard copy documents containing any reference to and/or information about Teleglobe, not included above, kindly list below:

| Document description | Estimated quantity | Off-site location details |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

(For those who are completing the electronic version of this questionnaire, hit [Tab] when you are at the end of the table to create new rows if required)

6

BCE-AD 0029382

## BCE/TELEGLOBE Document Questionnaire

Attorney Work Product
Privileged and Confidential

3.  Do you have contained on your desktop computer, notebook computer, home or personal computer, or personal storage media (e.g., PDA), any of the following types of electronic data? If so, please provide general details in the table at the end of this section.

    (a)  E-mail and information about e-mail (including message contents, header information and logs of electronic mail system usage) that contains any reference to and/or information about Teleglobe?

        (i)    Desktop computer:  Y/N

        (ii)   Notebook computer:  Y/N

        (iii)  Home/personal computer:  Y/N

        (iv)   Portable Storage Media:  Y/N

    (b)  Databases (including all records and fields and structural information in such databases) containing any reference to and/or information about Teleglobe?

        (i)    Desktop computer:  Y/N

        (ii)   Notebook computer:  Y/N

        (iii)  Home/personal computer:  Y/N

        (iv)   Portable Storage Media:  Y/N

    (c)  Computer activity logs which may have been used to process or store information about Teleglobe?

        (i)    Desktop computer:  Y/N

        (ii)   Notebook computer:  Y/N

        (iii)  Home/personal computer:  Y/N

        (iv)   Portable Storage Media:  Y/N

    (d)  Word processing files containing any reference to and/or information about Teleglobe?

        (i)    Desktop computer:  Y/N

        (ii)   Notebook computer:  Y/N

7

CONFIDENTIAL-FOR ATTORNEY'S EYES ONLY

BCE-AD 0029383

# BCE/TELEGLOBE Document Questionnaire

Attorney Work Product
Privileged and Confidential

    (iii)    Home/personal computer:  Y/N

    (iv)    Portable Storage Media:  Y/N

(e)    Electronic files created by application programs which process financial or accounting information about Teleglobe?

    (i)    Desktop computer:  Y/N

    (ii)    Notebook computer:  Y/N

    (iii)    Home/personal computer:  Y/N

    (iv)    Portable Storage Media:  Y/N

(f)    Electronic calendars and scheduling programs containing any reference to and/or information about Teleglobe?

    (i)    Desktop computer:  Y/N

    (ii)    Notebook computer:  Y/N

    (iii)    Home/personal computer:  Y/N

    (iv)    Portable Storage Media:  Y/N

(g)    Electronic contact managers containing any reference to and/or information about Teleglobe?

    (i)    Desktop computer:  Y/N

    (ii)    Notebook computer:  Y/N

    (iii)    Home/personal computer:  Y/N

    (iv)    Portable Storage Media:  Y/N

(h)    Electronic data created by spreadsheet programs containing information about Teleglobe?

    (i)    Desktop computer:  Y/N

    (ii)    Notebook computer:  Y/N

    (iii)    Home/personal computer:  Y/N

    (iv)    Portable Storage Media:  Y/N

8

    BCE-AD 0029384

## BCE/TELEGLOBE Document Questionnaire

Attorney Work Product
Privileged and Confidential

For those entries above where you indicated "Yes", please provide additional information in the table below.

| Document description | Estimated quantity | Storage details (desktop, notebook, home computer, personal storage media) and Location (directory) |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

(For those who are completing the electronic version of this questionnaire, hit [Tab] when you are at the end of the table to create new rows if required.)

4.  "Other" documents – You may have Teleglobe-related information in other formats that you didn't think fit into the above-mentioned categories and tables. If that's the case, please list their details in the table below.

For example:

- "Handwritten journal/diary notes re: credit facility renegotiation... 4-5 pages...in my daily journal/diary kept in the bottom right hand desk drawer"
- "Handwritten calendar appointment entries for various meetings concerning Teleglobe restructuring...approximately 50 entries...in my personal agenda kept in a storage box at home"

9

CONFIDENTIAL-FOR ATTORNEY'S EYES ONLY

BCE-AD 0029385

## BCE/TELEGLOBE Document Questionnaire

Attorney Work Product
Privileged and Confidential

| Document description | Estimated quantity | Location / Storage details |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

(For those who are completing the electronic version of this questionnaire, hit [Tab] when you are at the end of the table to create new rows if required.)

5      Documents no longer in your possession - Did you throw out, shred, recycle, delete or misplace any Teleglobe document? (Y/N)

If yes, please give details in the chart below about those documents, their quantity and why you don't have them anymore.

For example:

- "Various deleted e-mails about Teleglobe restructuring that 1 was cc'd on...many perhaps 200 deleted between announcement of restructuring and the present...didn't need them, so I deleted them."

- "Operating Manuals contained in 7 volumes...threw out because others had copies and I never used them."

| Document description | Estimated quantity | Why no longer have the item |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

(For those who are completing the electronic version of this questionnaire, hit [Tab] when you are at the end of the table to create new rows if required.)

CONFIDENTIAL-FOR ATTORNEY'S EYES ONLY

BCE-AD 0029386

# BCE/TELEGLOBE Document Questionnaire

<div align="right">Attorney Work Product
Privileged and Confidential</div>

6       Other people with Teleglobe documents – Are there any people not included in
        the distribution list of the accompanying memo that you think may have
        documents in their possession?

        Individuals likely to have relevant documents:

|  |  |  |  |  |
|--|--|--|--|--|
|  |  |  |  |  |
|  |  |  |  |  |

        If yes, please list them below together with any details about the type of
        documents you think they may have. If they don't work at BCE anymore, please
        include any contact information you have.

| Others with Teleglobe documents | Document details | Contact information |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

        (For those who are completing the electronic version of this questionnaire, hit
        [Tab] when you are at the end of the table to create new rows if required.)

Thank you for your time in completing the present questionnaire. As is mentioned in the
covering memorandum, should you have any questions, please contact Martine Turcotte
at (514) 870-4637, Michel Lalande at (514) 391-8386 or Martin Cossette at (514) 391-
5213.

CONFIDENTIAL-FOR ATTORNEY'S EYES ONLY

BCE-AD 0029387

4



## HAHN&HESSEN LLP
### ATTORNEYS

John P. Amato                                                              Direct Dial: (212) 478-7380
Member of the Firm                                                          Email. jamato@hahnhessen.com

February 9, 2004

Via Facsimile and Hand Delivery

George J. Wade, Esq.
Daniel Schimmel, Esq.
Shearman & Sterling LLP
599 Lexington Avenue
New York, New York 10022-6069

> Re:    *In re* Teleglobe Communications Corp., *et al.*
>        Case No. 02-11518 (MFW)

Dear Counsel:

On behalf of the Official Committee of the Unsecured Creditors (the "Committee"), we approached your firm to determine whether BCE, Inc. ("BCE") and certain individuals, all of whom are or were under BCE's control or employment, would submit voluntarily to the Committee's request for discovery under Bankruptcy Rule 2004.

We forwarded a copy of the Committee's document request and identified the individuals the Committee is interested in deposing. We were encouraged when you agreed, on BCE's and the individuals' behalf, to produce documents responsive to the Committee's requests and to produce a number of the individuals for depositions, without the need for judicial intervention.

Over the past few months, we have been discussing the parameters of the discovery and the terms of a confidentiality agreement, which agreement BCE asked the Committee to consider. The confidentiality agreement was intended to address BCE's concerns that discovery obtained in the Rule 2004 context could be disseminated to third-parties and in other pending actions involving BCE.

We have endeavored to address BCE's concerns, but, regrettably, there are a number of obstacles we must overcome before executing any such agreement. For instance, BCE is permitted to shield documents from disclosure to third-parties provided that the document is "confidential, proprietary, or commercially sensitive." While the latter two designations have a fairly limited and understood meaning, the "confidential" designation provides considerable leeway to BCE. Although the Committee may challenge any designation, we do not want to create collateral and potentially costly litigation to address whether any particular document truly is confidential. Thus, a more precise definition of "confidential" is required.

FEB-09-04    06:58PM    FROM-HAHN & HESSEN LLP                   212 594 7167          T-262    P 003/028    F-369

HH

February 9, 2004
Page 2

Furthermore, under the proposed agreement, individual Committee members' ability to share information with their institutions or other counsel for use in Teleglobe related proceedings is prohibited. The agreement, if signed in its present form, surely will spawn collateral litigation concerning the proper identification and use of confidential information. For instance, we see too many opportunities for potentially intractable conflict issues to arise.

We nevertheless would like to continue working with you to reach a workable agreement. We have revised the confidentiality agreement, which should address both the Committee's and BCE's concerns. The agreement is enclosed for your review. In the interim, we would like to begin reviewing documents that BCE does not consider confidential, commercially sensitive or proprietary. We do not believe this would inconvenience BCE given Mr. Schimmel's indication that documents are ready for the Committee's review.

We understand your firm has identified approximately 100 boxes of documents belonging to Messrs. Michael Boychuk, Francois Gauvin, Terence Jarman, Michel Lalande, David Masse, Jean Monty, and Stephen Skinner (the "Individuals"), which documents either concern the Teleglobe entities or are responsive to the Committee's document requests and are located in New York and Canada. We have personnel available to review the documents in New York the week of February 9th and in Montreal beginning the following week.

Also, to the extent you have prepared a log identifying the "confidential" documents, we would ask for that to be produced as well. We would like to proceed expeditiously as it is our intent to begin the Rule 2004 examinations of the Individuals in March 2004.

Because the next omnibus hearing in Teleglobe is scheduled for February 20, 2004, we will proceed to file an application tomorrow seeking Rule 2004 discovery from BCE in order to comply with the Court's notice rules. It is our intention, however, to resolve the discovery issues with you before the hearing date and to withdraw the application. If we are unable to resolve these issues, we will proceed with the application. Proceeding in this manner will also obviate expending additional time working to resolve issues that cannot be resolved without court guidance. We appreciate your continued cooperation and look forward to a prompt response.

Very truly yours,

John P. Amato

Enclosure

5

# SHEARMAN & STERLING LLP

FAX: 212-848-7179
TELEX: 667290 WUI
www.shearman.com

WRITER'S DIRECT NUMBER:

(646) 848-4608

WRITER'S EMAIL ADDRESS:
DSchimmel@shearman.com

599 LEXINGTON AVENUE
NEW YORK, N.Y. 10022-6069
212 848-4000

ABU DHABI
BEIJING
BRUSSELS
DÜSSELDORF
FRANKFURT
HONG KONG
LONDON
MANNHEIM
MENLO PARK
MUNICH
NEW YORK
PARIS
ROME
SAN FRANCISCO
SINGAPORE
TOKYO
TORONTO
WASHINGTON, D.C.

April 9, 2004

By Facsimile and U.S. Mail

Zachary G. Newman, Esq.
Hahn & Hessen LLP
488 Madison Avenue
New York, NY 10022

Dear Zachary:

This letter is in response to your letter to me, dated April 6, 2004. As you know, in response to the Committee's draft document request submitted to us on August 29, 2003, which identified 26 separate broad document requests, and further discussions between us on September 8, 2003, BCE Inc. ("BCE") produced a total of 105 boxes of documents in hard copy and 7,449 pages of electronic documents on disks. Of these 105 boxes of documents in hard copy, following your review, you asked for copies of a total of 198,239 pages of documents you considered relevant to your investigation, which copies you received. Further, BCE has sent you today by Federal Express 6338 pages of additional electronic documents.

In response to the Committee's request and as agreed by the Committee on April 6, 2004, BCE has also agreed to make available for a deposition three high-ranking present or former officials with personal knowledge of the relationship between BCE and Teleglobe Inc. ("Teleglobe") and its affiliates (including the U.S. debtors): (i) Jean Monty (in early 2002, the Chairman and CEO of BCE and former Chairman and CEO of Teleglobe), (ii) Michael Boychuk (the Senior Vice President and Treasurer of BCE and former Executive Vice President and CFO of Teleglobe), and Patrick Pichette (in early 2002, the former Executive Vice President – Planning and Performance of BCE and Executive Vice President – Finances and Operations of Teleglobe USA Inc.).

As described in detail in this letter, we have complied in good faith with your discovery requests, and our document production indeed significantly exceeds our undertaking

*Shearman & Sterling LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners*

NYDOCS04/399941 1

Zachary G. Newman, Esq
April 9, 2004
Page 2

agreed to at our meeting on September 8, 2003. At that meeting, we advised you with specificity of the documents that would be made available for inspection in Montreal as soon as the Committee agreed to the terms of a suitable confidentiality agreement. As you are well aware, we expressed a concern, which arises from the fact that certain members of the Committee in the bankruptcy case pending in Delaware are also plaintiffs in a separate lawsuit in Canada against BCE. We stated that, while BCE was prepared to cooperate in good faith with the Committee counsel's investigation pursuant to Rule 2004 of the Bankruptcy Rules, such cooperation should not be used to circumvent the discovery process in Canada and make available to litigating members of the Committee documents that would not otherwise be discoverable in the litigation in Canada. Mr. Amato said that members of the Committee may want to obtain access to documents produced through the Rule 2004 investigation, which they might not have obtained through the Canadian litigation, but agreed that the Rule 2004 investigation should not be used to circumvent the Canadian discovery process.

As you are also well aware, the negotiation of the Confidentiality Stipulation was significantly delayed by lengthy internal discussions at your end (such as your consideration for a period of five weeks of a one word change in the draft Confidentiality Stipulation). We understand that consulting with a large number of interested parties may have taken you more time than you originally expected, but we respectfully submit that BCE should not in any way be impacted by those unexpected delays arising from your end. On March 11, you finally agreed to the terms of the Confidentiality Stipulation, and we immediately made the documents available to you. We note that, even though you keep asking for more documents, you have failed to articulate any reasons why you need any additional documents in order to complete your Rule 2004 investigation.

For the sake of completeness, we address below each of the six subjects in your letter to me, dated April 6, 2004.

A.    Scope of Document Production

1.    BCE has produced all the documents necessary to the Rule 2004 investigation

As we indicated to you and John Amato on September 8, 2003, BCE agreed to produce documents from the files of six individuals who, according to the Interim Receiver in the Canadian bankruptcy proceedings, were deeply involved in the relationship with Teleglobe: (i) Michael Boychuk, (ii) Francois Gauvin, (iii) Michel Lalande, (iv) David Masse, (v) Patrick Pichette, and (vi) Stephen Skinner. On September 8, Mr. Amato requested that BCE also produce responsive documents from the files of three additional individuals: (i) Terence Jarman, (ii) Jean Monty, and (iii) Michael Sabia, and the minutes of BCE's Board of Directors (and documents presented to BCE's Board) to the extent they were responsive to the Committee's document requests and not privileged. In order to assist the Committee in its investigation, BCE agreed to satisfy Mr Amato's additional request, and all these documents were made available to you in New York and Montreal. We made clear, however, that following the production of these

Zachary G  Newman, Esq
April 9, 2004
Page 3

documents, we would not agree to conduct a second broad search for additional documents from the files of other custodians less involved in the relationship with Teleglobe

Mr. Amato's letter to George J. Wade and to me, dated February 9, 2004, indicates that the Committee fully understood and agreed with the scope of BCE's document production – in fact, Mr. Amato's letter indicates that he was not expecting the production of documents from the files of Michael Sabia and Patrick Pichette, which we produced anyway for sake of completeness

Your letter to me dated April 6, 2004 also reflects a misunderstanding of the manner in which BCE's files are maintained even though we have described it to you both on September 8, 2003, and March 11, 2004. Virtually all the documents responsive to the Committee's document requests are maintained in the files of individual custodians; they are not maintained in central "corporate files." As described above, we have already produced the responsive documents from the files of the custodians who were primarily involved in the relationship with Teleglobe  The only two categories of documents that are maintained at BCE in "corporate files" are the Board and Board committee minutes and record books and the employment agreements and certain other human resources documentation.  These documents are maintained in BCE's Secretariat and BCE's Human Resources departments, respectively, and they have also been produced to you.  We have produced all the Board documents to the extent they were responsive to your document requests.  As I described to you in my e-mail dated March 31, we also agreed to produce the Audit Committee documents to the extent they were responsive to your document requests, and they have been produced   BCE also produced employment agreements and secondment agreements to the extent they were responsive to your document requests.

In short, we have produced all the documents that, on September 8, 2003, we undertook to produce.  In addition, we also produced electronic documents for the custodians. To the extent you requested specific additional categories of documents, we supplemented our production to satisfy your requests.  As previously indicated, BCE has produced documents generated in the period between February 15, 2000 through April 24, 2002. We believe that our production was conducted in good faith and more than satisfies our obligations.[1]

2.      Scope of BCE's search for documents in paper format

In your letter to me dated April 6, you request that we identify BCE's efforts to search for documents responsive to your document requests.  We take this opportunity to respond to your request.  The paper files of the custodians relating to Teleglobe were all gathered. Some of those documents reflected work performed by the custodians on behalf of Teleglobe, and some of the documents reflected work performed on behalf of BCE, on

---

[1]      As we previously indicated to you, we have advised you of BCE's position that the Committee is not entitled to the production of documents outside of that period, and you have not set forth any reasons why documents generated prior to February 15, 2000 or after April 24, 2002 should be produced

Zachary G. Newman, Esq.
April 9, 2004
Page 4

Teleglobe-related matters. In response to the Committee's document request, we searched for responsiveness all the files of the nine primary custodians that reflected work performed on behalf of BCE, and those documents were produced.

Similarly, the documents in the files of the nine custodians reflecting work performed on behalf of Teleglobe were generally reviewed for responsiveness. As we told you, however, all these documents were produced to the Interim Receiver in connection with the Canadian insolvency proceedings, and we elected to make these documents available to you regardless of their responsiveness in light of the wide breadth of your 26 document requests.

In your April 6 letter to me, you inquire whether 92 of the 96 boxes that the Committee reviewed in Montreal were previously produced in the Canadian insolvency proceedings. The 92 boxes were not entirely produced to the Interim Receiver in connection with the Canadian insolvency proceeding. To the extent the documents in the 92 boxes represented work performed on behalf of Teleglobe, they were in fact produced to the Interim Receiver. However, the 92 boxes also contain documents representing work performed on behalf of BCE, which documents were not produced to the Interim Receiver. To the extent those documents were responsive to the Committee's document requests, we produced them to you in the 92 boxes.

        3.      Custodians relating to four specific boxes in BCE's document production

In your April 6 letter, you also request that we identify the custodians of four specific boxes of documents that you reviewed in Montreal. The custodians are Jean Monty, Michael Sabia, Michael Boychuk, Patrick Pichette, and Michel Lalande. In order to help you review these documents, we are in the process of reviewing the Bates stamps corresponding to the four boxes, and we will identify the relevant range for each custodian. We will provide you with that information as soon as it becomes available.

        B.      Project X Issues and Activities List

In our meeting on September 8, 2003, Mr. Amato asked whether any memoranda regarding the subjects set forth on pages 12 and 13 of a document entitled Project X Issues and Activities List were in fact prepared, and whether these documents would be produced to the Committee or alternatively included on a privilege log. Many documents relating to the subject matter of the Project X Issues and Activities List have been in fact produced to the Committee as part of the files and electronic documents of the nine custodians described above. Further, the privilege log that BCE provided sets forth documents listed in the Project X Issues and Activities List. Indeed, to the extent any memoranda listed on pages 12 and 13 of the Project X Issues and Activities List (under Section 8.2 that Mr. Amato pointed out to us) exist, we believe in good faith that either (i) they are set forth on the privilege log; (ii) they were produced to the Committee; or (iii) they were never created.

When you reviewed the documents in Montreal, you asked Martin Cossette of BCE whether <u>all</u> the documents listed on the Project X Issues and Activities List were included

Zachary G. Newman, Esq.
April 9, 2004
Page 5

in the 96 boxes of documents that were made available to you, a request significantly broader
than, and different from, Mr. Amato's request on September 8. Mr. Cossette responded to you
that the Project X Issues and Activities List constitutes a list of issues, not a list of documents nor
a table of contents, and that in several instances documents were never prepared. He further
described that, to the extent responsive and non-privileged documents exist, they would likely be
in the boxes of documents made available to the Committee for inspection, in particular the files
of Michel Lalande who was actively involved in the Project X file, as BCE's Vice-President -
General Counsel. Mr. Cossette suggested that, if following your review of the documents you
were unable to locate specific documents listed on the Project X Issues and Activities List, you
should identify any such documents, and we would make an effort to help you obtain any
existing, non-privileged documents. Even though you did not object to Mr. Cossette's
suggestion at the time, you have failed to identify any specific documents that you are unable to
locate. We urge you to conduct that search, which BCE has no obligation to perform on your
behalf. Overall, we believe that the vast majority, if not all, the responsive documents listed on
the Project X Issues and Activities List have been either (i) included on the privilege log, (ii)
produced to the Committee (except for non-annotated publicly filed documents, which may not
have been produced), or (iii) were never created.

     C.     Privilege Log

     We do not agree with your statement that the disclosure of information to Messrs.
Lalande, Gauvin, Boychuk, and Pichette "destroys BCE's privilege claim." Among other things,
numerous documents on the privilege log reflect legal advice to BCE with respect to matters as
to which BCE had a separate interest in the legal advice provided by counsel. In addition, some
of the documents on the privilege log reflect legal advice and input on matters with respect to
which BCE and Teleglobe or subsidiaries of Teleglobe shared a community of interest.
Furthermore, we do not believe that, in the context of its Rule 2004 investigation, the Committee
controls the exercise of the attorney-client privilege on behalf of the U.S. debtors.

     D.     Redactions

     As we advised in our letter dated March 11, 2004, certain documents have been
redacted on the grounds that they are not responsive to the Committee's document requests.
These documents contain sensitive information regarding, among other things, subsidiaries of
BCE that have nothing to do with the Committee's investigation.

     As you know, the Confidentiality Stipulation, as the Committee insisted, allows
counsel for the Committee to show documents to a very large number of entities, including
certain parties in the litigation pending against BCE in Canada. We understand that, through the
normal discovery process in Canada, those parties may not otherwise have access to those
documents. We do not believe that BCE is under an obligation to disclose to you sensitive
internal information that is beyond the scope of your 26 document requests.

     In your letter, you indicate that "several of the redacted documents have been
rendered incomprehensible" as a result of the redactions. We have made a significant effort to

Zachary G. Newman, Esq
April 9, 2004
Page 6

avoid that result, but to the extent you believe that several specific documents are difficult to understand in their redacted form, we invite you to identify them, and we will make a good faith effort to assist you and revise the redactions if necessary.

You correctly note in your letter that only a very small number of documents were redacted on the ground of privilege. The two documents that you attach to your April 6 letter should have been included on the privilege log and were mistakenly omitted. We have included these documents on the supplemental log that was sent to you by Fedex today.

E.    E-mail and Electronic Files

In your letter, you suggest that the electronic documents provided to you on disk were printed and scanned back into a computer prior to their production to you. It is our understanding that the documents were not printed and scanned back. Instead, the hard drives of the custodians were "captured" using forensically-approved methods, pursuant to which an exact copy of the hard drive was made. The files of the custodians were searched for responsiveness to your document requests. The responsive data was printed to TIF images, which does not change the data or compromise the integrity of the documents. In your document request, you asked that we produce "documents that exist in machine-readable form," which is exactly what was provided to you. The process of printing data out to TIF images also did not remove any information that you requested. Further, the disks provided to you also provided sufficient data to load these documents on a database and contains document breaks. This production was complete, and we do not propose to do an expensive and time-consuming recreation of the native files. This is our normal producing technique, and we are not required to do more.

In addition, BCE had in its possession back-up tapes for the period beginning in August 2001, or in some cases November 2001. All retrievable data was processed and searched for the custodians. The results of the search were produced to you on disk. Therefore, contrary to your suggestion, the integrity of the e-mails and other documents was not compromised, and BCE has produced to you the electronic documents from the files of the nine custodians, to the extent these documents existed.

F.    Depositions

Prior to the time that you sent your April 6 letter to me, we had provided you with dates for the depositions of all the deponents whose deposition will be conducted in connection with the Rule 2004 investigation, and we have now an agreement regarding these dates. We have accommodated your request that the depositions be conducted in New York even though this request is burdensome and costly for BCE and the people deposed. We also agreed that Messrs. Boychuk and Pichette would be deposed for a day and one-half. This constitutes a good faith effort to cooperate with the Committee's investigation.

We have drafted this detailed letter in order to describe, and often reiterate, our significant efforts to assist you in your investigation. We are prepared to litigate these issues if necessary, but we urge you to seriously consider whether, in light of the magnitude of BCE's

Zachary G. Newman, Esq.
April 9, 2004
Page 7

document production and your own delays, you really need any additional documents in the
context of a Rule 2004 investigation the sole purpose of which is to allow you to determine
whether or not to file a litigation by your deadline of May 13, 2004. We believe that by that date
you will have had access to more than enough documents and witnesses to make that
determination. If you commence an adversary proceeding, you will have the opportunity to
conduct further discovery.

Sincerely,

Daniel Schimmel

**6**

**Daniel Schimmel**
03/31/2004 09:54 AM

To: znewman@hahnhessen.com
cc: George J Wade/NY/NA/ShS@ShSDOMAIN
Subject: BCE

Dear Zachary:

I write to follow-up on my e-mail to you dated March 26, 2004, regarding various discovery issues

In our meeting on September 8, 2003, we made clear that BCE Inc. ("BCE") would produce documents as soon as we agreed on the terms of a suitable confidentiality agreement. Consistent with that statement, immediately following our agreement on the terms of the confidentiality stipulation, BCE made available 105 boxes of documents in response to the document request of the Official Committee of Unsecured Creditors (the "Committee") of Teleglobe Communications Corporations, Teleglobe USA Inc., Optel Telecommunications, Inc., Teleglobe Holdings (U.S.) Corporation, Teleglobe Marine (U.S.) Inc., Teleglobe Holding Corp., Teleglobe Telecom Corporation, Teleglobe Investment Corp., Teleglobe Luxembourg LLC, Teleglobe Puerto Rico Inc., and Teleglobe Submarine Inc. (collectively "Teleglobe"). Further, on March 26, 2004, BCE produced 5410 additional pages of electronic documents from the electronic files of Messrs. Boychuk, Pichette, and Monty in response to the e-mail you sent me that day. BCE has produced documents in good faith, consistent with our undertaking on September 8, and will continue to produce electronic documents this week.

As we also stated in our meeting on September 8, 2003, BCE is prepared to make available Michael T. Boychuk and Patrick Pichette for a deposition. In that meeting, we explained that Messrs. Boychuk and Pichette have personal knowledge of the relationship between BCE and Teleglobe Inc. (and its affiliates), and that their deposition (along with the production of over 100 boxes of documents) will be more than sufficient for purposes of the Committee's investigation under Rule 2004. We stated that any additional deposition would be unnecessary and in any event should be discussed following the depositions of Messrs. Boychuk and Pichette. We reiterated this position in my letter to you dated March 11, 2004. In that letter, however, we made a final settlement offer regarding the depositions. We indicated that, even though we believe that Jean Monty's deposition would be unnecessary and cumulative, we were prepared to make Mr. Monty available for a deposition. We further indicated that we did not see any circumstances under which the Committee could make a good faith argument that it needs any further depositions in order to complete its investigation. We stated that this was a final settlement offer, conditioned on the Committee's undertaking not to seek any additional depositions in connection with the Rule 2004 investigation.

In your e-mail to me dated March 26, 2004, you state that you agree with our proposal. Yet you seek to conduct additional depositions, and you fail to articulate any reasons why these additional depositions are necessary to the Committee's investigation. Your e-mail does not constitute an agreement to our offer regarding the depositions. In light of the fact that BCE has produced a massive amount of documents, and that the individuals that we have agreed to make available for a deposition are current or former high-ranking officials of BCE and Teleglobe, with personal knowledge of the relationship at issue, we fail to understand why any additional depositions should be conducted.

Thus, we are prepared to make Messrs. Boychuk and Pichette available for a deposition, and we have asked them to provide suitable dates for their deposition, which we will communicate to you as soon as we know them. Each of these depositions will last no longer than seven hours. In addition, we are still willing to consider a deposition of Jean Monty as part of a settlement offer, as we indicated in the letter dated March 11, 2004.

In your e-mail to me, you also request that BCE produce the minutes of BCE's Board meetings and Audit Committee meetings for the period 2000 through 2002. We have produced the responsive portions of BCE's Board minutes for the period February 2000 through April 24, 2002. To the extent the responsive portions of these minutes have not yet been produced, we will supplement the production, and we will also produce the responsive portions of the minutes of BCE's Audit Committee meetings for that time period. We believe that the Committee is not entitled to the production of documents outside of that period, and

you have not set forth any reasons why documents generated after April 24, 2002 should be produced  If you articulate a basis for the production of documents generated after April 24, 2002, we will consider your request in good faith

Finally, we again request that you forward to us an executed copy of the confidentiality stipulation that we sent you on March 11 and again on March 26, 2004

Best regards


Daniel Schimmel


Daniel Schimmel
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022
Phone: (212) 848-4608
Fax:    (646) 848-4608

7

**UNREDACTED VERSION**
**BCE, INC. COPY**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

---------------------------------------------------------x

*In re*                                    Chapter 11

TELEGLOBE COMMUNICATIONS              Case No. 02-11518 (MFW)
CORPORATION, a Delaware               Jointly Administered
corporation, et al.,
                                      **Objection Deadline: April 21, 2004 at 4:00pm.**
                    Debtors.          **Hearing Date: April 28, 2004 at 11:30am.**

---------------------------------------------------------x

### APPLICATION OF THE OFFICIAL COMMITTEE OF
### UNSECURED CREDITORS FOR AN ORDER AUTHORIZING AND
### COMPELLING DISCOVERY PURSUANT TO BANKRUPTCY RULE 2004

**TO THE HONORABLE MARY F. WALRATH,**
**UNITED STATES BANKRUPTCY JUDGE:**

The Official Committee of Unsecured Creditors (the "Committee") of the above-

captioned debtors and debtors-in-possession (collectively, the "Debtors"),[1] by its counsel,

Rosenthal, Monhait, Gross & Goddess, P.A. and Hahn & Hessen LLP, hereby moves for the

entry of an order pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Rule

2004") and Local Bankruptcy Rule 2004-1 ("Local Rule 2004-1"), and in support thereof

respectfully represents as follows:

---

[1]    The Debtors are the following eleven entities: Teleglobe Communications Corporation, Teleglobe
USA Inc., Optel Telecommunications, Inc., Teleglobe Holdings (U.S.) Corporation, Teleglobe Marine
(U.S.) Inc., Teleglobe Holding Corp., Teleglobe Telecom Corporation, Teleglobe Investment Corp.,
Teleglobe Luxembourg LLC, Teleglobe Puerto Rico Inc., and Teleglobe Submarine Inc.

5.    Instead of producing the documents concerning the "Project X" checklist in a separate folder or box, BCE interspersed some of the Project X checklist documents within the hundreds of thousands of documents produced leaving the Committee the Herculean task of searching for the proverbial "needle in a haystack" and then trying to match documents to the Project X checklist. This appears to have been intentionally done to frustrate the Committee's discovery efforts since BCE had already produced 96 of the 105 boxes to other parties, including the Debtors. BCE, instead of producing the few pages the Committee requested in addition to those previously produced, decided to hide them. Making matters worse, it appears that relevant Project X documents have not been produced since BCE is unwilling to produce all responsive documents that may be in its custody, possession or control, other than those documents retained by certain select individuals. The Committee now seeks BCE to immediately produce all of the Project X checklist documents, neatly segregated, regardless of whose custody such documents are in.

6.    Finally, the Committee seeks BCE to produce its board minutes and presentations from January 2000 through May 2002 as maintained in the ordinary course of business. BCE did not object to produce such documents. Instead, it elected to produce only some of the minutes and presentations, many in redacted form. BCE should produce the board minutes and presentations as they are kept in the ordinary course of business

## BANKRUPTCY PROCEEDINGS,
## JURISDICTION, AND VENUE

7.    On May 15, 2002, the Debtors in this proceeding, together with Teleglobe, Inc. ("TINC"), Teleglobe Financial Holdings Ltd., Teleglobe Canada Limited Partnership and Teleglobe Canada Management Services Inc. (collectively the "Canadian Debtors") commenced insolvency proceedings under the Canadian Companies' Creditors Arrangement Act in the

the confidentiality stipulation was agreed upon and executed (Exhibit A), BCE provided the Committee access to the aforementioned boxes.[8]

19.    In total, thus far, BCE has deluged the Committee with approximately 500,000 pages of documents, allegedly representing the Custodians' relevant documents within the period from February 15, 2000 through April 24, 2002. This production started with BCE producing nine (9) boxes of documents in New York. It then produced ninety-six (96) boxes in Montreal, and thereafter produced thousands of additional pages. During the Committee's review of all the documents it became apparent there were tens of thousands of documents produced that were non-responsive to the Committee's Document Request. It also became clear that relevant documents were interspersed with the non-relevant documents apparently to hide them. Indeed, BCE's counsel admitted that numerous responsive documents were inserted in the 96 boxes of documents that had previously been produced to the Debtors and the receiver appointed in Canada. Numerous other discovery issues have also surfaced, which the Committee outlined in its April 6, 2004 letter to BCE, a copy of which is annexed hereto as Exhibit E. BCE responded by letter dated April 9, 2004, a copy of which is annexed hereto as Exhibit F. This motion now seeks to overrule some of BCE's objections, with the Committee reserving its rights to seek the information not produced by BCE at another time. As stated above, the Committee seeks BCE to produce 328 of the 349 documents withheld on privilege or work product grounds, while also seeking BCE to produce unredacted versions of documents with redactions together with all of the Project X checklist documents and BCE board minutes and presentations from January 2000 through May 2002 as maintained in the ordinary course of business.

---

[8]    The majority of the documents, however, were not even marked confidential, meaning that BCE had no legitimate reason to forestall the Committee's review during the seven month negotiation of the confidentiality stipulation.

**8**



"Cochran, C Malcolm IV"
<Cochran@RLF com>

02/11/2005 05:15 PM

To: "Daniel Schimmel" <DSchimmel@Shearman com>
cc: gwade@shearman com, "John P Amato"
     <JAmato@hahnhessen com>, "Varallo, Gregory"
     <varallo@RLF com>, "Shandler, Chad" <Shandler@RLF com>
Subject: RE: electronic data

Mr. Schimmel, your responses to our inquiries have not been acceptable.
We have today taken steps to bring these matters to the attention of the
Court. You should have by now our motion to compel and opening brief.
Mr. Shandler also has attempted to reach you by telephone, to discuss
your position with regard to our additional request that the Court
appoint a special discovery master. You have not as yet returned his
call. Please let us know your position on that application, at your
earliest convenience.

Your suggestion of a meet and confer on Tuesday is fine, although we do
not agree that any further delay (pending further "meet and confers") or
"bargaining" by BCE in connection with the production of the materials
we have requested is warranted. I am available most any time prior to
noon on that day. We would request that George Wade be present on the
call.

-----Original Message-----
From: Daniel Schimmel [mailto:DSchimmel@Shearman.com]
Sent: Friday, February 11, 2005 4:47 PM
To: Cochran, C. Malcolm IV
Cc: gwade@shearman.com; John P Amato; Varallo, Gregory
Subject: RE: electronic data

Malcom:

I am sending this e-mail to address two issues: (a) the documents you
seek to obtain, as described in your e-mail of February 10, and (b) our
answer to date regarding the number of documents that will be retrieved
using the search terms that the plaintiffs and the defendants provided

(a) Documents sought in your e-mail, dated February 10

 We agree to promptly provide the information you seek, so long as the
parties engage in the reciprocal and simultaneous production of
documents
relating to their efforts to preserve and collect documents.
Therefore,
based on the evidence adduced at the deposition of Mr Cooke, we request
the following information: (a) the e-mail (or draft thereof) that was
prepared under Mr Cooke's supervision, in May or June 2002, regarding
the preservation and/or collection of documents and confirmation of
whether that e-mail was actually sent to anyone, (b) if that e-mail, or
any other document preservation instruction, was sent to any
individuals, the complete list of individuals who received it and
responded to it, (c) the draft document preservation policy that Mr.
Cooke may have prepared at the request of Mr Brunette in the spring of
2002, (d) Mr. Cooke's written instructions to the IT department of
Teleglobe in 2002 or subsequently regarding the preservation of
documents, (e) any other written instructions to individual employees or
officers of the Debtors to collect or preserve their paper and/or
electronic documents, (f) documents reflecting the Debtors' efforts to
collect and preserve documents after April 24, 2002,
(g) the complete list of all computer network servers within the
Debtors'
possession, custody or control, (h) for each server so identified, the

names of all individuals whose electronic data is stored or is otherwise
located on that particular server and whether a catalog is available,
and
(i) the corrected information regarding paragraph 11 of Mr. Cochran's
letter dated January 31, 2005. When do you believe you will be in a
position to share that information with us?

With respect to the last item on your list, you have provided us with a
list of 37 individuals whose electronic data you seek to obtain. Thus,
with respect to the last item on your e-mail dated February 10, we will
provide, for each server, the names of the individuals on that list
whose electronic data is stored or is otherwise located on that
particular server.

(b) number of documents that will be retrieved using the search terms
that the plaintiffs and the defendants provided

As I described, we have a partial answer regarding the number of
documents that will be retrieved using the search terms that the
plaintiffs and the defendants provided. Specifically, we have an answer
regarding the documents located on the hard drives that BCE was able to
forward to Commonwealth Legal to date. It is our understanding that
those hard drives contain in total approximately 137,000 documents.
Using the list of search terms that you provided, and the search terms
that the defendants suggested, would generate 117, 270 documents,
amounting to 814,098 pages of documents, that is, approximately 600
boxes.
We understand that, if those search terms are used, approximately 85% of
the total number of documents on the hard drives will be retrieved

Thus, the search terms as currently drafted do not retrieve only
responsive documents. For instance, you have requested that we search
the hard drives and servers for documents that contain the search term
"tax,*" which causes the retrieval of terms such as "taxi" or "taxis"
that are irrelevant to this proceeding.
Similarly, you have requested that we search for the term "commit,*"
which causes the retrieval of terms such as "committee" that is again
not relevant.

Because we want to move this process along, we are willing to conduct
the same analysis with respect to the documents located on BCE's servers
and the remaining hard drives that BCE was able to locate. Based on the
information above, however, it appears that the parties are probably not
using the right search terms, and that there may be a more efficient way
to proceed.

We are available for a meet and confer on Tuesday if you wish to discuss
those issues.

Best regards

Daniel


Daniel Schimmel
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022
Phone: (212) 848-4608
Fax:    (646) 848-4608

                    "Cochran, C.

                    Malcolm  IV"              To:       "Daniel
Schimmel" <DSchimmel@Shearman.com>
                    <Cochran@RLF.com>         cc:
gwade@shearman.com, "John P. Amato" <JAmato@hahnhessen.com>, "Varallo,

                                              Gregory"
<varallo@RLF.com>

                    02/10/2005 09:23          Subject:  RE: electronic
data
                    PM


The list that we provided you is not "incomplete." It is, instead,
exactly what you requested, and its limitations are plainly noted in the
footnotes. By contrast, BCE first sought to limit the Committee to
documents and data from only 9 custodians--and then sought to limit the
Debtors to the production of documents and data from 18
"custodians"--subsequently forcing us to play, for the last few months,
a guessing game as to who within BCE's vast organization might have
responsive material. We were able to add another 20 custodians to the
list you sought to limit us to, from review of the mere 12 to 15 boxes
you have produced in response to the Debtors' discovery. What we did
not know--and what you and BCE failed to disclose until Cossette was
deposed last week--was that BCE had in fact identified as many as 100
BCE custodians, the vast majority of which had relevant material--and
had collected (in 2002)a 250 box document archieve. As explained by Mr.
Cossette, some 100 boxes of that have never been searched by BCE for
documents responsive to our document request. Nor has anyone gone back
to those custodians with our document request, to see if any of them
still have responsive documents in their offices--which Mr. Cossette
confirmed was the case in at least two instances he is aware of--his,
and Mr. Laland's. In this way, you have forced us to generate a list of
BCE 37 custodians (you have failed to add even one name to that list)
for an e data search by BCE on far less than complete information--that
list may well have included other or additional names, as well as
different or additional key words, had BCE been properly forthcoming
with its hard copy document production.

Now you advise that Mr. Wade is unavailable for a meet and confer until
sometime next week--without even proposing a date.

I will correct my representations made in Paragraph 11 of my letter of
January 31, 2005, which is what I have previously indicated we would do.
We will expect to receive from you tomorrow the information you
represent below you will provide. Further, we request that you produce
immediately the following, as identified by Mr. Cossette: (i) the
complete list of custodians from whom BCE sought Teleglobe-related
documents in 2002, (ii) the three memoranda sent by BCE to potential
custodians of Teleglobe-related documents in 2002, (iii) the complete
list of all custodians who responded to any of the three memoranda sent
by BCE in 2002 and indicated that they were in possession of
Teleglobe-related documents and/or electronic data, and (iv) the
complete index of all boxes of Teleglobe-related documents archived by

BCE.  In addition, we request that you produce immediately (as
identified by Mr. Cossette): (i) the complete list of all computer
network servers within BCE's possession, custody or control and (ii) for
each server so identified, the names of all individuals whose electronic
data is stored or is otherwise located on that particular server.


-----Original Message-----
From: Daniel Schimmel [mailto:DSchimmel@Shearman.com]
Sent: Thursday, February 10, 2005 4:15 PM
To: Cochran, C. Malcolm IV
Cc: gwade@shearman.com; John P. Amato; Varallo, Gregory
Subject: Re: electronic data

Malcom;

George Wade is out of the office tomorrow and unavailable.  Therefore,
we will not be in a position to have a meet and confer before next week.

In addition, in Mr. Cooke's testimony yesterday, it became clear that
the list of custodians of electronic data that the Debtors previously
provided under the Court's default standards was incomplete.  We would
like to have the opportunity to review the corrected list in advance of
our next meet and confer.  As you probably remember, on January 26,
2005, you sent us your initial version of that list approximately an
hour before our meet and confer, which made it in effect impossible to
discuss the list with our clients before the meet and confer.  If
possible, we would like to have more time with respect to the corrected
list.

Tomorrow, we should have a partial answer regarding the number of
documents that will be retrieved using the search terms that the
plaintiffs and the defendants provided  We will send you that
information as soon as we receive it  In order to move things along, we
will not wait to receive the reciprocal information from the plaintiffs.
Please let us know when we can expect to receive the plaintiffs'
reciprocal data.

Best regards.

Daniel


Daniel Schimmel
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022
Phone: (212) 848-4608
Fax:      (646) 848-4608



                   "Cochran, C.

                   Malcolm IV"          To:
dschimmel@shearman.com

                   <Cochran@RLF.com>     cc:       "Varallo,
Gregory" <varallo@RLF.com>, "John P  Amato"
                                         <JAmato@hahnhessen.com>,
gwade@shearman.com
                   02/10/2005 01:21     Subject:  Teleglobe

PM

Following up on your message of earlier this week regarding the status
of BCE's e-discovery efforts, I would propose that we resume our meet
and confer tomorrow, at 2pm.  I will be prepared to provide information
regarding the Debtors' efforts as well, at that time.  Please advise.

**9**

# SHEARMAN & STERLING LLP

FAX: 212-848-7179
TELEX: 667290 WUI
www.shearman.com

599 LEXINGTON AVENUE
NEW YORK, N.Y. 10022-6069
212 848-4000

ABU DHABI
BEIJING
BRUSSELS
DÜSSELDORF
FRANKFURT
HONG KONG
LONDON
MANNHEIM
MENLO PARK
MUNICH
NEW YORK
PARIS
ROME
SAN FRANCISCO
SINGAPORE
TOKYO
TORONTO
WASHINGTON, D C

WRITER'S DIRECT NUMBER:
212-848-4429

WRITER'S EMAIL ADDRESS:
ploone@shearman.com

February 18, 2005

By Fedex

C. Malcolm Cochran, IV
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801

Dear Malcolm:

Please find enclosed:

(a)     A privilege log regarding the documents withheld from production on the grounds of the attorney-client privilege or the work product doctrine. This privilege log is in addition to the privilege logs previously submitted to the Committee;

(b)     Documents initially withheld on the grounds of privilege, but which we have determined should be produced. Certain documents have been redacted for privilege and the redacted portions are described on the log. Those documents are Bates stamped BCE-AD 0028695-0028730 (hard copies) and BCE-AD 0029388-0032177 (CD);

(c)     Documents provided to us this week by Stewart Verge, Bates stamped BCE-AD 0028731-0028808; and

(d)     Certain documents produced to the Committee in the Spring of 2004, now Bates-stamped BCE-AD 0028809-0029367. Non-responsive portions of these documents were previously redacted. We have reviewed these documents and

*Shearman & Sterling LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners*

are hereby producing most of them in a non-redacted form. Some more limited redactions remain on a few of those documents.

Furthermore, in an effort to assist you in the discovery process in good faith, we are also including the three document retention and collection memoranda and attachments, which BCE distributed in 2002. Those documents are Bates stamped BCE-AD 0029368-0029387. We are also enclosing a chart of individuals affiliated with BCE Inc. who received, and responded to, those memoranda in 2002. You have agreed that the production of these documents in no way waives any protection under the attorney client privilege or the work product doctrine.

The documents are submitted subject to the Responses and Objections of BCE Inc. to Debtors' First Request for Production of Documents Directed to Defendant BCE Inc., served on October 29, 2004.

Please do not hesitate to call should you have any questions

Very truly yours,

Piret Loone

cc: John P. Amato

Enclosures

**10**



"Czeschin, Brock"
<czeschin@RLF.com>

12/02/2004 02:48 PM

To: "Daniel Schimmel" <DSchimmel@Shearman com>
cc: "Cochran. C  Malcolm IV" <Cochran@RLF.com>. "George J Wade"
    <GWade@Shearman com>
Subject: RE: 30(b)(6) Deposition

Daniel:

Unfortunately, a conflict has arisen and the debtors' counsel will not
be available on the 8th. Further, I've learned that the committee's
counsel is also not available on the 8th. We expect to contact you
shortly with other suggested dates for rescheduling the deposition.  It
might also help if you could check with Mr. Cossette as to other
available dates.

Thank you,
Brock

Richards, Layton & Finger, P.A.
(302) 651-7571
(302) 651-7701 fax

-----Original Message-----
From: Daniel Schimmel [mailto:DSchimmel@Shearman com]
Sent: Tuesday, November 30, 2004 5:38 PM
To: Czeschin, Brock
Cc: Cochran, C. Malcolm IV; George J Wade
Subject: RE: 30(b)(6) Deposition

Brock:

Mr. Cossette will take the latest flight, which leaves La Guardia at
7:50 p.m.  He will need to leave our offices by 5:30 or 6:00 p.m. at the
latest.

Daniel Schimmel

Daniel Schimmel
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022
Phone: (212) 848-4608
Fax:    (646) 848-4608

                      "Czeschin, Brock"

                      <czeschin@RLF.com        To:      "Daniel
Schimmel" <DSchimmel@Shearman com>
                      >                         cc:      "Cochran, C.
Malcolm IV" <Cochran@RLF.com>, "George J Wade"
                                                <GWade@Shearman com>

                      11/30/2004 05:24          Subject:  RE: 30(b)(6)
Deposition
                            PM

**11**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------x  )   Chapter 11
In re                                             )
                                                  )
TELEGLOBE COMMUNICATIONS                          )
CORPORATION, et al,                               )   Jointly Administered
                                                  )   Bankr Case No 02-11518 (MFW)
                        Debtors                   )
-----------------------------------------------x  )
TELEGLOBE COMMUNICATIONS                          )
CORPORATION, et al,                               )
                                                  )
                        Plaintiffs,               )
                                                  )   C A No 04-1266 (SLR)
             v                                    )
                                                  )
                                                  )
BCE INC, et al,                                   )
                                                  )
                        Defendants                )
-----------------------------------------------x
```

## NOTICE OF SERVICE

PLEASE TAKE NOTICE that on January 20, 2005, Teleglobe Communications

Corporation, and the above-captioned affiliated debtors and debtors in possession, served true

and correct copies of Debtors' Disclosures Pursuant to Default Standard for Discovery of

Electronic Documents on the following counsel of record at the addresses and in the manner

indicated

**BY HAND DELIVERY**
Pauline K Morgan (No 3650)
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P O Box 391
Wilmington, DE 19899

**BY HAND DELIVERY**
Kevin Gross (No 299)
Joseph A Rosenthal (No 234)
ROSENTHAL, MONHAIT, GROSS &
GODDESS, P A
1401 Mellon Bank Center
P O Box 1070
Wilmington, DE 19801

VIA E MAIL and FIRST CLASS MAIL          VIA E MAIL and FIRST CLASS MAIL
John P Amato                             George J Wade
Hahn & Hessen LLP                        SHEARMAN & STERLING LLP
488 Madison Avenue                       599 Lexington Avenue
14th and 15th Floor                      New York, NY 10022
New York, New York 10022


_____
Gregory V Varallo (No 2242)
C Malcolm Cochran, IV (No 2377)
RICHARDS, LAYTON & FINGER, P A
One Rodney Square
920 N King Street
Wilmington, DE 19801
Tel (302) 651-7700
Fax (302) 651-7701
Attorneys for Debtors

Dated  January 20, 2005

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------x  )      Chapter 11
In re                                                     )
                                                          )
TELEGLOBE COMMUNICATIONS                                  )
CORPORATION, et al,                                       )      Jointly Administered
                                                          )      Bankr Case No 02-11518 (MFW)
                                 Debtors                  )
-------------------------------------------------------x  )
TELEGLOBE COMMUNICATIONS                                  )
CORPORATION, et al,                                       )
                                                          )
                                 Plaintiffs,              )
                                                          )      C A No 04-1266 (SLR)
                   v                                      )
                                                          )
                                                          )
BCE INC, et al,                                           )
                                                          )
                                 Defendants               )
-------------------------------------------------------x
```

## DEBTORS' DISCLOSURES PURSUANT TO
## DEFAULT STANDARD FOR DISCOVERY OF ELECTRONIC DOCUMENTS

Teleglobe Communications Corporation and its above-captioned affiliated debtors and debtors in possession ("Debtors"), by and through their undersigned counsel, submit the following disclosures pursuant to Standards 2 and 3 of the Default Standard for Discovery of Electronic Documents, adopted by the Ad Hoc Committee for Electronic Discovery of the U S District Court for the District of Delaware (the "Default Standard")

Debtors' disclosures herein are based upon information currently available to Debtors   Debtors expressly reserve the right to amend, revise and/or supplement these disclosures as new facts are discovered and/or as the significance and relevance of known facts are revealed   Notwithstanding the foregoing, Debtors assume no obligation to amend or supplement their disclosures beyond that which is required by the Default Standard

1   The individuals most likely to be custodians of relevant electronic materials that are in possession, custody or control of Debtors   The vast majority of the Debtors' directors,

officers and employees are no longer associated with or otherwise in the employ of the Debtors
Currently, David Wolfe is the custodian of the back up tapes and other electronic data in the
possession of the Debtors

       Mr Wolfe is the Senior Project Manager - IT

    2    The relevant electronic systems in use by Debtors during the time period at issue
in this action include

        a    **Email:** Debtors' email systems were all based on Microsoft Exchange
version 5 5  Microsoft Exchange was running on Wintel platforms using
the Microsoft NT operating systems  Nearly all of the email from the
relevant time period resides on backup tapes and is of limited accessibility
Users accessed email using Microsoft Outlook running on Wintel
platforms using Microsoft operating systems Windows 95, Windows 98,
Windows NT, and Windows 2000  Individual user systems were not
backed up at the workstation level  All personal folders defaulted to the
server for storage

        b    **File Sharing:** Debtors' file servers for file print sharing were WinTel
based platforms running Windows NT or Windows 2000 Advanced
Server  Again, many documents retained on the file servers during the
relevant time period currently reside on backup tapes and are of limited
accessibility

    3    V V Cooke, Esquire shall serve as the "Retention Coordinator" in this litigation
The following is a brief description of Debtors' electronic document retention practices and
policies

        a    **Email:** Email was backed up on a daily basis using Veritas NetBackup
onto DLT and/or SDLT tape  Prior to May 15, 2003, the Veritas
NetBackup software ran on Sun Microsystems platforms  After May 15,
2003, the backups were performed using the Veritas NetBackup running
on a Windows 2000 Advanced Server Wintel platform  The retention
period for email backups was six months for end-of-week backups, 12
months for end-of-month backups, and 2 weeks for end-of-day backups
As a matter of practice (and not policy) many email backup tapes were not
reused, resulting in the current availability of a substantial volume of back
up tapes  Depending upon the identity and location of the employee, or
the server utilized by the employee, the existing back up tapes for the
Debtors' email systems are in storage at the Debtors' facilities in Reston,
Virginia, or the Recall facility in Montreal  There is an index reflecting

which servers were utilized by certain employees, in the ordinary course
In many cases, back up tapes reflecting data attributable to a specific
employee may be accessed by reference to the server typically utilized by
said employee

b    **File Sharing:** Backups of the servers were performed daily using Veritas
NetBackup onto DLT and/or SDLT tape    Daily backups were either
Incremental or Full depending on the day of the week    Sunday through
Friday, daily backups were incremental backups    Saturdays were typically
full server backups    Daily backups were scheduled for 2 week retention
Weekly full backups were scheduled for 6 month retention, and monthly
full backups were scheduled for 1 year retention    File Server backup tapes
were re-used upon expiration

4    Diane S Barrasso, Ph D , of Barrasso Consulting, LLC, shall serve as Debtor's

"e-discovery liaison" in this litigation

5    Debtors reasonably anticipate problems to arise in connection with restoring email

and/or other electronic documents from the backup tapes listed above for the following reasons

a    Server backups were multiplexed to allow backup data streams from the
servers to be written across multiple tapes, thereby mixing data from
multiple servers onto a single tape    To restore data from a server for a
specific date may require multiple tapes on which other server backup data
is also stored,

b    The backup tapes are old and have been mounted several times    This has
caused excessive wear on the tapes resulting in some un-restorable data
using existing hardware and software systems;

c    The catalog of data for what tapes were used for which backups was lost,
except with respect to email servers in the USA, when the conversion
from a Sun platform to a Wintel platform was performed in May of 2003,

d    The numerous tapes maintained by Debtors undoubtedly contain a vast
amount of redundant data,

3

e       There is not a central, complete catalog or index tying the back up tapes
        that are available to specific users and servers   The Debtors thus are
        unable to verify whether the collection of back up tapes to which they
        have access is a full and complete collection of tapes

_____
Gregory V  Varallo (No  2242)
C  Malcolm Cochran, IV (No  2377)
RICHARDS, LAYTON & FINGER, P A
One Rodney Square
920 N  King Street
Wilmington, DE 19801
Tel  (302) 651-7700
Fax  (302) 651-7701

Attorneys for Debtors

Dated.  January 20, 2005

4

**12**

**Daniel Schimmel**

01/26/2005 11:03 AM

To: Cochran@RLF.com
cc: jamato@hahnhessen.com. George J Wade/NY/NA/ShS@ShSDOMAIN
Subject: Teleglobe/BCE

Dear Malcom:

For your convenience. please find attached another copy of the defendants' disclosures that were served by hand on your firm yesterday   As I already described to you, we are prepared to talk about the custodians identified in the list that you sent us.   We have not received the list of the Debtors' custodians (which is I believe required under the Court's default standards)   We need the list of the Debtors' custodians in order to have a meaningful discussion with you today

Best regards,

Daniel

Daniel Schimmel
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022
Phone: (212) 848-4608
Fax:    (646) 848-4608

not serv disc elec disc pd def disclos electronic.pd

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

2005 JAN 25  PM 3: 37

| | |
|---|---|
| In re: Teleglobe Comm., *et al.*, | ) |
| | ) |
| Debtors. | ) |
| | ) |
| ———————————————— | ) |
| | ) |
| Teleglobe USA Inc., *et al.*, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BCE Inc., *et al.*, | ) |
| | ) |
| | ) |
| Defendants. | ) |

Chapter 11
Jointly Administered

Bankr. Case No. 02-11518 (MFW)

Civ. Action No. 04-1266 (SLR)

## NOTICE OF SERVICE OF DEFENDANTS' DISCLOSURES PURSUANT TO DEFAULT STANDARD FOR DISCOVERY OF ELECTRONIC DOCUMENTS

PLEASE TAKE NOTICE that on the 25th day of January, 2005, the undersigned counsel caused a copy of the Defendants' Disclosures Pursuant to Default Standard for Discovery of Electronic Documents to be served on counsel of record in this adversary proceeding as follows:

BY FIRST CLASS MAIL:

John P. Amato, Esq.
Mark S. Indelicato, Esq.
Zachary G. Newman, Esq.
Hahn & Hessen LLP
488 Madison Avenue
New York, NY 10022

Counsel to the Official Committee of Unsecured Creditors of Teleglobe of Communications Corporation, et al.

WP3:1053684.3

59825 1001

BY HAND DELIVERY

Kevin A. Gross, Esq
Joseph A. Rosenthal, Esq
Rosenthal, Monhait, Gross & Goddess, P.A.
1401 Mellon Bank Center
P.O. Box 1070
Wilmington, DE 19899-1070

Counsel to the Official Committee of Unsecured Creditors of
Teleglobe of Communications Corporation, et al

George V. Varallo, Esq.
Mark D. Collins, Esq.
Robert J. Stern, Jr., Esq.
Richards, Layton & Finger, P.A.
920 N. King Street
Wilmington, DE 19801

Counsel to Teleglobe Communications Corporation, et al.

Dated: January 25, 2005        YOUNG CONAWAY STARGATT & TAYLOR, LLP
Wilmington, DE

_Pauline K. Morgan_

Pauline K. Morgan (No. 3650)
Maribeth L. Minella (No. 4185)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899
(302) 571-6600

                    -and-

SHEARMAN & STERLING LLP
George J. Wade
Daniel Schimmel
Sonal S. Desai
599 Lexington Avenue
New York, New York 10022
(212) 848-4000

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

In re:  Teleglobe Comm. *et al.*,                 )
                                                  )      Chapter 11
                Debtors.                          )      Jointly Administered
_____ )
                                                  )      Bankr. Case No. 02-11518 (MFW)
Teleglobe USA Inc. *et al*,                       )
                                                  )
                Plaintiff,                        )
                                                  )
v.                                                )      Civ. Action No. 04-1266 (SLR)
                                                  )
BCE Inc. *et al*,                                 )
                                                  )
                Defendants.                       )

## DEFENDANTS' DISCLOSURES PURSUANT TO DEFAULT STANDARD FOR DISCOVERY OF ELECTRONIC DOCUMENTS

Defendants BCE Inc. ("BCE"), Michael T. Boychuk, Marc A. Bouchard, Serge Fortin. Terence J. Jarman, Stewart Verge, Jean C. Monty. Richard J. Currie. Thomas Kierans. Stephen P. Skinner and H. Arnold Steinberg (collectively. "Defendants"), by their undersigned counsel, submit the following disclosures pursuant to Standards 2 and 3 of the Default Standard for Discovery of Electronic Documents, adopted by the Ad Hoc Committee for Electronic Discovery of the U.S. District Court for the District of Delaware (the "Default Standard")

Defendants' disclosures are based upon information currently available to them. Defendants expressly reserve the right to amend, revise and/or supplement these disclosures. Notwithstanding the foregoing, Defendants assume no obligation to amend, revise or supplement their disclosures beyond that which is required by the Default Standard.

1.    The following individuals are likely custodians of relevant electronic documents

| Name | Title/Responsibilities |
|------|------------------------|
| Jean Monty | Former Chairman and CEO of BCE |
| Michael Boychuk | Senior Vice President and Treasurer of BCE |
| Michel Lalande | Vice President – General Counsel of BCE |
| Patrick Pichette | President - Operations of Bell Canada |
| Stephen Skinner | Senior Vice-President - Finance of BCE and former Corporate Controller of BCE |
| David Masse | Former Assistant Corporate Secretary of BCE |
| Michael Sabia | President and CEO of BCE |
| Francois Gauvin | Former Senior Director – Taxation of BCE |
| Pierre Van Gheluwe | Former Director - Banking of Bell Canada |
| Martine Turcotte | Chief Legal Officer of BCE |
| Barry Pickford | Senior Vice-President – Taxation of BCE |
| Marc Ryan | Former Corporate Secretary of BCE |

2.    The relevant electronic systems in use by the Defendants during the time period at issue are as follows:

(a) General

BCE's electronic documents are stored in two types of devices: (i) the hard drives of each individual custodian's laptop or desktop computers, and (ii) the servers shared by all BCE employees and officers. Between January 2000 and May 2002, a few individuals also used Palm Pilots, but the data contained on those devices resided on their computer hard drives. Individual hard drives for the custodians listed above have been retrieved, except for the hard drive of Patrick Pichette, and those hard drives may be searched for responsive documents. See supra at 1. Pichette's hard drive was re-imaged in the ordinary course of business following his departure from BCE in January 2002. Similarly, BCE's servers are accessible and may be searched for responsive documents. The hard drives and servers constitute the primary sources of electronic documents. Back-up tapes are of limited accessibility and are significantly more difficult to search. See infra at 5(c).

(b) Servers

The employees and officers of BCE generally stored their e-mails and attachments on their hard drives. Other electronic documents were stored on the shared servers. A single custodian normally shared more than one server (usually more than 5). The server operating systems are Windows Server NT, 2000 or 2003 Professionnal. The software used by the custodians generally came from the Microsoft family and includes Microsoft SQL, Microsoft Office, Winzip, Adobe Acrobat, etc. The servers were backed up using multiple software: HP Omniback V 3.5 and Veritas Netbackup 3.4.11.

(c) E-mail

BCE's current e-mail system is Exchange 2003; it replaces the formerly used Netscape Communicator 4.7. Between January 2000 and May 2002, individual "inboxes" were stored on BCE's servers. Most archived e-mails were stored on personal hard drives, and some of them were stored on the servers.

(d) Documents of Limited Accessibility

BCE server back-up tapes contain documents of limited accessibility as defined by Standard 2 of the Default Standards. Approximately 600 back-up tapes exist for the period beginning in August 2001, or in some cases November 2001 through May 2002. In connection with the Committee's Rule 2004 document request, all retrievable data was searched from the tapes that could be restored using reasonable efforts. At the time, only 12 tapes could be searched. The vast majority of the tapes remain unprocessed. It would be extremely burdensome to restore the documents on these tapes. See infra at 5.

3.     Martin Cossette shall serve as the Defendants' retention coordinator as defined by Standard 2 of the Default Standards. The following is a brief description of Defendants' electronic document retention practices.

(a) Document Retention.

Beginning in June 2002 BCE instructed its employees, officers and directors to preserve documents. Prior to the commencement of the Teleglobe Lending Syndicate Lawsuit against BCE on July 12, 2002, BCE's normal practice was to maintain back-ups of its servers, and to overwrite the back-up tapes after a certain period of time (monthly back-ups were overwritten on a rolling 12-month basis and daily back-ups are over-written on a rolling 30-day basis). Following July 12, 2002, BCE gave instructions to the outsourcer for the back-up systems to stop over-writing monthly back-up tapes. See supra at 1.

4.     Martin Cossette shall serve as Defendants' "e-discovery liaison" as defined by Standard 2 of the Default Standards.

5.     Defendants reasonably anticipate problems to arise in connection with restoring documents from the backup tapes described in 2(c).

(a)     The large number of tapes maintained by Defendants contain a vast amount of duplicative, redundant data that is otherwise available on the servers or in individual hard drives. Eliminating such duplicates will be a costly and potentially time-consuming process.

(b)     Server backups were multiplexed to allow backup data streams from the servers to be written over across multiple tapes, thereby mixing data from

multiple servers onto a single tape. To restore data from a server for a specific date or custodians may require multiple tapes on which other server backup data is also stored. Furthermore, most catalogs of data describing what tapes were used for which backups were lost, some of the tapes or catalogues are corrupt, or have been overwritten in the course of business

(c)     There is no central, complete catalog or index tying the available backup tapes to specific users and servers. BCE is thus unable to verify whether its collection of backup tapes is a full and complete collection of tapes.

(d)     The backup system, including tapes, software and hardware, is old. This may result in data corruption of both backup tapes and catalogues. Furthermore, the backup system was not designed for e-discovery, which makes a massive restoration effort very difficult if not impossible for the majority of the backup tapes.

(e)     Therefore, processing the 600 tapes would be a highly labor-intensive and cumbersome procedure.

Dated: January 25, 2005
        Wilmington, Delaware

                        YOUNG CONAWAY STARGATT & TAYLOR, LLP

                        *Pauline K. Morgan*

                        Pauline K. Morgan (No. 3650)
                        The Brandywine Building
                        1000 West Street, 17th Floor
                        P.O. Box 391
                        Wilmington, DE 19899
                        (302) 571-6600

                            -and-

                        SHEARMAN & STERLING LLP
                        Stuart J. Baskin
                        George J. Wade
                        Daniel Schimmel
                        599 Lexington Avenue
                        New York, NY 10022
                        (212) 848-4000

                        Attorneys for Defendants

**13**



"Cochran, C Malcolm
IV"
<Cochran@RLF.com>

01/26/2005 01:39 PM

To: dschimmel@shearman com, gwade@shearman com
cc: "Varallo, Gregory" <varallo@RLF com>, "Silberglied. Russell"
     <Silberglied@RLF com>. "John P Amato"
     <JAmato@hahnhessen com>, "Gaza, Anne" <gaza@RLF com>
Subject: Teleglobe: Names of Debtor-Related Personnel. for Discovery DOC

<<Teleglobe: Names of Debtor Personnel. for Discovery DOC>> In anticipation of our 3pm call, I am

forwarding the attached  Teleglobe  Names of Debtor Personnel. for Discovery (:

Selected directors, officers and employees of the Debtors, or TI, who may have generated discoverable e data.[1]

Daniel Bergeron

Randy Bloxsome

Marc Bouchard

Michael Boychuk

John Brunette

Kieren Bustamante

Barry Bunin

Charles Childers

Ashwin Chitamun

Daniel Cinq-Mars

Carl Condon

Cynthia Eakin

Bill Enns

Serge Fortin

Paolo Guidi

Terry Jarman

Michel Lalande

Bruce Milla

Andre Mongrain

---

[1] Debtors do not intend to represent this as a list of all personnel who may have generated discoverable E data. Further, Debtors are not representing that they are able to access, or otherwise have in their possession, E data for each or all of the persons listed here.

Rather, this list is submitted in an effort to promote the parties' dialogue regarding appropriate e discovery

Kathy Morgan

Michael Neuman

Patrick Pichette

Tip Powers

Sally Runion

Rebecca Sciaccitano

Daniel Snyder

Stewart Verge

Mark VanDoorn

**14**



"Cochran, C. Malcolm
IV"
<Cochran@RLF.com>

01/20/2005 01:54 PM

To: gwade@shearman com. dschimmel@shearman com
cc: "John P  Amato" <JAmato@hahnhessen com>.
    dbarrasso@barrassoconsulting com. "Gaza. Anne"
    <gaza@RLF com>. "Varallo, Gregory" <varallo@RLF com>
Subject: Final List of BCE Custodiansc DOC

<<Final List of BCE Custodiansc DOC>> Gentlemen: Attached is the list of names we wish to have BCE
search, for discoverable electronic data.  We will prepare a similar list of Debtors' side folks, for your
use--on the understanding that you are undertaking to add any names from the BCE side we may have
left off of the attached list.

    We will look forward to re-convening our meet and confer next Wednesday   Mike

Final List of BCE Custodiansc (2) [

2/26/05 4:27 PM

List of BCE "custodians" from whom Plaintiffs are seeking e-discovery at this time:

>Marc A. Bouchard (President and CEO of Bell Nexxia; Director of OTI, TPR, TUSA, THUS, THC and TIC; President, North American Markets and Corporate Development of TCC and EVP; and President, North American Markets & Corporate Development of TUSA)

>Michael T Boychuk (Senior Vice President and Treasurer of BCE; Vice President and Treasurer of Bell Canada; EVP and CFO of TI; Director of THUS, THC, TMI TSI and TIC; President and Treasurer of THUS, THC and TIC; President and CEO of TMI and TSI)

>Anna Coccia (Associate Director - Accounting Policies Bell Canada)

>Carl Condon (Vice President – Network Management Line Operations of Bell Canada; Vice President of Bell Nexxia; Vice President of TI);

>Richard J. Currie (Chairman of BCE; Director of TI)

>Elie Daher (Bell Canada - Associate Director External Reporting)

>Yanick DeGrandpre (BCE Assoc. Director, M&A/Corporate Finance)

>Anthony S. Fell (Director of BCE; Director of TI)

>Serge Fortin (President of Bell Acti Media; Director of TCC, TUSA, OTI, THUS, THC, TIC, TMI, TPR, TSI and TCC; President, Global Markets of TCC)

>Francois Gauvin (BCE Senior Director, Corp Taxes; Ass't Corp Secretary of TI pre-11/00; Director and/or Officer of multiple Debtors pre-11/00)

>Jerome Huret (BCE/position)

>Terence J. Jarman (Vice Chair of Bell Canada; President of Bell Nexxia; Director of TI; President and CEO of TI, TCC and TUSA)

>Thomas Kierans (Director of BCE; Director of TI)

>Michel Lalande (Gen Counsel of BCE; Asst Secretary of TI; THUSC and THC)

>Andrea LeBlanc (BCE VP, Corporate Finance)

>Pierre Lessard (BCE VP, Corporate Finance)

>Martin Loranger (BCE/Finance)

David Masse (Assistant Corporate Secretary of BCE and TI);

David McGraw (BCE Vice President, M&A/Corp Finance)

Jean C. Monty (Chairman, President and CEO of BCE; Chairman of BCE Emergis; Chairman of TI)

Peter Nicholson (BCE Chief Strategy Officer)

Patrick Pichette (EVP of BCE; Director/EVP of Operations and Finance TCC)

Ildo Ricciuto (BCE in-house counsel)

Frank Rodi (BCE Associate Director, Treasury Operations)

Michael Rosenhek (BCE Inc./Bell Canada Financing & Treasury)

Marc Ryan (Corporate Secretary of BCE)

Michael J. Sabia (Director, President and CEO of BCE; CEO of Bell Canada; Chairman of Bell Globemedia; Director, President and COO of TI)

Wesley Scott (BCE Chief Corporate Officer)

Tom Sheridan (CEO of Bell Canada)

Stephen P. Skinner (Vice President and Corporate Controller of BCE; Vice President and Controller of TI)

H. Arnold Steinberg (Director of Bell Canada Int'l. Inc.; Director of TI)

Jose Tetrault (BCE/Finance-Treasury)

Martine Turcotte (General Counsel of Bell Canada)

Siim Vanaselja (CFO of Bell Canada and BCE)

Pierre VanGheluwe (Director - Banking, Bell Canada)

Stewart Verge (Group Vice President of Bell Ontario; Vice President-Networks of Bell Canada; Director of OTI and TPR; EVP and President, Global Operations of TCC and TUSA)

George Walker (Director-Investor Relations BCE/Bell Canada)

**15**



"Cochran, C. Malcolm
IV"
<Cochran@RLF.com>

01/27/2005 06:02 PM

To: "Daniel Schimmel" <DSchimmel@Shearman com>
cc: "Gaza. Anne" <gaza@RLF com>, gwade@shearman.com. "John P.
Amato" <JAmato@hahnhessen com>. "Silberglied. Russell"
<Silberglied@RLF com>, "Varallo, Gregory" <varallo@RLF com>.
"Piret Loone" <PLoone@Shearman com>
Subject: RE: Debtors' custodians of electronic documents

With regard to your item 1, are you prepared to give us the same
information (i e -the criteria that you used to identify each) for the
BCE custodians you identified?

2.  Yes, we will provide information with regard to these individuals


-----Original Message-----
From: Daniel Schimmel [mailto:DSchimmel@Shearman com]
Sent: Thursday, January 27, 2005 5:31 PM
To: Cochran, C. Malcolm IV
Cc: Gaza, Anne; gwade@shearman.com; John P  Amato; Silberglied, Russell;
Varallo, Gregory; Piret Loone
Subject: Debtors' custodians of electronic documents



Dear Malcom:

1  This é-mail is in response to the list of the Debtors' custodians of
electronic documents that you submitted yesterday   The list looks fine
for purposes of searching electronic files, and we would simply add V V.
Cooke.
We would like to understand, however, the criteria that you used to
identify each of those custodians   We would like to address this
tomorrow in our call if at all possible

2  We also would like to know who the following individuals are,
including their affiliation:

Randy Bloxsome
Barry Bunin
Ashwin Chitamun
Sally Runion
Rebecca Sciaccitano

Best regards,

Daniel


Daniel Schimmel
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022
Phone: (212) 848-4608
Fax:     (646) 848-4608

**16**



"Cochran, C. Malcolm
IV"
<Cochran@RLF.com>

02/08/2005 04:03 PM

To: "Daniel Schimmel" <DSchimmel@Shearman com>
cc: "George J Wade" <GWade@Shearman com>
Subject: RE: search terms follow-up

You left a message on my cell phone at some point late yesterday, which
I retrieved this morning.  I have not been in a position to return the
call today.   I will do so when I have the opportunity.

-----Original Message-----
From: Daniel Schimmel [mailto:DSchimmel@Shearman.com]
Sent: Tuesday, February 08, 2005 3:35 PM
To: Cochran, C. Malcolm IV
Cc: George J Wade
Subject: search terms follow-up

Malcom:

I have left you a message yesterday asking that you return my call.  We
have agreed that, before conducting a search for electronic documents,
we will attempt to identify the number of documents that will be
retrieved using the list of search terms.   I called you to discuss the
dates on which the plaintiffs and the defendants will be able share that
information.  I also mentioned that I had a couple of questions that I
would like to discuss if you have a moment.

Thank you very much.

Daniel

Daniel Schimmel
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022
Phone: (212) 848-4608
Fax:     (646) 848-4608



"Cochran, C. Malcolm IV" <Cochran@RLF.com>

02/08/2005 06:22 PM

To: "Daniel Schimmel" <DSchimmel@Shearman com>
cc: "George J Wade" <GWade@Shearman.com>.
JAmato@hahnhessen.com. "Varallo, Gregory" <varallo@RLF com>
Subject: RE: Debtors' document preservation

Mr. Schimmel:  Please be advised that, with regard to paragraph 11 of my letter to you dated January 31, 2005, further investigation has revealed that there are additional individuals who may have had involvement in events relating to this dispute, for whom the Debtors have e data resident on a server or servers.  I expect to receive a listing of all such individuals, together with basic information regarding the date ranges of the data, shortly

With regard to your messages regarding the progress of BCE's efforts to determine the volume of data that will be turned up using our key word/custodian approach, feel free to send me an email so reporting   As for the Debtors' progress in that regard, I have inquired and should have more specific information tomorrow.  You should also feel free to ask Mr. Cooke, if you wish, during his deposition tomorrow

Similarly, as for your inquiries below, feel free to discuss these matters with Mr  Cooke during his deposition tomorrow.

If you have further questions, I will be in meetings this evening, but if you send an email I will respond.


-----Original Message-----
From: Daniel Schimmel [mailto:DSchimmel@Shearman.com]
Sent: Friday, February 04, 2005 4:30 PM
To: Cochran, C. Malcolm IV
Cc: George J Wade; JAmato@hahnhessen.com
Subject: Debtors' document preservation



Malcom:

In our telephone conference on January 20, we asked when the Debtors first requested that employees, directors, or officers preserve and collect documents   You said that you would follow up, but we have not heard back.
Could you provide an answer to that question?  Could you also let us know whether any of the Debtors had a policy regarding the preservation of documents, and if so provide us with a copy of that policy prior to Mr.
Cooke's deposition

Thanks very much

Daniel

Daniel Schimmel
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022
Phone: (212) 848-4608
Fax:    (646) 848-4608

**17**

**Daniel Schimmel**

01/28/2005 11:35 AM

To: "Cochran, C  Malcolm IV" <Cochran@RLF com>, George J
Wade/NY/NA/ShS@ShSDOMAIN
cc: JAmato@hahnhessen.com
Subject: Re: Search terms

Please find attached our list of search terms for discussion this afternoon



NYDOCS04-420026-Search Terms D

Daniel Schimmel
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022
Phone: (212) 848-4608
Fax:    (646) 848-4608

360 networks
Annual report
Bank
Bankruptcy
BCE letter
BCE risk
Budget
Business plan
Capex
Capital expenditure
Capital structure
Cash flow
Cash requirement
Commit/ment
Control
Core
Decline
Default
Distressed
Financial assistance
Financial commitment
Financial plan
Financial review
Financial statement
Financial support
Financing contract
Funding commitment
Funding contract
Genuity
Global Crossing
Guarantee/y
Insolvency
Lazard
Level3
Overcapacity
Promise
Fifth Series Preferred Shares
Third Series Preferred Shares
3rd
5th
Redeem shares
Redemption
Restructuring
Revenue shortfall
Shakeout
Strategic investment partner

Support
Sustain
Syndicate
Tax gain
Tax loss
Term Sheet
TSInet
Williams
XO

**18**



"Cochran, C. Malcolm
IV"
<Cochran@RLF.com>

01/28/2005 11:47 AM

To: dschimmel@shearman.com
cc: gwade@shearman.com. "John P. Amato¨
    <JAmato@hahnhessen.com>. "Silberglied. Russell"
    <Silberglied@RLF.com>
Subject: Teleglobe: Excel/search terms.XLS

<<Teleglobe: Excel/search terms XLS>> Attached is our list of proposed search terms

Teleglobe  Excel  search terms X

DEBTORS PROPOSED SEARCH TERMS

All searches should be case insensitive


"2001 plan"
"2002 plan"
acquisition*
adjust*
advance*
Ameritech
analyst*
"Assignment and Assumption Agreement"
audit*
"bank facility"
"bank line"
"Bank of Montreal"
BOM
"B of M"
bankruptcy
"BCE Energis"
"Bell Canada"
"board of director*"
bond*
budget*
build
buildout
"build out"
"business plan"
capex
capital
capx
carryforward
"carry forward"
cash
"cash flow"
Chris/Christopher
"CICA 3062"
combination
commit*
control
credit*
D&T
debt*
"December 12*"
12/12/*
12-12-*
"Dec 12*"
"Dec-12*"
"Dec  12*"
"12-Dec*"
"12 Dec*"

deficit*
Deloitte*
depreciat*
dilut*
discontinu*
dividend
earning*
EBIT
EBITDA
Emergis
enterpris*
EPS
equity
Excel
expenditure*
facilities
facility
"February 28*"
2/28/*
02/28/*
2-28-*
02-28-*
"Feb 28*"
"Feb-28*"
"Feb. 28*"
28/2/*
28/02/*
28-2-*
28-02-*
"28-Feb*"
"28 Feb*"
fiducia*
"Fifth Series Pref*"
"5th Series Pref*"
financ*
forecast*
fourth
fund*
future
GAAP
Ginette
GN
globe*
"going concern*"
goodwill*
"good will*"
guarantee*
Holdings
illiquid
impair*
implement*
"Independent Committee"

insolven*
integrat*
"intra-company balance"
"intracompany balance"
Investor*
Jones
Lazard
line*
"line* of credit"
liquidat*
loss*
Villencure
"M&A"
"M & A"
"March 6*"
3/6/*
03/06/*
3-6-*
03-06-*
"Mar 6*"
"Mar-6*"
"Mar  6*"
"Mar 06*"
"Mar-06*"
"Mar  06*"
6/3/*
06/03/*
6-3-*
06-03-*
"6-Mar*"
"6 Mar*"
"06-Mar*"
"06 Mar*"
margin*
mark*
merger*
Nortel
one-time
"one time"
Optel
OTI
partner*
preferred
proforma*
"Project X"
projection*
projected
put
qualif*
rating*
redeem*
redemption*

refinance*
resign*
restructur*
retract*
revised
"SAS 142"
142
SBC
"Southwestern Bell"
setoff*
software
solven*
support*
synerg*
tax*
TCC
Teleglobe
TGO
THC
"Third Series Pref*"
"3rd Series Pref*"
THUS
THUSC
TI
TINC
trademark*
treasur*
treatment*
TTC
TUSA
unacceptable
valuation*
value*
Vartec
Wiegand
writedown*
"write down*"
YEE

"intangible asset"
"Management Discussion & Analysis"
MD&A
Nantel
shortfall
"short fall"

("&" may require special handling)

("&" may require special handling)
("&" may require special handling)

("&" may require special handling)

**19**



"Cochran, C. Malcolm
IV"
<Cochran@RLF.com>

02/18/2005 04:15 PM

To: "Daniel Schimmel" <DSchimmel@Shearman.com>
cc: "George J Wade" <GWade@Shearman.com>
Subject: RE: electronic discovery

I am assuming you have not reviewed the email and revised list of terms
that I sent to Barrasso and Felsky earlier today. They are currently
reviewing a revise list of search terms, which reduces the prior
combined list by some 100 terms.

-----Original Message-----
From: Daniel Schimmel [mailto:DSchimmel@Shearman.com]
Sent: Friday, February 18, 2005 4:08 PM
To: Cochran, C. Malcolm IV
Cc: George J Wade
Subject: electronic discovery

Malcom:

We have a more complete answer regarding the number of documents that
will be retrieved using the search terms that the plaintiffs and the
defendants provided. Specifically, we have an answer regarding the
documents located on the hard drives that BCE was able to forward to
Commonwealth Legal and the data on BCE's servers. In total, using the
search terms that the plaintiffs and the defendants have identified, we
estimate that over 2 million pages of documents would be retrieved. As
we previously discussed, the main problem is that the search terms as
currently drafted do not retrieve only responsive documents. For
instance, you have requested that we search the hard drives and servers
for documents that contain the search term "Excel" which causes the
retrieval of numerous unresponsive and irrelevant documents, which
happen to attach Excel charts or to refer to the Excel software.
Moreover, search terms need to be placed in proximity of each other in
order to obtain the relevant context.

We understand that Diane Barrasso has approached Commonwealth Legal
today and has agreed that search terms should be placed in the proximity
of each other. We appreciate this agreement and look forward to working
with you.

Daniel Schimmel


Daniel Schimmel
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022
Phone: (212) 848-4608
Fax:    (646) 848-4608
*******************************NOTICE*********************************
***
This transmittal and/or attachments may be a confidential
attorney-client communication or may otherwise be privileged or
confidential. If you are not the intended recipient, you are hereby
notified that you have received this transmittal in error; any review,
dissemination, distribution or copying of this transmittal is strictly
prohibited. If you have received this transmittal and/or attachments in
error, please notify us immediately by reply or by telephone (call us
collect at +1 212-848-8400) and immediately delete this message and all
its attachments.

Shearman & Sterling LLP is a limited liability partnership organized in
the United States under the laws of the State of Delaware. which laws
limit the personal liability of partners.

**20**



"Cochran, C. Malcolm IV"
&lt;Cochran@RLF com&gt;

02/23/2005 03:53 PM

To: DSchimmel@Shearman com
cc: GWade@Shearman com, mfelsky@commonwealthlegal com
Subject: Re: Search results

Please search, without further delay, the revised list of search terms that we
provided to your consultant and advise us of the result. We will do the same
C. Malcolm Cochran, IV
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE  19801
Direct Ext.  302 651 7506


-----Original Message-----
From: Daniel Schimmel &lt;DSchimmel@Shearman.com&gt;
To: Cochran, C. Malcolm  IV &lt;Cochran@RLF.com&gt;
CC: George J Wade &lt;GWade@Shearman.com&gt;; mfelsky@commonwealthlegal com
&lt;mfelsky@commonwealthlegal com&gt;
Sent: Wed Feb 23 15:47:15 2005
Subject: Re: Search results

Malcolm:

On February 18, we indicated to you that, using the search terms that the
plaintiffs and the defendants had identified, we estimate that over 2
million pages of documents would be retrieved. Commonwealth Legal and
Diane Barrasso subsequently engaged in efforts to narrow down the search
terms and make the electronic search more meaningful. Specifically,
Commonwealth Legal pointed out a list of search terms that are too common.
and indicating that collecting documents that contain such terms will
result in the retrieval of a large number of non-responsive documents.
Diana Barrasso agreed with the process and added some terms to the list
because she believed that they were too common to be searched.
Subsequently, Commonwealth Legal conducted a search for those terms based
on a sample of 103,591 documents and determined, among other things, that
half of the documents on the sample contain at least one of nine common
words. This demonstrates that the list of search terms contain too many
common terms, and that the proposed search method can be significantly
improved.

As you know, Commonwealth Legal has suggested that the parties adopt a more
meaningful and logical method of searching, which would involve narrowing
down the number of search terms and combining terms in a logical fashion to
avoid searching for terms out of context. We will save a lot of resources
and time that way and comply with the Default Standards. On Friday
afternoon, you submitted a revised list of search terms, and we will
conduct a search based on the sample described above and give you the
results tomorrow. We reiterate, however, that the parties should discuss a
more logical search method. We are prepared to discuss this with you
Among other things. the parties could search, for example, Teleglobe OR TGO
OR Téléglobe AND a list of key words.

We look forward to talking to you.

Daniel

Daniel Schimmel
Shearman & Sterling LLP
599 Lexington Avenue

**21**



"Cochran, C. Malcolm
IV"
<Cochran@RLF com>

02/18/2005 01:52 PM

To: dbarrasso@barrassoconsulting com.
    mfelsky@commonwealthlegal com
cc: dschimmel@shearman com, gwade@shearman com. "Gaza, Anne"
    <gaza@RLF com>
Subject: Teleglobe v  BCE Combined Proposed Search Terms 2 18 05.XLS

Diane and Martin:  During a telephonic meet and confer held earlier this week, the parties discussed revising their search term lists, so that e data searching might proceed in a more efficient way  I have attached a revised, edited list of search terms prepared by the Plaintiffs  This list combines the lists submitted by both sides (following the elimination of duplication from the two lists )  From my standpoint (and reserving both side's rights to ask for additional searches) I would envision that both BCE and Teleglobe would run the full combined list of search terms against the e data each side has proposed to search

During our call earlier this week, it was discussed that the parties would put their respective e data consultants in touch with one another, to discuss whether the list might be further modified, to make searching more efficient.  Frankly, I do not want to compromise the substantive scope of the search any further--but am willing to entertain suggestions that do not do that  During the discussions with Messrs Schimmel and Wade, it was agreed that we would give you two an opportunity to make suggestions, before the searches are commenced--hence, the attached

From Plaintiffs' standpoint, this is time sensitive.  We would like to be in a position to commence searching early next week.  I would appreciate it if you two would connect and discuss  Diane--Martin's telephone number is 4 16-703-3755.  Thanks

<<Combined Proposed Search Terms 2 18 05 XLS>>  Combined Proposed Search Terms 2 18 05

| PROPOSED SEARCH TERMS | | X |
|---|---|---|
| 141 | X | |
| 142 | X | |
| 2001 plan | | X |
| 2002 plan | X | |
| 360 networks | | X |
| 3rd | | X |
| Third | X | |
| 5th | | X |
| Fifth | | X |
| advance* | | X |
| Ameritech | X | |
| analyst* | | |
| Annual Report | X | |
| Assignment and Assumption Agreement | | X |
| audit* | | X |
| Bank of Montreal | | X |
| bankruptcy | | X |
| BCE letter | | X |
| BCE risk | | X |
| board of director* | | X |
| BOM | X | |
| bond* | X | |
| budget* | | X |
| build | | X |
| buildout | | X |
| business plan | X | |
| capex | X | |
| capital | | X |
| capx | X | |
| carry forward | | X |
| carryforward | X | |
| cash | | X |
| CICA 3062 | | X |
| commit | X | |
| commitment | | X |
| committed | | X |
| control* | | X |
| core | | X |
| credit* | | X |
| D&T | X | |
| debt* | | X |
| declin* | | X |
| default* | | X |
| deficit | | X |
| Deloitte | | X |
| depreciat* | | X |
| dilut* | | X |
| discontinu* | | X |
| distressed | | X |
| dividend | | X |
| earnings | | X |

| | | |
|---|---|---|
| EBIT | | X |
| EBITDA | | X |
| enterprise | X | |
| EPS | X | |
| equity | X | |
| Excel | X | |
| expenditure* | X | |
| facilities | X | |
| facility | | X |
| finance | | X |
| financial assistance | | X |
| financial plan | X | |
| financial review | | X |
| financial statement | X | |
| financing | X | |
| forecast* | | X |
| fourth | | X |
| fund* | | X |
| GAAP | | X |
| Ginette | | X |
| global crossing | | X |
| globe* | | X |
| GN | | X |
| going concern | | X |
| good will | X | |
| goodwill | | X |
| guarantee* | | X |
| guaranty | | X |
| illiquid* | | X |
| impair* | X | |
| implement* | X | |
| Independent Committee | | X |
| insolven* | | X |
| intangible | | X |
| intracompany balance | | X |
| intra-company balance | | X |
| Jones | | X |
| Lazard | | X |
| level3 | | X |
| line | | X |
| liquidat* | | X |
| loss* | | X |
| M & A | | X |
| M&A | | X |
| Management Discussion & Analysis | | X |
| margin | X | |
| MD&A | | X |
| merger | | X |
| Nantel | | X |
| Nortel | | X |
| note | | X |
| notes | | X |

| | | |
|---|---|---|
| one time | | X |
| one-time | | X |
| OTI | X | |
| overcapacity | | X |
| partner* | X | X |
| preferred | | X |
| proforma* | | X |
| Project X | | X |
| projected | X | |
| projection* | | X |
| promis* | | X |
| put | | X |
| rating* | X | |
| redeem* | | X |
| redemption* | | X |
| refinanc* | | X |
| resign* | | X |
| restructur* | | X |
| revenue shortfall | X | X |
| revised | X | |
| SBC | | X |
| setoff | | X |
| shakeout | X | |
| share | | X |
| shares | | X |
| short fall | | X |
| shortfall | X | |
| software | | X |
| solven* | | X |
| Southwestern Bell | | X |
| strategic investment partner | | X |
| support* | | X |
| sustain* | | X |
| syndicate | | X |
| tax | | X |
| taxable gain | | X |
| taxable loss | | X |
| TCC | | X |
| Teleglobe | | X |
| term sheet | | X |
| TGO | | X |
| THC | X | |
| THUS | | X |
| THUSC | | |
| TI | | |
| TINC | | |
| trademark | | |
| treatment | | |
| TSInet | | |
| TTC | | |
| TUSA | | |
| valuation* | | |

value
write down
writedown
XO
YEE

22



"Diane Barrasso"
<Dbarrasso@barrasso
consulting com>

02/23/2005 09:07 AM

To: "Martin Felsky" <mfelsky@commonwealthlegal com>
cc: <dschimmel@shearman com>
Subject: RE: Search results

Martin,

Thank you for the detailed report  Can you please describe for me what the "readily searchable data" means  Thanks

Diane

-----Original Message-----
**From:** Martin Felsky [mailto:mfelsky@commonwealthlegal.com]
**Sent:** Tuesday, February 22, 2005 2:42 PM
**To:** Diane Barrasso
**Cc:** dschimmel@shearman.com
**Subject:** Search results

This message (including attachments, if any) is confidential, may be privileged and is intended for the above-named recipient(s) only  If you have received this message in error, please notify me by return email and delete this message from your system  Any unauthorized use or disclosure of this message is strictly prohibited

Hi Diane - further to our discussion last week, I have the following individual search results based on most of the words we identified together as being potentially too common or broad in scope  Total documents in representative sample database searched: 103,591 (this does not represent all the data, just the readily searchable data)

Results (records retrieved, not hits) :

advance* 8,961
audit* 7,012
budget* 4,885
build 3,635
capital 16,973
cash 15,458
control* 14,390
debt* 13.756
declin* 3.978
discontinu* 3,589
excel 10,818
finance 12.952
fourth 3.160
implement* 6.449
line 10,467
note 19,305
notes 10.196
preferred 8,012
put 0 (stopped)
revised 9,620
share 12,892
software 5,956
support 11,615
tax 14.626

THUS 0
treatment 3,151
value 13,772

I believe the results above do support our hypothesis that many of these words are too
common on their own  To confirm, I combined nine of the most common words with "or" and
retrieved 50% of all the documents in the database:

value or capital or cash or debt* or line or finance or excel or note or notes = 51,904 records

Please let me know how you would like to proceed. Many thanks,

Martin Felsky, Ph D , J D
Chief Executive Officer
Commonwealth Legal Inc
Canada's National Litigation Support Services Company
mfelsky@commonwealthlegal.com
416-703-3755 x226
www commonwealthlegal com

-----------------------------------------------
This message (including attachments, if any) is confidential  may be
privileged and is intended for the above-named recipient(s) only  If
you have received this message in error, please notify me by return
email and delete this message from your system. Any unauthorized use or
disclosure of this message is strictly prohibited

Martin Felsky, Ph D , J D
Chief Executive Officer
Commonwealth Legal Inc
Canada's National Litigation Support Services Company
mfelsky@commonwealthlegal.com
416-703-3755 x226
www commonwealthlegal com

-----------------------------------------------
This message (including attachments, if any) is confidential, may be
privileged and is intended for the above-named recipient(s) only  If
you have received this message in error, please notify me by return
email and delete this message from your system  Any unauthorized use or
disclosure of this message is strictly prohibited

**23**



"Cochran, C. Malcolm IV"

&lt;Cochran@RLF.com&gt;

02/23/2005 09:57 AM

To: "Daniel Schimmel" &lt;DSchimmel@Shearman com&gt;
cc: "George J Wade" &lt;GWade@Shearman com&gt;
Subject: RE: Search results

I am aware of the numbers of documents turned up in connection with your consultant's request that an initial search be focused on just the terms that he considers to be overly broad--i.e., the list below. Frankly, the numbers of documents turned up in a search of those terms do not impress me as more than I would expect. We believe that BCE should either produce those to us now, so that we may review and cull out the responsive ones (in accordance with my proposal that we would do that, subject to appropriate reservations for BCE on confidentiality, and privilege)--or, BCE should promptly under take to review these electronic documents themselves, and produce the responsive ones

When will we have the results of the search of the entire list of key words?

I will report shortly on the results of our searches

-----Original Message-----
From: Daniel Schimmel [mailto:DSchimmel@Shearman com]
Sent: Wednesday, February 23, 2005 9:30 AM
To: Cochran, C. Malcolm IV
Cc: George J Wade
Subject: Search results

Malcom:

Commonwealth Legal and Diane Barrasso are engaged in efforts to narrow down the search terms and make the electronic search more meaningful. Commonwealth Legal has provided Diane with a detailed report indicating, out of a universe of 103, 591 electronic documents, the number of documents that contain each of the search terms below. We have also indicated the number of documents that contain a combination of nine common search terms, which reflects that half of those 103,591 documents are retrieved when the search is conducted

Could you let us know what the results are when the Debtors run that search in their electronic documents? I don't think you have provided us yet with an indication of the number of documents (or pages) that are retrieved when you search for the proposed terms.

Best regards,

Daniel


Daniel Schimmel
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022
Phone: (212) 848-4608
Fax:     (646) 848-4608
----- Forwarded by Daniel Schimmel/NY/NA/ShS on 02/23/2005 09:22 AM
-----

"Martin Felsky"

&lt;mfelsky@commonwealt          To:
&lt;dbarrasso@barrassoconsulting.com&gt;

hlegal com&gt;               cc:
&lt;dschimmel@shearman com&gt;

Subject:   Search
results
02/22/2005 02:41 PM

This message (including attachments, if any) is confidential, may be
privileged and is intended for the above-named recipient(s) only. If
you have received this message in error, please notify me by return
email and delete this message from your system. Any unauthorized use
or
     disclosure of this message is strictly prohibited.

Hi Diane - further to our discussion last week, I have the following
individual search results based on most of the words we identified
together as being potentially too common or broad in scope. Total
documents in representative sample database searched: 103,591 (this
does not represent all the data, just the readily searchable data)

Results (records retrieved, not hits) :

advance* 8,961
audit* 7,012
budget* 4,885
build 3,635
capital 16,973
cash 15,458
control* 14.390
debt* 13,756
declin* 3,978
discontinu* 3,589
excel 10,818
finance 12,952
fourth 3,160
implement* 6,449
line 10,467
note 19.305
notes 10,196
preferred 8,012
put 0 (stopped)
revised 9,620
share 12,892
software 5,956
support 11,615
tax 14,626
THUS 0
treatment 3,151
value 13,772

I believe the results above do support our hypothesis that many of
these words are too common on their own. To confirm, I combined nine

of
    the most common words with "or" and retrieved 50% of all the
documents
    in the database:

    value or capital or cash or debt* or line or finance or excel or
note
    or notes = 51,904 records

    Please let me know how you would like to proceed  Many thanks,

    Martin Felsky, Ph D., J.D.
    Chief Executive Officer
    Commonwealth Legal Inc.
    Canada's National Litigation Support Services Company
    mfelsky@commonwealthlegal.com
    416-703-3755 x226
    www.commonwealthlegal.com

    ----------------------------------------------
    This message (including attachments, if any) is confidential, may be
    privileged and is intended for the above-named recipient(s) only  If
    you have received this message in error, please notify me by return
    email and delete this message from your system. Any unauthorized use
or
    disclosure of this message is strictly prohibited

    Martin Felsky, Ph.D., J.D.
    Chief Executive Officer
    Commonwealth Legal Inc.
    Canada's National Litigation Support Services Company
    mfelsky@commonwealthlegal.com
    416-703-3755 x226
    www.commonwealthlegal.com

    ----------------------------------------------
    This message (including attachments, if any) is confidential. may be
    privileged and is intended for the above-named recipient(s) only. If
    you have received this message in error, please notify me by return
    email and delete this message from your system. Any unauthorized use
or
    disclosure of this message is strictly prohibited

    (See attached file: mfelsky@commonwealthlegal com vcf)


*******************************NOTICE*********************************
***
This transmittal and/or attachments may be a confidential
attorney-client communication or may otherwise be privileged or
confidential  If you are not the intended recipient, you are hereby
notified that you have received this transmittal in error; any review,
dissemination, distribution or copying of this transmittal is strictly
prohibited  If you have received this transmittal and/or attachments in
error, please notify us immediately by reply or by telephone (call us
collect at +1 212 848-8400) and immediately delete this message and all
its attachments

Shearman & Sterling LLP is a limited liability partnership organized in
the United States under the laws of the State of Delaware, which laws
limit the personal liability of partners.