### IN THE UNITED STATE DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: Teleglobe Comm. *et al.*, | ) | Chapter 11 |
| | ) | Jointly Administered |
| Debtors. | ) | |
| _____ | ) | Bankr. Case No. 02-11518 (MFW) |
| | ) | |
| Teleglobe USA Inc. *et al.*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Action No. 04-1266 (SLR) |
| | ) | |
| BCE Inc. *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## CORRECTED ANSWER OF DEFENDANTS TO THE COMPLAINT

Defendants BCE Inc. and Michael T. Boychuk, Marc A. Bouchard, Serge Fortin,

Terence J. Jarman, Stewart Verge, Jean C. Monty, Richard J. Currie, Thomas Kierans, Stephen P.

Skinner, and H. Arnold Steinberg (hereinafter referred to collectively as the "Defendants" unless

referenced individually) for their Answer to the Complaint filed by Teleglobe Communications

Corporation et al. (collectively the "Debtors") on May 26, 2004 and hereby respond to the allegations

in the Complaint as follows (where paragraph numbers correspond to the paragraph numbers in the

Complaint):

### Introduction

1. Deny the averments of paragraph 1, except state that the Complaint speaks for itself.

2. Deny the averments of paragraph 2, except state that the Complaint speaks for itself.

3. Admit the averments of sentence three of paragraph 3, except state that Teleglobe Inc. ("TI") was involved in various other businesses from time to time; and deny the averments of sentence four, except state that TI and its Canadian affiliates had business relationships worldwide.

1

4.    Admit the averments of paragraph 4, except state that BCE Inc. ("BCE") disposed of BCE Emergis in May 2004.

5.    Deny the averments of sentence three of paragraph 5, except state that as of August 31, 2000, Bell Canada owned 23% of TI, Kenny A. Troutt and related entities owned 18%, Charles Sirois and Telesystem Telecom Ltd. owned 9%, and the remainder of TI was owned by public shareholders.

6.    Deny the averments of sentence two of paragraph 6, except state that the acquisition of TI by BCE was a strategic transaction; and that BCE paid billions of dollars (primarily in shares of its common stock) for the 77% of TI that it did not own.

7.    Deny the averments of sentence two of paragraph 7, except state that the Debtors were involved in the construction, operation and maintenance of the GlobeSystem; and that Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in sentence five of paragraph 7.

8.    Deny the averments of paragraph 8, except state that, in 1999, TI's directors were advised that the estimated cost to build GlobeSystem was $5 billion.

9.    Deny sentences two through four of paragraph 9.

10.    Deny the averments of paragraph 10, except state that the Complaint speaks for itself.

**JURISDICTION AND VENUE**

11.    Admit the averments of paragraph 11.

12.    Admit the averments of paragraph 12.

13.    Admit the averments of paragraph 13.

14.    Admit the averments of paragraph 14.

15.    Admit the averments of paragraph 15.

2

16.   State, with respect to the averments of paragraph 16, that Defendants consent to the entry of final orders and/or judgments by the United States District Court for the District of Delaware with respect to this adversary proceeding, the references to the bankruptcy court hearing having been withdrawn.

## PARTIES

17.   Admit the averments of paragraph 17.

18.   Deny the averments of the first sentence of paragraph 18; state that Defendants are without knowledge or information sufficient to form a belief as to the truth of sentence two of paragraph 18, except that Teleglobe Communications Corporation ("TCC"), Teleglobe USA Inc. ("TUSA"), Optel Telecommunications, Inc. ("OTI") were headquartered in Reston, Virginia; and deny the averments of sentence three, except state that TCC and certain other of its affiliates were subsidiaries of TI and were involved in the construction of GlobeSystem.

19.   Admit the averments of paragraph 19.

20.   Deny the averments of sentence two of paragraph 20, except state that Michael T. Boychuk ("Boychuk") was an officer or director of BCE, TI, or certain of the Debtors during various times relevant to this action.

21.   Deny the averments of paragraph 21, except state that Marc A. Bouchard ("Bouchard") is a citizen and resident of Canada and was an officer or director of certain of the Debtors during various times relevant to this action.

22.   Deny the averments of sentence two of paragraph 22, except state that Serge Fortin ("Fortin") was an officer or director of certain of the Debtors during various times relevant to this action.

3

23.    Deny the averments of sentence two of paragraph 23, except state that Terence Jarman ("Jarman") was an officer or director of certain of the Debtors during various times relevant to this action.

24.    Deny the averments of sentence two of paragraph 24, except state that Stewart Verge ("Verge") was an officer or director of certain of the Debtors during various times relevant to this action.

25.    State, with respect to the averments of paragraph 25, that the Complaint speaks for itself.

26.    Deny the averments of paragraph 26, except state that Jean C. Monty ("Monty") is a resident of Canada who also spends some time in North Palm Beach; that Monty was Chairman of BCE from April 26, 2000 through April 23, 2002; that Monty was Chief Executive Officer of BCE from May 6, 1998 through April 23, 2002; that Monty was President of BCE from October 1, 1997 through December 1, 2000; that Monty was Chairman of TI from February 15, 2000 through April 23, 2002; and that Monty was Chief Executive Officer of TI from November 1, 2000 through April 23, 2002.

27.    Deny the averments of sentence four of paragraph 27, except state that in April 2002, Richard Currie ("Currie") was appointed Non-Executive Chairman of the Board of BCE; that he was a director of TI from December 2000 to April 23, 2002; and that he was a director of BCE at various times relevant to this action.

28.    Admit the averments of paragraph 28.

29.    Admit the averments of paragraph 29.

30.    Deny the averments of sentence two of paragraph 30, except state that H. Arnold Steinberg ("Steinberg") was a director of TI during various times relevant to this

4

59825 1001

action; and that for certain periods of time he served as a director of Bell Canada International Inc.

31.    State that the Complaint speaks for itself; and further deny the averments of paragraph 31, including the accuracy of Exhibit "A" referenced therein.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

32.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 32, except state that by 1999, TI and certain of its subsidiaries and affiliates owned or operated capacity on a large number of sub-sea fiber optic cables systems and resold that capacity.

33.    Deny the averments of the second sentence of paragraph 33.

34.    Admit the averments of paragraph 34, except state that Exhibit "B" referenced therein is an incomplete corporate organization chart.

35.    Deny the averments of paragraph 35.

36.    Deny the averments of paragraph 36.

37.    Deny the averments of paragraph 37, except state that BCE is and was Canada's leading communications company, with interests in a wide range of communication products and services, and its major holding was Bell Canada.

38.    Deny the averments of paragraph 38, except state that BCE raised $5.1 billion in June 1999 by selling 20% of Bell Canada's common stock to Ameritech (which subsequently merged with SBC Communications ("SBC")); that the agreement included put-call rights regarding SBC's 20% interest in Bell Canada Holdings Inc. ("BCH"); and that BCE spun off its interest in Nortel Networks Inc. ("Nortel").

39.  Deny the averments of sentences three and four of paragraph 39, except state that Monty made statements at a news conference on February 15, 2000, and refer to the videotape or audiotape of such news conference for the contents therein.

40.  Deny the averments of paragraph 40, except state that Monty made statements on February 15, 2000, and refer to the videotape or audiotape of such news conference for the contents therein.

41.  Deny the averments of paragraph 41, and further state that Defendants are without knowledge or information regarding statements made by TI's Chief Financial Officer on February 14, 2000.

42.  Deny the averments of paragraph 42, except state that Monty made statements on February 15, 2000, and refer to the videotape or audiotape of such news conference for the contents therein.

43.  Deny the averments of paragraph 43, except state that TI's financial performance in the spring of 2000 failed to meet projections.

44.  Deny the averments of paragraph 44.

45.  Deny the averments of paragraph 45, except state that TI's board was independent.

46.  Deny the averments of paragraph 46, except state that the TI board met on May 16, 2000, and refer to the minutes of that meeting for the contents therein.

47.  Deny the averments of paragraph 47, except state that on or about April 11, 2000, Jarman was appointed Chief Executive Officer of TCC by the Board of TCC and replaced Paolo Guidi; that prior to his appointment, Jarman was Vice-Chairman, Corporate at Bell Canada; and that Paolo Guidi remained Chairman of TCC subsequent to April 11, 2000.

48.    Deny the averments of paragraph 48, except state that Boychuk, Treasurer of BCE and
       Bell Canada, was appointed by the Board of TI to replace Claude Seguin as TI's Chief
       Financial Officer on or about May 31, 2000; and that Monty made statements at TI's
       board meeting on May 31, 2000 and refer to the minutes of that meeting for the
       contents therein.

49.    Deny the averments of paragraph 49, except state that Monty became Chairman of TI
       during February of 2000; and that on or about May 17, 2000, (a) Verge became
       President of Global Operations of TCC, (b) Bouchard became President, North
       American Markets and Corporate Development of TCC, and (c) Fortin became
       President of Global Markets of TCC.

50.    Deny the averments of paragraph 50.

51.    Deny the averments of paragraph 51, except refer to TI's June 18, 2000 board minutes
       for the contents therein.

52.    Deny the averments of paragraph 52, except refer to TI's June 18, 2000 board minutes
       for the contents therein.

53.    Deny the averments of paragraph 53, except state that BCE agreed to fund TI's needs
       through closing in November 2000 (the "Closing"); that BCE submitted a support
       letter to the lenders under the July 2000 Facility A and Facility B Credit Agreement
       (the "New Bank Facility"); and refer to the support letter sent to such lenders under
       the New Bank Facility dated June 29, 2000 for the contents therein.

54.    Deny the averments of paragraph 54, except state that the acquisition agreement
       entered into on February 15, 2000 (the "Acquisition Agreement") was amended on
       June 18, 2000 (the "Amendment"), and refer to that agreement for the contents
       therein.

7

55. Deny the averments of paragraph 55, except state that the bank facility in place in the spring of 2000 was replaced with the New Bank Facility of an amount of $1.25 billion; and refer to the terms of the New Bank Facility for the terms contained therein.

56. Deny the averments of paragraph 56.

57. Deny the averments of paragraph 57, except state that TI issued its second quarter report for the period ended June 30, 2000 and refer to such document for the contents therein.

58. Deny the averments of paragraph 58, except state that Monty made statements on August 9, 2000 regarding the 2000 second quarter results for TI, and refer to the transcript of that call for the contents therein.

59. Deny the averments of paragraph 59, including the accuracy of Exhibit "C" referenced therein.

60. Deny the averments of paragraph 60.

61. Deny the averments of paragraph 61.

62. Deny the averments of paragraph 62, except state that Boychuk was appointed TI's Chief Financial Officer and Executive Vice President – Finance on May 31, 2000 and resigned from his positions of Chief Financial Officer and Executive Vice President on April 23, 2002; that from September 29, 2000 through April 23, 2002, Boychuk was a director of Teleglobe Holdings (U.S.) Corporation ("THUS"), Teleglobe Holding Corp. ("THC"), Teleglobe Marine (U.S.) Inc. ("TMI"), Teleglobe Submarine, Inc. ("TSI") and Teleglobe Investment Corp. ("TIC"); that from September 29, 2000 through April 23, 2002, Boychuk was President and Treasurer of THC; that from November 1, 2000 through April 23, 2002, Boychuk was President and Treasurer of

8

THUS and TIC; that Boychuk was Chairman, President and Chief Executive Officer of TMI; and that Boychuk was Chief Executive Officer of TSI from September 29, 2000 through April 23, 2002.

63. Deny the averments of paragraph 63, except state that Bouchard became (a) President, North American Markets & Corporate Development of TCC on or about May 17, 2000; that he became a director of THUS, THC and TIC on November 1, 2000 and remained in such positions through January 23, 2002; that he was a director of OTI and TUSA for a period of time until January 23, 2002; that he was TUSA's President-North American Markets & Corporate Development for a period of time until February 16, 2002; and that prior to May 17, 2000, Bouchard was President and CEO of Bell Nexxia, a BCE subsidiary.

64. Admit the averments of paragraph 64.

65. Deny the averments of paragraph 65, except state that Jarman was Vice-Chairman, Corporate of Bell Canada from January 2000 through approximately April 11, 2000; that Jarman was President and Chief Executive Officer of Bell Nexxia from January 1999 until January 2001; that Jarman was appointed Chief Executive Officer of TCC on or about April 11, 2000 and remained in such position through January 23, 2002; and that Jarman served as a director of TI between December 15, 2000 and January 23, 2002.

66. Deny the averments of paragraph 66, expect state that Fortin was President of Bell Actimedia from approximately January 2000 until approximately May 17, 2000, at which time he was appointed President, Global Markets of TCC; and that he served as a director of TCC, TUSA, THUS, THC, TIC, TMI, TSI and Teleglobe Telecom Corp. ("TTC") in May 2002.

9

67.    Deny the averments of paragraph 67, except state that on or about May 17, 2000, Verge was appointed President, Global Operations of TCC; and that Verge was an officer of TCC, TUSA and OTI for various periods of time.

68.    Deny the averments of paragraph 68, except state that a Notice of Special Meeting and Management Information Circular of Teleglobe Inc. regarding the arrangement involving BCE Inc. and Teleglobe Inc. dated September 27, 2000 was issued, and refer to such document for the contents therein.

69.    Deny the averments of paragraph 69.

70.    Deny the averments of paragraph 70, except state that Boychuk signed several trademark assignments on behalf of TI.

71.    Deny the averments of paragraph 71, except state that TI utilized tax losses against gains resulting from the sale of shares of stock of Nortel Networks, consistent with common practices in Canada.

72.    Deny the averments of paragraph 72.

73.    Deny the averments of paragraph 73, except state that a Stock Purchase Agreement dated August 26, 2001, was entered into by Vartec Telecom Holding Company, Teleglobe Inc., and Teleglobe Holdings (U.S.) Corporation; and an Amended and Restated Stock Purchase Agreement dated as of April 5, 2002, was entered into by Vartec Telecom, Inc., Vartec Telecom Holding Company, Excel Communications, Inc., Excelcom, Inc., Telco Communications Group, Inc., Excel Telecommunications (Canada) Inc., TI and THUS regarding the sale of Excel and refer to such document for the contents therein.

74.    Deny the averments of paragraph 74.

75.    Deny the averments of paragraph 75.

10

76.     Deny the averments of paragraph 76.

77.     Deny the averments of paragraph 77, except state that on November 1, 2000, BCE
        completed its acquisition of TI's outstanding shares pursuant to the Acquisition
        Agreement and the terms of the Amendment; that BCE's funding commitments under
        the Amendment expired upon completion of the acquisition; and that Defendants refer
        to such agreements for the contents therein.

78.     Deny the averments of paragraph 78.

79.     Deny the averments of paragraph 79, except state that on January 24, 2001 a TI board
        meeting was held and refer to the TI board materials for the contents therein.

80.     Deny the averments of paragraph 80, except state that the Defendants refer to the New
        Bank Facility for the contents therein.

81.     Deny the averments of paragraph 81, except state that Defendants refer to TI's
        consolidated balance sheet for the period ending December 31, 2000 for the contents
        therein; and that Defendants refer to the January 24, 2001 TI board materials for the
        contents therein.

82.     Deny the averments of paragraph 82.

83.     Deny the averments of paragraph 83, except state that Defendants refer to the January
        24, 2001 TI board materials for the contents therein.

84.     Deny the averments of paragraph 84, except state that Monty, Currie, and Thomas E.
        Kierans ("Kierans") attended the TI board meeting held on January 24, 2001; that the
        members of TI's board were Monty, Currie, Kierans, Jarman and Steinberg at the
        time; and refer to the materials of the January 24, 2001 TI board meeting for the
        contents therein.

11

85.   Deny the averments of paragraph 85, except state that BCE held a board meeting on January 24, 2001 and refer to such BCE board materials for the contents therein.

86.   Deny the averments of paragraph 86, except state that on February 28, 2001, the board of directors of TI considered board materials and refer to such board materials for the contents therein.

87.   Deny the averments of paragraph 87, except state that on February 28, 2001, the TI board approved the 2001 budget of TI; that Monty and Currie attended that meeting in their capacity as directors of TI; and refer to the TI board materials for the contents therein.

88.   Deny the averments of paragraph 88.

89.   Deny the averments of the first sentence of paragraph 89; deny the averments of the second sentence, except state that the Debtors were involved in the construction, operation and maintenance of the GlobeSystem; deny the averments of the third sentence, except state that on November 28, 2001, the BCE board adopted a resolution regarding TI giving discretion to the Chairman and Chief Executive Officer of BCE concerning whether and when to fund TI and refer to the resolution for the contents therein; and deny the averments of the fourth sentence.

90.   Deny the averments of paragraph 90.

91.   Deny the averments of sentence two (including (a) and (b)) of paragraph 91, except state that refer to the Purpose and Summary Statement dated February 28, 2001 for the contents therein.

92.   Deny the averments of paragraph 92, except state that TI held a board meeting on February 28, 2001, and that the materials prepared for that meeting contain a Solvency

Certificate, and refer to such Solvency Certificate and board minutes for the contents therein.

93.  Deny the averments of paragraph 93, except state that there is a Solvency Certificate dated February 28, 2001 and refer to such certificate for the contents therein.

94.  Deny the averments of paragraph 94.

95.  Deny the averments of paragraph 95, except state that the transfer of Nortel shares from BCE to TI was approved at the February 28, 2001 TI board meeting and refer to the board materials of that meeting for the contents therein; and that TI sold the Nortel shares and paid for the retracted Fifth Series Preferred shares held by BCE with the proceeds from the sale of the Nortel shares.

96.  Deny the averments of paragraph 96.

97.  Deny the averments of paragraph 97.

98.  Deny the averments of paragraph 98, except state that Defendants refer to TI's Financial Information dated April 24, 2001 for the contents therein.

99.  Deny the averments of paragraph 99, except state that Monty made statements on BCE's first quarter 2001 conference call, held on April 25, 2001, and refer to the transcript of such call for the contents therein.

100.  Deny the averments of paragraph 100, except state that BCE sent a letter of support to BMO Nesbitt Burns, as arranger for the lending syndicate of TI, dated July 23, 2001; that certain individuals previously sent letters to certain lenders in the TI syndicate; that those prior letters attached a portion of the transcript from BCE's first quarter 2001 conference call held on April 25, 2001; and refer to such letters for the contents therein.

13

101.  Deny the averments of paragraph 101, except state that a document dated July 13, 2001 entitled Summary Performance Review included a section entitled "BCE LIQUIDITY OUTLOOK" and refer to such document for the contents therein.

102.  Deny the averments of paragraph 102, except state that BCE sent a letter of support dated July 23, 2001 to BMO Nesbitt Burns, as arranger for the lenders under the New Bank Facility, and refer to the letter of support for the contents therein.

103.  Deny the averments of paragraph 103, except state that TI made a presentation to the lenders of the New Bank Facility on June 26, 2001, and refer to that document for the contents therein.

104.  Deny the averments of paragraph 104, except state that the TI board adopted a board resolution on October 24, 2001, and refer to that resolution for the contents therein.

105.  Deny the averments of paragraph 105, except state that on November 28, 2001 the TI board adopted a resolution; that BCE's board adopted a resolution; and refer to those resolutions for the contents therein.

106.  Deny the averments of paragraph 106, except state that on November 28, 2001 BCE's board adopted Resolution No. 7; that, in 2000, TI entered into the Amendment; and refer to those documents for the contents therein.

107.  Deny the averments of paragraph 107.

108.  Deny the averments of paragraph 108, except state that Monty made statements at the December 12, 2001 annual investor conference, and refer to the transcript of such conference for the contents therein.

109.  Defendants are without information or knowledge sufficient to form a belief as to the truth of the averments of paragraph 109, and refer to the document mentioned in paragraph 109 for the contents therein.

14

110. Deny the averments of paragraph 110, except state that a representation letter of TI, dated January 23, 2002, and an inaccurate initial version of a representation letter of TI, dated February 27, 2002, were signed; and that the initial version of the February 27, 2002 letter was corrected.

111. Deny the averments of paragraph 111, except state that Vanaselja spoke to investors on March 5, 2002, and refer to the transcript of such meeting for the contents therein.

112. Deny the averments of paragraph 112, except state that TI's representation letter, dated February 27, 2002 was corrected.

113. Deny the averments of paragraph 113, except state that TI's 2001 Financial Information was clarified between February 28, 2002 and the date of filing, and refer to the various drafts of such document for the contents therein.

114. Deny the averments of paragraph 114.

115. Deny the averments of paragraph 115.

116. Deny the averments of paragraph 116, except state that BCE and TI held board meetings on April 23, 2002, and refer to the minutes for the contents therein; that Currie, Kierans, Monty, Michael J. Sabia, and Anthony S. Fell resigned from TI's board on April 23, 2002; and that Boychuk resigned from TI and certain of the Debtors on April 23, 2002.

117. Deny the averments of paragraph 117, except state that effective April 24, 2002, Monty resigned as Chairman and Chief Executive Officer of BCE; and that BCE issued a press release on April 24, 2002 entitled "BCE Cease Long-Term Funding To Teleglobe," and refer to such press release for the contents therein.

118. Deny the averments of paragraph 118, except to refer to any resolutions or prior releases of TI for the contents therein.

119. Deny the averments of paragraph 119, except state that BCE issued a press release on April 24, 2002 entitled "BCE Cease Long-Term Funding To Teleglobe," and refer to such press release for the contents therein; and that Monty was interviewed by *The Globe and Mail* in an article published on May 10, 2003, and refer to such article for the contents therein.

120. Deny the averments of paragraph 120.

121. Deny the averments of paragraph 121, except state that BCE issued a 2003 Annual Report, and refer to such report for the contents therein.

122. Deny the averments of paragraph 122.

123. State that the Complaint speaks for itself.

## AS AND FOR A FIRST CAUSE OF ACTION

124. In response to paragraph 124, incorporate, as if fully set forth herein, their responses to the preceding paragraphs.

125. Deny the averments of paragraph 125.

126. Deny the averments of paragraph 126.

127. Deny the averments of paragraph 127.

128. Deny the averments of paragraph 128.

129. Deny the averments of paragraph 129.

## AS AND FOR A SECOND CAUSE OF ACTION

130. In response to paragraph 130, incorporate, as if fully set forth herein, their responses to the preceding paragraphs.

131. Deny the averments of paragraph 131.

132. Deny the averments of paragraph 132.

133. Deny the averments of paragraph 133.

16

134.    Deny the averments of paragraph 134.

135.    Deny the averments of paragraph 135.

136.    Deny the averments of paragraph 136.

137.    Deny the averments of paragraph 137.

## AS AND FOR A THIRD CAUSE OF ACTION

138.    In response to paragraph 138, incorporate, as if fully set forth herein, their responses to the preceding paragraphs.

139.    Deny the averments of paragraph 139.

140.    Deny the averments of paragraph 140.

141.    Deny the averments of paragraph 141.

142.    Deny the averments of paragraph 142.

143.    Deny the averments of paragraph 143.

## AS AND FOR A FOURTH CAUSE OF ACTION

144.    In response to paragraph 144, incorporate, as if fully set forth herein, their responses to the preceding paragraphs.

145.    Deny the averments of paragraph 145.

146.    Deny the averments of paragraph 146.

147.    Deny the averments of paragraph 147.

148.    Deny the averments of paragraph 148.

149.    Deny the averments of paragraph 149.

## AS AND FOR A FIFTH CAUSE OF ACTION

150.    In response to paragraph 150, incorporate, as if fully set forth herein, their responses to the preceding paragraphs.

151.    Deny the averments of paragraph 151.

17

152.    Deny the averments of paragraph 152.

153.    Deny the averments of paragraph 153.

154.    Deny the averments of paragraph 154.

155.    Deny the averments of paragraph 155.

## AS AND FOR A SIXTH CAUSE OF ACTION

156.    In response to paragraph 156, incorporate, as if fully set forth herein, their responses to the preceding paragraphs.

157.    Deny the averments of paragraph 157.

158.    Deny the averments of paragraph 158.

159.    Deny the averments of paragraph 159.

160.    Deny the averments of paragraph 160.

161.    Deny the averments of paragraph 161.

## AS AND FOR A SEVENTH CAUSE OF ACTION

162.    In response to paragraph 162, incorporate, as if fully set forth herein, their responses to the preceding paragraphs.

163.    Deny the averments of paragraph 163.

164.    Deny the averments of paragraph 164.

165.    Deny the averments of paragraph 165.

WHEREFORE, Plaintiffs are entitled to no relief and the Court should dismiss their Complaint with prejudice.

The Defendants plead the following affirmative defenses without assuming the burden of proof as to any elements of a claim or defense that otherwise would rest on plaintiffs.

18

## AFFIRMATIVE DEFENSES

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

### STANDING

Plaintiffs lack standing to assert their claims.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

#### FUNDING TO TI, NOT THE DEBTORS

All funding, whether present or in the future by BCE, was funding to TI, not to the Debtors.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

#### STATUTES OF FRAUDS

Plaintiffs' claims arising from BCE's alleged commitment are barred under the applicable

Statute of Frauds.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

#### EXCULPATORY CLAUSE

Plaintiffs' breach of duty claims are exculpated under the relevant corporate charters.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

### ESTOPPEL

Plaintiffs are estopped to assert their claims by reason of their representations regarding the

Debtors' past and future performance.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

### PERFORMANCE EXCUSED BECAUSE OF FAILURE OF CONDITIONS TO PERFORMANCE

Even if there were a contract such as alleged in the Complaint (which there was not), BCE would be excused from performance under such contract because conditions to its obligation to perform that would reasonably be implied in such contract did not occur.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

### LACK OF CONSIDERATION

The contract alleged in the Complaint (which did not exist) is not valid and/or is void or voidable by BCE because of a lack of consideration.

## AS AND FOR A EIGHTH AFFIRMATIVE DEFENSE

### PRIOR MATERIAL BREACH OF CONTRACT

Even if there were a contract such as alleged in the Complaint (which there was not), BCE would have been excused from performance under such contract by reason of the prior material breach of contract by the alleged counterparty to the contract.

## AS AND FOR A NINTH AFFIRMATIVE DEFENSE

### NO RELIANCE

Plaintiffs' claims are barred by their lack of reliance on any statements regarding BCE's funding apart from BCE's funding commitment duly expressed in writings.

## AS AND FOR A TENTH AFFIRMATIVE DEFENSE

### UNCLEAN HANDS

Plaintiffs' claims are barred by the doctrine of unclean hands. The conduct by Plaintiffs giving rise to this defense includes Plaintiffs' failure to preserve evidence relating to their claims.

WP3:1104285 2                                                                                  59825 1001

## AS AND FOR A ELEVENTH AFFIRMATIVE DEFENSE

### PRIVILEGE AND JUSTIFICATION

All of Defendants' actions were privileged and justified and thus cannot serve as a basis for the claims alleged in the Complaint. BCE was privileged and justified in acting to preserve its own business and financial and economic interests on behalf of its stockholders. The individual Defendants were privileged and justified in taking actions to preserve the interests of the entities to which they owed fiduciary duties.

## AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE

### BUSINESS JUDGMENT RULE

Plaintiffs' claims against the individual defendants are barred by reason of the business judgment rule and analogous provisions of Canadian law.

## AS AND FOR A THIRTEENTH AFFIRMATIVE DEFENSE

### MITIGATION OF DAMAGES

Plaintiffs' claims are barred by their failure to mitigate damages.

## AS AND FOR A FOURTEENTH AFFIRMATIVE DEFENSE

### CANADIAN LENDING SYNDICATE LITIGATION

Damages must be mitigated by the result of the Canadian Lending Syndicate litigation, or that an outcome of that case favorable to BCE effectively bars all the claims arising from an alleged "promise" to fund, at least up to the amount owed by TI and the Debtors under the Credit Facilities.

## AS AND FOR A FIFTEENTH AFFIRMATIVE DEFENSE

### NON-PRESERVATION OF EVIDENCE

Plaintiffs' claims are barred by reason of plaintiffs' failure to preserve evidence relating to their claims.

WP3:1104285 2                                                    59825 1001

## AS AND FOR A SIXTEENTH AFFIRMATIVE DEFENSE

### FIDUCIARY DUTIES UNDER CANADIAN LAW AGAINST INDIVIDUAL DEFENDANTS

The alleged claims against the individual defendants are barred by the laws of Canada and the laws of the province of Quebec and province of Ontario with respect to the fiduciary duties of directors and officers.

## AS AND FOR A SEVENTEENTH AFFIRMATIVE DEFENSE

### FIDUCIARY DUTIES UNDER CANADIAN LAW AGAINST BCE

The alleged claims against BCE are barred by the laws of Canada and the laws of the province of Quebec and province of Ontario with respect to the fiduciary duties of BCE.

## AS AND FOR EIGHTEENTH AFFIRMATIVE DEFENSE

### DUE PROCESS

Any award of punitive damages would violate the Due Process Clause contained in the Fifth and Fourteenth Amendments to the United States Constitution and the due process protections of any applicable state or Canadian constitution.

Defendants reserve the right to amend this Answer and add additional factual responses and affirmative defenses as the litigation proceeds.

WHEREFORE, the Defendants respectfully ask that this Court:

1)    dismiss the Complaint with prejudice;

2)    award the Defendants attorneys' fees and costs; and

3)    grant such other and further relief as the Court deems just and

necessary.

Dated: April 18, 2005
      Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_Pauline K. Morgan_

Pauline K. Morgan (No. 3650)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899
(302) 571-6600

                    -and-

SHEARMAN & STERLING LLP
Stuart J. Baskin
George J. Wade
Jaculin Aaron
Daniel Schimmel
599 Lexington Avenue
New York, NY 10022
(212) 848-4000

Attorneys for Defendants

23

## CERTIFICATE OF SERVICE

I hereby certify that on April 19, 2005, I electronically filed a true and correct copy of **Corrected Answer of Defendants to the Complaint** with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Gregory V. Varallo, Esq.
Mark D. Collins, Esq.
C. Malcolm Cochran, IV, Esq.
Robert J. Stern, Jr., Esq.
Richards, Layton & Finger, P.A.
920 N. King Street
Wilmington, DE 19801

Kevin A. Gross, Esq.
Joseph A. Rosenthal, Esq.
Rosenthal, Monhait, Gross & Goddess, P.A.
1401 Mellon Bank Center
P.O. Box 1070
Wilmington, DE 19899-1070

I further certify that on April 19, 2005, I served **Corrected Answer of Defendants to the**

**Complaint** on the following non-registered participants in the manner indicated below:


BY EMAIL
John P. Amato, Esq.
Mark S. Indelicato, Esq.
Zachary G. Newman, Esq.
Jeffrey L. Schwartz, Esq.
Hahn & Hessen LLP
488 Madison Avenue
New York, NY  10022


Pauline K. Morgan (No. 3650)
Maribeth Minella (No. 4185)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6681
pmorgan@ycst.com
mminella@ycst.com
bank@ycst.com

*Attorneys for Defendants*