IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE:                              §
                                    §
TELEGLOBE COMMUNICATIONS            §        CASE NO. 02-11518 (MFW)
CORPORATION, ET AL.,                §        (Jointly Administered)
                                    §
        DEBTORS.                    §
                                    §
_____           §
                                    §
Teleglobe USA Inc. et al.,          §
                                    §
        Plaintiff,                  §
                                    §        CIV. ACTION NO. 04-1266 (SLR)
                                    §
v.                                  §
                                    §
BCE Inc. et al.,                    §
                                    §
        Defendants.                 §

APPENDIX IN SUPPORT OF INTERVENORS VARTEC TELECOM, INC. AND
VARTEC TELECOM HOLDING COMPANY'S MOTION FOR PROTECTIVE ORDER

STEVENS & LEE P.C.

Joseph H. Huston, Jr. (State Bar No. 4035)
Thomas G. Whalen, Jr. (State Bar No. 4034)
1105 North Market Street, 7th Floor
Wilmington, DE 19801
Telephone: (302) 654-5180
Telecopy:   (302) 654-5181

AND

HUGHES & LUCE L.L.P.

Craig W. Budner
Beth W. Bivans
1717 Main Street, Ste. 2800
Dallas, Texas 75201
Telephone: (214) 939-5500
Telecopy:  (214) 939-5849

ATTORNEYS FOR INTERVENORS VARTEC
TELECOM, INC. AND VARTEC TELECOM
HOLDING COMPANY

## TABLE OF CONTENTS

APP No.

VarTec's Motion to Partially Lift the PSLRA Discovery Stay ............................A001

Confidentiality Agreement between the Debtors and VarTec, dated May 27, 2003......A018

Defendants' Second Request for Production of Documents and
Directed to the Debtors..................................................................................A031

Letter from Beth W. Bivans to Randall Miller and Pauline K. Morgan,
dated January 18, 2005..................................................................................A040

Debtors' Response to Defendants' Second Request for Production of Documents........A043

Letter from Russell C. Silberglied to Beth W. Bivans, dated April 26, 2005...............A050

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VARTEC TELECOM, INC. and )
VARTEC TELECOM HOLDING CO., )
)
Plaintiffs, )
) Civil Action No. ECF 03-2203 (RJL)
v. )
)
BCE, INC., BCE VENTURES, INC., and )
WILLIAM D. ANDERSON, )
)
Defendants. )

## PLAINTIFFS' MOTION TO PARTIALLY LIFT THE PSLRA DISCOVERY STAY AND STATEMENT OF POINTS AND AUTHORITIES

Plaintiffs VarTec Telecom, Inc. and VarTec Telecom Holding Company (collectively, "VarTec" or "Plaintiffs") move this Court for an order partially lifting the automatic discovery stay imposed by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b)(3)(B) (the "PSLRA") for the purposes of allowing Plaintiffs to obtain limited and particularized categories of discovery.

## I.    SUMMARY OF MOTION

To prevent undue prejudice and preserve essential evidence, this Court should lift the PSLRA discovery stay in this matter and permit VarTec to obtain certain limited and particularized discovery. As VarTec advised this Court at the April 11, 2005 status conference, discovery in at least three factually related cases against BCE is proceeding. VarTec is being subjected to third-party discovery requests in those cases, and BCE is obtaining discovery directly relevant to this case. Meanwhile, because of the PSLRA discovery stay, VarTec is unable to reciprocate and obtain discovery from BCE. Moreover, as this Court advised the



009568.00017:902858.02

APP - A001

parties at the status conference, a ruling on Defendants' motion to dismiss may be many months away. Thus, VarTec seeks an order from this Court partially lifting the stay and permitting limited discovery. Because the discovery sought is limited and particularized and is necessary to preserve evidence and to prevent undue prejudice, VarTec's requests should be granted.

First, the discovery sought by VarTec is limited and particularized because the discovery requests: (i) are narrowly tailored to ensure that the information requested is essential to VarTec's factual and legal allegations against Defendants; (ii) are designed to eliminate undue prejudice created by BCE's informational advantage and level the playing field; (iii) permit VarTec and BCE to obtain sufficient information to engage in meaningful settlement discussions as recommended by this Court; and (iv) preserve aging, deteriorating data critical to this case.

Second, and importantly, this is not the type of securities fraud case that the PSLRA discovery stay was intended to discourage – strike suits where plaintiffs file frivolous complaints in the hopes that the high cost of discovery will force corporate defendants to settle instead of defending on the merits. Nor is this action a "fishing expedition," in hopes that discovery will yield actionable claims to support otherwise conclusory allegations. Instead, VarTec's claims arise out of BCE's fraudulent misrepresentations and omissions that caused significant financial damage to VarTec and contributed to VarTec's ultimate bankruptcy. Under the circumstances, a partial lifting of the discovery stay is entirely warranted.

## II.    PARTICULARIZED DISCOVERY REQUESTS

As part of the relief requested by this motion, VarTec seeks the following limited and particularized discovery:

1.    Documents produced by BCE, Inc. ("BCE" or "Defendant") to Teleglobe Communications Corporation and its Creditor's Committee ("Teleglobe"), Steve Smith, and/or

MOTION TO PARTIALLY LIFT THE PSLRA DISCOVERY STAY – Page 2

the Canadian lending syndicate related to: (i) BCE's funding of Teleglobe; (ii) BCE's decision to withdraw its support of Teleglobe; (iii) a project BCE code-named "Project X;" (iv) BCE's negotiations with VarTec for the sale of Excel Telecommunications, Inc. ("Excel"); (v) BCE's management of Teleglobe; and (vi) BCE's management of Excel.

2.    Email accounts, hard drives, servers, and/or back-up tapes holding communications (internal and external) regarding:[1] (i) BCE's funding of Teleglobe; (ii) BCE's decision to withdraw its support of Teleglobe; (iii) Project X; (iv) BCE's negotiations with VarTec for the sale of Excel; (v) BCE's management of Teleglobe; and (vi) BCE's management of Excel.

3.    A deposition of BCE's document custodian to identify how and where BCE's documents and electronic data are maintained.

VarTec reserves the right to further supplement these requests to the extent documents produced by Defendants in other related litigation show additional, relevant categories of discovery.

### III.    STATEMENT OF POINTS AND AUTHORITIES

### A.    STATEMENT OF FACTS

#### 1.    VarTec's Amended Complaint

In December 2002, VarTec filed suit against Defendants, alleging that Defendants engaged in a calculated scheme to defraud VarTec by misrepresenting BCE's funding commitment to its wholly-owned subsidiary – Teleglobe – a signatory to the underlying agreements and designated as the selling party by Defendants. The purchase of Excel (the "Excel Transaction") was the product of extended negotiations. Teleglobe was to indemnify

---

[1] This request is intended to include such forms of electronic data relating to Defendant Anderson.

MOTION TO PARTIALLY LIFT THE PSLRA DISCOVERY STAY – Page 3

VarTec for numerous pre-close liabilities, provide millions of dollars to Excel in working capital, and fund numerous ongoing capital projects. These financial obligations were crucial to the Excel Transaction. In fact, VarTec would have been unable to fund the purchase without them. BCE was well aware of the importance of these financial terms to VarTec. Despite this knowledge, BCE apparently had its own, undisclosed plans for Teleglobe.

BCE knew when it closed the Excel transaction that less than 72 hours later it would be publicly announcing its intention to pull all funding from Teleglobe. BCE also knew this would effectively eviscerate the financial aspects of the deal. BCE knew that Teleglobe would be unable to meet its obligations to VarTec without BCE's financial support. Yet, BCE withheld its intentions from VarTec until the Excel Transaction was closed. BCE misrepresented and omitted its plans because it knew that VarTec would never close the Excel Transaction if these facts were known. By keeping VarTec in the dark, BCE was able to unload millions of dollars of Excel liabilities on its competitor with full knowledge of its plan to bankrupt Teleglobe. Each of these allegations is set forth in greater detail in VarTec's Amended Complaint.

## 2.    Procedural History

VarTec filed its First Amended Complaint on February 6, 2003. The Complaint alleges a variety of counts of fraud against Defendants under the common law, Texas Statutory Fraud under § 27.01 of the Texas Business & Commerce Code, and securities fraud under § 33(A)(2) of the Texas Securities Act and § 10(b)/Rule 10b-5 of the Securities Exchange Act of 1934. In addition, VarTec brings one count of fraud against Defendant Anderson as a "control person" pursuant to the definition in § 20(a) of the Securities Exchange Act of 1934. The Complaint identifies in extensive detail the numerous misrepresentations and omissions of material fact that

MOTION TO PARTIALLY LIFT THE PSLRA DISCOVERY STAY – Page 4

009568.00017:902858.02

APP - A004

constitute the fraud and describes VarTec's reliance on those representations and omissions as an essential inducement for VarTec to enter into and to close the Excel Transaction.

On March 3, 2003, Defendants filed their original Motion to Dismiss and to Strike Plaintiffs' Jury Demand. On October 28, 2003, the case was transferred to this Court. The parties completed amended briefing relating to Defendants' Motion to Dismiss on June 25, 2004. The motion is currently pending in this Court.

On April 11, 2005, and at VarTec's request, the Court held a status conference. During the conference, VarTec advised the Court of three related cases against BCE in which discovery is ongoing. In addition, the Court indicated that it may be months before the Court will be able to rule on Defendants' Motion to Dismiss and that a jury trial might not occur until at least 2007. The Court also encouraged the parties to consider mediation, and when the Court asked Defendants when they could reasonably begin discovery, Defendants responded "immediately." These circumstances precipitate VarTec's need for limited discovery.

## IV.    RELATED BCE LITIGATION

Numerous plaintiffs, including VarTec, Smith, Teleglobe and the Canadian Lenders, each asserts causes of action based upon BCE's decision to withdraw Teleglobe funding, making information compiled and produced by BCE to these entities relevant to VarTec's claims. Also, as revealed in reports in the Teleglobe Canadian bankruptcy, certain electronic data relevant to this case is in danger of being lost or unrecoverable.

### A.    *Teleglobe Communications Corporation, et al. v. BCE Inc.*[2]

On May 28, 2002, Teleglobe's U.S. subsidiaries filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code. Teleglobe ceased operations and liquidated its core

---

[2] *Teleglobe Communications Corporation, et al. v. BCE Inc., et al.*; Cause No. 04-1266-SLR; *see also* Appendix in Support of Plaintiffs' Motion to Partially Lift the PSLRA Discovery Stay ("APP") at 070.

MOTION TO PARTIALLY LIFT THE PSLRA DISCOVERY STAY – Page 5

009568.00017:902858.02

business <u>along with voluminous books and records</u>.[3]  Some of these records are undoubtedly in

the possession of BCE, because many of the individuals involved in the underlying transaction

served in dual capacities as officers and directors of both Teleglobe and BCE.[4]

On May 26, 2004, Teleglobe and its creditors committee filed suit against BCE and

various former officers and directors of BCE, Teleglobe, Inc. ("TI") and Teleglobe.  That suit is

currently pending in the United States District Court for the District of Delaware.[5]  As with

VarTec, Smith and the Canadian Lenders, the crux of Teleglobe's allegations is that <u>BCE</u>

<u>breached its $2.5 billion commitment to fund Teleglobe's operations and misrepresented its</u>

<u>intentions regarding that commitment to Teleglobe and its creditors</u>.[6]  Indeed, Teleglobe points

to many of the same public statements outlined by VarTec to establish BCE's misrepresentations

and omissions regarding various material facts.[7]  Teleglobe's Complaint – filed well after

VarTec's – contains additional factual allegations that have direct relevance to VarTec's claim.

Because Teleglobe is in the unique position of being a former subsidiary, Teleglobe had access

to more detailed facts.  Had VarTec known some of the specific facts alleged in Teleglobe's

Complaint when VarTec's case was filed, VarTec most certainly would have included these facts

as additional support for its claims.

As with the other related cases, BCE has produced numerous documents that relate to its

funding commitments to Teleglobe.  Based solely on publicly available information, the

---

[3] APP.075.

[4] APP.067-068 (Teleglobe legal officer stating that electronic records of Teleglobe individuals were stored on BCE's separate IT system).  Indeed, in connection with an ongoing arbitration proceeding between Teleglobe and VarTec, Teleglobe maintained it had possession of <u>no</u> documents.  Instead, Teleglobe claims BCE had possession of information relating to the Excel Transaction.

[5] *Teleglobe Communications Corporation, et al. v. BCE Inc., et al.*; Cause No. 04-1266-SLR; *see also* APP.070.

[6] APP.071-072, 111.

[7] APP.103.

<u>MOTION TO PARTIALLY LIFT THE PSLRA DISCOVERY STAY – Page 6</u>

009568.00017:902858.02

relevance of these documents to VarTec's claims is clear. For example, BCE has produced documents relevant to "Project X" – apparently a BCE plan to liquidate certain subsidiaries and reduce funding to others.[8] These documents are directly relevant to VarTec's allegations that BCE was aware of its plans to pull funding from Teleglobe prior to the close of the Excel Transaction.

On December 22, 2004, BCE requested documents from Teleglobe relating to information produced by VarTec in a confidential arbitration proceeding with Teleglobe.[9] The documents include hundreds of thousands of pages, many of which directly relate to VarTec's clams against BCE. Despite VarTec's written objections to both Teleglobe and BCE, on April 26, 2005, VarTec learned that the Delaware court ordered Teleglobe to produce such documents to BCE by May 9, 2005, unless VarTec files a motion for protective order before then.[10] Ironically, when VarTec requested that BCE produce documents relevant to VarTec's separate proceeding with Teleglobe, BCE refused.

**B.    *Stephen R. Smith v. BCE, Inc.*[11]**

On March 3, 2004, Stephen R. Smith ("Smith") filed suit against BCE regarding an amendment to an agreement involving BCE's former subsidiaries Excel and Teleglobe. Smith's allegations against BCE mirror those made by VarTec in this case.[12] Essentially, Smith alleges that an amendment to certain agreements he had with Excel was fraudulently obtained by BCE and Bill Anderson with some of the very same fraudulent representations and omissions alleged

---

[8] APP.145, 158-59.

[9] APP.129-130.

[10] APP.131-140.

[11] *Stephen R. Smith v. BCE, Inc. and BCE Ventures, Inc.*; Cause No. 04-CV-303-XR, pending in the Federal District Court for the Western District of Texas, San Antonio Division – APP.001.

[12] *See e.g.* APP.004-007.

MOTION TO PARTIALLY LIFT THE PSLRA DISCOVERY STAY – Page 7

009568.00017:902858.02

by VarTec.[13] In particular, Smith, like VarTec, alleges that BCE fraudulently misrepresented its financial support for Teleglobe and omitted material facts during the negotiation of an assignment of his agreement from Excel to Teleglobe.[14] Smith's allegations so closely mirror VarTec's that Smith attached a copy of VarTec's suit to his original petition, incorporating it by reference in his allegations.

Smith and BCE have engaged in significant document discovery, and depositions are currently scheduled for the end of April and early May, 2005. Additionally, Smith and BCE have each requested discovery directly from VarTec's subsidiary Excel. On April 20, 2005, BCE served Excel with a third-party subpoena requesting voluminous information relating to Excel independent representatives.[15] Additionally, in a letter dated March 14, 2005, BCE requested that Excel provide copies of all documents it produced to Smith in response to Smith's third-party subpoena to Excel.[16] Although Smith has agreed to limit his requests to a narrower class of documents, the original subpoena, which is still outstanding, requested all documents relating to BCE's financial support of Teleglobe, Teleglobe financials, Excel financials, and all documents produced by Excel in a separate, confidential arbitration proceeding with Teleglobe.[17] Excel has sent copies of its current production to BCE, while VarTec, through its subsidiary Excel, has received nothing in return.

---

[13] APP.008–009.

[14] *Id.*

[15] APP.012.

[16] APP.017.

[17] APP.018–024.

MOTION TO PARTIALLY LIFT THE PSLRA DISCOVERY STAY – Page 8

C.    *ABN Amro Bank N.V., et al. v. BCE, Inc.*[18]

On July 12, 2002, a group of Canadian lenders (the "Canadian Lenders") filed suit against BCE in the Ontario Superior Court of Justice.[19]  The Canadian Lenders allege that BCE's misrepresentations caused them to loan Teleglobe $1.25 billion, including various renewals and extensions of the loan.[20]  The Canadian Lenders, like VarTec and Smith, allege that BCE promised Teleglobe was important to BCE's future and BCE would back Teleglobe financially during the loan commitment period to ensure that the Canadian Lenders would be repaid.[21]  After the withdrawal of BCE's support, however, Teleglobe filed for bankruptcy protection just weeks before the loan came due.[22]  Upon information and belief, BCE and the Canadian Lenders have completed substantial document discovery relevant to BCE's financial support of Teleglobe.

D.    *In re Teleglobe, Inc.*

On May 15, 2002, Teleglobe and certain of its Canadian subsidiaries sought the protection of Canada's Companies' Creditors Arrangement Act.[23]  As part of the insolvency proceeding, Kroll Restructuring Ltd. ("Kroll") was appointed Interim Receiver.[24]  Kroll has engaged in an investigation regarding certain Teleglobe transactions.  This investigation uncovered several issues relevant to BCE's maintenance of documents.  First, the Interim

---

[18] *ABN Amro Bank N.V., et al. v. BCE, Inc.;* Court File No. C2-CV-232755 CM3; *see also* APP.025.

[19] *Id.*

[20] APP.027.

[21] APP.046-047.

[22] APP.044-045.

[23] APP.074-075.

[24] APP.050.

MOTION TO PARTIALLY LIFT THE PSLRA DISCOVERY STAY – Page 9

009568.00017:902858.02

Receiver found that BCE was likely in possession of Teleglobe back-up tapes.[25]  Second, Kroll

noted that BCE's information and electronic storage systems would require expensive, electronic

forensic discovery to recover and restore much of the information.[26]  Thus, despite the PSLRA's

express mandate that parties maintain relevant documents during the stay,[27] there is a strong

possibility that evidence critical to VarTec's claims may not be recoverable or maintained.

Without this Court's intervention, much of this information could be spoiled and unrecoverable.

V.    **ARGUMENT AND AUTHORITY**

To eliminate undue prejudice, level the playing field, and preserve evidence essential to

prove VarTec's claims, the Court should grant VarTec's motion to partially lift the PSLRA

discovery stay and allowing limited discovery.  Permitting such discovery at this time will not

contradict the Congressional purpose of the PSLRA discovery stay.

One of the primary purposes for the Congressional reform was to prevent securities-

fraud, class-action plaintiffs from filing frivolous suits in the hope that "the corporate defendants

will settle those actions rather than bear the high cost of discovery."  *In re Worldcom, Inc.*

*Securities Litigation*, 234 F. Supp. 2d 301, 305-306 (S.D.N.Y. 2002); *see also* H.R. Conf. Rep.

No. 104-369, at 37 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 736.  In the present case, it is

clear from VarTec's pleadings, briefing on BCE's motion to dismiss, and facts of the related

litigation outlined above, that VarTec's case is not a strike suit and its claims are far from

frivolous.  *Royal Ahold N.V. Sec. & Erisa Litig.*, 220 F.R.D. 246, 251 (D. Md. 2004) (finding

---

[25] According to Kroll, certain Teleglobe officers – individuals with knowledge of VarTec's claims – used "bell.ca" email addresses during the period from November 1, 2000 to May 15, 2002, the time period relevant here. APP.051-.053; *see also* APP.067-068.

[26] APP.051-053.

[27] 15 U.S.C. § 78u-4(b)(3)(C)(i) (stating that "during the pendency of any stay of discovery . . . any party with actual notice of the allegations contained in the complaint shall treat all documents, data compilations (including electronically recorded or stored data), and tangible objects . . . as if they were the subject of continuing requests for production of documents from an opposing party").

**MOTION TO PARTIALLY LIFT THE PSLRA DISCOVERY STAY – Page 10**

plaintiff's pleadings relevant to whether lifting the stay contravenes the policy of the PSLRA). It is equally clear that VarTec's requested discovery is not a "fishing expedition," but a focused attempt to gather information necessary to ensure equal footing in potential settlement negotiations and to preserve valuable evidence. Nor would responding to VarTec's requests place a significant burden on BCE because it has already produced the vast majority of information to other plaintiffs. As represented by BCE at the status conference, BCE can begin discovery "immediately."

In addition to meeting the purpose and intent of the PSLRA, VarTec satisfies the specific standards for a partial lifting of the discovery stay. The PSLRA requires that the moving party show "that particularized discovery is necessary to preserve evidence or to prevent undue prejudice." 15 U.S.C. § 78u-4(b)(3)(B); *see also In re Fannie Mae Sec. Litig.*, No. 04-1639, 2005 WL 525970 at *1 (D.D.C. Feb. 23, 2005) (setting forth the PSLRA's standards for a partial lifting of the discovery stay). VarTec satisfies these standards. because the discovery requests are limited and particularized; designed to eliminate undue prejudice created by BCE's substantial informational advantage in settlement negotiations; and narrowed to preserve evidence critical to VarTec's claims.

A.    **The Requested Discovery is Limited and Particularized**

VarTec's requested discovery is limited and particular to only those items relevant to VarTec's causes of action. VarTec seeks information related to: (1) a narrow group of documents already produced in related litigation; (2) items not produced in related litigation but relevant to BCE's decision to withdraw Teleglobe funding and the underlying transaction; and (3) the deposition of a BCE records custodian with knowledge regarding preservation of the

009568.00017:902858.02

information at issue. Each of these requests is narrowly tailored and designed to preserve essential evidence and ameliorate the informational disparity between the parties.

Indeed, VarTec understands that every document produced in the related cases may not relate to this dispute. Thus, VarTec does not seek every document produced by BCE to other entities, but only those documents produced that relate to issues of concern between VarTec and BCE. *Id.* at *1 (stating that plaintiff's failure to request only relevant documents demonstrated their lack of particularity). VarTec's requests describe a clearly defined universe of documents already compiled by BCE. *Royal Ahold*, 220 F.R.D. at 250 (stating that "the motion at issue here describes a 'clearly defined universe of documents,' and the burden of producing the materials should be slight, considering that the defendants have previously produced them to other entities"). The information sought by VarTec will narrow the informational gap with Defendants and other interested parties in related litigation. Accordingly, VarTec's requests are properly limited and particularized.

## B.    Limited Discovery Will Eliminate Undue Prejudice

Limited discovery is necessary to eliminate undue prejudice to VarTec caused by Defendants' overwhelming informational advantage in settlement negotiations, possible mediation, and future discovery. Indeed, this Court has recognized that the discovery stay should be lifted if "plaintiffs would be at an informational disadvantage during settlement negotiations" without the requested discovery. *Fannie Mae*, 2005 WL 525970 at *1; *see also In re Vivendi Universal, S.A. Sec. Litig.*, No. 02-5571, 2003 WL 21035383, at *1 (S.D.N.Y. May 6, 2003). Granting limited discovery at this time will facilitate this Court's request during the status conference that the parties strongly consider mediation in the coming months.

009568.00017:902858.02

Also, in situations where there are multiple proceedings involving the same defendant, unfair prejudice can exist when a securities-fraud plaintiff is the only interested party without the necessary information to form its litigation and settlement strategies when all the other proceedings are speeding forward. *Worldcom, Inc.*, 234 F. Supp. 2d at 305-306 (stating that without access to documents produced to other entities, plaintiff would be prejudiced by its inability to make informed decisions about its litigation strategy in a rapidly shifting landscape). Courts have repeatedly lifted the discovery stay where − like here − documents have already been produced to other parties. *Seippel v. Sidley, Austin, Brown, & Wood*, No. 03-6942, 2005 WL 388561 at *1-2 (S.D.N.Y. Feb. 17, 2005) (stating that "these governmental investigations and lawsuits are ongoing, and the [plaintiffs] will be prejudiced if they lack access to documents which have been produced to others"); *In re AOL Time Warner, Inc. Sec. Litig.*, No. 1500, 2003 WL 715752 at *1 (S.D.N.Y. Feb. 28, 2003) (stating that plaintiff is not in any sense engaged in a fishing expedition and allowing plaintiff to obtain documents produced to others).

BCE has taken significant discovery in each of the related cases. The advanced stage of discovery in these cases has likely given BCE a detailed picture of its exposure for its decision to withdraw Teleglobe funding. Through these related cases, BCE can also learn much about VarTec and its subsidiaries that is relevant to the current dispute. As can be seen in the *Smith* and *Teleglobe* cases, BCE has taken the opportunity to use these parallel proceedings to obtain VarTec discovery by: (i) serving a third-party subpoena on a VarTec subsidiary; (ii) requesting that a VarTec subsidiary copy BCE on production to Smith and, most notably, (iii) requiring Teleglobe to produce voluminous VarTec documents that were produced in a separate, confidential proceeding that relate specifically to VarTec's claims against BCE. Unlike Defendants, VarTec has learned little or nothing about these essential issues, giving BCE an

MOTION TO PARTIALLY LIFT THE PSLRA DISCOVERY STAY – Page 13

009568.00017:902858.02

unfair advantage in possible settlement discussions and future discovery. Meanwhile, VarTec is forced to design its litigation and settlement strategies in the dark. Granting limited discovery will assist in eliminating undue prejudice that is improper and unfair under the circumstances.

**C.    Limited Discovery Will Preserve Evidence**

Limited discovery is also necessary to preserve aging and potentially deteriorating evidence in the possession, custody and control of BCE. This case has been pending since December 2002, against foreign defendants. It has been over three years since VarTec first learned of Defendants' fraud, and yet no discovery has taken place. Since the suit was filed many circumstances have changed. [28] Teleglobe filed for bankruptcy protection, liquidated its core business along with voluminous books and records, and suffered massive layoffs. BCE is in control of Teleglobe back-up tapes as well as other electronic communications stored on BCE servers. BCE's divestiture of the Teleglobe entities, the sale of Teleglobe's core business, books and records, along with BCE's apparent control of Teleglobe electronic information create a substantial risk that data relevant to VarTec's claims may be lost. *Royal Ahold*, 220 F.R.D. at 250 (stating that corporate reorganizations and divestitures create a reasonable concern that documents may be lost despite [defendants] best efforts and that discovery of previously produced documents could help plaintiffs identify other specific materials that may be at risk of loss). Under these circumstances, courts have found undue prejudice and granted relief from the PSLRA discovery stay. *In re Lernout & Hauspie Sec. Litig.*, 214 F. Supp. 2d 100, 108 (D. Mass. 2002) (finding undue prejudice where, among other factors, discovery had been stayed for a year and a half and that plaintiff had to comply with international discovery rules, adding to delay).

---

[28] Since filing its complaint in 2002, VarTec has sought bankruptcy protection under Chapter 11 of the Bankruptcy Code. This fact, coupled with delayed discovery, creates additional prejudice to VarTec, as many departing key employees will be unable to review BCE documents and assist in the development of VarTec's litigation strategy.

**MOTION TO PARTIALLY LIFT THE PSLRA DISCOVERY STAY – Page 14**

009568.00017:902858.02

Additionally, according to Teleglobe's Canadian Interim Receiver, BCE's own information and electronic storage systems may be in disarray, requiring extensive, electronic forensic discovery to recover and restore much of the information relevant to VarTec's causes of action. These facts create more than a mere speculative concern over the preservation of relevant evidence, creating the need for limited discovery to confirm and maintain the status of this data.

## VI.    CONCLUSION

In sum, granting limited discovery at this time will not contradict the Congressional purpose of the PSLRA discovery stay. VarTec's pleadings and those in the related litigation make clear that VarTec's case is not a strike-suit and its claims are not frivolous. VarTec's discovery requests are not a mere "fishing expedition" designed to bolster otherwise conclusory allegations. Instead, VarTec seeks a partial lifting of the discovery stay to eliminate undue prejudice, level the playing field and preserve evidence essential to this case. Accordingly, VarTec respectfully requests that the Court grant the motion for limited discovery, and remains available if the Court deems a hearing appropriate in this matter.

009568.00017:902858.02

Respectfully submitted,

**HUGHES & LUCE, L.L.P.**


_/s/Beth W. Bivans_

Craig W. Budner
Texas State Bar No. 03313730
Beth W. Bivans
Texas State Bar No. 00797664
Andrew B. Russell
Texas State Bar No. 24034661
Ashley C. Vaught
Texas State Bar No. 24037636
1717 Main Street
Suite 2800
Dallas, Texas 75201
Phone:(214) 939-5500
Fax:(214) 939-6100

Erik S. Jaffe (D.C. Bar No. 440112)
ERIK S. JAFFE, P.C.
5101 34th Street, N.W.
Washington, D.C. 20008
(202) 237-8165

**ATTORNEYS FOR PLAINTIFFS
VARTEC TELECOM, INC. AND
VARTEC TELECOM HOLDING
COMPANY**

009568.00017:902858.02

## CERTIFICATE OF CONFERENCE

Counsel for VarTec has conferred with all parties of record about the relief sought herein in compliance with Local Civil Rule 7(m), and Defendants oppose the motion.

_/s/Beth W. Bivans_

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing instrument was served upon the attorneys of record of all parties to the above cause in accordance with the Federal Rules of Civil Procedure, on this 29th day of April 2005.

_/s/Beth W. Bivans_

**MOTION TO PARTIALLY LIFT THE PSLRA DISCOVERY STAY – Page 17**

009568.00017:902858.02

**APP - A017**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| **TELEGLOBE COMMUNICATIONS** | ) | **Jointly Administered** |
| **CORPORATION, a Delaware** | ) | **Case No.: 02-11518 (MWF)** |
| **Corporation, *et al.*,**[1/] | ) | |
| | ) | |
| Debtors. | ) | |

## CONFIDENTIALITY AGREEMENT

**WHEREAS**, VarTec Telecom, Inc. and VarTec Telecom Holding Company ("VarTec")

filed certain proofs of claim against certain of the Debtors (the "VarTec Claims"); and

**WHEREAS**, the Debtors seek to understand and determine the basis for each of the

VarTec Claims; and

**WHEREAS**, the Debtors may possess certain claims against VarTec arising out of, *inter*

*alia*, that certain Amended and Restated Stock Purchase Agreement dated as of April 5, 2002

(the "SPA"), (the "Debtor Claims," which together with the VarTec Claims, shall be referred to

as the "Contested Matters").

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED** by and

between the Debtors and VarTec, by and through their undersigned attorneys, as follows:

1.    All documents, testimony, evidence or other material of any kind (collectively,

"Discovery Material") produced or provided by VarTec,  the Debtors or any third party in

connection with the Contested Matters shall be governed by this Confidentiality Agreement (the

"Agreement").

---

[1/]    The Debtors are the following eleven entities: Teleglobe Communications Corporation ("TCC"), Teleglobe USA Inc. ("TUSA"), Optel Telecommunications, Inc., Teleglobe Holdings (U.S.) Corporation, Teleglobe Marine (U.S.) Inc, Teleglobe Holding Corp, Teleglobe Telecom

**EXHIBIT**

tabbies

2

009568.00022:780461.02

**APP - A018**

2.      The parties to the Contested Matters or any non-party subject to discovery in the Contested Matters (each, a "Producing Person") may designate as confidential any Discovery Material that theProducing Person or any party considers in good faith to be confidential or to contain business, trade secret or competitively sensitive information, including confidential research, development, proprietary or commercial information, the disclosure of which to that party's or person's competitors or other third parties would result or reasonably could result in detriment to the Producing Person or to the person that is the subject of the information disclosed, including clients of the Producing Person.

3.      Discovery Material designated as confidential, including the information contained therein and any document quoting or summarizing such information or materials, is hereinafter referred to as "Confidential Information."

4.      The designation of Discovery Material as Confidential Information for purposes of this Agreement shall be made as follows:

(a)  in the case of documents or other materials, by designating in writing that a document, group, or file or box of documents, contains exclusively Confidential Information.

(b)  in the case of depositions or other prehearing testimony: (i) by a statement on the record, by counsel, at the time of such disclosure; or (ii) by written notice, sent by counsel to all parties within five business days after receiving a copy of the transcript or memorandum thereof, and in both of the foregoing instances, by directing the court reporter (if applicable) that the confidentiality legend be affixed to the cover or first page of the transcript or memorandum containing any Confidential Information and (if the entirety of the deposition or other prehearing testimony is not designated "Confidential") also to the pages or portions thereof containing

---

Corporation, Teleglobe Investment Corp, Teleglobe Luxembourg LLC, Teleglobe Puerto Rico

009568.00022:780461.02

APP - A019

Confidential Information. Only those portions of the transcripts or memoranda designated as "Confidential" shall be deemed Confidential Information, unless the entire transcript or memorandum is designated as "Confidential." In addition, any magnetic media (e.g. videotape or computer disk) containing portions of a transcript or memorandum which have been designated "Confidential," or the entirety thereof, if applicable, shall be labeled "CONTAINS CONFIDENTIAL INFORMATION." The parties may modify these procedures for any particular deposition or other prehearing testimony, through agreement on the record at such deposition or other prehearing testimony or otherwise in writing; and

(c) Any Confidential Information that is produced, given or otherwise disclosed by the Producing Person in electronic form shall be accorded the same treatment as documents produced by the Producing Person in paper form with respect to any determinations concerning which persons shall have access to such information, as well as the disposition of such information at the conclusion of the Contested Matters.

5.    Subject to the provisions of Paragraph 13, all Discovery Material provided by VarTec in connection with the Contested Matters is hereby designated as Confidential Information and shall not be required to be individually labeled, marked or stamped "Confidential."

6.    Any Confidential Information shall be treated in a strictly confidential manner and shall be disclosed only pursuant to the terms of this Agreement. Confidential Information shall be used only for purposes relating to the Contested Matters. Any other use of Confidential Information, including for business and commercial uses, or for public relations, is prohibited.

---

Inc. ("TPR") and Teleglobe Submarine Inc.

009568.00022:780461.02

APP - A020

7.    The use of documents or information designated as Confidential Information during hearings, if any, shall be governed by such orders and instructions as the Court may issue. The Confidential Information shall not lose its status as Confidential Information through such use.  In the event counsel for any Party determines to file with this Court (by way of pleadings, motions, briefs, affidavits or other papers) any documents designated as Confidential Information or other papers containing, incorporating or referring to information designated Confidential Information, such Party shall comply with Local Bankruptcy Rule 5003-1.

8.    In the event any document or information provided or produced to  a party (i) contains an independent confidentiality provision; (ii) is covered or governed by a confidentiality agreement; or (iii) was provided to the Producing Person pursuant to the protections of a confidentiality agreement or provision, the receiving party shall be bound by both this Agreement and the terms of the otherwise applicable confidentiality agreement or provision.

9.    Each person to whom any Confidential Information is to be disclosed pursuant to Paragraph 10 (except the Court, court personnel, and non-employee support personnel, such as outside copy services, couriers and court reporters) shall be provided with a copy of this Agreement prior to such disclosure.

10.    Except as provided herein, Confidential Information may be disclosed only to:

(a)    the Court and court personnel, stenographic reporters, and jurors or any other trier of fact;

(b)    the parties' attorneys, including in-house counsel, and paralegals, clerical or support personnel employed or retained by such attorneys;

009568.00022:780461.02

APP - A021

(c)    the named parties to the Contested Matters and their employees to the extent reasonable and deemed necessary by counsel for purposes of assisting in the prosecution or defense of the Contested Matters;

(d)    any actual deposition or hearing witness in the Contested Matters during the preparation for or course of such witness's testimony;

(e)    any potential deposition or hearing witness in the Contested Matters; provided, however, that any such potential witness who is not a named party in the Contested Matters shall first execute an acknowledgment in the form attached hereto as Exhibit A; and

(f)    any expert or consultant assisting a party's counsel in connection with the Contested Matters, to the extent deemed necessary in good faith by such counsel to enable the expert or consultant to provide such assistance; provided that the expert or consultant shall first execute an acknowledgment in the form attached hereto as Exhibit A.

11.    No Confidential Information shall be disclosed to any person who, if required by Paragraph 10 to sign the form of acknowledgment attached hereto as Exhibit A, does not first sign such acknowledgment.  All signed acknowledgments shall be maintained by counsel for the party making the disclosure.   In addition, the acknowledgements shall be produced, if required by the Court, for the purpose of determining whether a breach of this Agreement has occurred.

12.    If Confidential Information is disclosed to any person other than in the manner authorized in Paragraphs 10 and 11 of this Agreement, the person making the disclosure must immediately bring all pertinent facts relating to such disclosure to the attention of counsel for all parties and, without prejudice to other rights and remedies of any party, make a reasonable good faith effort to retrieve such material and to prevent further disclosure by it or by the person who received such information.

1-NV/14885.1                              5                          009568.00022:780461.02

APP - A022

13.   If a party objects to the designation of any Discovery Material as Confidential Information, the parties, and, if applicable, the Producing Person, shall attempt to resolve the dispute in good faith and on an informal basis.  If the dispute is not resolved, the objecting party may apply to the Court for a ruling that the specified Discovery Material shall not be treated as Confidential Information, giving notice to the other party, and, if applicable, the Producing Person.  Until the Court enters an order changing the designation, or until the parties and the Producing Person agree otherwise, the Discovery Material shall be treated as Confidential Information.  Subject to the provisions of Paragraph 8, this Agreement does not prevent any party or its counsel from making use of documents or information that (i) were lawfully available to the public or lawfully in that party's possession prior to the production of the document or information by the party designating it as "Confidential Information"; or (ii) lawfully come into the possession of the non-designating party through means other than production by a Producing Person and in a manner that does not violate the provisions of this Agreement or any other confidentiality agreement or provision contained in or applicable to the produced document or information.

14.   Nothing contained in this Agreement or any declaration of confidentiality or restriction hereunder shall be used or characterized by any party as an "admission" by a party opponent.  No party, by treating designated material as Confidential Information in accordance with this Agreement, shall be deemed to have conceded that the material actually is Confidential.

15.   Inadvertent failure to designate any Discovery Material as "Confidential" at the time of production shall not waive a party's right to later designate such documents or material as Confidential Information.  However, no party shall be deemed to have violated this Agreement if, prior to notification of any later designation, such Discovery Material has been disclosed or used

009568.00022:780461.02

APP - A023

in a manner inconsistent with such later designation. Once such designation has been made, however, the relevant Discovery Material shall be treated as Confidential Information in accordance with this Agreement.

16.     In the event that a party inadvertently produces information that is protected by the attorney-client privilege, work product doctrine or any other privilege, within a reasonable time after the Producing Person discovers the inadvertent disclosure the Producing Person may make a written request to the other party to return the inadvertently produced privileged document. The party who received the inadvertently produced document will either return the document (and all copies thereof) to the Producing Person or destroy the document (and all copies thereof) immediately upon receipt of the written request and shall not use or disclose the document (or any copies thereof) in any way until the validity of the claim of privilege is agreed upon or decided by the Court. By returning or destroying the document (and all copies thereof), the receiving party is not conceding that the document is privileged and is not waiving its right to later challenge the substantive privilege claim; except that it may not challenge the privilege claim by arguing that the inadvertent production waived the privilege.

17.     All provisions of this Agreement restricting the use of information obtained during discovery shall continue to be binding after the resolution of all of the Contested Matters, including all appeals, unless the parties agree otherwise in writing. Upon final disposition of all of the Contested Matters (including appeals), counsel for each party shall, within thirty (30) days thereafter, destroy or return to counsel for the Producing Person all Confidential Information, including all copies thereof, and upon written request by counsel for the Producing Person shall certify in writing that the provisions of this Paragraph have been complied with; provided, however, that counsel for the parties may retain all pleadings, submissions, filings, transcripts,

009568.00022:780461.02

exhibits, notes, memoranda and work product embodying Confidential Information. Any such pleadings, submissions, filings, transcripts, exhibits, notes, memoranda and work product so retained, however, shall remain Confidential and subject to the restrictions contained in this Agreement.

18.    Information obtained from a source other than Discovery Material shall not be deemed Confidential Information, regardless of whether such information is also contained in Discovery Material that is designated Confidential. In addition, nothing contained therein shall be construed to limit any Producing Person from using its own Confidential Information in any manner that it may choose. Any such use of Confidential Information shall not be deemed a waiver of any right or protection granted by this Agreement or of a designation of any Discovery Material as Confidential Information.

19.    Nothing in this Agreement shall prevent any party from producing any document or information in his, her or its possession to another person in response to a subpoena or other compulsory process; provided, however, that if such party receives a subpoena or other, compulsory process seeking production or other disclosure of Confidential Information, that party shall give prompt written notice to counsel for the Producing Person, identifying the Confidential Information and, unless prohibited by applicable law, enclosing a copy of the subpoena or other compulsory process. When possible, at least ten (10) days' written notice before production or other disclosure shall be given. In no event shall production or other disclosure be made before reasonable notice is given.

20.    This Agreement shall not be deemed a waiver of (i) any party's right to object to any discovery request on any ground; (ii) any party's right to seek an order compelling discovery with respect to any discovery request; (iii) any party's right, at any proceeding herein, to object to

the admission of any evidence on any ground; and (iv) any other right, defense or objection that otherwise may be asserted in the Contested Matters.

21.     Nothing herein shall preclude any party from applying to the Court, upon reasonable notice to all parties, for a protective order at trial, or shall preclude any modification of this Agreement with the consent of all parties hereto.

22.     Any non-party producing documents or materials in connection with the Contested Matters may avail itself of the Confidential treatment provided for in this Agreement for their documents and materials by following the procedures provided herein.

23.     This Agreement shall be effective as to the parties as soon as their representatives sign it. This Agreement may be amended by the agreement of counsel for the parties in the form of a stipulation that shall be filed with the Court. This Agreement is intended to regulate the handling of Confidential Information during the resolution of the Contested Matters, but shall remain in force and effect until modified, superseded, or terminated on the record by agreement of the parties or by an order of the Court.

009568.00022:780461.02

APP - A026

Dated: __5/27__, 2003
    Wilmington, Delaware

Dated: _____, 2003
    Wilmington, Delaware

**HUGHES & LUCE L.L.P.**

By: _____
    Craig W. Budner
    Jeffrey R. Fine
    Thomas W. Paxton
    1717 Main Street, Ste. 2800
    Dallas, Texas 75201
    Telephone: (973) 939-5500

    -and-

**STEVENS & LEE P.C.**

By: _____
    Joseph H. Huston, Jr. (No. 4035)
    Thomas G. Whalen, Jr.(No. 4034)
    300 Delaware Ave., Ste. 800
    Wilmington, Delaware 19801
    Telephone: (302) 425-3310

COUNSEL TO VARTEC TELECOM,
INC. AND VARTEC TELECOM
HOLDING COMPANY

**RICHARDS, LAYTON & FINGER, P.A.**

By: _____
    Mark D. Collins (No. 2981)
    Robert J. Stearn, Jr. (No. 2915)
    Michael J. Merchant (No. 3854)
    One Rodney Square
    P.O. Box 551
    Wilmington, Delaware 19899
    Telephone: (302) 651-7700

**MORGAN, LEWIS & BOCKIUS LLP**

By: _____
    Douglas P. Lobel
    Joseph F. Yenouskas
    Thomas J. O'Brien
    1600 Tysons Boulevard
    Suite 1200
    McLean, VA 22102
    Telephone: (703) 918-1670

COUNSEL TO THE DEBTORS AND
DEBTORS IN POSSESSION

009568.00022:780461.02

APP - A027

Dated: _____, 2003
          Wilmington, Delaware

HUGHES & LUCE L.L.P.

By: _____
      Craig W. Budner
      Jeffrey R. Fine
      Thomas W. Paxton
      1717 Main Street, Ste. 2800
      Dallas, Texas 75201
      Telephone: (973) 939-5500


      -and-

STEVENS & LEE P.C.

By: _____
      Joseph H. Huston, Jr. (No. 4035)
      Thomas G. Whalen, Jr.(No. 4034)
      800 Delaware Ave., Ste. 800
      Wilmington, Delaware 19801
      Telephone: (302) 425-3310

COUNSEL TO VARTEC TELECOM,
INC. AND VARTEC TELECOM
HOLDING COMPANY

Dated: _____, 2003
          Wilmington, Delaware

RICHARDS, LAYTON & FINGER, P.A.

By: _____
      Mark D. Collins (No. 2981)
      Robert J. Stearn, Jr. (No. 2915)
      Michael J. Merchant (No. 3854)
      One Rodney Square
      P.O. Box 551
      Wilmington, Delaware 19899
      Telephone: (302) 651-7700

MORGAN, LEWIS & BOCKIUS LLP

By: _____
      Douglas P. Lobel
      Joseph F. Yenouskas
      Thomas J. O'Brien
      1600 Tysons Boulevard
      Suite 1200
      McLean, VA 22102
      Telephone: (703) 918-1670

COUNSEL TO THE DEBTORS AND
DEBTORS IN POSSESSION

009568.00022:780461.02

TOTAL P.01

APP - A028

Dated: _____, 2003
       Wilmington, Delaware

Dated: May 27, 2003
Wilmington, Delaware


HUGHES & LUCE L.L.P.

By: _____
   Craig W. Budner
   Jeffrey R. Fine
   Thomas W. Paxton
   1717 Main Street, Ste. 2800
   Dallas, Texas 75201
   Telephone: (973) 939-5500


   -and-

STEVENS & LEE P.C.

By: _____
   Joseph Grey (No. 2358)
   Joseph H. Huston, Jr. (No. 4035)
   300 Delaware Ave., Ste. 800
   Wilmington, Delaware 19801
   Telephone: (302) 425-3310


COUNSEL TO VARTEC TELECOM,
INC. AND VARTEC TELECOM
HOLDING COMPANY


RICHARDS, LAYTON & FINGER, P.A.

By: _____
   Mark D. Collins (No. 2981)
   Robert J. Stearn, Jr. (No. 2915)
   Michael J. Merchant (No. 3854)
   One Rodney Square
   P.O. Box 551
   Wilmington, Delaware 19899
   Telephone: (302) 651-7700


MORGAN, LEWIS & BOCKIUS LLP

By: _____
   Douglas P. Lobel
   Joseph F. Yenouskas
   Thomas J. O'Brien
   1600 Tysons Boulevard
   Suite 1200
   McLean, VA 22102
   Telephone: (703) 918-1670


COUNSEL TO THE DEBTORS AND
DEBTORS IN POSSESSION

008568.00022:780461.02

## EXHIBIT A

## AGREEMENT TO BE BOUND BY CONFIDENTIALITY AGREEMENT

The undersigned, _____, under penalty of perjury, hereby acknowledges and declares that s/he received a copy of the Confidentiality Agreement in connection with the proceeding captioned *In re: Teleglobe Communications Corporation*, C.A. 02-11518, and has read and fully understands the provisions of said Agreement and agrees to be bound by all of the provisions thereof.

Dated: _____          _____
                                                       Signature

                                                       _____
                                                       Name Printed or Typed

1-NV/14885.1                                11

009568.00022:780461.02

APP - A030

$DPL \Rightarrow$ CONFID NOTICE

RECEIVED

DEC 2 2 2004

G.V.V. 5:56 pm.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

In re: Teleglobe Comm. *et al.*,       )   Chapter 11
                                        )   Jointly Administered
             Debtors.                   )
                                        )   Bankr. Case No. 02-11518 (MFW)
_____       )
                                        )   *Varallo*
Teleglobe USA Inc. *et al.*,            )   *Collins*
                                        )   *Cochran*
             Plaintiff,                 )
                                        )
v.                                      )   Civ. Action No. 04-1266 (SLR)   *Stearn*
                                        )   *Cos. Kes*
BCE Inc. *et al.*,                      )
             Defendants.                )

### DEFENDANTS' SECOND REQUEST FOR PRODUCTION OF
### DOCUMENTS AND DIRECTED TO THE DEBTORS

Pursuant to Federal Rules of Bankruptcy Procedure 7026, 7033 and 7034 and

Federal Rules of Civil Procedure 26, 33 and 34, Defendants BCE Inc., Michael T. Boychuk,

Marc A. Bouchard, Serge Fortin, Terence J. Jarman, Stewart Verge, Jean C. Monty, Richard J.

Currie, Thomas Kierans, Stephen P. Skinner, and H. Arnold Steinberg (the "Defendants"), by

and through their undersigned counsel, hereby request that Plaintiffs (as defined below) produce

the documents designated below at the offices of Shearman & Sterling LLP, 599 Lexington

Avenue, New York, New York, 10022 on or before 4:00 p.m. on January 24, 2005.

### DEFINITIONS

1.      The term "Complaint" means the Complaint filed by the Plaintiffs in this

action on or about May 26, 2004, including any amendments thereto.

2.      The term "Debtors" means, individually and collectively, plaintiffs

Teleglobe Communications Corporation, Teleglobe USA Inc., Optel Telecommunications, Inc.,

Teleglobe Holdings (U.S.) Corporation, Teleglobe Marine (U.S.) Inc., Teleglobe Holding Corp.,

WP3:1069464 1                                                           59825 1001



**EXHIBIT**

3

APP - A031

Teleglobe Telecom Corporation, Teleglobe Investment Corp., Teleglobe Luxembourg LLC,

Teleglobe Puerto Rico Inc., and Teleglobe Submarine Inc., their predecessors or successors in

interest, and their present or former subsidiaries, affiliates, divisions, business units, directors,

officers, employees, attorneys, agents and representatives, and all persons acting or who have

acted on their behalf.

       3.     The term "Committee" means the Official Committee of Unsecured

Creditors of Teleglobe Communications Corporation, et al., and each member thereof.

       4.     The terms "Plaintiffs," "you" and "your" mean the Debtors.

       5.     The term "Initial Disclosures" means Plaintiffs' Initial Disclosures served

on August 27, 2004 pursuant to Federal Rule of Civil Procedure 26(a), as incorporated into this

adversary proceeding by Federal Rule of Bankruptcy Procedure 7026(a).

       6.     The term "Teleglobe" means Teleglobe Inc., its predecessors or successors

in interest, and its present or former subsidiaries, affiliates, divisions, business units, directors,

officers, employees, attorneys, agents and representatives, and all persons acting or who have

acted on their behalf.

       7.     The term "BCE" means defendant BCE Inc., its predecessors or

successors in interest, and its present or former subsidiaries, affiliates, divisions, business units,

directors, officers, employees, attorneys, agents and representatives, and all persons acting or

who have acted on their behalf.

       8.     The term "Deloitte" means Deloitte and Touche LLP, its predecessors or

successors in interest, and its present or former subsidiaries, affiliates, divisions, business units,

directors, officers, employees, attorneys, agents and representatives, and all persons acting or

who have acted on their behalf.

2

9.    The term "Ernst & Young" means Ernst & Young, its predecessors or successors in interest, and its present or former subsidiaries, affiliates, divisions, business units, directors, officers, employees, attorneys, agents and representatives, and all persons acting or who have acted on their behalf.

10.    The term "Lazard" means Lazard Freres & Co. LLC, its predecessors or successors in interest, and its present or former subsidiaries, affiliates, divisions, business units, directors, officers, employees, attorneys, agents and representatives, and all persons acting or who have acted on their behalf.

11.    The term "communication" means any meeting, conversation, discussion, conference, consultation, correspondence, message, statement, or any other written, oral or electronic transmission of information whether an original, a draft, or a copy, whether stored in hard copy, electronically, or digitally, either orally or in writing, including correspondence, electronic mail, telexes, facsimile transmissions, telecopies, recordings in any medium of oral communication, telephone and message logs, notes, or memoranda relating to written or oral communications.

12.    The term "concerning" means concerning, relating to, referring to, reflecting, evidencing, describing, constituting, containing, or involving the matter discussed. The term includes, but is not limited to, documents underlying, supporting, necessary for the understanding of, now or previously attached or appended to, or used in the preparation of any document called for by each request.

13.    The terms "describe in detail," "state the factual basis," "describe the basis," "state all facts," "state your understanding," or similar phrases with respect to an allegation, contention or other reference, shall mean to state in detail those facts: (a) to the

3

APP - A033

extent of the Plaintiffs' present knowledge, whatever the source; (b) which the Plaintiffs can

ascertain by a diligent search; or (c) whose probable existence is known to the Plaintiffs although

the Plaintiffs have not yet fully apprised themselves of the truth.

14.    The term "document" shall have the broadest meaning permitted by Fed.

R. Bankr. P. 7034 and Fed. R. Civ. P. 34(a) and includes, without limitation, all contracts,

agreements, forms, slips, correspondence, drafts, letters, communications, electronic mails,

telegrams, telephone messages, notices, notes, memoranda, reports, studies, analyses, working

papers, summaries, statistical statements, financial statements, financial analyses, opinions,

forecasts, budgets, projections, audits, press releases, brochures, pamphlets, circulars, minutes of

meetings, notes and summaries of investigations, diaries, minutes, statements, worksheets,

summaries, books, journals, ledgers, audits, maps, diagrams, drafts, newspapers, appointment

books, desk calendars, inter- and intra-office memos and communications, faxes and telexes, and

any other tangible thing by or on which information or data is stored or can be obtained, whether

in computer storage, carded, punched, taped, or coded form or stored electro-statistically,

electro-magnetically, or otherwise; and any other data compilation from which information can

be obtained.

The term "document" shall also include all contemporaneously or subsequently

created non-identical duplicates or copies and all drafts, preliminary versions or revisions of

documents, whether completed or not, by whatever means made, and includes every "document"

which is no longer identical by virtue of any notation or modification of any kind.

15.    The term "identify" when used in connection with a document or

documents means to furnish a description of the document(s) by date, title, author, subject

WP3:1069464 1                    59825 1001

APP - A034

matter, sender, recipient, copy recipients, and also furnish the name and address of all persons having custody or control of such document(s).

16.    The term "identify" as used in connection with natural persons means to state the person's full name, present or last known residential and business address and telephone number, and, in the case of a natural person, his or her position or job title.

17.    The term "identify" as used in connection with any entity other than a natural person, means to state at a minimum and in the following order:

    (a)    its full name;

    (b)    the address and telephone number of its principal place of business;

    (c)    the jurisdiction under the laws of which it has been organized or incorporated and the date of such organization or incorporation;

    (d)    the identity of all persons who acted and/or who authorized another to act on its behalf in connection with the matters referred to;

    (e)    in the case of a corporation, the names of its directors and principal officers; and

    (f)    in the case of an entity other than a corporation, the identities of its partners or principals or all individuals who acted or who authorized another to act on its behalf in connection with the matters referred to.

18.    The term "identify" as used in connection with a communication, discussion, statement, decision, transaction, occurrence or act means to (a) state the date, time, place, manner and substance of such communication, (b) identify all persons who participated in, spoke, listened to, or had access to transcripts or summaries of such communication or copies thereof, (c) identify each such person's function, role, or knowledge, and (d) identify all documents which memorialize, commemorate, summarize, record, or directly refer or relate, in whole or in part, to such communication.

WP3:1069464 1    59825 1001

APP - A035

19.    The terms "person" or "persons" shall include natural persons, public or private corporations and all of their subsidiaries or divisions, proprietorships, partnerships, joint ventures, governmental entities, associations, unions, organizations, groups, trusts, estates, and all other entities.

20.    The terms "all," "any," "each," and "every" shall be construed as all, any, each and every to bring within the scope of the request or requests all information that might otherwise be construed to be outside of its scope.

21.    The connectives "and" and "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of the request all information and documents that might otherwise be construed to be outside of its scope.

22.    The term "including" means "including, but not limited to."

23.    All references to the singular shall be deemed to include the plural and all references to the plural shall be deemed to include the singular. All references to the masculine gender shall be deemed to include the feminine and neuter.

## INSTRUCTIONS

1.    Unless otherwise indicated, the documents requested to be inspected in this Notice include all documents in the possession, custody, or control of the Plaintiffs. Without limitation of the terms "possession, custody, or control" as used in the preceding sentence, a document is in the Plaintiffs' possession, custody or control if they have actual possession or custody or constructive possession, in that you have the right or the ability to obtain the document or a copy thereof upon demand from another person or public or private entity that has actual physical possession thereof, such as the Plaintiffs' attorneys.

2.    All documents are to be produced in their entirety, without abbreviation or expungement, and including both front and back thereof. Requests for documents shall be

6

APP - A036

deemed to include a request for any and all transmittal sheets, cover letters, exhibits, enclosures,

or any other annexes or attachments to the documents, in addition to the document itself.

     3.    For each document the production of which is withheld because it is

claimed to be privileged, because it is claimed to be attorneys' work product, or because of any

other ground of non-production, identify, at the time that documents are produced:

     (a)    the nature of the privilege (including work product) or other ground of
non-production that is being claimed; and, if the ground of non-production is a privilege,
and if the privilege is being asserted in connection with a claim or defense governed by
state law, indicate the state's or country's privilege rule being invoked; and

     (b)    (i) the type of document; (ii) general subject matter of the document; (iii)
the date of the document; and (iv) such other information as is sufficient to identify the
document for a subpoena duces tecum, including, where appropriate, the author of the
document, the addressees of the document, persons who received copies of the document,
and, where not apparent, the relationship of the author and addressee to each other.

If a portion of an otherwise responsive document contains information subject to a claim of

privilege, work product or other ground of non-production, those portions of the document

subject to such claim shall be deleted or redacted from the document, the material redacted or

deleted shall be specified in the privilege log, and the rest of the document shall be produced.

     4.    Each paragraph and subparagraph of this Notice for discovery and

inspection shall be construed independently and without reference to any other paragraph or

subparagraph for the purpose of limitation.

     5.    If any document request cannot be complied with in full, it shall be

complied with to the fullest extent possible, and an explanation shall be given as to why full

compliance is not possible.

     6.    For any document requested herein which was formerly in the Plaintiffs'

possession, custody or control but which has been lost or destroyed:

     (a)    describe in detail the nature of the document and its contents;

WP3:1069464 1                                                                          59825 1001

APP - A037

(b)    identify the person who prepared or authored the document, and, if

applicable, the person to whom it was sent;

(c)    specify the date on which the document was prepared or transmitted;

(d)    specify, if possible, the date on which the document was lost or destroyed

and, if destroyed, the manner of and reasons for such destruction and the persons

authorizing, performing and having knowledge of the destruction; and

(e)    specify in detail all efforts that were made to maintain or preserve the

document after April 24, 2002.

7.    The production of all electronic documents shall comply with the default

standard for the discovery of electronic documents promulgated by the Ad Hoc Committee for

Electronic Discovery of the United States District Court for the District of Delaware.

8.    With respect to the documents produced, the Plaintiffs shall produce them

as they are kept in the usual course of business.

9.    These requests shall be deemed continuing so as to require further and

supplemental responses by Plaintiffs in the event that they obtain or discover additional

information after the time of their initial response.

10.    Unless otherwise indicated, these Requests seek responsive documents

authored, generated, disseminated, drafted, produced, reproduced, or otherwise created or

distributed from January 1, 1999 through May 28, 2002.

11.    For each document request, identify responsive documents by Bates

numbers.

## DOCUMENTS TO BE PRODUCED

1.    The following selected documents concerning the arbitration proceeding

before the American Arbitration Association, entitled In the Matter of the Arbitration Between

8

WP3:1069464 1                                    59825 1001

APP - A038

Teleglobe Telecom Corporation and Teleglobe Inc. and VarTec Telecom, Inc. and VarTec

Telecom Holding Company, 50 T 153 00025 04: (a) all arbitration awards and orders issued by

the arbitral tribunal, (b) the transcripts from all the arbitration hearings, (c) the transcripts of all

depositions of witnesses conducted in connection with the arbitration proceeding, (d) all exhibits

introduced or marked at such depositions or at the arbitration hearings; and (e) the pleadings,

briefs, memorials, letters, or other documents submitted to the arbitration tribunal by the parties

to the arbitration proceeding.

Dated:   December 22, 2004
         Wilmington, Delaware


YOUNG CONAWAY STARGATT & TAYLOR, LLP


_Pauline K. Morgan_

Pauline K. Morgan (No. 3650)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

SHEARMAN & STERLING LLP
George J. Wade
Daniel Schimmel
Sonal S. Desai
599 Lexington Avenue
New York, NY 10022-6069
Telephone: (212) 848-4000
Facsimile: (212) 848-7179

Counsel for Defendants

WP3:1069464 1

59825 1001

APP - A039



HUGHES • LUCE LLP
ATTORNEYS AND COUNSELORS

1717 Main Street, Suite 2800
Dallas, Texas 75201
214.939.5500
214.939.6100 fax

hughesluce.com

January 18, 2005

Beth W. Bivans
214.939.5815
bivansb@hughesluce.com

**VIA FACSIMILE**

Randall Miller, Esq.
Arnold & Porter, LLP
1600 Tysons Boulevard, Suite 900
McLean, VA 22102

Pauline K. Morgan, Esq.
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899

> Re:    *Teleglobe USA Inc., et al. v. BCE Inc. et al.,*
> Civ. Action No. 04-1266 (SLR);
> United States Bankruptcy Court, District of Delaware

Dear Randy and Ms. Morgan:

I am in receipt of a copy of Defendants' Second Request for Production of Documents and Directed to the Debtors in the above-referenced action (the "Request"). As you are aware, this firm represents VarTec Telecom, Inc. and VarTec Telecom Holding Company in connection with various disputes and litigation matters, including a pending arbitration proceeding styled *Teleglobe Telecom Corporation, et al. v. VarTec Telecom, Inc., et al.,* No. 50 T 153 00025 04 (the "Arbitration") and lawsuit styled *VarTec Telecom, Inc., et al v. BCE, Inc., et al,* Civ. Action No. ECF 03-2203 (RJL), in the United States District Court for the District of Columbia (the "BCE Action").

The Request seeks production from Teleglobe of numerous documents related to the Arbitration, including the arbitration award, orders, pleadings, exhibits, transcripts, and depositions. VarTec objects to Teleglobe's production of these documents to BCE for various reasons.

First, the vast majority of the requested documents are subject to a Confidentiality Agreement between Teleglobe and VarTec and have been designated

**EXHIBIT**

4

009568.00016:885310.01

**APP - A040**

# HUGHES·LUCE LLP

Randall Miller, Esq.
Pauline Morgan, Esq.
Page 2

by VarTec as "Confidential" pursuant thereto.   These documents and transcripts
contain confidential, proprietary, and, in some instances, trade secret information
subject to protection pursuant to the Confidentiality Agreement, the rules of the
American Arbitration Association, and other applicable law.

Second, many of the documents requested are protected by the attorney-client
privilege, work product doctrine and other privileges and exemptions.  Despite the
production and use of these documents in the Arbitration, the joint interest privilege
remains intact and no waiver of the applicable privileges has occurred.

Third, the documents requested, which relate to a contractual indemnification
disputes between VarTec and Teleglobe, have no identified relevance to the underlying
disputes between Teleglobe and BCE.  Instead, it appears that BCE's Request is simply
an effort to obtain discovery related to the BCE Action filed by VarTec.  BCE's efforts to
obtain such discovery are particularly ironic in light of the fact that efforts by VarTec in
the Arbitration to obtain discovery from BCE were met with strenuous objection.
Indeed, both BCE and Teleglobe opposed VarTec's discovery efforts, arguing that
VarTec was improperly seeking discovery in the Arbitration that was instead relevant
to the BCE Action.

In sum, VarTec objects to the production of any documents pursuant to the
Request.  VarTec expects Teleglobe to honor its agreements and obligations in the
Confidentiality Agreement and to protect all information designated by VarTec as
Confidential.  In the event Teleglobe does intend to produce any document in response
to the Request, VarTec expressly requests that Teleglobe give VarTec 10 days written
notice as required by Paragraph 19 of the Confidentiality Agreement and an
opportunity to review the proposed production and assert any necessary privileges
and/or objections with the proper court.  To be clear, VarTec intends to take all steps
necessary to preserve the confidentiality of its documents and information, including
the filing of motions for protection or other actions.  Therefore, please keep me advised
of the status of the Request.

# HUGHES·LUCE LLP

Randall Miller, Esq.
Pauline Morgan, Esq.
Page 3


    Let me know if you have any questions regarding VarTec's position on this matter. Thank you.

                                    Very truly yours,

                                    Beth W. Bivans

Cc:    George J. Wade, Shearman & Sterling, LLP
       David J. Beck, Beck, Redden & Secrest, LLP

009568.00016:885310.01

APP - A042

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

------------------------------------------------x

In re                                          )     Chapter 11
                                               )
TELEGLOBE COMMUNICATIONS                       )
CORPORATION, *et al.*,                         )     Jointly Administered
                                               )     Bankr. Case No. 02-11518(MFW)
                                               )
                              Debtors.         )
------------------------------------------------x
TELEGLOBE COMMUNICATIONS                       )
CORPORATION,                                   )
*et al.*,                                      )     C.A. No. 04-1266 (SLR)
                                               )
                              Plaintiffs,      )
                                               )
                v.                             )
                                               )
BCE INC., *et al.*,                            )
                                               )
                              Defendants.      )
------------------------------------------------x

### THE DEBTORS' RESPONSE TO DEFENDANTS' SECOND
### REQUEST FOR PRODUCTION OF DOCUMENTS

Plaintiffs, Teleglobe Communications Corporation, Teleglobe USA Inc., Optel

Telecommunications, Inc., Teleglobe Holdings (U.S.) Corporation, Teleglobe Marine (U.S.) Inc.,

Teleglobe Holding Corp., Teleglobe Telecom Corporation, Teleglobe Investment Corp.,

Teleglobe Luxembourg LLC, Teleglobe Puerto Rico Inc., and Teleglobe Submarine Inc.

(collectively, "Debtors"), herewith respond to Defendants' Second Request for Production of

Documents.

### GENERAL OBJECTIONS

1.      The Debtors object to the Definitions and Instructions to the extent that they purport to

impose obligations in addition to, or different from, those provided in the pertinent Federal Rules of

RLF1-2833759-1



**EXHIBIT**

_____5_____

APP - A043

Civil Procedure, and the Local Rules for the United States District Court for the District of Delaware (collectively, the "Rules").

2.      The Debtors object to the definition of "Debtors" as overbroad. The Debtors will interpret the term "Debtors" to mean only plaintiffs Teleglobe Communications Corporation, Teleglobe USA Inc., Optel Telecommunications, Inc., Teleglobe Holdings (U.S.) Corporation, Teleglobe Marine (U.S.) Inc., Teleglobe Holding Corp., Teleglobe Telecom Corporation, Teleglobe Investment Corp., Teleglobe Luxembourg LLC, Teleglobe Puerto Rico Inc., and Teleglobe Submarine Inc.

3.      The Debtors object to the definition of "Teleglobe" as overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The Debtors will interpret "Teleglobe" to mean Teleglobe Inc.

4.      The Debtors object to the definition of "BCE" because the Debtors do not know the identity of BCE's "predecessors or successors in interest, and its present or former subsidiaries, affiliates, divisions, business units, directors, officers, employees, attorneys, agents and representatives, and all persons acting or who have acted on their behalf." The Debtors will interpret "BCE" to mean BCE Inc.

5.      The Debtors object to the definition of "Deloitte" because the Debtors do not know the identity of Deloitte's "predecessors or successors in interest, and its present or former subsidiaries, affiliates, divisions, business units, directors, officers, employees, attorneys, agents and representatives, and all persons acting or who have acted on their behalf." The Debtors will interpret "Deloitte" to mean Deloitte & Touche's Canadian entity(ies).

6.      The Debtors object to the definition of "Ernst & Young" because the Debtors do not know the identity of Ernst & Young's "predecessors or successors in interest, and its present or former subsidiaries, affiliates, divisions, business units, directors, officers, employees, attorneys, agents and

APP - A044

representatives, and all persons acting or who have acted on their behalf." The Debtors will interpret

"Ernst & Young" to mean Ernst & Young, Inc., a Canadian corporation.

7.    The Debtors object to the definition of "Lazard" because the Debtors do not know the

identity of Lazard's "predecessors or successors in interest, and its present or former subsidiaries,

affiliates, divisions, business units, directors, officers, employees, attorneys, agents and representatives,

and all persons acting or who have acted on their behalf." The Debtors will interpret "Lazard" to mean

Lazard Freres & Co. (United States).

8.    The Debtors object to these requests to the extent that they are vague, ambiguous,

overbroad, unduly burdensome, and unreasonably cumulative.

9.    The Debtors object to these requests to the extent that they seek documents that are

neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of

admissible evidence, as required by Fed. R. Civ. P. 26(b)(1).

10.    The Debtors object to these requests to the extent that they seek production of documents

already within the possession, custody, or control of Defendants or obtainable from some other source

that is more convenient, less burdensome, or less expensive.

11.    The Debtors will make available for Defendants' inspection and copying only those

documents within their "possession," "custody" or "control" as those terms are used in Fed. R. Civ. P.

34(a).

12.    The Debtors object to these requests to the extent that they seek the production of

documents that are protected from disclosure by the attorney-client privilege, or other privilege, the

work product doctrine or Fed. R. Civ. P. 26(b)(3). The Debtors will not produce such documents, but

will provide a written privilege log at a mutually agreeable date. Moreover, the production of any

document is without waiver of any assertion of privilege. In the event that any privileged document is

APP - A045

produced, its production is inadvertent and does not constitute a waiver of privilege and the Debtors reserve the right to demand the return of such document and the destruction of any copies thereof.

13.    The Debtors object to the definition of "document" to the extent it purports to expand the meaning of the term beyond that assigned or set forth in Fed. R. Civ. P. 34(a).

14.    The Debtors object to the definition of "'identify' when used in connection with a document or documents" as overbroad and unduly burdensome, and will not "furnish the names and address of all persons having custody or control of such document(s)."

15.    The Debtors object to the definition of "'identify' as used in connection with any entity other than a natural person" as overbroad and unduly burdensome. The Debtors when identifying any person other than a natural person will provide only its full name and present or last known address.

16.    The Debtors reserve the right at any time to revise, correct, add to or clarify the objections and responses set forth herein and any production made pursuant hereto.

17.    The Debtors' assertion that they will produce documents or provide information in response to a particular request is not to be construed as an admission that any document or information exists within any requested category or categories, but solely as an assertion that the Debtors will produce (consistent with the objections raised herein or hereafter) any responsive, non-privileged documents or information within their possession, custody or control should any such documents or information be found after a reasonably diligent search.

18.    The Debtors object to Defendants' Second Request for Production of Documents Directed to Debtors to the extent that it seeks document for a period commencing on January 1, 1999 on the grounds that Teleglobe documents pre-dating January 1, 2000 would be irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. The Debtors will produce documents for the

period from January 1, 2000 through May 28, 2002 as set forth of Defendants' First Request for

Production of Documents and First Set of Interrogatories.

19.    All of these General Objections are continuing in nature and are incorporated by

reference into each and every Interrogatory response and responses to the Document Requests.

## DOCUMENTS TO BE PRODUCED

**REQUEST NO 1:**    The following selected documents concerning the arbitration proceeding
before the American Arbitration Association, entitled In the Matter of the Arbitration Between
Teleglobe Telecom Corporation and Teleglobe Inc. and VarTec Telcom, Inc. and VarTec
Telecom Holding Company, 50 T 153 00025 04: (a) all arbitration awards and orders issued by
the arbitral tribunal, (b) the transcripts from all the arbitration hearings, (c) the transcripts of all
depositions of witnesses conducted in connection with the arbitration proceeding, (d) all exhibits
introduced or marked at such depositions or at the arbitration hearings; and (e) the pleadings,
briefs, memorials, letters, or other documents submitted to the arbitration tribunal by the parties
to the arbitration proceeding.

**RESPONSE:** The Debtors object to this Request on the grounds that it is

overbroad, unduly burdensome and calls for the production of documents which are neither

relevant nor reasonably calculated to lead to the discovery of admissible evidence. The Debtors

further object to this request on the grounds that most, if not all, of the responsive documents are

(a) subject to a Confidentiality Agreement between VarTec Telcom, Inc. and VarTec Telcom

Holding Company (collectively, "VarTec") and the Debtors, and VarTec has refused to waive

confidentiality by letter dated January 18, 2005 and (b) attorney client privilege and/or attorney

work product. Based upon communications from counsel to VarTec, we understand VarTec to

be in the process of moving for a protective order. Pursuant to Debtors' signed agreement with

VarTec, Debtors will not be in a position to produce documents responsive to this request until

the Court rules on the expected motion.

APP - A047

Dated:  January 24, 2005

RICHARDS, LAYTON & FINGER P.A.

Gregory V. Varallo (No. 2242)
C. Malcolm Cochran, IV (No. 2377)
Russell C. Silberglied (3462)
Anne Shea Gaza (#4093)
One Rodney Square
P.O. box 551
Wilmington, DE  19801
Telephone:  (302) 651-7700

*Attorneys for the Debtors*

RLF1-2833759-1                    - 6 -

APP - A048

FROM RL&F

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2005, true and correct copies of the foregoing were

caused to be served on counsel of record at the following addresses as indicated:

**BY HAND DELIVERY**
Pauline K. Morgan, Esq.
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899

**BY HAND DELIVERY**
Kevin Gross, Esq.
Joseph A. Rosenthal , Esq.
ROSENTHAL, MONHAIT, GROSS &
GODDESS, P.A.
1401 Mellon Bank Center
P.O. Box 1070
Wilmington, DE 19801

**VIA FEDERAL EXPRESS**
John P. Amato, Esq.
Hahn & Hessen LLP
488 Madison Avenue
14th and 15th Floor
New York, New York 10022

**VIA FEDERAL EXPRESS**
George J. Wade, Esq.
Daniel Schimmel, Esq.
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022

Anne Shea Gaza (#4093)

RLF1-2811497-1

APP - A049

## RICHARDS, LAYTON & FINGER

A PROFESSIONAL ASSOCIATION
ONE RODNEY SQUARE
920 NORTH KING STREET
WILMINGTON, DELAWARE 19801
(302) 651-7700
FAX (302) 651-7701
WWW.RLF.COM

RUSSELL C. SILBERGLIED
DIRECTOR

DIRECT DIAL NUMBER
302-651-7545
SILBERGLIED@RLF.COM

April 26, 2005

Beth W. Bivans, Esq.
Hughes & Luce, LLP
1717 Main Street
Suite 2800
Dallas, Texas 75201

Re:    **Teleglobe Communications Corp. v. BCE, Inc., et al.**

Dear Beth:

Reference is made to your letter dated January 18, 2005 to Randy Miller of Arnold & Porter and Pauline Morgan of Young, Conaway, Stargatt & Taylor (copy attached) concerning Defendants' Second Request for Production of Documents (the "Document Request"; copy attached hereto), which seeks, inter alia, documents from and concerning the arbitration proceedings styled Teleglobe Telecom Corp., et al. v. VarTec Telecom, Inc., et al., No. 50 T 153 00025 04 (the "Arbitration"). As you likely are aware, on January 24, 2005, the Debtors objected to the Document Request on the grounds that most of the requested documents were subject to the confidentiality agreement entered in the Arbitration (the "Confidentiality Agreement") and that your January 18, 2005 letter objected to the production of these allegedly confidential documents.

At a discovery conference in this litigation held yesterday by Chief Judge Robinson, Defendants pressed for the production of the documents related to the Arbitration. In response, I again noted your objection to the production. Notwithstanding the foregoing, Chief Judge Robinson directed that the Debtors produce responsive documents by May 9, 2005, unless VarTec has filed a motion for protective order in the United States District Court for the District of Delaware by that date. Pursuant to paragraph 19 of the Confidentiality Agreement, notice is hereby given that the Debtors intend to comply with Chief Judge Robinson's direction to produce the documents on May 9, unless VarTec files a motion for protective order before that date.

RLF1-2868264-1

**EXHIBIT**

6

APP - A050

FROM RL&F                                    (TUE) 4.26' 05 13:24/ST. 13:21/NO. 4864902995 P 3

Beth W. Bivans, Esq.
April 26, 2005
Page 2

If you have any questions, please feel free to call me.

Very truly yours,

*Russell C. Silberglied*

Russell C. Silberglied

RCS:cd

cc:     Pauline K. Morgan, Esq.
        George J. Wade, Esq.
        Randall Miller, Esq.
        John P. Amato, Esq.
        Gregory V. Varallo, Esq.
        C. Malcolm, Cochran, IV., Esq.

RLF1-2868264-1