IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **TELEGLOBE COMMUNICATIONS** | § | **CASE NO. 02-11518 (MFW)** |
| **CORPORATION, ET AL.,** | § | **(Jointly Administered)** |
| | § | |
| DEBTORS. | § | |
| | § | |
| | § | |
| Teleglobe USA Inc. et al., | § | |
| | § | |
| Plaintiff, | § | |
| | § | **CIV. ACTION NO. 04-1266 (SLR)** |
| v. | § | |
| | § | |
| BCE Inc. et al., | § | |
| | § | |
| Defendants. | § | |

**BRIEF IN SUPPORT OF INTERVENOR VARTEC TELECOM, INC.'S
AMENDED MOTION FOR PROTECTIVE ORDER REGARDING
DEFENDANTS' SECOND REQUEST FOR PRODUCTION
OF DOCUMENTS WITH REQUEST FOR ORAL ARGUMENT THEREON**

**STEVENS & LEE P.C.**
Joseph H. Huston, Jr. (No. 4035)
Thomas G. Whalen, Jr. (No. 4034)
300 Delaware Ave., Ste. 800
Wilmington, DE 19801
Telephone: (302) 425-3310; -3304
Telecopy:   (610) 371-7972; -8512

AND

**HUGHES & LUCE L.L.P.**
Craig W. Budner
Beth W. Bivans
1717 Main Street, Ste. 2800
Dallas, Texas 75201
Telephone: (214) 939-5500
Telecopy:   (214) 939-5849

**ATTORNEYS FOR VARTEC TELECOM,
INC. AND VARTEC TELECOM
HOLDING COMPANY**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................................iii

I.    INTRODUCTION AND SUMMARY OF MOTION.........................................................1

II.   BACKGROUND FACTS.................................................................................................2

      A.    VarTec's Unique Relationship with the Parties to this Adversary
            Proceeding........................................................................................................2

            1.    VarTec v. BCE: *Common Law and Securities Fraud Case Pending
                  in the United States District Court for the District of Washington,
                  D.C.* ................................................................................................3

            2.    Teleglobe v. VarTec: *International Arbitration Proceeding Held in
                  Washington, D.C. June 26-July 10, 2004; Ruling Issued October
                  26, 2004*...........................................................................................4

                  a)    The Arbitration Required the Exchange of Privileged and
                        Confidential Information Not Otherwise Discoverable or
                        Irrelevant to This Proceeding.........................................................5

                        i.     The unique nature of the claims created the need for
                               exchange of confidential and privileged information .........5

                        ii.    The overwhelming majority of documents produced
                               in the Arbitration came from VarTec...................................6

                        iii.   The majority of Arbitration Documents are
                               irrelevant to the dispute between Teleglobe and
                               BCE.................................................................................7

            3.    Teleglobe v. BCE: *Adversary Proceeding Pending in the United
                  States District Court for the District of Delaware*.......................................8

III.  ARGUMENT AND AUTHORITIES...................................................................................9

      A.    VarTec Risks Waiving the Attorney-Client Privilege and Work Product
            Protection in Its Case Against BCE and Future Litigation Matters........................10

      B.    Absent the Court's Protection, VarTec Will Be Significantly
            Disadvantaged in its Case Against BCE................................................................12

      C.    Disclosure of Confidential and Proprietary Financial Documents Has the
            Likelihood to Harm VarTec in the Telecom Industry ...........................................13

IV.   REQUEST FOR ORAL ARGUMENT ..........................................................................14

V.    CONCLUSION AND PRAYER FOR RELIEF .................................................................14

CERTIFICATE OF SERVICE .......................................................**Error! Bookmark not defined.**

CERTIFICATE OF CONFERENCE........................................................................................ 16

## TABLE OF AUTHORITIES

### Cases

*Bernal v. Southern Pac. Transp. Co.,*
   196 F.R.D. 371 (E.D. Cal. 2000) ............................................................................................ 13

*Corning Inc. v. SRU Biosystems, LLC,*
   223 F.R.D. 189 (D. Del. 2004) ................................................................................................ 12

*Eigenheim Bank v. Halpern,*
   98 F. Supp. 988 (D.C.N.Y. 1984) ............................................................................................ 12

*Glenmede Trust Co. v. Thompson,*
   56 F.3d 476 (3d Cir. 1995) ...................................................................................................... 13

*In re Sealed Case,*
   877 F.2d 976 (D.C. Cir. 1989) ................................................................................................ 12

*Pansy v. Borough of Stroudsburg,*
   23 F.3d 772 (3d Cir. 1994) ...................................................................................................... 10

*Publicker Indus., Inc. v. Cohen,*
   733 F.2d 1059 (3d Cir. 1984) .................................................................................................. 10

*Rhone-Poulenc Rorer Inc. v. The Home Indemnity Co. et al.,*
   32 F.3d 851 (3d Cir. 1994) ...................................................................................................... 11

*Sporck v. Peil,*
   759 F.2d 312 (3d Cir. 1985) .................................................................................................... 12

### Rules

15 U.S.C. § 78u-4(b)(3)(B) ............................................................................................................ 4

Fed. R. Civ. P. 26(b) ...................................................................................................................... 11

Fed. R. Civ. P. 26(c) ...................................................................................................................... 10

SL1 539314v1/18574.001

Pursuant to Federal Rule of Bankruptcy Procedure 7026(c) and Federal Rule of Civil Procedure 26(c), Intervenor VarTec Telecom, Inc. ("VarTec") in support of its Motion for Protective Order Regarding Defendants' Second Request for Production of Documents and Application for Oral Argument, states the following:

## I.    INTRODUCTION AND SUMMARY OF MOTION

1.    VarTec intervenes in this proceeding for the limited purpose of seeking protection of confidential and privileged documents sought by BCE's Second Request for Production to Teleglobe (the "Request").    The documents, produced by VarTec in connection with a confidential arbitration proceeding between Teleglobe and VarTec, styled *Teleglobe Telecom Corporation, et al. v. VarTec Telecom, Inc., et al.*, No. 50 T 153 00025 04 (the "Arbitration"), should be protected for the following reasons:

- The documents (hereinafter the "Arbitration Documents") contain privileged communications between VarTec and its in-house and outside counsel and confidential work product data that were produced under a finding of common interest between the parties to the Arbitration;

- The Arbitration Documents contain highly confidential and proprietary information – including VarTec's business plans, financial projections, network pricing models, forecasts, sales and marketing data, and other business and financial data, in addition to communications with lenders, auditors, and restructuring consultants – that is wholly irrelevant to the dispute between Teleglobe and BCE;

1

- The Request is overbroad and fails to state with specificity the documents BCE believes are reasonably calculated to lead to admissible evidence in this proceeding; and

- The Request is essentially an attempt by BCE to obtain VarTec's documents for use in VarTec's securities fraud litigation against BCE, pending in the United States District Court for the District of Columbia (the "D.C. District Court"), thereby circumventing the discovery stay in effect and alleviating the need to provide reciprocal discovery to VarTec.

## II.    **BACKGROUND FACTS**

A.    **VarTec's Unique Relationship with the Parties to this Adversary Proceeding**

2.    To fully understand the basis of this Motion, the Court should be aware of the unique and intricate relationship between VarTec and the two entities involved in this litigation. In early 2001, BCE began negotiating the sale of its subsidiaries Excelcom, eMeritus, and Excel Canada (collectively "Excel") to VarTec. Though VarTec negotiated the purchase with BCE, BCE insisted that Teleglobe (Excel's parent) be listed as the selling party on the purchase agreement (the "SPA"). VarTec and Teleglobe executed the SPA on Friday, April 5, 2002. A key aspect of the transaction was an agreement that Teleglobe retain certain liabilities incurred by Excel prior to the closing of the transaction and indemnify VarTec for costs and expenses arising out of Excel's pre-close liabilities.

3.    As Teleglobe has alleged in this Court, BCE announced its plan to pull all of its funding and support from Teleglobe on April 8, 2005 – just *one business day* after closing the deal with VarTec. This decision eviscerated the significant indemnification provisions in the SPA. By late May 2002, Teleglobe was in bankruptcy in the United States and Canada. The circumstances surrounding BCE's decision to withdraw support and funding from Teleglobe laid

2

the groundwork for several lawsuits commenced over the past three years, each of which alleges that BCE fraudulently misrepresented its financial support of Teleglobe. The Court should take particular note of three lawsuits involving the parties currently before this Court.

### 1.    VarTec v. BCE: *Common Law and Securities Fraud Case Pending in the United States District Court for the District of Columbia*

4.    VarTec filed suit against BCE on December 2, 2002, alleging various causes of action including common law fraud and state and federal securities fraud. The main crux of VarTec's suit is that BCE intentionally misrepresented Teleglobe's financial stability and ability to perform its obligations under the SPA and intentionally omitted to inform VarTec of BCE's plan to abandon Teleglobe once the SPA was signed. VarTec seeks damages for the millions of dollars in out-of-pocket losses it has suffered maintaining and operating Excel, as well as damages stemming from the consequences of BCE's fraud, such as VarTec's financial deterioration and eventual bankruptcy.

5.    Because VarTec's case against BCE is governed by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b)(3)(B) (the "PSLRA"), discovery is stayed pending the outcome of a motion to dismiss filed by BCE. Therefore, while the fraud suit has been pending for over two years, the parties have had no opportunity to conduct discovery. BCE is, however, involved in several other litigation matters that are currently proceeding with discovery. BCE has also been sued by Steve Smith, a former officer of Excel, and a group of Canadian lenders (the "Canadian Lending Syndicate") for failing to disclose its plans to pull funding and support from Teleglobe.

6.    BCE has requested and received copies of information VarTec has produced via third-party discovery to Steve Smith. VarTec is currently working with BCE to respond to BCE's direct subpoena to Excel for documents in the Smith litigation as well. BCE's attempts to

3

obtain discovery related to VarTec's claims in other lawsuits has prompted VarTec to petition the D.C. District Court for partial relief from the PSLRA's discovery stay.[1]  Unless and until the court grants VarTec's motion for relief from the stay, any production of VarTec's documents in this case would unduly prejudice VarTec in its suit against BCE.

**2.     Teleglobe v. VarTec: *International Arbitration Proceeding Held in Washington, D.C. June 26-July 10, 2004; Ruling Issued October 26, 2004***

7.     In addition to pursuing its fraud claims against BCE, VarTec filed a proof of claim in Teleglobe's bankruptcy proceeding in May 2002, seeking indemnification for liquidated and unliquidated amounts expended by VarTec for Excel's pre-close liabilities.  Between April and November of 2003, Teleglobe conducted extensive discovery of VarTec's indemnification claims pursuant to Federal Rule of Bankruptcy Procedure 2004.  During the Rule 2004 process, Teleglobe and VarTec entered into a Confidentiality Agreement (the "Confidentiality Agreement"), which allowed VarTec to designate certain documents as "confidential" and prevented Teleglobe from disclosing those documents to any third party without VarTec's consent.[2]

8.     In January 2004, Teleglobe filed an arbitration demand against VarTec based on a mandatory arbitration clause in the SPA.  Over VarTec's continuing objections, the Arbitration proceeded on an extremely aggressive schedule based on specific dispute-resolution timelines set forth in the SPA.  During the six month period from the filing of the demand to the conclusion of the hearing, VarTec collected, reviewed, and produced over *one million pages* of documents to

---

[1] *See* VarTec's Motion to Partially Lift the PSLRA Discovery Stay, attached as **Exhibit 1** to the Affidavit of Beth W. Bivans in Support of Intervenor VarTec Telecom, Inc.'s Motion for Protective Order (the "Bivans Affidavit"), and incorporated by reference, for a discussion of the status of discovery in BCE's litigation matters with Steve Smith (*Stephen R. Smith v. BCE, Inc. and BCE Ventures, Inc.*; Cause No. 04-CV-303-XR, pending in the U.S. District Court for the Western District of Texas, San Antonio Division), the Canadian Lending Syndicate (*ABN Amro Bank N.V., et al. v. BCE, Inc.*; Court File No. C2-CV-232755 CM3), and Teleglobe, at APP-A001-17.

[2] A copy of the Confidentiality Agreement is attached as **Exhibit 2** to the Bivans Affidavit, at APP-018-30.

Teleglobe; prepared and presented *twenty-six* witnesses for deposition; participated in no less than *twelve* discovery dispute hearings; and prepared for and conducted a ten-day arbitration hearing. Throughout the course of the Arbitration, the parties agreed that the Confidentiality Agreement would remain in effect.

9.    In late June and early July of 2004, the arbitration panel (the "Panel") conducted a full evidentiary hearing of the parties' claims in Washington, D.C. and issued a confidential ruling on October 26, 2004.

### a)    The Arbitration Required the Exchange of Privileged and Confidential Information Not Otherwise Discoverable or Irrelevant to This Proceeding

10.    The Arbitration Documents, in their current form, are riddled with confidential, privileged and otherwise non-discoverable information.    The confidential nature of the Arbitration proceeding,[3] coupled with the common interests shared by the parties as successor parent companies of Excel, created a unique backdrop for discovery. In addition to the ordered disclosure of attorney-client privileged material, the Panel ordered VarTec to produce all versions of its internal damages charts[4] and confidential communications with its senior lender and restructuring consultants.

### i.    The unique nature of the claims created the need for exchange of confidential and privileged information

11.    The dispute between Teleglobe and VarTec was rare in that the parties, though adverse, were required to share confidential and privileged information. Despite VarTec's argument that its adversarial relationship with Teleglobe negated any common interests between

---

[3]    Because the parties contractually agreed to arbitrate any disputes arising out of the SPA to preserve the confidentiality of the proceedings and the award, VarTec entered into the dispute with a reasonable expectation that the information exchanged between the parties and presented to the arbitrators would remain confidential.

[4]    Because VarTec objects to the production of the Arbitration Documents to BCE, including Panel orders and briefs, VarTec has not attached such documents in support of this Motion. In the event that Teleglobe objects to VarTec's characterization of any order or brief submitted in the Arbitration, or if the Court requests copies of these documents, VarTec will provide them to the Court for in camera review.

5

the parties, the Panel held that the indemnitor/indemnitee relationship between Teleglobe and VarTec gave rise to a "common interest" privilege with respect to approximately fifty of Excel's pre-close litigation matters. As a result of this holding, VarTec was required to produce its entire files related to each of these litigation claims. Documents produced to Teleglobe include privileged emails between VarTec's in-house and outside counsel, memoranda analyzing VarTec's likelihood of success, confidential settlement negotiations between VarTec and the other parties to litigation matters, attorney notes, unfinished drafts of motions and briefs, and various other documents prepared by counsel in anticipation of litigation. VarTec was also required to produce its legal invoices for each indemnifiable litigation claim – including its fraud litigation against BCE. None of these litigation matters is at issue in this dispute between Teleglobe and BCE. Thus, not only is the information privileged, it is not relevant.

12.    The Panel also compelled VarTec to produce, over objection, a variety of confidential financial data.[5] Pursuant to the Panel's order, VarTec produced confidential communications with its senior lender, the Rural Telecom Finance Cooperative (the "RTFC"), its accountants and auditors, and even the restructuring firm it hired prior to filing bankruptcy. VarTec also produced certain proprietary financial and sales data that could be damaging in the hands of third parties, especially in light of VarTec's pending bankruptcy. Again there is no conceivable relevance to these documents in the dispute between Teleglobe and BCE.

ii.    The overwhelming majority of documents produced in the Arbitration came from VarTec

13.    Virtually all of the documents produced and witnesses deposed throughout the course of the Arbitration came from VarTec. Because BCE was the primary negotiator on the

---

[5]  Teleglobe's claims in the Arbitration involving VarTec's ability to make payments on promissory notes and VarTec's claims of financial hardship, among other factors, gave rise to the Panel's order requiring the production of confidential and proprietary financial data. VarTec's financial information bears no relevance to any claim or defense in the dispute between Teleglobe and BCE and should be protected from disclosure.

6

Excel transaction with VarTec, Teleglobe had virtually no documents in its possession and produced only two witnesses with any knowledge of the facts underlying the dispute. VarTec, in contrast, produced over a million pages of documents including entire hard drives and email accounts for numerous employees, boxes of documents from VarTec's outside transactional counsel on the Excel transaction and various outside law firms on litigation matters inherited from Excel, rooms full of tax documents, and a warehouse full of telecom network documents.

14.     BCE is aware that Teleglobe provided very little discovery in the Arbitration and obviously knows that Teleglobe's employees have little to no knowledge about the sale of Excel, because the transaction was solely negotiated by BCE. BCE did not even attempt to limit its Request to the minimal documents produced by Teleglobe in the Arbitration. BCE's effort to gain all documents and depositions produced in the Arbitration is therefore essentially an effort to gain all of *VarTec's* documents and depositions produced in the Arbitration. Nonetheless, BCE did not request the documents from VarTec – who has an incentive to protect the privileges – but instead seeks these documents from Teleglobe.

        iii.    The majority of Arbitration Documents are irrelevant to the dispute between Teleglobe and BCE

15.     In addition, the Arbitration Documents are irrelevant to Teleglobe's claims against BCE. The Arbitration Documents contain almost exclusively VarTec-created documents relating to the contractual obligations of Teleglobe and VarTec under the SPA and the Purchase Price Notes. Moreover, the documents include VarTec's confidential and proprietary data bearing no relevance to any claim asserted in this proceeding.[6]

---

[6] Additionally, the Arbitration Documents contain documents that are wholly irrelevant to the Arbitration, the Teleglobe Suit against BCE, or the VarTec suit against BCE. As a result of the aggressive discovery schedule imposed during the Arbitration and the extreme volume of documents involved, VarTec inadvertently produced non-responsive documents to Teleglobe.

3.    **Teleglobe v. BCE:** *Adversary Proceeding Pending in the United States District Court for the District of Delaware*

16.    On May 26, 2004, as the Court is aware, Teleglobe filed this adversary proceeding against BCE and numerous officers and directors alleging breach of contract, equitable estoppel, fraud/negligent misrepresentation, and various counts of breach of fiduciary duty. By order of this Court dated September 8, 2004, the automatic reference was withdrawn from the Bankruptcy Court and the dispute is currently pending before this Court.

17.    Teleglobe alleges that when BCE withdrew its financial support of Teleglobe, BCE either breached an additional $2.5 billion commitment to fund Teleglobe's on-going operations and CapEx project "GlobeSystem" or misrepresented that commitment to Teleglobe and its creditors. Teleglobe alleges that the board of directors of Teleglobe's Canadian parent, Teleglobe Inc., would not have continued the GlobeSystem project without the understanding that BCE was committed to funding the project. Additionally, Teleglobe alleges that the officers and directors of BCE, Teleglobe Inc. and Teleglobe breached their fiduciary duties to Teleglobe and its shareholders by failing to obtain an unconditional, written guarantee to fund from BCE. Finally, Teleglobe alleges that the officers and directors, along with BCE, breached a duty to Teleglobe's creditors by continuing to sponsor the GlobeSystem project when Teleglobe was in the "zone of insolvency."

18.    As the Court is aware, discovery has been ongoing in this matter, and includes the Request at issue here, through which BCE seeks: "(a) all arbitration awards and orders issued by the arbitral tribunal, (b) the transcripts from all the arbitration hearings, (c) the transcripts of all depositions of witnesses conducted in connection with the arbitration proceeding, (d) all exhibits introduced or marked at such depositions or at the arbitration hearings, and (e) the pleadings,

8

briefs, memorials, letters, or other documents submitted to the arbitration tribunal by the parties to the arbitration proceeding."[7]

19.    Pursuant to its obligations under the Confidentiality Agreement, Teleglobe sent VarTec a copy of the Request and sought consent to produce the Arbitration documents. VarTec immediately sent a letter to attorneys for both Teleglobe and BCE stating its objections to the production of the requested documents – namely that they are covered by the Confidentiality Agreement, include privileged and proprietary information not intended for further distribution, and are wholly irrelevant to Teleglobe's dispute with BCE.[8]  Teleglobe objected to the Request on January 24, 2005, citing VarTec's refusal to waive the protections of the Confidentiality Agreement.[9]

20.    By letter dated April 26, 2005, counsel for Teleglobe informed VarTec of the Court's decision to compel production of the Arbitration Documents by May 9, 2005, if VarTec has not first filed a Motion for Protective Order.[10]   Thus, VarTec seeks protection from disclosure of the Arbitration Documents. Further, VarTec seeks control over the production of any relevant, non-privileged documents – if BCE is able to specifically identify any – that the Court finds are discoverable in this case.

## III.    ARGUMENT AND AUTHORITIES

21.    As the party seeking a protective order, VarTec must establish that "good cause" exists for the protection of documents sought by the Request. Fed. R. Civ. P. 26(c). "Good

---

[7]  *See* Defendants' Second Request for Production of Documents, attached as **Exhibit 3** to the Bivans Affidavit, at APP-A038-39.

[8]  *See* Letter from Beth W. Bivans to Randall Miller and Pauline K. Morgan, dated January 18, 2005, attached as **Exhibit 4** to the Bivans Affidavit, at APP-A040-42.

[9]  *See* The Debtors' Response to Defendants' Second Request for Production of Documents, dated January 24, 2005, attached as **Exhibit 5** to the Bivans Affidavit, at APP-A043-49.

[10]  *See* Letter from Russell C. Silberglied to Beth W. Bivans, dated April 26, 2005, attached as **Exhibit 6** to the Bivans Affidavit, at APP-A050-51.

9

cause is established on a showing that disclosure will work a **clearly defined and serious injury**" to VarTec. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (quoting *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984) (emphasis added)). Under Third Circuit law, such a showing involves a balancing process whereby BCE's need for information is balanced against the potential harm of compelling uncontrolled disclosure. *See Pansy*, 23 F.3d at 787.

22.    BCE has not stated any need for the Arbitration Documents. In fact, it is unclear whether BCE even knows what is contained in the documents it seeks. VarTec, on the other hand, is likely to suffer specific and serious injury if the Arbitration Documents are disclosed. First, VarTec risks waiving its privileges in other pending and future litigation matters if thousands of privileged documents produced under a finding of "common interest" with Teleglobe are produced here. Further, VarTec will find itself at a significant informational disadvantage in its suit against BCE if BCE is afforded "free" access to VarTec's documents in direct contravention of the PSLRA stay of discovery. In addition, disclosure of VarTec's confidential financial and proprietary data could harm VarTec's viability as it seeks to sell assets and emerge from bankruptcy.

**A.    VarTec Risks Waiving the Attorney-Client Privilege and Work Product Protection in Its Case Against BCE and Future Litigation Matters**

23.    As noted above, if the Arbitration Documents are disclosed by Teleglobe in their current form, BCE would have access to thousands of VarTec's documents subject to the attorney-client and work product privileges. These documents include information produced, over objection, pursuant to the Arbitration Panel's finding of "common interest" as well as documents inadvertently produced in the extremely expedited and aggressive time period for discovery. Further disclosure of these documents would be detrimental to VarTec's position in

SL1 539314v1/18574.001

litigation with BCE and may constitute a waiver of the privilege in that case as well as the underlying litigation matters VarTec inherited with the purchase of Excel.

24.    Rule 26(b) of the Federal Rules of Civil Procedure and Third Circuit case law generally prohibit discovery of privileged documents. *See Rhone-Poulenc Rorer Inc. v. The Home Indemnity Co. et al.*, 32 F.3d 851, 861-862 (3d Cir. 1994) (recognizing the attorney-client privilege as a bar to discovery except in the exceptional circumstance of waiver); *Sporck v. Peil*, 759 F.2d 312, 315-317 (3d Cir. 1985) (recognizing and discussing the protections of the work product doctrine).

25.    The risk of serious injury to VarTec is clear with respect to the disclosure of its privileged documents. First, the purpose of the attorney-client privilege would be undermined, as VarTec's confidential and unrestrained communications with its attorneys would be publicly distributed. If these privileged communications are not protected from disclosure here, VarTec risks BCE using the documents against it in the D.C. suit or elsewhere. Moreover, VarTec risks waiving the privilege as to its adversaries in the underlying litigation matters. *See e.g.*, *Eigenheim Bank v. Halpern*, 598 F. Supp. 988, 991 (D.C.N.Y. 1984)(holding that disclosure of a privileged document "removes all confidentiality from the document and clearly effects a waiver of any privilege otherwise applicable.") To be clear, VarTec's production of these documents to Teleglobe did *not* waive the privilege. The Panel's order finding common interest expressly stated that "VarTec's compliance with this order shall not waive the privilege with respect to other persons or entities." *See also Corning Inc. v. SRU Biosystems, LLC*, 223 F.R.D. 189, 190 (D. Del. 2004) (stating that a finding of common interest is an "exception to the general rule that the attorney-client privilege will be waived following disclosure of privileged materials to a third party").

26.    Second, disclosure of documents inadvertently produced to Teleglobe during the expedited discovery period, if not removed from the Arbitration Documents, may also result in a waiver of VarTec's privilege. The D.C. Circuit employs a strict rule for waiver of attorney-client privilege – any disclosure, even inadvertent, is a waiver of the privilege in subsequent litigation matters. *See e.g., In re Sealed Case*, 877 F.2d 976, 980 (D.C. Cir. 1989).[11]

## B.    Absent the Court's Protection, VarTec Will Be Significantly Disadvantaged in its Case Against BCE

27.    The Third Circuit has endorsed a number of factors that are relevant to a determination of a party's need for a protective order. *See Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (discussing a variety of factors identified in the *Pansy* opinion). One factor favoring an order of protection is whether the discovery is sought for an "improper purpose." *Id.* BCE's effort to obtain discovery of documents from the Arbitration is essentially an attempt to circumvent the mandatory stay of discovery in the fraud suit between VarTec and BCE. *See e.g., Bernal v. Southern Pac. Transp. Co.*, 196 F.R.D. 371, 373 (E.D. Cal. 2000) (finding that defendant's "impermissible attempt to circumvent the rules of discovery" constituted "good cause" for issuance of a protective order). Unless the Court grants VarTec protection against this effort, BCE will gain access to documents bearing no stated relevance to Teleglobe's claims in this case and gain a significant informational advantage over VarTec in the stayed case.[12]

---

[11] VarTec knows of at least one inadvertently produced document that Teleglobe attempted to use as evidence at the Arbitration. When Teleglobe attempted to use it as a deposition exhibit, VarTec asserted the privilege and requested that Teleglobe return it and all copies to VarTec. Teleglobe refused, and VarTec was forced to bring the dispute to the Panel's attention. The Panel ordered Teleglobe to "return the document, destroy all copies and not use the information disclosed in the document." Nevertheless, Teleglobe marked the document as an exhibit in the Arbitration hearing, and the inadvertently-produced document therefore remains in the set of Arbitration Documents now requested by BCE.

[12] BCE's Request is also quite ironic light of the fact VarTec's efforts to obtain discovery from BCE during the Arbitration were met with strenuous objection. Because Teleglobe had no meaningful documents related to the interpretation of contentious terms in the SPA, VarTec sought that information from BCE and its transactional

28.     VarTec does not wish to stifle BCE's efforts to obtain documents relevant to VarTec's fraud litigation. In fact, VarTec is presently seeking limited relief from the discovery stay in the D.C. District Court. In the event such relief is granted, VarTec is certainly willing to engage in a reciprocal exchange of documents in that proceeding.

**C.      Disclosure of Confidential and Proprietary Financial Documents Has the Likelihood to Harm VarTec in the Telecom Industry**

29.     The Arbitration Documents include correspondence and related material between VarTec and its senior secured lender, the Rural Telecom Finance Cooperative (the "RTFC"). These documents relate to, among other things, VarTec's business plans, financial projections, forecasts, network pricing models, financial covenant targets, and other business and financial information that is confidential and proprietary. When it produced these documents, over objection, VarTec had a reasonable expectation that these documents would not be disclosed to outside third parties, including BCE. Furthermore, these documents have little, if any, relevance to the dispute between Teleglobe and BCE. These documents are confidential and proprietary business information that, in the hands of a competitor such as BCE, may cause harm to VarTec.

30.     Likewise, a number of the Arbitration Documents include correspondence and other communications between VarTec and its professionals, including VarTec's outside accountants, auditors, and restructuring professionals. Again, these documents have no relevance in the matter before this Court, and are confidential and proprietary business records of

---

attorneys. VarTec's subpoenas for documents and witnesses were met with repeated unwillingness to cooperate, disregard for the arbitration panel's authority, and insinuation that VarTec sought discovery for an improper purpose. Indeed, both BCE and Teleglobe opposed VarTec's discovery efforts, arguing that VarTec was improperly seeking discovery in the Arbitration that was instead relevant to VarTec's suit against BCE. Teleglobe's counsel actually stated on the record during a discovery hearing before the arbitration panel that, in response to a document request from VarTec, Teleglobe had "made efforts to get documents from BCE and BCE's counsel and they have flat out refused. And they refused in particular because they understand that VarTec is attempting to use us to get discovery in their District of Columbia case . . . ."

13

VarTec. Because VarTec is a non-party to this case, BCE cannot show that the harm to VarTec from disclosure of these documents is outweighed by BCE's need for this information.

### IV.    REQUEST FOR ORAL ARGUMENT

31.    VarTec hereby requests oral argument on VarTec's Motion for Protective Order Regarding Defendants' Second Request for Production of Documents.

### V.    CONCLUSION AND PRAYER FOR RELIEF

32.    Pursuant to Federal Rule 26(c)(1), VarTec seeks an order protecting the Arbitration Documents from disclosure or discovery in their entirety. The Arbitration Documents were collected, reviewed, produced, and used as evidence in a *confidential* proceeding involving parties sharing recognized common litigation interests. The Arbitration Documents are almost entirely VarTec's documents, yet BCE never served VarTec with a subpoena for third-party discovery in this case. Instead, BCE ignored the discovery stay in related litigation, side-stepped VarTec and attempted to seek the Documents from Teleglobe. Moreover, the Arbitration Documents bear no stated relevance to Teleglobe's claims against BCE.

33.    To the extent the Court orders disclosure of any portion of the Arbitration Documents, VarTec requests that the Court order BCE to state with specificity the documents or categories of information it seeks. In addition, to prevent further prejudice to VarTec, VarTec requests that the Court allow it to segregate the discoverable documents from the larger set of Arbitration Documents. VarTec is the only party equipped to re-review its own documents and remove proprietary documents, documents irrelevant to the claims at issue here, and those that are subject to the attorney-client and work product privileges.

34.    Finally, VarTec respectfully requests that the Court await a ruling on VarTec's Motion to Partially Lift the PSLRA Discovery Stay, currently pending before the D.C. District

SL1 539314v1/18574.001

Court in VarTec's suit against BCE, before permitting the disclosure of any part of the Arbitration Documents. Unless and until VarTec has a mechanism to conduct reciprocal discovery, BCE should be denied access to VarTec's documents.

WHEREFORE, VarTec respectfully requests the Court to GRANT its Motion for Protective Order and preclude BCE from seeking, and Teleglobe from producing, any documents sought in Defendants' Second Request for Production of Documents. VarTec further requests the Court to grant VarTec any additional relief, at law or in equity, to which it is justly entitled.

Respectfully submitted,

**STEVENS & LEE P.C.**

Joseph H. Huston, Jr. (No. 4035)
Thomas G. Whalen, Jr. (No. 4034)
1105 North Market Street, 7th Floor
Wilmington, DE 19801
Telephone: (302) 425-3310;-3304
Telecopy:   (610) 371-7972; -8512

AND

**HUGHES & LUCE L.L.P.**

Craig W. Budner
Beth W. Bivans
1717 Main Street, Ste. 2800
Dallas, Texas 75201
Telephone: (214) 939-5500
Telecopy:   (214) 939-5849

**ATTORNEYS FOR VARTEC TELECOM,
INC. AND VARTEC TELECOM
HOLDING COMPANY**

SL1 539314v1/18574.001