# EXHIBIT 2

*1/20/04*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **TELEGLOBE COMMUNICATIONS** | § | **CASE NO. 02-11518 (MFW)** |
| **CORPORATION, ET AL.,** | § | **(Jointly Administered)** |
| | § | |
| **DEBTORS.** | § | **Objection Deadline: TBD** |
| | § | **Hearing Date: TBD** |

## EMERGENCY MOTION OF VARTEC TELECOM, INC. AND VARTEC TELECOM HOLDING COMPANY TO STAY ARBITRATION PROCEEDINGS AND SUPPORTING BRIEF

Respectfully submitted,

**STEVENS & LEE P.C.**

Joseph H. Huston, Jr. (State Bar No. 4035)
300 Delaware Ave., Ste. 800
Wilmington, DE 19801
Telephone:  (302) 654-5180
Telecopy:   (302) 654-5181

AND

**HUGHES & LUCE L.L.P.**

Craig W. Budner
Beth W. Bivans
Thomas W. Paxton
Ashley C. Vaught
1717 Main Street, Ste. 2800
Dallas, Texas 75201
Telephone: (214) 939-5500
Telecopy:   (214) 939-5849

**ATTORNEYS FOR VARTEC TELECOM, INC. AND VARTEC TELECOM HOLDING COMPANY**

009568.00016:820854.02

## TABLE OF CONTENTS

SUMMARY OF ARGUMENT ...................................................................................1

JURISDICTION ....................................................................................................3

BACKGROUND FACTS RELEVANT TO THE MOTION ...................................3

    The Excel Transaction and the SPA ....................................................................3

    The Debtor's' Bankruptcy Filings .......................................................................4

    VarTec's Discussions with the Debtors Prior to the Debtors' Commencement
    of Rule 2004 Process and VarTec's Proofs of Claim ..........................................4

    Teleglobe's Rule 2004 Discovery Process and VarTec's Amended Proofs
    of Claim .............................................................................................................6

    Teleglobe's Demand for Arbitration and Statement of Claim.............................7

ARGUMENTS AND AUTHORITIES.....................................................................8

    I.     THE TELEGLOBE ARBITRATION CLAIMS ARE NOT WITHIN
          THE SCOPE OF THE ARBITRATION PROVISIONS
          CONTAINED IN THE SPA...............................................................8

          A.    The Court Should Analyze the Language of the SPA Using
                State Law Principles of Contract Interpretation...........................8

          B.    The Teleglobe Arbitration Claims Are Outside the Scope of
                the Parties' Agreement to Arbitrate and Should be
                Adjudicated in this Court............................................................9

                1.    The Parties Agreed Not to Arbitrate Disputes In Bankruptcy .......10

                2.    The Arbitration Provision Applies Only to a "Notice of
                      Claim" in the Indemnification Context, Not Breaches of
                      the SPA .............................................................................12

    II.    IN ANY EVENT, TELEGLOBE HAS WAIVED ITS RIGHT TO
          ARBITRATE THIS DISPUTE...........................................................13

          A.    Teleglobe Failed to Invoke its Arbitration Rights .....................13

009568.00016:820854.02

B.  VarTec Has Been Prejudiced by Teleglobe's Failure to Invoke the Arbitration Provision.........................................................................16

III.  THE COURT SHOULD STAY THE ARBITRATION BECAUSE THIS IS A CORE PROCEEDING THAT SHOULD BE ADJUDICATED IN THIS COURT ................................................................................................20

A.  The Court Has the Discretion to Stay the Arbitration of a Core Proceeding..................................................................................................20

B.  The Teleglobe Arbitration Claims Are Core Proceedings That Present Unique Issues Requiring Immediate and Exclusive Adjudication by the Bankruptcy Court.........................................................................................21

1.  The Teleglobe Arbitration Claims Constitute "Core" Proceedings...............................................................................21

(a)  The Teleglobe Arbitration Claims are "Core" Pursuant to § 157(b)..............................................................21

(b)  The Teleglobe Arbitration Claims Invoke Substantive Rights Provided by Title 11 That Could Arise Only in the Context of a Bankruptcy Case................24

2.  The Court Should Exercise Its Discretion in Staying the Arbitration in Favor of the Bankruptcy Code's Claims Adjudication Process ....................................................................25

(a)  The Bankruptcy Court is the Most Efficient Forum to Resolve All Disputes Between Teleglobe and VarTec..............................................................................25

(b)  Centralized Resolution of the Parties' Disputes Would be Hindered by Proceeding with Arbitration .........27

(c)  The Bankruptcy Policy of Protecting All Creditors' Interests Would be Hindered by Proceeding with Arbitration.........................................................................28

009568.00016:820854.02

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Abacus Broad. Corp.,*
   154 B.R. 682 (Bankr. W.D. Tex. 1993) ................................................................................20

*After Six, Inc. v. Abraham Zion Corp. (In re After Six, Inc.),*
   167 B.R. 35 (E.D. Pa.), *aff'd,* No. 94-1529, 1994 U.S. App. LEXIS 31657 (3d Cir.
   1994) ......................................................................................................................................17

*Ballay v. Legg Mason Wood Walker, Inc.,*
   878 F.2d 729 (3d Cir. 1989) ..................................................................................................9

*In re Board of Directors of Hopewell International Insurance Ltd.,*
   258 B.R. 580 (Bankr. S.D.N.Y. 2001) ................................................................................16

*Charter Behavioral Health System),*
   277 B.R. 54 (Bankr. D. Del. 2002) ......................................................................................19

*Cornell & Co. v. Barber & Ross Co.,*
   360 F.2d 512 (D.C. Cir. 1966) ............................................................................................15

*Duo Metal & Iron Works, Inc. v. S.T.C. Construction Co.,*
   472 F. Supp. 1023 (E.D. Pa. 1979) ....................................................................................18

*E.C. Ernst, Inc. v. Manhattan Constr. Co.,*
   559 F.2d 268, 269 (5th Cir. 1977)) ....................................................................................15

*In re FRG,*
   115 B.R. 72 (E.D. Pa. 1990) ................................................................................................20

*Gandy v. Gandy, (In re Gandy),*
   299 F.3d 489 (5th Cir. 2002) ..................................................................................25, 26, 29

*General Electric Co. v. Deutz AG,*
   270 F.3d 144 (3d Cir. 2001) ..................................................................................................9

*Halper v. Halper,*
   164 F.3d 830 (3d Cir. 1999) ..........................................................................................21, 24

*Hays & Co.,*
   885 F.2d at 1161 ..................................................................................................................25

009568.00016:820854.02

*In re Hemphill Bus Sales, Inc.*,
    259 B.R. 865 (Bankr. E.D. Tex. 2001) .......................................................24, 25, 26, 28, 29

*Hoxworth v. Blinder, Robinson & Co.*,
    980 F.2d 912 (3d Cir. 1992).......................................................................................15, 16

*Larocque v. CitiFinancial Mortgage Co. (In re Larocque)*,
    283 B.R. 640 (Bankr. D.R.I. 2002)...............................................................................23, 27

*In re Lufkin*,
    255 B.R. 204 (Bankr. E.D. Tenn. 2000) ...........................................................................16

*Miller Brewing Co. v. Fort Worth Distributing Co.*,
    781 F.2d 494 (5th Cir. 1986) ...........................................................................................15

*In re Mintze*,
    No. 03-21132003 U.S. Dist. LEXIS 21101 (E.D. Pa. November 12, 2003) .....................27

*National Broad. Co. v. Bear Stearns & Co.*,
    165 F.3d 184 (2d Cir. 1999)..............................................................................................16

*National Foundation for Cancer Research v. A.G. Edwards & Sons, Inc.*,
    821 F.2d 772 (D.C. Cir. 1987)..........................................................................................17

*Official Committee of Unsecured Creditors v. Eagle-Picher Industrial, Inc. (In re Eagle-
Picher Industrial, Inc.)*,
    169 B.R. 130 (Bankr. S.D. Ohio 1994).............................................................................16

*Pardo v. Pacificare of Tex., Inc. (In re APF Co.)*,
    264 B.R. 344 (Bankr. D. Del. 2001) .................................................................................20

*Price v. Drexel Burnham Lambert, Inc.*,
    791 F.2d 1156 (5th Cir. 1986) ..........................................................................................17

*S.G. Phillips Constructors, Inc. v. City of Burlington (In re S.G. Phillips Constructors,
Inc.)*,
    45 F.3d 702 (2d Cir. 1995)................................................................................................22

*Shearson/America Express v. McMahon*,
    482 U.S.  220 (1987)............................................................................................................8

*Stone v. E.F. Hutton & Co., Inc.*,
    898 F.2d 1542 (11th Cir. 1990) ........................................................................................18

*In re United Cos. Finance Corp.*,
    277 B.R. 596 (Bankr. D. Del. 2002) ..............................................................................9, 11

009568.00016:820854.02

*United States Lines, Inc. v. American S.S. Owners Mutual Prot. & Indemnity Association
(In re United States Lines, Inc.),*
197 F.3d 631 (2d Cir. 1999)..................................................................................................22, 27

*Wood v. Wood (In re Wood),*
825 F.2d 90 (5th Cir. 1987) .............................................................................................................25

## STATE CASES

*Corp. v. Texas Utilities Electric Co.,*
995 S.W.2d 647 (Tex. 1999)..............................................................................................................11

*County of Maverick v. Texas Association of Counties Workers' Comp. Self-Insurance
Fund,*
852 S.W.2d 700 (Tex. App.—San Antonio 1993, no writ) ...............................................11

*DeWitt County Electric Cooperative v. Parks,*
1 S.W.3d 96 (Tex. 1999)....................................................................................................................10

## FEDERAL STATUTES

11 U.S.C. § 105.....................................................................................................................................3

11 U.S.C. § 105(A) ...........................................................................................................................4, 22

28 U.S.C. § 1334.................................................................................................................................3

28 U.S.C. § 157(b) .....................................................................................................................3, 21, 24

Federal Arbitration Act, 9 U.S.C. § 1 et seq ..................................................................................8

v

VarTec Telecom, Inc. and VarTec Telecom Holding Company (together, "VarTec"), for their Emergency Motion to Stay Arbitration Proceedings (the "Motion") filed by Debtor Teleglobe Telecom Corporation ("Teleglobe"), state the following:

### SUMMARY OF ARGUMENT

1. Teleglobe continues to pursue its litigation against VarTec in a manner wholly inconsistent with its duties to its creditors, the mandates of this Court and the purposes of the Bankruptcy Code. For almost two years, Teleglobe has refused to comply with even its most basic and noncontroversial obligations under the SPA, invoking the protections of the Bankruptcy Code to excuse its numerous breaches. Meanwhile, Teleglobe watched VarTec suffer under the burden of the millions of dollars of liabilities Teleglobe laid at VarTec's feet. Ironically, despite Teleglobe's numerous breaches, it has sought, at every available opportunity, to enforce it own strained interpretations of the SPA's provisions against VarTec. The most recent and blatant example of this irony is Teleglobe's improper effort to invoke an arbitration clause in the SPA.

2. On January 12, 2004, Teleglobe filed an arbitration demand in Washington, D.C. against VarTec, alleging, among other things, breach of the SPA and non-payment of the Notes. Teleglobe's attempt to shift this dispute from the Bankruptcy Court to another forum came just nine days before this Court's required deadline for Teleglobe to object to VarTec's Amended Proofs of Claim. Amazingly, it came after eight months of extensive and broad-ranging 2004 discovery, multiple proceedings before this Court, and over **$1.2 million** of litigation expenses incurred by the Debtor's estate. Not once in the numerous letters, motions, or hearings did Teleglobe disclose to this Court, to VarTec, or to the creditors that its true intention was to gain advantage by taking one-sided discovery against VarTec and then, the Court stopped the 2004 process, to run to another forum. Teleglobe's effort to invoke the arbitration process is yet

009568.00016:820854.02

another example of the numerous unproductive and inefficient litigation tactics Teleglobe has employed in this case. Despite its duties to creditors, Teleglobe continues to resort to these tactics instead of "working together" toward a resolution, as this Court has requested the parties to do.

3.      This Court should not condone Teleglobe's conduct. Instead, the Court should grant VarTec's Motion to Stay the Arbitration on multiple grounds. First, Teleglobe's claims are not within the express scope and intent of the parties' agreement to arbitrate. In fact, the arbitration clause that Teleglobe seeks to invoke expressly excludes matters involving "bankruptcy" from its scope. Because this dispute does not fall within the scope of the agreement to arbitrate, this Court may properly stay the arbitration proceeding.

4.      Second, Teleglobe has waived its right to invoke arbitration in multiple ways. For over nineteen months, Teleglobe was aware that VarTec was exercising its rights of offset – the very acts that now allegedly form the basis of Teleglobe's arbitration demand. Teleglobe never once objected or complained to this Court or to VarTec. To the contrary, Teleglobe expressly acknowledged and acquiesced to VarTec's offsets. Meanwhile, Teleglobe pursued a costly and aggressive discovery process in this Court, all the while expressing its intention to move forward with the claims adjudication process before the Bankruptcy Court. Teleglobe's actions – all contrary to the intent and purpose of the arbitration clause – constitute an express waiver of its right to arbitrate. In addition, Teleglobe has failed to meet the express requirements of the arbitration agreement, which sets out a detailed escalation procedure that includes "good faith" negotiation and face-to-face efforts to resolve disputes before invoking the clause.

5.      Third, even if the Court finds that the dispute is arbitrable and Teleglobe has not waived its right to invoke arbitration, the Court should refuse to enforce the arbitration

009568.00016:820854.02

agreement because the parties' dispute is a core dispute that, if arbitrated, would adversely affect the underlying purposes of the Bankruptcy Code. This dispute is a core proceeding under the express statutory provisions of 28 U.S.C. § 157(b), and also invokes substantive rights provided by title 11, thereby qualifying as "core" under the relevant case law as well. As a result, this Court can and should exercise its discretion to require the dispute be resolved in the Bankruptcy Court. The Bankruptcy Court is better equipped than a three-member arbitration panel to resolve the issues surrounding what is, admittedly, this estate's largest remaining asset. In fact, allowing this dispute to be resolved in arbitration would prohibit any input from the Bankruptcy Court or the creditors – both of whom have a significant interest in the outcome. Moreover, arbitration is likely to be significantly more expensive for the estate, and, given the Court's familiarity with this dispute, is not likely to take advantage of economies of scale that already exist. In short, this Court should exercise its discretion to stay Teleglobe's untimely request to arbitrate this dispute.

## JURISDICTION

6.     The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 105. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (B), (C), and (O).

## BACKGROUND FACTS RELEVANT TO THE MOTION

### The Excel Transaction and the SPA

7.     As this Court is aware, on April 5, 2002, certain of the Debtors and VarTec executed the Amended and Restated Stock Purchase Agreement (together with the Ancillary Agreements, the "SPA"), pursuant to which VarTec agreed to purchase the outstanding shares of the Excel companies from Teleglobe for the total purchase price of $227.5 million, represented

009568.00016:820854.02

by two Promissory Notes (the "Notes") executed by VarTec in connection with the SPA.[1] As the Court is also aware, the SPA contains specific and detailed provisions wherein the Debtors agreed to indemnify VarTec for payment of specified liabilities of Excel that existed as of April 5, 2002.[2]

**The Debtors' Bankruptcy Filings**

8.    On May 28, 2002, Teleglobe, along with ten other affiliated corporations (collectively, the "Debtors"), obtained orders for relief under Chapter 11 of the Bankruptcy Code and, pursuant to §§ 1107 and 1108 of the Bankruptcy Code, are operating their businesses as debtors-in-possession. The Debtors' bankruptcy filing was preceded by the commencement of insolvency proceedings under the Canadian Companies' Creditors Arrangement Act in the Ontario Superior Court of Justice in Toronto, Ontario on May 15, 2002, by, among other related entities, the Debtors' parent corporation, Teleglobe Inc.

**VarTec's Discussions with the Debtors Prior to the Debtors' Commencement of the Rule 2004 Process and VarTec's Proofs of Claim**

9.    Because the Debtors filed their bankruptcy cases less than two months after the execution of the SPA, VarTec was concerned that Teleglobe would fail to live up to the substantial indemnification obligations it owes to VarTec pursuant to the SPA. Less than two weeks after the Debtors filed their bankruptcy cases, VarTec sought a meeting with the Debtors' representatives to address the treatment of the Debtors' obligations in light of their bankruptcy

---

[1]    Relevant portions of the SPA, as addressed herein, are attached hereto as Exhibit A. The Notes are attached hereto as Exhibit B.

[2]    In several prior motions and objections filed by both VarTec and the Debtors, the parties have provided the Court with a detailed description of the SPA and the parties' obligations pursuant thereto. *See, e.g.*, Expedited Motion of VarTec Telecom, Inc. and VarTec Telecom Holding Company (1) To Set Deadline for Assumption or Rejection of Executory Contract and (2) For Allowance and Payment of Administrative Claims, attached as Exhibit C and VarTec Telecom, Inc. and VarTec Telecom Holding Company's (I) Objection to Debtors' Supplemental Motion for an Order Pursuant to 11 U.S.C. § 105(A) and Bankruptcy Rule 2004, to Direct the Oral Examination By Deposition of, and the Production of Documents by, VarTec Telecom, Inc. and VarTec Telecom Holding Company, and (II) Cross-Motion for Sanctions by Breach of Confidentiality Agreement, attached as Exhibit D.

009568.00016:820854.02

filing. When Teleglobe failed to respond to VarTec's request, VarTec filed a motion on June 20, 2002, requesting that the Court set an expedited deadline for assumption or rejection of the SPA.[3]  In that motion, VarTec stated that it intended to exercise its post-petition offset and recoupment rights pursuant to the SPA. Ex. C at 14, n.15. Teleglobe thus knew of VarTec's intention to offset/recoupment by at least June 20, 2002. Teleglobe never once objected to such offset either to this Court or directly to VarTec. To the contrary, Teleglobe representatives acknowledged the offsets and acquiesced to them for over 19 months.[4]

10.    On July 2, 2002, and again on October 21, 2002, representatives of VarTec, including its CFO and Chief Legal Officer, met with the Debtors and their counsel at the Debtors' offices in Reston, Virginia to discuss the Debtors' liabilities and obligations under the SPA and VarTec's liabilities on the Notes. Among other things, the Debtors and VarTec again discussed VarTec's setoff and recoupment claims pursuant to the SPA. Again, Teleglobe did not object to such setoffs, nor did it bring the matter before this Court. At these meetings, and indeed on numerous occasions since then, VarTec has made express offers of settlement to Teleglobe and repeatedly requested that the parties work toward a negotiated resolution. Teleglobe has made no counter-offer to VarTec's proposals and has not otherwise been receptive to any efforts to negotiate a resolution. Instead, Teleglobe chose to launch a scorched earth litigation process against VarTec.

11.    Because efforts to resolve this dispute were ignored by Teleglobe, VarTec filed its original proofs of claim on December 9, 2002.

---

[3]    The hearing on that motion was postponed indefinitely, at the Debtors' request.

[4]    For example, the Objection of the Debtors and Debtors in Possession to the Expedited Motion of VarTec Telecom, Inc. and VarTec Telecom Holding Company (1) To Set Deadline for Assumption or Rejection of Executory Contract and (2) For Allowance and Payment of Administrative Claim, attached as Exhibit E at ¶15 p.7.

Page 5

**Teleglobe's Rule 2004 Discovery Process and VarTec's Amended Proofs of Claim**

12.     As this Court is far too well aware, VarTec has been was the target of a costly, eight-month-long Rule 2004 discovery expedition by the Debtors. Teleglobe initiated the Rule 2004 examination in April 2003 when it sent discovery requests seeking production of responsive documents by VarTec (the "Discovery Requests") that spanned some twenty-seven different categories, containing over 100 sub-categories.

13.     Pursuant to the Rule 2004 process, VarTec produced hundreds of thousands of responsive documents to the Debtors that support VarTec's substantial claims against the Debtors. When the Debtors requested additional information from VarTec in the form of deposition testimony, VarTec supplied four witnesses (who were hand-picked by the Debtors) to provide five days of testimony regarding VarTec's claims. Additionally, as this Court is also too well aware, throughout the course of the Rule 2004 process, VarTec and Teleglobe filed multiple motions, objections, and cross-motions related to the Discovery Requests, and VarTec and Teleglobe appeared multiple times before the Court regarding issues surrounding the Rule 2004 process, VarTec's claims, and Teleglobe's claims and defenses.

14.     At a hearing before the Court on November 18, 2003 (the "November 18 Hearing"), the Court ruled that the Rule 2004 process should be concluded, deferring the Debtors' requests for additional discovery and ordering the claims adjudication process to go forward. Specifically, the Court ordered that (1) VarTec amend its original proofs of claims by or before December 22, 2003; and (2) the Debtors file any objection to VarTec's claims within thirty days thereafter. As ordered, VarTec filed its amended proofs of claim on December 22, 2003 (the "Amended Proofs of Claim"). Teleglobe's objection to the Amended Proofs of Claim is due on January 21, 2004. Obviously, once those objections are filed, the claims adjudication

009568.00016:820854.02

process can begin and *both* parties can engage in discovery and move forward toward a resolution. Apparently, Teleglobe is now dissatisfied with following the process the Court has ordered.

## Teleglobe's Demand for Arbitration and Statement of Claim

15.     Without warning and in direct contravention of the SPA's express provisions, on January 12, 2004, Teleglobe, along with its parent, Teleglobe Inc., filed a Demand for Arbitration and Statement of Claim against VarTec (the "Arbitration Demand") and commenced arbitration proceedings (the "Arbitration").[5]  In their Arbitration Demand, Teleglobe alleges that VarTec breached the terms of the Notes and the SPA by, among other things, failing to pay quarterly interest payments pursuant to the Notes and unlawfully withholding state and federal tax refunds and other receivables from Teleglobe (the "Teleglobe Arbitration Claims").

16.     Notably, Teleglobe filed its Arbitration Demand only nine days prior to the deadline this Court set for Teleglobe to file its objection to VarTec's Amended Proofs of Claim. Although it filed the Arbitration Demand, Teleglobe also informed VarTec that Teleglobe nevertheless intends to file an objection to VarTec's Amended Proofs of Claim.[6]  In light of these facts and the applicable legal standards, this Court should stay the Arbitration.

17.     Moreover, VarTec requests that this Court set an emergency hearing on this motion, as the Court's ruling will significantly affect two events set to occur in the arbitration proceeding commenced by Teleglobe. First, the International Centre for Dispute Resolution has set a preliminary teleconference between the parties and the case administrator for Friday, January 23, 2004. Additionally, if the arbitration clause were enforceable (which as detailed

---

[5]     The Arbitration Demand is attached hereto as Exhibit F.

[6]     Teleglobe expressed its intent to file an objection with this Court in a letter dated January 12, 2004, from counsel for Teleglobe to counsel for VarTec (the "January 12 Letter"). The January 12 Letter is attached hereto as Exhibit G.

009568.00016:820854.02

below is it not) VarTec would have a deadline of Monday, January 26, 2004, to nominate a member of the arbitration panel. Because VarTec feels its rights and duties with respect to this Court will be compromised by participating in the arbitration proceeding prior to a ruling on this motion, VarTec requests that the Court set an emergency hearing on the motion for Thursday, January 22, 2004, or at the Court's earliest available opportunity.

## ARGUMENT AND AUTHORITIES

**I.    THE TELEGLOBE ARBITRATION CLAIMS ARE NOT WITHIN THE SCOPE OF THE ARBITRATION PROVISIONS CONTAINED IN THE SPA**

18.    In its Arbitration Demand, Teleglobe asserts that certain arbitration provisions contained in the SPA (the "Arbitration Provisions") are applicable to the Teleglobe Arbitration Claims. Without recognizing the express exceptions to arbitration and other aspects of the SPA, Teleglobe's Arbitration Demand purports to invoke Section 13.8(c) of the SPA. Teleglobe quotes that section as providing that the "Parties agreed [] to submit to binding AAA arbitration '. . . every dispute, controversy, or claim arising out of or relating to [the SPA], the Ancillary Agreements to which each is a party, or the transactions contemplated hereby . . ..'" Ex. F ¶ 12, at 4. Teleglobe ignores other applicable language in the SPA that expressly excludes this dispute from the scope of Section 13.8(c). Because the Teleglobe Arbitration Claims are **not** subject to the Arbitration Provisions, the Court should stay the Arbitration and require the Debtors to proceed with the claims adjudication process already underway.

### A.    The Court Should Analyze the Language of the SPA Using State Law Principles of Contract Interpretation

19.    As a matter of law, Teleglobe's Arbitration Demand falls outside the scope of the arbitration agreement in the SPA and, therefore, cannot be maintained. VarTec concedes that, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA"), arbitration agreements are generally enforceable by federal courts. *E.g., Shearson/Am. Express v. McMahon*, 482 U.S.

220 (1987). However, a court must determine in the first instance that the issues sought to be arbitrated are within the scope of the parties' arbitration agreement. *Ballay v. Legg Mason Wood Walker, Inc.*, 878 F.2d 729, 733-34 (3d Cir. 1989). This Court is the proper forum to determine whether the parties' dispute is arbitrable. *General Elec. Co. v. Deutz AG*, 270 F.3d 144, 154 (3d Cir. 2001).

20.    In interpreting the arbitration provisions contained in a party's agreement, this Court must look to the law of the parties' agreement.[7] *General Elec.*, 270 F.3d at 154 (stating that a "court should apply ordinary state law principles governing contract formation"). Although courts generally should resolve ambiguities regarding the scope of arbitration agreements in favor of arbitration, this Court has stated that "the presumption in favor of arbitration applies only where the arbitration clause is a broad one **covering any differences** arising with respect to interpretation of the contract, **not when the arbitration clause itself is narrowly tailored.**" *In re United Cos. Fin. Corp.*, 277 B.R. 596, 602 (Bankr. D. Del. 2002) (Walrath, J.) (emphasis added). "The FAA 'does not require parties to arbitrate when they have not agreed to do so . . . nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement.'" *Id.* (citing *Volt Info. Sciences, Inc. v. Board of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 477 (1989)). Here, the parties expressly excluded this dispute from the Arbitration Provision.

**B.    The Teleglobe Arbitration Claims Are Outside the Scope of the Parties' Agreement to Arbitrate and Should Be Adjudicated in This Court**

21.    Two grounds exist upon which this Court should find that the Teleglobe Arbitration Claims are beyond the scope of the Arbitration Provision. If the Court agrees that either of these grounds is applicable, the Court should stay the Arbitration.

---

[7]    In this case, Texas law applies pursuant to Section 14.1 of the SPA. Ex. A § 14.1 at 113.

Page 9

1.    **The Parties Agreed Not to Arbitrate Disputes in Bankruptcy**

22.    Although Teleglobe chose to selectively quote Section 13.8(c) of the SPA (*i.e.*,

the Arbitration Provision) in its Arbitration Demand, that clause actually reads, in full:

> The Parties hereto agree that every dispute, controversy or claim
> arising out of or relating to this Agreement, the Ancillary
> Agreements to which each is a party, or the transactions
> contemplated hereby (**other than** (a) one in which a Party is
> seeking injunctive relief, (b) one involving fraud or (c) one
> involving the Audited Closing Date Report as described in Section
> 2.4 which disputes shall be resolved as set forth in such sections
> and (d) **bankruptcy**) (each an "Arbitrable Contested Claim"), shall
> be resolved as set forth in clauses (d) through (j) of this Section
> 13.8.[8]

Exhibit A § 13.8(c), at 111 (emphasis added).  According to a plain reading of the Arbitration

Provision, "bankruptcy" is **excluded** from the arbitration process established by the parties

pursuant to the SPA.  Because Teleglobe is in "bankruptcy" pursuant to the Debtors' voluntary

bankruptcy filings, the Teleglobe Arbitration Claims are excluded from the scope of the

Arbitration Provision.[9]

23.    This interpretation of the exclusion of bankruptcy from the Arbitration Provision

is consistent with this Court's prior interpretation of a similar clause.  In *In re United Companies*

*Financial Corporation*, this Court held that claims filed in arbitration by a debtor during its

bankruptcy were specifically excluded from the parties' arbitration agreement that excluded

---

[8]    Clauses (d) through (j) of Section 13.8 provide a process by which the parties resolve "Arbitrable Contested Claims."  This process includes arbitration pursuant to the International Arbitration Rules of the American Arbitration Association, and is discussed in more detail below.

[9]    In construing the meaning of the term "bankruptcy," this Court should interpret the term according to its plain meaning.  *E.g., DeWitt County Elec. Coop. v. Parks*, 1 S.W.3d 96, 101 (Tex. 1999) ("The language of an agreement is to be given the plain grammatical meaning unless to do so would defeat the parties' intent.").  Undoubtedly, the Court is intimately familiar with the definitions and meanings of the word "bankruptcy."  In this case, the plain meaning of the term should be read to include the formal "bankruptcy" process that Teleglobe initiated some 19 months ago.  As such, the Teleglobe Arbitration Claims are not within the scope of the Arbitration Provision and cannot be arbitrated.

009568.00016:820854.02

"bankruptcy" from its scope. 277 B.R. 596 at 601 (Bankr. D. Del. 2002) (Walrath, J.). The precise language of the clause read as follows:

> Notwithstanding the foregoing, this Agreement to mediate or arbitrate shall not apply with respect to either . . . (iii) an application by or on behalf of the Borrower for relief under the federal Bankruptcy laws of [sic] any other similar laws of general application for the relief of debtors, through the institution of appropriate proceedings.

*Id.* (alterations in original). Moreover, this Court held that even though the term "Borrower" referred to the non-debtor party seeking to enforce arbitration, this Court found that the limitation in the arbitration provision also applied when the "Lender" sought bankruptcy protection: "In addition, a reasonable person, not a reasonable bankruptcy professional, would not interpret the clause to exclude the situation where the Debtors [*i.e.*, the lenders] are in bankruptcy." *Id.* at 602-03. The same rationale applies here – the use of the term "bankruptcy" should be read to apply to this circumstance.[10]

24.    The use of the term "bankruptcy" in the Arbitration Provision thus specifically and unequivocally excludes the use of the arbitration forum in the event of bankruptcy, including during the pendency of the Debtors' current bankruptcy cases. The exclusion of arbitration in

---

[10]    Likewise, the Arbitration Provision's exclusion of "bankruptcy" should be interpreted broadly to include any disputes or alleged breaches from arbitration in the event either party has filed for bankruptcy. Under Texas law, provisions of a contract should be harmonized with the language of the entire agreement to discern the parties' intended meaning. MCI Telecomm. Corp. v. Texas Utils. Elec. Co., 995 S.W.2d 647, 652 (Tex. 1999). The concept of bankruptcy is mentioned three other times in the Notes. Each of these references is expressly limited to the bankruptcy of only one party — VarTec. Ex. B § 5.2, at 6 ("In the event of any insolvency or bankruptcy case . . . related to [VarTec] or its assets . . . ."); Ex. B § 6.5, at 10 ("[U]pon the insolvency, bankruptcy, dissolution, liquidation or reorganization of Buyer or VarTec . . . ."); and Ex. B § 7(e), at 11 ("[VarTec] shall commence any case . . . relating to bankruptcy . . . with respect to it or its debts . . . ."). By comparison, in the SPA's Arbitration Provision, the parties purposefully chose to use broader language to include either party's bankruptcy. Had the parties intended the Arbitration Provision's bankruptcy exclusion to be limited in any way, they would have employed the same qualifying language they used in the Notes. *County of Maverick v. Texas Ass'n of Counties Workers' Comp. Self-Ins. Fund*, 852 S.W.2d 700, 705 (Tex. App.—San Antonio 1993, no writ) ("[I]f one party's interpretation would require the insertion of a qualifying phrase, that interpretation must be rejected as violating the rule of giving language its ordinary meaning."). If the parties intended to limit the term "bankruptcy" as an exclusion from the Arbitration Provision, the parties knew how to do so. The Court must therefore conclude that the parties chose not to employ such a limitation.

009568.00016:820854.02

the bankruptcy context makes sense in light of the detailed claims resolution procedures and processes established pursuant to a debtor's bankruptcy proceedings. Because the parties intended to exclude bankruptcy from the agreement to arbitrate, the Court should enforce that intent by staying the arbitration.

### 2. The Arbitration Provision Applies Only to a "Notice of Claim" in the Indemnification Context, Not Breaches of the SPA

25.    The Court should also find that the Arbitration Provision, when interpreted in the context of the entire SPA, applies only to indemnification claims pursuant to Section 13 of the SPA. In other words, the Arbitration Provision does not apply when a party alleges breach of the entire SPA.

26.    The Arbitration Provision is contained in the SPA in Section 13.8(c). Ex. A § 13.8(c), at 111. Section 13.8, entitled "Resolution of Notice of Claim," provides that "[a]ny Notice of Claim received by an Indemnifying Party in accordance with the terms and conditions of Section 13.7(a) above will be resolved as follows . . .." Ex. A § 13.8, at 110. Therefore, according to the plain meaning of this introductory language, the scope of the Arbitration Provision is limited to instances in which a "Notice of Claim" is at issue and is disputed by the parties.

27.    Section 13.7 of the SPA provides the definition for "Notice of Claim" as it is used in the SPA:

> If any Indemnitee has a claim or potential claim or receives notice of **any claim or potential claim** or the commencement of any action or Proceeding **that could give rise to an obligation on the part of the Indemnifying Party to provide indemnification** pursuant to Section 13.1 or Section 13.2, respectively, Buyer, on behalf of Buyer Indemnified Parties, or Teleglobe, on behalf of the Stockholders Indemnified Parties, shall promptly give the Indemnifying Party written notice ("**Notice of Claim**") of such claim (but in no event later than 30 days following the date the Indemnitee has obtained such Knowledge). **Disputes, if any,**

Page 12

009568.00016:820854.02

> **respecting a Notice of Claim shall be resolved in accordance**
> **with the provisions of Section 13.8 below.**

Ex. A § 13.7(a), at 106 (emphasis added).

     28.    According to this express provision of Section 13.7(a), the parties contemplated that a "Notice of Claim" would include claims for indemnification pursuant to the indemnification provisions contained in Article 13 of the SPA. The Teleglobe Arbitration Claims relate to VarTec's alleged *post-bankruptcy* breaches of the Notes and the SPA, not to any indemnification claim that arose out of pre-closing indemnifiable liabilities. The Teleglobe Arbitration Claims, therefore, do not constitute the type of indemnification obligations that the parties intended to be covered by a "Notice of Claim" pursuant to Section 13.7(a). Because the Arbitration Provision applies to resolutions of any "Notice of Claim," the Teleglobe Arbitration Claims are therefore excluded, by definition, from the Arbitration Provision.

## II.   IN ANY EVENT, TELEGLOBE HAS WAIVED ITS RIGHT TO ARBITRATE THIS DISPUTE

     29.    Teleglobe has both expressly and impliedly waived any right to arbitrate the dispute at issue in numerous ways. Teleglobe has conducted itself in a manner inconsistent with the invocation of the arbitration clause for almost two years. It has substantially invoked its rights in a different forum, to the significant prejudice of VarTec. Moreover, Teleglobe has repeatedly refused to comply with the escalation and dispute resolution provisions in the arbitration clause itself.

### A.   Teleglobe Failed to Invoke its Arbitration Rights

     30.    If the Court finds that the Teleglobe Arbitration Claims fall within the scope of the Arbitration Provision, Teleglobe should be bound by the provisions in the SPA that govern the invocation of that clause. The SPA explicitly dictates the various steps a party must take in order to properly invoke the Arbitration Provision. As discussed above, Teleglobe was required

009568.00016:820854.02

to give VarTec prompt written Notice of Claim, "in no event later than 30 days following the date" Teleglobe obtained knowledge of the claim. Ex. A § 13.7(a), at 106. Teleglobe has known of the circumstances surrounding the Teleglobe Arbitration Claims since at least June 2002 — when VarTec first indicated its intent to setoff/recoup the amounts Teleglobe now seeks. Notwithstanding the fact that Teleglobe acquiesced to the setoff/recoupment at the time and remained silent on the issue for almost two years, Teleglobe never provided VarTec with the written Notice of Claim required by the SPA. Teleglobe certainly did not do so within the 30-day time period required in Section 13.7(a).

31.    Additionally, Teleglobe has utterly failed to comply with the informal dispute resolution process agreed to by the parties in Section 13.8 of the SPA. Under this provision, Teleglobe was required — within ten business days of giving its Notice of Claim — to attempt to "negotiate in good faith the merits of the claim" with VarTec. Ex. A § 13.8(a), at 110. If such negotiations did not result in a resolution of the claim, Teleglobe was required to request a face-to-face meeting of the parties' designated representatives from senior management. Ex. A § 13.8(d), at 111. As noted, Teleglobe has refused to enter into good faith negotiation regarding a resolution.

32.    Teleglobe's failure to comply with the clear directives of Section 13.8 is merely another example of its transparent attempts to ignore certain provisions of the SPA while it selectively relies on others. Teleglobe's tactics constitute an express waiver of its rights to invoke the Arbitration Provision.

33.    In addition, Teleglobe has impliedly waived any right it may have had to arbitrate the dispute by participating in over eight months of discovery on the very issues it now wishes to arbitrate. "A party waives his right to arbitrate when he actively participates in a lawsuit or takes

009568.00016:820854.02

other action inconsistent with that right." *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497 (5th Cir. 1986) (quoting *Cornell & Co. v. Barber & Ross Co.*, 360 F.2d 512, 513 (D.C. Cir. 1966)). "When one party reveals a disinclination to resort to arbitration on any phase of suit involving all parties, those parties are prejudiced by being forced to bear the expenses of a trial. . . . Substantially invoking the litigation machinery qualifies as the kind of prejudice . . . that is the essence of waiver." *Miller Brewing Co.*, 781 F.2d at 497 (quoting *E.C. Ernst, Inc. v. Manhattan Constr. Co.*, 559 F.2d 268, 269 (5th Cir. 1977)).

34.     In *Miller Brewing Co.*, for instance, the Fifth Circuit held that the party seeking arbitration had waived its right to do so after forcing the opposing party to, among other things, expend "$85,000 in legal fees and more than 300 hours of its own employees' time" in the prior litigation proceedings. *Miller Brewing Co.*, 781 F.2d at 497. Likewise, the Third Circuit has held that a party waived its right to arbitrate by forcing the opposing party to devote "substantial amounts of time, effort and money" in prior litigation and taking advantage of more lenient discovery rules that are not available in arbitration. *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 926 (3d Cir. 1992).

35.     Much like the parties in *Miller Brewing Co.* and *Hoxworth*, Teleglobe has taken actions inconsistent with its arbitration rights by aggressively pursuing a costly and burdensome Rule 2004 process. And much like the opposing parties in *Miller Brewing Co.* and *Hoxworth*, VarTec has been forced to spend substantial time, at significant expense, responding to the Debtors' numerous requests, letters, and motions (with which this Court is most familiar). In all its various motions, letters, hearings and express statements to this Court — Teleglobe never revealed its desire to arbitrate the very issues it was litigating to this Court.

009568.00016:820854.02

36.    Additionally, many courts have found that Rule 2004 examinations may not be used to obtain information that a party would not be able to obtain in another forum. *E.g., National Broad. Co. v. Bear Stearns & Co.*, 165 F.3d 184, 190-91 (2d Cir. 1999) (holding that as the "popularity of arbitration rests in considerable part" on factors "especially at odds with . . . broad-ranging discovery," the court would not allow a "party's tactical use of discovery devices" provided by federal law); *In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*, 258 B.R. 580, 587 (Bankr. S.D.N.Y. 2001) (denying a Rule 2004 request because "Rule 2004 disclosure should not be used as a substitute for disclosure that [may] or may not be available in the separate proceeding"); *In re Lufkin*, 255 B.R. 204, 208-09 (Bankr. E.D. Tenn. 2000) (stating that "Rule 2004 examinations should not be designed to discover information for use in an unrelated case or proceeding"); *Official Comm. of Unsecured Creditors v. Eagle-Picher Indus., Inc. (In re Eagle-Picher Indus., Inc.)*, 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994) (denying access through Rule 2004 examination to information the discoverability of which was governed by a mediation process). Teleglobe aggressively pursued Rule 2004 discovery in this case for eight months until the Court finally ordered Teleglobe to conclude the 2004 process and move forward with a claims adjudication. Rather than doing so, Teleglobe inexplicably resorted to another forum. The Court should simply refuse to condone Teleglobe's pre-emptive use of expansive discovery procedures by allowing Teleglobe to arbitrate the parties' dispute.

## B.    VarTec Has Been Prejudiced by Teleglobe's Failure to Invoke the Arbitration Provision

37.    The Third Circuit has held that "prejudice is the touchstone for determining whether the right to arbitration has been waived." *Hoxworth*, 980 F.2d at 925. Teleglobe's actions here are even more egregious than those of parties detailed above, and have resulted in

009568.00016:820854.02

substantial prejudice to VarTec because of Teleglobe's apparent misuse of the Rule 2004 process.

38.    VarTec has gathered, reviewed, and produced to the Debtors hundreds of thousands of documents over the course of several months that substantiate VarTec's Amended Proofs of Claim and are responsive to the Debtors' broad Rule 2004 Discovery Requests. This has cost VarTec hundreds of thousands of dollars and has come at the additional expense and burden of significant disruption to VarTec's day-to-day business activities. *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1160-62 (5th Cir. 1986) (finding waiver based on the requesting party's initiation of extensive discovery and motion practice prior to invoking its right to arbitrate); *National Found. for Cancer Research v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 775 (D.C. Cir. 1987) (finding waiver after the requesting party took the depositions of its opponent's officers and directors and propounded the production of numerous documents).

39.    Because of Teleglobe's unique position as a debtor, it has been able to avail itself of the 2004 process and has undertaken extensive discovery efforts beyond that permitted by any arbitration proceeding or even the Federal Rules of Civil Procedure. VarTec has not be able to engage in reciprocal discovery from Teleglobe. Teleglobe requested hundreds of thousands of documents, took the depositions of four VarTec executives over five days, and engaged in extensive motion practice. At every opportunity, Teleglobe has mischaracterized and/or disparaged the merits of VarTec's claims against the Debtors. *See After Six, Inc. v. Abraham Zion Corp. (In re After Six, Inc.)*, 167 B.R. 35, 43 (E.D. Pa.) (finding waiver where the parties had engaged in extensive discovery), *aff'd*, No. 94-1529, 1994 U.S. App. LEXIS 31657 (3d Cir. 1994) (unpublished table decision).

009568.00016:820854.02

40.     Since Teleglobe filed its bankruptcy petition, VarTec has not been afforded the opportunity to ask a single question or request a single document from Teleglobe. Teleglobe, on the other hand, has gained access to highly confidential and proprietary information of VarTec, which it has been able to review and use for many months. In addition to lavishly spending over $1.2 million of the Debtors' estates' money, Teleglobe emerged from the Rule 2004 process in a far superior position than it would have been had it attempted to invoke its arbitration right at the outset of this dispute. Teleglobe's manipulation of the Rule 2004 process to gain an advantage in arbitration further prejudices VarTec. *Stone v. E.F. Hutton & Co., Inc.*, 898 F.2d 1542, 1543 (11th Cir. 1990) ("The use of pre-trial discovery procedures by a party seeking arbitration may sufficiently prejudice the legal position of an opposing party so as to constitute a waiver of the party's right to arbitration.") (citing *Miller Brewing Co.*, 781 F.2d at 498).

41.     In addition, VarTec is prejudiced by the unnecessary delay caused by Teleglobe's untimely invocation of the Arbitration Provision. Clearly, Teleglobe could have brought the majority of the Teleglobe Arbitration Claims over a year and a half ago. Instead, Teleglobe chose to obtain "free discovery" from VarTec — knowing full well that it would try to use that discovery in a late-filed arbitration proceeding. VarTec has been significantly prejudiced by this delay. *Duo Metal & Iron Works, Inc. v. S.T.C. Constr. Co.*, 472 F. Supp. 1023, 1024 (E.D. Pa. 1979) ("A basic purpose of the Arbitration Act is to promote the speedy disposition of disputes without the expense and delay of extended court proceedings").

42.     Moreover, as addressed in detail below, VarTec will continue to be prejudiced if it is required to litigate its claims in this Court while at the same time arbitrating Teleglobe's claims in the Arbitration. In addition to the unnecessary expense and burden of such parallel

009568.00016:820854.02

litigation, the attendant inconsistencies in judgment that are inherent in parallel litigations will also prejudice VarTec.

43.    That VarTec has been prejudiced is supported by this Court's prior rulings. For instance, in *Charter Behavioral Health Sys., LLC v. Managed Health Network, Inc. (In re Charter Behavioral Health Sys.)*, 277 B.R. 54 (Bankr. D. Del. 2002), although this Court did not find waiver where the defendant's participation in an adversary proceeding had been limited, in conducting its waiver analysis, the Court stated:

> In addition, this case has not been very active. [The defendant] has not engaged in any motion practice to adjudicate the action on the merits, and has not engaged in extensive discovery . . .. [The debtor] has not been put to an **enormous burden of responding to extensive discovery requests**, and since it **has not been pressing this case to trial**, it is not prejudiced by any delay.

*Id.* at 58 (emphasis added). The case at bar presents the opposite end of the spectrum from the facts present in *Charter Behavioral Health Systems*. Indeed, VarTec has been "put to an enormous burden of responding to extensive [and continually expansive] discovery requests." *Id.* Also, from the outset of Teleglobe's bankruptcy proceeding, VarTec has been continually urging the Debtor to resolve the claims between the parties, including either a negotiated resolution or a final adjudication of VarTec's Amended Proofs of Claim.

44.    Finally, this Court should deem the Debtors' blatant attempts to forum shop a waiver of the Arbitration Provision. At the November 18 Hearing related to Teleglobe's second Motion to Compel filed against VarTec, the Court ruled that the Debtors were not entitled to additional Rule 2004 relief against VarTec, and that any further discovery would have to await a focusing of the issues through claims objections. Apparently, Teleglobe now feels that it will be more advantageous to arbitrate the parties' disputes, rather than entrust these matters to this Court. After substantially invoking the Court's authority to adjudicate the parties' disputes,

009568.00016:820854.02

Teleglobe should not be "rewarded" with the ability to seek review in a foreign forum. *Cf. In re Abacus Broad. Corp.*, 154 B.R. 682, 686 (Bankr. W.D. Tex. 1993) ("Forum shopping has never been favored by federal courts, and courts are quick to discern the evil in all its disguises.").

45.     Thus, the Court should find that Teleglobe has waived its right to arbitrate the parties' dispute, and should stay the Arbitration.

## III.   THE COURT SHOULD STAY THE ARBITRATION EVEN IF THE COURT FINDS BOTH THAT THE TELEGLOBE ARBITRATION CLAIMS ARE ARBITRABLE AND THAT TELEGLOBE HAS NOT WAIVED ITS RIGHT TO ARBITRATE

### A.     The Court Has the Discretion to Stay the Arbitration of a Core Proceeding

46.     Even if the Court determines that the Teleglobe Arbitration Claims are within the scope of the Arbitration Provision, and that Teleglobe has not waived its arbitration rights, the Court should nevertheless stay the Arbitration in favor of the claims resolution process established by the Bankruptcy Code and this Court's December 17, 2003 Order (the "December 17 Order").[11]

47.     Although arbitration is favored by courts, if a matter is a core proceeding, a bankruptcy court retains the discretion to refuse to enforce an arbitration provision based upon the policies contained in the Bankruptcy Code itself. *Pardo v. Pacificare of Tex., Inc. (In re APF Co.)*, 264 B.R. 344, 362 (Bankr. D. Del. 2001) (refusing to enforce an arbitration clause in the context of a core proceeding) (interpreting *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1156-57 (3d Cir. 1989);[12] *see also In re FRG*, 115 B.R. 72, 74 (E.D. Pa. 1990) (holding that the Bankruptcy Court retains the discretion to refuse the enforce an

---

[11]   The December 17 Order is attached hereto as Exhibit H.

[12]   The Third Circuit's decision in *Hays* is clearly the most often cited case discussing arbitration in the context of bankruptcy. However, *Hays* is not applicable here, as it was a non-core proceeding and was decided on very different facts. *Hays'* progeny, including *In re FRG* and *Pardo*, are more applicable under the circumstances and should be followed by this Court.

009568.00016:820854.02

arbitration provision in a core proceeding). The Teleglobe Arbitration Claims are "core" claims that should be resolved pursuant to the Bankruptcy Code and the Court's claims resolution process. Under the circumstances, this Court may properly exercise its discretion to stay the Arbitration.

**B.    The Teleglobe Arbitration Claims Are Core Proceedings That Present Unique Issues Requiring Immediate and Exclusive Adjudication by the Bankruptcy Court**

**1.    The Teleglobe Arbitration Claims Constitute "Core" Proceedings**

48.    In determining whether a proceeding is "core," the Third Circuit requires courts to conduct a two-part analysis: first, the Court must consult 28 U.S.C. § 157(b); second, the Court must analyze whether (a) the proceeding invokes a substantive right provided by title 11 or (b) the proceeding, by its nature, could arise only in the context of a bankruptcy case. *E.g., Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999).

**(a)    The Teleglobe Arbitration Claims Are "Core" Pursuant to § 157(b)**

49.    Section 157(b)(2) provides a non-exclusive list of "core proceedings," including:

> (A)  matters concerning the administration of the estate;
> (B)  allowance or disallowance of claims against the estate . . .;
> (C)  counterclaims by the estate against persons filing claims against the estate; [or]
> . . .
> (O)  other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship . . . .

28 U.S.C. § 157(b)(2). Under each of these four categories, the Court should find that the Teleglobe Arbitration Claims fall within the definition of "core proceeding."

50.    First, the Teleglobe Arbitration Claims constitute "matters concerning the administration of the estate." § 157(b)(2)(A). The Debtor has repeatedly told this Court that VarTec's proofs of claims are the largest claims filed against the estate, and that the Notes

009568.00016:820854.02

constitute the largest remaining asset in the Debtors' estates. *E.g.*, Transcript of May 19, 2003 Hearing, at 5-6;[13] Supplemental Motion of the Debtors dated June 12, 2003, at 3.[14] If the Court allows Arbitration to proceed, VarTec will be required to defend itself against the Teleglobe Arbitration Claims — which may by necessity result in the arbitration of VarTec's claims, including the indemnification and setoff rights pursuant to the SPA asserted in VarTec's Amended Proofs of Claim against the Debtors. The size of the Debtors' bankruptcy estates and the potential distribution to the estates' creditors will be severely impacted based upon the determination of the indemnification issues that would likely be presented to the three individuals presiding in the Arbitration. *E.g.*, *United States Lines, Inc. v. American S.S. Owners Mut. Prot. & Indem. Ass'n (In re United States Lines, Inc.)*, 197 F.3d 631, 638 (2d Cir. 1999) (finding a contractual dispute between the debtors and its indemnity insurers to be core proceedings because, *inter alia*, "resolving disputes relating to major insurance contracts are bound to have a significant impact on the administration of the estate"). As such, the Teleglobe Arbitration Claims constitute "matters concerning the administration of the estate."

51.     Second, the Teleglobe Arbitration Claims raise issues related to the "allowance or disallowance of claims against the estate." § 157(b)(2)(B). As discussed above, the Teleglobe Arbitration Claims are, in essence, counterclaims that Teleglobe will assert in its objection to VarTec's Amended Proofs of Claim. These matters are core disputes. *S.G. Phillips Constructors, Inc. v. City of Burlington (In re S.G. Phillips Constructors, Inc.)*, 45 F.3d 702, 705 (2d Cir. 1995) ("Because 'nothing is more directly at the core of bankruptcy administration . . .

---

[13]     The relevant portions of the Transcript are attached hereto as <u>Exhibit I</u>.

[14]     The relevant portions of the Supplemental Motion of the Debtors and the Debtors in Possession for an Order Pursuant to 11 U.S.C. § 105(A) and Bankruptcy Rule 2004, To Direct the Oral Examination by Deposition of, and the Production of Documents by, VarTec Telecom, Inc. and VarTec Telecom Holding Company are attached hereto as <u>Exhibit J</u>.

009568.00016:820854.02

than the quantification of all liabilities of the debtor,' the bankruptcy court's determination whether to allow or disallow a claim is a core function." (quoting *In re BKW Sys., Inc.*, 66 B.R. 546, 548 (Bankr. D.N.H. 1986)).   Thus, the Teleglobe Arbitration Claims are also "core" pursuant to Section 157(b)(2)(B).

52.    Third, the Teleglobe Arbitration Claims also constitute "counterclaims by the estate against persons filing claims against the estate." § 157(b)(2)(C).  As discussed above, the Teleglobe Arbitration Claims are precisely the type of claims Section 157(b)(2)(C) define as "core" proceedings.  Indeed, the Teleglobe Arbitration Claims are simply a re-characterization of some of Teleglobe's objections to VarTec's Amended Proofs of Claim, which Teleglobe has expressed its absolute intention of filing.[15]  The arbitration of the Teleglobe Arbitration Claims would be a virtually identical proceeding to the claims process the Court ordered in its December 17 Order.

53.    Fourth, the Teleglobe Arbitration Claims constitute "other proceedings affecting the liquidation of the assets of the estate."  § 157(b)(2)(O).  The arbitration of the Teleglobe Arbitration Claims, when coupled with the defenses and counterclaims that VarTec would likely raise in the Arbitration, would certainly entail the liquidation of an estate asset.  Indeed, if (a) VarTec proceeded with arbitration of the Teleglobe Arbitration Claims, and (b) if the arbitrators ruled in favor of the defenses and counterclaims that VarTec could raise in the Arbitration, then (c) the "largest asset" of the Debtors' estate would be, for all intents and purposes, "liquidated." *Cf. Larocque v. CitiFinancial Mortgage Co. (In re Larocque)*, 283 B.R. 640, 642 (Bankr. D.R.I. 2002) (refusing to enforce an arbitration provision and stating that a "bankruptcy court has broad, well-established powers under § 157 to promote and facilitate the reorganization process").

---

[15]    Teleglobe expressed this intention to VarTec in the January 12 Letter, attached as Exhibit G.

009568.00016:820854.02

54.    In *In re Hemphill Bus Sales, Inc.*, 259 B.R. 865 (Bankr. E.D. Tex. 2001), the debtor filed its bankruptcy case shortly after the creditor that supplied the debtor with 90% of its products purported to terminate the contract between the parties. *Id.* at 866. That court relied heavily on the importance of the disputed contract to the debtors' estate in determining that the dispute between the parties was a core proceeding:

> This Court concludes that the underlying nature of this dispute goes to the very heart and purpose of the Bankruptcy Code: the expeditious and equitable distribution of the assets of the debtor's estate and the Debtor's opportunity for a fresh start. Here, the disposition of the [contracts at issue] is essential to this Debtor's reorganization and to all of the creditors of this estate and it is a core proceeding.

*Hemphill* at 871. The *Hemphill* court's analysis applies with equal force here.

55.    For each of the reasons stated above, the Court should find that the Teleglobe Arbitration Claims are "core proceedings" pursuant to 28 U.S.C. 157(b).

**(b)    The Teleglobe Arbitration Claims Invoke Substantive Rights Provided by Title 11 That Could Arise Only in the Context of a Bankruptcy Case**

56.    The Court should also determine that the Arbitration will "invoke a substantive right provided by title 11" and that "the proceeding, by its nature, could arise only in the context of a bankruptcy case." *Halper*, 164 F.3d, at 836. The Teleglobe Arbitration Claims meet this standard as well.

57.    The full arbitration of all issues that can be raised in the Arbitration (and will likely be raised in the event the Arbitration proceeds) will certainly "invoke a substantive right provided by title 11," namely, the adjudication of VarTec's Amended Proofs of Claim. "[F]iling a proof of claim under bankruptcy law 'invokes the special rules of bankruptcy concerning objections to the claim, estimation of the claim for allowance purposes, and the rights of the

009568.00016:820854.02

claimant to vote on the proposed distribution.'" *Gandy v. Gandy, (In re Gandy)*, 299 F.3d 489, 499 (5th Cir. 2002) (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987)).

58.    Indeed, one of the arguments that VarTec would be forced to raise in the Arbitration is the assumption or rejection of the SPA (and, consequently, the Notes) by Teleglobe. Obviously, the assumption or rejection of the SPA pursuant to Section 365 of the Bankruptcy Code is a "proceeding that could arise only in the context of a bankruptcy case." *E.g., Hemphill Bus Sales*, 259 B.R. at 870 (holding that the assumption or rejection of an executory contract "involves a substantive right peculiar to the bankruptcy context which can neither be abrogated nor ignored").

59.    For these additional reasons, the Court should find that the claims raised in the Arbitration are "core" proceedings. Thus, the Court thus has discretion to deny arbitration in this instance.

### 2.    The Court Should Exercise Its Discretion in Staying the Arbitration in Favor of the Bankruptcy Code's Claims Adjudication Process

60.    When analyzing whether to exercise its discretion to refuse to enforce an arbitration provision, the court must "carefully determine whether any underlying purpose of the Bankruptcy Code would be adversely affected by enforcing the arbitration clause." *Hays & Co.*, 885 F.2d at 1161. Based on the circumstances surrounding the Teleglobe Arbitration Claims and the Amended Proofs of Claim, the Court should find that many underlying purposes of the Bankruptcy Code would be adversely affected by the Court's enforcement of the Arbitration Provision. The Court should therefore stay the Arbitration.

### (a)    The Bankruptcy Court is the Most Efficient Forum to Resolve All Disputes Between Teleglobe and VarTec

61.    One of the purposes of the Bankruptcy Code is the expeditious and equitable distribution of the assets of the Debtor's estate by the bankruptcy court. *E.g., Gandy*, 299 F.3d at

009568.00016:820854.02

498. Courts have routinely refused to enforce arbitration clauses when doing so would decrease this "efficiency" purpose, such as the piecemeal adjudication of parties' disputes. *E.g., id.* at 499-500 ("Parallel proceedings would be wasteful and inefficient, and potentially could yield different results and subject parties to dichotomous obligations").

62.    Proceeding with the Arbitration, coupled with the claims adjudication process that the Court has instituted, would unquestionably require the piecemeal adjudication of the parties' disputes, if not the duplication of all issues to be addressed in the dispute. Teleglobe's tactics certainly undermine the very essence of the Bankruptcy Code, which Teleglobe has ironically clung to for the last year and a half.

63.    Similarly, if the Court were to enforce the Arbitration Provision, the Court would significantly increase the already significant expense for both Teleglobe and VarTec. Indeed, by doing so the Court would potentially condone the creation of three dispute processes: (1) a claims objection process; (2) a claims estimation process; and (3) the Arbitration process. "In the bankruptcy context efficient resolution of claims and conservation of the bankruptcy estate assets are integral purposes of the Bankruptcy Code; thus delay becomes another meaningful [but not dispositive] factor.    Costs and delay represent legitimate [but not overriding] considerations." *Hemphill Bus Sales*, 259 B.R. at 872, n.15. As noted, Teleglobe has already expended over $1.2 million of the estates assets in pursuing it claims in the Bankruptcy Court.

64.    In addition, the arbitration forum is not less expensive, and perhaps not quicker, than the claims objection process outlined by this Court. By example, the initial filing fees for the Arbitration alone exceeded $14,000 of the estate's assets.[16] The costs of arbitrating each of

---

[16]    VarTec notes that the Debtors did not seek this Court's prior approval before expending over $14,000 of the estates funds to file the Arbitration Demand.

009568.00016:820854.02

the issues that could arise in the context of the Arbitration **could exceed $100,000 per party**. Standing alone, these expenses mitigate against the arbitration forum.

65.    Finally, pursuant to the Rule 2004 process invoked by Teleglobe, this Court has heard significant argument, and reviewed significant briefing, relating to the parties' dispute. This Court is fundamentally familiar with VarTec's claims and Teleglobe's defenses. To educate other decisionmakers at this stage in the process would be duplicative and inefficient. Consequently, enforcing the Arbitration Provision would conflict with the "efficiency" purposes Congress established through the Bankruptcy Code.

### (b)    Centralized Resolution of the Parties' Disputes Would be Hindered by Proceeding with Arbitration

66.    Similarly, Courts have also refused to enforce arbitration provisions when the "goal of centralized resolution" of disputes would be undermined. *E.g., Gandy*, 299 F.3d at 500; *United States Lines, Inc.*, 197 F.3d at 641 (finding that the bankruptcy court's centralized adjudication of insurance claims was "integral to the bankruptcy court's ability to preserve and equitably distribute" the debtor's assets); *In re Mintze*, No. 03-21132003 U.S. Dist. LEXIS 21101 (E.D. Pa. November 12, 2003) (affirming the bankruptcy court's refusal to enforce arbitration agreement in a pre-petition contract because "purposes such as the preservation of the estate's assets, the protection of all creditors' interests, and the restructuring of the debtor-creditor relationship" were at stake); *Larocque*, 283 B.R. at 642 (finding that the "[c]ore functions of the bankruptcy court include centralizing 'all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas'" (quoting *United States Lines, Inc.*, 197 F.3d at 640)). Thus, the Court's interest in centralizing the disputes between the Debtors and its creditors, including

009568.00016:820854.02

VarTec — the largest creditor of the Debtors' estates — would be undermined by enforcement of the Arbitration Provision.

(c)    <b>The Bankruptcy Policy of Protecting All Creditors' Interests<br>Would be Hindered by Proceeding with Arbitration</b>

67.    Another fundamental policy of the Bankruptcy Code is the protection of all creditors' interests in the proper and orderly distribution of a debtor's estate. *E.g.*, *Hemphill Bus Sales*, 259 B.R. at 870 ("The interest of the creditors of this estate in the outcome of this dispute is a legal interest which, given that the determination of the dispute directly affects the Debtor's ability to reorganize, overrides either [the defendant's] or the Debtor's individual rights under the arbitration clause.") (brackets in original). This policy would be significantly hindered by enforcement of the Arbitration Provision.

68.    At the November 18 Hearing, for instance, counsel for the Unsecured Creditors Committee in the Debtors' bankruptcy cases (the "Committee") stated that:

> the Committee has to be part of the [claims adjudication] process [between the Debtors and VarTec] so that we can review what is going on in the litigation and we could make the recommendations and advise the Court at least to what the Committee believes its views are since at the end of the day, any money recovered from VarTec or any money that has to be paid to VarTec is going to come out of my constituencies [sic] pocket.

Transcript of November 18 Hearing, at 19.[17] The Committee and its counsel thus recognize the importance and magnitude of the creditors' participation in the claims process between the Debtors and VarTec. In contrast, the Committee could have *no* role in the arbitration, and efforts to keep it "up to speed" would only cost the estates more money unnecessarily.

69.    The Bankruptcy Code policy of full creditor participation could not be more important than in this dispute, where the Debtors' estates have been largely liquidated and the

---

[17]    The relevant portions of the Transcript are attached hereto as <u>Exhibit K</u>.

Page 28

009568.00016:820854.02

claims process will be the primary focus of the Debtors' bankruptcy cases. *E.g., Gandy*, 299 F.3d at 498-99 (denying to enforce an arbitration provision when, among other reasons, the "Debtor's claims against [the defendants] appear to represent very nearly the entirety of Debtor's bankruptcy estate"); *Hemphill Bus Sales*, 259 B.R. at 872 ("Moreover, determinations respecting [the most valuable asset of a debtor's estate] are of too great an importance to the creditors of this estate to be conducted absent representation of those creditors' interests."). Because Teleglobe's creditors, including the Committee, would not be able to participate in the Arbitration, the policies of protecting creditors' interests through the bankruptcy process would be significantly adversely affected by enforcement of the Arbitration Provision.

009568.00016:820854.02

**WHEREFORE, PREMISES CONSIDERED,** VarTec Telecom, Inc. and VarTec Telecom Holding Company request that the Court (1) grant the Motion; (2) enter an Order staying the Arbitration and awarding VarTec is costs associated with the pursuit of this motion; and (3) grant such other and further relief to which VarTec may be entitled.

Dated: January 20, 2004

Respectfully submitted,

**STEVENS & LEE P.C.**


_____*/s/ Joseph H. Huston, Jr.*_____
Joseph H. Huston, Jr. (No. 4035)
Thomas G. Whalen, Jr. (No. 4034)
300 Delaware Ave., Ste. 800
Wilmington, DE 19801
Telephone: (302) 425-3310; 3304
Telecopy:   (610) 371-7972; 8512
E-mail:  jhh@stevenslee.com
            tgw@stevenslee.com

AND

**HUGHES & LUCE L.L.P.**
Craig W. Budner
Beth W. Bivans
Thomas W. Paxton
1717 Main Street, Ste. 2800
Dallas, Texas 75201
Telephone: (214) 939-5500
Telecopy:   (214) 939-5849

*ATTORNEYS FOR VARTEC TELECOM, INC. AND
VARTEC TELECOM HOLDING COMPANY*

009568.00016:820854.02