# EXHIBIT 5

## SHEARMAN & STERLING LLP

FAX: 212-848-7179
TELEX: 607290 WUI
www.shearman.com

599 LEXINGTON AVENUE
NEW YORK, N.Y. 10022-6069
212 848-4000

ABU DHABI
BEIJING
BRUSSELS
DÜSSELDORF
FRANKFURT
HONG KONG
LONDON
MANNHEIM
MENLO PARK
MUNICH
NEW YORK
PARIS
ROME
SAN FRANCISCO
SÃO PAULO
SINGAPORE
TOKYO
TORONTO
WASHINGTON, D.C.

WRITER'S DIRECT NUMBER:
(212) 848-4608

WRITER'S EMAIL ADDRESS:
dschimmel@shearman.com

April 24, 2005

Via Email and Fax

Russell C. Silberglied
Richards, Layton & Finger
One Rodney Square
920 North King Street
Wilmington, Delaware 19801

Re: Teleglobe v. BCE - Discovery Issues

Dear Russell:

      We are in receipt of your letter dated April 20, 2005 regarding the various issues we raised concerning the Debtors' efforts to preserve e-data relating to the claims they have made in this litigation.

### Surplus Computers

      With respect to the four desktops that you claim were assigned to IP employees, it is not at all self-evident that those machines would not have information relating to the Debtors' efforts to preserve documents and computer equipment in 2002. Therefore, we ask that those machines be searched for such information. We also reiterate our request made two months ago (and repeatedly since then) that you inform us whether those computers represent the entire universe of personal computers that were "leftover" at the Debtors following April 24, 2002 (see Cooke Tr. at 97), and whether a log or record was ever prepared regarding such "leftover" computers.

      Your statement that "it is not known whether there is any data at all" on the "HP Kyak Pentium II" is not sufficient. We ask that you promptly ascertain whether any such data exists and if it does, conduct a search for any information responsive to our discovery requests.

*Shearman & Sterling LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.*

NYDOCS04/429567.2

Russell C. Silberglied
April 24, 2005
Page 2

With respect to the three Dell Pentium II desktop computers that "are believed to have been re-imaged in October of 2002," please confirm whether this is in fact what happened, and if so, please explain why this re-imaging took place after the Debtors became aware of the existence of possible claims against BCE. Describe with specificity what efforts were made to preserve any information stored on those machines prior to the re-imaging. .

Finally, it is not sufficient simply to notify us that the five Latitude laptops "can be searched." Four of the individuals to whom those laptops were assigned are key individuals in this case (i.e. Mongrain, Eakin, Bustamante and Brunette), whose e-data we requested from you over two months ago, and that you had agreed to provide. We request that those laptops be searched and that we be provided with the responsive e-data of those four individuals.

### Computers Acquired by Employees

You have not yet responded to the question of what efforts, if any, were undertaken by the Debtors to preserve the information stored on the computers of Teleglobe's employees before they were allowed to leave with their computers.

In your letter, you state that there was certain unspecified "limited local storage space" on the hard drives of the custodians, and that they were "generally not given instruction on how to save data to their local memory, or hard drives." The mere fact that thousands of Teleglobe employees elected to acquire those computers for their personal use demonstrates, however, that those employees had the ability to store data on those computers and knew how to do it. You also state vaguely that the computers were "apparently configured" to make saving locally more difficult. We do not believe that this supposition would render unnecessary a search for data on those computers.

Finally, the fact that the Bankruptcy Court approved the sale of these computers and that BCE did not object is beside the point. The Debtors were under an obligation to preserve evidence once they became on notice of the existence of their alleged claims against BCE and others. The Bankruptcy Court did not absolve the Debtors of their continuing obligation.

### Servers That Were Sold

You state that the index regarding the servers that the Debtors sold to Cerberus is unavailable, and you express a "belief" that the index may be at Cerberus. The sale of the Debtors' core business to Cerberus occurred months after the Debtors became on notice of the existence of possible claims against BCE. We expect that you will obtain a copy of the index from Cerberus immediately and produce it.

### Outstanding Discovery Issue

In Defendants' Second Request for Production of Documents, we requested that you produce a copy of the transcripts of the VarTec arbitration, all awards and orders issued in

NYDOCS04/429567.2

Russell C. Silberglied
April 24, 2005
Page 3

that arbitration, and all documents submitted to the arbitral tribunal by the parties to the arbitration. On January 26, 2005, you objected to our request on the grounds that the requested information was subject to a Confidentiality Agreement with VarTec or was otherwise privileged, and you stated that VarTec may move for a protective order. Those objections no longer have any basis: (1) VarTec has not moved for a protective order; (2) the documents sought by the defendants were shared with the arbitration tribunal and thus are not privileged, and (3) a confidentiality stipulation is in place in this case. Accordingly, please produce those documents immediately.

Sincerely,

D. Schimmel

Daniel Schimmel

cc:  John P. Amato, Esq.
     Gregory V. Varallo, Esq.
     C. Malcolm Cochran, IV

NYDOCS04/429567.2