IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| TELEGLOBE COMMUNICATIONS | § | CASE NO. 02-11518 (MFW) |
| CORPORATION, ET AL., | § | (Jointly Administered) |
| | § | |
| DEBTORS. | § | |
| | § | |
| Teleglobe USA Inc. et al., | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIV. ACTION NO. 04-1266 (SLR) |
| v. | § | |
| | § | |
| BCE Inc. et al., | § | |
| | § | |
| Defendants. | § | |

**REPLY BRIEF IN SUPPORT OF INTERVENOR VARTEC TELECOM, INC.'S AMENDED MOTION FOR PROTECTIVE ORDER REGARDING DEFENDANTS' SECOND REQUEST FOR PRODUCTION WITH REQUEST FOR ORAL ARGUMENT**

**STEVENS & LEE P.C.**
Joseph H. Huston, Jr. (No. 4035)
Thomas G. Whalen, Jr. (No. 4034)
1105 North Market Street
Suite 700
Wilmington, DE 19801
Telephone:  (302) 425-3310, -3304
Telecopy:   (610)371-7972, -8512

AND

**HUGHES & LUCE L.L.P.**
Craig W. Budner
Beth W. Bivans
1717 Main Street, Ste. 2800
Dallas, Texas 75201
Telephone:  (214) 939-5500
Telecopy:   (214) 939-5849

**ATTORNEYS FOR VARTEC TELECOM, INC. AND VARTEC TELECOM HOLDING COMPANY**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II. ARGUMENT .......................................................................................................................... 3

    A. *BCE's Requests Are Extremely Broad and the Arbitration Documents are Irrelevant to the Dispute Between Teleglobe and BCE* .......................................... 3

        1. *The Arbitration Was A Complex Proceeding and the Arbitration Documents are Voluminous* .............................................................................. 4

        2. *The Actual Issues Presented in the Arbitration are Unrelated to the Claims Made Here* ................................................................................... 4

        3. *BCE Incorrectly Speculates Regarding What Is Contained in the Arbitration Documents* ................................................................................ 5

        4. *BCE's Document Request is Extremely Broad and Fails to Identify Even One Particularized Category of Documents* ..................................... 7

    B. *VarTec Will Be Unfairly Prejudiced by Production of These Documents* .............. 8

        1. *Failure to Grant Protection Over the Arbitration Documents Would Result in Inequity and Undue Prejudice to VarTec in the D.C. Case* ........................................................................................................ 8

        2. *VarTec Faces Significant Harm if its Privileged and Confidential Documents are Disclosed* .......................................................................... 9

        3. *VarTec Would Suffer Significant Expense if Production Were Required* ...................................................................................................... 10

III. CONCLUSION .................................................................................................................... 12

CERTIFICATE OF SERVICE ..................................................................................................... 13

## TABLE OF AUTHORITIES

**Page**

*Faulkner v. Verizon Communications, LLC,*
    156 F. Supp. 2d 384 (S.D.N.Y. 2001)................................................................................7

*Pansy v. Borough of Stroudsburg*,
    23 F.3d 772 (3d Cir. 1994)..................................................................................................3

*Publicker Indus. Inc. v. Cohen,*
    733 F.2d 1059 (3d Cir. 1984)..............................................................................................3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: § § | |
| TELEGLOBE COMMUNICATIONS § CORPORATION, ET AL., § § | CASE NO. 02-11518 (MFW) (Jointly Administered) |
| DEBTORS. § § § | |
| Teleglobe USA Inc. et al., § § Plaintiff, § § v. § § BCE Inc. et al., § § Defendants. § | CIV. ACTION NO. 04-1266 (SLR) |

**REPLY BRIEF IN SUPPORT OF INTERVENOR VARTEC TELECOM, INC.'S AMENDED MOTION FOR PROTECTIVE ORDER REGARDING DEFENDANTS' SECOND REQUEST FOR PRODUCTION OF DOCUMENTS WITH REQUEST FOR ORAL ARGUMENT**

Intervenor VarTec Telecom, Inc. ("VarTec"), in further support of its Amended Motion for Protective Order Regarding Defendants' Second Request for Production of Documents (the "Motion") and in reply to BCE's Memorandum of Law in Opposition to the Motion (the "Opposition"), states the following:

### I.    INTRODUCTION AND SUMMARY OF ARGUMENT

VarTec is entitled to a protective order in this case for at least three reasons. First, BCE's requests – despite being nominally directed to Teleglobe – would improperly require the production of thousands of privileged, proprietary and confidential *VarTec* documents, placing a significant and unnecessary burden on VarTec as the producing party. Second, production of these VarTec documents to BCE would unfairly and prejudicially favor BCE in connection with

1

related litigation between VarTec and BCE (the "D.C. Case"). In the D.C. Case, BCE is vigorously opposing efforts by VarTec to get discovery from BCE,[1] yet is ironically attempting to use this case to obtain discovery from VarTec. Third, BCE's requests are tremendously broad – essentially asking for all documents from an Arbitration[2] between Teleglobe and VarTec. Despite BCE's incorrect and unsupported speculation regarding the contents of the Arbitration Documents, most of them are *wholly irrelevant* to BCE's dispute with Teleglobe. As the Court is aware, this case centers on BCE's control of and relationship with Teleglobe. In contrast, the Arbitration Documents relate to hundreds of individual contractual indemnity claims between Teleglobe and VarTec – none of which have any relationship to BCE. Although relevance objections are sometimes viewed unfavorably by courts, the unique circumstances present here, including the unfair prejudice created by BCE's efforts to avoid discovery in the D.C. Case, justify VarTec's requested relief.

Simply put, BCE is attempting to have it both ways – seeking broad-sweeping discovery of VarTec's documents, while objecting to VarTec's request for limited discovery in the D.C. Case. To permit BCE access to the Arbitration Documents in this proceeding through Teleglobe would reward BCE's manipulation of the Rules of Civil Procedure and result in inequity and undue prejudice to VarTec. Because the harm to VarTec if the documents are produced substantially outweighs any need BCE has for the documents, the Court should grant VarTec's Motion for Protective Order.[3]

---

[1]    As this Court is aware, VarTec has asked the district court in Washington, D.C. for partial relief from the automatic stay of discovery in place in its litigation against BCE. If VarTec's request is granted, it will be permitted limited discovery from BCE involving six specific subject matters.

[2]    Capitalized words not defined in this Reply Brief are given their meanings assigned in VarTec's Brief in Support of its Amended Motion for Protective Order.

[3]    In the event VarTec's Motion to Partially Lift the PSLRA Discovery Stay is granted in the D.C. Case, VarTec is prepared to engage in an open, constructive exchange of documents with BCE in this

2

## II.     ARGUMENT

VarTec has established good cause for the issuance of a protective order. "Good cause is established on a showing that disclosure will work a clearly defined and serious injury" to VarTec. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (quoting *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984)). Good cause exists under these circumstances because the benefit of the discovery to BCE is far outweighed by the significant injury to VarTec in ordering production. The injury to VarTec would be three-fold: (i) BCE will be given a significant and unfair advantage in connection with pending litigation between BCE and VarTec in Washington, D.C., while opposing VarTec's efforts to obtain reciprocal discovery in that case; (ii) VarTec risks the waiver of its privileges in connection with other pending litigation; and (iii) VarTec – an entity in bankruptcy – will be forced to bear the extraordinary cost of production and preparation of a privilege log. Meanwhile, the documents BCE seeks are wholly irrelevant to this proceeding and contain none of the information BCE's speculates – based on a serious misunderstanding of the Arbitration – to be present. Given these facts, a protective order is appropriate and should be granted.

**A.     BCE's Requests Are Extremely Broad and the Arbitration Documents are Irrelevant to the Dispute Between Teleglobe and BCE**

BCE's Opposition describes the Arbitration Documents as "documents already available to the Debtors relating to the claims and defenses asserted in this action." Opposition at 4. This is simply not correct. The Opposition is full of such inaccurate and conclusory statements that demonstrate BCE's fundamental "misunderstanding" of the scope of their request, the nature of the Arbitration, and the contents of the Arbitration Documents. This is true despite VarTec's

---

matter, provided that the request is for relevant, non-proprietary, non-privileged or otherwise discoverable documents.

3

repeated efforts to explain both the Arbitration and the contents of the Arbitration Documents to BCE and to work out a resolution.

> 1. *The Arbitration Was A Complex Proceeding and the Arbitration Documents are Voluminous*

The Arbitration is not a simple proceeding, like many arbitrations. Instead, it is an *ongoing* proceeding over which the Arbitration Panel has retained jurisdiction until at least August 2005.[4] The main Arbitration Hearing was conducted in June and July 2004, and was an extremely contentious two-and-a-half-week proceeding before three former judges. Prior to the Arbitration Hearing itself, the parties participated for months in numerous pre-trial hearings and filed a large number of motions with the Panel. These pre-trial hearings would sometimes cover ten or more motions and be conducted several times a day. The parties submitted several thousand exhibits to the Panel, many of which were summaries of more voluminous documents. Other exhibits consisted of hundreds of pages of different documents, conglomerated together for purposes of presentation to the Panel. In total, VarTec produced over a million-and-a-half pages of documents. In contrast, Teleglobe produced only a few hundred documents, claiming throughout the proceeding that it did not have any documents relevant to the dispute. Thus, the vast majority of the Arbitration Documents are VarTec documents produced to Teleglobe.

> 2. *The Actual Issues Presented in the Arbitration are Unrelated to the Claims Made Here*

BCE's Opposition describes the Arbitration as a breach of contract action arising from VarTec's failure to pay consideration owed under the Stock Purchase Agreement. Opposition at 4. In reality, the vast majority of the Arbitration Documents relate to VarTec's hundreds of counterclaims for indemnification against Teleglobe. The indemnification claims ranged in

---

[4] The facts and circumstances regarding the Arbitration discussed in this Reply are detailed in the attached Declaration of Beth W. Bivans.

**4**

subject from, among many others, pre-close litigation matters to pre-close tax matters to real estate leases to employee bonus payment disputes. Each indemnification claim was essentially tried like a separate lawsuit, and each required a complete evidentiary record and testifying witnesses. *None* of these indemnification claims has any discernable relevance whatsoever to the claims brought by Teleglobe in this matter. BCE's Opposition makes no effort to explain their relevance.

Another large portion of the Arbitration Documents relates to VarTec's financial condition. Teleglobe's investigation into VarTec's ability to fulfill its obligations on the notes and VarTec's claims of severe financial hardship resulting from Teleglobe's refusal to fulfill its indemnity obligations VarTec's put financial condition in issue. The Arbitration Documents, therefore, contain an abundance of VarTec's confidential and proprietary financial data, *none* of which has any conceivable relevance to Teleglobe's claims against BCE.[5] In its Opposition, BCE never attempts to explain how VarTec's financial documents could potentially relate to this case.[6]

        3.        *BCE Incorrectly Speculates Regarding What Is Contained in the Arbitration Documents*

Instead of cooperating with VarTec to understand the contents of the Arbitration Documents and working out a resolution to this dispute, BCE chooses to base its Opposition on speculation and inaccurate conclusions regarding the Arbitration Documents. BCE incorrectly assumes that the Arbitration Documents consist of information relevant to Teleglobe's claims against BCE. Opposition at 4. Two examples of BCE's improper speculation are useful.

---

[5]    VarTec's financial documents are, however, relevant in the D.C. Case, and BCE's attempt to obtain them here is an improper manipulation of the discovery process.

[6]    BCE does, however, assert another bald assumption that the financial documents were created "at the latest in 2003." VarTec is unable to discern BCE's basis, if any, for this statement. VarTec produced its financial statements up to and even during the Arbitration Hearing.

5

First, BCE speculates that the Arbitration Documents contain information regarding BCE's control of Teleglobe during negotiations of the Stock Purchase Agreement with VarTec. BCE cites to a Motion to Compel filed by VarTec in the Arbitration in support of its proposition that the Arbitration Documents include information about BCE's control of Teleglobe. Opposition at 5.[7] Although VarTec sought documents relating to the negotiation of the SPA, Teleglobe claimed it had no such documents.[8] Further requests for Teleglobe to obtain the documents from BCE or its transactional counsel were also met with resistance. In addition, as BCE must concede, VarTec requested similar documents directly from BCE during the Arbitration. BCE refused to comply with the Panel's subpoenas for documents and depositions, and VarTec never received any information related to the negotiation of the SPA. Accordingly, BCE's control of Teleglobe during the negotiations was ***not raised*** in the Arbitration, and neither party submitted these types of documents to the Arbitration Panel.

Second, BCE asserts that VarTec "*apparently*" raised arguments in the Arbitration related to Teleglobe's assumption or rejection of the Stock Purchase Agreement. Opposition at 5 (emphasis added). Again, this assumption is misguided. Again, BCE seems to base this assumption on a partial reading of bankruptcy court documents. BCE points to a statement made

---

[7]   *See* Exhibit 3 to the Declaration of John W. Shaw in Support of BCE's Opposition ("Shaw Declaration"). VarTec is surprised to see this Exhibit attached to BCE's Opposition. VarTec is unsure how BCE obtained a copy of this document, as it is one of the Arbitration Documents sought by BCE's request for production and should not have been disclosed to BCE. The Shaw Declaration does not cite BCE's source for the document. Whoever is responsible for such production has breached the Confidentiality Agreement in place for the Arbitration. If BCE has this item, perhaps it has other items about which VarTec is not aware, and BCE should be required to divulge to VarTec what documents it has already acquired related to the Arbitration, out of fairness and to avoid duplication of efforts should VarTec be required to disclose certain documents.

[8]   *See* Teleglobe's statements at an April 12, 2004 hearing before the Arbitration Panel, **Exhibit 1** to the Declaration of Beth W. Bivans in Support of VarTec's Reply Brief ("Bivans Declaration"), APP C003, at 9: 12 to C004, at 11: 12.. VarTec believes it is necessary to attach this transcript despite its being part of the Arbitration Documents. Pursuant to the doctrine of optional completeness, Teleglobe's statements in response to the document cited by BCE provides the rest of the story of VarTec's failed attempt to obtain transaction documents from Teleglobe.

6

by VarTec in a plea to the bankruptcy court to stay the Arbitration, pending the outcome of Teleglobe's claims adjudication process.[9] After a stay was denied, VarTec filed a motion seeking to require Teleglobe to assume or reject the Stock Purchase Agreement.[10] In the alternative, VarTec sought relief from the automatic stay in order to file its counterclaims in the Arbitration.[11] The court refused to require Teleglobe to assume or reject the Stock Purchase Agreement, but instead granted VarTec relief from the automatic stay.[12] Thereafter, the issue of assumption of the contract was never raised with the Arbitration Panel. The Arbitration Documents, therefore, contain ***no information*** related to this issue.

> 4.  *BCE's Document Request is Extremely Broad and Fails to Identify Even One Particularized Category of Documents*

BCE's Opposition states that its request for the Arbitration Documents is "narrow" and "particularized." Opposition at 4.[13] This statement is odd, especially in light of VarTec's

---

[9]   *See* Exhibit 2 to Shaw Declaration.

[10]  *See* Motion of VarTec Telecom, Inc. and VarTec Telecom Holding Company for an Order Requiring Assumption of Executory Contract or, Alternatively, for Relief From Automatic Stay, **Exhibit 2** to Bivans Declaration, APP C005.

[11]  *Id.* at C014.

[12]  *See* Order (I) Denying VarTec's Request to Compel Assumption of Stock Purchase Agreement, (II) Granting VarTec Relief from the Automatic Stay, and (III) Granting Debtors' Request to Stay Proceedings Related to Debtors' Objections to VarTec's Amended Proofs of Claim, **Exhibit 3** to Bivans Declaration, APP C018-19.

[13]  BCE's statement that its request is particularized is also ironic in the face of a contrary argument it recently presented to the federal district court in Washington, D.C. in response to VarTec's Motion to Partially Lift the PSLRA Discovery Stay in the D.C. Case. In that case, BCE argued that VarTec's discovery requests are insufficiently particularized even though they request documents related to ***six specifically-identified subject areas***: (i) BCE's funding of Teleglobe; (ii) BCE's decision to withdraw its support of Teleglobe; (iii) a project BCE code-named "Project X;" (iv) BCE's negotiations with VarTec for the sale of Excel.; (v) BCE's management of Teleglobe; and (vi) BCE's management of Excel. BCE goes so far as to cite a case, *Faulkner v. Verizon Communications, LLC*, for the proposition that "requesting a large number of documents that have already been produced in another lawsuit" does not meet the definition of particularized discovery. *See* Defendants' Opposition to Plaintiffs' Motion to Partially Lift the PSLRA Discovery Stay and Statement of Authorities, **Exhibit 4** to Bivans Declaration, APP C038, citing *Faulkner*, 156 F. Supp. 2d 384, 401 (S.D.N.Y. 2001). Although *Faulkner* is inapposite to VarTec's narrow requests in the D.C. Case, this is precisely what BCE has done by its request in this case.

7

explanation above of the hundreds of different claims raised in the Arbitration and the magnitude of documents at issue. The language of the request alone is sufficient indication of its extreme breadth. BCE seeks "*all* arbitration awards and orders," "transcripts from *all* arbitration hearings," "transcripts of *all* depositions," "*all* exhibits" introduced or marked at depositions and hearings, and all "pleadings, briefs, memorials, letters, or other documents submitted to the arbitration tribunal . . . ."[14] Such language cannot be interpreted as limiting, narrow, or particularized. To the contrary, BCE's request is all-encompassing and over-inclusive.

In light of the breadth of BCE's requests, the contents of the Arbitration Documents, and the lack of relevance of these documents to this proceeding, BCE's need for the Arbitration Documents for this case is minimal. This need is far outweighed by the possible prejudice to VarTec.

### B.     VarTec Will Be Unfairly Prejudiced by Production of These Documents

As noted above, VarTec will be prejudiced by production of the Arbitration Documents to BCE in at least three ways. First, BCE will gain an advantage in the D.C. Case, where these documents would be relevant, but where BCE refuses to provide VarTec reciprocal discovery. Second, VarTec risks waiving its privileges in other pending litigation if production is required. Third, VarTec would be forced to bear significant costs of production, including the preparation of an extensive privilege log – all for a document request ostensibly directed to another party. These burdens establish good cause for a protective order.

#### 1.    *Failure to Grant Protection Over the Arbitration Documents Would Result in Inequity and Undue Prejudice to VarTec in the D.C. Case*

BCE should not be permitted to cleverly side-step VarTec to obtain from Teleglobe discovery of VarTec documents bearing no relevance to this proceeding. BCE's actions are

---

[14]    *See* Defendants' Request for Production, APP A043 (emphasis added).

especially improper in light of (i) BCE's specific refusals in the Arbitration to produce documents or witnesses; and (ii) BCE's vigorous objection to VarTec's request for partial relief of the discovery stay in the D.C. Case.  Simply put, BCE is attempting to gain information from VarTec, while simultaneously refusing to reciprocate.  As noted in VarTec's Motion to Lift Stay in the D.C. Case, the inequity created by BCE's inconsistent positions is unfairly prejudicial to VarTec.  Absent a protective order, BCE would be given access to VarTec documents that may be used against VarTec in the D.C. Case.  Such a result should not be condoned by this Court.

      2.    *<u>VarTec Faces Significant Harm if its Privileged and Confidential Documents are Disclosed</u>*

Absent a protective order, VarTec faces the potential waiver of VarTec's privileges if BCE is allowed access to the Arbitration Documents.  BCE's Opposition baldly asserts that "the categories of documents called for by the Request are not likely to be privileged."  Opposition at 3.  As with BCE's other incorrect assumptions, this statement is wholly unfounded.  Indeed, VarTec has informed BCE repeatedly in the Motion and in informal discussions that many, if not the ***majority*** of Arbitration Documents, are subject to the common interest, attorney-client or work product privileges.  The indemnity claims at issue were often litigation matters, many of which are still pending.  The Arbitration Panel ordered the production of privileged documents in order to permit the parties to value the litigation claims.  If these documents are disclosed to third parties like BCE, with whom VarTec does not share a common interest, the privilege would be waived as to all other parties.  Because a number of these matters are still pending, the negative impact of such a disclosure could be devastating to VarTec's ability to defend those claims.

Similarly, VarTec has established a need for protection of its confidential financial documents.  BCE argues that disclosure of the documents would not result in any harm to VarTec.  Again, BCE completely disregards the fact that VarTec's financial status has ***no***

*relevance* to the claims at issue in this case. *Any* potential harm from disclosing VarTec's confidential financial information therefore outweighs the need for its production. BCE also advances the mistaken proposition that, because VarTec is in bankruptcy, its financial documents are "stale." Opposition at 3. To the contrary, the need for integrity and confidentiality of VarTec's financial documents is heightened at this time, as VarTec explores its options to sell its assets or to continue operating as a going concern. Disclosure of this confidential and proprietary information to any third party, especially another member of the telecommunications industry, could pose problems for VarTec as it approaches potential buyers and lenders.

### 3. *VarTec Would Suffer Significant Expense if Production Were Required*

VarTec would further be harmed by the production if it – as a non-party to this case – is forced to bear the significant costs of production, especially in light of the tenuous relevance of documents. BCE has actually advanced an argument in the D.C. Case that "BCE did not request any discovery *from VarTec*" in connection with three related cases – including this case.[15] Likewise, BCE's Opposition unduly focuses on the fact that BCE's document request "calls for the production of documents from the files of [Teleglobe], not VarTec." Opposition at 3. BCE, however, is well aware the vast majority of Arbitration Documents are VarTec documents and the privileges implicated are VarTec's as well. BCE is also aware of the contentious nature of the Arbitration and the relationship between VarTec and Teleglobe. BCE knows that Teleglobe has little incentive or obligation to protect VarTec's privileges and confidences. Certainly, as a bankrupt entity, Teleglobe is unlikely to want the tremendous expense of preparing a privilege log or re-reviewing the documents, where the documents and privileges belong to VarTec.

---

[15] *See* Defendants' Opposition to Plaintiffs' Motion to Partially Lift the PSLRA Discovery Stay and Statement of Authorities, **Exhibit 4**, at C027 (emphasis added).

In reality, BCE's document request to Teleglobe has placed an extraordinary burden on VarTec, who has been forced to launch objections, preserve privileges, intervene, and seek protection in a matter to which it is not even a party. BCE's suggestions that production of the Arbitration Documents in this matter would be a simple undertaking for VarTec are seriously misplaced.

### III. CONCLUSION

WHEREFORE, VarTec respectfully requests the Court to GRANT its Motion for Protective Order and preclude BCE from seeking and Teleglobe from producing any documents sought in Defendants' Second Request for Production of Documents. VarTec further requests the Court to grant VarTec any additional relief, at law or in equity, to which it is justly entitled.

Respectfully submitted,

**STEVENS & LEE P.C.**


 /s/Joseph H. Huston, Jr.
Joseph H. Huston, Jr. (No. 4035)
Thomas G. Whalen, Jr. (No. 4034)
1105 North Market Street Suite 700
Wilmington, DE 19801
Telephone: (302) 425-3310, -3304
Telecopy: (610)371-7972, -8512

-and-

**HUGHES & LUCE L.L.P.**

Craig W. Budner
Beth W. Bivans
1717 Main Street, Ste. 2800
Dallas, Texas 75201
Telephone: (214) 939-5500
Telecopy: (214) 939-5849

**ATTORNEYS FOR INTERVENORS VARTEC TELECOM, INC. AND VARTEC TELECOM HOLDING COMPANY**

Case 1:04-cv-01266-SLR    Document 128    Filed 06/06/2005    Page 16 of 16