IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | § § § | |
| TELEGLOBE COMMUNICATIONS CORPORATION, ET AL., | § § § § | CASE NO. 02-11518 (MFW) (Jointly Administered) |
| DEBTORS. | § § | |
| Teleglobe USA Inc. et al., | § § | |
| Plaintiff, | § § | |
| v. | § § | CIV. ACTION NO. 04-1266 (SLR) |
| BCE Inc. et al., | § § § | |
| Defendants. | § | |

**DECLARATION OF BETH W. BIVANS IN SUPPORT OF INTERVENOR
VARTEC TELECOM, INC.'S REPLY BRIEF IN SUPPORT OF ITS AMENDED
<u>MOTION FOR PROTECTIVE ORDER</u>**

1. I am an attorney admitted to practice *pro hac vice* in Teleglobe's bankruptcy proceeding in the District of Delaware and a partner with the law firm of Hughes & Luce, LLP. I represent Intervenor VarTec Telecom, Inc. ("VarTec"), in the above-referenced cause.

2. I represent VarTec in an arbitration initiated by Teleglobe on January 12, 2004, styled *Teleglobe Telecom Corporation, et al. v. VarTec Telecom, Inc., et al.*, No. 50 T 153 00025 04 (the "Arbitration"). The Arbitration is an ongoing proceeding over which the Arbitration Panel has retained jurisdiction until at least August 2005. The main Arbitration Hearing was conducted from June 26, 2004, to July 10, 2004, and was an extremely contentious two-and-a-half-week proceeding before three former judges. The Arbitration was conducted on an accelerated track – with the parties exchanging discovery between January and June 2004. Prior

<u>**DECLARATION OF BETH W. BIVANS**</u> **– Page 1**

to the Arbitration Hearing itself, the parties participated for months in numerous pre-trial hearings and filed a large number of motions with the Panel. These pre-trial hearings would sometimes cover ten or more motions and be conducted several times a day. In total, VarTec produced over a million-and-a-half pages of documents. In contrast, Teleglobe produced only a few hundred documents, claiming throughout the proceeding that it did not have any documents relevant to the dispute. Thus, the vast majority of the Arbitration Documents are VarTec documents produced to Teleglobe.

3. This issues in the Arbitration stemmed from VarTec's purchase of Excel (a group of companies owned by Teleglobe and operated by a BCE entity, BCE Ventures) through a Stock Purchase Agreement (the "SPA"). Teleglobe's main claim in the Arbitration was VarTec's failure to make interest payments on the Purchase Price Notes accompanying the SPA. In response to Teleglobe's breach of contract cause of action and demand for acceleration of the principal note payments, VarTec pled the defense of recoupment. The SPA allowed VarTec to recoup its losses from Teleglobe's failure to satisfy its indemnity obligations by offsetting those amounts against the note payments. To support its recoupment defense, VarTec filed counterclaims in 40 separate categories, equating to hundreds of individual indemnification claims. The indemnification claims ranged in subject from, among many others, pre-close litigation matters to pre-close tax matters to real estate leases to employee bonus payment disputes. Each indemnification claim was essentially tried like a separate lawsuit, and each required a complete evidentiary record and testifying witnesses.

4. A large number of VarTec's claims for indemnification related to Excel's pre-close litigation matters. Because these lawsuits were based on Excel's conduct prior to VarTec's purchase of Excel, Teleglobe had indemnified VarTec for any associated liabilities and legal

fees. The Arbitration Panel held that Teleglobe and VarTec shared a common interest in the efficient and successful outcome of Excel's pre-close litigation matters and ordered VarTec (and its various outside counsel) to produce to Teleglobe its entire files related to each matter. These files included privileged correspondence between VarTec and its counsel as well as various memoranda, damage models, drafts, attorney notes, and other items covered by the work product doctrine. Many of these litigation matters are still pending in various courts. As a result, VarTec's interests and ability to defend these cases would be negatively impacted if the privileged information disclosed in the Arbitration under the Panel's finding of common interest were disclosed to other parties.

5. VarTec also produced a variety of confidential proprietary and financial documents to Teleglobe to support its claim of severe financial hardship due to Teleglobe's inability to perform obligations under the SPA. Those documents included VarTec's business plans, financial projections, network pricing models, forecasts, sales and marketing data, and other business and financial data, in addition to communications with lenders, auditors, and restructuring consultants. In its bankruptcy proceeding, VarTec is currently exploring its options to sell its assets or to continue operations. Disclosure of this confidential and proprietary information to any third party, especially another member of the telecommunications industry, could pose problems for VarTec as it approaches potential buyers and lenders.

6. The parties to the Arbitration submitted over 1,000 exhibits to the Arbitration Panel for use in the final hearing, many of which were summaries of more voluminous documents. Many of the exhibits were hundreds of pages long and represented compilations of VarTec's files, such as those related to litigation matters. If VarTec were forced to re-review all of the Arbitration Documents for production in this case, it would have to review each page of

these voluminous exhibits to separate the privileged from the non-privileged information and the relevant (if any) from the irrelevant data.

7. To the best of my knowledge, the Arbitration Documents do not contain documents related to BCE's control of Teleglobe. VarTec sought to compel the production of documents relating to the negotiation of the SPA, but Teleglobe claimed it had no such documents. Requests for Teleglobe to obtain the documents from BCE or its transactional counsel were also unsuccessful. VarTec requested similar documents directly from BCE during the Arbitration. BCE refused to comply with the Panel's subpoenas for documents and depositions, and VarTec never received any information related to the negotiation of the SPA.

8. In addition, with the exception of pleadings filed in Teleglobe's bankruptcy case, the Arbitration Documents do not contain any information related to Teleglobe's assumption or rejection of the Stock Purchase Agreement. Although VarTec filed a motion seeking to require Teleglobe to assume or reject the Stock Purchase Agreement, that motion was denied by the court. Thereafter, the issue of assumption of the contract was never raised with the Arbitration Panel.

9. I also represent VarTec in a fraud case against BCE, styled *VarTec Telecom, Inc., et al. v. BCE Inc., et al.*, Cause No. ECF 03-2203 (RJL), pending in the United States District Court for the District of Columbia (the "D.C. Case"). Discovery in the D.C. Case is currently stayed awaiting the court's ruling on BCE's motion to dismiss. VarTec has filed a Motion to Lift Stay in that proceeding and is awaiting a ruling from the court, which is currently being opposed by BCE.

10. I have reviewed the documents submitted by VarTec in support of its Reply Brief in Support of its Amended Motion for Protective Order Regarding Defendants' Second Request

for Production of Documents, and to the best of my knowledge, the documents identified below as exhibits are authentic copies of the original documents.

    a.    **Exhibit 1**, attached hereto, is a true and correct copy of an excerpt from the Transcript of April 12, 2004 Telephonic Hearing Before the Arbitration Panel.

    b.    **Exhibit 2**, attached hereto, is a true and correct copy of the Motion of VarTec Telecom, Inc. and VarTec Telecom Holding Company for an Order Requiring Assumption of Executory Contract or, Alternatively, for Relief From Automatic Stay, dated February 15, 2004.

    c.    **Exhibit 3**, attached hereto, is a true and correct copy of the Order (I) Denying VarTec's Request to Compel Assumption of Stock Purchase Agreement, (II) Granting VarTec Relief from the Automatic Stay, and (III) Granting Debtors' Request to Stay Proceedings Related to Debtors' Objections to VarTec's Amended Proofs of Claim, dated February 24, 2004.

    d.    **Exhibit 4**, attached hereto, is a true and correct copy of BCE's Opposition to VarTec's Motion to Partially Lift the PSLRA Discovery Stay, dated May 17, 2005, submitted in connection with the D.C. Case.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed on the 6th day of June 2005, at Dallas, Texas.

                          /s/ Beth W. Bivans
                          Beth W. Bivans