# EXHIBIT C

# Exhibit C

## DEFENDANTS' DE-DESIGNATIONS, RE-DESIGNATIONS, REDACTIONS, RE-REDACTIONS AND SNAP BACKS FROM FEBRUARY 2005 THROUGH FEBRUARY 2006

| Date | Description |
|------|-------------|
| February 18, 2005 | One week after Plaintiffs filed their motion to compel, Defendants produced 35 pages of paper documents and 2789 pages of electronic documents which were "initially withheld on the grounds of privilege, but which [BCE has] determined should be produced." (Cochran Transmittal Aff. at Ex. 1). |
| March 25, 2005 | Defendants produced one page of April 19, 2002 BCE Board minutes that was improperly withheld. (Id. at Ex. 2). |
| April 22, 2005 | Defendants re-redacted documents that allegedly contained "some privileged information" and which were "inadvertently produced." (Id. at Ex. 3). |
| April 26, 2005 | Defendants produced 1810 pages of documents "that were originally withheld as privileged but which, upon further review, [BCE has] decided should be produced." (Id. at Ex. 4). |
| July 11, 2005 | Defendants snapped back "two privileged documents" that were "inadvertently produced." (Id. at Ex. 5). |
| August 16, 2005 | Defendants snapped back "three privileged documents" that were "inadvertently produced." (Id. at Ex. 6). |
| August 31, 2005 | Defendants produced 4339 pages of documents that were "initially withheld on the grounds of privilege, but which [BCE has] determined should be produced; production occurred immediately after the Court referred the privilege issues to the Special Master. (Id. at Ex. 7). |
| September 2, 2005 | Defendants produced 4901 pages of documents "withheld on the grounds of privilege, but which [BCE has] now determined should be produced"; BCE stated that "most of these documents have been |

| | redacted for privilege." (Id. at Ex. 8). |
|---|---|
| September 9, 2005 | Defendants produced first part of privilege log; no explanation provided for why it took almost a full year to produce this privilege log; Defendants also produced 717 pages of documents that were improperly withheld for privilege. (Id. at Ex. 9). |
| September 20, 2005 | Defendants snapped back "privileged documents [that] were inadvertently produced." (Id. at Ex. 10). |
| September 20, 2005 | Defendants produced a supplemental privilege log and an edited and corrected version of the log produced on September 9, 2005; Defendants also produced 8234 pages of documents "previously withheld on the ground of privilege, but which should be produced." (Id. at Ex. 11). |
| September 20, 2005 | Defendants produced documents from the files of BCE's in-house counsel Martine Turcotte and Michael Lalande; Defendants noted that some of these documents were redacted for privilege; Defendants also stated that they have produced a privilege log for those redactions. (Id. at Ex. 12). |
| September 23, 2005 | Defendants snapped back "privilege documents [that] were inadvertently produced." (Id. at Ex. 13). |
| November 1, 2005 | One day following the oral argument before the Special Master, during which the Special Master ordered that 50 documents would be reviewed *in camera*, Defendants produced 20 pages of documents that "are not privileged and should be produced"; Defendants also acknowledged that they were producing 14 pages of documents that were withheld as privileged but which were previously produced. (Id. at Ex. 14). |
| November 4, 2005 | Defendants produced 28 pages of documents "initially withheld as privileged" that "should be produced." (Id. at Ex. 15). |
| November 15, 2005 | Defendants informed Special Master that several documents that were withheld for privilege were previously produced to Plaintiffs under different Bates numbers; Defendants produced these wrongfully withheld documents and informed Special Master that |

| | they were checking their privilege logs for other wrongfully withheld documents. (<u>Id</u>. at Ex. 16). |
|---|---|
| November 16, 2005 | Defendants produced documents to Special Master for 50 document *in camera* audit; Defendant informed Special Master that they were withdrawing their privilege claim for several documents that should never have been withheld or redacted. (<u>Id</u>. at Ex. 17). |
| November 16, 2005 | Defendants produced a two page document that was initially withheld for privilege but which should have been produced. (<u>Id</u>. at Ex. 18). |
| November 23, 2005 | Defendants sent letters to Special Master describing status of documents sent to Special Master for *in camera* review; Defendants acknowledged that there were additional documents, totaling 35 pages, among the 50 selected by the Plaintiff that should never have been withheld. (<u>Id</u>. at Ex. 19). |
| December 6, 2005 | Defendants produced document that was erroneously designated as non-responsive. (<u>Id</u>. at Ex. 20). |
| December 7, 2005 | Defendants informed Special Master that with respect to documents from Davies Ward, "a few documents may reflect work performed for Teleglobe, some may well have been shared with Teleglobe, and a few should not have been withheld"; Defendants promised to produce the Davies Ward documents promptly. (<u>Id</u>. at Ex. 21). |
| December 16, 2005 | Following the Special Master's Supplemental Decision, Defendants produced a supplemental privilege to the Special Master; Defendants informed the Special Master that they would be "producing to Plaintiffs all the documents on their logs that should have been produced earlier or should now be produced." (<u>Id</u>. at Ex. 22). |
| December 16, 2005 | Defendants produced one box of paper documents and one CD containing 2829 pages of documents that were "initially withheld on the grounds of privilege." (<u>Id</u>. at Ex. 23). |
| December 19, 2005 | Defendants produced 117 pages of documents that were "erroneously designated as non-responsive." (<u>Id</u>. at Ex. 24). |

3

| December 21, 2005 | Defendants snapped back "four privileged documents that were inadvertently produced." (Id. at Ex. 25). |
| December 22, 2005 | One day before submitting the bulk of their "privileged" documents to the Special Master for *in camera* review, Defendants produced six boxes of documents, totaling 18,707 pages, that were previously withheld on privilege grounds. (Id. at Ex. 26). |
| December 22, 2005 | Defendants sent updated privilege logs and 5 binders of documents to Special Master for *in camera* review; represented to the Special Master that they were producing to the Plaintiffs "all the documents on the log that should have been produced earlier or should now be produced." (Id. at Ex. 27). |
| December 23, 2005 | One day after producing 18,707 pages of documents that were erroneously withheld for privilege, Defendants produced a CD containing 889 pages of additional documents initially withheld for privilege and four other documents that "should not have been redacted or withheld. (Id. at Ex. 28). |
| December 23, 2005 | Defendants sent another revised privilege log and 38 binders of documents to the Special Master for *in camera* review. (Id. at Ex. 29). |
| December 23, 2005 | Defendants snapped back another document; re-redacted another document previously produced to Plaintiffs. (Id. at Ex. 30). |
| January 8, 2006 | Defendants produced, for the first time, drafts of BCE's 2001 annual report that they initially claimed were privileged; these documents total another 1,902 pages of documents. (Id. at Ex. 31). |
| January 11, 2006 | Defendants snapped back a document that they alleged was inadvertently produced. (Id. at Ex. 32). |
| January 11, 2006 | Defendants informed the Plaintiffs that in addition to the 1,902 pages of documents that they produced on January 8, they were producing 241 pages of additional paper documents that had been improperly withheld for privilege, and another 888 pages of formerly withheld documents on a CD; according to the Defendants, these documents included drafts of "additional annual reports, financial statements, quarterly reports and proxy circulars." (Id. at Ex. 33). |
| January 11, 2006 | In a third letter sent to the Plaintiffs on this date, Defendants informed the Plaintiffs that certain documents produced on December 23, 2005 were incorrectly redacted. (Id. at Ex. 34). |

4

| January 12, 2006 | Defendants informed the Special Master that they have withdrawn their claim of privilege for over 90 additional documents; Defendants also informed the Special Master of incorrect and improper redactions. (Id. at Ex. 35). |
|---|---|
| January 19, 2006 | Defendants produced another 499 pages of documents previous withheld for privilege; documents consist of draft annual and quarterly reports. (Id. at Ex. 36). |
| February 6, 2006 | Defendants produced a document from the files of Michael Sabia that was erroneously designated as non-responsive in 2004. (Id. at Ex. 37). |
| February 21, 2006 | On the eve of the Special Master's Final Report, Defendants produced another 7,123 pages of documents that were previously withheld for privilege; Special Master was unaware of this belated production when he issued his Final Report. (Id. at Ex. 38). |

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------------------
In re                                    )   Chapter 11
                                         )
TELEGLOBE COMMUNICATIONS                 )   Jointly Administered
CORPORATION, et al.,                     )   Bankr. Case No. 02-11518 (MFW)
                                         )
        Debtors.                         )
-----------------------------------------------------------
TELEGLOBE COMMUNICATIONS                 )
CORPORATION, et al.,                     )
                                         )
        Plaintiffs,                      )
                                         )
        v.                               )   C.A. No. 04-CV-1266 (SLR)
                                         )
BCE INC., et al.,                        )
                                         )
        Defendants.                      )
-----------------------------------------------------------
```

**PLAINTIFFS' OPENING SUPPLEMENTAL BRIEF IN SUPPORT
OF MOTION TO COMPEL DOCUMENTS WRONGFULLY
WITHHELD OR REDACTED FOR PRIVILEGE**

Gregory V. Varallo (No. 2242)  
C. Malcolm Cochran, IV (No. 2377)  
Russell C. Silberglied (No. 3462)  
Chad M. Shandler (No. 3796)  
RICHARDS, LAYTON & FINGER, P.A.  
One Rodney Square  
P.O. Box 551  
Wilmington, Delaware  19899  
Telephone:  (302) 651-7700  

ATTORNEYS FOR THE DEBTORS  

Dated: January 10, 2006  

Kevin Gross (No. 209)  
ROSENTHAL, MONHAIT, GROSS &  
GODDESS, P.A.  
919 Market Street, Suite 1401  
P.O. Box 1070  
Wilmington, Delaware 19899-1070  
Telephone:  (302) 656-4433  

-and-  

John P. Amato  
HAHN & HESSEN LLP  
488 Madison Avenue  
New York, New York 10022  
Telephone:  (212) 478-7200  

ATTORNEYS FOR THE
COMMITTEE

III.    **ARGUMENT**

BCE's privilege position continues to evolve. Since our motion to compel was filed, and almost to the date of this brief, BCE has removed with one hand thousands of pages from its privilege logs, while with the other "snapping back" as "inadvertently produced" documents forwarded weeks ago. This course of conduct reached a zenith of sorts on Sunday, January 8, 2006, when BCE removed from its log and produced thousands pages previously designated as privileged, consisting of more than 50 documents, on the notion that it had only now realized that these had been reviewed by its auditor, Deloitte & Touche -- which also served as Teleglobe's auditors. See Jan. 8, 2006 Letter from Walker to Cochran and Amato, attached hereto as Exhibit A. And BCE's latest "snap back" of "inadvertently produced" documents came just last week, in the midst of this massive "de-designation" of documents from its privilege logs.

Suffice it to say here that the Plaintiffs are confused regarding BCE's privilege position(s). The puzzling record amassed on this discovery motion, as supplemented by the Defendants' most recent productions, strongly suggests that BCE is too.

A.    **The Defendants Have Over-Designated Documents as Privileged.**

The fact that some 10 bankers' boxes of documents have been produced by the Defendants from their logs since the oral argument before the Special Master (held on October 31, 2005), should be enough (alone) to establish that the Defendants have over-designated documents as privileged. The substance of many of these newly produced documents is similarly revealing.

For example, BCE has redacted each and every page of the attachments to a number of e-mails between two or more non-lawyers, notwithstanding the fact that these communications do not appear to be seeking, providing or transmitting legal advice. See, e.g., BCE-AD 0549242-

48[1] (e-mail from Virginia Boniello, Manager-External Reporting, to Andrea LeBlanc in the Corporate Finance group); BCE-AD 0549335-48 (e-mail from Maarika Paul, Vice President of Investor Relations, to defendant Michael Boychuk, BCE's Treasurer and Teleglobe's CFO); BCE-AD 0549393-471 (Michael Rosenhek to Lavallee Martin, both of the Corporate Finance group); BCE-AD 0594627-33 (Nick Kaminaris of the Corporate Finance Group to Elie Daher in Finance); BCE-AD 0550976-84 (Kaminaris to Siim Vanaselja, BCE's CFO, copied to Daher); BCE-AD 0559430 (Sandie Spackman to Paul, LeBlanc, Kaminaris, Don Doucette of the Investor Relations group and Sophie Argiriou, Associate Director of Investor Relations); BCE-AD 0551623-40 (Daher to Debra Silverberg); BCE-AD 0553082-140 (Daher to Henri Tremblay); BCE-AD 0553141-201 (same); BCE-AD 0554262-69 (Kaminaris to Daher); BCE-AD 0556296-306 (Tremblay to Vanaselja); BCE-AD 0551641-52 (Argiriou to Daher); BCE-AD 0551677-735 (Daher to Argiriou); BCE-AD 0561880-998 (Daher to Steven Skinner); BCE-AD 0562722-81 (Daher to Sophia Ahmad); BCE-AD 0562782-842 (Daher to Tremblay).

Similarly, the redaction to the April 22, 2002 meeting minutes of the Board of Directors of BCE Inc. (BCE-AD 0563123-24) is difficult to understand, given that the only lawyer present at the meeting was Mr. Ryan, an in-house attorney who acted as corporate secretary. Unless BCE is representing that Mr. Ryan was either asking for or providing legal advice, this privilege assertion appears invalid.

Additionally, at least two e-mails were produced with their attachments entirely redacted, notwithstanding that the e-mail was sent to someone outside of BCE. Specifically, BCE-AD 0558629-44 and BCE-AD 0558645-80 were sent by BCE corporate finance member Pierre

---

[1] All production exhibits referenced herein are attached in Volume II of the Appendix submitted herewith.

Lessard to Jerome Huret, of Nortel Networks.[2] As explored in detail at Mr. Lessard's deposition, Mr. Huret was retained by Mr. Monty as a consultant *for Teleglobe*. See Lessard Dep. at 42 (Huret not a member of BCE); 92-98 (discussing Huret's Teleglobe strategy review); Lessard Ex. 2 at BCE-AD 0080227; BCE-AD 0365717-18. There is no basis to assert any privilege against Teleglobe with respect to a document that was sent to an employee of a third party company who also is providing consulting services *to Teleglobe*. See e.g., Kaminski v. First Union Corp., 2001 WL 793250, at *3 (E.D. Pa. July 10, 2001) (documents viewed by third party consultants are not protected by the attorney client privilege).

Other documents which were redacted in or near their entirety include documents sent by or to the Davies Ward law firm on April 8 or 9, 2002: BCE-AD 0548769-775; BCE-AD 0558837-40; and BCE-AD 0556097-101. For the reasons set forth in Section B below, these documents should not be withheld.

The following documents were produced in a format showing only their cover e-mail, but with all or substantially all of the attachment redacted, which redactions appear to be improper:

- BCE-AD 0548685-734: Withheld notwithstanding that it was copied to a Davies Ward attorney on April 17, 2002, long after the date on which even BCE concedes that Davies Ward was acting as Teleglobe's counsel. (See Argument B, below).

- BCE-AD 0548334: BCE cannot withhold an e-mail where Ms. Turcotte is advising Mr. Boychuk, Teleglobe's own CFO, whether or not Teleglobe should make a bond payment. This appears to be exclusively Teleglobe advice.

- BCE-AD 0565853-54: While we cannot tell, we believe the redaction covers handwritten notes. The most likely source of these handwritten notes are the person who printed the e-mail, presumably Mr. Monty, who is not a lawyer. Therefore, this does not appear to be privileged.

---

[2]   At least one other document appears on previous BCE privilege logs notwithstanding that it was sent to or from Mr. Huret: See Doc. No. 00568 (September 2005 Log).

- BCE-AD 0566911-914:  Even Mr. Monty's suggestion of potential additional directors to the Teleglobe board -- not a subject to which privilege can or should attach -- has been redacted.

- BCE-AD 0548439-41:  Ms. Turcotte tells Mr. Lalande that the attachment to this e-mail is "just a line summary for us."  As such, we are skeptical that the attachment contains legal advice and is privileged.

- BCE-AD 0548442-43:  We do not understand why Mr. Lalande's e-mail to Mr. Mercier of Davies Ward is not redacted, but Mr. Mercier's response is redacted.

- BCE-AD 0548763-64:  This does not appear to be the provision of legal advice.

- BCE-AD 0549199-209:  As even the "to" and the "re" lines have been redacted, we are unable to assess whether privilege has properly been asserted.

- BCE-AD 0549285-303:  The documents attached to this e-mail apparently include a "memo prepared by the Accounting Group" as well as press release.  These do not appear to be seeking or providing legal advice, and therefore do not appear to be privileged.

- BCE-AD 0552050-55:  According to Mr. Ricciuto, the attachment is a "revised description of BCE Teleglobe segment."  A description of Teleglobe's own business neither seeks nor requests legal advice and therefore is not privileged.

- BCE-AD 0553940-55 and BCE-AD 0555968-84:   Both are letters from Ms. Turcotte to Deloitte & Touche, which was the auditor for both BCE and Teleglobe.  Simply put, letters to outside auditors are not privileged, much less when the auditor is Teleglobe's own auditor.

- BCE-AD 0554225-39:  This memorandum prepared by a law student, which apparently simply compiled certain securities filings and orders (presumably all public), cannot be privileged.

Plaintiffs are similarly skeptical of many of the entries on Defendants' revised privilege logs.  For example, many of the log entries appear to constitute communications between non-lawyers, under circumstances in which it is unclear that legal inquiries, or advice, was being relayed.  These are listed in Exhibit B hereto.  Given the history of over-designation, each of these documents, and redactions, should be carefully reviewed.

# EXHIBIT B

## Communications Between Non-Lawyers

### *July 2004 Log*

111
152
156
415
512

### *February 18, 2005 Log*

86

### *September 2005 Log*

| | | |
|---|---|---|
| 00830 | 02192 | 03190 |
| 00838 | 02193 | 03191 |
| 00919 | 02291 | 03437 |
| 01002 | 02293 | 03438 |
| 01208 | 02297 | 03846 |
| 01214 | 02299 | 03888 |
| 01243 | 02300 | 03967 |
| 01528 | 02301 | 04117 |
| 01764 | 02302 | 04150 |
| 01766 | 02328 | 04272 |
| 01826 | 02335 | 04273 |
| 02158 | 02336 | 04274 |
| 02160 | 02337 | 04275 |
| 02168 | 02338 | 04276 |
| 02180 | 02339 | 04277 |
| 02182 | 02340 | 04278 |
| 02184 | 02341 | 04279 |
| 02189 | 02374 | 04317 |
| 02190 | 02376 | 05130 |
| 02191 | 02396 | 05136 |
| | | 05137 |

# EXHIBIT E

## Exhibit E

### DOCUMENTS PRODUCED BY DEFENDANTS FROM FEBRUARY 2005 THROUGH FEBRUARY 2006 THAT WERE WRONGFULLY WITHHELD OR REDACTED FOR PRIVILEGE

| Date | Number of Pages of Documents Produced From Logs |
|------|--------------------------------------------------|
| February 18, 2005 | 2,824 |
| April 26, 2005 | 1,810 |
| August 31, 2005 | 4,339 |
| September 2, 2005 | 4,901 |
| September 9, 2005 | 717 |
| September 20, 2005 | 8,234 |
| November 1, 2005 | 34 |
| November 4, 2005 | 28 |
| November 23, 2005 | 35 |
| December 16, 2005 | 2,829 |
| December 22, 2005 | 18,707 |
| December 23, 2005 | 889 |
| January 8, 2006 | 1,902 |
| January 11, 2006 | 1,129 |
| January 19, 2006 | 499 |
| February 21, 2006 | 7,123 |
| **Total** | **56,000** [*] |

---

[*] This total is a conservative estimate as it does not include documents withheld for privilege but later produced unless the Defendants specifically described the documents as such in their transmittal letters to the Plaintiffs.