IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TELEGLOBE COMMUNICATIONS<br>CORPORATION., *et al.*,<br><br>Debtors, | Chapter 11<br><br>Jointly Administered<br>Case No. 02-11518 (MFW) |
| TELEGLOBE COMMUNICATIONS<br>CORPORATION., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>BCE, INC., *et al.*,<br><br>Defendants. | C.A. No. 04-CV-1266 (SLR) |

## DECLARATION OF MARTINE TURCOTTE

I, Martine Turcotte, declare and say as follows:

1.      I am a member of the Québec bar.  Since June 1, 1999 I have been Chief Legal Officer of BCE Inc. ("BCE").  I have personal knowledge of the facts set forth in this declaration, which I submit in support of BCE's Objections to the Special Master's Final Decision on Plaintiffs' Motion to Compel Defendants to Produce Documents Withheld on the Basis of Privilege (the "Decision").

2.      In the Decision, the Special Master concludes that certain in-house lawyers at BCE, as well as BCE's outside counsel, were jointly representing BCE and Teleglobe Inc. ("Teleglobe") in matters relating to the "funding" or "restructuring" of Teleglobe up through April 23, 2002 and that therefore all privileged documents of BCE relating to Teleglobe from the period November 1, 2001 through April 23, 2002 must be produced.  These documents include, among other things, communications between BCE and its own separate outside counsel, communications analyzing BCE's potential actions with respect to its subsidiary Teleglobe and

1

risks and exposure to BCE as a result of those actions, and my legal presentation to the BCE

Board on April 23, 2002 regarding these issues. The Special Master's conclusion that these

matters were the subject of a joint representation of BCE and Teleglobe by BCE's in-house or

outside counsel is not correct.

3.    Pages 31 through 35 of the Decision set forth the reasons underlying the

Special Master's conclusion that certain in-house lawyers at BCE were representing Teleglobe

with respect to restructuring and BCE's decision to terminate long-term funding to Teleglobe.

4.    The Special Master relied in large part on the fact that my colleague,

Michel Lalande, and others at BCE represented Teleglobe in connection with its public securities

filings and that the disclosures related in part to BCE's intent to fund Teleglobe. (Decision at 32-

33.) BCE had its own interest in making sure that these disclosures were accurate and consistent

with BCE's disclosures, because they related specifically to BCE's own intentions. I and others

at BCE reasonably believed that if these disclosures were incorrect or did not accurately reflect

BCE's intentions, BCE faced potential liability under Canadian and US securities laws as the

parent company of Teleglobe. The work done by BCE's in-house lawyers in ensuring that the

disclosures were correct in no way related to the issues of whether BCE should continue to fund

Teleglobe, what the consequences would be to BCE if it did not continue to fund Teleglobe, or

what BCE's next steps in that regard should be. On those subjects, BCE's in-house lawyers,

including myself, represented BCE exclusively.

5.    On page 33 of the Decision, the Special Master cites as support for his

conclusion that there was a joint representation the fact that "Lalande reviewed and assisted in

drafting a presentation to be made on April 23, 2002, to the Board of Directors of BCE entitled

'Teleglobe Legal Review.'" This draft was prepared by me and others under my supervision,

since this was the presentation that I ultimately gave to the Board of BCE on April 23, 2002. The "Teleglobe Legal Review" related to BCE's investment in Teleglobe, but it was not addressed to Teleglobe and it was not sent to Teleglobe. The logo on the front page of the presentation itself is the BCE logo. Clearly, it was a BCE presentation.

6.      The Special Master cited a 3-page section of the draft entitled "Risks and Exposure – Teleglobe Director Requirements" (pages 34 through 36 of the draft) as evidence that this 52-page document reflected advice to Teleglobe.[1]  (Decision at 33.)  This is a misconstruction of the document. It is clear from even these three pages that this document reflected advice intended for BCE. Although the Special Master dismissed the notion that any advice on potential Teleglobe director liabilities was given because of BCE's indemnity obligations (Decision at 34), these three pages of the draft presentation explicitly and unambiguously support that characterization of the advice. Those pages hardly touch upon the nature of the Teleglobe directors' duties or liabilities, but instead focus on the indemnity issues and BCE's possible exposure, taking into account applicable insurance coverage.[2]

7.      The content of the other 49 pages of the draft presentation make it even more clear that this was advice to BCE, not Teleglobe. The "duties" discussed are the "Duties and Responsibilities [of the] Board of BCE as a Canadian Corporation" (pages 3-4), and the "Risks and Exposure" discussed (pages 5-26) are the risks and exposure of BCE.

8.      At pages 33-34 of his Decision, the Special Master cites an April 12, 2002 presentation to Jean Monty, which included a slide entitled "Acting in a Responsible Fashion,"

---

[1] I understand that BCE is submitting the three documents addressed in this declaration to Court for *in camera* review.

[2] The same is true of the 4-page document containing other excerpts from the draft presentation on which the Special Master relied. (Decision at 33 n.26.)

characterized by the Special Master as being "directed at BCE and Teleglobe." This is simply incorrect. I made this presentation in my capacity as Chief Legal Officer of BCE, for Mr. Monty is his capacity as Chairman and Chief Executive Officer of BCE. It was legal advice for BCE, not Teleglobe. I note that the author of the presentation is identified as the "BCE Legal Department" and the footer identifies the presentation as a "Preliminary Legal Review Process," which it was. Also, the logo on the front page of the presentation is that of BCE.

9.     The only reasonable reading of this 15-page presentation is that it was directed to BCE, not Teleglobe. Pages 3 through 6 discuss pros and cons for BCE. Page 6 discusses "Risks and Exposure" for BCE. Page 7 is a "BCE Decision Tree Analysis." Pages 8 through 12 discuss issues concerning BCE's relationship with the banks. Pages 13 through 14 relate to the business of Bell Canada (BCE's largest subsidiary) with Teleglobe.

10.     The page on which the Special Master relied (page 2, entitled "Acting in a Responsible Fashion") actually says very little. I do not see any basis for concluding that this reflected legal advice to Teleglobe; at most, it showed, in very summary form, the relative importance of certain constituencies for BCE and its subsidiary Teleglobe.

11.     I do not find it strange or unusual that in advising BCE about matters relating to its subsidiary Teleglobe, BCE's lawyers might refer to what Teleglobe might do, or considerations that would be important for Teleglobe or its creditors. The events leading up to Teleglobe's bankruptcy in the Spring of 2002 involved many parties and many possible outcomes. In order to advise BCE properly and comprehensively, BCE's counsel had to analyze the courses of action available to other parties, what they were likely to do in response to actions by BCE, and how the actions of those other parties might affect BCE. The fact that I and other lawyers for BCE may have considered and advised BCE with respect to such matters does not

4

support the conclusion that BCE's counsel was representing any of those other parties, including Teleglobe. Not to review such matters would have been tantamount to providing BCE with incomplete legal advice on very complex matters.

12.    On or about April 8, 2002, Teleglobe engaged its own outside counsel to separately represent it in connection with a potential restructuring or bankruptcy. In Canada, this outside counsel was Davies Ward Phillips & Vineberg. For U.S. law matters, Teleglobe retained Jones, Day, Reavis & Pogue. A few days later, Teleglobe hired another Canadian law firm, Ogilvy Renault, to be its primary Canadian counsel. (I note these representations and those described in the next paragraph are reflected on page 2 of the draft BCE Board presentation cited by the Special Master.)

13.    BCE retained its own outside counsel to advise it separately and exclusively on matters related to Teleglobe. BCE's outside counsel were Stikeman Elliott in Canada and Shearman & Sterling in the United States. It was absolutely clear to everyone involved at all times that these firms were representing BCE and only BCE. The advice of these firms on occasion related to the potential actions of Teleglobe in light of various events or alternatives, but this was necessary in order to allow BCE to make its own decisions about its own course of action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 14th day of March 2006, in Toronto, Ontario.

Martine Turcotte

5

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2006, I electronically filed a true and correct copy of

foregoing Declaration of Martine Turcotte was filed with the Clerk of the Court using CM/ECF,

which will send notification that such filing is available for viewing and downloading to the

following counsel of record:

Gregory V. Varallo, Esq.
Mark D. Collins, Esq.
C. Malcolm Cochran, IV, Esq.
Robert J. Stern, Jr., Esq.
Kelly E. Farnan, Esq.
Anne S. Gaza, Esq.
Richards, Layton & Finger, P.A.
920 N. King Street
Wilmington, DE  19801

Joseph A. Rosenthal, Esq.
Rosenthal, Monhait, Gross & Goddess, P.A.
1401 Mellon Bank Center
P.O. Box 1070
Wilmington, DE  19899-1070

I further certify that on March 14, 2006, I caused a copy of the foregoing Declaration of

Martine Turcotte on the to be served upon the following non-registered participants in the

manner indicated below:


BY EMAIL
John P. Amato, Esq.
Mark S. Indelicato, Esq.
Zachary G. Newman, Esq.
Jeffrey L. Schwartz, Esq.
Hahn & Hessen LLP
488 Madison Avenue
New York, NY  10022


/s/ Margaret B. Whiteman
Pauline K. Morgan (No. 3650)
Maribeth Minella (No. 4185)
Margaret B. Whiteman (No. 4652)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6681
pmorgan@ycst.com
mminella@ycst.com
mwhiteman@ycst.com
bank@ycst.com

*Attorneys for Defendants*