IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------x
In re:                                      :      Chapter 11
                                            :
TELEGLOBE COMMUNICATIONS                    :      Jointly Administered
CORPORATION, et al.,                        :      Case No. 02-11518 (MFW)
                                            :
                        Debtors.            :
-------------------------------------------------x
                                            :
TELEGLOBE COMMUNICATIONS                    :
CORPORATION, et al.                         :
                                            :
                        Plaintiffs,         :
                                            :
            v.                              :      C.A. No. 04-CV-1266 (SLR)
                                            :
BCE INC., et al.,                           :
                        Defendants.         :
-------------------------------------------------x
```

### DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S FINAL DECISION ON PLAINTIFFS' MOTION TO COMPEL DEFENDANTS TO PRODUCE DOCUMENTS WITHHELD ON THE BASIS OF PRIVILEGE

Counsel for the Defendants:

YOUNG CONAWAY
STARGATT & TAYLOR, LLP

Pauline K. Morgan (No. 3650)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899
(302) 571-6600

SHEARMAN & STERLING LLP

Stuart J. Baskin
George J. Wade
Jaculin Aaron
599 Lexington Avenue
New York, NY 10022
(212) 848-4000

Dated: March 14, 2006

# TABLE OF CONTENTS

Page

Preliminary Statement ................................................................................................ 1

Statement of Facts ..................................................................................................... 2

Choice of Law ............................................................................................................ 4

Burden of Persuasion ................................................................................................ 5

Standard of Review .................................................................................................... 5

Summary of Argument ............................................................................................... 5

Argument ................................................................................................................... 5

I.   The Special Master Erred In Ruling that Teleglobe Is Entitled to the Privileged
     Documents on the Basis of a Joint-Client Privilege ............................................. 5

     A.   The Joint-Client Privilege Applies Only to Matters of Common Legal Interest on
          Which Two or More Clients Were Jointly Represented ............................................ 6

     B.   The Privileged Documents Do Not Relate to Matters of Common Legal Interest on
          Which BCE and Teleglobe Were Jointly Represented ............................................. 7

     C.   The Documents from BCE's Outside Attorneys Are Privileged Regardless of
          Whether They Were Shared with BCE's In-House Attorneys ................................. 10

II.  Even If Teleglobe Is Entitled to the Privileged Documents As a Joint Client, It Cannot
     Consent to Disclosure to Third Parties Outside the Privilege such as Plaintiffs
     Without the Consent of BCE ...................................................................................... 11

     A.   The Plan Administrator Did Not Have the Legal Authority to Consent on Behalf of
          Teleglobe to the Disclosure of Privileged Documents ............................................. 12

     B.   The Joint-Client Privilege Prevents One Client from Disclosing Jointly Privileged
          Communications Without the Consent of Its Co-Client ........................................... 12

Conclusion ................................................................................................................... 15

# TABLE OF AUTHORITIES

## CASES

PAGE

*American Mut. Liability Ins. Co. v. Superior Court*, 113 Cal. Rptr. 561 (Cal. App. 1974)..............9

*In re Asia Global Crossing, Ltd.*, 322 B.R. 247 (Bankr. S.D.N.Y. 2005) .....................................13

*CSX Transp., Inc. v. Lexington Ins. Co.*, 187 F.R.D. 555 (N.D. Ill. 1999).................................9

*Carey-Canada, Inc. v. Aetna Cas. & Sur. Co.*, 118 F.R.D. 250 (D.D.C. 1987) ............................9

*Eureka Inv. Corp., N.V. v., Chicago Title Ins. Co.*, 743 F.2d 932 (D.C. Cir. 1984)...................8,10

*FDIC v. Ogden Corp.*, 202 F.3d 454 (1st Cir. 2000)......................................................6

*Holland v. Island Creek Corp.*, 885 F. Supp. 4 (D.D.C. 1995) ..........................................13

*In re Imperial Corp. of America*, 179 F.R.D. 286 (S.D. Cal. 1998) ...................................13

*Interfaith Hous. Delaware, Inc. v. Town of Georgetown*, 841 F. Supp. 1393 (D. Del. 1994) .............................................................................................13

*Laprairie Shopping Ltd. (Syndic de)*, [1998] R.J.Q. 448 (Que.C.A.) ...........…………………......12

*Lugosch v. Congel*, 219 F.R.D. 220 (N.D.N.Y. 2003)...................................................13

*Madison Mgmt. Group, Inc. v. Zell*, 212 B.R. 894 (N.D. Ill. 1997) .....................................13

*McMorgan & Co. v. First California Mortgage Co.*, 931 F. Supp. 699 (N.D. Cal. 1996)..............5

*In re Mirant Corp., 326 B.R. 646 (Bankr. N.D. Tex. 2005)*...........................................10

*NL Indus. v Commercial Underwriters at Lloyd's*, 144 F.R.D. 225 (D.N.J. 1992) ........................7

*Pittston Co. v. Allianz Ins. Co.*, 143 F.R.D. 66 (D.N.J. 1992)..........................................9

*Stratagem Dev. Corp. v. Heron Int'l. N.V.*, 153 F.R.D. 535 (S.D.N.Y. 1994) ...............................9

*Tackett v. State Farm Fire & Cas. Ins. Co.*, 653 A.2d 254 (Del. 1995).......................................5

*United States v. Doe*, 429 F.3d 450 (3d Cir. 2005)........................................................6

## STATUTES

Del. R. Evid. 502(d)(6) (2005) .................................................................................6,7,10

Fed. R. Civ. P. 53 (g) (3)-(4)....................................................................................5

*Restatement (Second) of Conflicts of Laws* § 263 cmt. b (1988 rev.)............................................12

*Restatement (Second) of Conflict of Laws* § 139 cmt. e (1988 rev.)..................................................4

*Restatement (Third) of the Law Governing Lawyers* § 86(3) (1998) ..............................................5

*Restatement (Third) of the Law Governing Lawyers* § 75, cmt. e (1998) ....................................14

Wigmore, *Evidence* § 2312 (McNaughton Rev. 1961)....................................................7

## MISCELLANEOUS

Paul R. Rice, *Attorney-Client Privilege in the United States* § 4:33 (2d ed. 2005)........................7

Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure:*
*Evidence* § 5505 (2005) ..................................................................................…..7

PRELIMINARY STATEMENT

Unlike most discovery disputes over privileged documents, this dispute does not require the Court to determine whether documents are privileged. The Special Master held that they are. (*See* Final Decision on Plaintiffs' Motion to Compel Defendants to Produce Documents Withheld on the Basis of Privilege (Feb. 22, 2006) ("SM Dec.") at 30-31 and n.21.) Instead, this Court must determine whether an exception permits the plaintiffs to obtain concededly privileged documents. (*See id.*) The plaintiffs bear the burden of proving that exception. This Court reviews the Special Master's decision *de novo*.

The Special Master decided that defendant BCE Inc.'s ("BCE's") in-house and outside lawyers jointly represented BCE and Teleglobe Inc. ("Teleglobe"), the parent company of the plaintiffs, "on matters relating to the funding issue" and that Teleglobe's Plan Administrator consented to disclosure of the jointly privileged documents to the plaintiffs. (*See* SM Dec. at 31, 10 n.3.) Based on that premise, he broadly invalidated BCE's entitlement to receive privileged legal advice and ordered BCE to hand over its privileged documents to third parties, the plaintiffs. The Special Master's required disclosure of "*all* of the documents on the privilege log from November 1, 2001 and April 23, 2002" (SM Dec. at 31 (emphasis added)) – even on matters other than funding, even of legal advice *BCE* procured and received relating to *BCE*'s own potential litigation risks, and even of advice provided by BCE's chief legal officer directly to BCE's board.

The Special Master's decision is not only far reaching, it is also wrong. Indeed, it would be unacceptable for any company, in the United States or Canada, especially in this Sarbanes-Oxley world. *First*, contrary to the Special Master's finding, BCE's in-house and outside lawyers represented BCE and not Teleglobe on BCE's decision not to continue funding

1

Teleglobe and the legal consequences thereof. *Second*, even if BCE's in-house and outside lawyers represented BCE and Teleglobe as joint clients on that matter, the joint privilege would prevent the plaintiffs, who were not one of the joint clients, from obtaining the privileged documents. That legal principle, which alone is sufficient to sustain this Objection, has been settled for decades.

STATEMENT OF FACTS

The Special Master found that "[t]he *in camera* review of the privilege log documents revealed a broad legal representation of both BCE and Teleglobe by BCE's in-house attorneys relating to Teleglobe's restructuring alternatives." (SM Dec. at 31-32.) That finding rested on the Special Master's review of public disclosures ("annual reports, MD&A's, and financial documents"), a draft presentation to the BCE Board, and a presentation by the BCE Legal Department to Jean C. Monty, the Chairman and CEO of BCE. (*See id.* at 32-34.) Although the Special Master understood that the disclosures stated "*BCE's* position on future funding of Teleglobe" (*id.* at 32 (emphasis added); *see id.* at 33 ("*BCE's* funding commitment") (emphasis added)), he inferred that "BCE's attorneys were providing advice to Teleglobe" because the disclosures appeared in "Teleglobe reports and financial statements." (*Id.* at 32.) The Special Master believed that the draft Board presentation of April 23, 2002, although ultimately delivered to "the BCE board" (*id.* at 34), contained slides that appeared to be directed to Teleglobe. (*Id.* at 33-34.) He also concluded that the BCE Legal Department's April 12, 2002 presentation to Mr. Monty constituted advice to Teleglobe, even though the presentation explicitly related to risks and potential actions of BCE – because the presentation contained one very summary page of text that he thought might arguably be construed as advice to Teleglobe.[1]

---

[1] In a preliminary decision, the Special Master rejected plaintiffs' argument that the fact that certain BCE officers and directors (including Mr. Monty) were also officers or directors of Teleglobe resulted in a waiver of the privilege

2

The Special Master also found that the outside law firms of Davies Ward Phillips & Vineberg LLP ("Davies Ward"), Osler, Hoskin & Harcourt LLP ("Osler"), and Shearman & Sterling LLP ("Shearman") represented BCE and Teleglobe. (*See* SM Dec. at 35-43.) The Special Master made these findings even though plaintiffs had never argued that Shearman represented Teleglobe and that issue was thus never litigated before the Special Master. The Special Master concluded that Shearman "represented BCE and Teleglobe on issues related to Teleglobe funding" because two memoranda were addressed to Teleglobe and because Shearman attorneys commented on BCE and Teleglobe disclosures. (*Id.* at 41-42.) In reaching that conclusion, the Special Master acknowledged that Shearman attorneys advised BCE exclusively on BCE's litigation risks (and provided a 42-page memorandum on the subject) (SM Dec. at 43 n.46), but nonetheless concluded that this representation was a "joint" representation with Teleglobe.

The Special Master found that Davies Ward jointly represented BCE and Teleglobe with regard to a restructuring, notwithstanding the evidence that Davies Ward kept the representations separate and never "jointly" represented BCE and Teleglobe. The Special Master simply assumed a joint representation as long as Davies Ward represented BCE and Teleglobe on subject matters that he believed were related. (*See* SM Dec. at 35-39.)[2] Although Osler represented BCE on a distinct tax issue related to a plan to monetize certain tax losses of

---

when BCE lawyers were advising such BCE officers and directors in their capacity as BCE officers and directors. (*See* SM Dec. at 12-13.)

[2] The Special Master also paraphrased a Davies Ward affidavit to state that "its joint representation of BCE and Teleglobe ceased as of April 10, 2002." (SM Dec. at 35 n.30.) That affidavit said nothing about a "joint representation" of BCE and Teleglobe. It stated that Davies Ward commenced its representation of Teleglobe on or about April 10, 2002, and ceased its representation of Teleglobe on April 18, 2002, thereafter assisting with a few transition matters for Teleglobe's new counsel, Ogilvy Renault. The affidavit further noted that after April 10, 2002, Davies Ward continued work on other matters for BCE. The Special Master cited an April 5, 2002 Davies Ward memorandum regarding the timing of the filing of the public disclosures of BCE and Teleglobe, which the Special Master characterized as "offer[ing] legal advice to BCE and Teleglobe." (SM Dec. at 35.) Even if Davies Ward, in the course of its long-standing retention by BCE, provided advice to BCE that could be construed as advice to Teleglobe on the timing of its public filings, that would not support a finding of a broader joint representation on other issues as well.

Teleglobe, the Special Master found not only that this was a joint representation of BCE and Teleglobe, but from that joint representation on a tax issue inexplicably jumped to the conclusion that there was "sufficient evidence in the record to conclude that a joint representation existed relating to restructuring issues." (*Id.* at 41 & n.40.)

The Special Master did not find that Stikeman Elliott ("Stikeman") represented BCE and Teleglobe. (*See* SM Dec. at 39-40.) But for Stikeman as for the three other outside law firms, the Special Master concluded as a matter of law that any privileged communication to BCE became subject to a joint privilege with Teleglobe once it was received by a BCE in-house lawyer who jointly represented BCE and Teleglobe on a related matter.

The accompanying declaration of Martine Turcotte, the Chief Legal Officer of BCE, explains why the Special Master erred in finding that BCE in-house attorneys jointly represented BCE and Teleglobe. The accompanying declaration of Mark Shapiro, a former Shearman partner, explains why the Special Master erred when he found that Shearman represented Teleglobe.

**CHOICE OF LAW**

The Special Master decided to "give primacy to Delaware state law" and "consider decisions from other jurisdictions where appropriate." (SM Dec. at 24.) He noted that the parties had identified no conflict among the privilege laws of the states with the most significant relationship to the privileged communications and cited decisions from Delaware and other jurisdictions. (*See id.*) We find no conflict among the potentially applicable privilege laws and will likewise rely on decisions from Delaware and other jurisdictions.[3]

---

[3] In the event of a conflict among privilege laws, Delaware law would not govern. *See Restatement (Second) of Conflict of Laws* § 139 cmt. e (1988 rev.) ("The state which has the most significant relationship with a communication will usually be the state where the communication took place, which, as used in the rule of this Section, is the state . . . where a written statement was *received* . . . .") (emphasis added).

## BURDEN OF PERSUASION

Although the party asserting the privilege bears the burden of demonstrating that it applies, once the party has done so, the burden shifts to the opposing party to demonstrate an exception to, or waiver of, the privilege. *See, e.g.*, *Tackett v. State Farm Fire & Cas. Ins. Co.*, 653 A.2d 254, 259 (Del. 1995); *accord FDIC v. Ogden Corp.*, 202 F.3d 454, 460 (1st Cir. 2000); *McMorgan & Co. v. First California Mortgage Co.,* 931 F. Supp. 699, 701 (N.D. Cal. 1996) ("The party asserting the joint client exception has the burden of establishing its existence"); *Restatement (Third) of the Law Governing Lawyers* § 86(3) (1998) ("[a] person invoking a waiver of or exception to the [attorney-client] privilege must assert it and, if the assertion is contested, demonstrate each element of the waiver or exception").

## STANDARD OF REVIEW

The standard of review on appeal from the Special Master's decision is *de novo* on both findings of fact and conclusions of law. *See* Fed. R. Civ. P. 53(g)(3)-(4).

## SUMMARY OF ARGUMENT

The questions before this Court are (I) whether Teleglobe is entitled to the privileged documents based on an exception to the joint-client privilege, and (II) if so, whether Teleglobe has the authority under that exception to disclose them to the plaintiffs. Because the documents are privileged, the plaintiffs bear the burden of persuasion on both issues. They have not met that burden.

## ARGUMENT

**I.    The Special Master Erred In Ruling that Teleglobe Is Entitled to the Privileged Documents on the Basis of a Joint-Client Privilege**

Based on little or no evidence, the Special Master extrapolated a broad joint representation of BCE and its subsidiary, Teleglobe (not BCE and Teleglobe's subsidiaries, the

plaintiffs), and then, compounding the error, stripped BCE and its Board of the attorney-client privilege with respect to documents on the privilege log having nothing to do with the purported joint representation. He relied on references to "Teleglobe" in documents in extrapolating this broad joint representation, ignoring that those same documents were never intended for Teleglobe, were never provided to Teleglobe, and were distributed only to BCE or its Board. In short, rather than respecting the privilege and construing any exception to it narrowly in order to respect the legitimate expectations of BCE and its Board of Directors, the Special Master did exactly the opposite.

A.     *The Joint-Client Privilege Applies Only to Matters of Common Legal Interest on Which Two or More Clients Are Jointly Represented*

The attorney-client privilege is the "oldest of the privileges for confidential communications known to the common law." *United States v. Doe*, 429 F.3d 450, 452 (3d Cir. 2005) (internal quotation and citations omitted). By "encourag[ing] full and frank communication between attorneys and their clients," the privilege "promote[s] broad[] public interests in the observance of law and administration of justice." *Id.* at 452-53 (internal quotation and citations omitted).

The joint-client privilege exists where two or more persons jointly retain the same attorney to act for them in a matter of common interest. Generally speaking, communications within the joint-client privilege are privileged from disclosure to third persons, but not in subsequent litigation between the two parties. *See FDIC v. Ogden Corp.*, 202 F.3d 454, 461 (1st Cir. 2000) ("when a lawyer represents multiple clients having a common interest, communications between the lawyer and any one (or more) of the clients are privileged as to outsiders but not *inter se*"); Del. R. Evid. 502(d)(6) (2005) (there is no privilege "[a]s to a communication relevant to *a matter of common interest* between or among 2 or more clients if

the communication was made by any of them to a lawyer retained or consulted in common, when

offered in an action between or among any of the clients") (emphasis added); 8 J. Wigmore,

*Evidence* § 2312 (McNaughton Rev. 1961) ("when the same attorney acts for two parties having

a common interest, . . . the communications are clearly privileged from disclosure at the instance

of a third person.").

The joint-client privilege applies only to communications relating to "a matter of

common interest." Del. R. Evid. 502(d)(6) (2005). "[T]he nature of the interest [must] be

identical, not similar, and be legal, not solely commercial." *NL Indus. v. Commercial Union Ins.*

*Co.*, 144 F.R.D. 225, 231 (D.N.J. 1992); *accord Ogden*, 202 F.3d at 461 (joint-client privilege

allows for two clients to discuss their affairs with the same lawyer, protected by the attorney-

client privilege, as long as "they have an identical (or nearly identical) legal interest as opposed

to a merely similar interest").

    *B.*    *The Privileged Documents Do Not Relate to Matters of Common Legal Interest on*
         *Which BCE and Teleglobe Were Jointly Represented*

The Special Master erred in holding that Teleglobe was entitled to the privileged

documents under the joint-client privilege, because the matters to which he referred were not of

common legal interest to BCE and Teleglobe and because those entities were not jointly

represented.

    1.    It is well settled that, even where clients are jointly represented on some matters,

if "the joint clients consult separately with their joint attorney on matters about which they

clearly do not share a common interest, the communication enjoys a separate privilege protection

that may be employed against the other clients in order to preserve the confidentiality." 1 Paul R.

Rice, *Attorney-Client Privilege in the United States* § 4:33 (2d ed. 2005); *see* 24 Charles Alan

Wright & Arthur R. Miller, *Federal Practice & Procedure: Evidence* § 5505 (2005) ("The

question is whether the speaker thought he was speaking on a matter of common interest or whether it was on an issue where his interest diverges from that of his fellow client to the point that he intends secrecy.").

In this case, the plaintiffs did not prove and the Special Master did not even address whether BCE and Teleglobe shared a common legal interest on the many privilege log entries that discuss matters other than funding or restructuring. Among others, those matters included BCE's securities compliance, BCE's financial statements, BCE's corporate governance, and BCE board matters. The Special Master provided no basis for finding the documents on those matters subject to a joint-client privilege and thus no basis for permitting their wholesale disclosure by Teleglobe.

Nor would a joint representation on overarching matters of "restructuring" or "funding" deprive BCE of its right to separate advice with regard to its decision of whether to cease funding for Teleglobe and the consequences for BCE of that decision and of whatever actions Teleglobe took as a result of that decision.[4] BCE had a separate and additional need for legal advice on those matters and the right to consult separately with joint counsel about them. Thus, even if BCE and Teleglobe were jointly represented on certain matters, it does not follow that they were jointly represented on matters for which BCE sought separate advice to protect its own interests. *See Eureka Inv. Corp., N.V. v. Chicago Title Ins. Co.*, 743 F.2d 932, 937 (D.C. Cir.

---

[4] In holding that Teleglobe was entitled to the privileged documents, the Special Master found that they related to a matter of common legal interest on which Teleglobe and BCE were jointly represented – *i.e.*, a matter that the Special Master variously labeled "restructuring" or "funding" of Teleglobe. (*See* SM Dec. at 45 (finding that Teleglobe and BCE were jointly represented on a matter of common interest, *i.e.*, "restructuring of Teleglobe."); *id.* ("I find that the in-house attorneys and outside counsel jointly represented BCE and Teleglobe on its restructuring alternatives"); *id.* at 39 (BCE's attorneys "jointly represented BCE and Teleglobe on restructuring issues"); *id.* at 31 ("the withheld documents demonstrate that there was a joint representation by BCE's attorneys of BCE and Teleglobe relating to a matter of common interest," namely, "the funding issue"); *id.* at 42 (Shearman provided "joint representation to BCE and Teleglobe on issues related to Teleglobe's restructuring").) As set forth in the Declarations of Martine Turcotte and Mark Shapiro, the documents from which the Special Master inferred a joint funding representation do not support that inference.

1984) ("Here, although Fried, Frank was representing Eureka and CTI in a matter of common interest at the time the communications at issue were made, those communications were not made in the course of its representation on that matter; indeed, they were made in the course of representation distinctly not in the interest of CTI. The policy behind Wigmore's first principle – to encourage openness and cooperation between joint clients – does not apply to matters known at the time of communication not to be in the common interest of the attorney's two clients."); *Stratagem Dev. Corp. v. Heron Int'l N.V.*, 153 F.R.D. 535, 543 (S.D.N.Y. 1994) ("Stratagem now argues that, as Pircher Nichols represented a joint venture consisting of both Stratagem and Heron on certain matters, the Pircher Memorandum is not privileged. The Court disagrees. Assuming that a joint venture did exist at one time between Stratagem and Heron, the Court finds that Pircher Nichols did not draft the Pircher Memorandum in connection with the representation of any such joint venture.").[5]

2.      In any event, even if BCE's separate matters were of common interest to Teleglobe, and thus were capable of being subject to a joint privilege with Teleglobe, BCE's in-house and outside counsel did not in fact jointly represent BCE and Teleglobe. As explained above, the Special Master did not address the many privilege log entries that do not even relate to the funding of Teleglobe. *See supra* at 8. Although the Special Master found "a broad legal representation . . . relating to Teleglobe's restructuring alternatives" (SM Dec. at 31-32), the declarations of Martine Turcotte and Mark Shapiro explain that the Special Master's finding

---

[5] *See also American Mut. Liability Ins. Co. v. Superior Court*, 113 Cal. Rptr. 561, 572 (Cal. Ct. App. 1974) (where attorney jointly represents insurer and insured, "in the full discharge of his obligation to his client-insurer, the attorney may communicate to the insurer objective evaluations of his client-insured, which are for the consideration only of the client-insurer in permitting it to discharge its duties to the insured under the insurance contract. Similarly there may be confidences indulged by the insured to the attorney which in turn are not intended for the insurer."); *Pittston Co. v. Allianz Ins. Co.*, 143 F.R.D. 66, 69-71 (D.N.J. 1992) (insurer was not entitled under common-interest doctrine to obtain access to insured's attorney-client communications on issues on which the interests of the insurer and insured diverged); *Carey-Canada, Inc. v. Aetna Cas. & Sur. Co.*, 118 F.R.D. 250, 251 (D.D.C. 1987) (same); *CSX Transp., Inc. v. Lexington Ins. Co.*, 187 F.R.D. 555, 560 (N.D. Ill. 1999) (same).

misconstrued the documents that he reviewed *in camera. See supra* at 3-4. Absent that documentary evidence, the plaintiffs have failed to carry their burden to prove an exception to BCE's privilege and the plaintiffs have no claim to the privileged documents.

> C.    *The Documents from BCE's Outside Attorneys Are Privileged Regardless of Whether They Were Shared with BCE's In-House Attorneys*

Contrary to the Special Master's conclusion (*see* SM Dec. at 39, 40, 41 & 43), documents prepared by BCE's outside counsel for BCE remain privileged even if they were "shared" with BCE in-house attorneys who also represented Teleglobe on the same or a related matter (assuming for purposes of argument that the Special Master's finding of a joint representation is correct). Regardless of her other representations, in-house counsel has a duty to preserve the confidences and secrets of her clients. The receipt by in-house counsel of privileged advice intended for one client thus does not destroy the privileged character of that advice or permit in-house counsel to share it with another client.[6]

The Special Master's legal conclusion is not only incorrect, but it also ignores his earlier observation on the operation of in-house counsel in modern corporations. The Special Master earlier recognized that "[i]t is common in parent-subsidiary corporation relationships that all entities rely upon a central in house counsel to provide legal services." Decision on Plaintiffs' Motion to Compel Defendants to Produce Documents Withheld on the Basis of Privilege 16 (Dec. 1, 2005). Often, the only way a member of the corporate group can obtain separate legal advice is through in-house counsel. Terminating an individual member's privilege and requiring

---

[6] *See Eureka*, 743 F.2d at 937-38 (even if a joint attorney "should not have simultaneously undertaken to represent [one client] in an interest adverse to [the other client] and continued to represent [the former client] in a closely related matter," the "counsel's failure to avoid a conflict of interest should not deprive the client of the privilege. The privilege, being the client's, should not be defeated solely because the attorney's conduct was ethically questionable."). Contrary to the Special Master's conclusion, neither Del. R. Evid. 502(d)(6) (2005) nor *In re Mirant Corp.*, 326 B.R. 646 (Bankr. N.D. Tex. 2005), have any bearing on this question because BCE's outside law firms were not "retained or consulted in common" by BCE and Teleglobe. Del. R. Evid. 502(d)(6) (2005).

it to circumvent in-house counsel to obtain privileged advice would discourage centralized legal
compliance and impair the reporting-up functions that are critical to the effective functioning of
the procedures imposed under the authority of the Sarbanes-Oxley Act.

Because the outside attorneys represented BCE exclusively on the matter of BCE's
continued funding of Teleglobe and BCE's own decisions with respect to Teleglobe, *see supra* at
3-4, Teleglobe is not entitled to the documents generated by the outside attorneys for BCE on
those matters.

**II.    Even If Teleglobe Is Entitled to the Privileged Documents As a Joint Client, It
Cannot Consent to Disclosure to Third Parties Outside the Privilege such as
Plaintiffs Without the Consent of BCE**

The Special Master did not hold that the plaintiffs were entitled to the privileged
documents on the ground that the documents relate to a matter on which the *plaintiffs* and BCE
were jointly represented. Instead, he concluded that the plaintiffs were entitled to the documents
based on Teleglobe's purported consent to disclose them to the plaintiffs. (*See* SM Dec. at 10 n.3
(Teleglobe's Plan Administrator "consent[ed] to the production of communications to and from
BCE attorneys over which Teleglobe might assert attorney-client privilege"); *id.* at 31 (the
plaintiffs "are the beneficiaries of Teleglobe's consent to production of documents" by
Teleglobe's Plan Administrator).)

The Special Master's legal conclusion is erroneous, for two reasons. *First*, under
Canadian law, the Plan Administrator did not have the legal authority to consent on behalf of
Teleglobe to the disclosure of privileged documents. *Second*, even if she had the legal authority
to consent on behalf of Teleglobe, the joint-client exception precludes her from disclosing to
third parties such as plaintiffs any communications that reflect legal advice to BCE without the

consent of BCE.  Those basic and fundamental legal errors standing alone require rejection of the Special Master's decision.

        A.      *The Plan Administrator Did Not Have the Legal Authority to Consent on Behalf of Teleglobe to the Disclosure of Privileged Documents*

Canadian law governs the authority of an administrator to a Canadian bankruptcy plan. *See Restatement (Second) of Conflicts of Laws* § 263 cmt. b. (1988) Under Canadian law, a plan administrator has no authority absent exceptional circumstances, to waive the attorney-client privilege of the bankrupt company or consent to the disclosure of privileged communications. *See Laprairie Shopping Ltd. (Syndic de),* [1998] R.J.Q. 448 (Que.C.A.), attached hereto as Exhibit 1. ("[T]he right to confidentiality did not devolve on the trustee by the effect of possession held during the bankruptcy and . . . it cannot incidentally waive the same without the consent of the bankrupt."); *id.* at 22 ("The Court concludes from this analysis [of decisions in Québec and other provinces] that the trustee (syndic) cannot, except perhaps in very exceptional cases not necessary to attempt to define, waive on behalf of the bankrupt the right to professional secrecy from which he is benefiting.").

Although Teleglobe's Plan Administrator purported to consent on behalf of Teleglobe to the disclosure of privileged documents to the plaintiffs (*see* SM Dec. at 10 n.3), she has no authority to do so. Accordingly, even if BCE's attorneys represented Teleglobe as well as BCE on every matter in the privilege log, Teleglobe has not consented to disclosure of privileged documents to the plaintiffs.

        B.      *The Joint-Client Privilege Prevents One Client from Disclosing Jointly Privileged Communications Without the Consent of Its Co-Client*

Moreover, even if Teleglobe consented to disclosure to the plaintiffs, that still would not be effective.  It is well settled in Delaware and elsewhere that when an attorney represents two or

more clients on a matter of common legal interest, the attorney-client privilege cannot be waived without the consent of all of the parties who share the privilege. That is because when joint clients become adverse to each other, there is still a reasonable expectation of confidentiality of privileged communications as to third parties.

Thus, in *Interfaith Housing Delaware, Inc. v. Town of Georgetown,* 841 F. Supp. 1393, 1402 (D. Del. 1994), the court held that under Delaware law, the waiver of privilege by one member of a town council did not waive privilege of other council members as to their communications with the joint attorney. In so holding, the court explained, "when one of two or more clients with common interests waives the attorney-client privilege in a dispute with a third party, that one individual's waiver does not effect a waiver as to the others' attorney-client privilege." *Id.*

Myriad other cases confirm this rule. *See Madison Management Group, Inc. v. Zell,* 212 B.R. 894, 898 (N.D. Ill. 1997) (although bankruptcy trustee of debtor subsidiary was entitled to certain documents on matter on which the plaintiffs and its former parent were jointly represented, trustee could not disclose the documents to third parties without the consent of the former parent); *Lugosch v. Congel,* 219 F.R.D. 220, 238 (N.D.N.Y. 2003) ("The essential benefit of such joint collaboration . . . is that a member of the common legal enterprise cannot reveal the contents of the shared communications without the consent of all the parties"); *In re Imperial Corp. of America,* 179 F.R.D. 286, 289 (S.D. Cal. 1998) ("under the common interest privilege, waiver of the privilege requires consent of all parties who share the privilege."); *Holland v. Island Creek Corp.,* 885 F. Supp. 4, 7 (D.D.C. 1995) (unilateral disclosure of a document to a third party without the consent of a joint privilege-holder does not waive the privilege for the document); *In re Asia Global Crossing, Ltd.,* 322 B.R. 247, 264 (Bankr. S.D.N.Y. 2005) ("Once

13

established, the [common interest] privilege cannot be waived without the consent of all of the parties that share it."). In fact, this legal principle is basic black-letter, hornbook law. *See Restatement (Third) of the Law Governing Lawyers* § 75, cmt. e (1998) ("One co-client does not have the authority to waive the privilege with respect to another co-client's communications to their common lawyer.").

Accordingly, even if the Plan Administrator could disclose Teleglobe's privileged documents to plaintiffs, she could not unilaterally disclose documents subject to a joint-client privilege with BCE without BCE's consent. Because BCE has not consented to the disclosure of the privileged documents at issue here to the plaintiffs (or any other third parties), the Special Master erred in holding that the plaintiffs are entitled to the documents on the basis of Teleglobe's purported consent.

14

CONCLUSION

For the foregoing reasons, Defendants object to the Special Master's Final Decision on

Plaintiffs' Motion to Compel Defendants to Produce Documents Withheld on the Basis of

Privilege.

Respectfully submitted,

YOUNG CONAWAY
STARGATT & TAYLOR, LLP

*/s/ Pauline K. Morgan*

Pauline K. Morgan (No. 3650)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899
(302) 571-6600
pmorgan@ycst.com

-and-

SHEARMAN & STERLING LLP

Stuart J. Baskin
George J. Wade
Jaculin Aaron
599 Lexington Avenue
New York, NY 10022
(212) 848-4000

Counsel for the Defendants

Dated: March 14, 2006
       Wilmington, DE