# EXHIBIT  1

The LanguageWorks, Inc.
1123 Broadway
New York, NY 10010
Tel. 212 447 6060
Fax 212 447 6257

**Language**

STATE OF NEW YORK    )
                     )    ss
COUNTY OF NEW YORK   )

## CERTIFICATION

This is to certify that the attached, to the best of my knowledge and belief, is a true and accurate translation into English of *Decision by the Appellate Court of the Province of Quebec in the Matter of Laprairie Shopping Center Ltd. et al v. Attorney for Appellee Reevin Pearl*, dated February 12, 1998, originally written in French.

Glenn Cain
Manager of Legal Translation Services
The LanguageWorks, Inc.

Sworn to and subscribed before me
This Fourteenth Day of March 2006

Notary Public

ANNE G. HASKELL
Notary Public, State of New York
Qualified in New York County
Commission Expires Oct. 27, 2009

**APPELLATE COURT**

PROVINCE OF QUEBEC
COURT CLERK OF MONTREAL

No.: 500-09-003048-964
     (505-11-00385-950)


On February 12, 1998

CORAM:    THE HONORABLE    DUSSAULT
                          OTIS
                          ROBERT, Appellate Court
                          Judges

---

**IN THE MATTER OF THE BANKRUPTCY OF
LAPRAIRIE SHOPPING CENTER LTD.,**

      **BANKRUPT**

**And**

**SAMSON BÉLAIR-DELOITTE & TOUCHE, INC.**

      **APPELLANT** – Trustee in Bankruptcy

**v.**

**ATTY. REEVIN PEARL,**

      **APPELLEE**

---

THE COURT – ruling on the appeal of Appellant against an interlocutory judgment of the Superior Court (Longueuil, August 13, 1996, the Honorable Luc Parent), which sustained the objections of the attorney for Appellee to the questions asked by the attorney for Appellant;

**500-09-003048-964**

After studying the records, the hearing and the in-camera sitting;

On the grounds set forth in the written opinion of Judge Robert, a copy whereof is filed together with this ruling, which was also signed by Judges Dussault and Otis,

**ALLOWS** the appeal in part, overturning the decision of the lower court judge to sustain the general objections to the proof, with expenses.

**REMANDS** the case to the Superior Court for continuation, subject to the asking of precise questions that will permit determination of the very existence of a privilege related to these matters.

[signature]
RENÉ DUSSAULT, Appellate
Court Judge

[signature]
LOUISE OTIS, Appellate Court
Judge

[signature]
MICHEL ROBERT, Appellate
Court Judge

**VALIDATION CODE = B8SQGNUJKZ**

500-09-003048-964

Atty. Yoine Goldstein
GOLDSTEIN FLANZ ET FISHMAN
Attorney for Appellant

Atty. Barry Landy
SPIEGEL SOHMER
Attorney for Appellee

Date of Hearing: September 29, 1997

VALIDATION CODE = B8SQGNUJKZ

500-09-003048-964

# APPELLATE COURT

PROVINCE OF QUEBEC
COURT CLERK OF MONTREAL

No.: **500-09-003048-964**
      (505-11-00385-950)

CORAM:    THE HONORABLE   DUSSAULT
                          OTIS
                          ROBERT, Appellate Court
                          Judges

---

**IN THE MATTER OF THE BANKRUPTCY OF
LAPRAIRIE SHOPPING CENTER LTD.,**

          **BANKRUPT**

**And**

**SAMSON BÉLAIR-DELOITTE & TOUCHE, INC.**

          **APPELLANT** – Trustee in Bankruptcy

**v.**

**ATTY. REEVIN PEARL,**

          **APPELLEE**

---

## OPINION OF JUDGE ROBERT

**VALIDATION CODE = B8SQGNUJKZ**

500-09-003048-964

Appellant filed an appeal against an interlocutory judgment of the Superior Court of the District of Longueuil (The Honorable Luc Parent, August 13, 1996) which sustained the objections of the attorney for Appellee to the questions asked by the attorney for Appellant.

This appeal raises the more general question of determining whether, on the one hand, a trustee in bankruptcy can waive the professional secrecy of the bankrupt and what is the scope of such secrecy in such a matter.

The bankrupt company, Laprairie Shopping Centre, Ltd., as well as two other companies, also bankrupt, were the owners of the Place Portobello commercial center in Longueuil.

Prior to the bankruptcy, the bankrupt was represented by an attorney, Appellee Pearl. Appellant Samson Bélair, in turn, was appointed as trustee in bankruptcy.

By the resolution of the sole inspector appointed, the trustee in bankruptcy was authorized, under the terms of Article 163 of the <u>Bankruptcy and Insolvency Act</u>[1], to proceed with questioning Appellee under oath. This

---

[1] L.R.C. (1985), Ch. B-3.

VALIDATION CODE = B8SQGNUJKZ

500-09-003048-964

examination was held on July 16, 1996. After some preliminary questions, the attorney for the trustee in bankruptcy asked the witness whether he had met with a representative of the bankrupt companies, i.e., Aaron Green, on December 27, 1994.

The attorney for Appellee objected to the question, invoking attorney-client privilege. When advised, without rising, that the trustee in bankruptcy had waived invoking any privilege in relation to said examination[2], the attorney stated that he did not believe that the trustee in bankruptcy had the authority to waive any privilege related to his clients.

The attorney for the trustee in bankruptcy then asked the attorney for Appellee if he intended to object to all the questions, which caused the latter to enquire about the nature of the questions he intended to ask. He was then advised that the questions involved:

1) The financial arrangements made among the three debtor companies and Atty. Pearl and/or his law office, Pearl & Associates, among others as concerns the amounts paid to said law offices by said companies.

---

[2] Note that a more formal waiver on the part of the trustee in bankruptcy, dated July 23, 1996, is also in the records.

VALIDATION CODE = B8SQGNUJKZ

2)   The nature of the services offered by Pearl & Associates as concerns certain cases, primarily those involving Gentra Canada Investment Inc. (hereinafter Gentra), the principal creditor petitioning for bankruptcy.

3)   About the value of the services, the financial provisions and other results deriving from these services for the debtor companies.

The attorney for Appellee first stated that his client intended to assert the attorney-client privilege as concerns points 1) and 3). After certain hesitations, he then added that he would also object to the second category of questions. Finally, he also refused to provide the attorney for the trustee in bankruptcy with a list of services rendered, including the date thereof and a brief description of their nature.

The examination was suspended then and the dispute was submitted to the judge of the Superior Court of Longueuil.

Moreover, we must emphasize that, several months prior to the holding of the examination, i.e., on March 13, 1996, Gentra filed an action against Atty. Pearl entitled "Motion

500-09-003048-964

seeking personal condemnation against M<sup>e</sup> Pearl & Ass. for the court costs and ancillary conclusions." This action alleged, in particular, that Appellee had undertaken abusive procedural maneuvers which led him to state that the examination he had to undergo fell within the framework of judicial guerrilla warfare against him.

This being the case, this question probably was not the subject of the hearings in the lower court and the proof in the records is insufficient to allow for drawing any conclusion related to a possible pernicious intention on the part of Appellant. For this reason, I do not intend to deal with this matter further in these motives.

**Lower Court Judgment**

In a laconic judgment, the judge sustained the objections formulated, subject to the asking of more precise questions. He mentioned, however, that some of these questions could involve acceptable information, particularly the amount paid to Atty. Pearl.

**VALIDATION CODE = B8SQGNUJKZ**

500-09-003048-964

The Question in Dispute

In their notice, the parties raised only one
single question, i.e., whether it was possible, in the
stead of the bankrupt, for the trustee in bankruptcy to
waive the attorney-client privilege from which it benefited
without the consent of the latter.

This being said, as we will see in the analysis
of principles and case law, one cannot rule on the question
of the waiver without considering whether the information
sought is a privileged communication covered by the
professional secrecy of the attorney. In effect, to the
extent the communications were not privileged, any
conclusion this Court could reach regarding the waiver
would be of only little utility in solving the present
dispute. The question, as presented by the parties,
therefore seems to me to wrongfully usurp a fundamental
part of the debate. For this reason, I also intend, in the
present motives, to deal with the scope of the attorney-
client privilege concerning the information that is the
subject of the questions asked by the attorney for the
trustee in bankruptcy.

**VALIDATION CODE = B8SQGNUJKZ**

500-09-003048-964

The Parties' Claims

A)    Appellant's Position

Appellant relies on the case law of other provinces[3] and the United Kingdom[4] and maintains that privilege cannot be invoked when the trustee, which substitutes for the bankrupt, expressly waives it and that the proof desired concerns financial, asset or monetary questions as well as questions linked to the possibility of the trustee's recovering certain sums and assets from the bankrupt.

It claims that the attorney-client privilege should be maintained, despite any waiver by the trustee, only when the communications cited concern legal advice the bankrupt intended to obtain or obtained with regard to possible criminal prosecution or other similar matters.

---

[3]    Re Dilawri, [1984] 53 C.B.R. (N.W.) 251 (C.A.O.);
       Re Amonson, [1985] 57 C.B.R. (N.S.) 314 (C.B.R.A.);
       Re Cirone, [1965] 8 C.B.R. (N.S.) (Ont. Div. Gen.).

[4]    In Re Konigsberg, [1989] 3 AllE. R. 289.

VALIDATION CODE = B8SQGNUJKZ

B)    Appellee's Position

Appellee affirmed initially that the trustee did not have the authority to waive the professional secrecy the bankrupt enjoyed because it only received the goods and did not continue the legal personhood of the bankrupt. The role of trustee in bankruptcy would involve only the goods of the bankrupt of which it would be the assignee[5] and not the rights related to its person, such as extra-patrimonial rights.

Now, the right to professional secrecy would be an extra-patrimonial right and therefore non-transmissible[6]. It follows that only the holder of the right could waive the same and that the trustee would therefore not have the authority to do so without the consent of the bankrupt[7].

---

[5] J.M. Deschamps, Le syndic: un successeur du débiteur? Un Cessionnaire? Un représentant des créanciers? [Trustees: A Successor to the Debtor? An Assignee? A Representative of the Creditors?] in Meredith Memorial Lectures, 1985, Ed. Richard DeBoo, pp. 245, 265; In re Civano Construction Inc., v. Crédit M.-G. Inc., [1962], C.S. 45.

[6] Descôteaux et al v. Mierzwinski, [1982] 1 R.C.S. 860, 871; Frenette v. Métropolitaine (La), Cie. d'assurance-vie (1990) R.J.Q. 62 (C.A.) j. Baudoin inf. to [1992] 1 R.C.S. 647, although the Supreme Court did not analyze this question.

[7] Stikeman, Elliot v. 164461 Canada Inc., J.E. 97-297 (C.S.).

VALIDATION CODE = B8SQGNUJKZ

500-09-003048-964
- 9 -

Finally, Appellee maintains that it is wrong to claim that Canadian case law is unanimous about the fact that the trustee has the authority to waive the professional secrecy to which the bankrupt would have a right. In fact, since the above-cited Re Dilawri ruling, it seems that the case law of the common law provinces[8] provides that the trustee cannot waive the bankrupt's right to secrecy, although it may be possible for it to summon its attorney and ask him/her questions on subjects that were not covered by professional secrecy. This position would be all the more justified in Quebec, since not only is the right to professional secrecy considered as being extra-patrimonial in nature, but it is also consecrated in Article 9 of the Quebec Charter and by the Supreme Court[9].

Any other conclusion would cause the failure, according to Appellee, of the purpose of the confidentiality privilege, that is, to protect the confidentiality of the relations between the professional and his/her client.

---

[8] See, in particular, Wolch's Guaranteed Foods v. Wolch [1994] 24 C.B.R. (3d) 268 (C.B.R.A.).

[9] Descoteaux et al v. Mierzwinski, cited above, Note 6.

VALIDATION CODE = B8SQGNUJKZ

Analysis

As I mentioned, I will initially discuss the question of the waiver as formulated by the parties, which, as we will see, will lead us in a second analysis to question the privileged nature of the information cited.

A)    The Trustee's Right to Waive the Bankrupt's Attorney-Client Privilege

I agree with Appellee's position in this regard and would propose rejecting this ground for appeal for the following reasons.

1)    The Nature of the Function of the Trustee in Bankruptcy

Generally, the trustee is granted a hybrid status since it is, simultaneously, the assignee of the rights of the debtor and the representative of the creditors[10]. This being the case, as Professor Bohémier mentioned in his work[11],

---

[10] Mercure v. Marquette [1977] 1 R.C.S. 547.

[11] Albert BOHÉMIER, Faillite et Insolvabilité [Bankruptcy and Insolvency], Vol. 1, Les Éditions Thémis, 1992, on pp. 714 and following.

VALIDATION CODE = B8SQGNUJKZ

500-09-003048-964

it is not easy to exhaustively define the function of the trustee, given the difficulty in transposing the concepts of common law[12] into a civil law context, and it is therefore inappropriate to assign it a single qualification. Moreover, he mentioned the following on p. 715:

> In Canadian law, it is difficult not to acknowledge that the trustee, by the effect of dispossession, becomes … the owner of all the tangible and intangible goods of the debtor. In this sense, it is said that the trustee acquires the possession of the debtor's goods. Moreover, the trustee also acquires the intangible rights, notably the debts owed to the bankrupt. In this regard, the trustee appears as the assignee of the rights of the debtor. But since this ownership right is not established in the interests of the trustee which holds the same, some have thought it necessary to specify that the trustee was an assignee but in a fiduciary position.

Despite its numerous attributes and qualities, it seems that no authority in either case law or jurisprudence has dared claim that the trustee continues the personhood of the bankrupt for questions other than those linked to its goods or rights of a pecuniary nature, whether tangible or intangible. The authors Bohémier, Massüe-Monat and Deslauriers[13] offer an excellent summary, moreover, of the

---

[12] Canadian law in effect defines the trustee in bankruptcy as a trustee that holds a temporary, limited ownership right to the goods of the bankrupt.

[13] Albert BOHÉMIER, Jacques DESLAURIERS and Henri MASSÜE-MONAT, La faillite et l'insolvabilité [Bankruptcy and Insolvency], in C.F.P.B.Q., Vol. 9, Les Éditions Yvon Blais, Cowansville, 1996, on p. 176.

VALIDATION CODE = B8SQGNUJKZ

500-09-003048-964

principles surrounding the role devolving on the trustee:

> Its role is limited to the assets cited by the bankruptcy
> and in no way concerns the person of the bankrupt: this is
> why one cannot say that the trustee is the successor to the
> bankrupt.
>
> ＊＊＊＊＊＊＊
>
> Judge Bernier describes the trustee in bankruptcy as the
> assignee of the bankrupt, a position that comes to it
> directly and by the sole effect of the law, without other
> formality. He adds, in another decision, that the trustee
> is in the position of a third-party purchaser with regard
> to bankrupt's goods. A little later, Judge Bernier,
> speaking on behalf of the Appellate Court, adds the concept
> of fiduciary to describe the function of the trustee. The
> concept of a trustee can be summarized as follows: a
> fiduciary assignee in possession of the bankrupt's goods,
> which goods it must liquidate for the greatest benefit of
> the creditors.

This means that the only rights transferred to
the trustee are those related to the property of the
bankrupt and not those related to its personhood, such as
extra-patrimonial rights, including the right to
professional secrecy.

VALIDATION CODE = B8SQGNUJKZ

2)    The Personal and Extra-Patrimonial Nature of the Right
      to Professional Secrecy


         Whether by reason of the principles of common law[14] or the rules of our civil law[15], it is established that the right to professional secrecy is a personal, extra-patrimonial right[16]. In _Descôteaux et al_. v. _Mierzwinski_, Judge Lamer expressed it as follows:

> It is indisputable that a right to communicate in complete confidentiality with a legal advisor relates to the person; this right is "based on the exceptional relationship between the attorney and his/her client" (Solosky, cited above). It is a personal, extra-patrimonial right that accompanies the citizen in his/her relations with others.[17]

---

[14] Descôteaux et al. v. Mierzwinksi, cited above, Note 6, on p. 871.

[15] Frenette v. Métropolitaine (La), Cie. d'assurance-vie (1992), 1 R.C.S. 647, 671 (1990), R.J. Q. 62, 67 (C.A.); Impériale (L'), Cie. d'assurance-vie v. Roy (Succession de), (1990) R.J.Q. 2468, 2474 (C.A.).

[16] Jean-Claude ROYER, La preuve civil [Civil Proof], 2nd ed., Les Éditions Yvon Blais, 1995, Nos. 1239 – 1240 on pp. 778, 779; N. Vallières, Le secret professional inscrit dans la Charte des droits et libertés de la personne du Québec [Professional Secrecy in the Quebec Charter of Human Rights and Freedoms], [1985] 26 C. de D. 1019.

[17] P. 871.

**VALIDATION CODE = B8SQGNUJKZ**

Our Appellate Court agreed in its ruling <u>Frenette</u> v. <u>Métropolitaine (La), Cie. d'assurance-vie</u>[18], while Judge Baudouin indicated the following:

> It seems to me that since professional secrecy is a right related to the person, it is not patrimonial in nature and therefore is not transmitted to the heirs and legatees.

The <u>Frenette</u> ruling was overturned by the Supreme Court in a ruling related to [1992] 1 R.C.S. 647. However, the debate in the Supreme Court was resolved by examination of the clear terms of the insurance contract and as a function of the facts that the holder of the right had waived the confidentiality of his medical records for the future. I do not think that the ruling invalidates the personal nature of the right to professional secrecy.

Now, the description of a right as being of an extra-patrimonial nature has the effect, in particular, of making the latter non-transmissible, except in rare cases. This is what Judge Baudouin[19] affirms in his work on the matter of extra-patrimonial rights:

---

[18] Note 15 cited above, on p. 67.

[19] Jean-Louis BAUDOUIN, Les obligations [Obligations], 4th ed., Les Éditions Yvon Blais Inc., 1993, No. 19, on pp. 13 – 14.

**VALIDATION CODE = B8SQGNUJKZ**

500-09-003048-964
                                                                - 15 -

19 - Extra-Patrimonial Rights - Extra-patrimonial rights
constitute the whole of the rights held by a natural person
that cannot be valued in money and that are conferred upon
him/her by law, due to the place s/he holds in society.

Extra-patrimonial rights are limited in number. A large
number of them are listed by the Charte des droits et
libertés de la personne [Charter of Human Rights and
Freedoms] (…) in the first few articles of the Civil Code
(…), and in the new Canadian Charter (…). These constitute
what is now called the rights of the person, their object
being the legal subject who possesses them (…). Only a
natural person, in contrast to a legal person, can possess,
enjoy, hold and exercise extra-patrimonial rights. Since
they are related to only natural persons, they cannot be
transmitted and in principle, disappear with them and are
indefeasible. Extra-patrimonial rights cannot be valued in
pecuniary terms and are therefore not within the economic
circuit (…) (T)hey therefore cannot be sold, transferred or
acquired free of charge or for a consideration. They are
outside commerce. Their assignment is, moreover, contrary
to public order and therefore prohibited by law, since it
is exclusively the law that has created them and that
determines the holder thereof. Finally, they cannot be
seized since they have no material attachment and do not
constitute economic goods.

Given this extra-patrimonial nature entailing the
non-transmissibility of the right to professional secrecy,
and due to the fact that the trustee does not continue the
personhood of the bankrupt in its entirety, we should, in
all logic, conclude that the right to confidentiality did
not devolve on the trustee by the effect of possession held
during the bankruptcy and that it cannot incidentally waive
the same without the consent of the bankrupt.

VALIDATION CODE = B8SQGNUJKZ

Appellant claims, however, that Canadian case law supports the opposite position and permits the trustee to waive the privilege when it is a question of financial or pecuniary matters, although it would be impossible when the communication concerned the advice sought by the bankrupt in view of possible criminal or other prosecution.

I took note of the decisions to which Appellant referred and I do not, in any way, see an expression of the principle it invites us to see therein.

3)    The State of Case Law on the Question

- The Case Law of Other Provinces

Appellant's argument is based largely on the decision handed down by the Supreme Court of Ontario in the Re Cirone[20] matter. The trustee there initiated proceedings to recover sums from the bankrupts' attorney on the grounds that the fees paid to him constituted a fraudulent preference. The attorney in question was then summoned to a preliminary examination for this purpose, where he was

---

[20] Note 3, cited above; in the same sense, Re Abacus cities Ltd., [1981] 40 B.C.R. 172 (C.B.R.A.).

VALIDATION CODE = B8SQGNUJKZ

questioned in particular about the nature of the services rendered. He was also asked to produce his files for purposes of inspection. The attorney then refused to answer these questions, invoking attorney-client privilege. Judge McDermott stated the following:

> The trustee is entitled to step into the shoes of the bankrupts and waive the privilege, when he has the right under the provisions of the Bankruptcy Act to have the full co-operation of the bankrupts in obtaining all possible information as to any dealings with the property of the bankrupts, within a reasonable time prior to bankruptcy.[21]

Although this affirmation is general in nature, subsequent case law on the question substantially limited the scope to be granted to this decision, about which it has been said that it constitutes only an individual case. In effect, in the ruling De Dilawri, cited above, by the Appellate Court of Ontario, the lawyer in question had acted as attorney for the bankrupt and his companies for several years. Among other things, he had been involved in the negotiations between the bankrupt and the petitioning creditors concerning the consolidation of the bankrupt's debts. A few months before a judgment declaring the bankruptcy was handed down, the trustee summoned the attorney to an examination by reason of what is now Article 163 of the Bankruptcy Act. The trustee informed the Appellant that it waived any attorney-client privilege in

---

[21] p. 243.

VALIDATION CODE = B8SQGNUJKZ

relation to the Dilawri matter, although the bankrupt himself had not waived this privilege.

Affirming that the Re Cirone ruling constituted an individual case, Judge Lacourcière expressed his disagreement with the proposition as follows; he wanted the trustee to be able to waive the privilege without the consent of the bankrupt:

> We respectfully disagree, however, with the proposition accepted by the learned motions court judge that a trustee in bankruptcy possesses the legal right to waive the privilege with respect to legal advice given to the bankrupt respecting his former property.[22]

However, he indicated that the attorney should nonetheless disclose the information related to the affairs and transactions of the bankrupt and information permitting his assets to be traced when these communications did not fall within the context of a request for a legal opinion or advice such that this information is not even covered by the confidentiality privilege according to the principles stated by the Supreme Court in the R. v. Solosky decision[23]:

---

[22] P. 254.

[23] [1980] 1 R.C.S. 821

VALIDATION CODE = B8SQGNUJKZ

> In our view, the appellant can be compelled to disclose all information regarding the bankrupt's affairs, transactions, and the whereabouts of his property, etc., which do not require the disclosure of communications made to the appellant for purposes of giving legal advice. These communications with respect to property are not privileged[24].

Judge Lacourcière then indicated that the questions asked in the particular case did not fall under matters covered by privilege and that the attorney should respond without the client or trustee having waived any privilege. In a brief obiter dictum, he added that there could be special circumstances under which the trustee could waive the privilege, but that such was not the case in this particular instance, since the mere protection of the creditors would not justify that being done.

The Queen's Bench Court of Alberta handed down a decision in the same sense in Re Amonson, cited above, although the Court affirmed, in an obiter dictum, that the trustee could waive privilege if no other means would permit determination of the bankrupt's goods. The Court ruled that:

> He (le syndic) is compellable to answer questions which deal with the affairs of Mr. Amonson. There are matters which deal with the preparation of documents and dispersing of funds, with respect to which there is no solicitor – client privilege. There are other areas of communication between solicitor and client where there clearly is a privilege in the client. (…) (Q)uestions should not be

---

[24] p. 255.

**VALIDATION CODE = B8SQGNUJKZ**

asked which are concerned with the giving of legal advice
by Mr. Milne and which attempt to elicit the nature of the
legal advice given.

In Wolch's Guaranteed Foods v. Wolch cited above,
the trustee examined the attorneys who advised an
enterprise which declared a dividend shortly before the
bankruptcy, and which the trustee believed had been paid in
violation of Article 40 of the Stock Corporations Act. This
same court affirmed that the propositions concerning the
waiver stated in the Re Dilawri and Re Amonson cases were
only obiter dicta and that, in light of the ruling of the
Appellate Court of Ontario, there was no authority
permitting maintenance of the fact that the trustee could
waive the bankrupt's privilege. The Court added that even
if that could be possible under certain circumstances, the
facts of this case did not lend themselves to it.

- Quebec Case Law

Our Court has not, to date, had the opportunity
to rule directly on the question. However, it was dealt
with in one case, Stikeman, Elliot v. 164461 Canada Inc.,
cited above, when, during an examination by reason of
Article 163

---

[25] Pages 316, 317.

VALIDATION CODE = B8SQGNUJKZ

L.F.I., an attorney had refused to answer questions from the trustee about what had happened to sums deposited in his trust account, by invoking professional secrecy. Judge Guibault of the Superior Court opined that **"a fundamental distinction must be made between the patrimonial goods, which, by the very nature of the L.F.I., devolve upon the trustee, and the extra-patrimonial rights that are, except in very rare cases, proper to the bankrupt debtor."** He added that professional secrecy, according to the statements of Judge Lamer in <u>Descôteaux et al.</u> v. <u>Mierzwinski</u>, cited above, falls into the second category and that it therefore had not devolved upon the trustee who cannot, except in the extraordinary circumstances referred to by the Appellate Court of Ontario, waive the same in the stead of the bankrupt. He concluded by stating that this was not one of the exceptional cases that would permit the trustee to waive the right, expressing the opinion that only fraud would justify doing so.

A voluminous decision in the same sense was also handed down in <u>Colisée du livre Inc. (syndic)</u> v. <u>Lévesque</u>[26] where it was decided that the **"withdrawal"** of professional secrecy by the trustee had no effect since it involved an extra-patrimonial right.

---

[26] C.S. Montréal 500-11-002697-957, February 18, 1997.

**VALIDATION CODE = B8SQGNUJKZ**

4) Conclusion on waiver

        The Court concludes from this analysis that the trustee (syndic) cannot, except perhaps in very exceptional cases not necessary to attempt to define, waive on behalf of the bankrupt the right to professional secrecy from which he is benefiting. He is, however, permitted to summon the bankrupt's attorney in order to interrogate him concerning subjects that are not covered by professional secrecy, that is, when it is a matter of questions of facts or information relative to business, transactions or assets of the bankrupt, <u>when those communications are not embedded in the research of an opinion or legal counsel</u>[27]. That leads me, therefore, to consideration of the question of the extent of client attorney privilege.


B)    The privileged character of affected communication

        Concerning the very existence of a privilege bearing on communication affected by questions from the receiver's attorney, it is important not to lose sight of two fundamental principles relative to the professional secrecy of the attorney. On the one hand, although professional secrecy is broadly interpreted, the protection offered both by common

_____


law and the Charter is not limitless. As we have seen in the light of the judgments we studied above, it must

_____

[27] <u>Re Dilawri</u>, aforementioned note 3; see also <u>Re Lauzier</u> (1966) 43 C.B.R. (3d) 207 (Ont. Div. Gen.).

VALIDATION CODE = B8SQGNUJKZ

particularly concern a communication that is related to a legal opinion or decision.

On the other hand, a privilege can scarcely be recognized without truly knowing the precise nature of the information sought and can in general be invoked only for each document or communication taken individually. It is, therefore, possible that the formulation of the categories of questions such as defined in this litigation may be a problem as I shall explain later on. In the judgment R. v. Solosky[28], Judge Dickson stated these precepts as follows:

> The privilege may only be invoked for each document taken individually and each one must meet the criteria for the privilege; (i) a communication between an attorney and his client; (ii) that comprises a legal opinion or decision; and (iii) that parties consider to be of a confidential nature.

Therefore, I shall deal successively with the extent of privilege and then with the difficulties of application of the principles in the case in point given the generality of the questions posed.

---

[28] (1980) 1 R.C.S. 821, 837.

VALIDATION CODE = B8SQGNUJKZ

500-09-003048-964                                               - 24 -

1)    The extent of the privilege and the exigency of a
      communication being embedded in the context of a legal
      opinion or judgment.


- the pertinent general principles

        In the aforementioned judgment <u>Descôteaux and
others</u> v. <u>Mierzwinski</u>, Judge Lamer, citing <u>Wigmore</u>[29],
recalled the rule stated above as to conditions relative to
the existence of the right to confidentiality:

> The following statement by Wigmore ([8]Wigmore, Evidence,
> Para. 2292 (McNaughton Rev. 1961) of the rule for proof in
> my opinion sums up very well the basic conditions for the
> existence of the right to attorney client confidentiality:
>
> (translation) Communications made by the client who
> consults legal counsel officially, wished by the client to
> be confidential and which aim to obtain a legal opinion
> become at his insistence permanent protection against any
> disclosure by client or legal counselor subject to the
> waiver of that protection.

---

[29] Note 6, page 747.

**VALIDATION CODE = B8SQGNUJKZ**

Professor Royer also emphasized in his work[30] that the protection offered by professional secrecy of the attorney is not limitless once there is an attorney client relationship:

> The professional secrecy of the attorney is not limitless. It cannot be extended beyond what is necessary for attaining its end which is to permit the citizen to rely on a specialist to prove his innocence or to establish a right[31]. (...) The procedures and actions of an attorney are not protected by legal immunity[32]. (...) He can be forced to produce fee accounts that do not describe n detail the nature of the services rendered[33].

It is therefore on these general principles that the case law studied above from the angle of waiver is based, mainly on the judgment Re Dilawri of the Appeals Court of Ontario and which states that the attorney assigned to an interrogation in accordance with L.F.I. Article 163 must respond to questions and submit documents concerning the business, goods and

_____

[30] Note 16, page 747.

[31] J. Sopinka, S.N. Lederman and A.W. Bryant, The Law of Evidence in Canada, Toronto, Butterworths, 1992, page 641.

[32] Pearl v. Bisseger, (1985) C.A. 695; L. Ducharme, l'administration de la preuve (The Administration of Proof), Montréal, Wilson & Lafleur, 1986, No. 204.

[33] Kruger Inc. v. Kruco Inc. (1988) R.J.Q. 2323 (C.A.).

**VALIDATION CODE = B8SQGNUJKZ**

assets of the bankrupt that do not relate to the legal decision or opinion. That being so, we have to ask ourselves what exactly is information linked to the work of the attorney that does not aim at a legal opinion. I shall first examine general case law on the question in order to then analyze cases for application of the rule during interrogations of attorneys in accordance with the L.F.I. If that analysis does not constitute a complete explanation of the applicable principles, it will at least permit us to better position the litigation and to guide the parties in the course of their interrogation.

- general case law on the question

As indicated in the aforementioned extract, our Appeals Court has had the opportunity to pronounce on at least two occasions on the privileged character of the actions of an attorney in the execution of his mandate, notably concerning the amounts that were paid to him and the nature of the services he provided.

In the aforementioned judgment Pearl v. Bissegger, the appeal hinged on objections made by

the appellant, an attorney who is incidentally the appellee in this case, relative to certain questions of the appellee's attorney during the interrogation in accordance with Article 404 C.p.C. and which the original judge had rejected. We may remember that in this affair the bank wanted to have the property of a gold mine sold after the company defaulted in its obligations stemming from a loan agreement. The appellant Pearl had sent a formal notice to the bankrupt Bissegger who acted as administrator of the assets, ordering him, under pain of legal action to cease all procedures for selling partially or wholly the goods in question. In the interrogation, the following particular questions were put to him:

> b.    Do I take it then that you did not, before writing your letter R06, that you did not make a search of the Registry Office of the district of Abitibi, I should say of the Registration Division of Abitibi?
>
> c.    Did you then, since Friday, March 2nd, 1984 at 3:00 p.m., forward to all third parties what you describe as the enclosed report letter?
>
> d.    Leaving aside the names of witnesses or possible witnesses for the moment, what steps did you take? (To verify the truthfulness of the allegations of fact made from page 2 onward, on exhibit R7?)[34]

---

[34] P. 697.

**VALIDATION CODE = B8SQGNUJKZ**

Judge Dubé began his analysis of applicable law by indicating that, although it may be **"essential that confidential relationships between an attorney and his client be protected by the law; on the other hand, it is in the interest of justice that the cloak of secrecy not serve unduly to impede the normal process of legal procedures."**

After a review of the general principles applicable in the matter, he stated that, in what concerns the aforementioned questions, their aim concerned the actions of the attorney and that **"those actions have nothing to do with professional secrecy between attorney and client;..."** and that the original judge was right in permitting said questions.

In the aforementioned judgment of <u>Kruger Inc.</u> v. <u>Kruco Inc.</u>, the judge of first instance, at the hearing of a plea in accordance with Article 234 of the <u>Law on Canadian Commercial Companies</u> in which the appellant was accused of having paid professional attorney fees for work performed for the benefit of majority shareholders of the company, had rejected the objections of Kruger Inc. which invoked professional secrecy to avoid answering the questions of the bankrupt.

**VALIDATION CODE = B8SQGNUJKZ**

A first group of questions had bearing on the professional services that would have probably been rendered by the Clarkson, Parsons & Tétrault Company to the profit of a Venezuelan firm in which the implicated Kruger held important interests. A second category of questions, among others, concerned the engagement of the Pateras and Iezzoni and Phillips and Vineberg law offices for the purposes of an investigation launched by the Revenue Department of Canada following allegations of tax fraud, together with payments of fees to Maître Pateras. I feel it is useful to reproduce some of the questions posed:

> - Do you know who decided to retain Pateras and Iezzoni on behalf of Kruger Inc.?
>
> - Who at Kruger Inc. instructed Pateras & Iezzoni during the course of this mandate?
>
> - To whom at Kruger Inc. did Pateras & Iezzoni report?
>
> - Now, Mr. Bunze, we were talking about a number of statements of account addressed by Pateras & Iezzoni to Kruger Inc.; and the first was a statement of account of July fourth (4th), nineteen eighty-three (1983). Do you have a copy of that statement of account with you?
>
> - First of all, Mr. Bunze, is that statement the statement of account dated July fourth (4th), nineteen eighty-three (1983), from Pateras and Iezzoni to Kruger Inc. in the amount of fifteen thousand dollars ($15,000)?
>
> - Did that statement of account relate to services rendered in connection with the tax investigation?
>
> - Well, do you know who at Kruger Inc. decided to retain Phillips and Vineberg? (pages 2324, 2325).

**VALIDATION CODE = B8SQGNUJKZ**

Judge Dubé first affirmed that the recourse to professional secrecy by a party does not automatically imply that all the elements of the attorney client relationship have to be covered by the privilege:

> The invoking of professional secrecy by one party does not mean that all the elements of the relationship between attorney and client must be subject thereto under all circumstances. This file is an example of that necessary prudence. Even before looking to see if exceptions to the rule of professional secrecy apply, whether the sphere of professional secrecy has been entered into here must be examined. For this study, we must retain the function, characteristic of professional secrecy which aims to preserve the freedom and effectiveness of the relationship between the client and his attorney, permitting the latter full knowledge of the entire file and adequate performance of his mandate. Its essential objective is, on the one hand, to preserve the freedom and quality of the information transmitted by the client to the attorney and, on the other hand, to assure the freedom and objectivity of the counsel the attorney will give and the acts of representation he will submit.

(my underlining)

He continues immediately as follows:

> In certain cases, information on the very nature of the services rendered might lead to a violation of professional secrecy. This could be the case, for example, when an account is produced relating in detail the nature and date of the services rendered. This was apparently the case in the affair Ainsworth v. Wilding invoked in certain agreements supporting the claim that fee accounts of attorneys are in principle privileged.

(my underlining)

VALIDATION CODE = B8SQGNUJKZ

500-09-003048-964

Applying these principles to the facts in this case, he concluded as follows in dealing with the questions formulated:

> These questions have the apparent purpose of verifying whether the Kruger Inc. company had improperly paid professional fees for services actually rendered to majority shareholders or to companies in which they have interests or that they control. Also, the professional fee accounts for which submission is requested are drawn up in the most summary manner. They consist simply of the mention of a request for payment for professional services rendered and the amount claimed. The only information they contain is a single accounting entry in the books of the company. They do not give any details of the type of services rendered. They are not likely to commit the Court to an examination of the counsel given and the professional work carried out by the attorneys in question.
>
> In this context, the questions posed do not examine the confidential nature of the professional relationship between Kruger Inc. and the attorneys mentioned... Neither the questions nor the documents in the file allow determination of the exact nature of the services rendered or that of the counsel or advice given.
>
> ********
>
> Thus nothing in the context of this file affects professional secrecy. It is a matter of identification of the attorneys, verification of the amounts paid and determination of the identity of the client represented without that constituting in this case an element of professional secrecy.

**VALIDATION CODE = B8SQGNUJKZ**

In Family Law - 2439[35], the plaintiff in a divorce case, during an interrogation had, among other things, requested that the defendant, a lawyer, produce detailed account statements of his clients and the time sheets relative to billable hours together with the costs and expenses incurred in all of his files in order to permit the court to set the maintenance allowance. Judge Lemelin held the objections up to proof in this regard by indicating that the nature of the services rendered could be disclosed if one had to acquiesce to such a request and that "if the documents contain confidential information describing or permitting identification of the nature of a service to clients, they should be excluded."

- some cases of application of the rule in interrogations held in accordance with Article 163 of the L.F.I.


In the previously mentioned decision <u>Stikeman, Elliot</u> v. <u>164461 Canada Inc.</u>, it was decided that the transactions carried out in the

―――――――――――

[35] C.S. Montréal 500-12-228118-968, on May 1, 1996.

**VALIDATION CODE = B8SQGNUJKZ**

trusteeship account of an attorney are covered by professional secrecy since "revealing the manner in which the funds in trusteeship are disposed of implies that instructions received from the client as well as legal advice that may be given him will be frequently and unequivocally revealed. (...) (that) will indicate and confirm the legal structure that was set up for the account of his client."

A decision to the contrary was rendered in the aforementioned case Re Lauzier in which Judge Bell, indicating that one must distinguish between facts which are not privileged and confidential communications, meaning that the decision was that the bookkeeping of the account in the attorney's trusteeship was not privileged.

Finally, in the previously mentioned judgment Wolch's Guaranteed Food's v. Wolch, in which the judge reviewed the documents of the attorney from whom the production was requested, it was ruled that the notes written from the law office consulted by the bankrupt, certain ones of which made reference to a meeting that took place between the bankrupt, his accountant and his attorney, were privileged communications. The same conclusion was drawn by the judge in dealing with account statements from the law office.

VALIDATION CODE = B8SQGNUJKZ

500-09-003048-964

2) Application of the principles to the facts in this case,
the burden of proof and the imprecise character of the
questions posed.

As I mentioned, in view of their generality, the
categories of questions such as those described above lend
themselves poorly to the recognition of a privilege.
Account taken of the impreciseness of the questions, the
original judge upheld the objections invoking professional
secrecy. With all due respect, that manner of thinking does
not seem to me to be appropriate.

It is up to the party invoking the privilege to
show that the information affected falls within the area
covered by professional secrecy. As we have seen, a
communication is not privileged once there exists a
professional relationship between an attorney and his
client. He who invokes it must at least present prima facie
proof demonstrating that the communications meet the
criteria established by case law and, consequently, but
uniquely at that moment, he belongs to the party that holds
that an exception to the privilege is applied or that the
beneficiary waives it, submitting proof of that claim.

It results from this that the imprecise character
of the questions posed should have led the judge not to
hold the objections up to proof, but, rather, to reject
them insofar as

VALIDATION CODE = B8SQGNUJKZ

500-09-003048-964

there is not sufficient proof to be able to affirm that the information or exact documents assumed a privileged character according to the requirement set forth in the Solosky decision above[36].

In addition, concerning the categories of questions, it seems to me impossible to be able to qualify that information as privileged unless it is submitted with precision. Certain questions bearing on these matters might not be permitted although it might be different for certain others, notably those having amounts paid or that do not allow elements related to the legal opinion to show through.

Conclusion

For these reasons, I would partly admit the appeal by dismissing the decision of the original judge to hold the general objections to the proof and would propose that the matter take its course, with the reserve that precise questions may be posed which

---

[36] In a similar case, but one based on the confidentiality of the deliberations in the law office (Smallwood v. Sparling, (1982) 2 ROS 686), the Supreme Court of Canada judged the request of the appellant premature. See the comments of Judge Wilson on page 708.

VALIDATION CODE = B8SQGNUJKZ

500-09-003048-964

permit determining the very existence of a privilege
relative to these matters.

[signature]
Michel Robert, J.C.A.

[stamp: Received
 February 16, 1998]

VALIDATION CODE = B8SQGNUJKZ

# COUR D'APPEL

PROVINCE DE QUÉBEC
GREFFE DE MONTRÉAL

No: 500-09-003048-964
   (505-11-000385-950)

Le 12 février 1998

CORAM: LES HONORABLES   DUSSAULT
                        OTIS
                        ROBERT, JJ.C.A.

---

DANS L'AFFAIRE DE LA FAILLITE DE
LAPRAIRIE SHOPPING CENTRE LTD,

          FAILLIE

et

SAMSON BÉLAIR-DELOITTE & TOUCHE INC.,

          APPELANTE - Syndic

c.

Mᵉ REEVIN PEARL,

          INTIMÉ

---

          LA COUR; - Statuant sur le pourvoi de l'appelante contre

un jugement interlocutoire de la Cour supérieure ( Longueuil, 13

août 1996, l'honorable Luc Parent ) qui a maintenu les objections

du procureur de l'intimé au questions posées par le procureur de

l'appelante;

500-09-003048-964                                                        -2-

       Après étude du dossier, audition et délibéré;

       Pour les motifs exprimés dans l'opinion écrite du juge Robert, dont un exemplaire est déposé avec le présent arrêt, et auxquels souscrivent les juges Dussault et Otis,

       ACCUEILLE l'appel en partie en cassant la décision du premier juge de maintenir les objections générales à la preuve, avec dépens.

       RETOURNE le dossier à la Cour supérieure pour que l'affaire poursuive son cours, sous réserve que soient posées des questions précises qui permettraient de déterminer l'existence même d'un privilège relativement à ces matières.


_____
RENÉ DUSSAULT, J.C.A.


_____
LOUISE OTIS, J.C.A.


_____
MICHEL ROBERT, J.C.A.


CODE VALIDEUR = B8SQGNUJKZ

-3-

500-09-003048-964

Me Yoine Goldstein
GOLDSTEIN FLANZ ET FISHMAN
Procureur de l'appelante

Me Barry Landy
SPIEGEL SOHMER
Procureur de l'intimé

Date de l'audience:  29 septembre 1997

CODE VALIDEUR = B8SQGNUJKZ

500-09-003048-964

# COUR D'APPEL

PROVINCE DE QUÉBEC
GREFFE DE MONTRÉAL

No: 500-09-003048-964
    (505-11-000385-950)


CORAM: LES HONORABLES  DUSSAULT
                       OTIS
                       ROBERT, JJ.C.A.

---

DANS L'AFFAIRE DE LA FAILLITE DE
LAPRAIRIE SHOPPING CENTRE LTD,

        FAILLIE

et

SAMSON BÉLAIR-DELOITTE & TOUCHE INC.,

        APPELANTE - Syndic

c.

Mᵉ REEVIN PEARL,

        INTIMÉ

---

OPINION DU JUGE ROBERT

---

CODE VALIDEUR = B8SQGNUJKZ

500-09-003048-964

-2-

L'appelante se pourvoit contre un jugement interlocutoire de la Cour supérieure du district de Longueuil, ( l'honorable Luc Parent, le 13 août 1996 ) qui a maintenu les objections du procureur de l'intimé aux questions posées par le procureur de l'appelante.

Cet appel pose la question plus générale de savoir si d'une part le syndic peut renoncer au secret professionnel du failli et quelle est l'étendue de ce secret dans une telle matière.

La société faillie, Laprairie Shopping Centre Ltd, de même que deux autres sociétés également faillies, étaient propriétaires du centre commercial Place Portobello situé à Longueuil.

Avant la faillite, la faillie était représentée par un avocat, l'intimé Pearl.  L'appelante Samson Bélair a pour sa part été nommée syndic à la faillite.

Par une résolution du seul inspecteur nommé, le syndic a été autorisé, aux termes de l'article 163 de la <u>Loi sur la faillite et l'insolvabilité</u>[1], à procéder à l'interrogatoire sous serment de l'intimé.  Celui-ci s'est tenu le 16 juillet 1996.

---

[1]    L.R.C. (1985), ch. B-3.

CODE VALIDEUR = B8SQGNUJKZ

500-09-003048-964

Après quelques questions préliminaires, le procureur du syndic a demandé au témoin s'il avait rencontré un représentant des sociétés faillies, soit Aaron Green, en date du 27 décembre 1994.

Le procureur de l'intimé s'est objecté à la question, invoquant le privilège avocat client. Alors avisé séance tenante que le syndic renonçait à invoquer tout privilège en rapport avec ledit interrogatoire[2], celui-ci a indiqué qu'il ne croyait pas que le syndic était investi du pouvoir de renoncer à quelque privilège appartenant à ses clientes.

L'avocat du syndic a par la suite demandé au procureur de l'intimé s'il entendait s'objecter à toutes les questions, ce qui a amené ce dernier à s'enquérir de la nature des questions qu'on entendait poser. Il a alors été avisé que celles-ci porteraient:

1) Sur les arrangements financiers intervenus entre les trois sociétés débitrices et Me Pearl et/ou son cabinet Pearl & Associates, entre autres en ce qui concerne les montants payés audit cabinet par ces corporations.

---

[2]    On notera qu'une renonciation plus formelle du syndic, datée du 23 juillet 1996, figure également au dossier.

CODE VALIDEUR = B8SQGNUJKZ

500-09-003048-964

-4-

2)    Sur la nature des services offerts par le bureau
Pearl & Associates en ce qui a trait à certaines
instances, principalement celle impliquant Gentra
Canada Investment Inc. ( ci-après Gentra ), le
principal créancier requérant de la faillite.

3)    Sur la valeur des services, les prévisions
financières et les autres résultats découlant de
ces services pour les compagnies débitrices.

Le procureur de l'intimé a d'abord indiqué que son
client entendait se prévaloir du privilège avocat client en ce qui
a trait aux points 1) et 3). Après certaines hésitations, il a par
la suite ajouté qu'il s'objecterait également à la seconde
catégorie de questions. Enfin, il a également refusé de fournir au
procureur du syndic une liste des services rendus comprenant la
date de ceux-ci et une description sommaire de leur nature.

L'interrogatoire a ensuite été suspendu et le litige
a été soumis à l'attention du juge de la Cour supérieure de
Longueuil.

Par ailleurs, il faut souligner que quelques mois avant
la tenue de l'interrogatoire en question, soit le 13 mars 1996,
Gentra avait intenté une procédure contre Me Pearl intitulée « Motion

CODE VALIDEUR = B8SQGNUJKZ

-5-

500-09-003048-964

seeking personal condamnation against Mᵉ Pearl & Ass. for the court costs and ancillary conclusions ». Cette procédure alléguait notamment que l'intimé s'était livré à des manoeuvres procédurales abusives, ce qui lui fait dire que l'interrogatoire qu'on lui fait subir s'inscrit dans une guérilla judiciaire à son endroit.

Cela étant, cette question n'a vraisemblablement pas fait l'objet de débats en première instance et la preuve au dossier est insuffisante pour que l'on puisse tirer quelque conclusion relativement à une possible intention pernicieuse de l'appelante. C'est pourquoi je n'entends pas en traiter davantage dans les présents motifs.

Le jugement de première instance

Dans un jugement laconique le juge a maintenu les objections formulées, sous réserve que soient posées des questions plus précises. Il mentionnait toutefois que certaines des questions pourraient comporter des éléments acceptables, notamment le montant payé à Mᵉ Pearl.

CODE VALIDEUR = B8SQGNUJKZ

500-09-003048-964

La question en litige

        Dans leur mémoire, les parties n'ont soulevé qu'une seule question, soit celle de la possibilité pour le syndic de faillite de renoncer, en lieu et place du failli, au privilège avocat client dont il bénéficie sans obtenir le consentement de ce dernier.

        Ceci dit, comme nous le verrons à l'analyse des principes et de la jurisprudence, l'on ne saurait se prononcer sur la question de la renonciation sans s'interroger à savoir si les informations que l'on cherche à obtenir sont des communications privilégiées couvertes par le secret professionnel de l'avocat. En effet, dans la mesure où les communications n'étaient pas privilégiées, toute conclusion à laquelle cette Cour pourrait en venir au niveau de la renonciation ne serait que de peu d'utilité pour la solution du présent litige. La question, telle que présentée par les parties, me semble donc usurper à tort une partie fondamentale du débat. C'est pourquoi j'entends également traiter, dans les présents motifs, de l'étendue du privilège avocat client en regard des informations faisant l'objet des questions du procureur du syndic.

CODE VALIDEUR = B8SQGNUJKZ

-7-

500-09-003048-964

Les prétentions des parties

A)      La position de l'appelante

L'appelante s'appuie sur la jurisprudence des autres provinces[3] et du Royaume-Uni[4] et soutient que l'on ne peut invoquer le privilège lorsque le syndic, qui prend la place du failli, y renonce expressément et que la preuve que l'on désire obtenir porte sur des questions financières, patrimoniales ou monétaires ainsi que sur des questions liées à la possibilité pour le syndic de récupérer certaines sommes et avoirs du failli.

Elle prétend que le privilège avocat client ne devrait être maintenu, malgré toute renonciation du syndic, que lorsque les communications visées portent sur les conseils juridiques que visait à obtenir ou qu'a obtenus le failli en ce qui a trait à d'éventuelles poursuites criminelles ou autres affaires similaires.

---

[3]     <u>Re Dilawri</u>, [1984] 53 C.B.R. (N.W.) 251 (C.A.O.);
        <u>Re Amonson</u>, [1985] 57 C.B.R. (N.S.) 314 (C.B.R.A.);
        <u>Re Cirone</u>, [1965] 8 C.B.R. (N.S.) (Ont. Div. Gen.).

[4]     <u>In Re Konigsberg</u>, [1989] 3 AllE.R. 289.

CODE VALIDEUR = B8SQGNUJKZ

500-09-003048-964

-8-

B)      La position de l'intimé

L'intimé affirme dans un premier temps que le syndic n'a pas le pouvoir de renoncer au secret professionnel dont jouit le failli car il n'obtient que la saisine des biens et ne continue pas la personnalité juridique du failli.  Le rôle du syndic porterait uniquement sur les biens du failli dont il serait le cessionnaire[5] et non sur les droits attachés à sa personne tels les droits extrapatrimoniaux.

Or, le droit au secret professionnel serait un droit extrapatrimonial et donc intransmissible[6].  Il s'ensuit que seul le titulaire du droit pourrait y renoncer et que le syndic n'aurait donc pas le pouvoir de le faire sans le consentement du failli[7].

---

[5]     J.M. Deschamps, Le syndic:  un successeur du débiteur? Un Cessionnaire? Un représentant des créanciers ? dans Meredith Memorial Lectures, 1985, Ed. Richard DeBoo, p. 245, 265;  In re Civano Construction Inc. c. Crédit M.-G. Inc., [1962] C.S. 45.

[6]     Descôteaux et autres c. Mierzwinski, [1982] 1 R.C.S. 860, 871; Frenette c. Métropolitaine (La), Cie d'assurance-vie [1990] R.J.Q. 62 (C.A.) j. Baudouin inf. à [1992] 1 R.C.S. 647, sans toutefois que la Cour suprême ait analysé cette question.

[7]     Stikeman, Elliot c. 164461 Canada Inc., J.E. 97-297 (C.S.).

CODE VALIDEUR = B8SQGNUJKZ

-9-

500-09-003048-964

Enfin, l'intimé soutient qu'il est faux de prétendre que la jurisprudence canadienne est unanime que le syndic a le pouvoir de renoncer au secret professionnel dont le failli serait titulaire. En fait, depuis l'arrêt <u>Re Dilawri</u> précité, il semble que la jurisprudence des provinces de common law[8] prévoit que le syndic ne puisse renoncer au droit au secret du failli, bien qu'il lui soit possible d'assigner son avocat et de lui poser des questions sur des sujets qui ne sont pas couverts par le secret professionnel. Cette position se justifierait d'autant plus qu'au Québec, non seulement le droit au secret professionnel est-il considéré comme étant de nature extrapatrimoniale, il est au surplus consacré à l'article 9 de la Charte québécoise et par la Cour suprême[9].

Toute autre conclusion ferait échec selon l'intimé, au but du privilège de confidentialité, c'est-à-dire de protéger la confiance des rapports entre le professionnel et son client.

---

[8]     Voir notamment <u>Wolch's Guaranteed Foods</u> c. <u>Wolch</u> [1994] 24 C.B.R. (3d) 268 (C.B.R.A.).

[9]     <u>Descoteaux et autres</u> c. <u>Mierzwinski</u>, précité, note 6.

CODE VALIDEUR = B8SQGNUJKZ

-10-

500-09-003048-964

Analyse

Comme je l'ai mentionné, je me pencherai dans un premier temps sur la question de la renonciation telle que formulée par les parties ce qui, comme nous le verrons, nous amènera en deuxième analyse à nous interroger sur le caractère privilégié des informations visées.

A)    Le droit du syndic de renoncer au privilège avocat client du failli

Je suis d'accord avec la position de l'intimé à cet égard et proposerais de rejeter ce moyen d'appel pour les motifs suivants.

1) La nature de la fonction de syndic

De façon générale, l'on reconnaît au syndic un statut hybride puisqu'il se veut à la fois le cessionnaire des droits du débiteur et le représentant des créanciers[10]. Cela étant, comme le mentionnait le professeur Bohémier dans son ouvrage[11], il n'est pas

_____

[10]    _Mercure_ c. _Marquette_, [1977] 1 R.C.S. 547.

[11]    Albert BOHÉMIER, Faillite et Insolvabilité, Tome 1, Les Éditions Thémis, 1992, aux pp. 714 et

CODE VALIDEUR = B8SQGNUJKZ

-11-

500-09-003048-964

facile de définir exhaustivement la fonction de syndic, compte tenu de la difficulté de transposer dans un contexte de droit civil des concepts de common law[12] et qu'il ne convient donc pas de lui prêter une qualification unique.  Il mentionnait par ailleurs ce qui suit à la p. 715:

> En droit canadien, il est difficile de ne pas reconnaître que le syndic, par l'effet du dessaisissement, devienne...propriétaire de tous les biens corporels et incorporels du débiteur. En ce sens, on dit que le syndic acquiert la saisine des biens du débiteur. D'autre part, le syndic acquiert également les droits incorporels, notamment les créances dues au failli. À cet égard, le syndic apparaît comme un cessionnaire des droits du débiteur. Mais comme ce droit de propriétaire n'est pas établi dans l'intérêt du syndic qui en est titulaire, d'aucuns ont cru utile de préciser que le syndic était un cessionnaire mais à titre fiduciaire.

Malgré ses nombreux attributs et qualificatifs, il semble qu'aucune autorité tant en jurisprudence qu'en doctrine n'a osé prétendre que le syndic continue la personnalité du failli pour des questions autres que celles reliées à ses biens ou à ses droits de nature pécuniaire, qu'ils soient corporels ou incorporels.  Les auteurs Bohémier, Massüe-Monat et Deslauriers[13] font d'ailleurs une

---

suivantes.

[12]  La loi canadienne définit en effet le syndic comme un trustee qui détient un droit de propriété temporaire et limité sur les biens du failli.

[13]  Albert BOHÉMIER, Jacques DESLAURIERS et Henri MASSÜE-MONAT, La faillite et l'insolvabilité, dans C.F.P.B.Q., vol. 9, Les Éditions Yvon Blais, Cowansville, 1996, à la p. 176.

CODE VALIDEUR = B8SQGNUJKZ

500-09-003048-964

excellente synthèse des principes entourant le rôle dévolu au syndic:

> Son rôle se limite à l'actif visé par la faillite et ne concerne nullement la personne du failli: c'est pourquoi on ne peut pas dire que le syndic est le successeur du failli.
> *******
> Le juge Bernier qualifie le syndic de cessionnaire du failli, qualité qui lui vient directement et par le seul effet de la loi, sans autre formalité.  Il ajoute dans une autre décision que le syndic est dans la position d'un tiers acquéreur quant aux biens du failli.  Un peu plus tard, le juge Bernier, s'exprimant au nom de la Cour d'appel, ajoute la notion de fiduciaire pour décrire la fonction de syndic.  On peut résumer comme suit la notion de syndic: un cessionnaire fiduciaire ayant la saisine des biens du failli, biens qu'il doit liquider pour le plus grand bénéfice des créanciers.

Il en résulte que les seuls droits qui sont transférés au syndic sont ceux rattachés à la propriété du failli et non ceux rattachés à sa personne tels les droits extrapatrimoniaux dont fait partie le secret professionnel.

CODE VALIDEUR = B8SQGNUJKZ

-13-

500-09-003048-964

**2) Le caractère personnel et extrapatrimonial du droit au secret professionnel**

Que ce soit en vertu des principes de common law[14] ou des règles de notre droit civil[15], il est établi que le droit au secret professionnel est un droit personnel et extrapatrimonial[16]. Dans <u>Descôteaux et autres</u> c. <u>Mierzwinski</u>, le juge Lamer s'exprimait ainsi:

> Il est incontestable que s'attache à la personne un droit de communiquer en toute confidence avec un conseiller juridique, droit qui est «fondé sur la relation exceptionnelle de l'avocat avec son client» (Solosky, précité). <u>C'est un droit personnel et extrapatrimonial qui accompagne le citoyen dans ses rapports avec les autres</u>[17].

---

[14]  <u>Descôteaux et autres</u> c. <u>Mierzwinski</u>, précité note 6, à la p. 871.

[15]  <u>Frenette</u> c. <u>Métropolitaine (La), Cie d'assurance-vie</u> [1992] 1 R.C.S. 647, 671 [1990] R.J.Q. 62, 67 (C.A.);  <u>Impériale (L'), Cie d'assurance-vie</u> c. <u>Roy (Succession de)</u>, [1990] R.J.Q. 2468, 2474 (C.A.).

[16]  Jean-Claude ROYER, La preuve civile, 2 Éd., Les Éditions Yvon Blais, 1995, Nos 1239-1240 aux pages 778, 779;  N. Vallières, Le secret professionnel inscrit dans la Charte des droits et libertés de la personne du Québec, [1985] 26 C. de D. 1019.

[17]  P. 871.

CODE VALIDEUR = B8SQGNUJKZ

-14-

500-09-003048-964

Notre Cour d'appel abondait dans le même sens dans l'arrêt Frenette c. Métropolitaine (La), Cie d'assurance-vie[18], alors que le juge Baudouin indiquait ce qui suit:

> Il m'apparaît que le secret professionnel étant un droit attaché à la personne n'est pas de nature patrimoniale et, donc, ne se transmet pas aux héritiers et légataires.

L'arrêt Frenette a été renversé par la Cour suprême dans un arrêt rapporté à [1992] 1 R.C.S. 647. Cependant, le débat en Cour suprême a été résolu par un examen des termes clairs du contrat d'assurance et en fonction de faits que le titulaire du droit avait renoncé pour l'avenir à la confidentialité de ses dossiers médicaux. Je ne crois pas que l'arrêt infirme le caractère personnel du droit au secret professionnel.

Or, la qualification d'un droit comme étant de nature extrapatrimoniale a notamment pour effet, sauf dans de rares cas, de faire en sorte que celui-ci est intransmissible. Voici ce qu'affirme le juge Baudouin[19] dans son ouvrage au sujet des droits extrapatrimoniaux:

---

[18]   Note 15 précitée, à la p. 67.

[19]   Jean-Louis BAUDOUIN, Les obligations, 4 éd., Les Éditions Yvon Blais Inc., 1993, N° 19, aux pp. 13-14.

CODE VALIDEUR = B8SQGNUJKZ

500-09-003048-964

19 - Droits extrapatrimoniaux - Les droits extrapatrimoniaux constituent l'ensemble des droits possédés par une personne physique, non appréciables en argent et qui lui sont conférés par la loi, en raison de la place qu'elle occuppe dans la société.

Les droits extrapatrimoniaux sont en nombre limité. On en retrouve un grand nombre énumérés par la Charte des droits et libertés de la personne (...), aux premiers articles du Code civil (...) et dans la nouvelle Charte canadienne(...). Ceux-ci constituent ce que l'on appelle maintenant les droits de la personnalité, leur objet étant le sujet de droit qui les possède.(...) Seule une personne physique, par opposition à une personne morale, peut posséder, jouir, détenir et exercer les droits extrapatrimoniaux. Étant attachés aux seules personnes physiques, ils sont intransmissibles, disparaissent en principe avec elles et sont imprescriptibles. Les droits extrapatrimoniaux ne peuvent s'évaluer pécuniairement et ne sont donc pas dans le circuit économique.(...) (I)ls ne peuvent donc être vendus, transférés ou acquis à titre gratuit ou onéreux. Ils sont hors commerce. Leur cession est d'ailleurs contraire à l'ordre public et donc prohibée par la loi, puisque c'est exclusivement la loi qui les crée et qui détermine leur détenteur. Enfin, ils ne peuvent être saisis puisqu'ils n'ont pas d'attache matérielle et ne constituent pas des biens économiques.

Compte tenu de cette nature extrapatrimoniale entraînant l'intransmissibilité du droit au secret professionnel, et du fait que le syndic ne continue pas intégralement la personnalité du failli, il nous faudrait en toute logique conclure que le droit à la confidentialité n'est pas dévolu au syndic par l'effet du désaisissement tenu lors de la faillite et qu'il ne peut incidemment y renoncer sans le consentement du failli.

CODE VALIDEUR = B8SQGNUJKZ

500-09-003048-964                                    -16-

L'appelante prétend cependant que la jurisprudence canadienne appuie la position contraire et permet au syndic de renoncer au privilège lorsqu'il s'agit de questions financières ou pécuniaires alors que cela lui serait impossible lorsque la communication porte sur les conseils recherchés par le failli face à d'éventuelles poursuites pénales ou autres.

J'ai pris connaissance des décisions auxquelles l'appelante nous renvoie et je n'y vois d'aucune façon l'expression de l'énoncé de principe qu'elle nous invite à y voir.

3) L'état de la jurisprudence sur la question

-la jurisprudence des autres provinces

L'argumentation de l'appelante s'appuie largement sur la décision rendue par la Cour suprême de l'Ontario dans l'affaire Re Cirone[20]. Le syndic y a intenté des procédures en recouvrement de sommes contre le procureur des faillis au motif que les honoraires que ceux-ci lui ont versés constituaient une préférence frauduleuse. Le procureur en question avait alors été assigné pour un interrogatoire au préalable à cet effet où il a notamment été

---

[20]    Note 3 précitée;   Dans le même sens, Re Abacus cities Ltd, [1981] 40 B.C.R. 172 (C.B.R.A.).

CODE VALIDEUR = B8SQGNUJKZ

-17-

500-09-003048-964

questionné sur la nature des services fournis.  On lui avait également demandé de produire ses dossiers pour fins d'inspection. L'avocat avait alors refusé de répondre à ces demandes en invoquant le privilège avocat client.  Le juge McDermott avait indiqué ce qui suit :

> The trustee is entitled to step into the shoes of the bankrupts and waive the privilege, when he has the right under the provisions of the Bankruptcy Act to have the full co-operation of the bankrupts in obtaining all possible information as to any dealings with the property of the bankrupts, within a reasonable time prior to bankruptcy.[21]

Bien que cette affirmation revête une portée générale, la jurisprudence subséquente s'étant intéressée à la question a considérablement limité la portée que l'on doit accorder à cette décision dont on a dit qu'elle ne constituait qu'un cas d'espèce. En effet, dans l'arrêt Re Dilawri précité de la Cour d'appel d'Ontario, l'avocat en question avait agi comme procureur du failli et de ses compagnies depuis plusieurs années.  Il avait entre autres été impliqué dans les négociations intervenues entre le failli et les créanciers requérants concernant la consolidation des dettes du failli.  Quelques mois avant que soit rendu un jugement déclarant la faillite, le syndic avait assigné le procureur à un interrogatoire en vertu de ce qui est aujourd'hui l'article 163 de la Loi sur la faillite.  Le syndic avait avisé l'appelant qu'il renonçait à tout privilège avocat client en rapport aux affaires de

───────────────

[21]    p. 243.

┌─────────────────────────────────────┐
│   CODE VALIDEUR = B8SQGNUJKZ         │
└─────────────────────────────────────┘

-18-

500-09-003048-964

Dilawri sans toutefois que le failli n'ait lui-même renoncé au privilège.

Affirmant que l'arrêt <u>Re Cirone</u> constituait un cas d'espèce, le juge Lacourcière a exprimé ainsi son désaccord avec la proposition voulant que le syndic puisse renoncer au privilège sans le consentement du failli:

> We respectifully disagree, however, with the proposition accepted by the learned motions court judge that a trustee in bankruptcy possesses the legal right to waive the privilege with respect to legal advice given to the bankrupt respecting his former property[22].

Il a cependant indiqué que <u>l'avocat se devait néanmoins de divulguer l'information relative aux affaires et aux transactions du failli et celle permettant de retracer ses avoirs lorsque ces communications ne s'inscrivent pas dans la recherche d'un avis ou d'un conseil juridique de sorte que ces renseignements ne sont même pas couverts par le privilège de confidentialité selon les principes dégagés par la Cour suprême dans l'arrêt R. c. Solosky</u>[23]:

---

[22]    P. 254.

[23]    [1980] 1 R.C.S. 821.

CODE VALIDEUR = B8SQGNUJKZ

500-09-003048-964                                                -19-

> In our view, the appellant can be compelled to
> disclose all information regarding the
> bankrupt's affairs, transactions, and the
> whereabouts of his property, etc., which do
> not require the disclosure of communications
> made to the appellant for the purpose of giving
> legal advice. These communications with
> respect to property are not privileged[24].

Le juge Lacourcière a ensuite indiqué que les questions posées en l'espèce ne tombaient pas dans des matières couvertes par le privilège et que l'avocat se devait d'y répondre sans que le client ou le syndic n'ait à renoncer à quelque privilège. Dans un bref obiter, il a ajouté qu'il peut exister des circonstances spéciales dans lesquelles le syndic pourrait renoncer au privilège, mais que tel n'était pas le cas en l'espèce pas plus que la seule protection des créanciers ne justifie que cela puisse se faire.

La Cour du Banc de la Reine de l'Alberta a rendu une décision dans le même sens dans Re Amonson précité, bien que la Cour a affirmé, en obiter, que le syndic pouvait renoncer au privilège si aucun autre moyen ne permet de déterminer les biens du failli. La Cour a statué que:

> He (le syndic) is compellable to answer
> questions which deal with the affairs of Mr.
> Amonson. There are matters which deal with
> the preparation of documents and dispersing of
> funds, with respect to which there is no
> solicitor-client privilege. There are other
> areas of communications between solicitor and
> client where there clearly is a privilege in
> the client.(...) (Q)uestions should not be

---

[24]     P. 255.

CODE VALIDEUR = B8SQGNUJKZ

500-09-003048-964

> asked which are concerned with the giving of
> legal advice by Mr. Milne and which attempt to
> elicit the nature of the legal advice given[25].

Dans <u>Wolch's Guaranteed Foods</u> c. <u>Wolch</u> précité, le syndic avait interrogé les avocats ayant conseillé une entreprise qui avait déclaré un dividende peu de temps avant la faillite, et dont le syndic croyait qu'il avait été versé en violation de l'article 40 de la <u>Loi sur les sociétés par actions</u>. Ce même tribunal affirmait que les propos portant sur la renonciation exprimés dans les affaires <u>Re Dilawri</u> et <u>Re Amonson</u> n'étaient qu'obiter et qu'à la lumière de l'arrêt de la Cour d'appel d'Ontario, il n'existait aucune autorité permettant de soutenir que le syndic puisse renoncer au privilège du failli. La Cour ajoutait que même si cela pouvait être possible en certaines circonstances, les faits de cette affaire ne s'y prêtaient pas.

- la jurisprudence québécoise

Notre Cour n'a pas jusqu'ici eu l'occasion de se prononcer directement sur la question. Celle-ci a cependant été traitée dans une affaire <u>Stikeman, Elliot</u> c. <u>164461 Canada Inc.</u> précitée où, lors d'un interrogatoire en vertu de l'article 163

---

[25]    Pages 316, 317.

CODE VALIDEUR = B8SQGNUJKZ

500-09-003048-964                                                -21-

L.F.I., un avocat avait refusé de répondre aux questions du syndic sur ce qu'il était advenu de sommes déposées dans son compte en fidéicommis en invoquant le secret professionnel. Le juge Guibault de la Cour supérieure s'est dit d'avis qu'« une distinction fondamentale d(evait) être faite entre les biens patrimoniaux, qui sont de par la nature même de la L.F.I., dévolus au syndic et les droits extrapatrimoniaux qui sont en principe, sauf en de très rares exceptions, propres au débiteur-failli ». Il ajoutait que le secret professionnel relevait, selon les propos du juge Lamer dans Descôteaux et autres c. Mierzwinski précité, de la seconde catégorie et qu'il n'est donc pas dévolu au syndic qui ne peut, sauf dans les circonstances extraordinaires auxquelles a renvoyé la Cour d'appel d'Ontario, y renoncer en lieu et place du failli. Il concluait en indiquant qu'il ne se trouvait pas devant l'un des cas exceptionnels qui permettrait au syndic de renoncer, exprimant l'opinion que seule la fraude justifierait qu'il en soit ainsi.

Une décision abondant dans le même sens a également été rendue dans Colisée du livre Inc. (syndic) c. Lévesque[26] où il a été décidé que la « mainlevée » du secret professionnel faite par le syndic était sans effet puisqu'il s'agit là d'un droit extrapatrimonial.

---

[26]    C.S. Montréal 500-11-002697-957, le 18 février 1997.

CODE VALIDEUR = B8SQGNUJKZ

500-09-003048-964

-22-

4) Conclusion sur la renonciation

La Cour conclut de cette analyse que le syndic ne peut, sauf peut-être dans des cas très exceptionnels qu'il n'est pas nécessaire de tenter de définir, renoncer en lieu et place du failli au droit au secret professionnel dont il bénéficie. Il lui est toutefois permis d'assigner l'avocat du failli afin de l'interroger sur des sujets qui ne sont pas couverts par le secret professionnel, c'est-à-dire lorsqu'il s'agit de questions de faits ou d'informations relatives aux affaires, transactions ou avoirs du failli, <u>lorsque ces communications ne s'inscrivent pas dans la recherche d'un avis ou d'un conseil juridique</u>[27]. Cela m'amène donc à traiter de la question de l'étendue du privilège avocat client.

B)      Le caractère privilégié des communications visées

En ce qui a trait à l'existence même d'un privilège portant sur les communications visées par les questions du procureur du syndic, il est important de ne pas perdre de vue deux principes fondamentaux portant sur le secret professionnel de l'avocat. D'une part, bien que le secret professionnel s'interprète largement, la protection offerte tant par la common

---

[27]    <u>Re Dilawri</u>, note 3 précitée; voir aussi <u>Re Lauzier</u> [1996] 43 C.B.R. (3d) 207 (Ont. Div. Gen.).

CODE VALIDEUR = B8SQGNUJKZ

500-09-003048-964

-23-

law que par la Charte n'est pas illimitée. Comme nous l'avons vu à la lumière des arrêts étudiés plus haut, il doit notamment s'agir d'une communication qui se rapporte à une consultation ou à un avis juridique.

D'autre part, un privilège peut difficilement être reconnu sans véritablement connaître la nature précise de l'information recherchée et ne peut généralement être invoqué que pour chaque document ou communication pris isolément. Il est donc possible que la formulation des catégories de questions telles que définies dans le présent litige puisse poser problème comme je l'expliquerai un peu plus loin. Dans l'arrêt R. c. Solosky[28], le juge Dickson énonçait ces préceptes de la façon suivante:

> Le privilège ne peut être invoqué que pour chaque document pris individuellement, et chacun doit répondre aux critères du privilège; (i) une communication entre un avocat et son client; (ii) qui comporte une consultation ou un avis juridiques; et (iii) que les parties considèrent de nature confidentielle.

Je traiterai donc successivement de l'étendue du privilège puis des difficultés d'application des principes à l'espèce vu la généralité des questions posées.

---

[28]    [1980] 1 R.C.S. 821, 837.

CODE VALIDEUR = B8SQGNUJKZ

-24-

500-09-003048-964

1)      L'étendue du privilège et l'exigence qu'il
        s'agisse d'une communication s'inscrivant
        dans le cadre d'une consultation ou d'un
        avis juridique

-les principes généraux pertinents

Dans l'arrêt Descôteaux et autres c. Mierzwinski précité, le juge Lamer, citant Wigmore[29], a rappelé la règle énoncée plus haut quant aux conditions relatives à l'existence du droit à la confidentialité:

> L'énoncé suivant que faisait Wigmore (8 Wigmore, Evidence, par. 2292 (McNaughton rev. 1961)) de la règle de preuve résume bien à mon avis les conditions de fond de l'existence du droit à la confidentialité du client de l'avocat:
>
> [traduction] Les communications faites par le client qui consulte un conseiller juridique ès qualité, voulues confidentielles par le client, et qui ont pour fins d'obtenir un avis juridique font l'objet à son instance d'une protection permanente contre toute divulgation par le client ou le conseiller juridique, sous réserve de la renonciation à cette protection.

---

[29]    Note 6, à la page 747.

CODE VALIDEUR = B8SQGNUJKZ

-25-

500-09-003048-964

Le professeur Royer a d'ailleurs souligné dans son ouvrage[30] que la protection offerte par le secret professionnel de l'avocat n'est pas sans limite dès l'instant que l'on se trouve en présence d'une relation avocat client:

> Le secret professionnel de l'avocat n'est cependant pas illimité. Il ne peut être étendu au-delà de ce qui est nécessaire pour atteindre sa finalité qui est de permettre au citoyen de se confier à un spécialiste pour prouver son innocence ou faire valoir un droit[31]. (...) Les démarches et les actes d'un avocat ne sont pas protégés par l'immunité judiciaire[32]. (...) Il peut être forcé de produire des comptes d'honoraires qui ne décrivent pas en détails la nature des services rendus[33].

C'est donc sur ces principes généraux que se fonde la jurisprudence étudiée plus haut sous l'angle de la renonciation, principalement à partir de l'arrêt Re Dilawri de la Cour d'appel d'Ontario, et qui veut que l'avocat assigné à un interrogatoire en vertu de l'article 163 L.F.I. doit répondre aux questions et fournir les documents qui concernent les affaires, les biens et les

---

[30]  Note 16 à la page 747.

[31]  J. Sopinka, S.N. Lederman et A.W. Bryant, The Law of Evidence in Canada, Toronto, Butterworths, 1992, à la page 641.

[32]  Pearl c. Bisseger, [1985] C.A. 695;  L. Ducharme, l'administration de la preuve, Montréal, Wilson & Lafleur, 1986, n° 204.

[33]  Kruger Inc. c. Kruco Inc. [1988] R.J.Q. 2323 (C.A.).

CODE VALIDEUR = B8SQGNUJKZ

500-09-003048-964

avoirs du failli qui ne se rapportent pas à la consultation ou à la recherche d'un avis juridique. Cela étant, il faut nous interroger à savoir quelles sont précisément les informations reliées au travail de l'avocat qui n'ont pas pour fins une consultation juridique. J'examinerai dans un premier temps la jurisprudence générale sur la question pour ensuite analyser les cas d'application de la règle lors d'interrogatoires d'avocats en vertu de la L.F.I. Sans que cette analyse constitue un exposé complet des principes applicables, elle nous permettra à tout le moins de mieux situer le litige et de guider les parties dans la poursuite de leur interrogatoire.

-la jurisprudence générale sur la question

Tel que l'indique l'extrait précité, notre Cour d'appel a eu l'occasion de se prononcer à au moins deux occasions sur le caractère privilégié des actes posés par un avocat dans l'exécution de son mandat, notamment quant aux montants qui lui ont été payés et à la nature des services qu'il fournit.

Dans l'arrêt _Pearl_ c. _Bissegger_ précité, le pourvoi portait sur des objections à la preuve formulées par

CODE VALIDEUR = B8SQGNUJKZ

500-09-003048-964

-27-

l'appelant, un avocat qui est incidemment l'intimé dans la présente cause, en rapport avec certaines questions du procureur de l'intimé lors d'un interrogatoire en vertu de l'article 404 C.p.C., et que le premier juge avait rejetées. On peut rappeler que dans cette affaire, la banque désirait faire vendre les biens d'une mine d'or après que la compagnie eut failli à ses obligations découlant d'un contrat de prêt. L'appelant Pearl avait fait signifier une mise en demeure à l'intimé Bissegger, qui agissait comme administrateur des avoirs, lui ordonnant, sous peine de poursuites judiciaires, de cesser toutes démarches en vue de vendre en tout ou en partie les biens en question. À l'interrogatoire, les questions suivantes lui avaient notamment été posées:

> b.    Do I take it then that you did not, before writing your letter R-6, that you did not make a search of the Registry Office of the district of Abitibi, I should say of the Registration Division of Abitibi?
>
> c.    Did you then, since Friday, March 2nd, 1984 at 3:00 p.m., forward to all third parties what you describe as the enclosed report letter?
>
> d.    Leaving aside the names of witnesses or possible witnesses for the moment, what steps did you take? (To verify the truthfullness of the allegations of fact made from page 2 onward, on exhibit R7?)[34]

---

[34]    P. 697.

CODE VALIDEUR = B8SQGNUJKZ

500-09-003048-964

-28-

Le juge Dubé a débuté son analyse du droit applicable en indiquant que, bien qu'il soit « essentiel que les relations confidentielles entre un avocat et son client soient protégés par la loi; d'autre part, il est dans l'intérêt de la justice qu'on ne se serve pas indûment du manteau du secret pour entraver la marche normale des procédures judiciaires ».

Après une revue des principes généraux applicables en la matière, il a affirmé, en ce qui a trait aux questions précitées, que leur objet portait sur les agissements du procureur et que « ces agissements n'ont rien à voir avec le secret professionnel entre avocat et client;... » et que le premier juge a eu raison de permettre lesdites questions.

Dans l'arrêt <u>Kruger Inc.</u> c. <u>Kruco Inc.</u> précité, le juge de première instance, lors de l'audition d'une requête en vertu de l'article 234 de la <u>Loi sur les sociétés commerciales canadiennes</u> où l'on a reproché à l'appelante d'avoir payé des honoraires professionnels d'avocats pour du travail réalisé au bénéfice des actionnaires majoritaires de la compagnie, avait rejeté les objections de Kruger Inc. qui invoquait le secret professionnel pour éviter de répondre aux questions de l'intimée.

CODE VALIDEUR = B8SQGNUJKZ

500-09-003048-964

Un premier groupe de questions portait sur les services professionnels qui auraient été rendus par la firme Clarkson, Parsons & Tétrault au profit d'une firme vénézuélienne dans laquelle le mis en cause Kruger détenait des intérêts importants. Une seconde catégorie de questions portait entre autres sur l'engagement des cabinets Pateras et Iezzoni et Phillips et Vineberg pour les fins d'une enquête déclenchée par le ministère du Revenu du Canada à la suite d'allégations de fraude fiscale, ainsi que sur les paiements d'honoraires faits à Mᵉ Pateras. Je juge utile de reproduire certaines des questions posées:

-Do you know who decided to retain Pateras and Iezzoni on behalf of Kruger Inc.?

-Who at Kruger Inc. instructed Pateras & Iezzoni during the course of this mandate?

-To whom at Kruger Inc. did Pateras & Iezzoni report?

-Now, Mr. Bunze, we were talking about a number of statements of account addressed by PateraLs & Iezzoni to Kruger Inc.; and the first was a statement of account of July fourth (4th), nineteen eighty-three (1983).Do you have a copy of that statement of account with you?

-First of all, Mr. Bunze, is that statement the statement of account dated July fourth (4th), nineteen eighty-three (1983), from Pateras and Iezzoni to Kruger Inc. in the amount of fifteen thousand dollars ($15,000)?

-Did that statement of account relate to services rendered in connection with the tax investigation?

-Well, do you know who at Kruger Inc. decided to retain Phillips and Vineberg? (pages 2324, 2325).

CODE VALIDEUR = B8SQGNUJKZ

-30-

500-09-003048-964

Le juge Dubé a d'abord affirmé que le recours au secret professionnel par une partie n'implique pas automatiquement que tous les éléments de la relation avocat client soient couverts par le privilège:

> Le recours au secret professionnel par une partie ne signifie pas que tous les éléments de la relation entre l'avocat et le client y soient soumis en toute circonstance. Le présent dossier est un exemple de cette prudence nécessaire. Avant même de regarder si des exceptions à la règle du secret professionnel s'appliquent, il faut examiner si l'on est entré ici dans la sphère du secret professionnel. Pour cette étude, l'on doit retenir la fonction, propre au secret professionnel, qui veut préserver la liberté et l'efficacité de la relation entre le client et son avocat pour permettre à celui-ci de connaître tout le dossier et représenter adéquatement son mandat. Son objet essentiel est de préserver, d'une part, la liberté et la qualité de l'information transmise par le client au procureur et, d'autre part, d'assurer la liberté et l'objectivité des conseils que l'avocat donnera et celle des actes de représentations qu'il posera.

> (mes soulignements)

Il poursuit immédiatement en ces termes:

> Dans certains cas, l'information sur la nature même des services posés conduirait à violer le secret professionnel. Ce pourrait être le cas, par exemple, au moment de la production d'un compte relatant en détail la nature et la date des services rendus. Ce fut le cas apparemment dans l'affaire Ainsworth c. Wilding, invoquée dans certains traités au soutien de la prétention voulant que les comptes d'honoraires d'avocats soient en principe privilégiés.

> (mes soulignements).

CODE VALIDEUR = B8SQGNUJKZ

500-09-003048-964

-31-

Appliquant ces principes aux faits de l'espèce, il a conclu de la façon suivante en ce qui a trait aux questions telles que formulées:

Ces questions ont pour fin apparente de vérifier si la compagnie Kruger Inc. avait payé abusivement des honoraires professionnels pour des services rendus en réalité aux actionnaires majoritaires ou à des sociétés dans lesquelles ils sont intéressés ou qu'ils contrôlent. Par ailleurs, les comptes d'honoraires professionnels dont on demande le dépôt sont rédigés de la façon la plus sommaire. Ils comportent simplement la mention d'une demande de paiement pour services professionnels rendus et du montant réclamé. Ils ne contiennent pas plus d'informations qu'une simple entrée comptable dans les livres de la compagnie. Ils ne donnent aucun détail quant à la nature des services rendus. Ils ne sont aucunement susceptibles d'engager la Cour dans un examen des conseils donnés et des travaux professionnels effectués par les avocats en question.

Dans ce contexte, les questions posées ne mettent pas en cause le caractère confidentiel de la relation professionnelle entre Kruger Inc. et les avocats mentionnés... Ni les questions ni les documents au dossier ne permettent de déterminer exactement la nature des services rendus ni celle des conseils ou avis qu'ils ont donnés.

********

Rien alors dans le contexte de ce dossier n'affecte le secret professionnel. Il s'agit d'identification des procureurs, de vérification des montants payés et de détermination de l'identité du client représenté, sans que celle-ci puisse constituer ici un élément du secret professionnel.

CODE VALIDEUR = B8SQGNUJKZ

500-09-003048-964                                                -32-

   Dans Droit de la famille - 2439[35], la demanderesse, dans une procédure de divorce, a entre autres demandé lors d'un interrogatoire que le défendeur, un avocat, produise les états de comptes détaillés de ses clients et les feuilles de temps relatives aux heures facturables de même qu'aux frais et dépenses encourus dans tous ses dossiers, afin de permettre au tribunal de fixer la pension alimentaire. La juge Lemelin a maintenu les objections à la preuve à cet égard en indiquant que la nature des services rendus pourrait être découverte si l'on devait acquiescer à une telle demande, et que « si les documents contiennent des informations confidentielles décrivant ou permettant d'identifier la nature d'un service aux clients, ils doivent être exclus ».

- quelques cas d'application de la règle en matière d'interrogatoires tenus en vertu de l'article 163 de la L.F.I.

   Dans l'arrêt <u>Stikeman, Elliot</u> c. <u>164461 Canada Inc.</u> précité, il a été décidé que les transactions effectuées dans le

---

[35]  C.S. Montréal 500-12-228118-968, le 1er mai 1996.

CODE VALIDEUR = B8SQGNUJKZ

500-09-003048-964

-33-

compte en fidéicommis d'un avocat sont couvertes par le secret professionnel puisque « révéler la façon dont on a disposé des fonds en fiducie implique que l'on révélera fréquemment et de façon non équivoque, les instructions reçues du client ainsi que les avis juridiques qui lui auront été données.( ... ) (cela) indiquera et confirmera la structure légale qui a été mise en place pour le compte de son client ».

Une décision à l'effet contraire a été rendue dans une affaire Re Lauzier précitée, où le juge Bell, indiquant que l'on devait distinguer entre les faits, qui ne sont pas privilégiés, et les communications confidentielles, s'est dit d'avis que la comptabilité du compte en fidéicommis de l'avocat n'était pas privilégiée.

Enfin, dans l'arrêt Wolch's Guaranteed Food's c. Wolch précité, où le juge a passé en revue les documents de l'avocat dont on demandait la production, il a été statué que les notes écrites du cabinet juridique consulté par le failli, dont certaines faisaient référence à une rencontre ayant eu lieu entre le failli, son comptable et son avocat, étaient des communications privilégiées. La même conclusion a été tirée par le juge en ce qui a trait aux états de comptes du bureau d'avocats.

CODE VALIDEUR = B8SQGNUJKZ

-34-

500-09-003048-964

2) L'application des principes aux faits de l'espèce, le fardeau de preuve et le caractère imprécis des questions posées

Comme je l'ai mentionné, les catégories de questions telles que décrites plus haut se prêtent mal, vu leur généralité, à la reconnaissance d'un privilège. Compte tenu de l'imprécision des questions, le premier juge a maintenu les objections invoquant le secret professionnel. Avec égards, cette façon de procéder ne me paraît pas appropriée.

Il appartient à la partie qui invoque le privilège de démontrer que les informations visées tombent dans le champ couvert par le secret professionnel. Comme nous l'avons vu, une communication n'est pas privilégiée dès l'instant qu'il existe une relation professionnelle entre un avocat et son client. Celui qui l'invoque doit à tout le moins présenter une preuve prima faciae démontrant que les communications rencontrent les critères établis par la jurisprudence et, dès lors, mais uniquement à ce moment, il appartient à la partie qui soutient qu'une exception au privilège s'applique ou que le bénéficiaire y a renoncé, de faire la preuve de cette prétention.

Il en résulte que le caractère imprécis des questions posées aurait dû conduire le juge non pas à maintenir les objections à la preuve mais plutôt à les rejeter dans la mesure où

CODE VALIDEUR = B8SQGNUJKZ

500-09-003048-964

il ne bénéficiait pas d'une preuve suffisante pour pouvoir affirmer que des informations ou des documents précis revêtaient un caractère privilégié selon l'exigence posée dans l'arrêt Solosky, supra[36].

Par ailleurs, en ce qui concerne les catégories de questions, il me paraît impossible de pouvoir qualifier ces informations de privilégiées sans que des précisions soient apportées. Certaines questions portant sur ces matières pourraient ne pas être permises alors qu'il pourrait en être différemment de certaines autres, notamment celles ayant aux montants payés ou qui ne laissent pas transparaître d'éléments relatifs à la consultation.

Conclusion

Pour ces motifs, j'accueillerais l'appel en partie en cassant la décision du premier juge de maintenir les objections générales à la preuve et proposerais que l'affaire poursuive son cours, sous réserve que soient posées des questions précises qui

---

[36] Dans une affaire semblable mais basée sur le secret des délibérations du cabinet ( Smallwood c. Sparling, (1982) 2 ROS 686 ), la Cour suprême du Canada a jugé la demande de l'appelant prématurée.  Voir les propos du juge Wilson à la page 708.

CODE VALIDEUR = B8SQGNUJKZ

-36-

500-09-003048-964

permettraient de déterminer l'existence même d'un privilège relativement à ces matières.

Michel Robert, J.C.A.



CODE VALIDEUR = B8SQGNUJKZ

From:       TURCOTTE, MARTINE [martine.turcotte@bell.ca]
Sent:       Friday, April 19, 2002 10:52 AM
To:         LALANDE, MICHEL
Subject:    [Fwd: Shearman & Sterling]



Shearman &
Sterling (486 KB)

--
Martine Turcotte
Chief Legal Officer / Chef principal du service juridique
BCE Inc.
1000, de La Gauchetière Ouest
bureau 3700
Montréal, Qc  H3B 4Y7
Tel.: (514) 870-4637
Fax.: (514) 870-4877
Email:       martine.turcotte@bell.ca

Executive Assistant:  Diane Valade (514) 870-4638

1

CONFIDENTIAL - FOR ATTORNEYS' EYES ONLY          BCE-AD 0546123