IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------x
In re:                                                   :    Chapter 11
                                                         :
TELEGLOBE COMMUNICATIONS                                 :    Jointly Administered
CORPORATION, *et al.*,                                   :    Case No. 02-11518 (MFW)
                                                         :
                              Debtors.                   :
---------------------------------------------------------x
                                                         :
TELEGLOBE COMMUNICATIONS                                 :
CORPORATION, *et al.*,                                   :
                                                         :
                              Plaintiffs,                :
                                                         :
              v.                                         :    C.A. No. 04-CV-1266 (SLR)
                                                         :
BCE INC., *et al.*,                                      :
                              Defendants.                :
---------------------------------------------------------x

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO AFFIRM AND ADOPT
SPECIAL MASTER'S REPORTS AND ORDERS**

Counsel to the Defendants:

YOUNG CONAWAY                              SHEARMAN & STERLING LLP
STARGATT & TAYLOR, LLP

Pauline K. Morgan (No. 3650)               Stuart J. Baskin
The Brandywine Building                    George J. Wade
1000 West Street, 17th Floor               Jaculin Aaron
P.O. Box 391                               599 Lexington Avenue
Wilmington, DE 19899                       New York, NY 10022
(302) 571-6600                             (212) 848-4000

Dated: March 21, 2006

TABLE OF CONTENTS

| | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| ARGUMENT | 1 |
| I. The Standard of Review Is *De Novo* for Factual Findings and Legal Conclusions | 1 |
| II. Defendants' De-Designation of Certain Documents Originally Withheld as Privileged Does Not Justify the Wholesale Abrogation of the Attorney-Client Privilege for All of Its Documents | 3 |
| III. Plaintiffs' Additional Exhibits Are Cumulative and Fail to Satisfy Their Burden of Proving a Joint Representation | 6 |
| CONCLUSION | 8 |

## TABLE OF AUTHORITIES

### Cases

## TABLE OF AUTHORITIES

### Cases

**Page(s)**

*Am. Nat'l Bank & Trust Co. of Chicago v. Equitable Life Assurance Soc'y of the U.S.*,
  406 F.3d 867 (7th Cir. 2005) .................................................................................... 4

*In re Dow Corning Corp.*, 261 F.3d 280 (2d Cir. 2001) ....................................................... 4

*In re RFD, Inc.*, 211 B.R. 403 (Bankr. D. Kan. 1997) ........................................................... 5

*Pfizer Inc. v. Ranbaxy Labs. Ltd.*, No. 03-209-JJF, 2004 WL. 2323135
  (D. Del. Oct. 7, 2004) (unreported opinion) ............................................................... 5

*State v. Madden*, 602 S.E.2d 459 (W.Va. 2004) ............................................................. 5, 6

*United States v. KPMG LLP*, 316 F. Supp. 2d 30 (D.D.C. 2004) ..................................... 5, 6

### Rules

FED. R. CIV. P. 26 ..................................................................................................................... 4

FED. R. CIV. P. 53 ............................................................................................................... 1, 2, 3

### Miscellaneous

9 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 53 (3d ed. 2005) ................ 2, 3

## PRELIMINARY STATEMENT

Even Plaintiffs do not appear to believe that the Special Master's final decision provides a sufficient basis for the wholesale disclosure of "*all* of the documents on the privilege logs from November 1, 2001 and April 23, 2002." Final Decision on Plaintiffs' Motion to Compel Defendants to Produce Documents Withheld on the Basis of Privilege dated February 22, 2006, at 31 ("SM Dec.") (emphasis added). Instead, plaintiffs seek to insulate the Special Master's decision from this Court's *de novo* review. They offer an over-designation theory on which the Special Master did not rely. And they lodge with this Court several thousand pages of recycled exhibits, which they previously and unsuccessfully submitted to the Special Master, to shore up the joint-representation theory on which the Special Master did rely. *See* Motion to Affirm and Adopt Special Master's Reports and Orders dated March 14, 2006, at 4 n.4, 7-11, 12-15 ("Plaintiffs' Motion").

Contrary to plaintiffs' contentions:

- This Court reviews the Special Master's decision *de novo*.

- The over-designation theory provides no independent basis to adopt the Special Master's wholesale disclosure order.

- And the recycled exhibits are cumulative and ignore defendants' contrary evidence.

## ARGUMENT

**I.    The Standard of Review Is *De Novo* for Factual Findings and Legal Conclusions**

Contrary to plaintiffs' contention (Plaintiffs' Motion at 4 n.3), the standard for review of the Special Master's factual findings is *de novo*. Rule 53(g)(3) expressly provides that:

1

> The court *must decide de novo* all objections to findings of fact made or recommended by a master *unless* the parties stipulate *with the court's consent* that:
>
> (A) the master's findings will be reviewed for clear error.

FED. R. CIV. P. 53(g)(3) (emphasis added).

Although the parties initially stipulated that review of the Special Master's findings of fact would be for clear error, that stipulation was never accepted by this Court. In fact, the Court *denied* the motion that included the stipulation. *See* Order of Mar. 21, 2005, at 1 ("Plaintiff's motion to appoint a special master (D.I. 77) and the parties' stipulated agreement to have Collins J. Seitz, Jr. serve as the special master (D.I. 95) are *denied*.") (emphasis added). Although the Court appointed a Special Master five months later, its Order then stated that "[t]he Special Master's rulings shall be subject to review by the Court, *consistent with Rule 53(g)(3)-(5).*" Aug. 25, 2005 Order ¶ 9 (emphasis added). Since the Court did not mention any stipulation by the parties to clear-error review of factual findings, much less the required "consent" to that standard of review, Rule 53(g)(3) provides that the Court "must" decide "all objections to findings of fact" "*de novo.*" FED. R. CIV. P. 53(g)(3) (emphasis added). Moreover, because the order appointing the Special Master "must state . . . [the] standards for reviewing the master's orders, findings, and recommendations" (FED. R. CIV. P. 53(b)(2)(D)), the standard cannot be changed post-appointment to insulate the Special Master's factual findings from this Court's review. *See* 9 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 53.21[8], at 53-88 (3d ed. 2005) ("The appointment order must state the standards of review the court will follow in reviewing the master's orders, reports, and recommendations. . . . Unless the parties stipulate with the court's consent to a less searching review of the master's findings of fact, the trial court must review them de novo.") (citation omitted).

2

Plaintiffs assert that "the Defendants should be estopped from arguing that the Special Master's factual findings are reviewable under any other standard" than for clear error. Plaintiffs' Motion at 4 n.3. But Plaintiffs offer no authority for their assertion. *See id.* In any event, it is foreclosed by the express language of Rule 53(g).[1]

## II. Defendants' De-Designation of Certain Documents Originally Withheld as Privileged Does Not Justify the Wholesale Abrogation of the Attorney-Client Privilege for All of Its Documents

Plaintiffs represent that one of the "bases" of the Special Master's decision is "Defendants' over-designation of documents as privileged" and that the over-designation basis was "sufficient alone to warrant production of all documents listed on their logs." Plaintiffs' Motion at 6. That representation is demonstrably false. The Special Master concluded the section labeled "Over-designation of Documents" with the following sentence: "Because I find that the joint representation issue is dispositive of the privilege issues, *I do not address the [plaintiffs'] other bases for relief.*" SM Dec. at 29 (emphasis added). Contrary to Plaintiffs' representation, over-designation is thus not a basis for the Special Master's decision and this Court need not reach that issue in the absence of factual findings and legal conclusions from the Special Master.

If this Court is inclined to decide the over-designation issue without the benefit of the Special Master's report, it should reject both the factual claim that Defendants impermissibly over-designated privileged documents and the legal conclusion that indiscriminate invasion of a client's privileged documents is a permissible sanction for over-designation.

---

[1] Even if the Court had given its consent to review for clear error (which it did not), this Court would be free to withdraw that consent. *See* FED. R. CIV. P. 53(g)(3) advisory committee's note (2003) (court is free "to withdraw its consent to a stipulation for clear-error review or finality, and then to decide de novo"); 9 MOORE'S FEDERAL PRACTICE § 53.42[1], at 53-98.1 ("Moreover, even if the court initially consents to the parties' stipulation that the master's findings will be subject to a relaxed standard of review, it may subsequently withdraw that consent, either in its entirety or with respect to findings as to individual matters, and review the findings de novo.") (footnote omitted).

3

As a matter of fact, plaintiffs grossly exaggerate the extent of improper designation of documents in this case. To be sure, mistakes were made in document classification, as they are in any large and complex litigation, especially one in which the parent-subsidiary relationship presents difficult issues of privilege.[2] But there is no indication that the mistakes were anything other than the result of defendants' good-faith attempt to comply with plaintiffs' voluminous document requests. Defendants' correction of Exhibits C and E to Plaintiffs' Motion is attached to this Response as Exhibit A.

As a matter of law, even if defendants' misdesignation of documents warranted some sanction, the wholesale abrogation of the attorney-client privilege for all of BCE Inc.'s ("BCE's") documents would be improper. "[C]ompelled disclosure of privileged attorney-client communications, absent waiver or an applicable exception, is contrary to well established precedent" as well as Federal Rule of Civil Procedure 26(b)(1), which authorizes parties to obtain discovery only of matters that are "not privileged." *In re Dow Corning Corp.*, 261 F.3d 280, 284 (2d Cir. 2001); FED. R. CIV. P. 26 (b)(1). The discovery rules provide no basis for imposing as a sanction the loss of the attorney-client privilege for documents that *are* privileged merely because defendants improperly designated *other* documents that are not. *See Am. Nat'l Bank & Trust Co. of Chicago v. Equitable Life Assurance Soc'y of the U.S.*, 406 F.3d 867, 877-

---

[2] Plaintiffs themselves have had serious production problems. After defendants repeatedly questioned the completeness of plaintiffs' production, plaintiffs finally produced -- after the extended October 31, 2005 discovery cutoff--huge amounts of additional information that should have been produced at the outset of discovery. In November 2005, they produced about 120 boxes of documents from their headquarters in Reston, Virginia, even though they had previously represented that they had produced all responsive documents in the Spring of 2005. In addition, in November 2005, they produced five boxes of documents from the files of Kathy Morgan (a percipient witness and the person responsible for overseeing this litigation on behalf of plaintiffs), that they had previously overlooked. In November 2005, plaintiffs also made available an index that finally allowed defendants a degree of meaningful access to documents warehoused by Teleglobe in Canada, with the result that defendants reviewed scores of additional boxes produced by plaintiffs in Montreal. Even though this is a case in which plaintiffs have squarely put their financial condition at issue, plaintiffs did not disclose the existence of the computerized database containing their books and financial records in their initial required disclosures of their electronic data at the beginning of the case. Defendants discovered this in taking the deposition of one of plaintiffs' employees in September 2005, and after several months of requests for it, finally obtained access to that database in December 2005. Transcrpt of November 15, 2005 Court Hearing at 5-11; 16-17.

80 (7th Cir. 2005) (district court abused its discretion by compelling disclosure of approximately 400 documents as discovery sanction for inclusion in party's privilege log of some documents that court determined were outside privilege); *State v. Madden*, 602 S.E.2d 459, 465 (W.Va. 2004) (erroneous privilege claim for some documents would not justify loss of privilege for other documents); *cf. In re RFD, Inc.*, 211 B.R. 403, 410 (Bankr. D. Kan. 1997) (bank's failure to provide, for period of roughly four-and-one-half months, a privilege log identifying documents that it withheld from discovery did not rise to level of waiver of the attorney-client privilege that it enjoyed with respect to those documents).

In the two decisions on which plaintiffs rely, *Pfizer Inc. v. Ranbaxy Labs. Ltd.*, No. 03-209-JJF, 2004 WL 2323135 (D. Del. Oct. 7, 2004) (unreported opinion), and *United States v. KPMG LLP*, 316 F. Supp. 2d 30 (D.D.C. 2004), the courts did not deprive the party of its attorney-client privilege as a sanction for improperly classifying documents. In *Pfizer*, the defendant sought "production of four categories of documents: (1) documents with no attorney identified as the author or recipient; (2) documents with no author or recipient identified at all; (3) documents where only scientific teams or committees [were] listed as author or recipient; and (4) documents where an attorney [was] only one of many recipients." See *Pfizer*, 2004 WL 2323135, at *1. After a review of 15 randomly chosen documents revealed that *not one* was actually privileged, the court found it logical to assume that the other documents in the facially suspect categories were not privileged. Thus, the court held that the plaintiff "ha[d] not established the application of the attorney-client privilege and/or work product doctrine to the withheld documents." *Id* at *3.[3]

---

[3] Although the court found that the plaintiff "ha[d] improperly used the attorney-client privilege and work product doctrine to shield discoverable documents," it made that finding only to justify requiring the plaintiff to pay the defendant's costs and fees incurred in bringing the motion to compel. *Id*. at *2-*3. The court did not hold that a party's improper privilege designations justified the loss of the privilege for other documents as a sanction.

5

Similarly, *KPMG* required production of documents the court believed were not protected by privilege (in most instances, the novel tax advisor-client privilege). *See* 316 F. Supp. 2d at 44 (ordering production of documents on ground that KPMG was "misrepresenting its unprivileged tax shelter marketing activities as privileged communications"). Although the court's finding was based on a sample of the documents, like the *Pfizer* court, it clearly believed that *none* of the documents was privileged. *Id.*

In contrast to *Pfizer* and *KPMG*, the Special Master's review of a sample of the documents on BCE's privilege log could not support the conclusion that all of the documents on the log were improperly withheld on the ground of privilege. Indeed, the Special Master himself recognized that fact when he decided to review all of the documents on BCE's log. *See* SM Dec. at 29 (noting that the Special Master decided to review "all the documents on the privilege logs to reach a final decision on the privilege issue"). Given the fact-intensive nature of the joint-client privilege analysis, any other decision would have been clearly erroneous. *See Madden*, 602 S.E.2d at 465 (holding that trial court erred in ordering insurer to produce 450 allegedly privileged documents because, even if some documents listed on the log were not privileged, court could not order disclosure of others without *in camera* review of each document).

### III. Plaintiffs' Additional Exhibits Are Cumulative and Fail to Satisfy Their Burden of Proving a Joint Representation

This Court need not review the several thousand pages of alleged joint-representation exhibits that Plaintiffs have lodged with the Clerk. Plaintiffs previously submitted those exhibits to the Special Master, but the Special Master appears to have found them to be cumulative. He rested his decision instead on his "*in camera* review of the privilege log documents." SM Dec. at 31. For the same reasons stated in Defendants' Objections to Special Master's Final Decision on Plaintiffs' Motion to Compel Defendants to Produce Documents Withheld on the Basis of

Privilege (Mar. 14, 2006), Plaintiffs' exhibits fail to prove a joint representation between BCE and Teleglobe Inc. ("Teleglobe") on BCE's decision to cease funding of Teleglobe or the legal consequences of that decision.[4]

In any event, if the Court is nonetheless inclined to review Plaintiffs' exhibits without the benefit of the Special Master's views, then Defendants respond to the allegations point-by-point in Exhibit B to this Response and lodge with the Court defendants' prior briefs and supporting affidavits, declarations, and depositions. As Plaintiffs' admit in their first footnote, "[t]he Appendix of Record Materials consists of the record *compiled by the Plaintiffs* before the Special Master." Plaintiffs' Motion at 1 n.1 (emphasis added). Defendants also compiled a record before the Special Master. Plaintiffs' submission is repetitive, not responsive.

Lastly, plaintiffs contend that "BCE's lawyers, in certain cases, shared listed documents with lawyers who represented BCE and Teleglobe jointly, precluding the assertion of privilege as to those documents." *Id.* at 7; *see also id.* at 17, 18. Plaintiffs cite no authority for their contention other than the Special Master's decision. *See id.* The Special Master himself cited no authority for the conclusion that BCE loses the privilege on communications from its outside counsel merely because they pass through in-house lawyers who represent Teleglobe as well. An expert declaration from Professor Stephen Gillers, who teaches legal ethics at New York University Law School and is an expert on privilege and the duties of confidentiality and disclosure, disagrees with the Special Master's unsupported conclusion and believes that the

---

[4] As a matter of law and policy, no exception to the privilege should apply in the event of subsequent litigation between a parent corporation and its wholly owned subsidiary. A parent corporation has a compelling interest in the legal affairs of its wholly owned subsidiary. Among other things, parental involvement ensures consistent and coordinated compliance and control in accordance with the Sarbanes-Oxley Act. Recognition of an exception to the privilege for subsequent litigation by the subsidiary against the parent would require each member of the corporate group to retain its own counsel in order to preserve the privilege. Such Balkanization of the in-house legal function is inconsistent with the prevailing organization of such functions. Reorganization would require corporations to incur enormous cost and would insulate the subsidiaries' legal affairs from parental review, potentially jeopardizing corporate compliance. The joint-client exception was never intended to apply (and should not) to disputes between parent corporations and their wholly owned subsidiaries.

privilege between BCE and its outside counsel remains intact. *See* Declaration of Stephen Gillers dated March 20, 2006, submitted contemporaneously with this Response.

## CONCLUSION

For the foregoing reasons, and the reasons provided in Defendants' Objections to Special Master's Final Decision on Plaintiffs' Motion to Compel Defendants to Produce Documents Withheld on the Basis of Privilege, Plaintiff's motion to adopt should be denied.

Respectfully submitted,

YOUNG CONAWAY
STARGATT & TAYLOR, LLP

*/s/ Pauline K. Morgan*

Pauline K. Morgan (No. 3650)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899
(302) 571-6600
pmorgan@ycst.com

-and-

SHEARMAN & STERLING LLP

Stuart J. Baskin
George J. Wade
Jaculin Aaron
599 Lexington Avenue
New York, NY 10022
(212) 848-4000

Counsel for the Defendants

Dated: March 21, 2006
Wilmington, DE

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 21, 2006, I electronically filed a true and correct copy of foregoing document was filed with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Gregory V. Varallo, Esq.
Mark D. Collins, Esq.
C. Malcolm Cochran, IV, Esq.
Robert J. Stern, Jr., Esq.
Kelly E. Farnan, Esq.
Anne S. Gaza, Esq.
Richards, Layton & Finger, P.A.
920 N. King Street
Wilmington, DE  19801

Joseph A. Rosenthal, Esq.
Rosenthal, Monhait, Gross & Goddess, P.A.
1401 Mellon Bank Center
P.O. Box 1070
Wilmington, DE  19899-1070

I further certify that on March 21, 2006, I caused a copy of the foregoing document on the to be served upon the following non-registered participants in the manner indicated below:

BY EMAIL
John P. Amato, Esq.
Mark S. Indelicato, Esq.
Zachary G. Newman, Esq.
Jeffrey L. Schwartz, Esq.
Hahn & Hessen LLP
488 Madison Avenue
New York, NY  10022

*/s/ Margaret B. Whiteman*
Pauline K. Morgan (No. 3650)
Maribeth Minella (No. 4185)
Margaret B. Whiteman (No. 4652)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6681
pmorgan@ycst.com
mminella@ycst.com
mwhiteman@ycst.com
bank@ycst.com

*Attorneys for Defendants*