## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------------  x
In re                                                    )   Chapter 11
                                                         )
TELEGLOBE COMMUNICATIONS CORPORATION, et al.,  )   Jointly Administered
                                                         )   Bankr. Case No. 02-11518 (MFW)
            Debtors.                                     )
------------------------------------------------------------------  x
TELEGLOBE COMMUNICATIONS CORPORATION, et al.,  )
                                                         )   C.A. No. 04-CV-1266 (SLR)
            Plaintiffs,                                  )
                                                         )
     v.                                                  )
                                                         )
BCE INC., et al.,                                        )
                                                         )
            Defendants.                                  )
------------------------------------------------------------------  x
```

## PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS
## TO THE SPECIAL MASTER'S FINAL DECISION

Gregory V. Varallo (No. 2242)
C. Malcolm Cochran, IV (No. 2377)
Chad M. Shandler (No. 3796)
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, Delaware  19899
(302) 651-7700
varallo@rlf.com
cochran@rlf.com
shandler@rlf.com

Attorneys For Teleglobe Comm. Corp., et al.

Dated:  March 21, 2006

## TABLE OF CONTENTS

Page

I.    SUMMARY OF RESPONSE TO DEFENDANTS' OBJECTIONS ........................1

II.   THE STANDARD OF REVIEW ...................................................................................3

III.  THE GOVERNING LAW ..............................................................................................4

IV.   UNDISPUTED FINDINGS ...........................................................................................4

V.    RESPONSE TO BCE'S OBJECTIONS .........................................................................5

      A.  BCE and Teleglobe Were Jointly Represented ...................................................5

      B.  The Joint Representation Related to Matters of Common Interest ....................8

      C.  The US Debtors Are Entitled to Receive the Documents ..................................9

## TABLE OF AUTHORITIES

### CASES

*Bass Public Limited Co. v. Promus Companies, Inc.,*
C.A. No. 92-CV-0969, 1994 WL 164031 (S.D.N.Y. Apr. 26, 1994)...............................................11

*Conte Bos. Automotive, Inc. v. Quaker State Slick 50, Inc.,*
165 F.3d 221 (3d Cir. 1998).................................................................................................10

*Divinsky v. Bethania,* [2002] 169 Man. R. (2d) 215 ....................................................................12

*Glidden Co. v. Jandernoa,*
173 F.R.D. 459 (W.D. Mich. 1997)......................................................................................10

*Grimes v. LLC Int'l, Inc.,*
C.A. No. 16957, 1999 WL 252381 (Del. Ch. Apr. 23, 1999)...................................................7

*McRae v. Canada Attorney-General,* [1997] 46 B.C.L.R. (3d) 137......................................12

*In re Mirant Corp.,*
326 B.R. 646 (Bankr. N.D. Tex. 2005)...........................................................................9, 10

*Nilssen v. Motorola, Inc.,*
C.A. No. 96-C-5571, 2002 WL 206007 (N.D. Ill. Feb. 8, 2002).............................................9

*Pfizer Inc. v. Ranbaxy Labs. Ltd.,*
C.A. No. 03-209-JJF, 2004 WL 2323135 (D. Del. Oct. 7, 2004)........................................4, 5

*Philadelphia Reinsurance Corp. v. Employers Ins. of Wausau,*
C.A. No. 02-1943, 2003 WL 1698892 (3rd Cir. March 31, 2003)...........................................10

*Robinson v. Cent. Loan and Finance Corp.,*
609 F.2d 170 (5th Cir. 1980)..................................................................................................9

*In re Teleglobe, Inc.,* [2004]
O.J. No. 2905........................................................................................................................11

*Wujick v. Dale & Dale, Inc.,*
43 F.3d 790 (3d Cir. 1994)...................................................................................................10

*In re Welding Rod Prod. Liability Litig.,*
C.A. No. 03-CV-17000, 1535, 2004 WL 3711622 (N.D. Ohio, Nov. 10, 2004)...................3

## STATUTES & OTHER AUTHORITIES

Fed. R. Civ. P. 53(g)(3) ................................................................................................................. 3

9 <u>Moore's Federal Practice</u>, §§ 53.10[1][b], 53.41 .................................................................. 3, 4

D.R.E. 502(d)(6)(2005) ............................................................................................................. 11

1 <u>McCormick on Evidence</u> § 91 ........................................................................................... 11, 12

I.    **SUMMARY OF RESPONSE TO DEFENDANTS' OBJECTIONS**

1.     The Defendants (collectively "BCE") have not objected to a number of the Special Master's conclusions, including his finding that BCE has wrongfully over designated documents as privileged. That finding undermines any confidence in the accuracy of BCE's privilege logs, and is sufficient alone under this Court's precedent to justify an order compelling production of the documents listed on those logs.

2.     BCE has mischaracterized the Special Master's Final Decision (D.I. 213) (the "Final Decision"). Among the more egregious: Special Master Seitz most certainly did not "extrapolate" a joint representation of BCE and Teleglobe "*based on little or no evidence*" as BCE avers in the very first sentence of its argument. Objections at 5 (D.I. 228) (emphasis supplied). To the contrary, the Special Master found a joint representation of Teleglobe and BCE following a careful *in camera* review of *each and every document still withheld by BCE*. That collection totaled more than 1000 separate documents, and filled some *50 binders*. The Special Master also received two rounds of briefing, held oral argument, accepted multiple supplemental letter memoranda, considered a record (in addition to the documents reviewed *in camera*) that may be fairly described as massive, and issued two preliminary rulings before releasing his Final Decision. How BCE might have overlooked all of this is a mystery.

3.     Special Master Seitz also did *not* conclude that the documents the Defendants are withholding are "privileged." Objections at 1. Rather, Master Seitz held that BCE "[has] not demonstrated that the documents on the privilege log reflect advice from BCE's in-house and outside counsel provided exclusively to BCE on matters relating to the funding issue." Final Decision at 31. The Special Master then concluded: "[T]he withheld documents demonstrate that there was a joint representation by BCE's attorneys of BCE and Teleglobe relating to a matter of common interest." Final Decision at 31. Those findings, as demonstrated in the

Special Master's Final Decision, preclude the assertion of privilege by BCE as against Teleglobe, or its U.S. operating subsidiaries (the "U.S. Debtors") here.

4.    The Special Master's findings regarding the scope of the joint representation also have been mischaracterized by BCE. At its essence, this case involves the decision by BCE not to restructure Teleglobe and the U.S. Debtors, but instead to withdraw the funding it had committed and to consign the Teleglobe enterprise to bankruptcy, and liquidation. It was on these matters that the Special Master found that Teleglobe and BCE had been jointly represented. See Final Decision, at 31-32 (finding a "broad legal representation of both BCE and Teleglobe by BCE's in-house attorneys *relating to Teleglobe's restructuring alternatives*." (emphasis supplied)); id. at 34 (". . . the BCE in-house attorneys were clearly jointly representing BCE and Teleglobe as late as April 19 related to funding issues."); id. at 35-43 (discussing joint representation by outside counsel). And as might be expected (since irrelevant documents presumably were not listed by BCE on its log) the Special Master found that the documents BCE has withheld all relate, in one way or another, to these restructuring and funding issues.

In short, once a joint representation was found on the matters that are central to this lawsuit, the Special Master's decision to compel the production of all of the documents listed on the log (falling within the time restrictions) is hardly surprising.

5.    Finally, in asserting that the U.S. Debtors are not entitled to documents falling within the BCE-Teleglobe "common interest" privilege, BCE is attempting to reverse entirely the position it has taken on this issue for some two years now, and is mischaracterizing the law. This is not a "joint defense privilege" case where parties who remain aligned are seeking to protect a privilege as against an outsider. It is instead a matter involving parties, *now adverse*, who formerly were advised by common counsel. As described, *infra*, the law that actually applies

here holds that where two parties share one lawyer in a matter of common interest, either may waive the privilege in a subsequent dispute between the two regarding the matter. Indeed, when this case was pending before Judge Walrath, *BCE applied exactly that principle.* It *asserted* that Teleglobe had received advice from joint BCE-Teleglobe counsel (the same lawyers involved here) on matters of common interest relating to the restructuring, and funding of Teleglobe and the U.S. Debtors. BCE then *withheld* from the Creditors Committee, but agreed to *produce* to the U.S. Debtors, dozens of documents for which BCE claimed a "common interest privilege" *with Teleglobe, Inc.* BCE then reiterated this position in the proceedings before Special Master Seitz, claiming that it had already produced (or would produce) the BCE-Teleglobe, Inc. common interest documents. BCE's about face should not be permitted.

In short, the Plaintiffs see no basis, in law or in fact, for BCE's Objections. They should be overruled.[1]

## II.    THE STANDARD OF REVIEW

Unless the parties otherwise stipulate (with the Court's consent), the standard of review on appeal from the decision of a Special Master is *de novo* as to findings of fact and conclusions of law. Fed. R. Civ. P. 53(g)(3). The parties in this case, however, executed and submitted a stipulation, in which they consented to the review of Special Master Seitz's findings under the

---

[1] BCE failed to file its Objections by March 14, 2006, which was the deadline for Objections as provided in Federal Rule 53(g)(2), and in this Court's oral order of March 7, 2006. See 3/7/06 Transcript at 13-14 (D.I. 221). BCE's "Request to Change Filing Date" (D.I. 230) is unsupported by authority permitting the requested relief, and is conclusory in nature, having failed to explain the reasons that BCE waited until the 11th hour to attempt to file its Objections. Nor have the "technical difficulties" BCE experienced been described. BCE's "Request to Change Filing Date" should be denied, and its Objections deemed waived. See In re Welding Rod Prod. Liability Litig., C.A. No. 03-CV-17000, 1535, 2004 WL 3711622, at *4 (N.D. Ohio, Nov. 10, 2004) (failure to meet deadline for objecting to special master's findings "results in permanent waiver" of any objections to report); 9 Moore's Fed. Practice, 3rd § 53.41 ("The Court may properly refuse to hear objections that are untimely.").

"clear error" standard. (D.I. 95). The Court declined to enter that stipulation as an order, but we are nonetheless of the view that its execution and filing by BCE may fairly be held to waive any objection by BCE, should the Court decide to apply the "clear error" standard now. See 9 Moore's Fed. Practice, §§ 53.10[1][b] (discussing waiver of objections to order of appointment) and 53.42[3] (court may amend standard for review set forth in the order of appointment).

## III.    THE GOVERNING LAW.

BCE has not objected to any of the Special Masters' findings regarding choice of law, or the substance of the attorney client privilege and the common interest doctrine. Nor has BCE objected to the Special Master's recitation of the substance of the work product doctrine. These findings may be adopted by the Court. See supra at 3, n.1.

## IV.    UNDISPUTED FINDINGS.

BCE has not objected to the Special Master's ruling that, under Pfizer Inc. v. Ranbaxy Labs. Ltd., C.A. No. 03-209-JJF, 2004 WL 2323135, at *3 (D. Del. Oct. 7, 2004), he "would have been justified in ordering the production of all documents" from BCE's privilege logs as a result of its' wrongful over designation of documents as privileged. Final Decision at 29. More specifically, BCE has not objected to the Special Master's finding that the "defendants failed the [initial *in camera*] audit of their privilege log documents in multiple ways. . . ." and that these failings included "withdrawing documents from the logs before *in camera* review [and] claiming privilege over documents that did not reflect legal advice. . . ." Id. at 28-29.[2]  These findings, and the others pertaining to BCE's over designation of documents, may be adopted by the Court.

---

[2] The Special Master also found that his initial 50 document audit revealed "documents where it appeared that BCE in-house attorneys and outside counsel jointly represented BCE, Teleglobe, or the Debtors on matters of common interest." Final Decision at 28-29. This finding is, in effect, challenged on this appeal.

4

Because BCE has not objected to the Special Master's findings of over designation of documents the Court may, without more, affirm the Special Master's order requiring the production of all privilege log documents, under this Court's decision in Pfizer. See Motion to Affirm and Adopt Special Master's Reports and Orders (D.I. 223).[3] As demonstrated in the Motion to Affirm, the wrongful over designation by BCE, totaling some *56,000 pages* of documents, extended far beyond that which the Special Master found sufficient to justify an order compelling production of all documents from BCE's logs. Id.

BCE also has not objected to the Special Master's description of the "Procedural Background" (Final Report at 4-19), nor to the Special Master's descriptions of the parties' supplemental legal arguments. These may be adopted and affirmed by the Court.

## V.    RESPONSE TO BCE'S OBJECTIONS.

BCE's objections come down to three: (i) that BCE and Teleglobe, Inc. were not "jointly represented"; (ii) that the withheld documents do not related to matters of "common interest" and, (iii) that Teleglobe, Inc. cannot provide "common interest privileged documents" to the U.S. Debtors. Each of BCE's objections should be overruled.

### A.    BCE and Teleglobe Were Jointly Represented

At pages 11 through 18 of our Motion to Affirm, the Plaintiffs describe in detail documents (apart from those reviewed *in camera*) and testimony that demonstrate a "broad legal representation" of both BCE and Teleglobe by BCE's in house and outside attorneys relating to Teleglobe's restructuring alternatives, and to whether BCE had committed to fund Teleglobe. Those pages are incorporated herein by reference and not repeated, for brevity's sake. The joint

---

[3] Plaintiffs incorporate herein by reference the substance of their Motion to Affirm and Adopt Special Master's Reports and Orders, in its entirety (D.I. 223), along with Volumes A through F of the Appendix of Record Materials, lodged with Court in connection therewith. (D.I. 222).

5

representation continued until Teleglobe's BCE dominated board was replaced and its funding withdrawn, on April 23, 2002. Id.

The lawyers jointly representing BCE and Teleglobe included in house lawyers Lalande, Turcotte, Ryan and Ricciuto, and outside firms Davies Ward, Osler Hoskin, and Shearman & Sterling.[4]  Motion to Affirm at 11-19.

The notion promoted by BCE's chief legal officer, Martine Turcotte (in her recent affidavit, D.I. 227), that she advised only BCE with regard to matters involving the restructuring or funding of Teleglobe is directly rebutted by (among other evidence) the testimony of her "client," Jean Monty, who simultaneously served as Chairman and CEO of both BCE and Teleglobe, Inc.  Mr. Monty has directly testified that Ms. Turcotte assisted him in understanding his responsibilities regarding Teleglobe's restructuring *in his capacity as Teleglobe's CEO*:

> Q.    And the third point, hiring of Lazard mid March for TGO restructuring process, MT.  What does MT refer to?
>
> A.    Martine Turcotte was involved in that process to help me understand my responsibilities as TGO's CEO because Lazard was hired by Teleglobe.
>
> Q.    What did Ms. Turcotte tell you about your responsibilities?
>
> A.    I asked her, as a lawyer, what - - she wasn't representing anybody at that stage.  She was helping me to understand my responsibilities and how I should deal with Lazard.
>
> ***
>
> A.    So I can't - - my request to Martine was how should I deal with this from your understanding of the law and my responsibilities, and that's all I asked her to do.
>
> Q.    What did she tell you?

---

[4]  The Declaration of Mark Shapiro (D.I. 226), formerly of the Shearman firm, is legally insufficient (as based on hearsay, in paragraph 3 thereof), conclusory, and contradicted by the documentary record, set out at page 18 of our Motion to Affirm.  It should be rejected.

6

   A.  Hire Lazard for Teleglobe.

Monty Dep. at 274-275 (Stuhlman Aff. Ex. 12).[5]

  Ms. Turcotte also seemed to have no understanding of the conflict she faced when advising Monty, or Sabia, both of whom served simultaneously as the senior officers and directors of BCE and Teleglobe, Inc. (and in Sabia's case, the U.S. Debtor, TCC). Instead, she rendered advice on the subject of Teleglobe's restructuring without regard to the positions held (and the duties owed) by her "clients." See Turcotte Dep. 57-68 (Notice of Lodging (D.I. 222), Vol. A, Tab C at Ex. 1); Turcotte Dep. 513-521 (Cochran Aff. at Ex. 43 (D.I. 224)).[6]

  As observed by Special Master Seitz, "[c]ounsel did not attempt, until late in the game, to clarify who was representing whom and on what subject matter. Even where separate representation supposedly occurred, the lines of representation continued to be blurred." See Final Decision at 31; see also Grimes v. LLC Int'l, Inc., C.A. No. 16957, 1999 WL 252381 (Del. Ch. Apr. 23, 1999) (ambiguity resolved against the claim of privilege). The joint representation is apparent.[7]

---

  [5] The Transmittal Affidavit of Gregory E. Stuhlman has been filed contemporaneously herewith.

  [6] Ms. Turcotte's affidavit largely begs the question. The fact that BCE may have had its own interest in Teleglobe's disclosures, or in counsel's presentations to its Board, fails to address Teleglobe's common interest in those matters -- and fails to explain the role (and duties) of what Special Master Seitz has found was joint counsel. Indeed, Ms. Turcotte entirely overlooks the fact that in advising BCE's board, she was also advising Teleglobe's senior officers, and some of its directors.

  [7] While we did not expressly argue before the Special Master that Shearman & Sterling had advised Teleglobe on matters of common interest with BCE, we could not have known of the joint representation had the Special Master not conducted an *in camera* review. The privilege log descriptions give little or no clue. In any event, we did specifically ask for the production of *all* documents wrongfully withheld by the Defendants between November 1, 2001 and April 23, 2002, including those authored by outside counsel. See Notice of Lodging, Vol. A, Tab D at pp. 1-2, 26; Vol. A, Tab A at pp. 10-11; Vol A, Tab E at p. 4. We also requested the (Continued)

**B.    The Joint Representation Related to Matters of Common Interest.**

It comes with ill grace for BCE now to assert that the matters identified by the Special Master (BCE's commitment to fund, and the restructuring of, Teleglobe) were not of "common interest" to BCE and Teleglobe, Inc. -- or that the two were not jointly represented. In fact, BCE *itself* asserted that very same common interest before Judge Walrath, in seeking to *withhold documents from production to the Creditors' Committee* during the Bankruptcy Rule 2004 discovery process, which preceded the filing of this case. In that connection, BCE served a privilege log that characterized dozens of documents as privileged from production to the creditors, citing its "common interest" *with Teleglobe, Inc.* See BCE's Original Rule 2004 Privilege Logs (Stuhlman Aff. Exs. 2, 3). When the Committee moved to compel, the U.S. Debtors asserted their rights, as the wholly owned operating subsidiaries of holding company Teleglobe, Inc. (i.e., the real parties in interest) to see and have access to those very same documents. See Rule 2004 Transcript at 75 (Ex. A hereto). BCE agreed, on the record, to afford the U.S. Debtors the access they sought, and Judge Walrath thereafter ordered production to the U. S. Debtors of *all of the common interest documents.* Id. at 75-77. Special Master Seitz's Final Decision demonstrates that BCE failed to comply, in material respects, with that order.

Moreover, the "common interest" documents that were handed over to the U.S. Debtors during the Rule 2004 proceeding plainly reveal what even BCE (at least at that point) had conceded: Teleglobe, Inc. and its parent BCE had a common interest in whether the Teleglobe enterprise would be funded by BCE and/or restructured. Indeed, one wonders how it could be otherwise. See, e.g. Examples of Common Interest Documents Produced To Debtors by BCE (Stuhlman Aff. Ex. 1A - 1L); BCE's Opposition to Committee's Motion to Compel at pp. 18-19

---

production of all Project X documents, which necessarily includes many of the Shearman and Sterling documents.

8

(Ex. B hereto). And the common interest documents that were produced by BCE further show that both entities were being advised by common counsel. See, e.g., Examples of Common Interest Documents (Stuhlman Aff. Ex. 1A - 1L).

The fact that some documents relating to these subjects may not have been intended for production to Teleglobe, Inc. (Objections at 6), or may not address directly the funding or restructuring issues (Objections at 8), is not dispositive. As Master Seitz observed with regard to the Project Special documents, many of the withheld documents address the impact on BCE of the decision to cease funding, or restructure, Teleglobe. Final Report at 38. Such are but the other side of the same coin. And where the same lawyer advises on both sides of the same issue, nothing may be withheld from either joint client, nor in a subsequent dispute on the matter between the two. See Final Decision at 26, 35, 39-41; In re Mirant Corp., 326 B.R. 646, 649-50 (Bankr. N.D. Tex. 2005).

Pages 11 through 19 of our Motion to Affirm detail examples of documents and testimony, along with privilege log descriptions, that amply make the point. The joint representation was on matters of common interest.

## C.    The U.S. Debtors Are Entitled to Receive the Documents.

Finally, BCE's assertion that the U.S. Debtors are not entitled to receive BCE-Teleglobe, Inc. common interest documents is both bewildering, and wrong.[8]  As noted, supra, BCE agreed (and was ordered) to produce such to the U.S. Debtors--prior even to the filing of this lawsuit.

---

[8] This argument, and the assertion that Kathy Morgan (as Plan Administrator for Teleglobe, Inc. and the U.S. Debtors) cannot waive the common BCE-Teleglobe, Inc. privilege, was not presented by BCE to the Special Master. BCE should not be permitted to assert these positions for the first time on appeal. See Nilssen v. Motorola, Inc., C.A. No. 96-C-5571, 2002 WL 206007, at *11 (N.D. Ill. Feb. 8, 2002) (precluding party objecting to special master's decision from raising new arguments); Robinson v. Cent. Loan and Finance Corp., 609 F.2d 170, 174 (5th Cir. 1980) (same).

See Rule 2004 Transcript at 75-77 (Ex. A hereto). Since this suit was filed, BCE has *repeatedly* represented, on the record, that it had or would produce all "common interest" documents to the U.S. Debtors -- including documents purportedly protected by the BCE-Teleglobe Inc. common interest privilege. See, October 31, 2005 Transcript at 93-94; 113-114 (Ex. C hereto); March 31, 2005 Transcript at 39 (D.I. 100) (Ex. D hereto). At this point, following the close of fact discovery, BCE should be precluded from asserting the contrary position.[9] See Philadelphia Reinsurance Corp. v. Employers Ins. of Wausau, C.A. No. 02-1943, 2003 WL 1698892, at *2 (3d Cir. March 31, 2003) (admissions of counsel are "binding on his client"); see also Conte Bros. Auto. Inc. v. Quaker State-Slick 50, Inc., 165 F.3d 221, 235 (3d Cir. 1998) (admissions in briefs are binding on party); Wujick v. Dale & Dale, Inc., 43 F.3d 790, 791-92 (3d Cir. 1994) (statements made during oral argument are binding and are deemed judicial admissions).

Moreover, the notion that Kathy Morgan, as Plan Administrator for *both* Teleglobe, Inc. and the U.S. Debtors, cannot permit the U.S. Debtors to have access to the common interest BCE-Teleglobe, Inc. documents is, simply, wrong. Specifically, Ms. Morgan is not a trustee in a pending bankruptcy -- a fact which alone renders inapposite nearly all of the cases upon which BCE relies. See Objections at 12-14. She is, instead, the administrator of a post bankruptcy plan that has been adopted and approved both in Canada (under a "Plan of Arrangement") and in the United States (by Chief Judge Walrath). See Sanction Order ¶¶ 6, 19 (Stuhlman Aff. Ex. 6); Order Confirming First Amended Joint Chapter 11 Plan, ¶ 6 (Stuhlman Aff. Ex. 7). Both the U.S. and Canadian plans incorporated by reference (and approved) the same "Plan

---

[9] Notably, as wholly owned subsidiaries of Teleglobe, Inc., the U.S. Debtors would fall within the ambit of the Teleglobe, Inc. - BCE common interest privilege in any event. See, e.g., Glidden Co. v. Jandernoa, 173 F.R.D. 459, 472-73 (W.D. Mich. 1997); In re Mirant Corp., 326 B.R. at 651-52. As "clients" of the common BCE - Teleglobe, Inc. lawyers, the common interest documents may not be withheld from the U.S. Debtors either.

Administration Agreement." Under that document, Ms. Morgan serves as the sole officer and director of the Canadian (including Teleglobe, Inc.) and U.S. Debtors. Plan Administration Agreement § 3.7 (Stuhlman Aff. Ex. 5). The Plan Administration Agreement further vests in Ms. Morgan; "all of [the] respective rights and powers of [Teleglobe, Inc. and the U.S. Debtors]" to control the instant case for the U.S. Debtors, as well as any litigation initiated in Canada on behalf of Teleglobe, Inc. "including, without limitation any attorney/solicitor client privilege rights" of Teleglobe, Inc. and the U.S. Debtors. Id. at § 4.1.[10]

Indeed, Ms. Morgan's predecessor in Canada, Ernst & Young ("E & Y"), in its capacity as "Interim Administrator" has already been found by the Canadian Court to have ample authority to waive Teleglobe, Inc's solicitor-client privilege, in order to authorize the delivery to Teleglobe Inc.'s interim receiver of documents withheld as privileged by Davies Ward. See In re Teleglobe, Inc., [2004] O.J. No. 2905 at ¶ 6-8 (Stuhlman Aff. Ex. 11). And significantly, Justice Farley also found in that opinion that Davies' client was Teleglobe. Id.

Finally, the notion that one party to a common interest privilege needs the consent of the other to waive that privilege when the co-clients subsequently become adverse (Objections at 13-14) is also wrong. BCE itself recognizes that when former co-clients become adverse, the common interest privilege no longer applies. Objections at 6 (citing, inter alia, D.R.E. 502(d)(6)(2005)); see, also, Bass Public Limited Co. v. Promus Companies, Inc., C.A. No. 92-CV-0969, 1994 WL 164031, at *2 (S.D.N.Y. Apr. 26, 1994) ("[E]ach of the parties to a joint attorney-client representation has the right to waive the privilege."); 1 McCormick on Evidence

---

[10] Pursuant to her authority, Ms. Morgan has caused Teleglobe, Inc. to initiate litigation in Canada, against BCE (among others). See November 16, 2005 complaint filed by Kathy Morgan in her capacity as Court-appointed Plan Administrator of Teleglobe Inc. against BCE, et al. in Canada. (Stuhlman Aff. Ex. 8).

11

(5th ed.) § 91 at 365-66 (where the joint clients "fall out . . . it is clear that the privilege is inapplicable"). The law is the same in Canada. <u>Cf</u>. <u>McRae v. Canada Attorney-General</u>, [1997] 46 B.C.L.R. (3d) 137 at ¶¶ 12, 48-50 (Stuhlman Aff. Ex. 9); <u>Divinsky v. Bethania</u>, [2002] 169 Man. R. (2d) 215 at ¶¶ 10, 22 (Stuhlman Aff. Ex. 10).

BCE's Objections should be overruled.

_____
Gregory V. Varallo (No. 2242)
C. Malcolm Cochran, IV (No. 2377)
Chad M. Shandler (No. 3796)
Richards, Layton & Finger P.A.
One Rodney Square
Wilmington, DE 19801
(302) 651-7700
varallo@rlf.com
cochran@rlf.com
shandler@rlf.com

Dated: March 21, 2006                    Attorneys for Teleglobe Comm. Corp., *et al.*

12

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2006, I hand delivered and electronically filed the

foregoing document with the Clerk of Court using CM/ECF, which will send notification of such

filing(s) to the following:

Pauline K. Morgan, Esq.
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899

Joseph A. Rosenthal , Esq.
ROSENTHAL, MONHAIT, GROSS &
GODDESS, P.A.
1401 Mellon Bank Center
P.O. Box 1070
Wilmington, DE 19801

I hereby certify that on March 21, 2006, I have sent by e-mail the foregoing document to

the following non-registered participants:

John Amato, Esq.
Hahn & Hessen LLP
488 Madison Avenue
New York, NY 10022

George J. Wade, Esq.
Daniel Schimmel, Esq.
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022

Chad M. Shandler (#3796)
Shandler@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700