# EXHIBIT C

```
               IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF DELAWARE


In re                      ) Chapter 11
                           )
TELEGLOBE COMMUNICATIONS   ) Jointly Administered
CORPORATION, et al.,       ) Bankr. Case No. 02-11518(MFW)
     Debtors.              )
- - - - - - - - - -)
TELEGLOBE COMMUNICATIONS,  )
et al.,                    ) C.A. 04-CV-1266 (SLR)
                           )
     Plaintiffs,           )
                           )
V.                         )
                           )
BCE INC., et al.,          )
                           )
     Defendants.           )
```

COPY

            Monday, October 31, 2005
            9:55 a.m.
            Courtroom 2B


            844 King Street
            Wilmington, Delaware


BEFORE:  SPECIAL MASTER COLLINS SEITZ, JR.


APPEARANCES:

        RICHARDS, LAYTON & FINGER
        BY:  C. MALCOLM COCHRAN, ESQ.
        BY:  CHAD M. SHANDLER, ESQ.
        BY:  EVAN O. WILLIFORD, ESQ.


                for the Plaintiffs

```
 1                    And we know we have some directors
 2   that are overlapping with the Debtors.  And I'm
 3   -- which I'm sure you're going to get to.
 4                    But for the most part, you are
 5   saying it's not enough for them to complain about
 6   who the lawyers represented at the TI and the BCE
 7   level or who the directors were at those two
 8   companies?
 9                    MR. WADE:  Not quite.
10                    We're quite -- we're cognizant of
11   the fact that Ms. Morgan has waived any privilege
12   TI might have had.  So we're not saying that
13   they -- that a TI-only privileged document can't
14   be produced.  Those have been and will be.
15                    SPECIAL MASTER:  You say "will be".
16   Does that mean they are somewhere?
17                    MR. WADE:  There are about ten of
18   them.
19                    SPECIAL MASTER:  Okay.
20                    MR. WADE:  And those were mistakes.
21                    There was never any intention, after
22   the common interest decision a year or plus ago,
23   to withhold any of those documents.  A year and a
24   half ago.
```

```
 1              I also want -- there is a Supreme
 2   Court case that plaintiffs like to ignore on the
 3   grounds that it doesn't discuss privilege as
 4   much.  But it does discuss the roles of directors
 5   of parents and subsidiaries, and that's Best
 6   Foods.
 7              And it is the Supreme Court.  In the
 8   opinion, it is a well established principle that
 9   directors and officers holding positions with a
10   parent and its subsidiaries "can and do change
11   hats" to represent the two corporations
12   separately despite their common ownership.
13              And it goes on, and I'm not quoting
14   here, Courts also generally presume that the
15   employees of the parents are wearing their parent
16   hat when acting for the parent and their
17   subsidiary hat when acting for the subsidiary.
18              That, to us, seemed to be a
19   statement of common sense.
20              It applies here, because it gives us
21   a guideline as to how we ought to look at whose
22   doing what to whom on any particular subject on
23   any given day.  And we ought -- we can't just
24   wash over the fact that Mr. Monty and Mr. Sabia
```

```
 1                    So we would suggest that the
 2   argument that it's two years later borders on the
 3   silly.  And there's a reason why it's two years
 4   later.  That's the end of the bankruptcy
 5   limitation period for this type of action.
 6                    SPECIAL MASTER:  On the privilege
 7   log, in your papers, you say that the documents
 8   being withheld now concern only advice given to
 9   BCE.  They don't completely trust you on that.
10                    I guess, that's a general way of
11   putting it.
12                    MR. WADE:  Fair enough.
13                    SPECIAL MASTER:  Could you just help
14   me out on that and maybe elaborate a little bit
15   more on what is meant by -- my impression is
16   you're trying to say that it relates exclusively
17   to advice provided to BCE; is that accurate?
18                    MR. WADE:  That's what we are --
19   there are mistakes.  And whenever we find a
20   mistake, we try to correct it.
21                    And there are, as I say, ten
22   documents that we figured out in the last few
23   days, because we were preparing for this argument
24   probably should not -- probably should not be in
```

```
 1   that log, and they'll be produced in the next
 2   couple days.
 3              But, yes, we are saying that what we
 4   are talking about is BCE-privileged advice, not
 5   advice that -- where BCE has a common interest
 6   with TI, not advice given to TI or to TCC, if
 7   there is any.
 8              SPECIAL MASTER:  Now, it does seem
 9   like a large number of documents on a log for a
10   fairly discrete period of time for legal advice,
11   6,000 documents.
12              Or 5,999, I guess.
13              MR. WADE:  Yes, it's a couple
14   hundred under 6,000.
15              SPECIAL MASTER:  Yes.  How did you
16   determine -- they make the argument they wouldn't
17   be on the log if they weren't relevant.
18              So do we have a relevance issue with
19   any of these on the log, or are we -- am I to
20   assume that they were selected because they are
21   relevant to or may lead to the discovery of
22   relevant evidence in the underlining case?
23              MR. WADE:  Let me put it this way,
24   if they were arguably responsive to the document
```