# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: Teleglobe Comm. *et al.*, | ) | Chapter 11 |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Bankr. Case No. 02-11518 (MFW) |
| | ) | |
| Teleglobe USA Inc. *et al.*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Action No. 04-1266 (SLR) |
| | ) | |
| BCE Inc. *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' NOTICE OF SUPPLEMENTAL LODGING

TO:     Gregory V. Varallo                          John P. Amato
        C. Malcolm Cochran, IV                      HAHN & HESSEN LLP
        Russell C. Silberglied                      488 Madison Avenue
        Chad M. Shandler                            New York, NY  10022
        Anne Shea Gaza
        RICHARDS, LAYTON & FINGER, P.A.
        One Rodney Square
        P.O. Box 551
        Wilmington, DE  19801

        Joseph A. Rosenthal
        ROSENTHAL, MONHAIT, GROSS &
        GODDESS, P.A.
        1401 Mellon Bank Center
        Wilmington, DE 19899

## ***PUBLIC VERSION***

PLEASE TAKE NOTICE that the Defendants have lodged under seal the following documents which the Defendants believe are pertinent and should be added to the Special Master Record created by the Plaintiffs on March 14, 2006.

| | | | |
|---|---|---|---|
| Volume G | Tab A | Defendants' Brief in Opposition to Plaintiffs' Motion to Compel Defendants to Produce Documents Withheld for Privilege | 10/07/2005 |
| Volume G | Tab 1 – 8 | Case law submitted with Defendants' Brief in Opposition to Plaintiffs' Motion to Compel Defendants to Produce Documents Withheld for Privilege | 10/7/2005 |
| Volume G | Tab B | Letter from George Wade to Collins J. Seitz | 11/15/2005 |
| | | Attachment to 11/15/2005 Letter: BCE News Release: BCET022162-164 | 04/08/2002 |
| | | Attachment to 11/15/2005 Letter: E-mail from W. Levine to B. Levine with Globe and Mail Search attached | 04/11/2002 |
| | | Attachment to 11/15/2005 Letter: Search terms: BNP003868-869 | 04/16/2002 |
| | | Attachment to 11/15/2005 Letter: Financial Post News Article: BMO009577-578 | 04/17/2002 |
| | | Attachment to 11/15/2005 Letter: Montreal Gazette News Article: BCET022308 | 04/17/2002 |
| | | Attachment to 11/15/2005 Letter: Letter from G. Rourke to S. Vanaselja and M. Boychuk: BCE-AD 00090991-992 | 04/18/2002 |
| | | Attachment to 11/15/2005 Letter: Letter from B. Zarnett to M. Sabia: BCE-AD 0028651-652 | 04/25/2002 |
| | | Attachment to 11/15/2005 Letter: E-mail from M. Lalande to K. Morgan: BCE-AD 0220588-589 | 05/02/2002 |

059825.1001

| | | | |
|---|---|---|---|
| | | Attachment to 11/15/2005 Letter: E-mail from M. Lalande to V. Cooke: BCE-AD 0220587 | 05/03/2002 |
| Volume G | Tab C | Letter from Pauline Morgan to Collins J. Seitz | 12/07/2005 |
| Volume G | Exhibit A | Affidavit of Vincent A. Mercier | 11/03/2004 |
| Volume H | Exhibit B<br><br>Exhibit C | Privileged Documents Submitted for *in camera* Review by Special Master | |
| Volume G | Tab D | E-mail from Parties to Special Master | 12/20/2005 |
| Volume G | Tab E | BCE Inc.'s Supplemental Brief in Opposition to Plaintiffs' Motion to Compel Documents Withheld for Privilege | 01/20/2006 |
| Volume G | Tabs 1-3 | Exhibits to BCE Inc.'s Supplemental Brief in Opposition to Plaintiffs' Motion to Compel Documents Withheld for Privilege | |
| Volume G | Tab F | Declaration of Daniel Schimmel | 01/20/2006 |
| Volume G | Tab G | Declaration of Pauline K. Morgan in Support of Defendants' Supplemental Brief in Opposition to Plaintiffs' Motion to Compel Documents Withheld for Privilege | 01/20/2006 |
| Volume G | Exhibit A | Excerpts of BCE Annual Report | |
| Volume G | Exhibit B | E-mail from D. Snyder: TGV00106809-010 | 03/01/2002 |
| Volume G | Exhibit C | Affidavit of Andrew Kingissepp | 06/03/2005 |
| Volume G | Exhibit D | Letter from M. Orenshteyn attaching Errata to Michel Lalande's transcript | 09/12/2005 |
| Volume G | Exhibit E | Excerpts from Jean Monty Deposition Transcripts | 04/27/2004; 10/25/2005 |

Respectfully submitted,

YOUNG CONAWAY
STARGATT & TAYLOR, LLP

*/s/ Pauline K. Morgan*

Pauline K. Morgan (No. 3650)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899
(302) 571-6600
pmorgan@ycst.com

    -and-

SHEARMAN & STERLING LLP

Stuart J. Baskin
George J. Wade
Jaculin Aaron
599 Lexington Avenue
New York, NY 10022
(212) 848-4000

Counsel for the Defendants

Dated: March 27, 2006
      Wilmington, DE

059825.1001

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

In re: Teleglobe Comm. *et al.*,    )    Chapter 11
                                    )    Jointly Administered
            Debtors.                )
_____        )    Bankr. Case No. 02-11518 (MFW)
                                    )
Teleglobe USA Inc. *et al.*,        )
                                    )
            Plaintiff,              )
                                    )
v.                                  )    Civ. Action No. 04-1266 (SLR)
                                    )
BCE Inc. *et al.*,                  )
                                    )
            Defendants.             )

# DEFENDANTS' NOTICE OF SUPPLEMENTAL LODGING

## VOLUME G

### *** PUBLIC VERSION***

Defendants' Opening Brief to the Special Master (October 7, 2005)
Defendants' Letter to the Special Master (November 15, 2005)
Defendants' Letter to the Special Master (December 7, 2005)
Parties' Email Communication with the Special Master (December 20, 2005)
Defendants' Supplemental Opening Brief to the Special Master (January 20, 2006)
Declaration of Daniel Schimmel (January 20, 2006)
Declaration of Pauline K. Morgan (January 20, 2006)

**March 27, 2006**

**TAB A**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------x
In re:                                          :        Chapter 11
                                                :
TELEGLOBE COMMUNICATIONS                        :        Jointly Administered
CORPORATION, *et al.*,                          :        Case No. 02-11518 (MFW)
                                                :
                      Debtors.                  :
---------------------------------------------------------x
                                                :
TELEGLOBE COMMUNICATIONS                        :
CORPORATION, *et al.*,                          :
                                                :
                      Plaintiffs,               :
                                                :
              v.                                :        C.A. No. 04-CV-1266 (SLR)
                                                :
BCE INC., *et al.*,                             :
                                                :
                      Defendants.               :
---------------------------------------------------------x

## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DEFENDANTS TO PRODUCE DOCUMENTS WITHHELD FOR PRIVILEGE

Counsel to the Defendants:

YOUNG CONAWAY                          SHEARMAN & STERLING LLP
STARGATT & TAYLOR, LLP

Pauline K. Morgan (No. 3650)              Stuart J. Baskin
The Brandywine Building                   George J. Wade
1000 West Street, 17th Floor              Jaculin Aaron
P.O. Box 391                              Daniel Schimmel
Wilmington, DE 19899                      599 Lexington Avenue
(302) 571-6600                            New York, NY 10022
                                          (212) 848-4000

Dated: October 7, 2005

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................ii

INTRODUCTION AND SUMMARY OF ARGUMENT ..................................................1

STATEMENT OF FACTS .....................................................................................2

    A.     BCE's Relationship with Teleglobe and the Debtors             2

          1.     BCE's Acquisition of Teleglobe......................................................2

          2.     The Corporate Structure of Teleglobe and the Debtors Following the Closing ....................................................................2

    B.     The Role Played by BCE's Lawyers Vis a Vis the Debtors      3

    C.     The Documents at Issue Reflect Legal Advice Provided Solely for BCE      4

    D.     The Relationship Between BCE's Directors and Officers and the Debtors      6

ARGUMENT........................................................................................................8

I.     The Debtors Mistakenly Argue that BCE Cannot Assert the Attorney-Client Privilege with Respect to Legal Communications Created or Reviewed by BCE Attorneys Michel Lalande, David Masse, and Marc Ryan      8

II.    The Debtors Also Mistakenly Argue that BCE Cannot Assert the Attorney-Client Privilege As to Documents Created or Reviewed by Overlapping Directors or Officers      15

III.   BCE Properly Withheld Documents under the Attorney Work-Product Doctrine.      18

CONCLUSION ...................................................................................................20

## TABLE OF AUTHORITIES

### CASES

Page

*Anadarko Petroleum Corp. v. Panhandle E. Corp.*,
545 A.2d 1171 (Del. 1988) ................................................................................................... 16

*Descôteaux v. Mierzwinski*,
[1982] 1 S.C.R. 860 (1982) .................................................................................................... 9

*Deutsch v. Cogan*,
580 A.2d 100 (Del. Ch. 1990) ............................................................................................. 13

*In re Fin. Corp. of Am.*,
119 B.R. 728 (Bankr. C.D. Cal. 1990) ......................................................................... 11, 14, 15

*In re Ford Motor Co.*,
110 F.3d 954 (3d Cir. 1997) ............................................................................................... 13

*In re Fuqua*,
No. Civ. A. 11974, 2002 WL 991666 (Del. Ch. Ct. May 2, 2002) ............................................. 14

*Garner v. Wolfinbarger*,
430 F.2d 1093 (5th Cir. 1970) ............................................................................................. 14

*Gay v. P.K. Lindsay Co.*,
666 F.2d 710 (1st Cir. 1981) ............................................................................................... 18

*Grimes v. LCC Int'l, Inc.*,
No. Civ. A. 16957, 1999 WL 252381(Del. Ch. Apr. 23, 1999) .......................................... *passim*

*Harriman v. E.I. DuPont De Nemours & Co.*,
372 F. Supp. 101 (D. Del. 1974) ......................................................................................... 17

*Kosachuck v. Harper and Latinadvisor.com*,
No. Civ.A. 17958, 2000 WL 1946664 (Del. Ch. Dec. 19, 2000) ................................................ 14

*Lee v. Engle*,
64 USLW 2479, 21 De. J. Corp. L. 709 (Del. Ch. Dec. 15, 1995) ............................................. 13

*In re Mirant Corp.*,
326 B.R. 646 (Bankr. N.D. Tex. 2005) ............................................................................. 11-13

ii

*Oliver v. Boston Univ.*,
No. Civ. A. 16570, 2004 WL 944319 (Del. Ch. Apr. 26, 2004) ................................................. 14

*People's Dep't Stores Ltd. v. Wise*,
2004 SCC 68 (Supreme Ct. of Can. 2004) ................................................................................. 16

*Tribune Co. v. Purcigliotti*,
No. 93 Civ. 7222, 1998 WL 175933 (S.D.N.Y. Apr. 14, 1998)................................................. 18

*United States v. Bestfoods*,
524 U.S. 51 (1998) .............................................................................................................. 8, 10

*Upjohn Co. v. U.S.*,
449 U.S. 383 (1981) ......................................................................................... 11, 13, 15, 18

*Valente v. Pepsico, Inc.*,
68 F.R.D. 361 (D. Del. 1975) ........................................................................................ 11-13, 16

## RULES

Fed. R. Civ. P. 26(b)(3) ......................................................................................................... 18

Fed. R. Evid. 501 .................................................................................................................. 13

## MISCELLANEOUS

Barreau du Qubec, R.S.Q., C.B.-1, Rule 131 ............................................................................ 9

Code of Ethics of Advocates, R.R.Q., c. B-1, r.1, Rule 3.06 ..................................................... 9

Delaware Lawyers' Professional Rules of Conduct, Rules 1.6 and 1.9 ...................................... 9

Quebec Charter of Human Rights and Freedoms, art. 9................................................................ 9

Quebec Professional Code, R.S.Q., c. C-26, Rule 60.4................................................................ 9

Rules of Professional Conduct, Law Society of Upper Canada, Rule 2.03(1)............................. 9

iii

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs seek to compel the disclosure of privileged documents exchanged between BCE Inc. ("BCE") and certain of its attorneys on the ground that certain BCE attorneys also performed legal work on an ad hoc basis for Teleglobe Inc. ("Teleglobe"). Plaintiffs also seek to compel the production of privileged documents from the files of officers or directors of BCE on the principal ground that certain current or former employees, officers, or directors of BCE were also at some point officers or directors of Teleglobe or its subsidiaries. Plaintiffs' arguments have no basis.

First, the documents that BCE has withheld on the ground of privilege involve the provision of legal advice *solely* to BCE and they are protected by the attorney-client privilege. To the extent BCE attorneys provided ad hoc legal services to Teleglobe or the Debtors, or that a joint representation existed as to certain matters, those documents have already been produced.

Second, courts have held that the mere fact that two corporate entities share officers, directors, and counsel does not entitle one of those corporations to the disclosure of confidential or privileged communications created for the other corporation. The United States Supreme Court has emphasized that directors and officers holding positions with a parent and its subsidiary "change hats" to represent the two corporations separately, and courts generally presume that the employees of the parent are wearing their "parent hat" when acting for the parent.

Third, many of the documents that BCE has withheld are protected by the work product doctrine, as well as the attorney-client privilege. Those documents were created in March and April 2002, when BCE was considering whether to continue funding Teleglobe after having already injected $1.3 billion into Teleglobe. There clearly

was a general atmosphere at that point that there could be litigation and Plaintiffs simply do not (and cannot) demonstrate any "substantial need" for those documents which analyzed the legal position of BCE and provided advice as well as counseling to BCE with respect to whatever causes of action could potentially exist.

## STATEMENT OF FACTS

### A.    BCE's Relationship with Teleglobe and the Debtors

#### 1.    BCE's Acquisition of Teleglobe

In February 2000, BCE, a Canadian corporation based in Montreal, sought to acquire the 77% of Teleglobe's common shares not already owned by Bell Canada. The acquisition closed on November 1, 2000. Teleglobe is a Canadian corporation based in Montreal and Plaintiffs are certain of the US-based indirect subsidiaries of Teleglobe, and Debtors in Chapter 11 cases (the "Debtors").

In June 2000, prior to the closing of BCE's acquisition of the remaining 77% of Teleglobe, BCE contractually committed (to certain lenders of Teleglobe) to fund Teleglobe in the amount of $1 billion. That contractual commitment was reconfirmed in July 2001. BCE's and Teleglobe's public filings filed every quarter in the United States and Canada under the securities laws stated that BCE's commitment to fund Teleglobe was limited to $1 billion.

#### 2.    The Corporate Structure of Teleglobe and the Debtors Following the Closing

Following the acquisition, the board of directors of Teleglobe consisted of five directors, three of whom were independent outside directors (Richard J. Currie, Thomas Kierans and Arnold Steinberg). Mr. Currie and Mr. Kierans were outside directors of BCE but not part of BCE's management. Mr. Steinberg had been on the

Teleglobe board before the acquisition and was not associated with BCE at all. The fourth director, Terry Jarman, was a former Bell Canada employee, who had been appointed President of Teleglobe Communications Corporation ("TCC"), Teleglobe's primary operating subsidiary. Mr. Jarman was replaced on the board in January 2002 by Anthony Fell, who was an outside director of BCE but not part of BCE's management. The fifth director was Jean Monty, who was President and Chief Executive Officer of BCE from May 1998 to December 2000, and Chairman and Chief Executive Officer of BCE from December 2000 through April 2002. Mr. Monty was Chairman and Chief Executive Officer of Teleglobe from November 2000 through April 2002. Mr. Monty was also a director of BCE and had been on the Board of directors of Teleglobe since 1998.

All of the meetings of Teleglobe's board of directors took place in Canada and the actions of the board were governed by applicable Canadian law. The Teleglobe Canada Divesture and Reorganization Act provided that the head office of Teleglobe was to be located in Montreal, Canada. (*See* Lalande Tr. at 104.) The Debtors' operations were managed by the senior management of Debtor TCC, which was the "operating arm" of Teleglobe, and headquartered in Reston, Virginia. (*See* Lalande Tr. at 103.)

### B.      The Role Played by BCE's Lawyers Vis a Vis the Debtors

Although the Teleglobe legal department in Montreal was shut down following the closing of the acquisition on November 1, 2000, most of the legal functions that had previously been performed by the legal department at Teleglobe were assumed by the TCC legal department in Reston, which consisted of non-BCE lawyers. (*See* Lalande Tr. at 113, 136; *see also* Snyder Tr. at 18-20.) Michel Lalande, one of BCE's in-house lawyers, and formerly a lawyer in Teleglobe's legal department prior to the

acquisition, occasionally assisted on specific Teleglobe legal matters on an ad hoc basis, pursuant to an arrangement agreed upon with TCC's in-house counsel. (*See* Lalande Tr. at 113-114, 444; Turcotte Tr. at 78.) Such matters included work relating to "securities compliance and capital markets activities, and to a certain extent, M&A transactions." (Lalande Tr. at 136.) This ad hoc legal work was done in consultation with the TCC legal personnel in Reston. (*See id.* at 113-116; *see also* Snyder Tr. at 94-95.)

BCE has not attempted to withhold on the grounds of privilege any documents relating to such ad hoc matters in which Mr. Lalande, or any other member of BCE's legal department, may have acted as legal counsel to Teleglobe or any of the Debtors. Indeed, all such documents, to the extent they were responsive to the Plaintiffs' document requests, have already been produced to Plaintiffs. Nor has BCE withheld on privilege grounds any documents generated as a result of the joint representation of BCE and Teleglobe by legal counsel, or with respect to matters giving rise to a common interest privilege between Teleglobe and BCE.

### C. The Documents at Issue Reflect Legal Advice Provided Solely for BCE

The documents sought by Plaintiffs relating to BCE's consideration of BCE's evaluations of its alternatives with respect to Teleglobe in March and April 2002 (sometimes referred to as "Project X") and its ultimate decision to cease long-term funding of Teleglobe, are all documents that were prepared or transmitted by lawyers for BCE and reflect legal advice provided solely for BCE. As stated by Ms. Turcotte in her deposition, the legal advice rendered in connection with Project X was advice provided solely to BCE. (*See* Turcotte Tr. at 57.) While it is true that some of the senior managers of BCE to whom Ms. Turcotte provided legal advice were also officers of Teleglobe, the

legal advice rendered to these individuals in connection with Project X was not provided in their capacity as officers of Teleglobe, but rather "solely in their capacity as senior executives of BCE Inc." (*Id.* at 57-61.) Any discussions that took place or questions raised by these executives during the provision of such legal services were done solely on behalf of BCE. (*See id.* at 61, 66.)

On April 8, 2002, BCE issued a public statement that it was reconsidering its options with respect to the continued funding of Teleglobe. Following that announcement, Teleglobe was represented by its own separate outside legal counsel. (*See id.* at 67-68.) This separate legal representation consisted of both Canadian counsel for Teleglobe (Davies Ward Phillips & Vineberg, LLP – "Davies Ward"), as well as U.S. counsel (Jones Day) to advise on matters affecting the U.S. subsidiaries. (*See id.* at 68-70.) John Brunette, TCC's general counsel and Chief Administrative Officer, was involved in engaging these outside lawyers for Teleglobe. (*See id.* at 70.) In late April 2002, prior to the April 24, 2002 announcement, John Brunette replaced Davies Ward with Ogilvy Renault LLP as Teleglobe's outside Canadian counsel.

Thus, following April 8, 2002 and the engagement of Teleglobe's own outside counsel, the only legal work that continued to be performed by BCE's lawyers on behalf of Teleglobe was the work done by Michel Lalande in reviewing Teleglobe's public disclosures in connection with the filing of its 2001 Annual Information Form. (*See* Lalande Tr. at 496-497, 547-548.) Mr. Lalande did not represent Teleglobe in any other capacity during that time, and his discussions with Teleglobe's counsel were on behalf of BCE. (*See id.* at 585.) Any documents authored, transmitted, or received by

Mr. Lalande during that period reflected legal advice provided solely for BCE in Mr. Lalande's capacity as BCE's lawyer, and are therefore properly withheld as privileged.

Other categories of documents withheld by BCE on the grounds of attorney-client privilege or work product, reflecting legal advice provided solely to BCE, include:

- Attorneys for BCE provided legal advice regarding resolutions presented to BCE's Board of Directors on matters for which BCE Board approval was required, and drafted and commented on presentations provided to the BCE Board involving matters of legal concern.

- Another area of responsibility of attorneys working for BCE was to provide legal advice and comments to BCE's Secretariat and members of BCE's compliance and accounting groups regarding BCE's annual reports, its public filings, and its reporting obligations. In addition, they provided legal advice regarding the legal consequences to BCE of reporting obligations required by its subsidiaries.

- BCE attorneys were involved in the drafting of BCE press releases and public documents.

- BCE attorneys analyzed the terms of TGO's credit facilities on behalf of BCE.

- BCE's attorneys also analyzed BCE's legal obligations with respect to certain issues pertaining to BCE's subsidiaries, such as changes in corporate logos.

### D.    The Relationship Between BCE's Directors and Officers and the Debtors

As previously stated, of the three directors of Teleglobe who were also directors of BCE during the relevant time period, two were independent outside directors, who were not part of BCE's senior management (Richard Currie and Thomas Kierans), as well as a third, Anthony Fell, who replaced Terry Jarman on the Teleglobe board in January 2002. The other overlapping director was Jean Monty, who served as Chairman of Teleglobe from February 2000 through April 23, 2002, and Chairman and Chief Executive Officer of BCE during the same time period. When these overlapping directors were provided legal advice by BCE's lawyers for BCE, it was solely in their

capacity as BCE's directors and they understood their roles and duties as such. (*See* Turcotte Tr. at 61.) Those directors owed confidentiality obligations to BCE. Moreover, those overlapping directors were aware of their separate fiduciary duties to each company, and knew that if the interests of the two companies diverged, they would be required to relinquish their duties. (*See* Kierans Tr. at 67.) At no time did any of these overlapping directors sit on the boards of the Debtors, or became an officer of the Debtors.

In addition, Plaintiffs' reference to BCE personnel (Michael Boychuk, David Masse and Michel Lalande) or secondees to TCC (Terence Jarman, Marc Bouchard, Serge Fortin, Patrick Pichette, and Stewart Verge) as directors and officers of the Debtors is immaterial to this motion. (Plaintiffs' September 22, 2005 Opening Brief ("Br.") at 13.) Of all the individuals on Plaintiffs' list, only Michel Lalande, David Masse and Michael Boychuk were for a period of time employees of BCE and overlapping officers or directors of some of the Debtors. Michel Lalande and David Masse were employees of BCE and served as Assistant Corporate Secretary and Corporate Secretary, respectively, to some of the Debtors. In their capacity as Assistant Corporate Secretary and Corporate Secretary, Messrs. Lalande and Masse had no managerial responsibilities, but performed only ministerial functions such as signing documents of behalf of some of the Debtor companies, and therefore owed no fiduciary duties to the Debtors.

Mr. Boychuk was for certain periods of time the director of some of the Debtors, but virtually all of the Debtor corporations of which he was a director were either inactive during those periods or were non-operational holding companies. Michael

Sabia was on the board of TCC and was Chairman of TCC from February 27, 2002 to April 23, 2002, as well Chief Operating Officer of that company during that time period. From December 2000 through April 23, 2002 he served as President of BCE.

As for the other directors and officers of the Debtors listed by Plaintiffs, (i.e., Marc Bouchard, Serge Fortin, Terence Jarman, Patrick Pichette and Stewart Verge), to the extent there were any documents reflecting communications between these individuals and Teleglobe or BCE counsel, such documents have all been produced. The same is true for any documents reflecting communications between either Mr. Boychuk, Mr. Kierans, Mr. Currie or Mr. Sabia, and Teleglobe or BCE counsel regarding advice rendered on behalf of Teleglobe.

## ARGUMENT

I.    **The Debtors Mistakenly Argue that BCE Cannot Assert the Attorney-Client Privilege with Respect to Legal Communications Created or Reviewed by BCE Attorneys Michel Lalande, David Masse, and Marc Ryan**

Plaintiffs seek to compel the production of attorney-client communications between BCE and certain of its lawyers on the ground that those lawyers, Messrs. Lalande, Ryan, and Masse, occasionally provided legal services to Teleglobe on an ad hoc basis. (Br. at 11-12.)

Plaintiffs' argument is wrong. It ignores that a parent and a subsidiary corporation are distinct corporate entities. *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998). In *Bestfoods*, the United States Supreme Court held that it is a "'well established principle [of corporate law] that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership.'" *Id.* at 69 (citations omitted). Courts generally presume that the employees of the parent are wearing their "parent hat" when

acting for the parent and their "subsidiary hat" when acting for the subsidiary. *Id.*
Therefore, when Messrs. Lalande, Masse, and Ryan performed legal work for BCE, they
did so wearing their BCE "hat." They were also under a professional obligation, equally
applicable in Delaware and Canada, not to disclose that legal work to their other clients,
including Teleglobe. *See* Rules of Professional Conduct, Law Society of Upper Canada,
Rule 2.03(1); *Descôteaux v. Mierzwinski*, [1982] 1 S.C.R. 860 (1982) (affirming the
"fundamental civil and legal right" of confidentiality of lawyer-client communications);
Barreau du Québec, R.S.Q., c. B-1, Rule 131 (imposing obligation on lawyers in Quebec
to maintain client confidentiality); Code of Ethics of Advocates, R.R.Q., c. B-1, r.1, Rule
3.06 (same); *see also* Quebec Professional Code, R.S.Q., c. C-26, Rule 60.4 (imposing
the obligation to maintain client confidentiality on professionals in Quebec including
lawyers); Quebec Charter of Human Rights and Freedoms, art. 9 (recognizing
fundamental right to secrecy of confidential information); Delaware Lawyers'
Professional Rules of Conduct, Rules 1.6 and 1.9.[1]

   The only documents set forth on BCE's privilege logs reflect the provision
of legal services solely to BCE. Under the decision of the Delaware Chancery Court in
*Grimes v. LCC Int'l, Inc.*, No. Civ. A. 16957, 1999 WL 252381, at *2 (Del. Ch. Apr. 23,
1999), those documents are privileged, regardless of whether the recipients of those
communications were officers or directors of other corporations. In *Grimes*, the
Delaware Chancery Court held that, to the extent the general counsel of a corporation is
performing work *solely* in his capacity as attorney for that corporation, such work is

---

[1]   Plaintiffs allege that documents authored, transmitted, or received by BCE lawyers who
served as the Debtors' counsel must be produced, including those of Martine Turcotte, the Chief
Legal Officer of BCE. Plaintiffs do not point to any legal work that Ms. Turcotte performed for
Teleglobe or the Debtors, and communications reflecting legal work she performed for BCE are
privileged.

protected by the attorney-client privilege, even though that attorney also served as the Chairman of the Board of Directors and general counsel of a subsidiary, and the legal work performed related to the relationship between the two corporations. *Id.*

   *Grimes* involved a derivative action brought by Microcell's minority shareholders against its controlling shareholder, LCC International, Inc. ("LCC"). *Id.* at *1. Plaintiffs sought to compel production of attorney-client communications authored or received by DeLiso, the general counsel of LCC, who simultaneously served as general counsel of Microcell and Chairman of Microcell's Board of Directors. *Id.* Among other things, plaintiffs alleged that De Liso had participated in the negotiation by LCC of a credit agreement with a lender "that prohibited LCC from funding Microcell, even though LCC was legally obligated to provide such funding." *Id.* As here, plaintiffs argued that, because De Liso held positions in both corporations, the attorney-client privilege should not apply to documents authored or viewed by him. *Id.* at *2. The Delaware Chancery Court rejected plaintiffs' arguments and held that documents reflecting legal work performed by DeLiso solely for LCC was properly withheld on the ground of the attorney-client privilege:

> Whether or not a given communication . . . from Mr. DeLiso is privileged will necessarily depend upon his capacity at the time he generated or received the communication . . . . Any confidential communication made by Mr. DeLiso—acting *solely* in his capacity as counsel for LCC—to LCC or its directors and/or officers; and any confidential communication made by those clients to Mr. DeLiso, acting again *solely* in that capacity, should be subject to the attorney-client privilege. Those communications would, therefore, be protected from disclosure to the plaintiffs, who are stockholders of Microcell, not LCC.

*Id.* That analysis is consistent with the holding of the United States Supreme Court in *Bestfoods,* which acknowledges that employees of a parent corporation are wearing their "parent hat" when acting for the parent.

Other courts have reached a similar result. In *In re Financial Corporation of America*, the court held that a trustee for a parent-debtor was not entitled to the disclosure of privileged communications of its former subsidiary even though, at the time the privileged communication occurred, the parent and the subsidiary shared officers, directors, and counsel. *See* 119 B.R. 728, 737 (Bankr. C.D. Cal. 1990). Discussing the law in the context of parent and subsidiary entities, the court in *Financial Corporation* relied on the decision of the United States Supreme Court in *Upjohn* and held that "confidentiality at a meeting of corporate officers would not be waived simply because some of the officers whose presence was reasonably required at the meeting were also officers of another corporation." *Id.* (citing *Upjohn Co. v. U.S.*, 449 U.S. 383, 391 (1981)). Instead, the court held that the analysis should focus on whether the former subsidiary expected those communications to remain confidential, in which case the former parent would not be entitled to their disclosure. *Id.*

Here, the documents set forth on BCE's privilege logs, described *supra* page 6, were clearly expected to remain confidential. (Turcotte Tr. at 60.) Those documents were also required to remain confidential pursuant to the lawyers' professional obligations. *See supra* page 9. Indeed, at least with respect to some of the categories of documents that BCE has withheld, Plaintiffs acknowledge that the legal work was performed solely for BCE. For instance, Plaintiffs acknowledge that BCE's evaluation of its alternatives regarding Teleglobe was performed for BCE. (*See* Br. at 19.)

In their brief, Plaintiffs primarily rely on *In re Mirant Corporation* and *Valente v. Pepsico, Inc.*, in support of their argument that the documents created or

reviewed by Messrs. Lalande, Masse, and Ryan should be disclosed. Plaintiffs' reliance on *Mirant* is misguided. *See In re Mirant Corp.*, 326 B.R. 646, 653 (Bankr. N.D. Tex. 2005); *Valente v. Pepsico, Inc.*, 68 F.R.D. 361 (D. Del. 1975). In *Mirant*, the bankruptcy court in Texas analyzed the attorney-client privilege in connection with the <u>joint representation</u> of two clients in the <u>same transaction</u>. *See Mirant*, 326 B.R. at 648-650, 653. In *Mirant*, the same lawyers acted as counsel to both the parent corporation and the subsidiary in connection with the parent's divestiture of its subsidiary. *Id.* Because the same lawyers jointly represented both the parent and the subsidiary in the transaction, the court held that in a joint representation "'the entire contents of those legal files belong jointly to the clients in question, with each having an undivided ownership interest in, and equal right of access to, all of those files.'" *Id.* at 650. The documents set forth on BCE's privilege logs do not involve a joint representation of BCE and Teleglobe, *supra* page 6, and principles of joint representations do not govern the analysis.

In addition to the fact that Plaintiffs are not entitled to these documents because they reflect legal work performed solely for BCE and there was no joint representation, *Mirant* involved a wholly-owned subsidiary that was insolvent. *Id.* at 651. In *Mirant*, the former parent corporation and the attorney involved in the joint representation opposed the motion to compel disclosure of privileged communications on the grounds that *Mirant* was a former wholly-owned subsidiary, thus, its directors and officers owed a duty to manage its affairs in the best interest of the parent corporation. *Id.* at 650. The bankruptcy court held that, under Delaware law, once a corporation becomes insolvent, its officers and directors owe unsecured creditors a fiduciary duty. *Id.* Therefore, to the extent *Mirant* was insolvent at the time the privileged communications

occurred, its directors and officers who reviewed legal work performed for Mirant owed

fiduciary duties to Mirant and its creditors, and such legal work had to be disclosed. *Id.*

Here, the question of when Teleglobe and the Debtors became insolvent or

in the zone of insolvency is disputed. Plaintiffs bear the burden of proving at trial, based

on a full evidentiary record, that even though Teleglobe and the Debtors were able to

meet their obligations until May 2002, they were insolvent or in the zone of insolvency

prior to BCE's announcement of the termination of its funding, on April 24, 2002.

Making a conclusory allegation of insolvency is not sufficient to eviscerate the attorney-

client privilege. *See Upjohn*, 449 U.S. at 396 (stressing that courts should be reluctant to

undermine the attorney-client privilege). Further, as stated above, the documents that

BCE has withheld do not involve a joint representation.

Plaintiffs' reliance on *Valente* is similarly misguided. As in *Mirant*, the

court in *Valente* relied on principles of joint representation, which are inapplicable here.

*Valente*, 68 F.R.D. at 368. Further, *Valente* simply demonstrates that the attorney-client

privilege cannot be asserted to shield attorney-client communications from the minority

shareholders of a subsidiary corporation when those communications were prepared or

reviewed by a person who owed a fiduciary duty to those minority shareholders. *Id.* at

368-69. *Valente* has no bearing here because the Debtors were wholly-owned

subsidiaries of BCE. In addition, the holding in *Valente* is not the law of Delaware.[2] *See*

*Grimes*, 1999 WL 252381, at *3; *Deutsch v. Cogan*, 580 A.2d 100, 105 (Del. Ch. 1990);

*Lee v. Engle*, 64 USLW 2479, 21 De. J. Corp. L. 709, at *2 (Del. Ch. Dec. 15, 1995).

---

[2]    In a diversity action in federal courts, Federal Rule of Evidence 501 provides that state
law will govern the issue of privilege. *See In re Ford Motor Co.*, 110 F.3d 954, 965 (3d Cir.
1997).

In short, the fact that BCE attorneys on occasion or even simultaneously performed legal work for Teleglobe on an ad hoc basis has no bearing on the question of whether the attorney-client privilege shields legal work performed solely for BCE. *See Oliver v. Boston Univ.*, No. Civ. A. 16570, 2004 WL 944319, at *1 (Del. Ch. Apr. 26, 2004). In *Oliver*, the Delaware Chancery Court recently held that with respect to matters in which a law firm had represented two clients separately, each entity was communicating with the attorneys "with a reasonable understanding that they were communicating with their lawyers with a client's typical expectation of confidentiality. At times, [the law firm] communicated with both BU and Seragen regarding the same matters. I reject Plaintiffs' apparent notion that simultaneous representation alone by the same law firm deprives both clients of the benefit of the attorney-client privilege." *Oliver*, 2004 WL 944319, at *1. Therefore, under *Grimes, In re Financial Corporation of America,* and *Oliver*, BCE properly withheld those communications.[3]

Plaintiffs also allege that BCE's counsel improperly instructed BCE's General Counsel and its Chief Legal Officer not to testify in their deposition about the

---

[3]      The "good cause" standard articulated by *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970), is not relevant here because the documents that BCE withheld were prepared solely for BCE with an expectation that they would remain confidential. Under *Grimes, In Re Financial Corporation*, and *Oliver*, those documents are privileged. Furthermore, Plaintiffs have failed to show good cause. Plaintiffs must first establish that the fiduciary sought "legal advice in connection with actions taken or contemplated in his role as a fiduciary." *In re Fuqua Indus. Inc.*, No. Civ. A. 11974, 2002 WL 991666, at *3 (Del. Ch. Ct. May 2, 2002) (shareholders may be entitled to the disclosure of legal advice sought for the benefit of their corporation). Here, plaintiffs would have to show that the Debtors were the beneficiaries of the attorney-client communications set forth on BCE's privilege logs, which cannot be the case because the documents on BCE's privilege log reflect legal work performed solely for BCE. *Id.* The *Garner* standard involved shareholders lawsuits, and Plaintiffs are not minority shareholders. *In re Fuqua*, 2002 WL 991666, at *3. Plaintiffs have failed to show that the substance of the information they seek is unavailable from other sources, including depositions, and they are "blindly fishing" for all the documents on the privilege logs. *See In re Fuqua*, 2002 WL 991666, at *3-5; *Kosachuck v. Harper and Latinadvisor.com*, 2000 WL 1946664, *1 (Del. Ch. Dec. 19, 2000). Further, the documents on BCE's log protected by the work product doctrine should not be produced, regardless of good cause. *In re Fuqua*, 2002 WL 991666, at *6.

details of the legal advice they provided to senior BCE executives regarding Project X, or that was sought from them. (Br. at 9, 19.) The purpose of those communications was to provide legal advice to BCE, however, and those communications are privileged.

In addition to the applicable case law, there are also strong public policy reasons for upholding the attorney-client privilege. Parent and subsidiary corporations often obtain legal advice from the same in-house lawyers. Absent a joint representation, there is no reason to ignore the expectations that communications between a parent corporation and its in-house lawyers will remain confidential. If the Court were to follow Plaintiffs' unrealistic approach to the attorney-client privilege, each corporation in a corporate group would have to hire many more lawyers to handle all of its various legal matters if it wanted to be sure to maintain the privilege. While this might benefit lawyers, it would be immensely disadvantageous for companies wanting to follow sensible and practical legal and business practices.

**II.    The Debtors Also Mistakenly Argue that BCE Cannot Assert the Attorney-Client Privilege As to Documents Created or Reviewed by Overlapping Directors or Officers**

Plaintiffs' argument also fails with respect to documents created or reviewed by those individuals who were overlapping directors or officers of Teleglobe and BCE. Courts have held that the mere fact that two corporate entities share officers, directors, and counsel does not entitle one of those corporations to the disclosure of confidential or privileged communications created for the other entity. *See In re Fin. Corp. of Am.,* 119 B.R. at 737 (citing *Upjohn Co. v. U.S.*, 449 U.S. 383, 391 (1981)); *Grimes*, 1999 WL 252381, at *2. Teleglobe is not entitled to the disclosure of privileged information that Messrs. Monty, Currie, Kierans, Skinner and Sabia learned in connection with their position at BCE.

Plaintiffs also argue that, because Messrs. Monty, Currie, Kierans, Skinner and Sabia were directors or officers of Teleglobe, they owed a fiduciary duty to the Debtors (as subsidiaries of Teleglobe) and that, under *Valente*, BCE cannot invoke the attorney-client privilege with respect to any documents that they "authored, transmitted, or received." This argument is wrong.[4] Teleglobe is a Canadian corporation governed by Canadian law. While we located no case discussion on the novel proposition that a corporation owes a fiduciary duty to another corporation that it owns, the *People's Dep't Stores* case is instructive. In *People's Department Stores Ltd. v. Wise*, 2004 SCC 68 (Supreme Ct. of Can. 2004), the Supreme Court of Canada clearly and expressly concluded that corporate officers and directors owed their fiduciary duty exclusively to the corporation, and not to shareholders, creditors or any other group. As the Court made clear, from a fiduciary perspective, the sole concern of the corporation's directors and officers was "the best interests of the corporation" -- *not* the best interests of the corporation's shareholders or creditors *per se*. By extension, no such duty was owed to any subsidiary or affiliate corporation. The status of Messrs. Monty, Currie, Kierans, Skinner and Sabia as directors or officers of Teleglobe cannot establish that they owed fiduciary duties to the subsidiaries of Teleglobe.

Plaintiffs also allege that Messrs. Monty, Currie, Kierans, and Skinner "by virtue of their positions as directors and officers of TI, which is the Debtors' parent company, each exercised actual control over the Debtors." (Br. at 13.) First, none of these individuals ever served as officers or directors of any of the Debtors. Moreover, as

---

[4]    Under Delaware law no such duty exists. The Delaware Supreme Court has held that, under Delaware law, "a parent does not owe a fiduciary duty to its wholly owned subsidiary." *Anadarko Petroleum Corp. v. Panhandle E. Corp.*, 545 A.2d 1171, 1174 (Del. 1988). *A fortiori*, the directors and officers of the parent cannot owe such a duty to the subsidiaries.

discussed above, the fact that these individuals were officers and directors of Teleglobe, and that Teleglobe owned the Debtors does not make the Teleglobe officers and directors fiduciaries of the Debtors. The directors and officers of Teleglobe managed Teleglobe through appropriate corporate governance channels. The Board of Directors of Teleglobe met in Canada on a regular basis, and its directors did not control the operations of the Debtors. There is simply no basis for extending their fiduciary duties to subsidiaries of Teleglobe, and the debtors cite no authority for such an unprecedented expansion of the law.

Plaintiffs' reliance on *Harriman v. E.I. DuPont De Nemours & Co.*, 372 F. Supp. 101, 106 (D. Del. 1974), is misguided. (Br. at 13.) *Harriman* holds that "[i]t is only when a person affirmatively undertakes to dictate the destiny of the corporation that he assumes such a fiduciary duty." *Harriman*, 372 F. Supp. at 106. Plaintiffs do not even allege, much less prove, facts sufficient to show that any of those individuals affirmatively undertook to dictate the destiny of the Debtors. In any event, whether BCE and those individuals "dictated the destiny" of the Debtors is a much disputed factual issue that will not be decided before a trial based on a full evidentiary record. The attorney-client privilege cannot be eviscerated based on such conclusory allegations of "control."

With respect to those individuals who were directors and officers of both BCE and the Debtors, such overlapping directorships did not require these individuals to disclose to the Debtors confidential or privileged BCE communications learned during their roles as directors and officers of BCE. To the contrary, their fiduciary duties to

BCE required them to keep such information confidential and prohibited disclosure to third parties. The same applies for Michel Lalande and David Masse.

### III.   BCE Properly Withheld Documents under the Attorney Work-Product Doctrine.

The United States Supreme Court has stated that "a strong public policy" underlies the work product doctrine: enabling the protection of an attorney's "mental impressions, conclusions, opinions, or legal theories," prepared in anticipation of litigation. *Upjohn*, 449 U.S. at 398 (citations omitted). BCE withheld certain documents created in April and May 2002, on the ground that they were protected by the work product doctrine.

Rule 26(b)(3) permits the discovery of work product only upon a showing that the party seeking discovery has demonstrated a "substantial need" for the document and that it "'is unable without undue hardship to obtain the substantial equivalent of the [document] by other means.'" *Id.* at 1262 (citing Fed. R. Civ. P. 26(b)(3)). Debtors have failed to demonstrate a "substantial need" for the BCE documents protected by the work product doctrine. Further, some of the information plaintiffs seek may be obtained through the oral testimony of the individuals who provided the information recorded in the documents. *See Tribune Co. v. Purcigliotti*, No. 93 Civ. 7222, 1998 WL 175933 at *4 (S.D.N.Y. Apr. 14, 1998) ("'Substantial need' cannot be shown where persons with equivalent information are available for deposition.") (citations omitted); *Gay v. P.K. Lindsay Co.*, 666 F.2d 710, 713 (1st Cir. 1981).[5]  Moreover, Debtors cannot demonstrate

---

[5]      For instance, Plaintiffs seek the production, in unredacted form, of a chronology of events leading to the termination of BCE's funding, which was created by Mr. Lalande in contemplation of litigation, after April 24, 2002. (Br. at 19.) Mr. Lalande created this document for the benefit of BCE's outside counsel. Plaintiffs cannot demonstrate "substantial need" for this document: BCE has produced a calendar setting forth the key meetings and communications relating to the

a need for work product materials based on legal research conducted by counsel for BCE, when such research resources are equally available to the Debtors.

---

termination of BCE's funding, and the information Plaintiffs seek may be obtained by the oral testimony of witnesses on that topic.

## CONCLUSION

For all of the foregoing reasons, and for those stated in Defendants' brief filed with the District Court, Defendants respectfully ask that the Special Master deny Plaintiffs Motion to Compel Defendants to Produce Documents Withheld for Privilege, and to grant Defendants all other and further relief to which Defendants may show themselves justly entitled.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Pauline K. Morgan (No. 3650)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899
(302) 571-6600

-and-

SHEARMAN & STERLING LLP
Stuart J. Baskin
George J. Wade
Jaculin Aaron
Daniel Schimmel
599 Lexington Avenue
New York, NY 10022
(212) 848-4000

Attorneys for Defendants

Dated:  October 7, 2005
        Wilmington, Delaware

## Index of Exhibits

| Exhibit | Case |
|---------|------|
| 1 | *Descôteaux v. Mierzwinski*, [1982] 1 S.C.R. 860 (1982) |
| 2 | *In re Fuqua*, No. Civ. A. 11974, 2002 WL 991666 (Del. Ch. Ct. May 2, 2002) |
| 3 | *Grimes v. LCC Int'l, Inc.*, No. Civ. A. 16957, 1999 WL 252381 (Del. Ch. Apr. 23, 1999) |
| 4 | *Kosachuck v. Harper and Latinadvisor.com*, No. Civ.A. 17958, 2000 WL 1946664 (Del. Ch. Dec. 19, 2000) |
| 5 | *Lee v. Engle*, 64 USLW 2479, 21 De. J. Corp. L. 709 (Del. Ch. Dec. 15, 1995) |
| 6 | *Oliver v. Boston Univ.*, No. Civ. A. 16570, 2004 WL 944319 (Del. Ch. Apr. 26, 2004) |
| 7 | *People's Dep't Stores Ltd. v. Wise*, 2004 SCC 68 (Supreme Ct. of Can. 2004) |
| 8 | *Tribune Co. v. Purcigliotti*, No. 93 Civ. 7222, 1998 WL 175933 (S.D.N.Y. Apr. 14, 1998) |

**TAB 1**

10/06/2005 18:34 FAX 2128542249        Diamond Law Library @ CU → SHEarman Sterlin    ☒002



# 1982 Volume 1

| Canada Supreme Court Reports | Recueil des arrêts de la Cour Suprême du Canada |

**Canada Supreme Court Reports**

**Recueil des arrêts de la Cour Suprême du Canada**

*Editors*
ANNE ROLAND, B.A., I.L.L.
ARCHIBALD MCDONALD, B.A., LL.B., M.A.
CLAUDE MARQUIS, B.A., Ll..L., D.D.N.

*Arrêtistes*
ANNE ROLAND, B.A., LL.L.
ARCHIBALD MCDONALD, B.A., LL.B., M.A.
CLAUDE MARQUIS, B.A., LL..L., D.D.N.

*Published pursuant to the Statute by*
BERNARD C. HOFLEY, Q.C.
*Registrar of the Court*

*Publié conformément à la Loi par*
BERNARD C. HOPLEY, c.r.
*Registraire de la Cour*

THE QUEEN'S PRINTER FOR CANADA @ L'IMPRIMEUR DE LA REINE POUR LE CANADA
OTTAWA, 1982

10/06/2005 18:34 FAX 2128542249        Diamond Law Library @ CU → SHEarman Sterlin    Ø003

Simon Descôteaux and Centre communautaire juridique de Montréal *Appellants*;

and

Alexandre Mierzwinski *Respondent*;

and

The Attorney General of the Province of Quebec and the Commission des services juridiques *Interveners*;

and

André Landry, Normand Huneault, the Quebec Bar and the Commission des droits de la personne *Mis en cause.*

File No.: 16113.

1981: October 27, 28; 1982: June 23.

Present: Martland, Ritchie, Dickson, Beetz, Estey, Chouinard and Lamer JJ.

ON APPEAL FROM THE COURT OF APPEAL FOR QUEBEC

*Criminal law — Search and seizure — False statement by legal aid applicant regarding his income — Warrant issued to search legal aid offices — Legal aid application form seized — Solicitor-client privilege — Right to have communications with lawyer kept confidential — Right reflected in substantive rule and rule of evidence (privilege) — Extent of the power of a justice to authorize a search warrant with terms of execution - · Scope of this power with regard to law firms — Criminal Code, s. 443.*

*Evidence — Solicitor-client privilege — False statement by legal aid applicant regarding his income — Legal aid application form seized — Whether information supplied by applicant is privileged — Point in time when solicitor-client relationship arises.*

In order to obtain proof that an applicant for legal aid committed an indictable offence by incorrectly reporting a lower income in order to be eligible for such services, two peace officers presented themselves at a legal aid bureau with a search warrant. This warrant related to certain documents, including an «Application for Legal Aid» form which contained, *inter alia*, information on applicant's financial situation. The search was made in the presence of the syndic of the Bar and the police

Simon Descôteaux et Centre communautaire juridique de Montréal *Appelants*;

et

Alexandre Mierzwinski *Intimé*;

et

Le procureur général de la province de Québec et la Commission des services juridiques *Intervenants*;

et

André Landry, Normand Huneault, le Barreau du Québec et la Commission des droits de la personne *Mis en cause.*

Nᵒ du greffe: 16113.

1981: 27, 28 octobre; 1982: 23 juin.

Présents: Les juges Martland, Ritchie, Dickson, Beetz, Estey, Chouinard et Lamer.

EN APPEL DE LA COUR D'APPEL DU QUÉBEC

*Droit criminel — Perquisition et saisie — Fausse déclaration d'un requérant à l'aide juridique quant à ses revenus — Mandat délivré pour perquisitionner dans les bureaux de l'Aide juridique — Saisie de la formule de demande d'aide juridique — Privilège entre avocat et client — Droit à la confidentialité de son avocat — Droit qui se manifeste par une règle de fond et une règle de preuve (privilège) — Etendue du pouvoir d'un juge de paix d'autoriser un mandat de perquisition et de l'assortir de modalités — Etendue de ce pouvoir pour un bureau d'avocat - Code criminel, art. 443.*

*Preuve — Privilège entre avocat et client — Fausse déclaration d'un requérant à l'aide juridique quant à ses revenus - · Saisie de la formule de demande d'aide juridique — Les renseignements fournis par le requérant sont-ils privilégiés? — Moment où prend naissance la relation avocat-client.*

Aux fins d'obtenir la preuve qu'un requérant de l'aide juridique a commis un acte criminel en déclarant faussement des revenus inférieurs afin d'être éligible aux services de cet organisme, deux agents de la paix se sont présentés au bureau de l'Aide juridique munis d'un mandat de perquisition. Ce mandat visait certains documents dont la formule «Demande d'aide juridique» qui contient entre autres des renseignements sur l'état financier du requérant. La perquisition a eu lieu en présence

OCT 06 2005 06:30                                        2128542249        PAGE.03