10/06/2005 18:34 FAX 2128542249     Diamond Law Library @ CU → SHEarman Sterlin     ☒004

officers agreed to receive the documents in a sealed envelope without examining them. Appellants' application for *certiorari* to quash the seizure on the ground that the documents seized were protected by solicitor-client privilege was dismissed both in the Superior Court and in the Court of Appeal.

*Held*: The appeal should be dismissed.

All information which a person must provide in order to obtain legal advice and which is given in confidence for that purpose enjoys the privileges attached to confidentiality. This confidentiality attaches to all communications made within the framework of the solicitor-client relationship, to the lawyer as well as to his employees. It arises even before the retainer is established, as soon as the client takes the first steps in approaching a law firm. It may be invoked in any circumstances where such communications are likely to be disclosed without the client's consent. However, communications which are criminal in themselves or that are made with a view to obtaining legal advice to facilitate the commission of a crime will not be privileged.

A justice of the peace has no jurisdiction to order the seizure of documents that would not be admissible in evidence in court on the ground that they are privileged. Before authorizing a search of a lawyer's office, he should even refuse to issue the warrant unless he is satisfied that there is no reasonable alternative to the search. If he issues it, he should attach terms of execution to the warrant designed to protect the right to confidentiality of the lawyer's clients as much as possible.

In the case at bar, the communications made by the applicant with respect to his financial means are criminal in themselves since they constitute the material element of the crime charged. These communications are accordingly not protected by the privilege and the justice had jurisdiction to order the seizure. However, all other information contained in the "Application for Legal Aid" form remains protected. The search was the only reasonable alternative and the procedure followed during the seizure was proper and valid.

*R. v. Littlechild* (1979), 51 C.C.C. (2d) 406; *Re Borden & Elliott and The Queen* (1975), 30 C.C.C. (2d) 337 (Ont. S.C.), approved; *Solosky v. The Queen*, [1980] 1 S.C.R. 821; *Re Pacific Press Ltd. and The Queen et al.*, (1977), 37 C.C.C. (2d) 487, considered; *Berd v. Lovelace* (1577), 21 E.R. 33; *Dennis v. Codrington* (1580), 21 E.R. 53; *Minter v. Priest*, [1930] A.C. 558; *R. v. Cox and Railton* (1884), 14 Q.B.D. 153; *R. v.*

du syndic du Barreau et les agents ont accepté de recevoir les documents sous enveloppe scellée sans en prendre connaissance. La requête en *certiorari* des appelants pour faire annuler la saisie au motif que les documents saisis étaient protégés par le privilège avocat-client a été rejetée tant en Cour supérieure qu'en Cour d'appel.

*Arrêt*: Le pourvoi est rejeté.

Tous les renseignements que doit fournir une personne en vue d'obtenir un avis juridique et qui sont donnés en confidence à cette fin jouissent du privilège de confidentialité. Ce privilège s'attache à toutes les communications faites dans le cadre de la relation avocat-client non seulement à l'avocat mais à ses employés. Il prend naissance avant même la formation du mandat, soit dès les premières démarches du client auprès du bureau d'avocat. Il peut être invoqué en toutes circonstances où ces communications seraient susceptibles d'être dévoilées sans le consentement du client. Cependant, les communications qui sont en elles-mêmes criminelles ou qui sont faites en vue d'obtenir un avis juridique devant faciliter la perpétration d'un crime ne jouissent pas du privilège.

Un juge de paix n'a pas compétence pour ordonner la saisie de documents qui ne seraient pas recevables en preuve devant un tribunal parce qu'ils sont couverts par le privilège. Il doit même, avant de permettre la perquisition d'un bureau d'avocat, refuser la délivrance du mandat à moins d'être convaincu que la perquisition est la seule option raisonnable. S'il le délivre, il devra l'assortir de modalités d'exécution susceptibles de sauvegarder au maximum le droit à la confidentialité des clients de l'avocat.

En l'espèce, les communications faites par le requérant à l'égard de sa situation financière sont criminelles en elles-mêmes puisqu'elles constituent l'élément matériel du crime reproché. Ces communications ne sont donc pas protégées par le privilège et le juge de paix avait compétence pour ordonner la saisie. Toutefois, tous les autres renseignements contenus à la formule «Demande d'aide juridique» demeurent protégés. La perquisition était la seule option raisonnable et la procédure suivie lors de la saisie était bonne et valable.

Jurisprudence: arrêts approuvés: *R. v. Littlechild* (1979), 51 C.C.C. (2d) 406; *Re Borden & Elliott and The Queen* (1975), 30 C.C.C. (2d) 337 (C.S. Ont.); arrêts examinés: *Solosky c. La Reine*, [1980] 1 R.C.S. 821; *Re Pacific Press Ltd. and The Queen et al.* (1977), 37 C.C.C. (2d) 487; arrêts mentionnés: *Berd v. Lovelace* (1577), 21 E.R. 33; *Dennis v. Codrington* (1580), 21 E.R. 53; *Minter v. Priest*, [1930] A.C. 558; *R. v. Cox*

Case 1:04-cv-01266-SLR   Document 243-2   Filed 03/27/2006   Page 2 of 15

10/06/2005 18:35 FAX 2128542249        Diamond Law Library @ CU → SHEarman Sterlin       ☒005

Colvin, Ex parte Merrick et al. (1970), 1 C.C.C. (2d) 8; Re B.X. Development Ltd. and The Queen (1976), 36 C.R.N.S. 313 (B.C. S.C.); Re Alder et al. and The Queen (1977), 37 C.C.C. (2d) 234; Attorney General of Quebec v. T., G., W., R. and C. (1977), 2 C.R. (3d) 30; Re Director of Investigation and Research and Canada Safeway Ltd. (1972), 26 D.L.R. (3d) 745; Re Director of Investigation and Research and Shell Canada Ltd. (1975), 22 C.C.C. (2d) 70; Re Presswood and Delzotto (1975), 36 C.R.N.S. 322; Re B.X. Development Ltd. and The Queen (1976), 31 C.C.C. (2d) 14 (B.C. C.A.); Re Steel and The Queen (1974), 21 C.C.C. (2d) 278; Re B and The Queen (1977), 36 C.C.C. (2d) 235; Re Borden & Elliott and The Queen (1975), 30 C.C.C. (2d) 337 (Ont. C.A.), referred to.

and Railton (1884), 14 Q.B.D. 153; R. v. Colvin, Ex parte Merrick et al. (1970), 1 C.C.C. (2d) 8; Re B.X. Development Ltd. and The Queen (1976), 36 C.R.N.S. 313 (C.S. B.-C.); Re Alder et al. and The Queen (1977), 37 C.C.C. (2d) 234; Attorney General of Quebec v. T., G., W., R. and C. (1977), 2 C.R. (3d) 30; Re Director of Investigation and Research and Canada Safeway Ltd. (1972), 26 D.L.R. (3d) 745; Re Director of Investigation and Research and Shell Canada Ltd. (1975), 22 C.C.C. (2d) 70; Re Presswood and Delzotto (1975), 36 C.R.N.S. 322; Re B.X. Development Ltd. and The Queen (1976), 31 C.C.C. (2d) 14 (C.A. B.-C.); Re Steel and The Queen (1974), 21 C.C.C. (2d) 278; Re B and The Queen (1977), 36 C.C.C. (2d) 235; Re Borden & Elliott and The Queen (1975), 30 C.C.C. (2d) 337 (C.A. Ont.).

APPEAL from a judgment of the Court of Appeal of Quebec affirming a judgment of the Superior Court, [1978] C.S. 792, dismissing appellants' application for *certiorari*. Appeal dismissed.

POURVOI à l'encontre d'un arrêt de la Cour d'appel du Québec qui a confirmé un jugement de la Cour supérieure, [1978] C.S. 792, rejetant la requête en *certiorari* des appelants. Pourvoi rejeté.

*Jean-Marie Larivière* and *Jean-Pierre Lussier*, for the appellants.

*Jean-Marie Larivière* et *Jean-Pierre Lussier*, pour les appelants.

*Pierre Robert* and *Sarto Blouin*, for the respondent and the intervener the Attorney General of the Province of Quebec.

*Pierre Robert* et *Sarto Blouin*, pour l'intimé et l'intervenant le procureur général de la province de Québec.

*François Aquin* and *Jocelyne Jarry*, for the intervener the Commission des services juridiques.

*François Aquin* et *Jocelyne Jarry*, pour l'intervenante la Commission des services juridiques.

English version of the judgment of the Court was delivered by

Le jugement de la Cour a été rendu par

LAMER J.—A citizen who lies about his financial means in order to obtain legal aid is committing a crime. This appeal concerns the right of the police to be authorized by a search warrant to search a legal aid bureau and seize the form filled out by the citizen at his interview, for purposes of proving that this crime was committed. This issue raises several others, including, in particular, the scope of and procedures for exercising the authority to search lawyers' offices, in view of the confidential nature of their clients' files. This appeal will also give everyone an opportunity to note the deficiencies in the law in this area and the limited ability of the courts to compensate for them since their role is not primarily legislative.

LE JUGE LAMER—Le citoyen qui ment quant à ses moyens financiers pour obtenir de l'aide juridique commet un crime. Ce pourvoi porte sur le droit de la police d'être autorisée par mandat de perquisition à fouiller un bureau d'aide juridique et à saisir la formule complétée par le citoyen lors de son entrevue, aux fins de prouver la commission de ce crime. Cette question en soulève plusieurs autres dont, notamment, l'étendue et les modalités d'exercice du pouvoir de perquisitionner dans les cabinets des avocats eu égard au caractère de confidentialité qui s'attache aux dossiers de leurs clients. Aussi ce pourvoi est-il l'occasion pour tous de constater les carences de la loi sur le sujet et la limite des moyens qu'a le pouvoir judiciaire d'y suppléer du fait que son rôle n'est pas primordialement législatif.

OCT 06 2005 06:31                                      2128542249        PAGE.05

[1982] 1 R.C.S.            DESCÔTEAUX et autre c. MIERZWINSKI    *Le Juge Lamer*            863

## FACTS

Two peace officers presented themselves at the premises of a legal aid bureau in the judicial district of Montreal with the following search warrant:

ATTENDU qu'il appert de la dénonciation assermentée de:

*WHEREAS, it appears on the oath of:*

[TRANSLATION]

        1848 Gilles Bertrand
        M.U.C. Peace Officer
        10 St. Antoine Est, Mtl

[TRANSLATION] File No. 02-78-05-03-005

Q.P. file No. on behalf of police force/complainant organization

Que dans la ville de    St Laurent    district
Montreal
*That in the City of      District*

le                          19 ,
*on the* [TRANSLATION] May 4, 1978,    19 .

[TRANSLATION] Between January 1, 1975 and January 1, 1978 an indictable offence was committed, to wit a false pretence; Mr. Marcellein [sic] Ledoux reported a lower income in order to be eligible for legal aid services, contrary to section 324 of the Criminal Code, and that documents to wit: a legal aid application form, lawyer's retainer and other documents concerning this case.

These documents are allegedly in these premises and will provide evidence concerning the commission of the said offence.

Et que les dites choses ou quelques parties d'entre elles se trouvent dans
*And that the said things or some part of them are in*

de/*of*
au no./*at no.* 790 de la rue/*of* boul. Laurentien *Street*
à/*at* Ville St Laurent district/*district of* Montreal
    ci-après appelé les lieux;
    *hereinafter called the premises;*

A CES CAUSES, les présentes ont pour objet de vous autoriser à entrer (indiquer à
*THIS IS, THEREFORE, to authorize and require you to enter*

           Jour & nuit
(quelles heures)      dans les dits lieux et à
                      rechercher les dites choses
(*indicate time*)      *the said premises, and to*
                      *search for the said things*

et les rapporter devant moi ou tout autre juge pour le district

## LES FAITS

Deux agents de la paix se sont présentés aux locaux d'un bureau d'aide juridique dans le district judiciaire de Montréal munis du mandat de perquisition qui suit:

ATTENDU qu'il appert de la dénonciation assermentée de:

*WHEREAS, it appears on the oath of:*

        1848 Gilles Bertrand
        Agent de la Paix C.U.M.
        10 St. Antoine Est Mtl

N° dossier
02-78-05-03-005

N° dossier S.Q. au nom
du corps policier/organisme plaignant

Que dans la ville de    St Laurent    district
Montreal
*That in the City of      District*

le 4 Mai 1978                  19 .
*on the*                           19 .

Entre le 1 Janvier 1975 et le 1 janvier 1978 un acte criminel a été commis à savoir un faux prétexte, M. Marcellein (*sic*) Ledoux à déclaré des revenus inférieurs (*sic*) afin d'être éligible aux services de l'aide Juridique, contrairement à l'article 324 du Code Criminel et que des documents à savoir: Formule d'admissibilitée (*sic*) à l'aide juridique, mandat à l'avocat et autres documents concernant cette cause.

Ces documents se trouveraient à cet endroit et apporteront la preuve touchant la perpétration de la dite offence (*sic*).

Et que les dites choses ou quelques parties d'entre elles se trouvent dans
*And that the said things or some part of them are in*

de/*of*
au no./*at no.* 790 de la rue/*of* boul. Laurentien *Street*
à/*at* Ville St Laurent district/*district of* Montreal
    ci-après appelé les lieux;
    *hereinafter called the premises;*

A CES CAUSES, les présentes ont pour objet de vous autoriser à entrer (indiquer à
*THIS IS, THEREFORE, to authorize and require you to enter*

           Jour & nuit
quelles heures)      dans les dits lieux et à
                      rechercher les dites choses
(*indicate time*)      *the said premises, and to*
                      *search for the said things*

et les rapporter devant moi ou tout autre juge pour le district

864    DESCÔTEAUX et al. v. MIERZWINSKI    *Lamer J.*    [1982] 1 S.C.R.

*and to bring them before me, or some other Judge of the Peace for the district*
Donné sous mon seing à Montréal    District Montreal
*Given under my seal at* _____ *District of* _____

le
on the [TRANSLATION] May 4, 1978

_____
J.S.P./Juge de Paix
[TRANSLATION] acting in and for the province of Quebec

RETURNABLE

We do not know the wording of the information that led respondent justice of the peace to authorize the search and seizure of the documents described in the warrant; however, at the hearing counsel agreed to admit for purposes of this appeal that the contents of the information were as set out in the warrant.

The syndic of the Bar* intervened when the warrant was being executed and, as a result, the two mis en cause police officers did not search the premises, but agreed to receive, without even examining them, since they were in a sealed envelope, documents they were told were those they were looking for. No one has yet seen what the envelope contains, not even the judges of this Court, and everyone agreed not to open the envelope before being authorized to do so by a judgment of this Court. All are agreed, moreover, that it contains two forms completed by Marcellin Ledoux and by a lawyer employed by the Centre communautaire juridique de Montréal [Montreal Community Legal Centre], together with a notice of refusal, and that the information contained in this application for legal aid concerns the matters found in the following printed form:

_____
* The syndic of the Bar, in the province of Quebec, is a full-time officer of the Bar whose duties are described at s. 75 of the *Act respecting the Barreau du Québec*, R.S.Q. 1977, c. B-1, which reads as follows:
    75. (1) The syndic, of his own initiative or at the request of the General Council of the Executive Committee shall make an inquiry into the conduct of any member of the Bar.
    (2) The syndic shall also make an inquiry respecting every person requesting admission or readmission to the Bar.
    (3) The syndic shall deal with disputes between an advocate and any person and shall endeavour to reconcile them.
    (4) The syndic shall ensure the inspection of the trust accounts prescribed by the by-laws.

*and to bring them before me, or some other Judge of the Peace for the district*
Donné sous mon seing à Montréal    District Montreal
*Given under my seal at* _____ *District of* _____

le 4 Mai 1978
on the

_____
J.S.P./Juge de Paix
agissant dans et pour la Province de Québec

RAPPORTABLE

On ignore la teneur de la dénonciation qui a amené le juge de paix, l'intimé, à autoriser la fouille et la saisie des documents décrits au mandat; mais à l'audience les plaideurs ont convenu de reconnaître pour les fins de ce pourvoi que les renseignements contenus à la dénonciation étaient ceux que l'on retrouve au mandat.

Le syndic du Barreau* est intervenu au moment de l'exécution et les deux policiers mis en cause n'ont pas fouillé les lieux se contentant de recevoir, sans même les vérifier, puisque sous enveloppe cachetée, des documents qu'on leur a dit être ceux qu'ils cherchaient. Personne d'ailleurs n'a encore pris connaissance de ce que contient l'enveloppe, y compris les juges de cette Cour, et tous ont accepté de ne point le faire avant qu'un jugement de cette Cour ne les y autorise. Tous conviennent, par ailleurs, qu'il s'agit de deux formules complétées par le dénommé Marcellin Ledoux et par un avocat préposé du Centre communautaire juridique de Montréal, ainsi que d'un avis de refus, et que les renseignements contenus à cette demande d'aide juridique traitent des sujets que l'on retrouve à la formule imprimée qui suit:

_____
* Dans la province de Québec, le syndic du Barreau est officier du Barreau à temps complet et ses fonctions sont décrites à l'art. 75 de la *Loi sur le Barreau du Québec*, L.R.Q. 1977, chap. B-1 dont voici le texte:
    75. 1. Le syndic, de sa propre initiative ou à la demande du Conseil général ou du Comité administratif, fait enquête sur la conduite de tout membre du Barreau.
    2. Le syndic fait aussi enquête sur toute personne qui demande son admission ou sa réadmission au Barreau.
    3. Le syndic connaît des différends entre un avocat et toute personne et il s'emploie à les concilier.
    4. Le syndic assure l'inspection des comptes en fidéicommis prévue par les règlements.

10/06/2005 18:35 FAX 2128542249    Diamond Law Library @ CU → SHEarman Sterlin    ☒008

[1982] 1 R.C.S.    DESCÔTEAUX et autre c. MIERZWINSKI    *Le Juge Lamer*    865

**DEMANDE D'AIDE JURIDIQUE**

| NO DU DOSSIER | DOSSIER NOUVEAU/ROUVERT | NO RÉGION | NO BUREAU | NO DE SÉQUENCE | DATE J M A |

**RÉFÉRENCE**: COUR/JUGE, POLICIER, AVOCAT PRIVÉ, HUISSIER PRIVÉ, AUTRE C.E.J., AUTRE R.D.J., AUTRE COM. SOC., AUTRE GÉNÉR., ÉLECTIONS, MINIST. APP. SOC., AGENCE SOCIALE, MÉDIA D'INF., AUTRE (NOMMER)

**REQUÉRANT**: NOM, PRÉNOM, ADRESSE, PROV, TÉL. RÉS., TÉL. BUR.

**CONJOINT**: NOM, PRÉNOM, ADRESSE, PROV, TÉL. RÉS., TÉL. BUR.

**EX-CONJOINT**: NOM, PRÉNOM, ADRESSE, PROV, TÉL. RÉS., TÉL. BUR.

**CONCUBIN**: NOM, PRÉNOM, ADRESSE, PROV, TÉL. RÉS., TÉL. BUR.

SEXE MASC./FÉM., DATE DE NAISSANCE (JOUR MOIS ANNÉE), ÉTAT CIVIL: CÉLIBATAIRE, VEUF(VE), MARIÉ(E), SÉPARÉ(E) LÉGALEMENT, DIVORCÉ(E), SÉPARÉ(E) DE FAIT, COUPLE NON MARIÉ DE FAIT

NOMBRE DE DÉPENDANTS, GARDE DES ENFANTS: DE FAIT, REQUÉRANT(E), CONJOINT(E), EX-CONJOINT(E), CONCUBIN(E), AUTRE(S) EXPLIQUER

DÉPENDANTS: NOM ET PRÉNOM, PARENTÉ, ÂGE, NOM ET PRÉNOM, PARENTÉ, ÂGE

**STATUT MATRIMONIAL**: SÉPARATION DE BIENS ☐  COMMUNAUTÉ DE BIENS ☐  SOCIÉTÉ D'ACQUÊT ☐  AUTRE ☐  SPÉCIFIER

N.B.: S'IL S'AGIT D'UN COUPLE SELON ART. 3.14 DU RÈGLEMENT NO. 1, INDIQUER RESSOURCES ET BIENS COMMUNS ET INDIVIDUELS

**SOURCES DES REVENUS HEBDOMADAIRES DU REQUÉRANT**: TRAVAIL, TRAVAIL PARTIEL, ASS. CHÔMAGE, AIDE SOCIALE PUBLIQUE, AIDE SOCIALE PRIVÉE, COMM. ACC. TRAVAIL, MIN. ANCIENS COMBATTANTS, PENSION DE VIEILLESSE, PENSION ALIM., PENSION DE RETR. PRIV., REVENU DE PLACEMENT, REVENU BRUT PAR SEMAINE

RÉGIME DE RENTES COTISATIONS, ALLOCATIONS FAMILIALES, AUTRE (NOMMER), NUMÉRO D'AIDE SOCIALE, MÉTIER - OCCUPATION

NOM ET ADRESSE DE LA SOURCE DE REVENU

**ÉPARGNES DU REQUÉRANT**: BANQUE, CAISSE POP., CAISSE D'ÉCON., SOC. FIDUCIE, AUTRE (SPÉCIFIER), TOTAL DES ÉPARGNES

DÉTAILS

**CRÉANCES DU REQUÉRANT**: ARGENT DÛ AU REQUÉRANT, CRÉANCE HYPOTHÉCAIRE, PART DE SUCCESSION, TOTAL DES CRÉANCES

DÉTAILS ET MONTANTS

**AUTRES BIENS DU REQUÉRANT**: AUTOMOBILE OUI/NON, BIENS IMMOBILIERS (VALEUR), BIENS MOBILIERS (VALEUR), AUTRE (DÉCRIRE), AUTRE (DÉCRIRE), AUTRE (DÉCRIRE), AUTRE (DÉCRIRE), TOTAL DES AUTRES BIENS

VALEUR DE L'AUTOMOBILE

**DETTES DU REQUÉRANT**: SOLDE DÛ, HYPOTHÈQUE, SOLDE DÛ, SOLDE DÛ, SOLDE DÛ, SOLDE DÛ, SOLDE DÛ, TOTAL DES DETTES

10/06/2005 18:36 FAX 2128542249      Diamond Law Library @ CU → SHEarman Sterlin      ☒009

866　　　　DESCÔTEAUX *et al.* v. MIERZWINSKI　　*Lamer J.*　　　　[1982] 1 S.C.R.

[Form image: Legal aid application form with fields for VERSEMENTS MENSUELS, LOYER, HYPOTHÈQUE, MEUBLES, ALIMENTS, VÊTEMENTS, AUTOMOBILE, EMPRUNTS, AUTRES, TOTAL DES VERSEMENTS MENSUELS; FAILLITE, DÉPÔT VOLONTAIRE, MONTANT, NUMÉRO; NATURE DU DOSSIER; declaration and signature fields marked A; ADMISSIBILITÉ, VRAISEMBLANCE DE DROIT, RÉFÉRÉ À AUTRE BUREAU, MANDAT CONFIÉ fields marked B; DOSSIER]

It should be noted that at the bottom of the form the lawyer is asked to enter his "professional notes" on the back of the document.

This form must be completed by those applying for legal aid. This is a requirement of the Act (*Legal Aid Act*, R.S.Q. 1977, c. A-14).

64. An application for legal aid must set forth the financial condition of the applicant and the basis of his claim, all the information determined in the regulations and any additional relevant information required by the corporation.

This requirement is aimed at allowing the bureau director to determine whether an applicant is eligible having regard to s. 63 of the same Act, the pertinent part of which reads as follows:

63. The general manager shall, within the scope of the regulations, grant legal aid to any economically underprivileged person establishing the probable existence of a right.

Those who do not comply with the requirement will be deprived of the services of a lawyer paid by the bureau, in the same way as those who do not meet the eligibility criteria.

---

¹ I have added the letters A and B for convenience of reference later in these reasons.

Il est à noter, l'indication tout au bas de la formule que l'avocat est invité à consigner au verso du document ses «notes professionnelles».

Cette formule doit être remplie par le requérant d'aide juridique. C'est une exigence de la loi, (*Loi sur l'aide juridique*, L.R.Q. 1977, chap. A-14).

64. Une demande d'aide juridique doit exposer l'état financier du requérant et le fondement de son droit, contenir tous les renseignements déterminés par règlement ainsi que les renseignements supplémentaires pertinents requis par la corporation.

Cette exigence a pour but de permettre au dirigeant du bureau de décider de l'éligibilité du requérant en regard de l'art. 63 de la même loi, dont voici la partie pertinente:

63. Le directeur général doit, dans le cadre des règlements, accorder l'aide juridique à une personne économiquement défavorisée qui établit la vraisemblance d'un droit.

Celui qui ne s'y soumet pas se verra privé des services d'un avocat payé par le bureau, et ce tout autant que celui qui n'aura pas satisfait aux critères d'éligibilité à l'aide.

---

¹ J'ai ajouté les lettres A et B pour commodité de référence plus loin dans ces motifs.

10/06/2005 18:36 FAX 2128542249          Diamond Law Library @ CU → SHEarman Sterlin          @010

It should also be noted that the information on the first page of the form deals principally with the *financial situation of the applicant* for purposes of determining whether he is eligible for aid as an *economically underprivileged person*, and that the *professional notes on the reverse* concern the *probable existence of the basis of his claim*. These *professional notes* could very well record the applicant's account of the facts which lead him to apply for aid and on which the bureau will decide the *probable existence of the basis of his right*.

### IN THE SUPERIOR COURT

After the documents had been seized and sealed, Mr. Descôteaux and the legal aid bureau (le Centre communautaire juridique de Montréal) presented to a judge of the Superior Court, district of Montreal, a motion for the issuance of a writ of *certiorari* requesting that the seizure be quashed on the grounds of nullity and requesting the Superior Court judge to order the justice of the peace to return the sealed envelope and its contents to them.

The motion was dismissed, but the judge amended the wording of the warrant, stating that [TRANSLATION] "the words 'other documents concerning this case' should be struck out and no longer regarded as forming part of the said search warrant".

The Superior Court judge stated that he was of the view that solicitor-client privilege could be invoked as soon as confidentiality was threatened, "without waiting until the person or persons disregarding the privilege attempted to tender the information thus obtained as evidence". He found, however, that the documents seized were not privileged since they had been prepared before the solicitor-client relationship came into existence ([1978] C.S. 792, at p. 799):

[TRANSLATION] Returning now to the problem raised by applicants, I have come to the conclusion that the documents seized, namely two legal aid application forms and one refusal form, are not privileged. The application for legal aid is nothing more or less than a descriptive form filled out by a person wishing to obtain legal aid to let the organization know that he meets the eligibility requirements. There is no relationship at all

A noter aussi, que les renseignements de la première page de la formule ont trait principalement à l'*état financier du requérant* aux fins de déterminer si celui-ci est éligible à l'aide à titre de *personne économiquement défavorisée*, et que les *Notes professionnelles au verso* sont celles qui concernent *le fondement de son droit*. Ces *notes professionnelles* pourraient fort bien consigner la narration par le requérant des faits qui l'amènent à demander de l'aide et à partir desquels le bureau décidera de la *vraisemblance* du *fondement de son droit*.

### EN COUR SUPERIEURE

Suite à la saisie des documents et à l'apposition de scellés, maître Descôteaux et le bureau d'Aide juridique (le Centre communautaire juridique de Montréal) adressaient à un juge de la Cour supérieure du district de Montréal une requête pour *certiorari* demandant la cassation de la saisie pour cause de nullité, et requérant le juge de la Cour supérieure d'ordonner au juge de paix de leur remettre l'enveloppe scellée et son contenu.

La requête fut rejetée sauf que le juge modifiait la teneur du mandat en disant que «les mots 'autres documents concernant cette cause' devront être biffés et ne plus être considérés comme faisant partie dudit mandat de perquisition».

Le juge de la Cour supérieure s'est dit d'avis que l'on pouvait invoquer le privilège client-avocat dès que la confidentialité était mise en péril et ce «sans attendre la décision de celui ou ceux qui voudraient l'ignorer, d'utiliser en preuve l'information ainsi obtenue». Il concluait par ailleurs que les documents saisis n'étaient pas privilégiés puisque préparés antérieurement à la naissance de la relation client-avocat ([1978] C.S. 792, à la p. 799):

Revenant maintenant au problème soulevé par les requérants, j'en viens à la conclusion que les documents saisis, soit deux formules de demande d'aide juridique et une formule de refus, ne sont pas des documents assujettis à la protection du privilège. En effet, cette demande d'aide juridique est, ni plus ni moins, qu'une forme de fiche signalétique complétée par celui qui désire obtenir l'aide juridique pour informer cet organisme qu'il satis-

868　　DESCÔTEAUX *et al.* v. MIERZWINSKI　*Lamer J.*　[1982] 1 S.C.R.

<u>between the information contained in this form, which deals with the applicant's civil status, matrimonial status and financial situation, and the information he may provide to his counsel in order to obtain legal advice or representation in litigation. Moreover, there is not even a solicitor-client relationship at the time this form is completed, and the retainer does not come into existence until the applicant has been accepted by the appropriate authority, which, in so doing, will have decided that he meets the eligibility requirements. It is only after this administrative decision has been made that there will be created between the applicant citizen and the legal aid lawyer this type of privileged relationship that is scrupulously protected by the common law.</u>

I am unable to arrive at any other conclusion, since it seems clear to me that these documents are records of an administrative nature that are necessary precisely because of the nature of the services sought by the applicant. Finally, I think that the "declaration" which the applicant must sign in the presence of a witness and which appears at the bottom of the "application for legal aid" confirms my opinion that this document is not privileged:

> I declare that this information is true and I undertake to inform your bureau or corporation of any change in my economic situation.
> 
> I have been informed of my right to be represented by a lawyer of my choice and I have chosen to be represented by:
> A lawyer employed full-time by the corporation/a lawyer in private practice.

There is not yet any solicitor-client relationship; at the very most the applicant has expressed his desire to have a lawyer who is employed by the legal aid bureau or a private practitioner, without any further information concerning his identity. Moreover, the undertaking by the applicant to inform the "bureau" or the "corporation" of any change in his economic situation indicates most clearly, in my view, that this type of information is not regarded by the applicant himself as confidential or as forming part of the consultation or legal advice sought from a lawyer whose identity he does not yet know. This seems to me sufficient to dispose of the case of the legal aid application forms, and the same comments apply, it goes without saying, to the notice of refusal. These documents, owing to their very nature and to the position the citizen is in when they are filled out, do not fall within the category of privileged communications ...

(Emphasis added.)

<u>fait les critères d'admissibilité. Il n'y a aucune espèce de relation entre les renseignements contenus à cette formule et qui portent sur l'état civil, le statut matrimonial et la situation financière du requérant par rapport aux informations qu'il fournirait à son procureur pour obtenir un avis légal ou pour assurer sa représentation lors d'un litige. Bien plus, il n'y a même pas de relation avocat-client au moment où cette formule est complétée et le mandat ne prendra naissance qu'une fois que le requérant aura été accepté par l'autorité compétente qui, par le fait même, aura décidé qu'il satisfait les critères d'admissibilité. Ce n'est qu'à la suite de cette décision administrative que s'établira, entre le citoyen requérant et l'avocat de l'Aide juridique, ce type de relation privilégiée scrupuleusement protégée par le droit commun.</u>

Il m'est impossible d'en venir à toute autre solution tellement il m'apparaît clair que ces documents constituent des fiches de nature administrative dont la nécessité me semble apparente à cause, précisément, de la nature des services sollicités par le requérant. Enfin, je crois que la 'déclaration', que le requérant doit signer en présence d'un témoin et dont le texte se retrouve au bas de cette 'demande d'aide juridique', confirme mon opinion que ce document n'est pas privilégié:

> Je déclare que ces renseignements sont vrais et je m'engage à informer votre bureau ou corporation de tout changement dans ma situation économique.
> 
> Je suis informé de mon droit d'être représenté par l'avocat de mon choix et j'ai choisi d'être représenté par:
> Un avocat employé plein temps de la Corporation un avocat de la pratique privée.

Il n'y a pas encore de relation client-avocat; tout au plus, le requérant a-t-il manifesté son désir d'avoir un avocat, salarié du bureau d'Aide juridique, ou un praticien privé, sans plus d'information sur son identité. Par ailleurs, l'engagement pris par le requérant d'informer le 'bureau' ou la 'corporation' de tout changement à sa situation économique démontre, à mon sens, de façon on ne peut plus limpide, que ce type d'information n'est pas considéré confidentiel par le requérant lui-même non plus que faisant partie de la consultation ou de l'avis légal sollicité d'un avocat dont il ne connaît pas encore l'identité. Ceci me semble suffisant pour disposer du cas des formules de demande d'aide juridique et les mêmes commentaires valent, il va sans dire, pour l'avis de refus. Ces documents, de par leur nature même et la situation où se trouve le citoyen, lorsqu'ils sont complétés, ne tombent pas dans la catégorie des communications privilégiés ...

(C'est moi qui souligne.)

10/06/2005 18:36 FAX 2128542249        Diamond Law Library @ CU → SHEarman Sterlin        ☒012

[1982] 1 R.C.S.    DESCÔTEAUX *et autre c.* MIERZWINSKI    *Le Juge Lamer*    869

Finally, I repeat, the Superior Court judge amended the warrant by striking out the words "other documents concerning this case" on the ground that the authorization to search and seize conferred by those words was too general and imprecise.

### IN THE COURT OF APPEAL

The Court of Appeal adopted the conclusions of the Superior Court judge, together with his reasons. To these Bélanger J.A. added on behalf of the Court that in any event solicitor-client privilege could not have operated to protect the communication, since the latter was precisely what had been resorted to in order to mislead a representative of the legal aid bureau. On that matter, he stated the following:

> [TRANSLATION] In the case at bar the communications or documents that are alleged to be confidential are those referred to in the charge as having been used in the commission of the offence in question. Apart from common law principles, they are no more privileged than if the same information and documents had been used to mislead the lawyer himself in order to fraudulently obtain his services on special terms. In either case I do not think that false communications made to the eventual victim who will have to bear the cost of the services are confidential in any way. In short, a communication made to a representative of the Commission des services juridiques [Legal Services Commission] is in no way confidential if it is an element of an offence committed to the latter's prejudice, since in such circumstances there is no confidentiality between solicitor and client.

I think that at this point I should state my findings in the case at bar; I shall give reasons for them later.

In my view it was correctly decided that it is not necessary to wait for the trial or preliminary inquiry at which the communication is to be adduced or sought in evidence before raising its confidentiality. With all due respect for the opposite view, I am of the opinion, however, that <u>in principle</u> information concerning one's financial means the basis of the claim, and any other information required by the corporation or the regulations (*Legal Aid Act*, s. 64) which a person applying for legal aid <u>must</u> provide in order to obtain the services of a

Enfin, je le répète, le juge de la Cour supérieure modifiait le mandat en biffant la mention «autres documents concernant cette cause» du fait que l'autorisation de fouiller et de saisir qui en résultait était «fautive parce que trop générale et imprécise».

### EN COUR D'APPEL

La Cour d'appel fit siennes les conclusions du juge de la Cour supérieure ainsi que ses raisons. À celles-ci, M. le juge Bélanger ajouta, au nom de la Cour, que de toute façon le privilège avocat-client n'avait pu jouer pour protéger la communication, puisque celle-ci avait précisément servi à tromper un représentant du bureau d'Aide juridique; il s'en exprime comme suit:

> Dans l'espèce, les communications ou documents dont on invoque le caractère confidentiel sont ceux allégués dans l'inculpation comme ayant servi à la commission de l'infraction reprochée. Indépendamment des principes de la Common Law, ils ne jouissent pas plus du privilège de confidentialité que si les mêmes informations et documents avaient servi à tromper l'avocat lui-même pour obtenir de lui frauduleusement ses services à des conditions spéciales. Dans un cas comme dans l'autre, je ne crois pas que les fausses communications faites à la victime éventuelle qui aura à assumer le coût des services jouissent d'aucun caractère confidentiel. En somme, une communication faite à un représentant de la Commission des services juridiques, si elle est un élément d'une infraction commise au préjudice de celle-ci, ne jouit d'aucun caractère confidentiel puisque dans de semblables circonstances il n'en existe pas entre client et avocat.

Je crois utile d'énoncer dès maintenant mes conclusions en l'espèce, quitte à les motiver par après.

A mon avis, c'est avec raison qu'il a été décidé qu'on ne doit pas nécessairement attendre la tenue du procès ou de l'enquête préliminaire où la communication est offerte ou sollicitée en preuve pour faire valoir la confidentialité de celle-ci. Avec respect pour l'opinion contraire, j'estime cependant que, <u>en principe</u>, les renseignements ayant trait à l'état financier ainsi que ceux concernant le fondement du droit et tous autres requis par la corporation ou par règlement (*Loi sur l'aide juridique*, art. 64) qu'un requérant d'aide juridique <u>doit</u> four-

10/06/2005 18:37 FAX 2128542249        Diamond Law Library @ CU → SHEarman Sterlin        ☒013

870        DESCÔTEAUX *et al.* v. MIERZWINSKI   *Lamer J.*        [1982] 1 S.C.R.

lawyer is, except in the exceptional cases I shall deal with later, privileged. I share the opinion of the Quebec Court of Appeal, however, that, <u>in the case at bar</u>, the information concerning Marcellin Ledoux's financial means had lost the benefit of being privileged since, as alleged in the search warrant, it was communicated with a view to criminally obtaining a benefit and, consequently, fell within one of the common law exceptions to the principle of privilege. But since it is alleged that the crime was committed by means of false pretences only with respect to the applicant's financial means, the professional notes, which concern the basis of his claim, remain privileged.

I do not intend to repeat here everything that others have said, on numerous occasions and very clearly and completely, about solicitor-client privilege, or about the issuance and execution of search warrants.

I think, however, that I should make a few remarks about the existence and effects of a person's right to have his communications with his lawyer kept confidential; I shall then deal more particularly with the search power provided for in the *Criminal Code*.

THE RIGHT TO CONFIDENTIALITY

It is not necessary to demonstrate the existence of a person's right to have communications with his lawyer kept confidential. Its existence has been affirmed numerous times and was recently reconfirmed by this Court in *Solosky v. The Queen*, [1980] 1 S.C.R. 821, where Dickson J. stated (at p. 839):

> One may depart from the current concept of privilege and approach the case on the broader basis that (i) <u>the right to communicate in confidence with one's legal adviser is a fundamental civil and legal right, founded upon the unique relationship of solicitor and client, and</u> (ii) a person confined to prison retains all of his civil rights, other than those expressly or impliedly taken from him by law.

(Emphasis added.)

nir pour obtenir les services d'un avocat sont, sauf les cas d'exception dont je traite plus loin, privilégiés. Je partage par ailleurs l'avis de la Cour d'appel du Québec que, <u>en l'espèce</u>, les renseignements ayant trait aux moyens financiers de Marcellin Ledoux avaient perdu le bénéfice du privilège de confidentialité puisque, eu égard au libellé du mandat de perquisition, ils auraient été communiqués dans le but d'obtenir criminellement un avantage et, de ce fait, relèvent d'une des exceptions au principe du privilège prévues par la *common law*. Par ailleurs, comme il est allégué que le crime n'aurait été commis par des faux semblants que quant à l'état financier du requérant, les notes professionnelles, qui concernent le fondement de son droit, demeurent privilégiées.

Je n'ai pas l'intention de reprendre ici tout ce que d'autres, à maintes occasions et de façon fort claire et complète, ont eu à dire pour décrire le privilège du client de l'avocat, ou encore au sujet de la délivrance et de l'exécution des mandats de perquisition.

Je crois cependant opportun d'apporter quelques précisions au sujet de l'existence et des effets du droit de la personne au respect de la confidentialité de ses communications avec son avocat; j'en traiterai ensuite plus particulièrement quant au pouvoir de perquisition prévu au *Code criminel*.

LE DROIT A LA CONFIDENTIALITE

Il n'est pas nécessaire de procéder à la démonstration de l'existence du droit d'une personne à la confidentialité des communications avec son avocat. Maintes fois affirmée, son existence a été tout récemment confirmée à nouveau par cette Cour dans *Solosky c. La Reine*, [1980] 1 R.C.S. 821, où M. le juge Dickson disait (à la p. 839):

> On peut s'écarter de la notion actuelle du privilège et aborder l'affaire dans une optique plus large, savoir, (i) <u>le droit de communiquer en confidence avec son conseiller juridique est un droit civil fondamental, fondé sur la relation exceptionnelle de l'avocat avec son client</u> et (ii) une personne emprisonnée conserve tous ses droits civils autres que ceux dont elle a été expressément ou implicitement privée par la loi.

(C'est moi qui souligne.)

OCT 06 2005 06:33                                    2128542249        PAGE.13

10/06/2005 18:37 FAX 2128542249    Diamond Law Library @ CU → SHEarman Sterlin    ☑014

There is no denying that a person has a right to communicate with a legal adviser in all confidence, a right that is "founded upon the unique relationship of solicitor and client" (*Solosky, supra*). It is a personal and extra-patrimonial right which follows a citizen throughout his dealings with others. Like other personal, extra-patrimonial rights, it gives rise to preventive or curative remedies provided for by law, depending on the nature of the aggression threatening it or of which it was the object. Thus a lawyer who communicates a confidential communication to others without his client's authorization could be sued by his client for damages; or a third party who had accidentally seen the contents of a lawyer's file could be prohibited by injunction from disclosing them[2].

Owing to its importance, in addition to these general remedies available to the holder, various statutes, both federal and provincial, recognize this right by giving it additional, specific protection.

These include, for example, statutes governing the practice of the profession of barrister or advocate (in Quebec, the *Act respecting the Barreau du Québec*, R.S.Q. 1977, c. B-1, s. 131)[3] and certain provincial charters of rights (in Quebec, the *Charter of human rights and freedoms*, R.S.Q. 1977, c. C-12, s. 9)[4].

En effet, il est incontestable que s'attache à la personne un droit de communiquer en toute confidence avec un conseiller juridique, droit qui est «fondé sur la relation exceptionnelle de l'avocat avec son client» (*Solosky*, précité). C'est un droit personnel et extra-patrimonial qui accompagne le citoyen dans ses rapports avec les autres. Il donne ouverture, tout comme les autres droits personnels extra-patrimoniaux, aux recours préventifs ou curatifs que le droit prévoit selon la nature de l'agression qui le menace ou dont il a été l'objet. Ainsi, pourrait être poursuivi en dommages par son client l'avocat qui communiquerait à d'autres sans son autorisation une communication confidentielle; ou encore, pourrait être frappé d'une injonction lui interdisant la divulgation du contenu du dossier d'un avocat le tiers qui par accident en aurait pris connaissance[2].

A cause de son importance, outre ces recours généraux dont jouit son titulaire, différentes lois, tant fédérales que provinciales, reconnaissent ce droit en le protégeant de façon spécifique et supplémentaire.

Ainsi en est-il, à titre d'exemples, des lois qui gouvernent l'exercice de la profession d'avocat (au Québec, la *Loi sur le Barreau*, L.R.Q. 1977, chap. B-1, art. 131)[3], certaines chartes provinciales des droits (au Québec, la *Charte des droits et libertés de la personne*, L.R.Q. 1977, chap. C-12, art. 9)[4].

---

[2] I am dealing here generally with the effects of the right to confidentiality. In its present state, the rule of evidence, which I shall discuss later, would not prohibit a third party from making such a disclosure (see 8 Wigmore, *Evidence*, at pp. 633 and 634 - McNaughton rev. 1961).

[3] 131. (1) An advocate must keep absolutely secret the confidences made to him by reason of his profession.
(2) Such obligation, however, shall not apply when the advocate is expressly or implicitly relieved therefrom by the person who made such confidences to him.

[4] 9. Every person has a right to non-disclosure of confidential information.
No person bound to professional secrecy by law and no priest or other minister of religion may, even in judicial proceedings, disclose confidential information revealed to him by reason of his position or profession, unless he is authorized to do so by the person who confided such information to him or by an express provision of law.
The tribunal must, *ex officio*, ensure that professional secrecy is respected.

[2] Je traite ici de façon générale des effets du droit à la confidentialité. Dans son état actuel la règle de preuve, dont je parlerai plus loin, ne l'interdirait pas à ce tiers-témoin (*vide*, 8 Wigmore, *Evidence*, aux pp. 633 et 634—McNaughton rev. 1961).

[3] 131. 1. L'avocat doit conserver le secret absolu des confidences qu'il reçoit en raison de sa profession.
2. Cette obligation cède toutefois dans le cas où l'avocat en est relevé expressément ou implicitement par la personne qui lui a fait ces confidences.

[4] 9. Chacun a droit au respect du secret professionnel.
Toute personne tenue par la loi au secret professionnel et tout prêtre ou autre ministre du culte ne peuvent, même en justice, divulguer les renseignements confidentiels qui leur ont été révélés en raison de leur état ou profession, à moins qu'ils n'y soient autorisés par celui qui leur a fait ces confidences ou par une disposition expresse de la loi.
Le tribunal doit, d'office, assurer le respect du secret professionnel.

OCT 06 2005 06:33    2128542249    PAGE.14

872         DESCÔTEAUX *et al.* v. MIERZWINSKI    *Lamer J.*                [1982] 1 S.C.R.

It is again owing to the importance of this right that certain statutes contain special provisions applicable in situations where, were it not for those special provisions, there would be undue interference with the right to confidentiality. An example of such concern for that right can be found in the safeguards set out in s. 232 of the *Income Tax Act*, 1970-71-72 (Can.), c. 63.

There is no doubt that this right belonging to a person in his dealings with others, including the State, is part of our Quebec public law as well as of the common law.

Although we recognize numerous applications of it today, the right to confidentiality did not first appear until the 16th century, and then did so as a rule of evidence (see, *inter alia*, *Berd v. Lovelace* (1577), 21 E.R. 33; *Dennis v. Codrington* (1580), 21 E.R. 53).

The rule of evidence is well known; it has often been stated. This Court referred to it again recently in *Solosky*. That decision sets out the conditions precedent to the existence of the privilege, as well as its limits and exceptions. It should be pointed out that the substantive conditions precedent to the existence of the privilege, which the judges have gradually established and defined, are in fact the substantive conditions precedent to the existence of the right to confidentiality, the former being merely the earliest manifestation of the latter. There is no need to list those conditions exhaustively here or to review all the nuances that have been developed by the courts over the years. It will be sufficient to review them in broad outline and to emphasize certain aspects of particular relevance to this appeal.

The following statement by Wigmore (8 Wigmore, *Evidence*, para. 2292 (McNaughton rev. 1961)) of the rule of evidence is a good summary, in my view, of the substantive conditions precedent to the existence of the right of the lawyer's client to confidentiality:

*Where legal advice of any kind is sought from a professional legal adviser in his capacity as such, the communications relating to that purpose, made in con-*

C'est toujours au regard de l'importance de ce droit que le législateur a prévu dans certaines lois un régime spécial lorsque celles-ci par leur application risqueraient, ne l'eût-il point fait, de lui porter indûment atteinte. Ainsi, encore à titre d'exemple, en est-il des ménagements que lui réserve la *Loi de l'impôt sur le revenu*, 1970-71-72 (Can.), chap. 63 par l'art. 232.

S'attachant à la personne dans ses rapports avec tous autres, y compris avec l'Etat, il ne fait aucun doute que ce droit fait partie de notre droit public québécois ainsi que de la *common law*.

Quoique nous lui reconnaissions aujourd'hui de multiples effets, le droit à la confidentialité ne s'est d'abord manifesté qu'au XVI⁰ siècle, et ce comme règle de preuve (voir entre autres *Berd v. Lovelace* (1577), 21 E.R. 33; *Dennis v. Codrington* (1580), 21 E.R. 53).

La règle de preuve est bien connue; elle a d'ailleurs été souvent énoncée. Encore récemment cette Cour y référait dans la cause *Solosky*. On peut y trouver l'énoncé des conditions d'existence du privilège, de ses limites, et de ses exceptions. Il importe de signaler que les conditions de fond du privilège que les juges ont graduellement énoncées et précisées sont de fait les conditions de fond du droit à la confidentialité, celui-là n'étant que la manifestation la plus ancienne de celui-ci. Il n'y a pas lieu de les énoncer ici de façon exhaustive ni non plus de rappeler toutes les nuances que les tribunaux leur ont apportées au cours des ans. Il suffit d'en rappeler les grandes lignes et de souligner certaines facettes particulièrement pertinentes à ce pourvoi.

L'énoncé suivant que faisait Wigmore (8 Wigmore, *Evidence*, par. 2292 (McNaughton rev. 1961)) de la règle de preuve résume bien à mon avis les conditions de fond de l'existence du droit à la confidentialité du client de l'avocat:

[TRADUCTION] *Les communications faites par le client qui consulte un conseiller juridique ès qualité, voulues confidentielles par le client, et qui ont pour fin d'obtenir*

10/06/2005 18:37 FAX 2128542249          Diamond Law Library @ CU → SHEarman Sterlin          ⌀016

[1982] 1 R.C.S.        DESCÔTEAUX *et autre* c. MIERZWINSKI        *Le Juge Lamer*        873

*fidence by the client, are at his instance permanently protected from disclosure by himself or by the legal adviser, except the protection be waived.*

Seeking advice from a legal adviser includes consulting those who assist him professionally (for example, his secretary or articling student) and who have as such had access to the communications made by the client for the purpose of obtaining legal advice.

There are exceptions. It is not sufficient to speak to a lawyer or one of his associates for everything to become confidential from that point on. The communication must be made to the lawyer or his assistants in their professional capacity; the relationship must be a professional one at the exact moment of the communication. Communications made in order to facilitate the commission of a crime or fraud will not be confidential either, regardless of whether or not the lawyer is acting in good faith.

## THE SUBSTANTIVE RULE

Although the right to confidentiality first took the form of a rule of evidence, it is now recognized as having a much broader scope, as can be seen from the manner in which this Court dealt with the issues raised in *Solosky*.

Solosky was an inmate at Millhaven penitentiary. He was seeking a declaration that henceforth all properly identified items of solicitor-client correspondence would be forwarded to their respective destinations unopened.

The inmates' right to confidentiality conflicted with the *Penitentiary Act*, R.S.C. 1970, c. P-6, and more particularly with Regulation 2.18 of the *Penitentiary Service Regulations*, allowing the director of the institution to order censorship of correspondence to the extent considered necessary

*un avis juridique font l'objet à son instance d'une protection permanente contre toute divulgation par le client ou le conseiller juridique, sous réserve de la renonciation à cette protection.\**

\* Consulter un conseiller juridique inclut la consultation de ceux qui l'assistent de façon professionnelle (v.g. sa secrétaire, son stagiaire) et qui ont eu comme tel accès aux communications faites par le client dans le but d'obtenir un avis juridique.

Il y a des exceptions. Il ne suffit pas de parler à un avocat ou l'un de ses collaborateurs pour que dès lors tout soit confidentiel. Il faut que la communication soit faite à l'avocat ou à ses collaborateurs en leur qualité professionnelle: la relation, au moment précis de la communication, doit être de nature professionnelle. Ne seront pas non plus confidentielles les communications faites dans le but de perpétrer plus facilement un crime ou une fraude, et ce, que l'avocat soit de bonne ou mauvaise foi.

## LA REGLE DE FOND

Quoique le droit à la confidentialité ne se soit d'abord manifesté que comme règle de preuve, on s'entend aujourd'hui pour lui reconnaître une portée beaucoup plus grande. A témoin, la façon de cette Cour d'aborder les questions posées dans le pourvoi *Solosky*.

Solosky était un détenu du pénitencier Millhaven. Il cherchait à faire déclarer que, désormais, toute la correspondance valablement identifiée comme échangée entre les avocats et leurs clients détenus devait être remise aux destinataires sans être ouverte.

Le droit à la confidentialité des détenus entrait en conflit avec la *Loi sur les pénitenciers*, S.R.C. 1970, c. P-6 et plus particulièrement avec l'art. 2.18 du *Règlement sur le service des pénitenciers* habilitant le directeur de l'institution à ordonner la censure de la correspondance selon les modalités

---

\* Cette traduction de l'anglais au français du texte de Wigmore diffère de celle publiée dans nos *Recueils de la Cour suprême*, [1980] 1 R.C.S. 821, à la p. 835 dans *Solosky*. Ceci tient en partie au fait que, la citation en anglais de Wigmore dans *Solosky* étant inexacte, la traduction française, parce que fidèle au texte cité, l'est tout autant.

OCT 06 2005 06:34        2128542249        PAGE.16

10/06/2005 18:37 FAX 2128542249        Diamond Law Library @ CU → SHEarman Sterlin    ☒017

or desirable for the security of the institution. On behalf of this Court Dickson J. stated the following (at p. 841):

> Counsel for the Crown submits there are three alternative interpretations of the scope of Regulations 2.17 and 2.18 which may govern the extent of the authority of the institutional head in dealing with an envelope which appears to have originated from a solicitor, or to be addressed to a solicitor, in circumstances where the institutional head has reason to believe that the unrestricted and unexamined passage of mail to or from the particular inmate in question represents a danger to the safety and security of the institution:
> 
> (a) he may nonetheless permit the letter to be delivered unopened and unexamined to the inmate;
> 
> (b) he may suspend the inmate's privilege to receive mail, in respect of that letter, pursuant to sections 2.17 and 2.18 of the *Penitentiary Service Regulations*.
> 
> (c) he may order that the envelope be subject to opening and examination to the minimum extent necessary to establish whether it is properly the subject of solicitor-client privilege.
> 
> Counsel contends that to interpret the Regulations as requiring the first of these alternatives is to leave the institutional head without the authority he requires to control the potential passage of contraband, or of correspondence which may endanger the safety of the institution, under the guise of confidential communications passing between inmate and solicitor. I agree. I would also reject the second as providing no solution. I agree that the third alternative represents that interpretation of the scope of the Regulations which permits to an inmate the maximum opportunity to communicate with his solicitor through the mails that is consistent with the requirement to maintain the safety and security of the institution.
> 
> In my view, the "minimum extent necessary to establish whether it is properly the subject of solicitor-client privilege" should be interpreted in such manner that (i) the contents of an envelope may be inspected for contraband; (ii) in limited circumstances, the communication may be read to ensure that it, in fact, contains a confidential communication between solicitor and client written for the purpose of seeking or giving legal advice; (iii) the letter should only be read if there are reasonable and probable grounds for believing the contrary, and then only to the extent necessary to determine the *bona fides* of the communication; (iv) the authorized penitentiary official who examines the envelope, upon ascertaining that the envelope contains nothing in breach of

tenues pour nécessaires ou utiles à la sécurité de l'institution. Au nom de cette Cour M. le juge Dickson tenait les propos suivants (à la p. 841):

> L'avocat du ministère public fait valoir trois interprétations possibles de la portée des art. 2.17 et 2.18 du Règlement qui peuvent déterminer l'étendue du pouvoir du chef d'une institution face à une enveloppe qui paraît provenir d'un avocat ou lui être adressée, dans les cas où il a des motifs de croire que la transmission sans restriction et sans examen du courrier adressé à un détenu en particulier ou envoyé par ce dernier présente un risque pour la sécurité et la sûreté de l'institution:
> 
> a) il peut quoi qu'il en soit permettre que la lettre soit livrée au détenu sans avoir été ouverte et examinée;
> 
> b) il peut suspendre le privilège du détenu de recevoir du courrier, relativement à cette lettre, conformément aux articles 2.17 et 2.18 du *Règlement sur le service des pénitenciers*;
> 
> c) il peut ordonner que l'enveloppe soit ouverte et examinée dans la mesure minimale jugée nécessaire pour établir si son contenu relève effectivement du privilège entre avocat et client.
> 
> L'avocat fait valoir qu'appliquer la première interprétation au Règlement revient à enlever au chef de l'institution le pouvoir dont il a besoin pour contrôler la transmission éventuelle d'objets de contrebande ou de courrier qui puisse mettre en danger la sécurité de l'institution, sous le couvert du caractère confidentiel des communications entre un détenu et son avocat. Je suis d'accord. Je suis également d'avis de rejeter la deuxième interprétation parce qu'elle n'offre aucune solution. Je conviens que la troisième présente l'interprétation de la portée du Règlement qui donne à un détenu le maximum de possibilités de communiquer avec son avocat par courrier, tout en étant compatible avec le maintien de la sécurité de l'institution.
> 
> A mon avis, la «mesure minimale jugée nécessaire pour établir si son contenu relève effectivement du privilège entre avocat et client» doit être interprétée de manière que (i) le contenu d'une enveloppe puisse être inspecté pour déceler la contrebande, (ii) dans des cas limités, la communication puisse être lue pour s'assurer qu'elle renferme effectivement une communication à caractère confidentiel entre l'avocat et son client aux fins de consultation ou d'avis juridiques; (iii) la lettre ne soit lue que s'il existe des motifs raisonnables et probables de croire le contraire et, dans ce cas, uniquement dans la mesure nécessaire pour déterminer la bonne foi de la communication; (iv) le fonctionnaire compétent du pénitencier qui examine l'enveloppe, après s'être assuré

10/06/2005 18:38 FAX 2128542249        Diamond Law Library @ CU → SHEarman Sterlin    ☒018

[1982] 1 R.C.S.    DESCÔTEAUX et autre c. MIERZWINSKI    *Le Juge Lamer*    875

security, is under a duty at law to maintain the confidentiality of the communication. Paragraph 7c. of Directive 219 underlines this point.

It is quite apparent that the Court in that case applied a standard that has nothing to do with the rule of evidence, the privilege, since there was never any question of testimony before a tribunal or court. The Court in fact, in my view, applied a substantive rule, without actually formulating it, and, consequently, recognized implicitly that the right to confidentiality, which had long ago given rise to a rule of evidence, had also since given rise to a substantive rule.

It would, I think, be useful for us to formulate this substantive rule, as the judges formerly did with the rule of evidence; it could, in my view, be stated as follows:

1. The confidentiality of communications between solicitor and client may be raised in any circumstances where such communications are likely to be disclosed without the client's consent.

2. Unless the law provides otherwise, when and to the extent that the legitimate exercise of a right would interfere with another person's right to have his communications with his lawyer kept confidential, the resulting conflict should be resolved in favour of protecting the confidentiality.

3. When the law gives someone the authority to do something which, in the circumstances of the case, might interfere with that confidentiality, the decision to do so and the choice of means of exercising that authority should be determined with a view to not interfering with it except to the extent absolutely necessary in order to achieve the ends sought by the enabling legislation.

4. Acts providing otherwise in situations under paragraph 2 and enabling legislation referred to in paragraph 3 must be interpreted restrictively.

que cette dernière ne renferme rien qui enfreigne la sécurité, ait l'obligation légale de garder la communication confidentielle. L'alinéa 7c. de la directive n° 219 souligne ce point.

De toute évidence la Cour, dans cette cause, appliquait une norme qui n'a rien à voir avec la règle de preuve, le privilège, puisqu'en rien n'y était-il question de témoignages devant un tribunal quelconque. En fait la Cour, à mon avis, appliquait, sans par ailleurs la formuler, une règle de fond et, par voie de conséquence, reconnaissait implicitement que le droit à la confidentialité, qui avait depuis déjà longtemps donné naissance à une règle de preuve, avait aussi depuis donné naissance à une règle de fond.

Il est, je crois, opportun que nous formulions cette règle de fond, tout comme l'ont fait autrefois les juges pour la règle de preuve; elle pourrait, à mon avis, être énoncée comme suit:

1. La confidentialité des communications entre client et avocat peut être soulevée en toutes circonstances où ces communications seraient susceptibles d'être dévoilées sans le consentement du client;

2. A moins que la loi n'en dispose autrement, lorsque et dans la mesure où l'exercice légitime d'un droit porterait atteinte au droit d'un autre à la confidentialité de ses communications avec son avocat, le conflit qui en résulte doit être résolu en faveur de la protection de la confidentialité;

3. Lorsque la loi confère à quelqu'un le pouvoir de faire quelque chose qui, eu égard aux circonstances propres à l'espèce, pourrait avoir pour effet de porter atteinte à cette confidentialité, la décision de le faire et le choix des modalités d'exercice de ce pouvoir doivent être déterminés en regard d'un souci de n'y porter atteinte que dans la mesure absolument nécessaire à la réalisation des fins recherchées par la loi habilitante;

4. La loi qui en disposerait autrement dans les cas du deuxième paragraphe ainsi que la loi habilitante du paragraphe trois doivent être interprétées restrictivement.

OCT 06 2005 06:34    2128542249    PAGE.18