10/06/2005 18:38 FAX 2128542249   Diamond Law Library @ CU → SHEarman Sterlin   ☒019

## THE RULE OF EVIDENCE

The rule of evidence is formulated by Cross (*Cross on Evidence*, 5th ed., 1979) as follows (at p. 282):

In civil and criminal cases, confidential communications passing between a client and his legal adviser need not be given in evidence by the client and, without the client's consent, may not be given in evidence by the legal adviser in a judicial proceeding . . .

The rule of evidence does not in any way prevent a third party witness (I am referring here to someone other than an agent of the client or the lawyer) from introducing in evidence confidential communications made by a client to his lawyer. It is important to note, however, that before allowing such evidence to be introduced and in determining to what extent to allow it, the judge must satisfy himself, through the application of the substantive rule (No. 3), that what is being sought to be proved by the communications is important to the outcome of the case and that there is no reasonable alternative form of evidence that could be used for that purpose.

## CONFIDENTIALITY IN THE CASE AT BAR

In the case at bar the principal issue is to determine when the solicitor-client relationship, which confers the confidentiality protected by the substantive rule and the rule of evidence, arises.

The Superior Court judge, as we have seen, was of the view that this relationship, and consequently the right to confidentiality, did not arise until the legal aid applicant had been accepted, that is, until the retainer was established.

When dealing with the right to confidentiality it is necessary, in my view, to distinguish between the moment when the retainer is established and the moment when the solicitor-client relationship arises. The latter arises as soon as the potential client has his first dealings with the lawyer's office in order to obtain legal advice.

The items of information that a lawyer requires from a person in order to decide if he will agree to

## LA RÈGLE DE PREUVE

Quant à la règle de preuve, elle est énoncée par Cross (*Cross on Evidence*, 5ᵉ éd., 1979) comme suit (à la p. 282):

[TRADUCTION] Dans les affaires civiles et criminelles, un client n'est pas tenu de témoigner à propos des communications confidentielles échangées entre lui et son conseiller juridique et, sans le consentement de son client, le conseiller juridique ne peut déposer à leur sujet dans une procédure judiciaire . . .

La règle de preuve ne fait point obstacle à la mise en preuve par un tiers-témoin (je parle ici d'une personne autre qu'un agent du client ou de l'avocat) des communications confidentielles d'un client avec son avocat. Il importe cependant de souligner que le juge, avant de le permettre et dans la détermination de la mesure dans laquelle il le permettrait, devra, par l'application de la règle de fond (nᵒ 3), se satisfaire que ce que l'on cherche à prouver par les communications est important pour le sort de la cause et que ne s'offre pas, comme moyen de preuve à cette fin, d'alternative raisonnable.

## LA CONFIDENTIALITÉ EN L'ESPÈCE

En l'espèce, la question principale est celle de déterminer le moment où prend naissance la relation de client-avocat qui confère dès après le caractère de confidentialité que protègent la règle de fond et la règle de preuve.

Le juge de la Cour supérieure, comme on le sait, ne voyait naître la relation, et par voie de conséquence le droit à la confidentialité, qu'à compter du moment où le requérant d'aide juridique était accepté, c.-à-d. qu'au moment de la formation du mandat.

Il faut, à mon avis, en regard du droit à la confidentialité, distinguer entre le moment de la formation du mandat et celui où prend naissance la relation client-avocat. Cette dernière prend naissance dès les premières démarches que fait le client virtuel auprès du bureau de l'avocat en vue d'obtenir un avis juridique.

Les renseignements que requiert un avocat d'une personne pour décider s'il acceptera de la conseil-

10/06/2005 18:38 FAX 2128542249   Diamond Law Library @ CU → SHEarman Sterlin   ☑020

[1982] 1 R.C.S.   DESCÔTEAUX *et autre c.* MIERZWINSKI   *Le Juge Lamer*   877

advise or represent him are just as much communications made in order to obtain legal advice as any information communicated to him subsequently. It has long been recognized that even if the lawyer does not agree to advise the person seeking his services, communications made by the person to the lawyer or his staff for that purpose are nonetheless privileged (*Minter v. Priest*, [1930] A.C. 558; *Phipson on Evidence*, 12th ed., 1976, p. 244, No. 589; 8 Wigmore, *Evidence* (McNaughton rev. 1961), p. 587, para. 2304).

Moreover, the same applies not only to information given before the retainer is perfected concerning the legal problem itself, but also to information concerning the client's ability to pay the lawyer and any other information which a lawyer is reasonably entitled to require before accepting the retainer. First, this information of an administrative nature is just as related to the establishment of the professional relationship as any other information; this is especially clear when, as in the case at bar, the legal aid applicant "must set forth [his] financial means ... and the basis of his claim". In addition, information of this nature that a person gives his lawyer for that purpose may also be highly confidential and would have been kept secret by that person were it not for that person's need of the assistance of a legal adviser.

For example, the legal aid form requires the applicant to provide information concerning his dependants. A person could thus be forced to disclose to the legal aid bureau a paternity that had until then been kept secret, in order to establish his onerous financial obligations and consequently his limited means. One can imagine, given the form the applicant must complete, numerous other situations where the information given would be highly personal.

I therefore do not think that a distinction should be made between information that must be given in order to establish the probable existence of a valid claim and that given to establish eligibility from the point of view of financial means, since, on

ler ou de la représenter sont tout autant des communications faites dans le but d'obtenir un avis juridique que ceux qui lui seront communiqués par après. Il a été depuis longtemps reconnu que même si l'avocat n'accepte pas d'aviser la personne qui sollicite ses services, les communications faites à cette fin par cette personne à l'avocat ou à ses préposés n'en sont pas moins privilégiées (*Minter v. Priest*, [1930] A.C. 558; *Phipson on Evidence*, 12ᵉ éd., 1976, p. 244, nᵒ 589; 8 Wigmore, *Evidence*, (McNaughton rev. 1961), p. 587, par. 2304).

De plus, il en est ainsi non seulement pour les renseignements antérieurs à la formation du mandat qui concernent le problème de droit lui-même, mais aussi pour ceux qui concernent la capacité du client de rémunérer l'avocat et tous autres renseignements qu'un avocat est raisonnablement en droit d'exiger avant d'accepter le mandat. D'abord, ces renseignements de nature administrative sont tout autant que les autres reliés à l'établissement de la relation professionnelle; on ne peut d'ailleurs en douter lorsque, comme en l'espèce, le requérant de l'aide juridique «doit exposer [son] état financier ... et le fondement de son droit.» Ensuite, les renseignements de cette nature qu'une personne donne à cette fin à son avocat peuvent être eux aussi hautement confidentiels et seraient gardés secrets, n'était le besoin de cette personne d'être assistée d'un conseiller juridique.

À titre d'exemple, on voit que la formule d'aide juridique exige que le requérant fournisse des renseignements quant à ses dépendants. Or une personne pourrait être forcée à révéler au bureau d'aide juridique, afin d'établir ses lourdes obligations financières et par voie de conséquence ses moyens limités, une paternité jusqu'alors secrète. On pourrait imaginer, à partir de la formule que doit remplir le requérant, quantité d'autres situations où les renseignements recueillis seraient des plus intimes.

Je ne crois donc pas que l'on doive distinguer entre les renseignements obligatoirement donnés pour établir la vraisemblance du droit et ceux fournis pour établir l'éligibilité en regard des moyens financiers, puisque, d'une part, les rensei-

10/06/2005 18:38 FAX 2128542249      Diamond Law Library @ CU → SHEarman Sterlin      ☒021

878          DESCÔTEAUX *et al.* v. MIERZWINSKI    *Lamer J.*          [1982] 1 S.C.R.

the one hand, information concerning the person's financial situation may be just as highly confidential as any other information and since, on the other hand, the fact of being unable to meet the eligibility requirements respecting financial means is no less fatal to the ability to obtain the services sought.

The issue we are concerned with was recently raised in Alberta in *R. v. Littlechild* (1979), 51 C.C.C. (2d) 406.

An individual was charged with having defrauded a store by using an N.S.F. cheque. In order to prove that the accused knew that his bank had ordered a suspension of all operations concerning his bank accounts and that consequently he knew that his cheque would not be honoured, the Crown wished to introduce in evidence communications that the accused had made previously to a legal aid bureau employee.

During an interview and on a form similar to the one involved in the case at bar, the accused had provided certain information concerning his financial means to this employee, who was not a lawyer, in order to establish his eligibility for the legal aid bureau's services. According to the Crown, part of this information dealt in particular with the fact that the accused knew that he no longer had access to the funds in his bank accounts.

The trial judge refused on his own motion to allow the Crown to introduce these communications in evidence.

The Attorney General appealed.

Laycraft J.A., rendering judgment on behalf of the Court of Appeal, stated the following (at pp. 411-12):

A number of cases establish the principle that solicitor-client privilege extends both to communications between the agents of a client and his solicitor and to communications between a client and agents of the solicitor. In *Wheeler v. Le Marchant* (1881), 17 Ch. D. 675 at p. 682, Jessel, M.R., said:

The actual communication to the solicitor by the client is of course protected, and it is equally protected whether it is made by the client in person or is

gnements concernant la situation financière peuvent être tout autant que les autres de nature hautement confidentielle et que, d'autre part, le fait de ne pas satisfaire aux critères d'éligibilité quant à ses moyens financiers n'est guère moins fatal pour les services recherchés.

La question dont nous sommes saisis s'est soulevée récemment en Alberta dans la cause *R. v. Littlechild* (1979), 51 C.C.C. (2d) 406.

Un individu était accusé d'avoir fraudé un magasin par l'emploi d'un chèque sans provision. Afin de prouver que l'accusé savait que sa banque avait ordonné une cessation des opérations relatives à ses comptes bancaires et que, par conséquent, il savait que son chèque ne serait pas honoré, la Couronne a voulu mettre en preuve des communications que l'accusé avait faites auparavant à un préposé d'un bureau d'Aide juridique.

L'accusé, au cours d'une entrevue et au moyen d'une formule analogue à celle que l'on trouve dans le présent cas, avait fourni à ce préposé, qui n'était pas un avocat, certains renseignements quant à ses moyens financiers, afin d'établir son éligibilité aux services du bureau d'Aide juridique. Selon la Couronne, une partie de ces renseignements avaient trait plus particulièrement au fait que l'accusé savait qu'il n'avait plus accès aux fonds qui se trouvaient dans ses comptes bancaires.

Le juge présidant le procès a, *proprio motu*, refusé à la Couronne la mise en preuve de ces communications.

Le Procureur général s'est pourvu en appel.

M. le juge Laycraft, prononçant le jugement de la Cour d'appel, disait ce qui suit (aux pp. 411 et 412):

[TRADUCTION] Plusieurs décisions établissent le principe que le privilège des communications entre avocat et client s'étend aussi bien aux communications entre les représentants du client et son avocat qu'aux communications entre un client et des représentants de son avocat. Dans l'arrêt *Wheeler v. Le Marchant* (1881), 17 Ch. D. 675 à la p. 682, le maître des rôles Jessel dit:

La communication même du client à son avocat est, cela va de soi, protégée; elle est également protégée si elle est faite par le client en personne ou pour lui par

10/06/2005 18:39 FAX 2128542249          Diamond Law Library @ CU → SHEarman Sterlin          @022

made by an agent on behalf of the client, and whether it is made to the solicitor in person or to a clerk or subordinate of the solicitor who acts in his place and under his direction.

In *Lyell v. Kennedy* (1884), 27 Ch. D. 1, Cotton, L.J., said at p. 19:

> But then this privilege is confined to that which is communicated to or by that man [the client] by or to the solicitors or their agents, or any persons who can be treated properly as agents of the solicitors. We have therefore thought it right, in order to prevent an evasion of what is the proper view of the law by the use of that word 'agents,' to require that the Defendant shall put in a further affidavit stating whether the agents mentioned were his agents, or whether they were the agents of the solicitors and persons so employed by the solicitor as to be his agents, including such agents as every solicitor's clerk may be said to be, who would all be entitled to the protection given to solicitors. Subject, then, to that alteration, we think that the protection claimed is in law good.

In *R. v. Chaney* (1908), 13 C.C.C. 289, 17 Man. R. 467 (Man. C.A.), police had a person falsely pose as a representative of the accused's solicitor in order to obtain a statement from the accused. The Court held that the person obtaining the statement must be treated as though he was the solicitor's agent as he represented himself to be, and that the evidence was therefore inadmissible on the ground of privilege.

Recent Canadian cases also holding that solicitor-client privilege extends to communications through the intermediary of an agent are *Susan Hosiery Ltd. v. Minister of National Revenue*, [1969] 2 Ex. C.R. 27, [1969] C.T.C. 353, and *Re Alcan-Colony Contracting Ltd. et al. and Minister of National Revenue* (1971), 18 D.L.R. (3d) 32, [1971] 2 O.R. 365.

It is not a factor against the existence of privilege that the communication between the respondent and the Legal Aid officer which is sought to be introduced in evidence related to the respondent's effort to obtain counsel rather than to advice given for the purpose of the actual defence. In *Wheeler v. Le Marchant, supra,* Jessel, M.R., said at p. 682:

> So again, a communication with a solicitor for the purpose of obtaining legal advice is protected though it relates to a dealing which is not the subject of litigation, provided it be a communication made to the

l'un de ses représentants, qu'elle soit faite à l'avocat en personne ou à un clerc ou employé de l'avocat qui agit à sa place et selon ses instructions.

Dans l'arrêt *Lyell v. Kennedy* (1884), 27 Ch. D. 1, le lord juge Cotton dit à la p. 19:

> Mais alors ce privilège se limite à ce qui a été communiqué par cette personne ou à elle [le client] aux avocats ou par eux ou leurs représentants ou toutes personnes qu'on peut considérer à juste titre comme les représentants des avocats. Nous avons donc estimé juste, en vue d'éviter que l'on s'éloigne de la bonne interprétation de la règle de droit par l'emploi du mot «représentants», d'exiger que le défendeur produise une autre déclaration sous serment indiquant si les représentants mentionnés sont les siens ou s'ils sont les représentants des avocats et des personnes employées par l'avocat de manière à être ses représentants, y compris des représentants tel le clerc d'un avocat, qui, tous, ont droit à la protection accordée aux avocats. Alors, sous réserve de cette modification, nous pensons que la protection revendiquée est justifiée en droit.

Dans l'arrêt *R. v. Chaney* (1908), 13 C.C.C. 289, 17 Man. R. 467 (C.A. Man.), la police avait fait jouer à quelqu'un le rôle d'un représentant de l'avocat de l'accusé afin d'obtenir une déclaration de ce dernier. La Cour a jugé que la personne ayant obtenu la déclaration doit être considérée comme le représentant de l'avocat qu'elle avait prétendu être et qu'en conséquence, la preuve était irrecevable à cause du privilège.

Des décisions canadiennes récentes statuent que le privilège des communications entre avocats et clients s'étend aux communications faites par l'intermédiaire d'un représentant, par exemple *Susan Hosiery Ltd. c. Ministre du Revenu national*, [1969] 2 R.C. de l'É. 27, [1969] C.T.C. 353 et *Re Alcan-Colony Contracting Ltd. et al. c. Ministre du Revenu national* (1971), 18 D.L.R. (3d) 32, [1971] 2 O.R. 365.

L'existence du privilège n'est pas mise en cause du fait que la communication entre l'intimé et le fonctionnaire de l'aide juridique qu'on veut déposer en preuve a trait à la démarche de l'intimé pour retenir un avocat plutôt qu'à une consultation au sujet de sa défense elle-même. Dans l'arrêt *Wheeler v. Le Marchant*, précité, le maître des rôles Jessel dit à la p. 682:

> Donc, une communication faite à un avocat en vue d'obtenir un avis juridique est confidentielle même si elle se rapporte à quelque chose qui ne fait pas l'objet du procès, pourvu que ce soit une communication faite

OCT 06 2005 06:35                                        2128542249          PAGE.22

10/06/2005 18:39 FAX 2128542249     Diamond Law Library @ CU → SHEarman Sterlin    ☑023

solicitor in that character and for the purpose.[5]

This principle has been stated earlier in broader terms in *Minet v. Morgan* (1873), 8 Ch. App. 361, by Lord Selbourne, L.C., at p. 368:

> But there is a later authority by that most accurate and learned Judge, Sir *R.T. Kindersley-Lawrence v. Campbell*, 4 Drew. 485, 490 [62 E.R. 186 at 188], which contains a statement of the Vice-Chancellor's view of the principle and also of the rule which in 1859 had come to be well settled and established in this Court on the foundation of that principle. He says: 'It is not now necessary, as it formerly was, for the purpose of obtaining production that the communications should be made either during or relating to an actual or even to an expected litigation. It is sufficient if they pass as professional communications in a professional capacity.' I can only say that I entirely agree with the views both of the principle and of its proper extension taken in these later authorities.

It is also clear that solicitor-client privilege can extend to conversations in which a person makes disclosures while seeking to retain a solicitor, though in fact the retainer is not perfected. In *Minter v. Priest*, [1930] A.C. 558 at p. 573, Viscount Dunedin said:

> Now, if a man goes to a solicitor, as a solicitor, to consult and does consult him, though the end of the interview may lead to the conclusion that he does not engage him as his solicitor or expect that he should act as his solicitor, nevertheless the interview is held as a privileged occasion.

It follows from the authorities referred to above that conversations with a solicitor's agents held for the purpose of retaining him would also be privileged, even though the solicitor was not then, or ever, retained. In my view, the principle protects from disclosure a conversation between an applicant for legal aid and the non-lawyer official of the Legal Aid Society who interviews him to see if he is qualified.

The privilege protecting from disclosure communications between solicitor and client is a fundamental right—as fundamental as the right to counsel itself since the right can exist only imperfectly without the privilege. The Courts should be astute to protect both. As long ago as *Pearson v. Foster* (1885), 15 Q.B.D. 114,

---

à l'avocat en cette qualité et à cette fin.[5]

Le lord chancelier Selbourne a déjà énoncé le même principe en termes plus généraux dans l'arrêt *Minet v. Morgan*, 8 Ch. App. 361, à la p. 368:

> Mais il y a un précédent plus récent du très savant juge, sir *R. T. Kindersley-Lawrence v. Campbell*, 4 Drew. 485, 490 [62 E.R. 186 à la p. 188], qui comporte l'énoncé de l'opinion du Vice-Chancelier sur le principe et sur la règle qui en découle et que, dès 1859, cette Cour a reconnue. Il dit: «Il n'est pas nécessaire aujourd'hui, comme il l'a déjà été, que des communications aient été faites pendant un litige réel ou même prévisible ou qu'elles se rapportent à l'un ou à l'autre pour qu'on puisse en obtenir la production. Il suffit que ce soit des communications reliées à l'exercice de la profession et faites à ce titre». Je peux seulement dire que je suis entièrement d'accord avec cet énoncé du principe et avec son élargissement appliqué dans cette jurisprudence plus récente.

Il est aussi manifeste que le privilège des communications entre avocat et client peut s'étendre aux conversations au cours desquelles une personne fait des révélations au cours desquelles les démarches en vue de retenir les services d'un avocat, même si en réalité le mandat n'est pas parfait. Dans l'arrêt *Minter v. Priest*, [1930] A.C. 558 à la p. 573, le vicomte Dunedin dit:

> Or, si une personne s'adresse à un avocat, en tant que tel, pour le consulter et qu'elle le consulte effectivement, même si la fin de l'entretien indique qu'elle ne retient pas ses services comme avocat ou ne s'attend pas à ce que l'avocat la représente, l'entretien est néanmoins confidentiel.

Il ressort de la jurisprudence mentionnée ci-dessus que les conversations avec les représentants d'un avocat dans le but de retenir les services de celui-ci sont confidentielles, même si les services de l'avocat ne sont pas retenus à ce moment-là ou ne le sont jamais. A mon avis, le principe empêche la divulgation d'une conversation entre celui qui fait une demande d'aide juridique et le fonctionnaire qui n'est pas avocat de l'aide juridique qui l'interroge pour vérifier s'il est admissible.

Le privilège qui protège contre la divulgation les communications entre avocat et client est un droit fondamental, aussi fondamental que le droit d'être représenté par avocat puisque, sans le privilège, le droit ne peut être qu'imparfait. Les cours seraient avisées de protéger l'un et l'autre. Même à l'époque de l'arrêt

---

[5] This decision, like the following one, does not seem to me to support Laycraft J.'s conclusion directly in its entirety. I am nonetheless in agreement with that conclusion.

[5] Cette décision, tout comme la suivante, ne m'apparaît pas appuyer directement dans toute son ampleur la conclusion du juge Laycraft. Je n'en suis pas moins d'accord avec cette conclusion.

Brett, M.R., warned that free and confident communication within the solicitor-client relationship is so vital a part of the right to counsel that the privilege ought not to be 'frittered away'. At pp. 119-20 he said:

> The privilege with regard to confidential communications between solicitor and client for professional purposes ought to be preserved, and not frittered away. The reason of the privilege is that there may be that free and confident communication between solicitor and client which lies at the foundation of the use and service of the solicitor to the client ...

(Emphasis added.)

I am fully in agreement with the conclusions of the Alberta Court of Appeal. It is only fair to mention, in passing, that the judgment of the Superior Court judge in the case at bar was rendered prior to that decision.

Confidential communications, whether they relate to financial means or to the legal problem itself, lose that character if and to the extent that they were made for the purpose of obtaining legal advice to facilitate the commission of a crime.

The same is true *a fortiori* where, as in the case at bar, the communication itself is the material element (*actus reus*) of the crime; this is all the more evident where the victim of the crime is precisely the office of the lawyer to whom the communication was made.

This exception has been recognized for a very long time. The case most frequently referred to is *R. v. Cox and Railton* (1884), 14 Q.B.D. 153, where Stephen J. stated (at p. 167):

> The reason on which the rule is said to rest cannot include the case of communications, criminal in themselves, or intended to further any criminal purpose, for the protection of such communications cannot possibly be otherwise than injurious to the interests of justice, and to those of the administration of justice. Nor do such communications fall within the terms of the rule. A communication in furtherance of a criminal purpose does not 'come into the ordinary scope of professional employment.'

(Emphasis added.)

In the case at bar, the communications dealing with Marcellin Ledoux's financial means are, according to the search warrant, "criminal in

*Pearson v. Foster* (1885), 15 Q.B.D. 114, le maître des rôles Brett indiquait que le privilège de la communication confidentielle et libre entre avocat et client est à ce point essentiel au droit d'être représenté par avocat qu'il ne faudrait pas le gaspiller. Aux pages 119 et 120 il dit:

> Le privilège d'avoir des communications confidentielles entre avocat et client à des fins professionnelles devrait être réaffirmé plutôt que gaspillé. La raison d'être du privilège est qu'il se peut que les communications libres et confidentielles entre avocat et client qui constituent le fondement de ce que l'avocat représente pour son client ...

(C'est moi qui souligne.)

Je suis entièrement d'accord avec les conclusions de la Cour d'appel de l'Alberta. Il n'est que juste de mentionner, en passant, que le jugement du juge de la Cour supérieure dans la présente cause est antérieur à cet arrêt.

Confidentielles, qu'elles aient trait aux moyens financiers ou à la nature du problème, les communications ne le seront plus si et dans la mesure où elles ont été faites dans le but d'obtenir un avis juridiques pour faciliter la perpétration d'un crime.

*A fortiori* en va-t-il de même lorsque, comme en l'espèce, la communication elle-même est l'élément matériel (*actus reus*) du crime; et c'est d'autant plus évident lorsque la victime du crime est précisément le bureau de l'avocat à qui la communication a été faite.

Cette exception est reconnue depuis fort longtemps. La cause à laquelle on réfère le plus souvent est *R. v. Cox and Railton* (1884), 14 Q.B.D. 153, où le juge Stephen disait (à la p. 167):

> [TRADUCTION] ·Le motif qui, dit-on, sert de fondement à la règle ne peut englober le cas de communications qui seraient criminelles en elles-mêmes ou qui tendraient à réaliser une fin criminelle, puisque la confidentialité de ces communications ne pourrait que nuire aux intérêts de la justice et de son administration. Aussi ces communications ne sont point visées par la règle. Une communication qui réalise une fin criminelle n'appartient pas au domaine normal de l'emploi professionnel».

(C'est moi qui souligne.)

En l'espèce, les communications ayant trait aux moyens financiers de Marcellin Ledoux sont, d'après le libellé du mandat de perquisition, pour

10/06/2005 18:39 FAX 2128542249    Diamond Law Library @ CU → SHEarman Sterlin    ☒025

882    DESCÔTEAUX *et al. v.* MIERZWINSKI  *Lamer J.*    [1982] 1 S.C.R.

themselves", to use Stephen J.'s words, and will not benefit as such from the protection they would otherwise have been afforded by the substantive rule and the rule of evidence, had they been confidential.

## THE SEARCH WARRANT PROVIDED FOR IN S. 443(1)(*b*) OF THE CRIMINAL CODE AND THE RIGHT TO CONFIDENTIALITY

I do not intend to examine all the questions raised by the interpretation of s. 443 and the determination of the duties and powers it confers on the justice of the peace. Nor is it necessary for the purposes of this appeal that we consider the things that can be searched for and seized under s. 443(1)(*a*) or (*c*). It is sufficient for the purposes of this appeal to make certain general observations, that suggests a mere reading of s. 443(1)(*b*).

We know that, save certain exceptions, one cannot go into someone else's house without a warrant, even in order to search for evidence of a crime. Section 443 permits such entry on certain conditions, but subjects such an activity to a certain degree of judicial control. It provides that the person designated by the justice in the warrant may search the premises for the things described in the warrant and, if they are found, seize them and carry them before the justice. The only restriction on the type of things the search for and seizure of which a justice of the peace may authorize by warrant is that they be one of the things described in paras. (*a*), (*b*) and (*c*) of s. 443(1):

443. (1) A justice who is satisfied by information upon oath in Form 1, that there is reasonable ground to believe that there is in a building, receptacle or place

(*a*) anything upon or in respect of which any offence against this Act has been or is suspected to have been committed,

(*b*) anything that there is reasonable ground to believe will afford evidence with respect to the commission of an offence against this Act, or

(*c*) anything that there is reasonable ground to believe is intended to be used for the purpose of committing any offence against the person for which a person may be arrested without warrant,

may at any time issue a warrant under his hand authorizing a person named therein or a peace officer to search

reprendre les mots du juge Stephen, «*criminal in themselves*» et ne jouiront pas comme tel de la protection que leur eût autrement donnée la règle de fond et de preuve, eussent-elles bénéficié du caractère de confidentialité.

## LE MANDAT DE PERQUISITION PRÉVU À L'ART. 443(1)*b*) DU CODE CRIMINEL ET LE DROIT À LA CONFIDENTIALITÉ

Je n'ai pas l'intention d'étudier toutes les questions que soulèvent l'interprétation de l'art. 443 et la détermination des devoirs et des pouvoirs qu'il confère au juge de paix. Ce pourvoi ne requiert point non plus que nous considérions les choses que l'on voudrait chercher et saisir sous l'autorité de l'art. 443(1)*a*) ou *c*). Il suffit pour les fins de ce pourvoi de dégager certaines constatations d'ordre général que permet d'ailleurs la seule lecture de l'al. 443(1)*b*).

On sait que, sauf exception, on ne peut sans mandat entrer chez autrui, même pour y chercher la preuve d'un crime. L'article 443 le permettra à certaines conditions, mais en assujettissant cette activité à un certain contrôle judiciaire. La loi prescrit que celui qui sera désigné par le juge dans le mandat pourra perquisitionner, c.-à-d. chercher en fouillant les lieux les choses décrites au mandat et, si elles sont trouvées, les saisir et les apporter au juge. La seule restriction quant à la nature des choses dont le juge de paix peut par mandat autoriser la recherche et la saisie est à l'effet que celles-ci soient une des choses décrites aux al. *a*), *b*) et *c*) de l'art. 443(1):

443. (1) Un juge de paix qui est convaincu, à la suite d'une dénonciation faite sous serment suivant la formule 1, qu'il existe un motif raisonnable pour croire que, dans un bâtiment, contenant ou lieu, se trouve

*a*) une chose sur ou concernant laquelle une infraction à la présente loi a été commise ou est soupçonnée avoir été commise,

*b*) une chose qui, pour un motif raisonnable, porte à croire qu'elle fournira une preuve touchant la perpétration d'une infraction à la présente loi, ou

*c*) une chose qui, pour un motif raisonnable, porte à croire qu'elle est destinée à servir aux fins de la perpétration d'une infraction contre la personne, pour laquelle un individu peut être arrêté sans mandat,

peut, à tout moment, lancer un mandat sous son seing, autorisant une personne y nommée ou un agent de la

10/06/2005 18:40 FAX 2128542249          Diamond Law Library @ CU → SHEarman Sterlin   @026

the building, receptacle or place for any such thing, and to seize and carry it before the justice who issued the warrant or some other justice for the same territorial division to be dealt with by him according to law.

In the case at bar we are thus concerned with something provided for in para. (b), that is, something that is likely to "afford evidence with respect to the commission of an offence" in a legal proceeding.

Moreover, the legislation does not make any distinction with respect to the nature of the premises sought to be searched. One may therefore search anywhere for what is provided for under para. (b) of the section, including in a lawyer's offices.

Indeed the jurisdiction of a justice of the peace to authorize a search thus does not depend on the nature of the place sought to be searched but on a reasonable belief that there are to be found on the premises things covered by para. (b) of s. 443(1).

It then becomes necessary to reconcile the authority to search, a right that society has assumed as being essential to the suppression of crime, with the right to confidentiality, a right that society recognizes as essential for the better administration of justice.

The right to confidentiality enjoyed by a lawyer's client does not, by virtue of the substantive rule, interfere with the jurisdiction of the justice of the peace to authorize the search, but might do so by virtue of the rule of evidence. At the very most, in the present state of the law, the substantive rule requires that a justice of the peace be more demanding before authorizing a search of a lawyer's office or one of his files and will lead him, where necessary, to set out special procedures for the execution of the warrant in order to limit to what is absolutely inevitable the breach of confidentiality.

This leads us to a consideration of the effect of the right to confidentiality on searches, first as a rule of evidence and then as a substantive rule. The rule of evidence affects the jurisdiction of the

paix à faire une perquisition dans ce bâtiment, contenant ou lieu, pour rechercher cette chose, la saisir et la transporter devant le juge de paix qui a décerné le mandat, ou quelque autre juge de paix de la même circonscription territoriale, afin qu'il en dispose d'après la loi.

Il s'agira donc, en l'espèce, d'une chose prévue à l'al. b), soit une chose qui pourra vraisemblablement «fournir(a) une preuve touchant la perpétration d'une infraction» dans une procédure judiciaire.

De plus, le législateur ne fait aucune distinction quant à la nature des lieux que l'on veut fouiller. On peut donc chercher n'importe où ce que prévoit l'al. b) de l'art. 443, y compris chez l'avocat.

En effet, la compétence du juge de paix à autoriser une perquisition ne tient pas de la nature de l'endroit à fouiller mais de la croyance raisonnable à la présence sur ces lieux de choses de la nature de celles prévues à l'al. b) de l'art. 443(1).

Se soulève dès lors la nécessité de concilier le pouvoir de perquisition, un droit que se donne la société parce qu'essentiel à la répression du crime, avec le droit à la confidentialité, un droit que la société reconnaît comme essentiel à la saine administration de la justice.

Le droit à la confidentialité du client d'un avocat ne saurait, par sa règle de fond, faire obstacle à la compétence du juge de paix d'autoriser la perquisition, mais le pourrait comme règle de preuve. Tout au plus, dans l'état actuel de la loi, la règle de fond commande-t-elle de la part du juge de paix une plus grande exigence avant d'autoriser la perquisition d'un bureau d'avocat ou d'un de ses dossiers et l'incitera, le cas échéant, à assortir l'exécution du mandat de modalités particulières propres à limiter le viol du secret à ce qui est absolument inévitable.

Ceci nous amène donc à traiter de la portée du droit à la confidentialité sur les perquisitions, d'abord comme règle de preuve, et ensuite comme règle de fond. La règle de preuve touche à la

OCT 06 2005 06:36                                    2128542249        PAGE.26

10/06/2005 18:40 FAX 2128542249    Diamond Law Library @ CU → SHEarman Sterlin    @027

884         DESCÔTEAUX *et al.* v. MIERZWINSKI    *Lamer J.*         [1982] 1 S.C.R.

justice of the peace, while the substantive rule affects how he exercises it.

### (a) As a rule of evidence

Some courts have been unwilling to recognize that a justice of the peace has the right to refuse a search warrant on the sole ground that what is sought to be seized could never subsequently be received in evidence because it is protected by solicitor-client privilege. (See *R.* v. *Colvin, Ex parte Merrick et al.* (1970), 1 C.C.C. (2d) 8; *Re B.X. Development Ltd. and The Queen* (1976), 36 C.R.N.S. 313 (B.C. S.C.); *Re Alder et al. and The Queen* (1977), 37 C.C.C. (2d) 234; *Attorney General of Quebec* v. *T., G., W., R. and C.* (1977), 2 C.R. (3d) 30).

Others have ruled that he has such a right, either at the time the warrant is being issued (*Re Director of Investigation and Reseach and Canada Safeway Ltd.* (1972), 26 D.L.R. (3d) 745; *Re Director of Investigation and Research and Shell Canada Ltd.* (1975), 22 C.C.C. (2d) 70; *Re Borden & Elliott and The Queen* (1975), 30 C.C.C. (2d) 337 (Ont. S.C.); *Re Presswood and Delzotto* (1975), 36 C.R.N.S. 322; *Re B.X. Development and The Queen* (1976), 31 C.C.C. (2d) 14 (B.C. C.A.)), or at the time of an application under s. 446(3) to have the things seized returned (*Re Steel and The Queen* (1974), 21 C.C.C. (2d) 278; *Re B and The Queen* (1977), 36 C.C.C. (2d) 235).

It is not necessary to review all the decisions to the effect that the justice of the peace can do this at the time the warrant is being issued. It is sufficient, in my view, to refer here in this connection what was said by Southey J. of the Supreme Court of Ontario at trial in *Re Borden & Elliott and The Queen* (1975), 30 C.C.C. (2d) 337, since I agree with his critical analysis of these decisions and his conclusions (the Ontario Court of Appeal, hearing an appeal in that case, chose not to rule on the question and the appeal was decided on another ground). Southey J. stated the following (at pp. 341-43):

The first question to be decided is whether a search warrant issued under s. 443 of the *Criminal Code*

compétence du juge de paix, celle de fond, à sa façon de l'exercer.

### a) Comme règle de preuve

Certaines cours n'ont pas voulu reconnaître au juge de paix le droit de refuser un mandat de perquisition du seul fait que ce que l'on cherchait à saisir ne pourrait jamais être subséquemment reçu en preuve parce que protégé par le privilège dont jouit le client d'un avocat. (Voir *R.* v. *Colvin, Ex parte Merrick et al.* (1970), 1 C.C.C. (2d) 8; *Re B.X. Development Ltd. and The Queen* (1976), 36 C.R.N.S. 313 (B.C. C.-B.); *Re Alder et al. and The Queen* (1977), 37 C.C.C. (2d) 234; *Attorney General of Quebec* v. *T., G., W., R. and C.* (1977), 2 C.R. (3d) 30).

D'autres par ailleurs le lui ont reconnu, soit au stade de la délivrance du mandat (*Re Director of Investigation and Research and Canada Safeway Ltd.* (1972), 26 D.L.R. (3d) 745; *Re Director of Investigation and Research and Shell Canada Ltd.* (1975), 22 C.C.C. (2d) 70; *Re Borden & Elliott and The Queen* (1975), 30 C.C.C. (2d) 337 (C.S. Ont.); *Re Presswood and Delzotto* (1975), 36 C.R.N.S. 322; *Re B.X. Development and The Queen* (1976), 31 C.C.C. (2d) 14 (C.A. B.-C.)), soit au stade d'une demande fondée sur l'art. 446(3) pour que soient retournés les effets saisis (*Re Steel and The Queen* (1974), 21 C.C.C. (2d) 278; *Re B and The Queen* (1977), 36 C.C.C. (2d) 235).

Il n'est pas nécessaire de reprendre l'étude de toutes les décisions favorables à ce que le juge de paix puisse le faire au stade de la délivrance du mandat. Il suffit, à mon avis, de citer ici à ce sujet les propos du juge Southey de la Cour suprême de l'Ontario en 1re instance dans *Re Borden & Elliott and The Queen* (1975), 30 C.C.C. (2d) 337, puisque je suis d'accord avec l'analyse critique qu'il fait de ces décisions et avec ses conclusions (la Cour d'appel de l'Ontario, saisie d'un pourvoi dans cette cause, a choisi de ne pas se prononcer sur la question et l'appel fut décidé en se prononçant sur un autre moyen d'appel). Le juge Southey s'en exprime comme suit (aux pp. 341 à 343):

[TRADUCTION] La première question à résoudre est de savoir si un mandat de perquisition délivré en appli-

10/06/2005 18:40 FAX 2128542249        Diamond Law Library @ CU → SHEarman Sterlin    ☐028

[1982] 1 R.C.S.        DESCÔTEAUX *et autre c.* MIERZWINSKI    *Le Juge Lamer*        885

overrides the solicitor-and-client privilege and can be used to give authority to a peace officer to search for and seize documents which are subject to that privilege. The relevant provisions of s. 443 reads [*sic*] as follows:

    443(1) A justice who is satisfied by information upon oath in Form 1, that there is reasonable ground to believe that there is in a building, receptacle or place

    . . . .

    (*b*) anything that there is reasonable ground to believe will afford evidence with respect to the commission of an offence against this Act, or

    . . . .

may at any time issue a warrant under his hand authorizing a person named therein or a peace officer to search the building, receptacle or place for any such thing, and to seize and carry it before the justice who issued the warrant or some other justice for the same territorial division to be dealt with by him according to law.

    The position of the applicants is that a Justice has no jurisdiction to issue a warrant with respect to documents subject to the solicitor-and-client privilege, because the issuance of warrants is limited under s. 443 to documents which the Justice has reasonable grounds to believe will afford evidence of the offence charged. As documents covered by the solicitor-and-client privilege would not be admissible at trial, the Justice could not believe that such documents would afford evidence of the offence. This was the basis of the decision of Judge Rice in the Provincial Court (Criminal Division) in *Re Steel and The Queen* (1974), 21 C.C.C. (2d) 278, 6 O.R. (2d) 644, 29 C.R.N.S. 355.

    In *R. v. Colvin, Ex p. Merrick et al.* (1970), 1 C.C.C. (2d) 8, [1970] 3 O.R. 612, Osler, J., quashed a search warrant on the ground that the Justice should not have been satisfied on the information that there were reasonable grounds for believing that there was in the building in question anything that would afford evidence with respect to the commission of an offence. He went on to state in *obiter*, however, that he would not be prepared to quash a warrant simply because the possibility existed that the material in question might be covered by the solicitor-and-client privilege, because that privilege is a rule of evidence and not a rule of property. It was his view that the privilege could only be asserted by way of

cation de l'art. 443 du *Code criminel* l'emporte sur le privilège des communications entre avocat et client et peut servir à autoriser un agent de la paix à rechercher et saisir des documents qui bénéficient de ce privilège. Les dispositions pertinentes de l'art. 443 se lisent ainsi:

    443(1) Un juge de paix qui est convaincu, à la suite d'une dénonciation faite sous serment suivant la formule 1, qu'il existe un motif raisonnable pour croire que, dans un bâtiment, contenant ou lieu, se trouve

    . . . .

    *b*) une chose qui, pour un motif raisonnable, porte à croire qu'elle fournira une preuve touchant la perpétration d'une infraction à la présente loi, ou

    . . . .

peut, à tout moment, lancer un mandat sous son seing, autorisant une personne y nommée ou un agent de la paix à faire une perquisition dans ce bâtiment, contenant ou lieu, pour rechercher cette chose, la saisir et la transporter devant le juge de paix qui a décerné le mandat, ou quelque autre juge de paix de la même circonscription territoriale, afin qu'il en dispose d'après la loi.

    Les requérants soutiennent qu'un juge de paix n'a pas compétence pour délivrer un mandat à l'égard de documents qui bénéficient du privilège accordé aux communications entre avocat et client, parce que la délivrance de mandats est limitée, en vertu de l'art. 443, aux documents pour lesquels le juge de paix a un motif raisonnable de croire qu'ils fourniront une preuve de l'infraction qui fait l'objet de l'accusation. Puisque les documents bénéficiant du privilège accordé aux communications entre avocat et client ne sont pas recevables au procès, le juge de paix ne peut croire qu'ils fourniraient une preuve de l'infraction. Ce fut là le fondement de la décision du juge Rice de la Cour provinciale (Division criminelle) dans *Re Steel and The Queen* (1974), 21 C.C.C. (2d) 278, 6 O.R. (2d) 644, 29 C.R.N.S. 355.

    Dans l'affaire *R. v. Colvin, Ex p. Merrick et al.* (1970), 1 C.C.C. (2d) 8, [1970] 3 O.R. 612, le juge Osler a annulé un mandat de perquisition pour le motif que le juge de paix n'aurait pas dû être convaincu, d'après la dénonciation, qu'il y avait des motifs raisonnables de croire qu'il se trouvait, dans l'immeuble en cause, quelque chose qui aurait pu fournir une preuve touchant la perpétration d'une infraction. Il ajoute ensuite en *obiter* qu'il ne serait cependant pas disposé à annuler un mandat simplement à cause de la possibilité que les documents en cause bénéficient du privilège accordé aux communications entre avocat et client, parce que le privilège est une règle de preuve et non une

OCT 06 2005 06:36                        2128542249        PAGE.28

10/06/2005 18:40 FAX 2128542249    Diamond Law Library ⊕ CU → SHEarman Sterlin    ⓐ029

886                DESCÔTEAUX *et al. v.* MIERZWINSKI *Lamer J.*                [1982] 1 S.C.R.

objection to the introduction of the allegedly privileged material in evidence at the appropriate time.

Almost five years after the decision of Osler, J., the Federal Court of Appeal held in *Re Director of Investigation and Research and Shell Canada Ltd.* (1975), 22 C.C.C. (2d) 70, 55 D.L.R. (3d) 713, 18 C.P.R. (2d) 155, [[1975] F.C. 184), that the authority given to the Director of Investigation under s. 10 of the *Combines Investigation Act* to enter premises on which he believes evidence may be found relating to a matter under inquiry and to examine and copy documents that may afford such evidence, does not override the solicitor-and-client privilege.

Chief Justice Jackett, with whom the other members of the Court agreed, made the following statement at pp. 78-9 C.C.C., pp. 721-2 D.L.R. [p. 193 [1975] F.C.]:

... it has been recognized from very early times that the protection, civil and criminal, afforded to the individual by our law is dependent upon his having the aid and guidance of those skilled in the law untrammelled by any apprehension that the full and frank disclosure by him of all his facts and thoughts to his legal advisor might somehow become available to third persons so as to be used against him.

He then continued at p. 79 C.C.C., p. 722 D.L.R., [p. 194 F.C.]:

I fully realize that the protection of the confidentiality of the solicitor-and-client relationship has, heretofore, manifested itself mainly, if not entirely, in the privilege afforded to the client against the compulsory revelation of communications between solicitor and client in the giving of evidence in Court or in the judicial process of discovery. In my view, however, this privilege is a mere manifestation of a fundamental principle upon which our judicial system is based, which principle would be breached just as clearly, and with equal injury to our judicial system, by the compulsory form of preprosecution discovery envisaged by the *Combines Investigation Act* as it would be by evidence in Court or by judicial discovery.

Thurlow, J., added the following at p. 80 C.C.C., p. 723 D.L.R., [p. 195 [1975] F.C.]:

Secondly, it appears to me that the confidential character of such communications, whether oral or in writing, comes into existence at the time when the communications are made. As the right to protection

*a* règle de fond. Il a exprimé l'avis qu'on ne peut invoquer le privilège qu'en s'opposant, au moment pertinent, à la production en preuve des documents qu'on prétend privilégiés.

*a* Près de cinq ans après la décision du juge Osler, la Cour d'appel fédérale, dans *Re le Directeur des enquêtes et recherches c. Shell Canada Ltd.* (1975), 22 C.C.C. (2d) 70, 55 D.L.R. (3d) 713, 18 C.P.R. (2d) 155, [[1975] C.F. 184], a statué que le pouvoir accordé *b* au Directeur des enquêtes par l'art. 10 de la *Loi relative aux enquêtes sur les coalitions* de pénétrer dans tout local où le directeur croit qu'il peut exister des preuves se rapportant à l'objet de l'enquête, d'examiner et de copier les documents susceptibles de fournir une telle *c* preuve, ne prévaut pas sur le privilège des communications entre avocat et client.

Le juge en chef Jackett, aux motifs duquel les autres juges de la Cour ont souscrit, dit ce qui suit aux pp. 78 et 79 des C.C.C., 721 et 722 des D.L.R.; [193 du recueil *d* [1975] C.F.]:

... il est reconnu depuis très longtemps que la protection civile et criminelle, que nos principes de droit accordent à l'individu est subordonnée à l'assistance et aux conseils que l'individu reçoit d'hommes de loi sans *e* aucune crainte que la divulgation pleine et entière de tous ses actes et pensées à son conseiller juridique puisse de quelque façon être connue des tiers de manière à être utilisée contre lui.

Il poursuit ensuite aux pp. 79 des C.C.C., 722 des *f* D.L.R., [194 du recueil C.F.]:

Je réalise pleinement que le caractère confidentiel des rapports entre avocat et client s'est jusqu'ici manifesté principalement, sinon entièrement, par le privilège accordé au client de ne pas divulguer les communications intervenues entre lui et son avocat dans son *g* témoignage devant la Cour ou dans son interrogatoire préalable. A mon avis, toutefois, ce privilège n'est qu'une simple manifestation d'un principe fondamental qui sert de fondement à notre système judiciaire, *h* principe auquel la formule obligatoire d'examen antérieur à la poursuite prévue dans la *Loi relative aux enquêtes sur les coalitions*, tout autant que le témoignage devant la Cour ou l'interrogatoire préalable, *i* porterait nettement atteinte, tout en causant le même préjudice à notre système judiciaire.

Le juge Thurlow ajoute ce qui suit à la p. 80 des C.C.C., 723 des D.L.R., [195 du recueil [1975] C.F.]:

En second lieu, il me paraît que le caractère confidentiel de ces communications, qu'elles soient orales *j* ou écrites, prend naissance au moment de l'échange des communications. Puisque le droit à la protection

OCT 06 2005 06:37                                        2128542249        PAGE.29

10/06/2005 18:41 FAX 2128542249         Diamond Law Library @ CU → SHEarman Sterlin   ☒030

for the confidence, commonly referred to as legal professional privilege, is not dependent on there being litigation in progress or even in contemplation at the time the communications take place, it seems to me that the right to have the communications protected must also arise at that time and be capable of being asserted on any later occasion when the confidence may be in jeopardy at the hands of anyone purporting to exercise the authority of the law.

The reasoning of Chief Justice Jackett and Thurlow, J., in the case of an inquiry under the *Combines Investigation Act*, R.S.C. 1970, c. C-23, is even more compelling, in my view, in the case of a search warrant issued by a Justice under s. 443 of the *Criminal Code*. If the privilege could not be invoked to prevent the seizure and examination of documents under a search warrant, the Crown would be free in any case to seize and examine the files and brief of defence counsel in a criminal prosecution. It would be small comfort indeed to the accused and to his counsel to discover that his only protection in such a case was to prevent the introduction into evidence of the documents that had been seized and examined. Such a result, in my view, would be absurd.

Chief Justice Jackett quoted extensively in his reasons from the decision of Munroe, J., of the British Columbia Supreme Court in *Re Director of Investigation and Research and Canada Safeway Ltd.* (1972), 26 D.L.R. (3d) 745, 6 C.P.R. (2d) 41, [1972] 3 W.W.R. 547, in which the same result was reached. That decision, in my view, contains further persuasive reasons for upholding the position taken by the applicants that the solicitor-and-client privilege may be invoked to prevent seizure under a search warrant.

I find, accordingly, that the applicant is entitled to raise the solicitor-and-client privilege at this stage in the proceeding, as a ground for quashing the search warrant for lack of jurisdiction on the part of the Justice.

I am of this view and would add, by way of clarification, that the justice of the peace should raise the question himself and, where necessary, find that he has no jurisdiction to authorize the search.

### (b) As a substantive rule

In cases where the justice of the peace has the necessary jurisdiction to authorize the search, he should, in exercising that jurisdiction, take into

du secret, communément appelé secret professionnel, n'est pas subordonné à l'existence d'un procès en cours ou même prévu au moment où les communications sont faites, il me semble que le droit à la protection des communications doit également exister à cette époque et pouvoir être invoqué en toute autre occasion, lorsque le secret peut être menacé par quiconque prétend exercer l'autorité de la Loi.

Le raisonnement du juge en chef Jackett et du juge Thurlow relativement à une enquête menée en vertu de la *Loi relative aux enquêtes sur les coalitions*, S.R.C. 1970, chap. C-23, est, à mon avis, encore plus convaincant dans le cas d'un mandat de perquisition délivré par un juge de paix en application de l'art. 443 du *Code criminel*. Si l'on ne pouvait invoquer le privilège pour empêcher la saisie et l'examen de documents en vertu d'un mandat de perquisition, la poursuite aurait toujours le loisir de saisir et d'examiner les dossiers et le mémoire de l'avocat de la défense dans une poursuite criminelle. Ce serait vraiment une piètre consolation pour l'accusé et son avocat de savoir que la seule protection dont ils jouiraient en l'instance serait que les pièces saisies et examinées ne peuvent être produites en preuve. Selon moi, un tel résultat serait absurde.

Le juge en chef Jackett a abondamment cité dans ses motifs la décision du juge Munroe de la Cour suprême de la Colombie-Britannique dans *Re Director of Investigation and Research and Canada Safeway Ltd.* (1972), 26 D.L.R. (3d) 745, 6 C.P.R. (2d) 41, [1972] 3 W.W.R. 547, où l'on arrive à la même solution. A mon avis, cette décision offre d'autres motifs convaincants de faire droit à la position adoptée par les requérants, savoir qu'il est permis d'invoquer le privilège des communications entre avocat et client pour empêcher la saisie en vertu d'un mandat de perquisition.

En conséquence, je conclus que le requérant a droit d'invoquer le privilège des communications entre avocat et client à ce stade-ci de la procédure comme moyen pour obtenir l'annulation du mandat de perquisition faute de compétence de la part du juge de paix.

Je suis de cet avis et j'ajouterais, en guise de précision, qu'il incombe au juge de paix de soulever la question *proprio motu* et, le cas échéant, de se reconnaître sans compétence pour autoriser la perquisition.

### b) Comme règle de fond

Dans les cas où le juge de paix a la compétence voulue pour autoriser la perquisition, il se doit, dans l'exercice de cette compétence, de tenir

10/06/2005 18:41 FAX 2128542249    Diamond Law Library ⊕ CU → SHEarman Sterlin    Ø031

888    DESCÔTEAUX *et al. v.* MIERZWINSKI *Lamer J.*    [1982] 1 S.C.R.

account the need to protect the fundamental right of a lawyer's client to have his communications kept confidential. This may arise where evidence is being sought of communications which, although made in confidence to a lawyer, are no longer protected because they were made in circumstances such that they fall within an exception to the rule; or where a lawyer's office is to be searched for things covered by para. (*a*) or (*c*) of s. 443(1) (for example, stolen goods). Although the rule of evidence seems to be applicable only with respect to para. (*b*) of s. 443(1), the substantive rule will apply to any search affecting the right to confidentiality, regardless of which, of the paragraphs of s. 443(1) such search is to be, made under. In either case the search should be limited to what is absolutely necessary in order to seize the things for which the search was authorized. A lawyer's file may contain a host of information concerning a client, some of which has remained confidential even though other information is no longer so since it falls within an exception to the rule. Even more serious is the fact that a lawyer's office contains confidential files pertaining to other clients which have nothing to do with the crime that is to be proved or with the things searched for under s. 443(1)(*a*) and (*c*).

compte du besoin de protéger le droit fondamental du client d'un avocat à la confidentialité de ses communications. Ceci peut se produire lorsqu'il s'agit de chercher la preuve de communications qui, quoique faites en confidence à un avocat, ne sont plus protégées parce qu'elles l'ont été dans des circonstances telles qu'elles relèvent d'une exception à la règle; ou encore lorsqu'il s'agit de perquisitionner dans un bureau d'avocat à la recherche de choses visées aux al. *a*) ou *c*) de l'art. 443(1) (*v.g.* des objets volés). En effet, si la règle de preuve semble ne devoir jouer qu'à l'égard de l'al. *b*) de l'art. 443(1), la règle de fond, elle, s'appliquera à l'égard de toute perquisition mettant en cause le droit à la confidentialité, que cette perquisition soit faite en vertu de l'un ou l'autre des alinéas de l'art. 443(1). Il s'agit dans un cas comme dans l'autre de limiter la fouille à ce qui est absolument nécessaire à la saisie des choses que l'on a été autorisé à chercher. Un dossier d'avocat peut contenir au sujet d'un client une foule de renseignements, dont certains sont demeurés confidentiels même si d'autres ne le sont plus parce que visés par une exception à la règle. Plus grave encore est le fait que le cabinet de l'avocat est dépositaire des dossiers confidentiels de plusieurs autres clients et qui n'ont rien à voir avec le crime que l'on cherche à prouver, ou encore les choses recherchées sous l'autorité de l'art. 443(1)*a*) et *c*).

Some would say that the justice of the peace has no discretion to refuse to issue a search warrant or to impose terms of execution once the requirements of form and substance in s. 443 have been met. They would argue that in s. 443 the word "may" means "must" and does not confer any discretion. According to this interpretation, the justice of the peace may issue a warrant only if he is satisfied that there is reasonable ground to believe that one of the things provided for in s. 443(1) is to be found in the place sought to be searched, but must do so as soon as he is so satisfied, and the only condition of execution on the premises that he may impose is set out in s. 444 of the *Code*:

Certains pourraient prétendre que le juge de paix n'a pas la discrétion de refuser la délivrance du mandat de perquisition ou encore d'imposer des modalités d'exécution dès lors que les conditions de forme et de fond de l'art. 443 ont été satisfaites. Ils pourraient arguer que, dans le contexte de l'art. 443, le mot «peut» a le sens de «doit» et qu'il n'octroie pas une discrétion. Selon cette interprétation, si le juge de paix ne peut délivrer un mandat que s'il est convaincu qu'il existe un motif raisonnable pour croire qu'une des choses prévues à l'art. 443(1) se trouve dans l'endroit que l'on veut fouiller, il doit le faire, par ailleurs, dès lors qu'il en est convaincu, et la seule modalité d'exécution sur les lieux qu'il lui est loisible d'imposer se trouve à l'art. 444 du *Code*:

444. A warrant issued under section 443 shall be executed by day, unless the justice, by the warrant, authorizes execution of it by night.

444. Un mandat décerné en vertu de l'article 443 doit être exécuté de jour, à moins que le juge de paix, par le mandat, n'en autorise l'exécution de nuit.

10/06/2005 18:41 FAX 2128542249    Diamond Law Library @ CU → SHEarman Sterlin    @032

Others, on the contrary, would say that generally the justice of the peace has the discretion to refuse the warrant, so long as this discretion is exercised judicially and so long as the decision to refuse the warrant is not capricious or arbitrary (Carter, R.F., *The Law Relating to Search Warrants*, 1939, at p. 52; Fontana, J.A., *The Law of Search Warrants in Canada*, 1974, at pp. 7 and 51 et seq.; *Re Pacific Press Ltd. and The Queen et al.* (1977), 37 C.C.C. (2d) 487).

I come down on the side of the discretion, as it allows more effective judicial control of the police. Searches are an exception to the oldest and most fundamental principles of the common law, and as such the power to search should be strictly controlled. It goes without saying that the justice may sometimes be in a poor position to assess the need for the search in advance. After all, searches, while constituting a means of gathering evidence, are also an investigative tool. It will often be difficult to determine definitively the probative value of a particular thing before the police investigation has been completed. Be that as it may, there are places for which authorization to search should generally be granted only with reticence and, where necessary, with more conditions attached than for other places. One does not enter a church in the same way as a lion's den, or a warehouse in the same way as a lawyer's office. One does not search the premises of a third party who is not alleged to have participated in the commission of a crime in the same way as those of someone who is the subject of such an allegation. (See on this subject Fontana, J.A., *The Law of Search Warrants in Canada*, at p. 174.)

The justice of the peace, in my view, has the authority, where circumstances warrant, to set out execution procedures in the search warrant; I would even go so far as to say that he has the right to refuse to issue the warrant in special circumstances, such as those found in *Re Pacific Press Ltd. and The Queen et al., supra*.

That case involved a search of a newspaper office for information gathered by the newspaper staff. Neither the newspaper staff nor the newspaper itself were accused of having been involved in the commission of an offence. In view of the

D'autres, au contraire, reconnaîtraient de façon générale au juge de paix la discrétion de refuser le mandat, en autant que cette discrétion soit exercée judiciairement et que la décision de refuser le mandat ne tienne pas du caprice ou de la fantaisie. (Carter, R.F., *The Law Relating to Search Warrants*, 1939, à la p. 52; Fontana, J.A., *The Law of Search Warrants in Canada*, 1974, aux pp. 7 et 51 ss.; *Re Pacific Press Ltd. and The Queen et al.* (1977), 37 C.C.C. (2d) 487).

J'opte en faveur de la discrétion, car elle permet un contrôle judiciaire plus efficace des forces de l'ordre. La perquisition est une exception aux principes les plus anciens et les plus fondamentaux de la *common law* et le pouvoir de perquisition doit être contrôlé strictement. Il va de soi que le juge de paix peut être parfois mal placé pour juger d'avance du besoin de perquisitionner. Après tout, la perquisition, tout en étant un véhicule de preuve, est aussi un instrument d'enquête. Il sera souvent difficile de déterminer péremptoirement la valeur probante d'une chose avant la fin de l'enquête policière. Quoi qu'il en soit, il y a des endroits dont on ne devrait de façon générale permettre la fouille qu'avec réticence et, le cas échéant, avec plus de manières que pour d'autres endroits. On n'entre pas à l'église comme on le fait chez le loup; ni à l'entrepôt comme chez l'avocat. On ne perquisitionne pas chez le tiers qu'on n'allègue pas avoir participé à la commission du crime comme chez celui qui fait l'objet d'une telle allégation. (Voir à ce sujet Fontana, J.A., *The Law of Search Warrants in Canada*, à la p. 174).

Le juge de paix a, selon moi, le pouvoir, lorsque les circonstances le commandent, d'assortir le mandat de perquisition de modalités d'exécution; j'irais même jusqu'à lui reconnaître le droit de refuser le mandat dans certaines circonstances très particulières, telles celles que l'on trouve dans *Re Pacific Press Ltd. and The Queen et al.*, précitée.

Dans cette cause il s'agissait de la perquisition des locaux d'un journal et on était à la recherche de renseignements recueillis par le personnel du journal. La dénonciation n'alléguait aucunement que le personnel du journal ou le journal lui-même

10/06/2005 18:41 FAX 2128542249     Diamond Law Library @ CU → SHEarman Sterlin     @033

890     DESCÔTEAUX *et al. v.* MIERZWINSKI     *Lamer J.*     [1982] 1 S.C.R.

special situation of a newspaper in light of ss. 1(*f*) and 2 of the *Canadian Bill of Rights*, R.S.C. 1970, Appendix III, Nemetz C.J. of the British Columbia Supreme Court quashed the search warrant issued by the justice of the peace, concluding as follows (at p. 495):

The issuing of any search warrant is a serious matter, especially when its issuance against a newspaper may have, as it did, the effect of impeding its publication. To use the words of my distinguished predecessor in *United Distillers Ltd.* (1948), 88 C.C.C. 338, [1947] 3 D.L.R. 900, the Justice of the Peace 'should have reasonable information before him to entitle him to judicially decide whether such warrant should issue or not'. In my opinion, no such reasonable information was before him since there was no material to show:

1. whether a reasonable alternative source of obtaining the information was or was not available, and

2. if available, that reasonable steps had been taken to obtain it from that alternative source.

In my opinion, the bringing of an application for a search warrant in these circumstances was an abuse of the process of the Court. I, therefore, quash the warrants.

*Re Pacific Press Ltd.* involved a search for things provided for in para. (*b*) of s. 443(1), that is, evidence; it goes without saying that the same requirements do not apply in the case of things provided for in paras. (*a*) and (*c*) of s. 443(1).

It could be advanced that the two conditions set out by Nemetz C.J. should be met before a warrant is issued whenever a search is sought to be conducted, under 443(1)(*b*), of premises occupied by an innocent third party which are not alleged by the information to be connected in any way with the crime. It is not necessary for purposes of this appeal to decide that point. It is sufficient to say that in situations such as the one in *Re Pacific Press Ltd.*, where the search would interfere with rights as fundamental as freedom of the press, and, as in the case at bar, a lawyer's client's right to

étaient impliqués dans la commission d'une infraction. Eu égard à la situation exceptionnelle dans laquelle se trouve placé un journal compte tenu des art. 1*f*) et 2 de la *Déclaration canadienne des droits*, S.R.C. 1970, Appendice III, le juge en chef Nemetz de la Cour suprême de la Colombie-Britannique cassait le mandat de perquisition délivré par le juge de paix et concluait comme suit (à la p. 495):

[TRADUCTION] La délivrance d'un mandat de perquisition est une affaire grave, notamment lorsque sa délivrance à l'encontre d'un journal peut empêcher, comme c'est le cas en l'espèce, sa publication. Selon les termes employés par mon distingué prédécesseur dans l'affaire *United Distillers Ltd.* (1948), 88 C.C.C. 338, [1947] 3 D.L.R. 900, le juge de paix «devrait disposer de suffisamment de renseignements pour lui permettre de décider de façon judiciaire s'il doit ou non délivrer un tel mandat». A mon avis, il ne disposait pas de suffisamment de renseignements puisqu'il n'y avait pas de pièce pour démontrer:

1. s'il existait une autre source pouvant fournir les mêmes renseignements, et

2. dans l'affirmative, que des mesures raisonnables avaient été prises pour obtenir les renseignements de cette autre source.

A mon avis, présenter une demande de mandat de perquisition dans ces circonstances constituait un abus de procédures. En conséquence j'annule les mandats.

Il s'agissait dans *Re Pacific Press Ltd.* d'une perquisition à la recherche de choses prévues à l'al. *b*) de l'art. 443(1), c.-à-d. des preuves; il va de soi que l'on ne peut avoir les mêmes exigences lorsqu'il s'agit de choses prévues aux al. *a*) et *c*) de l'art. 443(1).

On pourrait suggérer que les deux conditions énoncées par le juge en chef Nemetz devraient être satisfaites avant de délivrer un mandat chaque fois qu'il s'agit d'une perquisition, sous 443(1)*b*), de lieux occupés par un tiers-innocent que ne relient aucunement au crime les allégations contenues à la dénonciation. Il n'est pas nécessaire pour les fins de ce pourvoi d'en décider. Il suffit de dire que dans des cas tels que celui de *Re Pacific Press Ltd.*, où la perquisition porterait atteinte à des droits aussi fondamentaux que la liberté de la presse, et, comme en l'espèce, le droit à la confi-

10/06/2005 16:42 FAX 2128542249    Diamond Law Library @ CU → SHEarman Sterlin    @034

confidentiality, the justice of the peace may and should refuse to issue the warrant if these two conditions have not been met, lest he exceeds the jurisdiction he had *ab initio*. I would add one qualification to these two conditions. The reasonable alternative referred to is not an alternative to the method of proof but to the benefits of search and seizure of the evidence. As I have already stated, a search warrant is not only a means of gathering evidence but also an investigative tool. Therefore a determination of what is reasonable in each case will take into account the fact that a search makes it possible not only to seize evidence but also to ascertain that it exists, and even sometimes that the crime was in fact committed and by whom. Seizure makes it possible to preserve the evidence.

Moreover, even if the conditions are met, the justice of the peace must set out procedures for the execution of the warrant that reconcile protection of the interests this right is seeking to promote with protection of those the search power is seeking to promote, and limit the breach of this fundamental right to what is strictly inevitable. This is also true of searches under 443(1)(*a*) or (*c*), as soon as they threaten a fundamental right.

Generally speaking, where the search is to be made of a lawyer's office, in order to search for things provided for under para. (*a*), (*b*) or (*c*) of s. 443(1), the justice of the peace should be particularly demanding. Where it is a question of evidence (443(1)(*b*)), although satisfied that there is such evidence on the premises, he should only allow a lawyer's office to be searched if in addition he is satisfied that there is no reasonable alternative to a search. It will sometimes be desirable, as soon as the informant initiates proceedings, for the justice of the peace to see that the district Crown attorney is notified, if he is not aware of such proceedings, as well as the Bar authorities. With their assistance he should normally be more easily able to decide with the police on search procedures acceptable to everyone that respect the law firm's clients' right to confidentiality without depriving the police of their right to search for evidence of the alleged crime.

dentialité du client de l'avocat, le juge de paix peut et doit, sous peine d'excéder la compétence qu'il avait *ab initio*, refuser la délivrance du mandat si ces deux conditions n'ont pas été satisfaites. J'apporterais à ces conditions une précision. L'alternative raisonnable dont on parle n'est pas à la méthode de preuve mais aux avantages de la perquisition et de la saisie des preuves. Comme je l'ai déjà dit, le mandat de perquisition n'est pas qu'un véhicule de preuve, mais aussi un outil d'enquête. Donc, la détermination de ce qui sera dans chaque cas d'espèce raisonnable tiendra compte du fait que la perquisition permet non seulement de saisir des preuves, mais permet également de s'assurer qu'elles existent, voire même parfois que le crime a effectivement été commis et par qui. La saisie, elle, en permet la conservation.

De plus, même si ces conditions sont satisfaites, le juge de paix doit assortir l'exécution du mandat de modalités qui concilient la protection des intérêts que cherche à promouvoir ce droit avec celle des intérêts que cherche à promouvoir le pouvoir de perquisitionner, et limiter à ce qui est strictement inévitable l'atteinte au droit fondamental. Ceci est également vrai pour les perquisitions de 443(1)*a*) ou *c*) dès qu'elles mettent en cause un droit fondamental.

De façon générale, lorsqu'il s'agit de perquisitionner chez un avocat, que ce soit pour y chercher des choses prévues aux al. *a*), *b*) ou *c*) de l'art. 443(1), le juge de paix devrait se montrer particulièrement exigeant. Lorsqu'il s'agit de preuves (443(1)*b*)), quoique satisfait de la présence sur les lieux de ces preuves, il ne doit permettre la fouille d'un bureau d'avocat que si, en plus, il est convaincu qu'il n'y a pas d'autre alternative raisonnable à la perquisition. Il sera parfois souhaitable que, dès les premières démarches du dénonciateur, le juge de paix voie à ce que le procureur de la Couronne du district soit avisé, si ces démarches sont faites à son insu, ainsi que les autorités du Barreau. Assisté de ceux-ci, il devrait normalement pouvoir plus facilement arrêter de concert avec les forces de l'ordre des modalités de perquisition acceptables à tous et qui respecteraient le droit à la confidentialité des clients du bureau de l'avocat sans frustrer la police de son droit de rechercher les preuves du crime allégué.

10/06/2005 18:42 FAX 2128542249      Diamond Law Library @ CU → SHEarman Sterlin    ☒035

892          DESCÔTEAUX *et al. v.* MIERZWINSKI  *Lamer J.*.          [1982] 1 S.C.R.

In this respect he could take guidance from the provisions of the *Income Tax Act*, 1970-71-72 (Can.), c. 63, s. 232, adapting them to fit the particular case, of course.

Moreover, the search should be made in the presence of a representative of the Bar, where possible.

It is encouraging to read the numerous cases reported in the law reports and see that in almost all cases it was possible to decide upon appropriate execution procedures with the consent of the various parties involved (police, Bar, etc.), without the case law having at the time definitively decided that the justice of the peace had the authority to impose any. This seems to me to have been done in the case at bar, since, although the record is not very clear as to the reasons, it is apparent that the search was conducted in a special manner, with the co-operation of the police and the Bar, and that the documents seized were placed in a sealed envelope without having been examined.

Some have expressed the view that Parliament rather than the courts should set guidelines for searching lawyers' offices. (See the statements of the Ontario Court of Appeal in *Re Borden & Elliott and The Queen* (1975), 30 C.C.C. (2d) 337, at p. 348.) Be that as it may, I for my part hope that the courts in the provinces, in view of the discretion of the justices of the peace and the willingness of everyone so far to recognize the importance of the confidentiality of communications made to a lawyer by his client, and their willingness and the need to preserve it, will rectify this legislative gap by developing, through rules of court or informally, by means of a uniform practice, a regional procedure that will take account of local circumstances; they are certainly in an eminently better position to do so than this Court.

CONCLUSION

In summary, a lawyer's client is entitled to have all communications made with a view to obtaining legal advice kept confidential. Whether communi-

A cette fin, il pourrait s'inspirer, tout en les adaptant bien sûr à chaque cas d'espèce, des dispositions de la *Loi de l'impôt sur le revenu*, 1970-71-72 (Can.), chap. 63, art. 232.

De plus, la perquisition devrait, dans la mesure du possible, être faite en présence d'un représentant du Barreau.

Fait encourageant, il suffit de lire les nombreuses causes rapportées dans les recueils de jurisprudence pour constater que des modalités d'exécution appropriées ont pu dans presque tous les cas être arrêtées du consentement des différents intervenants, (police, Barreau, etc.), et ce sans que la jurisprudence ait encore définitivement reconnu au juge de paix le pouvoir de les imposer. Ceci me semble être le cas en l'espèce, puisque, bien que le dossier ne soit guère précis quant aux raisons, force est de constater que la perquisition a effectivement été faite de façon spéciale, avec la collaboration de la police et du Barreau, et que les documents saisis ont été placés exceptionnellement sous scellés sans être examinés.

Certains se sont dits d'avis qu'il convenait davantage au législateur qu'aux tribunaux de baliser la perquisition des bureaux d'avocats. (Voir les propos de la Cour d'appel de l'Ontario dans *Re Borden & Elliott and The Queen* (1975), 30 C.C.C. (2d) 337, à la p. 348.) Quoi qu'il en soit, pour ma part j'espère que les cours dans les provinces; compte tenu du pouvoir discrétionnaire des juges de paix et eu égard à la volonté de tous jusqu'à présent de reconnaître l'importance de la confidentialité des communications faites à un avocat par son client, et compte tenu de leur volonté et de la nécessité de la préserver, voudront combler cette lacune législative en mettant au point, par règles de cour ou encore de façon informelle, au moyen d'une pratique uniforme, une procédure d'application régionale qui tienne compte des conditions locales; chose certaine, elles sont éminemment mieux placées pour le faire que cette Cour.

CONCLUSION

En résumé, le client d'un avocat a droit au respect de la confidentialité de toutes les communications faites dans le but d'obtenir un avis juridi-

10/06/2005 18:42 FAX 2128542249        Diamond Law Library @ CU → SHEarman Sterlin    ☒036

cations are made to the lawyer himself or to employees, and whether they deal with matters of an administrative nature such as financial means or with the actual nature of the legal problem, all information which a person must provide in order to obtain legal advice and which is given in confidence for that purpose enjoys the privileges attached to confidentiality. This confidentiality attaches to all communications made within the framework of the solicitor-client relationship, which arises as soon as the potential client takes the first steps, and consequently even before the formal retainer is established.

There are certain exceptions to the principle of the confidentiality of solicitor-client communications, however. Thus communications that are in themselves criminal or that are made with a view to obtaining legal advice to facilitate the commission of a crime will not be privileged, *inter alia.*

The fundamental right to communicate with one's legal adviser in confidence has given rise to a rule of evidence and a substantive rule. Whether through the rule of evidence or the substantive rule, the client's right to have his communications to his lawyer kept confidential will have an effect when the search warrant provided for in s. 443 *Cr.C.* is being issued and executed.

Thus the justice of the peace has no jurisdiction to order the seizure of documents that would not be admissible in evidence in court on the ground that they are privileged (the rule of evidence).

Before authorizing a search of a lawyer's office for evidence of a crime, the justice of the peace should refuse to issue the warrant unless he is satisfied that there is no reasonable alternative to the search, or he will be exceeding his jurisdiction (the substantive rule). When issuing the warrant, to search for evidence or other things, he must in any event attach terms of execution to the warrant designed to protect the right to confidentiality of the lawyer's clients as much as possible.

que. Qu'ils soient communiqués à l'avocat lui-même ou à des employés, qu'ils portent sur des matières de nature administrative comme la situation financière ou sur la nature même du problème juridique, tous les renseignements que doit fournir une personne en vue d'obtenir un avis juridique et qui sont donnés en confidence à cette fin jouissent du privilège de la confidentialité. Ce droit à la confidentialité s'attache à toutes les communications faites dans le cadre de la relation client-avocat, laquelle prend naissance dès les premières démarches du client virtuel, donc avant même la formation du mandat formel.

Le principe de la confidentialité des communications client-avocat connaît toutefois des exceptions. Ainsi, entre autres, ne jouiront pas du privilège de confidentialité les communications qui sont en elles-mêmes criminelles ou qui sont faites en vue d'obtenir un avis juridique devant faciliter la perpétration d'un crime.

Le droit fondamental que constitue le droit de communiquer en confidence avec son conseiller juridique a donné naissance à une règle de preuve de même qu'à une règle de fond. Que ce soit par sa règle de preuve ou par sa règle de fond, le droit à la confidentialité du client d'un avocat aura des incidences au niveau de la délivrance et de l'exécution du mandat de perquisition prévu à l'art. 443 C. cr.

Ainsi, le juge de paix n'a pas compétence pour ordonner la saisie de documents qui ne seraient pas recevables en preuve devant un tribunal parce que couverts par le privilège de confidentialité (la règle de preuve).

Avant de permettre la perquisition d'un bureau d'avocat pour y rechercher des preuves d'un crime, le juge de paix devra, sous peine d'excéder sa compétence, refuser la délivrance du mandat à moins d'être satisfait qu'il n'existe pas d'alternative raisonnable à la perquisition (la règle de fond). Délivrant le mandat, que ce soit pour chercher des preuves ou d'autres choses, il devra de toute façon assortir le mandat de modalités d'exécution susceptibles de sauvegarder au maximum le droit à la confidentialité des clients de l'avocat.

OCT 06 2005 06:38                    2128542249        PAGE.36

10/06/2005 18:42 FAX 2128542249    Diamond Law Library @ CU → SHEarman Sterlin   @037

Applying these principles to the case at bar, I have arrived at the following conclusions.

First, all information contained in the form that applicants for legal aid must fill out is provided for the purpose of obtaining legal advice, is given in confidence for that purpose and, consequently, is subject to the applicant's fundamental right to have such communications kept confidential and, as such, is protected by the rule of evidence and the substantive rule.

It is alleged in the information laid that the communications made by Ledoux with respect to his financial means are criminal in themselves since they constitute the material element of the crime charged. This is an exception to the principle of confidentiality and these communications are accordingly not protected (this does not mean that we are expressing an opinion as to the validity of the allegations in the information). However, since the allegation concerns only the information dealing with the applicant's financial means, all other information on the form remains confidential.

Since the part of the form dealing with Ledoux's financial situation was as an exception admissible in evidence, the justice of the peace had jurisdiction to order its seizure.

Acting within his jurisdiction with regard to the rule of evidence, the justice of the peace also exercised his discretion to issue a warrant judicially having regard to the substantive rule. As a result of the refusal of the legal aid bureau's staff and lawyers to disclose to the investigators the contents of the form, or of the oral statements made to them by Ledoux concerning his financial situation, there was no reasonable alternative to a search. How otherwise could the investigators ascertain that Ledoux's statements were fraudulent? Perhaps, as a result of their investigation, they knew that Ledoux was not eligible for legal aid in view of his financial means, but the crime of which they suspected him and concerning which they were entitled to continue the investigation was that of having concealed his means, ineligibility not being a crime in itself.

Appliquant ces principes à l'espèce, j'en arrive aux conclusions suivantes.

D'abord, tous les renseignements contenus à la formule que doit remplir un requérant d'aide juridique sont fournis en vue d'obtenir un avis juridique, sont donnés en confidence à cette fin et, par conséquent, font l'objet du droit fondamental qu'a le requérant à la confidentialité de ces communications, et comme tel, sont protégés par la règle de preuve et la règle de fond.

Par ailleurs, on allègue à la dénonciation que les communications faites par Ledoux à l'égard de sa situation financière sont criminelles en elles-mêmes, puisqu'elles constituent l'élément matériel du crime reproché. Il s'agit là d'un cas d'exception au principe de confidentialité et ces communications ne sont donc pas protégées (sans pour autant nous prononcer sur le bien-fondé des allégations de la dénonciation). Toutefois, puisque l'allégation ne concerne que les renseignements touchant les moyens financiers du requérant, tous les autres renseignements contenus à la formule demeurent protégés par le droit à la confidentialité.

Comme la partie de la formule touchant la situation financière de Ledoux était par exception recevable en preuve, le juge de paix avait compétence pour en ordonner la saisie.

Agissant en deçà de sa compétence, en regard de la règle de preuve, le juge de paix a de plus, en regard de la règle de fond, exercé de façon judiciaire sa discrétion de délivrer un mandat. En effet, par suite du refus des préposés et avocats du bureau d'aide juridique de communiquer aux enquêteurs le contenu de la formule, voire même la teneur des déclarations verbales qui leur furent faites par Ledoux en ce qui concerne sa situation financière, il n'existait pas d'alternative raisonnable à la perquisition. Comment les enquêteurs pouvaient-ils autrement s'assurer de la nature frauduleuse des déclarations de Ledoux? Peut-être, suite à leur enquête, savaient-ils ce dernier inéligible à l'aide eu égard à ses moyens financiers; mais le crime dont ils le soupçonnaient et au sujet duquel ils étaient en droit de parfaire l'enquête était celui de les avoir cachés, l'inéligibilité n'étant pas elle-même un crime.

10/06/2005 18:43 FAX 2128542249    Diamond Law Library @ CU → SHEarman Sterlin    ☒038

[1982] 1 R.C.S.    DESCÔTEAUX *et autre c.* MIERZWINSKI    *Le Juge Lamer*    895

I do not know whether the justice of the peace was the originator of the procedure followed for the search and seizure or whether there was an agreement between counsel. In any event, the manner of proceeding in the case at bar was, again having regard to the substantive rule, proper and acceptable and the justice of the peace was or would have been by law empowered to and justified in making it a condition of granting the warrant.

There is one problem, however. The form seized may contain privileged information. I am of the view that the justice of the peace could have, in the presence of everyone—the Crown, the representative of the Bar and the Legal Aid representative—opened the envelope and examined the form to determine whether it contained anything confidential and, if not, dealt with it in accordance with the law like any other thing seized. If he had discovered that the form contained confidential information, he could have (at least this is one of the ways of proceeding) photocopied the part relevant to the applicant's financial means and dealt with that portion of the form like any other thing seized by placing it on the file. He could have placed the original of the document in a sealed envelope also placed on file, ordering that it not be examined without a judge's order.

In the case at bar, if the information on the back of the form in fact consists of professional notes, as indicated by the form, they are confidential. This would still have to be verified, however. As for the front of the form, most of the information requested is relevant to the applicant's financial situation, although some only indirectly. This is not the case, however, with the information required on the parts of the form that I have identified with the letters A and B, where the information essentially concerns the "nature of the case" or the "probable existence of a right". I am therefore of the view that the judge, after verifying the back of the form, and if he ascertains that it contains professional notes, should have the front of the form, except parts A and B, photocopied, and deal with the photocopies and the original of the document as suggested, that is, place the photocopies on the Court file and place the original in a sealed

Je ne sais si le juge de paix fut à l'origine de la procédure suivie pour la perquisition et la saisie ou s'il s'agit d'une entente entre les avocats. Quoi qu'il en soit, la façon de procéder en l'espèce fut, toujours en regard de la règle de fond, bonne et acceptable et le juge de paix était ou eût été de par la loi habilité et justifié d'en faire la condition de l'octroi du mandat.

Se soulève toutefois un problème. La formule saisie contient peut-être des renseignements privilégiés. J'estime que le juge de paix pouvait, en présence de tous, la Couronne, le représentant du Barreau et celui de l'Aide juridique, décacheter l'enveloppe et examiner la formule pour s'enquérir si celle-ci ne contenait rien de confidentiel, et le cas échéant la traiter conformément à la loi comme toute autre chose saisie. Par ailleurs, s'il avait découvert que la formule contenait des renseignements confidentiels, il pouvait (c'est du moins une des façons de procéder) photocopier la partie pertinente à la situation financière et la traiter comme toute autre chose saisie en la versant au dossier. Quant à l'original du document, il aurait pu le placer dans une enveloppe cachetée et scellée et versée également au dossier, mais en ordonnant qu'il ne soit examiné que sur l'ordre d'un juge.

En l'espèce, si les renseignements au verso de la formule sont de fait, comme le veut la formule, des notes professionnelles, ils sont confidentiels. Reste qu'il faudrait tout de même le vérifier. Quant au recto, la plupart des renseignements demandés sont, quoique certains ne le seraient qu'indirectement, pertinents à la situation financière du requérant. Tel n'est cependant le cas des renseignements requis aux parties de la formule que j'ai identifiées par la juxtaposition des lettres A et B, où il s'agit essentiellement de renseignements concernant la «nature du dossier» ou encore la «vraisemblance de droit». Je suis donc d'avis que le juge, après avoir vérifié le verso de la formule, et s'il s'avère que le verso de la formule contient des notes professionnelles, devrait procéder à la photocopie du recto de la formule, sauf des parties A et B, et traiter les photocopies ainsi que l'original du document tel que suggéré, c.-à-d. verser les photo-

OCT 06 2005 06:39    2128542249    PAGE.38

10/06/2005 18:43 FAX 2128542249       Diamond Law Library @ CU → SHEarman Sterlin   @039

896          DESCÔTEAUX *et al. v.* MIERZWINSKI   *Lamer J.*               [1982] 1 S.C.R.

envelope, place the envelope on the file and order the Court staff not to open it or allow it to be opened without a judge's order. The sealed envelope will eventually be returned to the legal aid bureau, unless Marcellin Ledoux disputes the authenticity of the photocopy should an inquiry or trial be held; were Ledoux to do so, the judge presiding at the trial or the preliminary inquiry would be fully justified in opening the envelope and allowing those concerned to see the form, since Ledoux would then, in my view, have himself by his allegations made it impossible to reconcile his right to confidentiality for the better administration of criminal justice.

Before concluding, I should state that the procedure will vary from one case to another. Here the good faith of counsel was in no way at issue since, as alleged by the police, they were not accomplices of their client but rather his victims. Clearly different execution procedures should be provided for where the information laid alleges that the lawyer participated in the crime. I would also like to add that the justice of the peace from whom a warrant to search a lawyer's office is being sought, if he is not a judge by profession, would be well advised, although in no way obliged to do so, to refer the applicant to a judge of a court of criminal jurisdiction or even a judge of a superior court of criminal jurisdiction.

For these reasons I would dismiss this appeal and refer the matter back to the justice of the peace, ordering him to deal with the envelope and its contents as stated above.

*Appeal dismissed.*

*Solicitors for the appellants: Corbeil, Meloche, Larivière & Laberge, Montreal.*

*Solicitor for the respondent and for the intervener the Attorney General of the Province of Quebec: Pierre Robert, Montreal.*

*Solicitors for the intervener the Commission des services juridiques: Geoffrion, Prud'homme, Montreal.*

copies au dossier de la Cour et mettre sous scellés dans une enveloppe l'original, déposer l'enveloppe au dossier et ordonner aux préposés de la Cour de n'en prendre ou donner communication que suite à l'ordre d'un juge. Éventuellement l'enveloppe scellée sera retournée au bureau d'aide juridique, à moins que, dans l'éventualité d'une enquête ou d'un procès, le dénommé Marcellin Ledoux ne mette en doute l'authenticité de la photocopie; le cas échéant, le juge présidant le procès ou encore l'enquête préliminaire serait amplement justifié de décacheter l'enveloppe et de donner accès à la formule aux intéressés, car Ledoux aurait alors, à mon avis, par ses allégations rendu lui-même impossible la conciliation de son droit à la confidentialité avec les impératifs d'une saine administration de la justice pénale.

Avant de conclure, je dois rappeler que la procédure variera d'un cas à l'autre. Ici la bonne foi des avocats n'était nullement en cause puisqu'il s'agit, selon les prétentions de la police, non pas de complices du client mais de ses victimes. On doit prévoir, c'est clair, des modalités d'exécution relativement différentes lorsque la dénonciation allègue la participation de l'avocat au crime. Je tiens aussi à ajouter que le juge de paix de qui on sollicite un mandat de perquisitionner dans un bureau d'avocat, s'il n'est pas un juge de profession, serait avisé, quoique par ailleurs aucunement obligé de le faire, de référer le requérant à un juge d'une cour de juridiction criminelle ou même à un juge d'une cour supérieure de juridiction criminelle.

Pour ces raisons, je rejetterais ce pourvoi et retournerais le dossier au juge de paix en lui ordonnant de traiter l'enveloppe et son contenu comme susdit.

*Pourvoi rejeté.*

*Procureurs des appelants: Corbeil, Meloche, Larivière & Laberge, Montréal.*

*Procureur de l'intimé et de l'intervenant le procureur général de la province de Québec: Pierre Robert, Montréal.*

*Procureurs de l'intervenante la Commission des services juridiques: Geoffrion, Prud'homme, Montréal.*