



**TAB C**

# YOUNG CONAWAY STARGATT & TAYLOR, LLP

BRUCE M. STARGATT
~~BEN~~ T. CASTLE
SHELDON N. SANDLER
RICHARD A. LEVINE
RICHARD A. ZAPPA
FREDERICK W. IOBST
RICHARD H. MORSE
DAVID C. McBRIDE
JOSEPH M. NICHOLSON
CRAIG A. KARSNITZ
BARRY M. WILLOUGHBY
JOSY W. INGERSOLL
ANTHONY G. FLYNN
JEROME K. GROSSMAN
EUGENE A. DIPRINZIO
JAMES L. PATTON, JR.
ROBERT L. THOMAS
WILLIAM D. JOHNSTON
TIMOTHY J. SNYDER
BRUCE L. SILVERSTEIN
WILLIAM W. BOWSER
LARRY J. TARABICOS
RICHARD A. DILIBERTO, JR.
MELANIE K. SHARP
CASSANDRA F. ROBERTS

RICHARD J.A. POPPER
TERESA A. CHEEK
NEILLI MULLEN WALSH
JANET Z. CHARLTON
ROBERT S. BRADY
JOEL A. WAITE
BRENT C. SHAFFER
DANIEL P. JOHNSON
CRAIG D. GREAR
TIMOTHY JAY HOUSEAL
BRENDAN LINEHAN SHANNON
MARTIN S. LESSNER
PAULINE K. MORGAN
C. BARR FLINN
NATALIE WOLF
LISA B. GOODMAN
JOHN W. SHAW
JAMES P. HUGHES, JR.
EDWIN J. HARRON
MICHAEL R. NESTOR
MAUREEN D. LUKE
ROLIN P. BISSELL
SCOTT A. HOLT
JOHN T. DORSEY
M. BLAKE CLEARY

THE BRANDYWINE BUILDING
1000 WEST STREET, 17TH FLOOR
WILMINGTON, DELAWARE 19801

P.O. BOX 391
WILMINGTON, DELAWARE 19899-0391

(302) 571-6600
(800) 253-2234 (DE ONLY)
FAX: (302) 571-1253

110 WEST PINE STREET
P.O. BOX 594
GEORGETOWN, DELAWARE 19947
(302) 856-3571
(800) 255-2234 (DE ONLY)
FAX: (302) 856-9338

WWW.YOUNGCONAWAY.COM

DIRECT DIAL: (302) 571-6707
DIRECT FAX: (302) 576-3318
pmorgan@ycst.com

ATHANASIOS E. AGELAKOPOULOS
JOSEPH M. BARRY
SEAN M. BEACH
DONALD J. BOWMAN, JR.
TIMOTHY P. CAIRNS
KARA HAMMOND COYLE
CURTIS J. CROWTHER
MARGARET M. DIBIANCA
ERIN EDWARDS
KENNETH J. ENOS
IAN S. FREDERICKS
JAMES J. GALLAGHER
DANIELLE GIBBS
SEAN T. GREECHER
STEPHANIE L. HANSEN
DAWN M. JONES
RICHARD S. JULIE
KAREN E. KELLER
JENNIFER M. KINKUS
EDWARD J. KOSMOWSKI
JOHN C. KUFFEL

SPECIAL COUNSEL
JOHN D. McLAUGHLIN, JR.
ELENA C. NORMAN (NY ONLY)
KAREN L. PASCALE
PATRICIA A. WIDDOSS

TIMOTHY E. LENGKEEK
ANDREW A. LUNDGREN
MATTHEW B. LUNN
JOSEPH A. MALFITANO
ADRIA B. MARTINELLI
MICHAEL W. McDERMOTT
MARIBETH L. MINELLA
EDMON L. MORTON
D. FON MUTTAMARA-WALKER
JENNIFER R. NOEL
JOHN J. PASCHETTO
ADAM W. POFF
SETH J. REIDENBERG
FRANCIS J. SCHANNE
MICHELE SHERRETTA
MICHAEL P. STAFFORD
JOHN E. TRACEY
MARGARET B. WHITEMAN
CHRISTIAN DOUGLAS WRIGHT
SHARON M. ZIEG

OF COUNSEL
STUART B. YOUNG
EDWARD B. MAXWELL, 2ND

December 7, 2005

**BY HAND DELIVERY**

Collins J. Seitz, Jr., Esquire
Connolly Bove Lodge & Hutz
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899

Re: _Teleglobe Communications Corporation, et al. v. BCE Inc., et al._

Dear Special Master Seitz:

        In the Decision on Plaintiffs' Motion to Compel Defendants to Produce
Documents Withheld on the Basis of Privilege, dated December 1, 2005 (the "Decision"), the
Special Master instructed BCE to produce to Plaintiffs all documents reflecting work performed
by Davies Ward after April 8, 2002 on the basis that "the firm was exclusively representing
Teleglobe on funding issues." (Decision at 17 n.8.) Attached to this letter under Tab A is an
affidavit of Vincent A. Mercier of Davies Ward that was submitted to the Ontario Superior
Court, sworn to on November 3, 2004 (the "Affidavit"), describing the scope and duration of
Davies Ward's work for Teleglobe Inc. The Affidavit indicates that "on or about April 10, it was
decided that Davies would act as counsel for Teleglobe...." (Aff. ¶ 7; see also Turcotte Dep. at
456:21-23.) In our letter to the Special Master dated November 15, 2005, we had referred to the
Affidavit, but did not attach it to that letter. It is attached here under Tab A. There are twelve
documents on BCE's privilege logs that reflect legal work performed by Davies Ward between
April 8 and the morning of April 10, 2002, one of which appears three times on the logs. We
believe that those documents reflect work performed exclusively for BCE, not Teleglobe, and we

# YOUNG CONAWAY STARGATT & TAYLOR, LLP

Collins J. Seitz, Jr., Esquire
December 7, 2005
Page 2

submit them for in camera inspection under Tab B. Those are entries R15, R476, S87, S214, T287, T311, T342, T1644, T2889, U3740, U4354, and U4608 on the privilege logs.[1]

       The Affidavit further indicates that, following April 10, 2002, "the BCE Retainer ceased, except with respect to advice concerning certain BCE public disclosure, compliance and governance issues in respect of which Davies had already been providing advice to BCE," and that Davies Ward "ceased acting for Teleglobe" on April 18, 2002 but "continued to assist Teleglobe in preparation for its Board meeting on April 24, 2002 and help transition the file to Ogilvy Renault." (Aff. ¶¶ 7, 9.) We have reviewed the documents on BCE's privilege logs reflecting work performed by Davies Ward from April 10 to May 10, 2002 (i.e., a time-period conservatively encompassing the transition of the file to Ogilvy Renault). Upon further review, a few documents may reflect work performed for Teleglobe, some may well have been shared with Teleglobe, and a few should not have been withheld; we will produce all of those promptly. We believe, however, that some of those documents reflect work performed by Davies Ward exclusively for BCE. Several of those documents refer to an analysis of BCE's and Bell Canada's own credit facilities. The entries corresponding to work that, we believe, was performed for BCE are R160, R181, R185, R203, R708, R713, S260, T297, T306, T316, T378, T401, T837, T1054, T2241, T2254, T2871, U3483, U3484, U3490, U3491, U3492, U3493, U3494, U3495, U3503, U3504, U4337, U4605, U4606, U4649, and U4784. We submit those documents for in camera inspection under Tab C.

       Should you have any questions or require any additional information, we are available at your convenience.

       Respectfully,

       Pauline K. Morgan

PKM:dw
Enclosures

cc:    C. Malcolm Cochran, IV (enclosing Tab A only)
       John P. Amato (enclosing Tab A only)
       Gregory V. Varallo (enclosing Tab A only)
       George J. Wade
         (all by E-mail)

---

[1] Entries preceded by an "R" refer to entries on the log attached as Tab B to Mr. Schimmel's letter dated November 16, 2005. Entries preceded by an "S," "T," or "U" refer to entries on the logs dated February 18, 2005, September 9, 2005, and September 19, 2005, respectively, which are attached as Exhibits S, T, and U to Mr. Shandler's transmittal affidavit.

DB01:1929147.1                                   059825.1001

**EXHIBIT A**

Court File No.  02-CL-4528

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
Commercial List

B E T W E E N :

IN THE MATTER of the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36

AND IN THE MATTER of a Plan of Compromise or Arrangement of Teleglobe Inc. and the other Applicants listed on Schedule "A"

## AFFIDAVIT OF VINCENT A. MERCIER
(Sworn November 3, 2004)

I, VINCENT A. MERCIER, of the City of Toronto, in the Province of Ontario, MAKE OATH AND SAY:

1.          I have been a partner of Davies Ward Phillips & Vineberg LLP since 1992. My practice primarily focuses on mergers and acquisitions, corporate financing and securities law. I have acted as counsel for both BCE Inc. ("BCE") and Teleglobe Inc. ("Teleglobe"). As such, I have personal knowledge of the matters discussed in this affidavit. To the extent I do not have personal knowledge and my knowledge is based on information or belief, I verily believe those matters to be true.

2.          I swear this Affidavit pursuant to the Endorsement of the Honourable Mr. Justice Farley dated September 7, 2004 where His Honour stated:

> "... I think it appropriate ... to have ... Davies provide an explanation in an affidavit as to the mix up [with respect to 79 documents discussed below] being originally claimed as Teleglobe documents, the commingling, the duplication problems and the inability to locate both copies of the three

- 2 -

> duplicates and anything else that caused the confusion and
> that the photocopies of originals were complete (i.e. nothing
> on the reverse)."

3.        In this Affidavit I shall provide the explanation requested by His Honour.

**The BCE Retainer**

4.        Davies has acted as counsel to BCE for many years and on many matters.

5.        In February 2002, Davies was retained by BCE to provide advice to BCE with respect to its interest in Teleglobe Inc. (the "BCE Retainer"). The Davies' lawyer primarily responsible for the BCE Retainer was Mr. J-P. Bisnaire. Mr. Bisnaire is no longer with Davies having recently accepted an executive position with Manulife. In addition, Mr. Jay Swartz, Mr. Peter Hong and myself, among others, were involved with the provision of advice to BCE.

6.        Certain of the options that BCE was considering in April 2002 with respect to its interest in Teleglobe prompted concerns, that, on a go forward basis, BCE and Teleglobe could have diverging interests. Therefore, it was decided that Teleglobe and BCE should have separate legal counsel.

7.        On or about April 10, it was decided that Davies would act as counsel for Teleglobe in respect of Teleglobe's potential restructuring and related matters (the "Teleglobe Retainer"). At this time, the BCE Retainer ceased, except with respect to advice concerning certain BCE public disclosure, compliance and governance issues in respect of which Davies had already been providing advice to BCE.

- 3 -

8.          On or around the same date Stikeman Elliot was retained to act for BCE in respect of the Teleglobe restructuring, and continues to do so.  During the transition period when Davies ceased acting for BCE and BCE retained Stikeman Elliott, Davies also continued to advise BCE with respect to the role and identity of Teleglobe's Monitor and Chief Restructuring Officer.

9.          On April 18, 2002, because of Davies' prior and continuing relationship with BCE, Teleglobe and Davies mutually agreed that Davies resign as Teleglobe's legal counsel.  Teleglobe then retained Ogilvy Renault to act as its Canadian counsel in connection with Teleglobe's potential restructuring and related matters.  At this time, Davies ceased acting for Teleglobe, but continued to assist Teleglobe in preparation for its Board meeting on April 24, 2002 and help transition the file to Ogilvy Renault. Davies continued to provide advice to BCE with respect to the matters referred to in paragraph 7 above.

**The Teleglobe Retainer**

10.         The timing and duration of the Teleglobe Retainer was such that Davies did not open a new file.  Rather, any documents were maintained on the file previously opened for the BCE Retainer.  However, once Davies commenced acting for Teleglobe, we ceased providing advice to BCE in respect of Teleglobe's potential restructuring, except for the limited advice provided during the transition period as described above in paragraphs 7 and 8.

11.         In the context of the brief Teleglobe Retainer, Davies advised Teleglobe on certain insolvency matters and prepared draft materials for a potential filing under the

- 4 -

Companies' Creditors Arrangement Act ("CCAA"), which were subsequently provided to and completed by Ogilvy Renault.

**The Teleglobe Documents**

      *(a)    The Interim Receiver's Request and the Review*

12.        In September 2003, Davies received a request from the Interim Receiver of Teleglobe (the "IR") to produce all of our files maintained for the purpose of any Teleglobe retainer. In response to this request, I am advised by Mr. Bisnaire that he had all of the documents pertaining to the Teleglobe Retainer sent to his secretary's office so that he could review the documents and separate those documents that were part of the Teleglobe Retainer from those that formed part of the BCE Retainer. I am also advised by Mr. Bisnaire that due to time constraints, he requested Mr. Hong's assistance with the review of the documents. I am advised by Mr. Bisnaire that Mr. Hong separately reviewed the documents and separated out those documents that were part of the Teleglobe Retainer (the "Teleglobe Documents"). While Mr. Bisnaire was extremely familiar with the scope of the Teleglobe Retainer and the BCE Retainer, Mr. Hong was not.

13.        There are a number of documents that were included in the list of Teleglobe Documents that predate the Teleglobe Retainer. I am advised by Mr. Bisnaire and Mr. Hong that they considered it appropriate to include these documents because they pertained to the Teleglobe Retainer.

14.        The Teleglobe Documents were provided to Nancy Boyco, a litigation law clerk with Davies, who copied and categorized the Teleglobe Documents.

- 5 -

15.        I am advised by Ms Boyco that once the Teleglobe Documents had been copied and categorized they were reviewed by Christian Gauthier, a Davies' partner, to determine which of the documents were subject to claims of privilege. Mr. Gauthier identified 279 privileged documents (the "279 Documents"), which were set aside, while the non-privileged documents were made available to the IR.

16.        I am advised by Sandra Forbes, a litigation partner of Davies, that she had several discussions with counsel for the IR regarding Davies' ability to produce documents subject to a privilege claim by Teleglobe. In particular, Ms Forbes advised Mr. Chaiton that, absent the Court ordering Davies to disclose Teleglobe privileged documents, the law required Davies to keep those documents confidential and to protect the privilege claim on behalf of its former client. Mr. Chaiton advised Ms Forbes that he understood Davies' position and would bring a motion for that Order. For the purposes of that Order, he requested that she send him a letter setting out Davies' position. In response, by letter dated March 24, 2004, Ms Forbes stated:

> "On behalf of the Interim Receiver, you have asked DWPV to produce any files maintained by it for the purposes of any retainer by Teleglobe during the period November 1, 2000 to May 15, 2002 (the 'DWPV Files'). After receiving your request, we identified and reviewed the DWPV Files. We then categorized the documents in the DWPV Files as either privileged or non-privileged. We identified 280 non-privileged documents which were provided to, and reviewed by, the Interim Receiver in February, 2004. We also have identified **approximately 270 documents** which are subject to solicitor-client privilege (the 'Privileged Documents'). For the reasons set out below, DWPV believes that it is not authorized or entitled to disclose the Privileged Documents to the Interim Receiver, and that such disclosure would amount to an unauthorized waiver of solicitor-client privilege which DWPV, as former counsel to Teleglobe, has a continuing obligation to preserve and protect." (emphasis added)

- 6 -

17.      At the time of writing this letter, Ms Forbes had not personally reviewed the Teleglobe Documents and, as stated in her letter, the reference to 270 documents was an approximation.

     (b)      *The IR Motion and Review*

18.      Following Ms Forbes' letter, the IR brought a motion seeking an Order:

> "Directing Davies to deliver to the Interim Receiver, or otherwise make available for access and review by the Interim Receiver, the [279 Documents]."

19.      Prior to the hearing of its motion, the IR requested that Davies provide it with a list of the 279 Documents.

20.      I am advised by Ms Boyco that she provided a list of the 279 Documents that she had prepared to Mr. Bisnaire and Mr. Hong for their review and comment.

21.      Upon reviewing the list, I am advised by Mr. Bisnaire that he became concerned that some of the documents listed were not Teleglobe Documents, but rather were documents that were from the BCE Retainer and therefore, were BCE documents. As a result of this concern, Mr. Bisnaire and Mr. Hong reviewed the 279 Documents together.

22.      I am advised by Mr. Bisnaire that this review was conducted because he wanted to be certain that no BCE Documents that formed part of the BCE Retainer or any other retainer with BCE were included in the 279 Documents.    Mr. Bisnaire, because he had not personally reviewed the documents and considering the complexity and timing of the two retainers, had concerns that BCE documents could have

- 7 -

inadvertently been amalgamated in the Teleglobe Documents and, as a result, with the 279 Documents. Through this review, Mr. Bisnaire identified 81 documents that related to the BCE Retainer (the "BCE Documents") and, accordingly, were BCE documents. As such, those 81 documents were removed. As discussed below, three additional documents were also removed because they were duplicates (the "Duplicates"). Finally, it was determined that one of the 195 remaining documents (an executive insurance policy) was not subject to a claim of privilege and this document was provided to the IR on April 29, 2004.

23.          Following the removal of the BCE Documents, the Duplicates and the insurance policy, 194 documents identified as being subject to the solicitor-client privilege of Teleglobe remained (the "Teleglobe Privileged Documents"). A list of both the Teleglobe Privileged Documents and the BCE Documents was later prepared by the Interim Administrator and provided to the parties involved in this aspect of the proceeding on August 18, 2004. I am advised by our law clerk Nancy Boyco that the Certificate of the Interim Administrator and the corresponding lists of documents deviate slightly from Davies indexation of these documents. In particular, paragraph 12 of the Certificate refers to 79 BCE Documents, while Davies identified 81 BCE Documents. This discrepancy is a result of:

(a)     Tab 50 of the list of Teleglobe Documents refers to BegDoc#186, which is a BCE Document and appears to have inadvertently been listed by the Interim Administrator as a Teleglobe Document; and