- 8 -

(b)     BegDoc#456, a BCE Document, is included as an attachment to document 13 on the BCE list of documents. This document was recorded as a separate document by Davies, not as an attachment.

24.        Davies has advised the Interim Administrator of the above.

(c)    The Hearing

25.        On April 29, 2004, Davies provided the IR with a list of the Teleglobe Privileged Documents.

26.        On June 1, 2004, a hearing was held before the Honourable Justice Farley to determine whether or not, among other things, the documents subject to solicitor-client privilege of Teleglobe should be produced to the IR. Jim Bunting, a member of Davies' litigation group, appeared for Davies as former solicitors to Teleglobe.

27.        During the hearing, I am advised that questions arose with respect to the number of Teleglobe Privileged Documents. This was because the list of Teleglobe Privileged Documents contained fewer documents than the approximately 270 documents referenced in Ms Forbes' March 24, 2003 letter. I understand that during the hearing, Mr. Bunting was unable to provide the Court, from his own knowledge, with an explanation for the discrepancy in the number of documents. Mr. Bunting called Ms Forbes during the hearing to inquire as to the discrepancy. Ms Forbes advised Mr. Bunting that, to the best of her knowledge, any discrepancy in the number of documents was attributable to the removal of duplicates. Mr. Bunting so advised the Court.

- 9 -

28.          Upon returning to the office following the motion, I am advised by Mr. Bunting that he made inquiries to ensure that his representation to the Court with respect to the discrepancy in documents was accurate. I am advised by Mr. Bunting that through his inquiries of Ms Boyco he learned that, after the list of the 279 Documents had been prepared, the documents were reviewed by Mr. Hong and Mr. Bisnaire and, following this review, some documents were removed as duplicates and others were removed because they were BCE documents. I am also advised by Mr. Bunting that on June 3, 2004 he wrote to the Court to advise that the discrepancy in the number of documents was attributable to the removal of duplicates and the BCE Documents.

**The Copies and The "Missing" Duplicates**

29.          I am advised by Nancy Boyco that we have conducted an exhaustive review comparing the copies of the Teleglobe Privileged Documents reviewed by the Interim Administrator against the original documents in our file to ensure that they are true duplicates. Ms Boyco advised that with the exception of a few variations, the copies reviewed by the Interim Administrator and subsequently produced to the IR are true copies of the originals in the sense that they contained no markings or handwriting on them (reverse or otherwise) that differed from the originals in the file. In total, 16 original documents were identified as varying from the copies reviewed by the Interim Administrator:

          (a)     six of the originals have either a "Faxed" stamp, a "Copy" stamp or a stamp indicating the time the fax was received that did not appear on the copy;

- 10 -

(b)   four of the originals have text or handwriting that was partly cut off in the copy;

(c)   two of the originals are comprised of a page that was inadvertently omitted from the copy;

(d)   one of the originals has a sticky note with handwriting on the bottom left hand corner and the text on that sticky note does not appear on the copy;

(e)   two of the originals have brief handwritten notes that do not appear on the copy; and

(f)   one of the originals has handwritten initials of Davies lawyers on the bottom right hand corner (for internal distribution) of the covering email and the first page of the attached memorandum has handwritten underlining that does not appear on the copy.

30.      In addition to the above variations, we identified a mark up of a memorandum that was not included with the copies reviewed by the Interim Administrator.

31.      Where there was a variation between a copy and an original, an additional copy of the original (including such minor variation) is being produced to both the IR and the Interim Administrator.  The marked up version of the memorandum referred to in paragraph 30 is also being produced to the IR and the Interim Administrator.

32.      In addition to the BCE Documents being removed from the 279 Documents, the Duplicates were removed because they were true duplicates. Unfortunately, following their removal, two of the three duplicates were misplaced.  I

- 11 -

have spoken with Nancy Boyco and am advised that these two misplaced documents were true duplicates in the sense that they contained no markings or handwriting on them (reverse or otherwise) that differ from the documents contained in the Teleglobe Privileged Documents. Ms Boyco is not able to discern how two of the three duplicates were misplaced. The missing duplicates are true copies of documents 50 and 143 on the Interim Administrator's list of Teleglobe Privileged Documents.

SWORN BEFORE ME at                )
the City of Toronto, in the        )
Province of Ontario, this          )
3rd day of November, 2004          )

                                                      VINCENT A. MERCIER

Commissioner for taking
     Affidavits, etc.

IN THE MATTER OF the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36

AND IN THE MATTER of a Plan of Compromise or Arrangement of Teleglobe Inc. and the other Applicants listed on Schedule "A"

Court File No: 02-CL-4528

*ONTARIO*
SUPERIOR COURT OF JUSTICE
COMMERCIAL LIST

Proceeding commenced at Toronto

AFFIDAVIT OF VINCENT A. MERCIER
(SWORN NOVEMBER 3, 2004)

DAVIES WARD PHILLIPS & VINEBERG LLP
1 FIRST CANADIAN PLACE
SUITE 4400
TORONTO, ON M5X 1B1

Sandra A. Forbes (LSUC #33253P)
James D. Bunting (LSUC #48244K)
Tel:   416.367.7433
Fax:  416.863.0871

Solicitors for Davies Ward Phillips & Vineberg LLP

**EXHIBIT B**

**SUBMITTED SEPARATELY FOR *IN CAMERA* REVIEW**

**EXHIBIT C**

**SUBMITTED SEPARATELY FOR *IN CAMERA* REVIEW**

**TAB D**

| From: | George J Wade |
| Sent: | 12/20/2005 10:50:03 AM |
| To: | BCE-Teleglobe Case Team |
| CC: | |
| BCC: | |
| Subject: | Teleglobe v. BCE, C.A. No. 04-CV-1266 |

----- Forwarded by George J Wade/NY/NA/ShS on 12/20/2005 10:49 AM -----

George J Wade 12/20/2005 10:49 AM          To: cseitz@cblh.com  cc: Cochran@RLF.com, pmorgan@
                                           varallo@rlf.com  Subject: Teleglobe v. BCE, C.A. No. 04-C'

Dear Special Master Seitz,

     I refer to Mr. Cochran's e-mail to you dated 5:46 p.m. yesterday and to the Plaiuntiffs' Limited Motion for Reargument and Clarification (the "Motion").  I have spoken with Mr. Cochran this morning and we are prepared to and do stipulate that the Motion is premature and that withdrawal thereof is without prejudice to renewal. We will, of course, be guided by your views on this matter.

     Respectfully,

     George J. Wade

     Of counsel to the defendants

| From: | George J Wade |
|---|---|
| Sent: | 12/20/2005 11:50:33 AM |
| To: | BCE-Teleglobe Case Team |
| CC: | |
| BCC: | |
| Subject: | RE: Teleglobe v. BCE, C.A. No. 04-CV-1266 |

----- Forwarded by George J Wade/NY/NA/ShS on 12/20/2005 11:49 AM -----

**"Cochran, C. Malcolm IV" <Cochran@RLF.com>**    To: "George J Wade" <GWade@Shearman.com>, cseitz@
12/20/2005 11:21 AM                                  jamato@hahnhessen.com, "Varallo, Gregory" <varallo@RL

Dear Special Master Seitz:  To clarify, Mr. Wade advised me this morning
that he is prepared to so stipulate, but we did not reach a stipulation
on that point.  Rather, I indicated that he should advise you of his
position, and that we would be guided by your views regarding whether
the motion is premature.

In addition to the matters related in the motion for reargument, I would
note that since we filed the motion we have continued with our review of
documents produced by BCE on a computer disk, which was also received on
December 16.  As noted in a footnote in our motion, we reserved the
right to call such of those to your attention as might impact on our
arguments.  I reviewed moments ago the documents that our team here has
pulled from among those produced on the disk.  There a number that
relate directly to the matter of the dual representation of BCE and
Teleglobe by in house BCE lawyers.  We would wish to call these to your
attention, in the appropriate way, whether as part of a reargument on
that issue, or in other supplemental submissions.

Respectfully,

C. Malcolm Cochran

-------------------------------------------------------
Richards, Layton and Finger, P.A. is not providing any advice with respect to any
federal tax issue in connection with this matter.

The information contained in this e-mail message is intended only for the use of the
individual or entity named above and may be privileged and/or confidential. If the
reader of this message is not the intended recipient, you are hereby notified that
any unauthorized dissemination, distribution or copying of this communication is
strictly prohibited by law. If you have received this communication in error, please
immediately notify us by return e-mail or telephone (302-651-7700) and destroy
the original message. Thank you.

-------------------------------------------------------

From: George J Wade [mailto:GWade@Shearman.com]
Sent: Tuesday, December 20, 2005 10:49 AM
To: cseitz@cblh.com
Cc: Cochran, C. Malcolm IV; pmorgan@ycst.com; kgross@rmgglaw.com;
jamato@hahnhessen.com; Varallo, Gregory
Subject: Teleglobe v. BCE, C.A. No. 04-CV-1266

Dear Special Master Seitz,

    I refer to Mr. Cochran's e-mail to you dated 5:46 p.m. yesterday
and to the Plaintiffs' Limited Motion for Reargument and Clarification
(the "Motion"). I have spoken with Mr. Cochran this morning and we are
prepared to and do stipulate that the Motion is premature and that
withdrawal thereof is without prejudice to renewal. We will, of course,
be guided by your views on this matter.


Respectfully,


George J. Wade

Of counsel to the defendants

*********************************************************************

This communication is not intended to be used, and cannot be used, by
the recipient or any other person for the purpose of avoiding United
States federal tax penalties that may be imposed on the recipient or
such other person. In addition, if any United States federal tax advice
contained in this communication is used or referred to in promoting,
marketing or recommending any corporation, partnership or other entity,
investment plan, concept, structure or arrangement (which should be
assumed to be the case by a recipient or other person who is not our
client with respect to the subject matter of the communication), then
(i) such tax advice should be construed as written to support the
promotion or marketing of the transactions or matters addressed by the
advice and (ii) the recipient or other person should seek advice based
on the recipient or other person's particular circumstances from an
independent tax advisor. For further information, please go to
http://www.shearman.com/disclaimer/tax_disclosure.html

*********************************************************************

This transmittal and/or attachments may be a confidential
attorney-client communication or may otherwise be privileged or
confidential. If you are not the intended recipient, you are hereby
notified that you have received this transmittal in error; any review,
dissemination, distribution or copying of this transmittal is strictly
prohibited. If you have received this transmittal and/or attachments in
error, please notify us immediately by reply or by telephone (call us
collect at +1 212-848-8400) and immediately delete this message and all

its attachments.

Shearman & Sterling LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

************************************************************************
*

**TAB E**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------------------------x
In re:                                              :     Chapter 11
                                                    :
TELEGLOBE COMMUNICATIONS                            :     Jointly Administered
CORPORATION, et al.,                                :     Case No. 02-11518 (MFW)
                                                    :
                              Debtors.              :
----------------------------------------------------x
                                                    :
TELEGLOBE COMMUNICATIONS                            :
CORPORATION, et al.,                                :
                                                    :
                              Plaintiffs,           :
                                                    :
                    v.                              :     C.A. No. 04-CV-1266 (SLR)
                                                    :
BCE INC., et al.,                                   :
                                                    :
                              Defendants.           :
----------------------------------------------------x

## BCE INC.' SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DOCUMENTS WITHHELD FOR PRIVILEGE

Counsel to the Defendants:

YOUNG CONAWAY
STARGATT & TAYLOR, LLP

Pauline K. Morgan (No. 3650)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899
(302) 571-6600

SHEARMAN & STERLING LLP

Stuart J. Baskin
George J. Wade
Jaculin Aaron
Daniel Schimmel
Paula M. Howell
599 Lexington Avenue
New York, NY 10022

Dated: January 20, 2006

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...........................................................................................ii

I.   INTRODUCTION ...............................................................................................1

II.  ARGUMENT.......................................................................................................2

    A.   There Is No Over-Designation of Documents Withheld As Privileged ...................2

    B.   There Was No Joint Representation of BCE and Teleglobe Regarding the
        Amendment of BCE's and Teleglobe's 2001 Annual Reports...............................4

        1.   Michel Lalande ......................................................................................4

        2.   Davies Ward ..........................................................................................6

    C.   Mr. Lalande Did Not Jointly Represent BCE and Teleglobe With Respect To
        the Decision To Cease Funding Teleglobe in April of 2002 ...................................8

        1.   Mr. Lalande's work in connection with BCE's funding of Teleglobe ........8

        2.   Mr. Lalande's work in connection with Teleglobe's restructuring of
            its debt................................................................................................12

III. CONCLUSION .................................................................................................13

## TABLE OF AUTHORITIES

### CASES

Eureka Investment Inv. Corp. v. Chicago Title Ins. Co., 743 F.2d 932 (D.C. Cir. 1984).........5, 10

Zirn v. VLI Corp., Civ.A.No.9488, 1990 WL 119685 (Del. Ch. 1990)...........................................5

## I.    INTRODUCTION

BCE has conducted a thorough review of the documents listed on its July 2004, February 2005, and September 2005 privilege logs for the time period November 1, 2001 through April 23, 2002, and has de-designated and produced to plaintiffs the documents no longer deemed to be privileged under the standards set forth in the Special Master's decision dated December 1, 2005 (the "Decision"). We believe that the documents with respect to which BCE continues to assert a privilege reflect work performed solely for BCE, not a joint representation of BCE and Teleglobe Inc. ("Teleglobe"), a Canadian company that is not a party to this lawsuit, and that those documents are properly withheld.

In their supplemental papers, plaintiffs make three principal arguments in support of their effort to obtain the production of BCE's privileged documents. First, plaintiffs illogically argue that the involvement of Michel Lalande in preparing Teleglobe's public securities filings regarding BCE's intention (but not obligation) to continue funding Teleglobe requires the production of all of BCE's privileged analyses regarding its decision to cease funding Teleglobe. It makes no sense, however, to argue that Mr. Lalande's role in the area of securities compliance establishes a joint representation with respect to all the legal work that BCE performed regarding its decision to cease funding. Equally illogical is plaintiffs' argument that, because Mr. Lalande performed legal work for BCE that related to Teleglobe, he must have been engaged in a joint representation. BCE had its own legal interest in analyzing Teleglobe's situation and BCE's options. The fact that Mr. Lalande conducted those analyses does not make his work a joint representation.

Second, plaintiffs incorrectly argue that Davies Ward jointly represented BCE and Teleglobe following April 8, 2002. Ms. Turcotte's deposition testimony and the affidavit of Mr. Mercier reflect that Teleglobe engaged Davies Ward on approximately April 10, 2002, and

virtually all the work that Davies Ward performed after that date consisted of assisting Teleglobe with various restructuring alternatives. Davies Ward's work for BCE wound-up after April 10, except for discrete matters that did not involve a joint representation.

Third, plaintiffs argue that BCE's recent production of documents from its privilege logs is somehow evidence that BCE continues to over-designate documents as privileged. BCE's recent review of the documents on its privilege logs constituted an honest effort to comply with the standards set forth in the Special Master's decisions following a thorough and principled review of BCE's prior privilege designations. Despite BCE's recent production of documents from its logs, plaintiffs have not identified any documents establishing a joint representation of BCE and Teleglobe regarding the decision to cease funding Teleglobe or the Debtors. Therefore, the premise underlying the Special Master's decision dated December 1, 2005, has not changed. (See Decision at 16.)

II.    ARGUMENT

A.    There Is No Over-Designation of Documents Withheld As Privileged

Plaintiffs argue that the fact that BCE has recently de-designated and produced a large number of documents shows that BCE is still over-designating documents as privileged. We suspect that plaintiffs would have had the same complaint if we had de-designated a fraction of that amount (although they would have phrased it differently). The fact of the matter is that over 300 of those de-designated documents had already been produced to plaintiffs under different bates numbers. (Declaration of Daniel Schimmel ("Schimmel Decl."), dated January 20, 2006, ¶4.) In addition, we understood the Special Master's December 9, 2005 decision to instruct BCE to produce to plaintiffs the cover pages of certain documents listed on the logs that had previously been designated as privileged in their entirety. (Supplemental Decision on Plaintiffs' Motion To Compel Defendants To Produce Documents Withheld on the Basis of

Privilege, dated December 9, 2005, at 3 n.4.) Therefore, following December 9, BCE produced those cover pages and redacted the underlying documents to the extent they are privileged. As a result, over 6,200 pages of documents were produced in redacted form, amounting to approximately 381 documents.

BCE also recently de-designated and produced to plaintiffs drafts of BCE's 2001 annual report, Bell Canada's 2001 annual report, and BCE's quarterly reports and proxy statements based upon our learning that those drafts may have been shared with BCE's auditors Deloitte & Touche ("Deloitte"), although the drafts themselves do not indicate that they were sent to Deloitte. Representatives of Deloitte were present in BCE's offices from approximately January 15, 2002 to the end of February 2002, in order to work on Deloitte's audit of BCE, and drafts of BCE's 2001 annual report were handed to the auditors at the time. (Schimmel Decl. ¶ 2.) Therefore, we have produced the drafts of the annual report identified on BCE's privilege logs that were created after January 15, 2002.[1] In addition, drafts of the April 2002 amendment of the annual report of BCE were shared with Deloitte, and we have de-designated and produced those documents from the privilege logs.

In their supplemental papers and Exhibit B (listing what plaintiffs characterize as "communications between non-lawyers"), plaintiffs identified 103 documents as examples of purported over-designations. The tables attached hereto as Appendices 1 and 2 address those documents and demonstrate that in each case there is a legitimate basis for the claim of privilege. Thus, contrary to plaintiffs' unfounded assertions, the recent de-designation of documents by BCE from its privilege logs is not evidence of any confusion regarding BCE's privilege position

---

[1]    BCE continues to withhold draft excerpts of the annual reports to the extent they were not shared with the auditors. BCE has also produced drafts in redacted form to the extent they contain handwritten comments reflecting the legal advice of counsel.

or an attempt at gamesmanship, but reflect a thorough and principled review of BCE's prior privilege assertions.

**B.    There Was No Joint Representation of BCE and Teleglobe Regarding the Amendment of BCE's and Teleglobe's 2001 Annual Reports**

**1.    Michel Lalande**

The amendment of BCE's and Teleglobe's annual reports in April 2002 was done in order to state the basis on which BCE had expressed its intent to provide further funding to Teleglobe.[2] (See Turcotte Dep. at 226-27, 258, 267-68.) Some factual detail was added in the amended annual reports, but the fundamental points set forth in the version that the boards of Teleglobe and BCE approved on February 27, 2002 were not changed: both the initial and amended versions indicated that (i) BCE was not obligated to fund any additional amounts into Teleglobe; (ii) while there was no obligation to fund, BCE intended to provide further funding to Teleglobe; and (iii) BCE's failure to provide such funding absent other sources of financing would result in a material adverse effect on Teleglobe. (See Turcotte Dep. at 226-27; Morgan Decl. Ex. A.)

Michel Lalande worked on the preparation of Teleglobe's AIF in late March and April of 2002, and he also worked on the amendment of Teleglobe's Annual Report in April 2002. (See Lalande Dep. at 349, 497.)[3] The drafts of Teleglobe's annual reports and AIFs were produced to plaintiffs long before the Special Master issued his December 1, 2005 decision, and

---

[2]    In their supplemental papers, plaintiffs discuss the amendment of BCE's and Teleglobe's Annual Information Form ("AIF") in April 2002, but the plaintiffs primarily refer to the amendment of BCE's and Teleglobe's Annual Reports. The Annual Reports and AIFs are separate documents. (See Turcotte Dep. at 220-22, 511-12.)

[3]    Because the AIF is a Canadian public securities document, it made sense for Mr. Lalande to spearhead the preparation of that document. (See Lalande Dep. at 225-27.) Even so, multiple drafts of Teleglobe's public securities filings had previously been exchanged with Teleglobe's legal and other staff in Reston, who reviewed them and provided comments. (See, e.g., Lalande Dep. at 349; Morgan Decl., Ex. B.)

BCE only withheld drafts of BCE's public securities documents, which are privileged under Delaware law. Zirn v. VLI Corp., Civ.A.No.9488, 1990 WL 119685, at *5-6 (Del. Ch. 1990).

The fact that Mr. Lalande worked on those draft public securities documents does not create a joint representation of BCE and Teleglobe. The preparation of BCE's and Teleglobe's respective public securities filings were not the same transaction or event, even if the subject matter of the filings overlapped to some extent. Thus, there was no joint representation.

Even if one were to accept plaintiffs' erroneous argument that Mr. Lalande jointly represented Teleglobe and BCE with respect to the amendment of the annual reports, it does not follow that "all documents that were prepared by or sent to Lalande that refer or relate to BCE's commitment or intention to fund, and its control of, Teleglobe – *whether or not in the context of the amendment of the AIF* – should be produced." (Plaintiffs' Opening Supplemental Brief In Support Of Motion To Compel Documents Wrongfully Withheld Or Redacted For Privilege ("Pl. Suppl. Br.") at 14 (emphasis added).) Mr. Lalande's work in the area of securities compliance with respect to providing an accurate statement of BCE's intentions with regard to continued funding of Teleglobe does not establish a joint representation with respect to BCE's internal analyses regarding its decision to cease funding Teleglobe. The latter was a separate matter as to which the legal advice was expected to remain confidential to BCE. (Turcotte Dep. at 60-61, 517; see BCE's letter to the Special Master dated November 15, 2005, at 4.) E.g. in Eureka Inv. Corp. v. Chicago Title Ins. Co., 743 F.2d 932, 936-37 (D.C. Cir. 1984), the court noted the general principle that, even if a joint representation exists with respect to a particular matter, it does not follow that the joint representation extends to another related matter where there is an expectation of privacy vis-à-vis the other matter.

Plaintiffs try to overcome this glaring defect in their argument by claiming that BCE has waived the attorney-client privilege as a result of Mr. Lalande's and Ms. Turcotte's deposition testimony that the annual reports were amended to add factual detail regarding the basis of BCE's intention to fund. (Pl. Suppl. Br. at 11-12.) That argument is equally misguided because Mr. Lalande's and Ms. Turcotte's testimony did not disclose or communicate legal advice. (Turcotte Dep. at 226-27; Lalande Dep. at 378.) Consequently, there was no waiver of any privilege.[4]

### 2. Davies Ward

Davies Ward did not jointly represent Teleglobe and BCE.[5] Davies Ward's representation of Teleglobe did not begin until approximately April 10, 2002, as described in the affidavit of Vincent A. Mercier of Davies Ward, sworn to on November 3, 2004, which was filed with the Ontario Superior Court. Mr. Mercier's affidavit, previously submitted to the Special Master as an attachment to BCE's December 7, 2005 letter, states that "[o]n or about April 10, it was decided that Davies would act as counsel for Teleglobe ...." (Mercier Aff. ¶ 7.) Ms. Turcotte, BCE's Chief Legal Officer, similarly testified that "Davies Ward was engaged starting, I believe, April 10th ...." (Turcotte Dep. at 67-69.)

Contrary to plaintiffs' assertions, the Davies Ward documents listed on the privilege log in the period April 8-10 do not establish that Davies Ward was representing Teleglobe during that period. Some of the documents reflect Davies Ward's analysis of the effect of certain events, including the restructuring of Teleglobe, on the credit facilities and debt

---

[4]    Plaintiffs claim that the documents listed in Exhibit C, which plaintiffs characterize as "documents prepared or received by Lalande that refer or relate to changes made to the Teleglobe and/or BCE AIF," were improperly withheld. We address each of those documents in BCE's Appendix 2.

[5]    Davies Ward did not represent the Debtors because "the U.S. entities did not have a need for retaining Canadian counsel." (Brunette Dep. at 91.)

instruments of BCE and Bell Canada (see, e.g., entries 4085, 4354, 4608 on the September 2005 log) -- clearly an issue on which Davies Ward was advising BCE, not Teleglobe. Other documents from that period reflect Davies Ward's review of draft Teleglobe filings (see, e.g., entries 3598, 3600, 4174, 4249 on the September 2005 log) and a draft engagement letter of Lazard (see, e.g., entries 2889, 3740 on the September 2005 log). These were both issues in which BCE had its own legal interest, and Davies Ward's advising BCE on those issues is consistent with the notion that it was representing only BCE during that period.[6]

        Nor was there any joint representation of Teleglobe and BCE by Davies Ward following April 10, 2002. Virtually all of Davies Ward's work was performed for Teleglobe, with the mandate to "help Teleglobe and support them and assist them in looking at various alternatives at the time which may involve a number of alternative restructurings for Teleglobe." (Turcotte Dep. at 70.) Davies Ward also performed discrete legal work for BCE principally to wind up work initiated prior to April 10. Davies Ward completed a memorandum discussing the effect of certain events, including the restructuring of Teleglobe, on the credit facilities and debt instruments of BCE and Bell Canada, and submitted a memorandum discussing the fiduciary duties of BCE's board members. (See, e.g., entries 160, 185, 708, 713 on the July 2004 log and entries 316, 3492, 3503, 4649 on the September 2005 log.) Thus, the legal work performed by Davies Ward for BCE after April 10 was different from the legal work performed for Teleglobe

---

[6]    In their supplemental papers, plaintiffs claim that BCE improperly asserted the attorney-client privilege with respect to a Davies Ward memorandum (Entry 03598 on BCE's September 2005 log) on the ground that it was allegedly prepared on April 8, 2002. (Pl. Suppl. Br. at 14-15.) That memorandum is in fact dated April 5, 2002, and BCE's log contains other versions of that memorandum, which are all dated April 5, 2002. (See entries 4174, 4175, 4249, and 4250 in the September 2005 log.) The April 8 date in Entry 03598 refers to the date of BCE's internal email forwarding that memorandum from Mr. Ryan to Mr. Vanaselja.

Plaintiffs also speculate that Davies Ward must have been engaged by Teleglobe prior to April 9 based on an ambiguous statement in a document entitled "Issues and Activities List," but plaintiffs speak from both sides of their mouth because they argue that this document contains unreliable statements elsewhere. (Pl. Suppl. Br. at 11, 15 n.6.) Ms. Turcotte also testified that the list was partially inaccurate. (Turcotte Dep. at 271; Lalande Dep. at 558-60.)