- 3 -

8.      On or around the same date Stikeman Elliot was retained to act for BCE in respect of the Teleglobe restructuring, and continues to do so. During the transition period when Davies ceased acting for BCE and BCE retained Stikeman Elliott, Davies also continued to advise BCE with respect to the role and identity of Teleglobe's Monitor and Chief Restructuring Officer.

9.      On April 18, 2002, because of Davies' prior and continuing relationship with BCE, Teleglobe and Davies mutually agreed that Davies resign as Teleglobe's legal counsel. Teleglobe then retained Ogilvy Renault to act as its Canadian counsel in connection with Teleglobe's potential restructuring and related matters. At this time, Davies ceased acting for Teleglobe, but continued to assist Teleglobe in preparation for its Board meeting on April 24, 2002 and help transition the file to Ogilvy Renault. Davies continued to provide advice to BCE with respect to the matters referred to in paragraph 7 above.

**The Teleglobe Retainer**

10.     The timing and duration of the Teleglobe Retainer was such that Davies did not open a new file. Rather, any documents were maintained on the file previously opened for the BCE Retainer. However, once Davies commenced acting for Teleglobe, we ceased providing advice to BCE in respect of Teleglobe's potential restructuring, except for the limited advice provided during the transition period as described above in paragraphs 7 and 8.

11.     In the context of the brief Teleglobe Retainer, Davies advised Teleglobe on certain insolvency matters and prepared draft materials for a potential filing under the

- 4 -

Companies' Creditors Arrangement Act ("CCAA"), which were subsequently provided to and completed by Ogilvy Renault.

**The Teleglobe Documents**

      *(a)    The Interim Receiver's Request and the Review*

12.         In September 2003, Davies received a request from the Interim Receiver of Teleglobe (the "IR") to produce all of our files maintained for the purpose of any Teleglobe retainer. In response to this request, I am advised by Mr. Bisnaire that he had all of the documents pertaining to the Teleglobe Retainer sent to his secretary's office so that he could review the documents and separate those documents that were part of the Teleglobe Retainer from those that formed part of the BCE Retainer. I am also advised by Mr. Bisnaire that due to time constraints, he requested Mr. Hong's assistance with the review of the documents. I am advised by Mr. Bisnaire that Mr. Hong separately reviewed the documents and separated out those documents that were part of the Teleglobe Retainer (the "Teleglobe Documents"). While Mr. Bisnaire was extremely familiar with the scope of the Teleglobe Retainer and the BCE Retainer, Mr. Hong was not.

13.         There are a number of documents that were included in the list of Teleglobe Documents that predate the Teleglobe Retainer. I am advised by Mr. Bisnaire and Mr. Hong that they considered it appropriate to include these documents because they pertained to the Teleglobe Retainer.

14.         The Teleglobe Documents were provided to Nancy Boyco, a litigation law clerk with Davies, who copied and categorized the Teleglobe Documents.

15.        I am advised by Ms Boyco that once the Teleglobe Documents had been copied and categorized they were reviewed by Christian Gauthier, a Davies' partner, to determine which of the documents were subject to claims of privilege.  Mr. Gauthier identified 279 privileged documents (the "279 Documents"), which were set aside, while the non-privileged documents were made available to the IR.

16.        I am advised by Sandra Forbes, a litigation partner of Davies, that she had several discussions with counsel for the IR regarding Davies' ability to produce documents subject to a privilege claim by Teleglobe.  In particular, Ms Forbes advised Mr. Chaiton that, absent the Court ordering Davies to disclose Teleglobe privileged documents, the law required Davies to keep those documents confidential and to protect the privilege claim on behalf of its former client.  Mr. Chaiton advised Ms Forbes that he understood Davies' position and would bring a motion for that Order.  For the purposes of that Order, he requested that she send him a letter setting out Davies' position.  In response, by letter dated March 24, 2004, Ms Forbes stated:

> "On behalf of the Interim Receiver, you have asked DWPV to produce any files maintained by it for the purposes of any retainer by Teleglobe during the period November 1, 2000 to May 15, 2002 (the 'DWPV Files').  After receiving your request, we identified and reviewed the DWPV Files.  We then categorized the documents in the DWPV Files as either privileged or non-privileged.  We identified 280 non-privileged documents which were provided to, and reviewed by, the Interim Receiver in February, 2004.  We also have identified **approximately 270 documents** which are subject to solicitor-client privilege (the 'Privileged Documents').  For the reasons set out below, DWPV believes that it is not authorized or entitled to disclose the Privileged Documents to the Interim Receiver, and that such disclosure would amount to an unauthorized waiver of solicitor-client privilege which DWPV, as former counsel to Teleglobe, has a continuing obligation to preserve and protect." (emphasis added)

- 6 -

17.        At the time of writing this letter, Ms Forbes had not personally reviewed the Teleglobe Documents and, as stated in her letter, the reference to 270 documents was an approximation.

(b)    The IR Motion and Review

18.        Following Ms Forbes' letter, the IR brought a motion seeking an Order:

> "Directing Davies to deliver to the Interim Receiver, or otherwise make available for access and review by the Interim Receiver, the [279 Documents]."

19.        Prior to the hearing of its motion, the IR requested that Davies provide it with a list of the 279 Documents.

20.        I am advised by Ms Boyco that she provided a list of the 279 Documents that she had prepared to Mr. Bisnaire and Mr. Hong for their review and comment.

21.        Upon reviewing the list, I am advised by Mr. Bisnaire that he became concerned that some of the documents listed were not Teleglobe Documents, but rather were documents that were from the BCE Retainer and therefore, were BCE documents. As a result of this concern, Mr. Bisnaire and Mr. Hong reviewed the 279 Documents together.

22.        I am advised by Mr. Bisnaire that this review was conducted because he wanted to be certain that no BCE Documents that formed part of the BCE Retainer or any other retainer with BCE were included in the 279 Documents.  Mr. Bisnaire, because he had not personally reviewed the documents and considering the complexity and timing of the two retainers, had concerns that BCE documents could have

- 7 -

inadvertently been amalgamated in the Teleglobe Documents and, as a result, with the 279 Documents. Through this review, Mr. Bisnaire identified 81 documents that related to the BCE Retainer (the "BCE Documents") and, accordingly, were BCE documents. As such, those 81 documents were removed. As discussed below, three additional documents were also removed because they were duplicates (the "Duplicates"). Finally, it was determined that one of the 195 remaining documents (an executive insurance policy) was not subject to a claim of privilege and this document was provided to the IR on April 29, 2004.

23.        Following the removal of the BCE Documents, the Duplicates and the insurance policy, 194 documents identified as being subject to the solicitor-client privilege of Teleglobe remained (the "Teleglobe Privileged Documents"). A list of both the Teleglobe Privileged Documents and the BCE Documents was later prepared by the Interim Administrator and provided to the parties involved in this aspect of the proceeding on August 18, 2004. I am advised by our law clerk Nancy Boyco that the Certificate of the Interim Administrator and the corresponding lists of documents deviate slightly from Davies indexation of these documents. In particular, paragraph 12 of the Certificate refers to 79 BCE Documents, while Davies identified 81 BCE Documents. This discrepancy is a result of:

    (a)    Tab 50 of the list of Teleglobe Documents refers to BegDoc#186, which is a BCE Document and appears to have inadvertently been listed by the Interim Administrator as a Teleglobe Document; and

- 8 -

(b)     BegDoc#456, a BCE Document, is included as an attachment to
document 13 on the BCE list of documents. This document was recorded
as a separate document by Davies, not as an attachment.

24.     Davies has advised the Interim Administrator of the above.

(c)     *The Hearing*

25.     On April 29, 2004, Davies provided the IR with a list of the Teleglobe
Privileged Documents.

26.     On June 1, 2004, a hearing was held before the Honourable Justice
Farley to determine whether or not, among other things, the documents subject to
solicitor-client privilege of Teleglobe should be produced to the IR. Jim Bunting, a
member of Davies' litigation group, appeared for Davies as former solicitors to
Teleglobe.

27.     During the hearing, I am advised that questions arose with respect to the
number of Teleglobe Privileged Documents. This was because the list of Teleglobe
Privileged Documents contained fewer documents than the approximately 270
documents referenced in Ms Forbes' March 24, 2003 letter. I understand that during the
hearing, Mr. Bunting was unable to provide the Court, from his own knowledge, with an
explanation for the discrepancy in the number of documents. Mr. Bunting called Ms
Forbes during the hearing to inquire as to the discrepancy. Ms Forbes advised Mr.
Bunting that, to the best of her knowledge, any discrepancy in the number of documents
was attributable to the removal of duplicates. Mr. Bunting so advised the Court.

28.        Upon returning to the office following the motion, I am advised by Mr. Bunting that he made inquiries to ensure that his representation to the Court with respect to the discrepancy in documents was accurate. I am advised by Mr. Bunting that through his inquiries of Ms Boyco he learned that, after the list of the 279 Documents had been prepared, the documents were reviewed by Mr. Hong and Mr. Bisnaire and, following this review, some documents were removed as duplicates and others were removed because they were BCE documents. I am also advised by Mr. Bunting that on June 3, 2004 he wrote to the Court to advise that the discrepancy in the number of documents was attributable to the removal of duplicates and the BCE Documents.

**The Copies and The "Missing" Duplicates**

29.        I am advised by Nancy Boyco that we have conducted an exhaustive review comparing the copies of the Teleglobe Privileged Documents reviewed by the Interim Administrator against the original documents in our file to ensure that they are true duplicates. Ms Boyco advised that with the exception of a few variations, the copies reviewed by the Interim Administrator and subsequently produced to the IR are true copies of the originals in the sense that they contained no markings or handwriting on them (reverse or otherwise) that differed from the originals in the file. In total, 16 original documents were identified as varying from the copies reviewed by the Interim Administrator:

    (a)    six of the originals have either a "Faxed" stamp, a "Copy" stamp or a stamp indicating the time the fax was received that did not appear on the copy;

(b)    four of the originals have text or handwriting that was partly cut off in the copy;

(c)    two of the originals are comprised of a page that was inadvertently omitted from the copy;

(d)    one of the originals has a sticky note with handwriting on the bottom left hand corner and the text on that sticky note does not appear on the copy;

(e)    two of the originals have brief handwritten notes that do not appear on the copy; and

(f)    one of the originals has handwritten initials of Davies lawyers on the bottom right hand corner (for internal distribution) of the covering email and the first page of the attached memorandum has handwritten underlining that does not appear on the copy.

30.    In addition to the above variations, we identified a mark up of a memorandum that was not included with the copies reviewed by the Interim Administrator.

31.    Where there was a variation between a copy and an original, an additional copy of the original (including such minor variation) is being produced to both the IR and the Interim Administrator.  The marked up version of the memorandum referred to in paragraph 30 is also being produced to the IR and the Interim Administrator.

32.    In addition to the BCE Documents being removed from the 279 Documents, the Duplicates were removed because they were true duplicates. Unfortunately, following their removal, two of the three duplicates were misplaced.  I

- 11 -

have spoken with Nancy Boyco and am advised that these two misplaced documents were true duplicates in the sense that they contained no markings or handwriting on them (reverse or otherwise) that differ from the documents contained in the Teleglobe Privileged Documents. Ms Boyco is not able to discern how two of the three duplicates were misplaced. The missing duplicates are true copies of documents 50 and 143 on the Interim Administrator's list of Teleglobe Privileged Documents.

SWORN BEFORE ME at      )
the City of Toronto, in the   )
Province of Ontario, this    )
3rd day of November, 2004  )

_____
VINCENT A. MERCIER

Commissioner for taking
Affidavits, etc.

IN THE MATTER OF the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36

AND IN THE MATTER of a Plan of Compromise or Arrangement of Teleglobe Inc. and the other Applicants listed on Schedule "A"

Court File No: 02-CL-4528

*ONTARIO*
SUPERIOR COURT OF JUSTICE
COMMERCIAL LIST

Proceeding commenced at Toronto

AFFIDAVIT OF VINCENT A. MERCIER
(SWORN NOVEMBER 3, 2004)

DAVIES WARD PHILLIPS & VINEBERG LLP
1 FIRST CANADIAN PLACE
SUITE 4400
TORONTO, ON  M5X 1B1

Sandra A. Forbes (LSUC #33253P)
James D. Bunting (LSUC #48244K)
Tel:    416.367.7433
Fax:    416.863.0871

Solicitors for Davies Ward Phillips & Vineberg LLP

**EXHIBIT B**

**SUBMITTED SEPARATELY FOR *IN CAMERA* REVIEW**

**EXHIBIT C**

**SUBMITTED SEPARATELY FOR *IN CAMERA* REVIEW**

**TAB D**

| | |
|---|---|
| **From:** | **George J Wade** |
| **Sent:** | **12/20/2005 10:50:03 AM** |
| **To:** | **BCE-Teleglobe Case Team** |
| **CC:** | |
| **BCC:** | |
| **Subject:** | **Teleglobe v. BCE, C.A. No. 04-CV-1266** |

----- Forwarded by George J Wade/NY/NA/ShS on 12/20/2005 10:49 AM -----

**George J Wade** 12/20/2005 10:49 AM     To: cseitz@cblh.com  cc: Cochran@RLF.com, pmorgan@
varallo@rlf.com  Subject: Teleglobe v. BCE, C.A. No. 04-C'

Dear Special Master Seitz,

      I refer to Mr. Cochran's e-mail to you dated 5:46 p.m. yesterday and to the
Plaiuntiffs' Limited Motion for Reargument and Clarification (the "Motion"). I have
spoken with Mr. Cochran this morning and we are prepared to and do stipulate that
the Motion is premature and that withdrawal thereof is without prejudice to renewal.
We will, of course, be guided by your views on this matter.

          Respectfully,

          George J. Wade

          Of counsel to the defendants

| From: | George J Wade |
|---|---|
| Sent: | 12/20/2005 11:50:33 AM |
| To: | BCE-Teleglobe Case Team |
| CC: | |
| BCC: | |
| Subject: | RE: Teleglobe v. BCE, C.A. No. 04-CV-1266 |

----- Forwarded by George J Wade/NY/NA/ShS on 12/20/2005 11:49 AM -----

**"Cochran, C. Malcolm IV" <Cochran@RLF.com>**   To: "George J Wade" <GWade@Shearman.com>, cseitz@
12/20/2005 11:21 AM                                jamato@hahnhessen.com, "Varallo, Gregory" <varallo@RL

Dear Special Master Seitz:  To clarify, Mr. Wade advised me this morning
that he is prepared to so stipulate, but we did not reach a stipulation
on that point.  Rather, I indicated that he should advise you of his
position, and that we would be guided by your views regarding whether
the motion is premature.

In addition to the matters related in the motion for reargument, I would
note that since we filed the motion we have continued with our review of
documents produced by BCE on a computer disk, which was also received on
December 16.  As noted in a footnote in our motion, we reserved the
right to call such of those to your attention as might impact on our
arguments.  I reviewed moments ago the documents that our team here has
pulled from among those produced on the disk.  There a number that
relate directly to the matter of the dual representation of BCE and
Teleglobe by in house BCE lawyers.  We would wish to call these to your
attention, in the appropriate way, whether as part of a reargument on
that issue, or in other supplemental submissions.

Respectfully,

C. Malcolm Cochran

-----------------------------------------------------------
Richards, Layton and Finger, P.A. is not providing any advice with respect to any
federal tax issue in connection with this matter.

The information contained in this e-mail message is intended only for the use of the
individual or entity named above and may be privileged and/or confidential. If the
reader of this message is not the intended recipient, you are hereby notified that
any unauthorized dissemination, distribution or copying of this communication is
strictly prohibited by law. If you have received this communication in error, please
immediately notify us by return e-mail or telephone (302-651-7700) and destroy
the original message. Thank you.

-----------------------------------------------------------

From: George J Wade [mailto:GWade@Shearman.com]
Sent: Tuesday, December 20, 2005 10:49 AM
To: cseitz@cblh.com
Cc: Cochran, C. Malcolm IV; pmorgan@ycst.com; kgross@rmgglaw.com;
jamato@hahnhessen.com; Varallo, Gregory
Subject: Teleglobe v. BCE, C.A. No. 04-CV-1266

Dear Special Master Seitz,

    I refer to Mr. Cochran's e-mail to you dated 5:46 p.m. yesterday
and to the Plaintiffs' Limited Motion for Reargument and Clarification
(the "Motion"). I have spoken with Mr. Cochran this morning and we are
prepared to and do stipulate that the Motion is premature and that
withdrawal thereof is without prejudice to renewal. We will, of course,
be guided by your views on this matter.


Respectfully,


George J. Wade

Of counsel to the defendants

*********************************************************************

This communication is not intended to be used, and cannot be used, by
the recipient or any other person for the purpose of avoiding United
States federal tax penalties that may be imposed on the recipient or
such other person. In addition, if any United States federal tax advice
contained in this communication is used or referred to in promoting,
marketing or recommending any corporation, partnership or other entity,
investment plan, concept, structure or arrangement (which should be
assumed to be the case by a recipient or other person who is not our
client with respect to the subject matter of the communication), then
(i) such tax advice should be construed as written to support the
promotion or marketing of the transactions or matters addressed by the
advice and (ii) the recipient or other person should seek advice based
on the recipient or other person's particular circumstances from an
independent tax advisor. For further information, please go to
http://www.shearman.com/disclaimer/tax_disclosure.html

*********************************************************************

This transmittal and/or attachments may be a confidential
attorney-client communication or may otherwise be privileged or
confidential. If you are not the intended recipient, you are hereby
notified that you have received this transmittal in error; any review,
dissemination, distribution or copying of this transmittal is strictly
prohibited. If you have received this transmittal and/or attachments in
error, please notify us immediately by reply or by telephone (call us
collect at +1 212-848-8400) and immediately delete this message and all

its attachments.

Shearman & Sterling LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**************************************************************************
*

**TAB E**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x
In re:                                          :     Chapter 11
                                                :
TELEGLOBE COMMUNICATIONS                        :     Jointly Administered
CORPORATION, et al.,                            :     Case No. 02-11518 (MFW)
                                                :
                              Debtors.          :
------------------------------------------------------------x
                                                :
TELEGLOBE COMMUNICATIONS                        :
CORPORATION, et al.,                            :
                                                :
                              Plaintiffs,        :
                                                :
              v.                                :     C.A. No. 04-CV-1266 (SLR)
                                                :
BCE INC., et al.,                               :
                                                :
                              Defendants.        :
------------------------------------------------------------x

## BCE INC.' SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DOCUMENTS WITHHELD FOR PRIVILEGE

Counsel to the Defendants:

YOUNG CONAWAY                          SHEARMAN & STERLING LLP
STARGATT & TAYLOR, LLP

Pauline K. Morgan (No. 3650)           Stuart J. Baskin
The Brandywine Building                George J. Wade
1000 West Street, 17th Floor           Jaculin Aaron
P.O. Box 391                           Daniel Schimmel
Wilmington, DE 19899                   Paula M. Howell
(302) 571-6600                         599 Lexington Avenue
                                       New York, NY 10022

Dated: January 20, 2006

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ii

I.    INTRODUCTION ..............................................................................................1

II.   ARGUMENT.......................................................................................................2

      A.    There Is No Over-Designation of Documents Withheld As Privileged ...............2

      B.    There Was No Joint Representation of BCE and Teleglobe Regarding the
            Amendment of BCE's and Teleglobe's 2001 Annual Reports...............................4

            1.    Michel Lalande ....................................................................................4

            2.    Davies Ward .........................................................................................6

      C.    Mr. Lalande Did Not Jointly Represent BCE and Teleglobe With Respect To
            the Decision To Cease Funding Teleglobe in April of 2002...................................8

            1.    Mr. Lalande's work in connection with BCE's funding of Teleglobe ........8

            2.    Mr. Lalande's work in connection with Teleglobe's restructuring of
                  its debt.................................................................................................12

III.  CONCLUSION ...............................................................................................13

## TABLE OF AUTHORITIES

### CASES

Eureka Investment Inv. Corp. v. Chicago Title Ins. Co., 743 F.2d 932 (D.C. Cir. 1984).........5, 10

Zirn v. VLI Corp., Civ.A.No.9488, 1990 WL 119685 (Del. Ch. 1990)..........................................5

I.    **INTRODUCTION**

BCE has conducted a thorough review of the documents listed on its July 2004, February 2005, and September 2005 privilege logs for the time period November 1, 2001 through April 23, 2002, and has de-designated and produced to plaintiffs the documents no longer deemed to be privileged under the standards set forth in the Special Master's decision dated December 1, 2005 (the "Decision"). We believe that the documents with respect to which BCE continues to assert a privilege reflect work performed solely for BCE, not a joint representation of BCE and Teleglobe Inc. ("Teleglobe"), a Canadian company that is not a party to this lawsuit, and that those documents are properly withheld.

In their supplemental papers, plaintiffs make three principal arguments in support of their effort to obtain the production of BCE's privileged documents. First, plaintiffs illogically argue that the involvement of Michel Lalande in preparing Teleglobe's public securities filings regarding BCE's intention (but not obligation) to continue funding Teleglobe requires the production of all of BCE's privileged analyses regarding its decision to cease funding Teleglobe. It makes no sense, however, to argue that Mr. Lalande's role in the area of securities compliance establishes a joint representation with respect to all the legal work that BCE performed regarding its decision to cease funding. Equally illogical is plaintiffs' argument that, because Mr. Lalande performed legal work for BCE that related to Teleglobe, he must have been engaged in a joint representation. BCE had its own legal interest in analyzing Teleglobe's situation and BCE's options. The fact that Mr. Lalande conducted those analyses does not make his work a joint representation.

Second, plaintiffs incorrectly argue that Davies Ward jointly represented BCE and Teleglobe following April 8, 2002. Ms. Turcotte's deposition testimony and the affidavit of Mr. Mercier reflect that Teleglobe engaged Davies Ward on approximately April 10, 2002, and

virtually all the work that Davies Ward performed after that date consisted of assisting Teleglobe with various restructuring alternatives. Davies Ward's work for BCE wound-up after April 10, except for discrete matters that did not involve a joint representation.

Third, plaintiffs argue that BCE's recent production of documents from its privilege logs is somehow evidence that BCE continues to over-designate documents as privileged. BCE's recent review of the documents on its privilege logs constituted an honest effort to comply with the standards set forth in the Special Master's decisions following a thorough and principled review of BCE's prior privilege designations. Despite BCE's recent production of documents from its logs, plaintiffs have not identified any documents establishing a joint representation of BCE and Teleglobe regarding the decision to cease funding Teleglobe or the Debtors. Therefore, the premise underlying the Special Master's decision dated December 1, 2005, has not changed. (See Decision at 16.)

II.    **ARGUMENT**

A.    **There Is No Over-Designation of Documents Withheld As Privileged**

Plaintiffs argue that the fact that BCE has recently de-designated and produced a large number of documents shows that BCE is still over-designating documents as privileged. We suspect that plaintiffs would have had the same complaint if we had de-designated a fraction of that amount (although they would have phrased it differently). The fact of the matter is that over 300 of those de-designated documents had already been produced to plaintiffs under different bates numbers. (Declaration of Daniel Schimmel ("Schimmel Decl."), dated January 20, 2006, ¶4.) In addition, we understood the Special Master's December 9, 2005 decision to instruct BCE to produce to plaintiffs the cover pages of certain documents listed on the logs that had previously been designated as privileged in their entirety. (Supplemental Decision on Plaintiffs' Motion To Compel Defendants To Produce Documents Withheld on the Basis of

Privilege, dated December 9, 2005, at 3 n.4.) Therefore, following December 9, BCE produced those cover pages and redacted the underlying documents to the extent they are privileged. As a result, over 6,200 pages of documents were produced in redacted form, amounting to approximately 381 documents.

BCE also recently de-designated and produced to plaintiffs drafts of BCE's 2001 annual report, Bell Canada's 2001 annual report, and BCE's quarterly reports and proxy statements based upon our learning that those drafts may have been shared with BCE's auditors Deloitte & Touche ("Deloitte"), although the drafts themselves do not indicate that they were sent to Deloitte. Representatives of Deloitte were present in BCE's offices from approximately January 15, 2002 to the end of February 2002, in order to work on Deloitte's audit of BCE, and drafts of BCE's 2001 annual report were handed to the auditors at the time. (Schimmel Decl. ¶ 2.) Therefore, we have produced the drafts of the annual report identified on BCE's privilege logs that were created after January 15, 2002.[1] In addition, drafts of the April 2002 amendment of the annual report of BCE were shared with Deloitte, and we have de-designated and produced those documents from the privilege logs.

In their supplemental papers and Exhibit B (listing what plaintiffs characterize as "communications between non-lawyers"), plaintiffs identified 103 documents as examples of purported over-designations. The tables attached hereto as Appendices 1 and 2 address those documents and demonstrate that in each case there is a legitimate basis for the claim of privilege. Thus, contrary to plaintiffs' unfounded assertions, the recent de-designation of documents by BCE from its privilege logs is not evidence of any confusion regarding BCE's privilege position

---

[1]    BCE continues to withhold draft excerpts of the annual reports to the extent they were not shared with the auditors. BCE has also produced drafts in redacted form to the extent they contain handwritten comments reflecting the legal advice of counsel.

or an attempt at gamesmanship, but reflect a thorough and principled review of BCE's prior

privilege assertions.

B.    **There Was No Joint Representation of BCE and Teleglobe Regarding the Amendment of BCE's and Teleglobe's 2001 Annual Reports**

1.    **Michel Lalande**

The amendment of BCE's and Teleglobe's annual reports in April 2002 was done

in order to state the basis on which BCE had expressed its intent to provide further funding to

Teleglobe.[2] (See Turcotte Dep. at 226-27, 258, 267-68.) Some factual detail was added in the

amended annual reports, but the fundamental points set forth in the version that the boards of

Teleglobe and BCE approved on February 27, 2002 were not changed: both the initial and

amended versions indicated that (i) BCE was not obligated to fund any additional amounts into

Teleglobe; (ii) while there was no obligation to fund, BCE intended to provide further funding to

Teleglobe; and (iii) BCE's failure to provide such funding absent other sources of financing

would result in a material adverse effect on Teleglobe. (See Turcotte Dep. at 226-27; Morgan

Decl. Ex. A.)

Michel Lalande worked on the preparation of Teleglobe's AIF in late March and

April of 2002, and he also worked on the amendment of Teleglobe's Annual Report in April

2002. (See Lalande Dep. at 349, 497.)[3] The drafts of Teleglobe's annual reports and AIFs were

produced to plaintiffs long before the Special Master issued his December 1, 2005 decision, and

---

[2]    In their supplemental papers, plaintiffs discuss the amendment of BCE's and Teleglobe's Annual Information Form ("AIF") in April 2002, but the plaintiffs primarily refer to the amendment of BCE's and Teleglobe's Annual Reports. The Annual Reports and AIFs are separate documents. (See Turcotte Dep. at 220-22, 511-12.)

[3]    Because the AIF is a Canadian public securities document, it made sense for Mr. Lalande to spearhead the preparation of that document. (See Lalande Dep. at 225-27.) Even so, multiple drafts of Teleglobe's public securities filings had previously been exchanged with Teleglobe's legal and other staff in Reston, who reviewed them and provided comments. (See, e.g., Lalande Dep. at 349; Morgan Decl., Ex. B.)

BCE only withheld drafts of BCE's public securities documents, which are privileged under Delaware law. Zirn v. VLI Corp., Civ.A.No.9488, 1990 WL 119685, at *5-6 (Del. Ch. 1990).

The fact that Mr. Lalande worked on those draft public securities documents does not create a joint representation of BCE and Teleglobe. The preparation of BCE's and Teleglobe's respective public securities filings were not the same transaction or event, even if the subject matter of the filings overlapped to some extent. Thus, there was no joint representation.

Even if one were to accept plaintiffs' erroneous argument that Mr. Lalande jointly represented Teleglobe and BCE with respect to the amendment of the annual reports, it does not follow that "all documents that were prepared by or sent to Lalande that refer or relate to BCE's commitment or intention to fund, and its control of, Teleglobe – *whether or not in the context of the amendment of the AIF* – should be produced." (Plaintiffs' Opening Supplemental Brief In Support Of Motion To Compel Documents Wrongfully Withheld Or Redacted For Privilege ("Pl. Suppl. Br.") at 14 (emphasis added).) Mr. Lalande's work in the area of securities compliance with respect to providing an accurate statement of BCE's intentions with regard to continued funding of Teleglobe does not establish a joint representation with respect to BCE's internal analyses regarding its decision to cease funding Teleglobe. The latter was a separate matter as to which the legal advice was expected to remain confidential to BCE. (Turcotte Dep. at 60-61, 517; see BCE's letter to the Special Master dated November 15, 2005, at 4.) E.g. in Eureka Inv. Corp. v. Chicago Title Ins. Co., 743 F.2d 932, 936-37 (D.C. Cir. 1984), the court noted the general principle that, even if a joint representation exists with respect to a particular matter, it does not follow that the joint representation extends to another related matter where there is an expectation of privacy vis-à-vis the other matter.

Plaintiffs try to overcome this glaring defect in their argument by claiming that BCE has waived the attorney-client privilege as a result of Mr. Lalande's and Ms. Turcotte's deposition testimony that the annual reports were amended to add factual detail regarding the basis of BCE's intention to fund. (Pl. Suppl. Br. at 11-12.)  That argument is equally misguided because Mr. Lalande's and Ms. Turcotte's testimony did not disclose or communicate legal advice. (Turcotte Dep. at 226-27; Lalande Dep. at 378.)  Consequently, there was no waiver of any privilege.[4]

### 2.    Davies Ward

Davies Ward did not jointly represent Teleglobe and BCE.[5]  Davies Ward's representation of Teleglobe did not begin until approximately April 10, 2002, as described in the affidavit of Vincent A. Mercier of Davies Ward, sworn to on November 3, 2004, which was filed with the Ontario Superior Court. Mr. Mercier's affidavit, previously submitted to the Special Master as an attachment to BCE's December 7, 2005 letter, states that "[o]n or about April 10, it was decided that Davies would act as counsel for Teleglobe …." (Mercier Aff. ¶ 7.)  Ms. Turcotte, BCE's Chief Legal Officer, similarly testified that "Davies Ward was engaged starting, I believe, April 10th …." (Turcotte Dep. at 67-69.)

Contrary to plaintiffs' assertions, the Davies Ward documents listed on the privilege log in the period April 8-10 do not establish that Davies Ward was representing Teleglobe during that period.  Some of the documents reflect Davies Ward's analysis of the effect of certain events, including the restructuring of Teleglobe, on the credit facilities and debt

---

[4]    Plaintiffs claim that the documents listed in Exhibit C, which plaintiffs characterize as "documents prepared or received by Lalande that refer or relate to changes made to the Teleglobe and/or BCE AIF," were improperly withheld.  We address each of those documents in BCE's Appendix 2.

[5]    Davies Ward did not represent the Debtors because "the U.S. entities did not have a need for retaining Canadian counsel." (Brunette Dep. at 91.)

instruments of BCE and Bell Canada (see, e.g., entries 4085, 4354, 4608 on the September 2005 log) -- clearly an issue on which Davies Ward was advising BCE, not Teleglobe.  Other documents from that period reflect Davies Ward's review of draft Teleglobe filings (see, e.g., entries 3598, 3600, 4174, 4249 on the September 2005 log) and a draft engagement letter of Lazard (see, e.g., entries 2889, 3740 on the September 2005 log).  These were both issues in which BCE had its own legal interest, and Davies Ward's advising BCE on those issues is consistent with the notion that it was representing only BCE during that period.[6]

Nor was there any joint representation of Teleglobe and BCE by Davies Ward following April 10, 2002.  Virtually all of Davies Ward's work was performed for Teleglobe, with the mandate to "help Teleglobe and support them and assist them in looking at various alternatives at the time which may involve a number of alternative restructurings for Teleglobe." (Turcotte Dep. at 70.)  Davies Ward also performed discrete legal work for BCE principally to wind up work initiated prior to April 10.  Davies Ward completed a memorandum discussing the effect of certain events, including the restructuring of Teleglobe, on the credit facilities and debt instruments of BCE and Bell Canada, and submitted a memorandum discussing the fiduciary duties of BCE's board members.  (See, e.g., entries 160, 185, 708, 713 on the July 2004 log and entries 316, 3492, 3503, 4649 on the September 2005 log.)  Thus, the legal work performed by Davies Ward for BCE after April 10 was different from the legal work performed for Teleglobe

---

[6]    In their supplemental papers, plaintiffs claim that BCE improperly asserted the attorney-client privilege with respect to a Davies Ward memorandum (Entry 03598 on BCE's September 2005 log) on the ground that it was allegedly prepared on April 8, 2002. (Pl. Suppl. Br. at 14-15.)  That memorandum is in fact dated April 5, 2002, and BCE's log contains other versions of that memorandum, which are all dated April 5, 2002. (See entries 4174, 4175, 4249, and 4250 in the September 2005 log.)  The April 8 date in Entry 03598 refers to the date of BCE's internal email forwarding that memorandum from Mr. Ryan to Mr. Vanaseija.

Plaintiffs also speculate that Davies Ward must have been engaged by Teleglobe prior to April 9 based on an ambiguous statement in a document entitled "Issues and Activities List," but plaintiffs speak from both sides of their mouth because they argue that this document contains unreliable statements elsewhere. (Pl. Suppl. Br. at 11, 15 n.6.)  Ms. Turcotte also testified that the list was partially inaccurate. (Turcotte Dep. at 271; Lalande Dep. at 558-60.)

and did not involve a joint representation of BCE and Teleglobe.  As such, there is no basis for turning over privileged documents that were created by Davies Ward on behalf of BCE during this period.[7]

### C.     Mr. Lalande Did Not Jointly Represent BCE and Teleglobe With Respect To the Decision To Cease Funding Teleglobe in April of 2002

In their supplemental papers, plaintiffs also claim that Mr. Lalande jointly represented BCE and Teleglobe in connection with various transactions involving Teleglobe and that, therefore, he must have represented Teleglobe in connection with BCE's decision to cease its long-term funding in April of 2002.  (Pl. Suppl. Br. at 19-25.)  The documents plaintiffs cite in their supplemental papers do not establish a joint representation, let alone a joint representation regarding the decision to cease funding, and most of those documents were not newly produced to the plaintiffs but were available when plaintiffs submitted their prior briefs to the Special Master.  See, e.g., BCE-AD 0000667 (produced October 29, 2004); BCE-AD 0000672-73 (produced October 29, 2004); BCE-AD 0221232-33 (produced May 16, 2005); BCE-AD 0221264 (produced May 16, 2005); BCE-AD 0028285-86 (produced Feb. 23, 2005). BCE had separate representation on the decision to cease funding, and the communications between BCE and its counsel on that subject were expected to remain confidential.  Supra at 5. Accordingly, numerous documents on BCE's logs are solely among BCE and its outside counsel and involved BCE's interests.  (See, e.g., entries 256, 275, 494, 496, 497 on the July 2004 log and entries 368, 374, 381 on the September 2005 log.)

### 1.     Mr. Lalande's work in connection with BCE's funding of Teleglobe

---

[7]    Plaintiffs claim that the documents listed in Exhibit D, which plaintiffs characterize as "documents generated or received by Davies Ward referring or relating to April 2002 amendments to AIF, or BCE's commitment to fund (or control) Teleglobe," were improperly withheld.  We address each of those documents in BCE's Appendix 2.

The majority of the transactions and documents identified in plaintiffs' supplemental papers do not involve BCE's decision to cease funding Teleglobe, but earlier transactions.

First, plaintiffs erroneously argue that because Mr. Lalande reviewed Teleglobe's public securities documents, he jointly represented BCE and Teleglobe with respect to the decision to cease funding Teleglobe. This argument is addressed above at pages 1, 4-6.

Second, in October and November 2001, Mr. Lalande drafted BCE's board resolutions authorizing BCE to provide additional funding to Teleglobe and Teleglobe's board resolutions authorizing Teleglobe to accept such funding. (Pl. Suppl. Br. at 20.) Plaintiffs argue that such work created a joint representation, but the Special Master has rejected that argument. (Plaintiffs' opening brief to the Special Master, dated September 22, 2005, at 7-8; Decision at 15.) Mr. Lalande's work regarding the respective corporate governance requirements of BCE and Teleglobe does not establish a joint representation.

Third, plaintiffs claim that Mr. Lalande worked for both Teleglobe and BCE in connection with a proposed "tax loss monetization" transaction in which BCE would utilize certain tax losses of Teleglobe to offset some of BCE's taxable income. (Pl. Suppl. Br. at 20.) Those transactions are common in Canada because parent corporations and their subsidiaries do not file consolidated tax returns. That proposed transaction involved Canadian companies and matters of Canadian law, and none of the legal work was performed for the Debtors. Most of the legal work was performed for BCE. Teleglobe was expected to benefit economically from the transaction (in that BCE would use the proceeds of the transaction to fund Teleglobe), but the fact that BCE had Teleglobe's economic interest in mind in structuring the transaction does not

create a joint representation.[8] Mr. Lalande performed limited work for Teleglobe in connection

with that transaction (Lalande Dep. at 498), and such work was designed to protect Teleglobe's

economic interest and did not constitute a joint representation, let alone regarding BCE's

decision to cease funding. See Eureka Inv. Corp., 743 F.2d at 936-37.

Fourth, Mr. Lalande did not jointly represent BCE and Teleglobe in connection

with the preparation of a memorandum dated January 21, 2002, in which Mr. Lalande analysed

whether BCE could provide additional funding to Teleglobe while protecting that investment by

taking security on Teleglobe's assets. Mr. Lalande performed such work for BCE. (Lalande

Dep. at 324; Turcotte Dep. at 75-76.) The objectives of implementing a viable capital structure

for Teleglobe and providing liquidity to Teleglobe would have benefited BCE, which had

invested over U.S.$1B into Teleglobe and had an interest in its economic success; and, in any

event, Mr. Lalande's consideration of Teleglobe's economic interest does not make his legal

work a joint representation. BCE has produced that memorandum to the plaintiffs in this lawsuit

because the memorandum was shared with third parties at the time Mr. Lalande prepared it, not

because it involved a joint representation. Obviously, that memorandum was not created in

connection with the decision to cease funding in April of 2002.

Fifth, in late 2001 or early 2002, Mr. Lalande drafted a loan agreement and

promissory notes on behalf of BCE which contemplated that BCE would extend further funding

to Teleglobe. (Lalande Dep. at 327-29.) Mr. Lalande executed the loan agreement on behalf of

Teleglobe in his capacity as Assistant Corporate Secretary of Teleglobe. Even if his work

---

[8]    Plaintiffs have made an application to the Ontario Superior Court seeking the enforcement of a letter rogatory
against the firm of Osler Harcourt, which structured the proposed tax loss monetization transaction. (Affidavit
of Andrew Kingissepp (Sworn June 3, 2005), attached to Morgan Decl. as Ex. C.) Since August 2005, plaintiffs
have made no effort to proceed with their application or to obtain a ruling from the Ontario Superior Court on
the question of whether Osler represented both BCE and Teleglobe in connection with the tax loss monetization
transaction, or only represented BCE. (See entry 150 on the July 2004 log.)

constituted a joint representation with respect to that transaction, such work would not create a joint representation with respect to BCE's decision to cease funding.

Sixth, Mr. Lalande prepared a memorandum, dated December 3, 2001, regarding a proposed transaction in which Teleglobe would borrow additional funds from its lending syndicate and BCE. (Pl. Suppl. Br. at 21.) The redacted portion of the memorandum involved advice to BCE, and in any event the memorandum does not reflect a joint representation with respect to BCE's decision to cease funding. In their supplemental papers, plaintiffs argue that an email from Mr. Lalande to Mr. Ryan seeking advice as to whether BCE's and Teleglobe's board would have to approve that transaction establishes a joint representation, (Appendix, Volume II, Tab 33), but the fact that Mr. Lalande asked questions about corporate governance issues of BCE and Teleglobe does not establish a joint representation regarding the decision to cease funding. (Decision at 15-16.)

In their supplemental papers, plaintiffs have identified only two newly produced documents that allegedly reflect a joint representation with respect to BCE's decision to cease funding. On April 16, 2002, Mr. Dunphy sent an email to Mr. Lalande discussing BCE's exposure to liability in connection with a proposed short-term loan from BCE to Teleglobe after April 23, 2002. (Pl. Suppl. Br. at 21-22.) Mr. Dunphy is a partner of Stikeman Elliott, outside counsel for BCE, and his email reflected legal advice solely to BCE, not a joint representation. That document was inadvertently produced and BCE recalled it. BCE has consistently withheld communications with Stikeman Elliott regarding the same proposed transaction. (See, e.g., entries 155, 711 on the July 2004 log and entries 302, 304, 376, 2532, 2896, 2898, 2899 on the September 2005 log.)

The other document on which plaintiffs rely is an email dated April 15, 2002, in which Mr. Lalande forwarded to Mr. Cossette, a member of BCE's Law Department, a memorandum from Davies Ward. The memorandum analyzed whether a restructuring announcement or write down of assets would constitute a default under Teleglobe's credit facilities and indentures. That memorandum was prepared for Teleglobe, and the fact that Mr. Lalande received a copy of that memorandum in April of 2002 does not reflect that he jointly represented Teleglobe and BCE with respect to the decision to cease funding. Mr. Lalande received that memorandum for informational purposes because BCE had its own legal interest in understanding the circumstances under which its subsidiary could default on its credit facilities.[9]

### 2.    Mr. Lalande's work in connection with Teleglobe's restructuring of its debt

In their supplemental papers, plaintiffs argue that Mr. Lalande jointly represented BCE and Teleglobe in connection with the efforts to restructure Teleglobe's debt. (Pl. Suppl. Br. at 23-25.) First, plaintiffs argue that Mr. Lalande was "confused about who he was representing in his negotiations with the banks" regarding the extension of Teleglobe's Credit Facilities in 2002. (Id. at 23.)[10] There was no confusion with respect to Mr. Lalande's work. Mr. Lalande represented Teleglobe and BCE in the negotiations of the Credit Facilities, and he solely represented BCE in the negotiations of BCE's letter of support to the banks. (Lalande Dep. at 293-94.) In 2000 and 2001, BCE executed a letter of support addressed to the Bank of Montreal, as arranger under Teleglobe's credit facilities, in which BCE undertook to inject up to U.S.$1B

---

[9]    In their supplemental papers, plaintiffs argue that certain other miscellaneous documents on BCE's privilege logs reflect legal work performed for Teleglobe. (Pl. Suppl. Br. at 22.) For the reasons described in the chart attached hereto as Appendix 3, plaintiffs' analysis is incorrect.

[10]    Plaintiffs cite to one instance in Mr. Lalande's deposition testimony in which he expressed some confusion. (Pl. Suppl. Brief at 12.) Mr. Lalande subsequently corrected such confusion in the version of the transcript he signed. (Morgan Decl. Ex. D.)

into Teleglobe. In early 2002, BCE engaged in negotiations with the Bank of Montreal regarding the preparation of a new letter of support in which BCE would convert its intention to fund an additional C$1B into a binding obligation. Mr. Lalande represented BCE in those negotiations, and his work did not involve a joint representation of BCE and Teleglobe.[11] Mr. Lalande testified that the negotiations with the lenders ceased in mid March 2002, and the last draft of the letter of support was sent by the Bank of Montreal to BCE on March 22, 2002. (See id. at 604-05; BCE-AD 0150879 - 0150882.) In any event, Mr. Lalande's work in connection with that transaction was separate from BCE's analyses of whether to cease funding Teleglobe.

In their supplemental papers, plaintiffs also repeat their claim that Mr. Lalande must have advised Teleglobe in connection with the decision to cease funding because he communicated with Messrs. Monty, Sabia, or Skinner on that subject. (Pl. Suppl. Br. at 24; Plaintiffs' opening brief, dated September 22, 2005, at 9, 19.) The Special Master has rejected that argument. (Decision at 24-25.) Mr. Lalande's work in connection with BCE's decision to cease funding was performed for BCE, and plaintiffs have not identified a single document showing that Mr. Lalande jointly represented BCE and Teleglobe with respect to that decision. (Lalande Dep. at 496-497; Turcotte Dep. at 57-60.)[12]

## III.    CONCLUSION

For all of the foregoing reasons, and for those stated in BCE's briefs previously submitted to the Special Master and those filed with the District Court, BCE respectfully asks

---

[11]    BCE has produced to the plaintiffs in this lawsuit the documents reflecting Mr. Lalande's work in connection with the negotiation of the Credit Facilities (including all draft term sheets of the Credit Facilities), and BCE has withheld drafts of the letter of support, which reflect work performed solely for BCE. (See, e.g., entries 106, 316 on the July 2004 log and entries 15, 42, 719, 1112 on the September 2005 log.)

[12]    BCE has asserted the attorney-client privilege over Mr. Lalande's handwritten notes, which were not provided to the Special Master because they are outside of the relevant date range. BCE's brief submitted to the Special Master, dated October 7, 2005, at 18 n.5.

that the Special Master deny Plaintiffs' Motion to Compel Defendants to Produce Documents Withheld for Privilege, and to grant BCE all other and further relief to which BCE may show itself justly entitled.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*Pauline K. Morgan*

Pauline K. Morgan (No. 3650)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899
(302) 571-6600

-and-

SHEARMAN & STERLING LLP
Stuart J. Baskin
George J. Wade
Jaculin Aaron
Daniel Schimmel
Paula M. Howell
599 Lexington Avenue
New York, NY 10022
(212) 848-4000

Attorneys for Defendants

Dated:  January 20, 2006
        Wilmington, Delaware

**TAB 1**

## DOCUMENTS CITED BY PLAINTIFFS AT PP. 5-8 OF SUPPLEMENTAL BRIEF AS PURPORTED EXAMPLES OF PRIVILEGE OVER-DESIGNATIONS BY DEFENDANTS

### Plaintiffs' Privilege Over-Designation Claim

In their supplemental brief, plaintiffs list the following categories of documents as indicative of privilege over-designations by defendants:

A. Redacted attachments to e-mails between two or more non-lawyers, notwithstanding the fact that the communications do not appear to be seeking, providing or transmitting legal advice (Pl. Supp. Br. at 5-6)

B. Redacted BCE board minutes for the April 22, 2002 meeting of the BCE Board of Directors, at which the only lawyer present was Marc Ryan, an in-house attorney who acted as corporate secretary (Id. at 6)

C. Redacted e-mails sent to Jerome Huret, who plaintiffs claim was a third party consultant of Teleglobe (Id. at 6-7)

D. Documents sent by or to the Davies Ward law firm on April 8 or 9, 2002, when, plaintiffs claim, Davies Ward was representing both Teleglobe and BCE (Id. at 7)

E. Documents that do not appear to be seeking or rendering legal advice or reflect legal advice provided on behalf of Teleglobe (Id. at 7-8)

### Defendants' Bases For Privilege Assertions

As demonstrated in the table below, the documents cited by plaintiffs as purported evidence of privilege over-designations by defendants may be grouped into the following categories, all of which (save those that have already been produced) establish a legitimate basis for defendants' privilege assertions:

1. Redacted portions are either draft BCE/Bell Canada public securities filings or draft BCE press releases, whose cover e-mails have been produced pursuant to the December 9 ruling of the Special Master. (Supplemental Decision at 3 n.4.)

2. Redaction in Tab 61 consists of a legal presentation prepared by BCE's Legal Department to Jean Monty, BCE's Chief Executive Officer and Chairman of BCE's board of directors, reflecting legal advice of BCE's counsel regarding BCE's alternatives with respect to Teleglobe and related litigation risks. Redaction in Tab 62 consists of a checklist of issues relating to a BCE transaction prepared by BCE's counsel and reflecting legal input. Contrary to plaintiffs' assertions the redacted documents were not sent to third party consultants of Teleglobe. The three individuals to whom the presentation (Tab 61) was circulated were a team (Wes Scott, Jerome Huret and Pierre Lessard) retained by Jean Monty on behalf of BCE in mid-March and April 2002. As Mr. Monty testified, those three individuals were asked to examine Teleglobe's business plan and other non-Teleglobe issues in preparation for Mr. Monty's presentation to the BCE board in April 2002. [See Monty 4/27/04 Dep. at 18-20; Monty 10/25/05 Dep. at 564-65 (both

## DOCUMENTS CITED BY PLAINTIFFS AT PP. 5-8 OF SUPPLEMENTAL BRIEF AS PURPORTED EXAMPLES OF PRIVILEGE OVER-DESIGNATIONS BY DEFENDANTS

attached to the Morgan Decl. as Exhibit E); Lessard Dep. at 110-12.] While it is true that Mr. Huret had previously provided consulting services to Teleglobe, that was a separate engagement. (See Lessard Tr. at 97, noting "time difference" between current engagement and work previously performed by Huret). Thus, the fact that Tab 62 and Doc. No. 00568 on the Sept. 2005 Priv. Log (referenced on p.7, fn. 2 in Pl. Suppl. Br.) were sent to Mr. Huret does not waive the attorney-client privilege because he was part of a group advising BCE.

3. Redaction reflects legal work performed by Davies Ward on behalf of BCE prior to its representation of Teleglobe on April 10, 2002. See Defendants' Supplemental Brief at 7. Such work included an analysis of BCE's ability to recognize tax losses in connection with a restructuring of Teleglobe (Tab 41) and the provision of legal advice regarding modifications to statements contained in the MD&A sections of the 2001 Annual Reports of BCE and Teleglobe (Tabs 59 and 63.) As discussed in defendants' supplemental brief, and in defendants' Dec. 16, 2005 Letter to the Special Master, BCE had its own separate legal interest in reviewing the public securities documents of its subsidiaries.

4. Redacted portions reflect an attorney-client communication in which BCE's counsel is either providing legal advice to BCE on matters such as corporate governance, drafting contracts, and drafting BCE's risk factors sections in public securities filings (Tabs 36, 38, 40, 42, 71B) or seeking facts in order to render legal advice to BCE, such as on BCE's potential liability to Teleglobe lenders (Tabs 37, 42).

5. Redaction consists of draft legal analyses prepared by BCE counsel concerning outstanding legal proceedings against BCE. The fact that a final version of the letter may have been sent to BCE's auditors does not nullify the privileged status of the redacted documents, which were prepared and edited by counsel and reflect counsel's legal advice.

6. Redaction consists of communication between a staff member of BCE's Law Department and BCE's counsel for the purpose of helping BCE's counsel render legal advice to BCE.

## DOCUMENTS CITED BY PLAINTIFFS AT PP. 5-8 OF SUPPLEMENTAL BRIEF AS PURPORTED EXAMPLES OF PRIVILEGE OVER-DESIGNATIONS BY DEFENDANTS

| Tab Number (as referenced by Plaintiffs in Suppl. Brief) | Bates Number | Corresponding Priv Log Number (In SEPT 2005 Privilege Log) | Plaintiffs' Over-Designation Argument by Category | Defendants' Privilege Assertion by Category |
|---|---|---|---|---|
| 43 | BCE-AD 0549242-48 | 00838 | A | Previously produced on Jan. 19, 2006 |
| 45 | BCE-AD 0549335-48 | 00919 | A | 1 |
| 46 | BCE-AD 0549393-471 | 01002 | A | Previously produced on Dec. 22, 2005 |
| 47 | BCE-AD 0549627-33 | 01208 | A | 1 |
| 48 | BCE-AD 0550976-84 | 01766 | A | 1 |
| 64 | BCE-AD 0559430 | 00849 | A | Previously produced on Dec. 22, 2005<br><br>The document is outside the relevant time period. |
| 49 | BCE-AD 0551623-40 | 02182 | A | 1 |
| 53 | BCE-AD 0553082-140 | 02340 | A | 1 |
| 54 | BCE-AD 0553141-201 | 02341 | A | Previously produced on Dec. 22, 2005 |
| 57 | BCE-AD 0554262-69 | 03190 | A | 1 |

DOCUMENTS CITED BY PLAINTIFFS AT PP. 5-8 OF SUPPLEMENTAL
BRIEF AS PURPORTED EXAMPLES OF PRIVILEGE OVER-
DESIGNATIONS BY DEFENDANTS

| Tab Number (as referenced by Plaintiffs in Suppl. Brief) | Bates Number | Corresponding Priv Log Number (In SEPT 2005 Privilege Log) | Plaintiffs' Over-Designation Argument by Category | Defendants' Privilege Assertion by Category |
|---|---|---|---|---|
| 60 | BCE-AD 0556296-309 | 03846 | A | 1 |
| 50 | BCE-AD 0551641-52 | 02189 | A | Previously produced on Dec. 22, 2005 |
| 51 | BCE-AD 0551677-735 | 02191 | A | Previously produced on Dec. 22, 2005 |
| 66 | BCE-AD 0561880-998 | 01757 | A | Previously produced on Dec. 22, 2005 |
| 67 | BCE-AD 0562722-81 | 02327 | A | Previously produced on Jan. 19, 2006 |
| 68 | BCE-AD 0562782-842 | 02342 | A | 1 |
| 69 | BCE-AD 0563123-24 | 02655 | B | Previously produced on Dec. 22, 2005 |
| 61 | BCE-AD 0558629-44 | 04317 | C | 2 |
| 62 | BCE-AD 0558645-80 | 04321 | C | 2 |
| N/A | N/A | 00568 | C | 2 |
| 41 | BCE-AD 0548769-775 | 00311 | D | 3 |
| 63 | BCE-AD 0558837-40 | 04360 | D | 3 |

## DOCUMENTS CITED BY PLAINTIFFS AT PP. 5-8 OF SUPPLEMENTAL BRIEF AS PURPORTED EXAMPLES OF PRIVILEGE OVER-DESIGNATIONS BY DEFENDANTS

| Tab Number (as referenced by Plaintiffs in Suppl. Brief) | Bates Number | Corresponding Priv Log Number (In SEPT 2005 Privilege Log) | Plaintiffs' Over-Designation Argument by Category | Defendants' Privilege Assertion by Category |
|---|---|---|---|---|
| 59 | BCE-AD 0556097-101 | 03598 | D | 3 |
| 39 | BCE-AD 0548685-734 | 00303 | D | Previously produced on Jan. 19, 2006 |
| 36 | BCE-AD 0548334 | 00046 | E | 4 |
| 71 A (1st document) | BCE-AD 0565853-54 | 04313 | E | Previously produced on Dec. 22, 2005 |
| 71 B (2nd document) | BCE-AD 0566911-14 | 04211 | E | 4 |
| 38 | BCE-AD 0548439-41 | 00262 | E | 4 |
| 37 | BCE-AD 0548442-43 | 00265 | E | 4 |
| 40 | BCE-AD 0548763-64 | 00307 | E | 4 |
| 42 | BCE-AD 0549199-209 | 00753 | E | Does not relate to Teleglobe 4 |
| 44 | BCE-AD 0549285-303 | 00883 | E | This document was previously produced as BCE-AD 0546025-43 on Dec. 16, 2005. |
| 52 | BCE-AD 0552050-55 | 02217 and 02219 | E | 1 |

# DOCUMENTS CITED BY PLAINTIFFS AT PP. 5-8 OF SUPPLEMENTAL BRIEF AS PURPORTED EXAMPLES OF PRIVILEGE OVER-DESIGNATIONS BY DEFENDANTS

| Tab Number (as referenced by Plaintiffs in Suppl. Brief) | Bates Number | Corresponding Priv Log Number (In SEPT 2005 Privilege Log) | Plaintiffs' Over-Designation Argument by Category | Defendants' Privilege Assertion by Category |
|---|---|---|---|---|
| 55 | BCE-AD 0553940-55 | 02701 | E | 5 |
| 58 | BCE-AD 0555968-84 | 03534 | E | 5 |
| 56 | BCE-AD 0554225-39 | 02953 | E | 6 |

**TAB 2**