**EXHIBIT C**

Court File No. 05CV-286177PD2

### ONTARIO
### SUPERIOR COURT OF JUSTICE

BETWEEN:

THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF
TELEGLOBE COMMUNICATIONS CORPORATION

Applicant

– and –

ANDREW KINGISSEPP AND OSLER, HOSKIN & HARCOURT LLP

Respondents

### AFFIDAVIT OF ANDREW KINGISSEPP
(Sworn June 3, 2005)

I, Andrew Kingissepp, of the City of Toronto, in the Province of Ontario, barrister and solicitor, MAKE OATH AND SAY AS FOLLOWS:

1.      I am a respondent in this application and a tax partner of the respondent, Osler, Hoskin & Harcourt, LLP ("Osler") and as such have personal knowledge of the matters hereinafter deposed to except where stated to be based on information and belief and where so stated I verily believe the information to be true.

2.      This affidavit is filed in response to the applicant's application record. For the reasons set out below, the respondents take the position that the applicant has already received from the files of Osler any documents responsive to the application which are not privileged and no further documentary disclosure should therefore be made. Further, there is little point in my attending an examination on this matter as my knowledge of any of the matters in issue arises from privileged communications with representatives of Osler's client in the matter, BCE Inc. ("BCE"). Further, any information which I may have that is relevant to the proceedings in the United States is also likely available from BCE.

TOR_P2Z:1352153

- 2 -

**Osler's Retainer**

3.          I have reviewed the affidavit of Robert J. Malatak sworn March 17, 2005 and the exhibits attached thereto (the "Malatak Affidavit").

4.          Contrary to the allegations in paragraph 20 of the Malatak Affidavit, Osler did not act as legal counsel for Teleglobe Inc. ("Teleglobe") in relation to the request made to the Canada Customs and Revenue Agency (the "CCRA") for an advance tax ruling. Osler's client on this matter was BCE.

5.          I have reviewed Osler's file and conferred with the following lawyers at Osler who are also involved on this retainer: Steve Suarez, Rupert Chartrand and Shelley Obal. Based upon that review and those communications, I can confirm that Osler's client in this matter was BCE. At no time during Osler's work on this matter did we receive instructions from Teleglobe, nor did we provide any legal advice directly to Teleglobe. Teleglobe did not provide Osler with a retainer, did not provide any payment to Osler for work done and did not correspond with Osler on this matter.

6.          The legal work performed on this retainer was directed at obtaining an advance tax ruling from the CCRA which would allow BCE to implement a transaction whereby it could utilize Teleglobe's tax losses (the "Transaction"). The purpose of Osler's advice on the Transaction was therefore to benefit BCE, although the advance tax ruling, if granted, would have confirmed that there would be no unintended income tax consequences for Teleglobe should the Transaction proceed.

7.          The request for the advance tax ruling set out in Osler's letter to the CCRA dated March 7, 2002, a copy of which appears at Exhibit "B" to the Malatak Affidavit (the "Ruling Request"), referenced both BCE and Teleglobe as Osler's clients because, as a technical matter, a ruling was being sought from the CCRA which would speak to certain income tax consequences for Teleglobe as well as those for BCE. However, Osler had no interaction with Teleglobe in the course of our work for BCE on this matter, and such interaction would not have been necessary (if ever) until the matter had proceeded to a point much closer to the CCRA actually granting an advance tax ruling, which never occurred.

- 3 -

8.      The Ruling Request indicates that on February 7, 2002 an authorization in favour of Osler from both BCE and Teleglobe was delivered to the CCRA at a meeting held to discuss the advance tax ruling. However, this consent, which BCE appears to have obtained from Teleglobe and delivered to the CCRA, was simply a procedural requirement to initiating discussions with the CCRA on the potential for obtaining an advance ruling, and did not result in any interaction between Osler and Teleglobe. To the extent that any interaction with Teleglobe occurred, this took place between BCE and Teleglobe.

**Production of Documents**

9.      I understand that, at the request of BCE, Osler has provided to BCE and its U.S. counsel three categories of documents from the Osler file on this matter:

    (a)   correspondence and documentary records of communications between Osler and third parties including the CCRA;

    (b)   documents provided to Osler; and

    (c)   documents reflecting communications from BCE to Osler.

10.     It is my understanding that BCE's U.S. counsel has produced to the U.S. counsel for the applicant in the U.S. proceedings, non-privileged documents from the Osler file as referenced in paragraph 9 hereof. Attached hereto and marked as Exhibit "A" hereto are copies of correspondence between Randy Pepper, the litigation partner at Osler involved in responding to this application, and Marvin Huberman, Canadian counsel for the applicant, referencing the U.S. documentary disclosure.

11.     The balance of the Osler file on this matter consists of lawyer work product including drafts of the Ruling Request, records of our privileged communications with representatives of BCE, memoranda and internal correspondence between Osler lawyers and legal research. All of these documents were prepared for the purpose of providing or documenting the provision of legal advice to BCE and are therefore privileged.

**Proposed Examination**

12.     Regarding my proposed examination, I fail to see what purpose would be served in my attending such an examination. In this regard, it is not apparent from the Malatak

TOR_P2E_1356n33

-4-

Affidavit that the Transaction is in issue in the U.S. proceedings. Indeed, the Transaction did not occur. Further, paragraph 20 of the Malatak Affidavit states as follows:

> "Thus, Osler is likely to have documents and information bearing on BCE's financial support of, and financial commitment to fund, the Debtors and their operations. Osler is also likely to have information concerning the Debtors' solvency or insolvency"

To the extent that I have, or Osler has, any documents or information touching these issues, the documents and information came from representatives of BCE for the purpose of providing legal advice on the Transaction and would be privileged. Obviously, BCE is the more appropriate source for this information and documentation. In the circumstances, I would have no ability to answer any questions related to these issues without breaching the solicitor-client privilege attaching to these communications.

SWORN BEFORE ME at the City of
Toronto on June 3, 2005

_____
Commissioner for Taking Affidavits
Neil Paris

_____
Andrew Kingissepp

YOR_PTE101602V.2

# ALL EXHIBITS REDACTED

**EXHIBIT D**

# SHEARMAN & STERLING LLP

FAX: 212-848-7179
TELEX: 667290 WUI
www.shearman.com

599 LEXINGTON AVENUE
NEW YORK, N.Y. 10022-6069
212 848-4000

ABU DHABI
BEIJING
BRUSSELS
DÜSSELDORF
FRANKFURT
HONG KONG
LONDON
MANNHEIM
MENLO PARK
MUNICH
NEW YORK
PARIS
ROME
SAN FRANCISCO
SÃO PAULO
SINGAPORE
TOKYO
TORONTO
WASHINGTON, D.C.

WRITER'S DIRECT NUMBER:

212-848-8548

WRITER'S EMAIL ADDRESS:
marianna.orenshteyn@shearman.com

September 12, 2005

<u>Via Federal Express</u>

John P. Amato, Esq.
Hahn & Hessen LLP
488 Madison Avenue
New York, NY 10022

<u>Teleglobe Communications Corporation, et al. v. BCE Inc., et al.</u>

Dear Mr. Amato:

Enclosed please find Michel Lalande's original transcripts and original signed and notarized acknowledgement and errata sheets for his depositions dated August 3, 2005 and August 4, 2005. A copy of his signed and notarized acknowledgement and errata sheets is also being sent to the court reporter. Please feel free to contact me if you have any questions.

Sincerely,

Marianna Orenshteyn
Case Manager

Enclosures

cc: Deidre Yablen (enclosing acknowledgement and errata)

Shearman & Sterling LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

NYDOCS04/438720.1

ERRATA SHEET(S)
DEPONENT: Michel Lalande
DATE OF DEPOSITION: August 3 and 4, 2005

## ACKNOWLEDGEMENT OF DEPONENT

I, Michel Lalande, do hereby certify that I have read the foregoing pages, 1-311 and 317-619, and that the same is a correct transcription of the answers given by me to the questions therein propounded, except for the corrections or changes in form or substance noted in the attached errata sheets.

_____
Michel Lalande

_____
Date: August 30, 2005

Subscribed and sworn to before me this ___30th___ day of ___August___, 2005

_____
Notary Public
Commissioner of Oaths

CAROLE AUDETTE
#85 800

ERRATA SHEET(S)
Michel Lalande, Deposed on August 3 & 4, 2005

| PAGE | LINE | CHANGE | REASON |
|------|------|--------|--------|
| 14 | 18 | Replace "Martine" with "Martin" | |
| 26 | 15 | Replace "B-U-O-N-A-M-I-N-E" with "B-U-O-N-A-M-I-C-I" | |
| 32 | 21 | Replace "Lerner's" with "Lerners" | |
| 34 | 6, 12, 14 | Replace "Lerner's" with "Lerners" | |
| 59 | 13 | Replace "John" with "Jacques" | |
| 60 | 19 | Replace "May of 2000" with "August of 2000" | |
| 62 | 6 | Replace "upside" with "offside" | |
| 63 | 4 | Replace "covenant" with "covenants" | |
| 63 | 3 | Add a comma after "first quarter" and another one after "anticipated" | |
| 65 | 4 | Replace "of" with "regarding" | |
| 66 | 14 | Insert "U.S." following "1.5 billion" | |
| 66 | 15 | Replace "U.S. In" with "and in" | |
| 66 | 16 | Replace "bum" with "bond" | |
| 67 | 23 | Insert "millions" after "750" and "billion" after "1.5" | |
| 70 | 18 | Insert "a" after "make" | |
| 73 | 14 | Delete "the" and replace "discussion" with "discussions" | |
| 76 | 3 | Delete the second "that" | |
| 76 | 15 | Replace "Page" with "Pages" | |
| 76 | 21 | Replace "page" with "pages" | |
| 78 | 21 | Replace "Vinberg" with "Vineberg" | |
| 79 | 8 | Add "a" after "agree to" | |
| 79 | 12 | add "million" after "$400" | |
| 82 | 3 | Add "a" before "reduction" and "the" after "of" | |
| 91 | 23, 24 | Transcript does not make sense | |
| 94 | 13-15 | Replace with "I don't remember specifically, but the offer letter is dated July 28, 2000" | |
| 96 | 9 | Replace with "I don't recall, but the offer letter is dated July 28, 2000." | |

1

ERRATA SHEET(S)
Michel Lalande, Deposed on August 3 & 4, 2005

| PAGE | LINE | CHANGE | REASON |
|---|---|---|---|
| 101 | 3 | Replace "I would seeing my role was" with "I was seeing my role as" | |
| 102 | 5 | "Will" should be replaced by "would" | |
| 104 | 23 | Replace "Kierans" with "Kieran", twice | |
| 105 | 1 | Replace "a resident" with "residents" | |
| 105 | 4 | Replace "Authority" with "Authorities" | |
| 105 | 8 | Replace "Authority" with "Authorities" | |
| 105 | 13 | Replace "Authority" with "Authorities" | |
| 106 | 22 | Replace "accounts" with "amounts" | |
| 110 | 21 | Replace "we" with "was" | |
| 111 | 10 | Replace "Kierans" with "Kieran" | |
| 114 | 21 | Replace "Kierans" with "Kieran" | |
| 115 | 8 | Replace "Karen" with "Kieran" | |
| 115 | 18 | Replace "Authority" with "Authorities" | |
| 115 | 20 | Replace "Authority" with "Authorities" | |
| 116 | 4 | Insert "that" before "was" | |
| 116 | 11 | Replace "process" with "processes" | |
| 116 | 12 | Replace "this" with "its" | |
| 119 | 23 | Replace "the" with "a" | |
| 120 | 11 | Insert "Holdings" after "Teleglobe" | |
| 122 | 14 | Replace "was" with "were" | |
| 123 | 5 | Replace "unefficient" with "inefficient" Replace "boorings" with "borrowings" | |
| 129 | 12 | Add "can" after "attorney" | |
| 131 | 12 | Replace "Authority" with "Authorities" | |
| 139 | 13 | Replace "Teleglobe Communication Group" with "Look Communications" | |
| 139 | 19 | Replace "ventures" with "Ventures" | |
| 139 | 21-23 | Transcript does not make sense | |
| 142 | 20 | Replace "Authority" with "Authorities" | |
| 142 | 25 | Delete "or stuff" | |
| 148 | 16 | Replace "June" with "John" | |

2

ERRATA SHEET(S)
Michel Lalande, Deposed on August 3 & 4, 2005

| PAGE | LINE | CHANGE | REASON |
|---|---|---|---|
| 149 | 10 | Replace "need" with "needed" | |
| 156 | 12 | Replace "transaction" with "transactions" | |
| 158 | 13 | Replace "in" with "on" | |
| 164 | 18, 22 | Replace "secretariate" with "Secretariat" | |
| 170 | 8 | Delete "Those" | |
| 181 | 22 | Replace "by" with "to" | |
| 184 | 4 | Replace "hole" with "whole" | |
| 188 | 10 | "Exceed" is incorrect | |
| 194 | 9 | Add "?" at the end of the sentence and remove the " | |
| 195 | 11 | Delete the comma | |
| 201 | 22 | Replace "also" with "always" | |
| 205 | 2 | Replace the second period with a semi colon | |
| 205 | 6 | Replace "their" with "other" | |
| 221 | 9 | Replace "Fiancial" with "Financial" | |
| 221 | 20 | Replace "it's" with "its" | |
| 222 | 23 | Replace "in" with a comma | |
| 223 | 23 | Replace "will" with "would" | |
| 226 | 20 | Replace "drafts" with "draft" | |
| 230 | 11 | Replace "germinating" with "preparing" | |
| 230 | 25 | Replace "ND&A" with "MD&A" | |
| 231 | 4 | Add "and" after "Discussion" | |
| 233 | 22 | Delete comma | |
| 234 | 21 | Add a period after "Inc" | |
| 237 | 9 | Insert "had" after "disclosed and" | |
| 237 | 12 | Delete "yet" | |
| 264 | 6, 7 | Put quotation marks around "to be discussed" | |
| 265 | 20 | Transcript does not make sense | |
| 277 | 13 | Replace "will" with "would" | |
| 278 | 25 | Add a comma after "Pickford" | |

3

ERRATA SHEET(S)
Michel Lalande, Deposed on August 3 & 4, 2005

| PAGE | LINE | CORRECTION | REASON |
|---|---|---|---|
| 279 | 13 | Delete "Aaron" or replace with correct name | |
| 284 | 23 | Transcript does not make sense | |
| 285 | 8 | Replace "as" with "a" | |
| 286 | 19 | Replace "where" with "whether" | |
| 291 | 22 | Replace "Roark" with "Rourke" | |
| 291 | 23 | Replace "announcing" with "pronouncing" | |
| 294 | 4 | Delete "BCE" | |
| 301 | 20 | Replace "2001" with "2002" | |
| 321 | 24 | Replace "word" with "term" | |
| 327 | 5, 16 | Replace "discussion" with "discussions" | |
| 328 | 3 | Replace "2002" with "2001" | |
| 344 | 19 | Insert "and" after "discussion" | |
| 349 | 3 | Delete "me" | |
| 353 | 22 | Replace "proceedings" with "procedure" | |
| 356 | 14 | Insert "at" after "approved" and "as" after "time" | |
| 359 | 2 | Replace "has" with "had" | |
| 361 | 17 | Replace "the" with "a" | |
| 364 | 10 | Replace "is" with "and" | |
| 373 | 3 – 5 | Replace lines 3 – 5 with "I was acting in BCE capacity." | |
| 393 | 12 | Replace "Riccuto" with "Ricciuto" | |
| 396 | 24 | Replace "adding" with "added" | |
| 401 | 16 | Add "at" after "guess" | |
| 403 | 6 | Add "the" after "to" | |
| 403 | 16 | Replace "that" with "this" | |
| 408 | 9 | Delete quotation marks before "some" and replace "some" with "something" | |
| 408 | 10 | Delete quotation marks | |
| 411 | 14 | Delete "intent" | |
| 423 | 21 | Replace "its" with "it's" | |

4

ERRATA SHEET(S)
Michel Lalande, Deposed on August 3 & 4, 2005

| PAGE | LINE | CHANGE | REASON |
|---|---|---|---|
| 423 | 24 | Replace "Issues" with "Issuer" | |
| 425 | 19 | Replace "BCE/Teleglobe" with "BCE Teleglobe" | |
| 425 | 20 | Replace "BCE/Teleglobe" with "BCE Teleglobe" | |
| 426 | 7 | Replace "BCE/Teleglobe" with BCE Teleglobe" | |
| 428 | 7 | Replace "BCE/Teleglobe" with BCE Teleglobe" | |
| 428 | 13 | Replace "BCE/Teleglobe" with BCE Teleglobe" | |
| 429 | 13 | Delete "maybe" | |
| 429 | 19 | Replace "BCE/Teleglobe" with "BCE Teleglobe" | |
| 430 | 24 | Delete "?" | |
| 431 | 14, 22 | Replace "Olser" with "Osler" | |
| 431 | 15, 18, 20 & 22 | Replace "Olser's" with "Oslers" | |
| 432 | 2, 17 | Replace "Olser" with Osler" | |
| 435 | 17 | Add "a" after "implementing" | |
| 435 | 24 | Replace "the Olser's" with "Oslers" | |
| 440 | 2 | Replace "Olser" with "Oslers" | |
| 444 | 7 | Replace "Olser's" with "Oslers" | |
| 445 | 2 | Replace "regarding to prepare" with "regard to preparing" | |
| 447 | 24 | Replace "knew" with "know" | |
| 448 | 11 | Replace "2001" with "2002" | |
| 449 | 6 | Replace "were'" with "was" | |
| 449 | 16 | Add semi-colon after "person" | |
| 455 | 11 | Replace "was" with "were" | |
| 460 | 11 | Replace "discussion" with "discussions" | |
| 460 | 12 | Replace "feasibility" with "feasible" | |
| 461 | 13 | Replace "and" with "on" | |
| 462 | 10 | Replace "whatever" with "whether" | |

5

ERRATA SHEET(S)
Michel Lalande, Deposed on August 3 & 4, 2005

| PAGE | LINE | CHANGE | REASON |
|------|------|--------|--------|
| 464 | 19 | Delete "them" | |
| 472 | 16 | Delete "equity" | |
| 473 | 17 | Replace "and" with "in" | |
| 476 | 12 | Replace "complaints" with "comments" | |
| 477 | 18 | Replace "they" with "there" | |
| 479 | 6 | Insert "been" between "have" and "part" | |
| 480 | 5 | Replace "Teleglobe finding" with "BCE funding" | |
| 480 | 23 | Insert "?" at the end of the sentence | |
| 496 | 14 | Replace "2001" with "2002" | |
| 497 | 2 | Add "and the Vartec transaction" after "earlier" | |
| 497 | 12 | Add "for" after "was" | |
| 497 | 13 | Add "and the Vartec transaction" after "documents" | |
| 511 | 11 | Insert "from" after "know" | |
| 530 | 19 | Replace "was" with "were" | |
| 530 | 22 | Replace "the" with "a" | |
| 567 | 11 | Insert "frame" after "time" | |
| 567 | 24 | Replace "documentations" with "documentation" | |
| 567 | 25 | Replace "want" with "wanted" | |
| 581 | 16 | Replace "handwriting" with "handwritings" | |
| 582 | 9 | Add an "s" to "link" | |
| 594 | 2 | Replace "Thorn" with "Thom" | |
| 595 | 17 | Replace "to send" with "who sends" | |
| 596 | 2 | Replace "leading" with "lead-in" | |
| 600 | 5 | Replace "banker's" with "bankers'" | |
| 603 | 17 | Replace "Having" with "Had I" | |
| 606 | 22 | Replace "0.7521.0" with "0.75 to 1.0" | |
| 612 | 13 | Replace "Steven" with "Stephen" | |
| 615 | 6 | Replace "constraining" with "considering" | |

6

ERRATA SHEET(S)
Michel Lalande, Deposed on August 3 & 4, 2005

| PAGE | LINE # | CHANGE | REASON |
|------|--------|--------|--------|
|      |        |        |        |
|      |        |        |        |

7

**EXHIBIT E**

4/27/2004 Monty, Jean

```
 1    IN THE UNITED STATES BANKRUPTCY COURT
 2         FOR THE DISTRICT OF DELAWARE
 3    ----------------------------------------- x
 4    In re:
 5    TELEGLOBE COMMUNICATION
      CORPORATION,
 6    a Delaware Corporation, et al.,
                            Debtors.
 7
 8    Chapter 11
 9    Case No. 02-11518 (MFW)
      (Jointly Administered)
10
      Re: Docket Nos. 2169 and 2182
11
      ----------------------------------------- x
12
13         DEPOSITION of JEAN MONTY, taken pursuant to
14    Bankruptcy Rule 2004 agreement, held at the
15    offices of Hahn & Hessen, LLP, 488 Madison
16    Avenue, New York, New York, on April 27, 2004, at
17    9:35 a.m., before Fran Insley, a Notary Public of
18    the State of New York.
19
20
21
22
      **********************************************
23         ELLEN GRAUER COURT REPORTING CO.
           133 East 58th Street, Suite 1201
24             New York, New York 10022
                    212-750-6434
25              Reference No. 73541
```

4/27/2004 Monty, Jean

```
 1         S T I P U L A T I O N S
 2
 3         IT IS HEREBY STIPULATED AND AGREED by and
 4    between the attorneys for the respective parties
 5    herein, that filing, sealing and certification,
 6    and the same are, hereby waived.
 7
 8         IT IS FURTHER STIPULATED AND AGREED that
 9    all objections except as to the form of the
10    question, shall be reserved to the time of the
11    trial.
12
13         IT IS FURTHER STIPULATED AND AGREED that
14    the within deposition may be signed and sworn to
15    by an officer authorized to administer an oath,
16    with the same force and effect as if signed and
17    sworn to before the Court.
18
19
20              xxxxx
21
22
23
24
25
```

                                                    3

4/27/2004 Monty, Jean

```
 1    A P P E A R A N C E S:
 2         HAHN & HESSEN, LLP
              Attorneys for the Official Counsel
 3            of Unsecured Creditors and
              TELEGLOBE COMMUNICATIONS
 4            CORPORATION, et al.
              488 Madison Avenue
 5            New York, New York
 6         BY:  JOHN AMATO, ESQ.
                   -and-
 7              ZACHARY NEWMAN, ESQ.
                   -and-
 8              GAIL RODBERG, ESQ.
 9
10
11         SHEARMAN & STERLING, LLP
              Attorneys for BCE, INC. and
12            the Witness
              599 Lexington Avenue
13            New York, New York  10022
14         BY:  GEORGE J. WADE, ESQ.
                   -and-
15              DANIEL SCHIMMEL, ESQ.
16
17         MAYER BROWN ROWE & MAW, ESQS.
              Attorneys for BANK OF MONTREAL
18            as Agent
              190 South LaSalle Street
19            Chicago, Illinois  60603-3441
20         BY:  ROBERT F. FINKE, ESQ.
21
22    ALSO PRESENT:
23         MICHAEL LALANDE
              Bell Canada Enterprises
24
                    xxxxx
25
```

                                                    2

4/27/2004 Monty, Jean

```
 1    J E A N    M O N T Y,
 2         having been first duly sworn before a
 3         Notary Public of the State of New York,
 4         was examined and testified as follows:
 5
 6    EXAMINATION BY
 7    MR. AMATO:
 8         Q.   Good morning, Mr. Monty.  I want to
 9    thank you for coming.
10         My name is John Amato, as I
11    previously introduced myself to you.  I want
12    to let you know I represent or I should say my
13    firm, Hahn & Hessen, LLP, represents the
14    Official Committee of Unsecured Creditors of
15    Teleglobe Communications Corporation and ten
16    other affiliates or subsidiaries of Teleglobe
17    Communications Corporation in connection with
18    their bankruptcy filing in the Bankruptcy
19    Court of the District of Delaware.
20         I want to thank you again for
21    coming this morning.  I see you are
22    represented by counsel.
23         Mr. Monty, I will be asking you
24    some questions here today.  If you don't
25    understand a question, please ask me to
```

                                                    4

4/27/2004 Monty, Jean

1    operations executive.
2           In February --
3           Q.    Let me ask you this before you go
4    into February.  Were those two individuals
5    Michael Sabia and Patrick Pichette?
6           A.    No, it was Charles Childers and
7    Patrick Pichette, Charles Childers being the
8    president, the appointed president at the end
9    of January and Patrick Pichette the executive
10   in charge of operations and finance.
11          Then in February I said to these
12   executives, "We might as well proceed with a
13   reassessment of our business plan as well."
14   Even though it's very early in the year, the
15   market conditions were changing rapidly and
16   they started the process, obviously, and
17   diligently and aggressively.
18          At the end of that process, which
19   really came to the middle of March or so,
20   sometime in March, I forget the exact date,
21   the story was not very good.  Market
22   conditions had changed drastically, and the
23   environment was changing for all sorts of
24   reasons.
25          At that point, sometime in the

17

4/27/2004 Monty, Jean

1    second half of March, I said, "This is going
2    to be a hard decision for me."  I appointed
3    three executives that were not in the stream
4    of responsibility for Teleglobe or either
5    operating into Teleglobe or any of the
6    activity related to it and that I know for a
7    long time.  Two of them had actually retired
8    from our group of companies.  One of them was
9    still in the company but had worked with me
10   for a long time, was in our financial function
11   at BCE.
12          I said to these three individuals,
13   "Teleglobe is looking at its activities and
14   its way forward, its business plan.  Our
15   planning staff is looking at that under
16   Michael Sabia at BCE.  I trust you guys as
17   friends and long-time executives that have
18   worked with me.  You give me your view with
19   the data these people produce so I have a
20   totally independent sense of what decision I
21   will be facing and recommending to the board."
22   So that was the process.
23          Q.    Who were those three people?
24          A.    Wesley Scott, Pierre Lessard.
25          Q.    Who is with you today?

18

4/27/2004 Monty, Jean

1           A.    Who is with me today after his
2    retirement, and Jerome H-U-R-E-T is the first
3    name.
4           Q.    May I stop you here.  You said
5    there was a planning staff at BCE, and that
6    planning staff was headed up by Michael Sabia
7    at this time?
8           A.    Yes, Michael was the president and
9    COO of BCE.
10          Q.    When did you first learn that
11   Michael Sabia on behalf of the planning staff
12   at BCE was looking into the way going forward
13   concerning Teleglobe?
14          A.    Why do you say Michael just
15   learned?  Why I did just learn Michael was
16   looking --
17          Q.    When did you first learn that
18   Michael was looking into that?
19          A.    I didn't learn it.  I told him.
20   That was part of his responsibilities, not
21   only for Teleglobe, it was part of his
22   responsibilities for all of the companies in
23   the group.  So his responsibilities were as
24   president, the planning function of the whole
25   holding company and its activities through its

19

4/27/2004 Monty, Jean

1    subsidiaries.
2           Q.    When did you tell him to become
3    involved with analyzing --
4           A.    He was involved all along, and the
5    fact we were reassessing the business plan, he
6    was automatically involved because that were
7    his ongoing responsibilities.
8           Q.    Was that even before the
9    acquisition of Teleglobe's stock took place?
10          A.    The process, the planning process
11   was always -- we had a planning process.  What
12   I'm trying to remember is whether Michael --
13   you see, Michael was the president of Bell
14   Canada International before he became
15   president of BCE and I believe he had -- I don't
16   remember the exact date, but I think he had
17   been at that time about two years as president
18   of BCE, but from day one as president of BCE
19   he was in charge of planning activities.  So
20   whether that corresponded to our acquisition
21   of Teleglobe or not, I frankly do not remember
22   the exact timing of these two events, him
23   becoming president of BCP and our acquisition
24   of Teleglobe.
25          Going forward, from what I have

20

```
1    IN THE UNITED STATES DISTRICT COURT
     IN AND FOR THE DISTRICT OF DELAWARE
2    ---------------------------------X
3    In re:
4    TELEGLOBE COMMUNICATIONS CORPORATION,
5    et al.,
6              Debtors.
7    ---------------------------------X
8    TELEGLOBE COMMUNICATIONS CORPORATION,
9    et al.,
10         - against -
11   BCE INC., MICHAEL T. BOYCHUK, MARC
     A. BOUCHARD, SERGE FORTIN, TERENCE J.
12   JARMAN, STEWARD VERG, JEAN C. MONTY,
     RICHARD J. CURRIE, THOMAS KIERANS,
13   STEPHEN P. SKINNER AND H. ARNOLD
     STEINBERG,
14              Defendants.
15   ---------------------------------X
16         599 Lexington Avenue
           New York, New York
17
           October 25, 2005
18         9:10 a.m.
19
20         Continued Videotaped
     Deposition of JEAN MONTY, taken pursuant to
21   Notice, before Rita Persichetty, a Notary
     Public of the State of New York.
22
23   ELLEN GRAUER COURT REPORTING, CO. LLC
        126 East 56th Street, Fifth Floor
24         New York, New York 10022
              212-750-6434
25            REF: 78898
```

316

```
1    A P P E A R A N C E S:
2
3    SHEARMAN & STERLING LLP
4    Attorneys for Defendants
5        599 Lexington Avenue
6        New York, New York  10022
7    BY:  JACULIN AARON, ESQ.
8        - and -
9        KIRSTEN ROBBINS, ESQ.
10
11   ALSO PRESENT:  DON MARQUART
12   DAVID OXILIA, Videographer
13
14
15
16
17
18
19
20
21
22
23
24
25
```

317

```
1    A P P E A R A N C E S:
2
3    RICHARDS LAYTON & FINGER
4    Attorneys for Plaintiffs
5        One Rodney Square
6        P.O. Box 551
7        Wilmington, Delaware   19889
8    BY:  GREGORY V. VARALLO, ESQ.
9    302.651.7772
10   E-mail: Varallo@rlf.com
11
12
13   HAHN & HESSEN LLP
14   Attorneys for Plaintiffs
15       488 Madison Avenue
16       New York, New York   10022
17   BY:  CHARLES H. JAINCHILL, ESQ.
18   212.478.7291
19   E-mail: Sjainchill@hahnhessen.com
20
21
22
23
24
25
```

310

```
1         P R O C E E D I N G S
2         THE VIDEOGRAPHER:  Good morning, my
3    name is David Oxilia.  I'm the
4    videographer.  I represent Ellen Grauer
5    Court Reporting, and this continues the
6    deposition of Jean Monty in the case
7    entitled Teleglobe Communications
8    Corporation versus BCE Inc.
9         This is Case No. 04 CV 1266 SLR.
10   This deposition is taking place at BCE
11   headquarters in Montreal, Quebec, Canada,
12   and the date today is Tuesday October
13   25, 2005, the time is 9:11 a.m.,
14   and the court reporter today is Rita
15   Persichetty.
16        Will Counsel please state their
17   appearances for the record.
18        MR. VARALLO:  Good morning.  Greg
19   Varallo for the Plaintiffs.
20        MR. MARQUART:  John Marquart I work
21   with Greg Varallo.
22        MR. COOKE:  V.V. Cooke with
23   Teleglobe.
24        MS. AARON:  Jaculin Aaron of Shearman
25   & Sterling LLP on behalf of the
```

318

10/25/2005 Monty, Jean - With Linked Exhibits

1    only for telecom, I'm talking about the whole
2    of BCE, would you look at all of these issues
3    and see how you would react if you were in my
4    shoes. I think I used words to that effect
5    yesterday in answering a similar question.
6         Q    And this came to you in early
7    April 2002; is that correct?
8         A    This states April 12th, sent to
9    Huret, Lassard, Ingrid Calabrese. To be
10   honest, I don't know who she is, and this is a
11   document -- let me see the date of the
12   document. The document is --
13        Q    The document dated --
14        A    April 1st.
15        Q    And hold on, just for your sake.
16        A    Sorry.
17        Q    That April 1st date is the date it
18   was printed out. Word does that occasionally.
19   You'll see it says 2005.
20        A    Sorry, okay, so I don't have the date
21   in which -- I frankly -- from the 12 -- from
22   the E-mail of Friday, April 12, 2002, I can't
23   conclude whether I saw it -- by the way, it's
24   11:59 a.m., okay, so midday, I have no idea
25   when I received the document, and I'm not even

563

10/25/2005 Monty, Jean - With Linked Exhibits

1    shown as a recipient of the document at that
2    point, but I saw it at some point, I just don't
3    remember when.
4         Q    Without trying to date it to
5    April 12th as opposed to some other date in
6    April, is it fair to say you saw it sometime in
7    mid April roughly?
8         A    That's fair to say.
9         Q    Let me draw your attention to Page 3,
10   if you would. Page 3 begins with three
11   overarching messages. The second overarching
12   message reads as follows, given the above, BCE
13   has made the decision to contain its exposure
14   to Teleglobe. From now on, Teleglobe will only
15   be supported financially in a limited way. BCE
16   has indicated to Teleglobe the boundaries and
17   conditions of its future support, close quote.
18        Is that something that you
19   communicated to Huret, Scott or Lassard before
20   this document was created?
21        A    I don't believe so. When I reread
22   that document last week in New York, my
23   recollection is that I gave them a very broad,
24   nonspecific mandate to look at all the issues,
25   and I don't believe I told them that I had made

564

10/25/2005 Monty, Jean - With Linked Exhibits

1    a prior decision to recommend to the board that
2    we would stop our financing of Teleglobe.
3         I believe that what they're giving
4    here in the three overarching messages of how
5    we would communicate the change strategy of BCE
6    given the circumstances in which we were in
7    related to three different -- very different
8    matters, one, the convergent strategy of the
9    company, two, the Teleglobe strategy, and
10   three, how do we deal with the SBC put and call
11   situation.
12        So this, to me, was a context that
13   they were building for putting themselves in my
14   shoes and how we would communicate or I would
15   communicate through our different groups the
16   decisions that might or might not be taken, so
17   that -- they were in effect very careful not to
18   be a strong recommender of one or the other.
19   And I remember full well one of these three
20   gentlemen made sure to tell me that they were
21   careful because that was not in their
22   responsibility, they weren't executive officers
23   of BCE or of Teleglobe, and they're basically
24   telling me how they thought these decisions
25   would be conveyed or should be conveyed.

565

10/25/2005 Monty, Jean - With Linked Exhibits

1         Q    So they're telling you that the
2    decision not to continue to fund Teleglobe
3    should be conveyed in this way?
4         A    No, they're saying given the above,
5    which is the -- supposedly an announced change
6    and the decision to finance and build on the
7    convergent strategy only, that's what the first
8    statement says here. The technical pure play
9    operator broadening its reach internationally
10   with TGO to better services, and that's a
11   choice between that and a convergent strategy
12   between providing telecommunication services
13   with the focus on Canada and the media and
14   E-commerce content leverage in the same place.
15        The choice, they're saying, refers to
16   us, if we had made the decision when came the
17   end of April to focus on the convergent
18   Canadian strategy, then they say in the second,
19   if that was made, then BCE would position
20   itself in saying that BCE has made the decision
21   to contain its exposure in Teleglobe.
22        So it's all predicated upon a series
23   of decisions to be made but had not been made,
24   and they're saying how we should convey that to
25   have a coherent policy on the strategy

566

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: Teleglobe Comm. *et al*., | ) | Chapter 11 |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Bankr. Case No. 02-11518 (MFW) |
| | ) | |
| Teleglobe USA Inc. *et al*., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Action No. 04-1266 (SLR) |
| | ) | |
| BCE Inc. *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' NOTICE OF SUPPLEMENTAL LODGING

## VOLUME H

### ***DOCUMENTS SUBMITTED FOR *IN CAMERA* REVIEW***

Exhibits B and C of Defendants' Letter to the Special Master (December 7, 2005)

**March 27, 2006**

**EXHIBIT B**

SUBMITTED FOR *IN CAMERA* REVIEW

## **EXHIBIT C**

SUBMITTED FOR *IN CAMERA* REVIEW