# EXHIBIT 5

FORM OF PLAN ADMINISTRATION AGREEMENT

BETWEEN

TELEGLOBE HOLDINGS (U.S.) CORPORATION, TELEGLOBE
TELECOM CORPORATION, TELEGLOBE COMMUNICATIONS
CORPORATION, TELEGLOBE LUXEMBOURG LLC, AND
TELEGLOBE USA INC., AS U.S. DEBTORS,

AND

TELEGLOBE INC., TELEGLOBE FINANCIAL HOLDINGS LTD., TELEGLOBE
MANAGEMENT SERVICES INC., TELEGLOBE MARINE, INC., TELEGLOBE
MARINE, L.P., TELEGLOBE CANADA MANAGEMENT SERVICES INC., 3692795
CANADA INC., TELEGLOBE VISION CALL CENTER SERVICES, GENERAL
PARTNERSHIP AND TELEGLOBE CANADA LIMITED

PARTNERSHIP, AS CANADIAN DEBTORS,

AND

KATHY MORGAN, AS PLAN ADMINISTRATOR

AND

THE PLAN COMMITTEE

DATED AS OF FEBRUARY ___, 2005

## PLAN ADMINISTRATION AGREEMENT

### PREAMBLE

This Plan Administration Agreement (the "Plan Administration Agreement") is made this [___] day of January 2005, by and among Teleglobe Holdings (U.S.) Corporation, Teleglobe Telecom Corporation, Teleglobe Communications Corporation, Teleglobe Luxembourg LLC, Teleglobe USA Inc., Teleglobe Inc., Teleglobe Financial Holdings Ltd., Teleglobe Management Services Inc., Teleglobe Marine, Inc., Teleglobe Marine, L.P., Teleglobe Canada Management Services Inc., 3692795 Canada Inc., Teleglobe Vision Call Center Services, General Partnership, Teleglobe Canada Limited Partnership, Kathy Morgan, as Plan Administrator, and the Plan Committee. Notwithstanding the date of execution, this Plan Administration Agreement shall only become effective upon the occurrence of the Effective Date (as defined herein).

### RECITALS

WHEREAS, on May 28, 2002 (the "U.S. Petition Date"), the U.S. Debtors (as defined herein) commenced their respective cases (the "Chapter 11 Cases") under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"), by filing voluntary petitions in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"); and

WHEREAS, on May 15, 2002, the Canadian Debtors and the U.S. Debtors commenced insolvency proceedings under the CCAA in the Ontario Superior Court of Justice (the "CCAA Court"), Court File No. 02-CL-4528 (the "CCAA Proceedings"); and

WHEREAS, on December [____], 2004, the U.S. Debtors filed the First Amended Joint Chapter 11 Plan of Liquidation of Teleglobe Holdings (U.S.) Corporation, Teleglobe USA Inc. and Certain of their Debtor Affiliates, dated November 1, 2004 (the "U.S. Plan") with the Bankruptcy Court; and

WHEREAS, on February [__], 2005, the Bankruptcy Court entered an order (the "Confirmation Order") confirming the U.S. Plan; and

WHEREAS, on November 26, 2004, the Canadian Debtors filed the Plan of Compromise or Arrangement of Teleglobe Inc., et al. (the "Canadian Plan"), with the CCAA Court; and

WHEREAS, on February [__], 2005, the CCAA Court issued an order approving the Canadian Plan (the "Sanction Order"); and

WHEREAS, pursuant to Section 8.4.1 of the U.S. Plan and Section 6.1 of the Canadian Plan, prior to the Effective Date, and following consultations among the U.S. Debtors, the Canadian Debtors, the Official Committee of Unsecured Creditors in the Chapter 11 Cases (the "U.S. Creditors' Committee"), counsel to the Prepetition Lenders and counsel to the Bondholders (as such terms are defined herein), Kathy Morgan was designated to serve as the Plan Administrator.

NOW, THEREFORE, in consideration of the foregoing and the covenants and agreements set forth herein, the parties hereto agree as follows:

RLF1-2812433-4

# ARTICLE I

## DEFINITIONS

Section 1.1   Defined Terms   For purposes of this Plan Administration Agreement, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined herein shall have the meanings ascribed to them in Article I of the Plan Administration Agreement. Any term used in this Plan Administration Agreement that is not defined herein, but is defined in the Bankruptcy Code, the Bankruptcy Rules or the *Companies' Creditors Arrangement Act* (Canada), shall have the meaning ascribed to that term in the Bankruptcy Code, the Bankruptcy Rules or the *Companies' Creditors Arrangement Act* (Canada), as applicable. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine

(a)    7.2% Debentures.   The 7.2% Debentures due July 20, 2009, issued and outstanding under the 1999 Indenture.

(b)    7.7% Debentures.   The 7.7% Debentures due July 20, 2029, issued and outstanding under the 1999 Indenture

(c)    8% Debentures   The 8% Debentures due October 23, 2026, issued and outstanding under the 1996 Indenture.

(d)    8.35% Debentures.   The 8.35% Debentures due June 20, 2003, issued and outstanding under the 1993 Indenture.

(e)    8.85% Debentures.   The 8.85% Debentures due November 15, 2002, issued and outstanding under the 1992 Indenture.

(f)    1992 Indenture.   That certain indenture, dated as of November 16, 1992, regarding the 8.85% Debentures, among TINC, as successor to Teleglobe Canada Inc , as issuer of the 8.85% Debentures, and THUSC, as subsidiary guarantor, and the Canadian Indenture Trustee.

(g)    1993 Indenture.   That certain indenture, dated as of April 7, 1993, regarding the 8.35% Debentures, among TINC, as successor to Teleglobe Canada Inc., as issuer of the 8.35% Debentures, and THUSC, as subsidiary guarantor, and the Canadian Indenture Trustee.

(h)    1996 Indenture.   That certain indenture, dated as of October 23, 1996, regarding the 8% Debentures, among TINC, as successor to Teleglobe Canada Inc., as issuer of the 8% Debentures, and THUSC, as subsidiary guarantor, and the Canadian Indenture Trustee.

(i)    1999 Indenture.   That certain indenture, dated as of July 20, 1999, regarding the 7.2% Debentures and the 7.7% Debentures, among TINC, as issuer of the 7.2% Debentures and the 7.7% Debentures, and THUSC, as subsidiary guarantor, and the U.S. Indenture Trustee.

2

(j)     Administrator Professionals. Professionals retained by the Plan Administrator on behalf of the Reorganized U.S. Debtors and the Canadian Debtors pursuant to Section 2.2 of this Plan Administration Agreement, including legal counsel, accountants, experts and other agents or advisors as deemed appropriate.

(k)     Administrative Claim. Collectively, any cost or expense of administration of any of the Chapter 11 Cases allowed against the U.S. Debtors pursuant to section 503(b) of the Bankruptcy Code.

(l)     Administrative Claims Reserve. The reserve established pursuant to Section 1.11 and Section 3.2(a)(i) of this Plan Administration Agreement.

(m)     Allowed. With respect to a Claim against or equity interest in the U.S. Debtors and/or the U.S. Estates and the Canadian Debtors, a Claim or equity interest that has either been (i) accepted as a Distribution Claim under the Canadian Plan, (ii) allowed pursuant to Section 1.14 of the U.S. Plan, (iii) allowed by final order of the Bankruptcy Court or the CCAA Court, as the case may be, or (iv) allowed or deemed allowed by the Bankruptcy Code, Bankruptcy Rules or the CCAA, as the case may be.

(n)     Available Cash. Shall have the meaning ascribed to it in Section 1.18 of the U.S. Plan.

(o)     Bankruptcy Code. Shall have the meaning ascribed to it in the Recitals herein.

(p)     Bankruptcy Court. Shall have the meaning ascribed to it in the Recitals herein.

(q)     Bankruptcy Rules. The Federal Rules of Bankruptcy Procedure.

(r)     BCE. BCE Inc. and its affiliated entities.

(s)     BCE U.S. Complaint. The complaint filed in the Bankruptcy Court on May 26, 2004 by the U.S. Debtors as against BCE and by the U.S. Creditors' Committee on behalf of the U.S. Estates as against certain officers and directors of BCE, the U.S. Debtors and TINC, and any amendments thereto.

(t)     BCE/D&O U.S. Litigation. The adversary proceeding commenced by the filing of the BCE U.S. Complaint and which is styled <u>Teleglobe Communications Corporation, et al., Plaintiffs, v. BCE Inc., et al., Defendants,</u> Civ. Action No. 04-1266-SLR (D. Del ).

(u)     Bondholders. The holders of (i) the 7.2% Debentures, (ii) the 7.7% Debentures, (iii) the 8% Debentures, (iv) the 8.35% Debentures, and (v) the 8.85% Debentures.

(v)     Business Days. Any day other than a Saturday, Sunday or a "legal holiday" (as such term is defined in Bankruptcy Rule 9006(a)) or a statutory holiday in the Province of Ontario.

(w)     CCAA. The *Companies' Creditors Arrangement Act* (Canada).

3

(x)    CCAA Court. Shall have the meaning ascribed to it in the Recitals herein.

(y)    CCAA Proceedings. Shall have the meaning ascribed to it in the Recitals herein.

(z)    Canadian Debtors. Teleglobe Inc., Teleglobe Financial Holdings Ltd., Teleglobe Management Services Inc., Teleglobe Marine, Inc., Teleglobe Marine, L.P., Teleglobe Canada Management Services Inc., 3692795 Canada Inc., Teleglobe Vision Call Center Services, General Partnership, and Teleglobe Canada Limited Partnership.

(aa)    Canadian Debtors' Claims. Any and all claims, causes or rights of action (whether by contract, in equity, by way of indemnity, by statute or otherwise), including any claims under any applicable insurance policies, that any of the Canadian Debtors or the Interim Receiver (including derivatively) may have against any person whatsoever (including any former or present officer, director, shareholder, agent, or advisor of any of the Canadian Debtors), and, for greater certainty, including any and all claims in respect of that certain officers and directors' trust created on May 14, 2002, together with (i) any and all documents in the possession, power or control of any of the Canadian Debtors relating to such claims; and (ii) any rights, powers or privileges (including solicitor / client privilege) associated with such claims; provided that this excludes the claims of the Canadian Debtors arising in respect of the Canadian VarTec Note; and excludes any agreements or express matters approved by the Court from and after the Filing Date (as defined in the Canadian Plan) as part of the CCAA proceedings.

(bb)    Canadian Indenture Trustee. Montreal Trust Company, as Trustee pursuant to the 1992 Indenture, the 1993 Indenture and the 1996 Indenture.

(cc)    Canadian Plan. Shall have the meaning ascribed to it in the Recitals herein.

(dd)    Canadian VarTec Note. The promissory note dated April 2002 in the amount of US$10,000,000 issued by VarTec Telecom, Inc. and/or VarTec Telecom Holding Company in favor of TINC.

(ee)    Cause. The Plan Administrator has: (i) committed a felony, (ii) committed an act of dishonesty which results or intends to result in the Plan Administrator's personal gain or enrichment, at the expense of the Reorganized U.S. Debtors or U.S. Estates and the Canadian Debtors, (iii) willfully contravened specific written lawful directions from the Plan Committee, or (iv) committed fraudulent or unlawful acts while acting as Plan Administrator, which seriously damage the Reorganized U.S. Debtors or U.S. Estates and the Canadian Debtors.

(ff)    Causes of Action. Collectively, shall have the meaning ascribed to it in Section 1.42 of the U.S. Plan and the meaning ascribed to "Debtors' Claims" in the Canadian Plan.

(gg)    Chapter 11 Cases. Shall have the meaning ascribed to it in the Recitals herein.

(hh)    Claim. Shall have the meaning ascribed to it in Section 1.44 of the U.S. Plan or Section 1.1 of the Canadian Plan, as applicable.

4

(ii)    Confirmation Order. Shall have the meaning ascribed to it in the Recitals herein.

(jj)    Credit Agreements. Collectively, (i) that certain Facility A 364-Day Revolving Credit Agreement, dated as of July 24, 2000, as amended, supplemented or otherwise modified from time to time, among TINC, as borrower, THUSC, as subsidiary guarantor, and Bank of Montreal, The Bank of Nova Scotia, National Bank of Canada, Royal Bank of Canada, Canadian Imperial Bank of Commerce, N.Y. Agency, The Toronto-Dominion Bank, ABN AMRO Bank Canada, BNP Paribas (Canada), HSBC Bank Canada, Caisse Centrale Desjardins du Quebec, Credit Suisse First Boston Canada, Bank of Tokyo-Mitsubishi (Canada), Laurentian Bank of Canada, Bayerische Landesbank Toronto Branch, and Merrill Lynch Capital Canada Inc., as lenders; (ii) that certain Facility B 364-Day Revolving Credit Agreement, dated as of July 24, 2000, as amended, supplemented or otherwise modified from time to time, among TINC, as guarantor, THUSC, as borrower and guarantor, and Bank of Montreal, Citibank, N.A., ABN AMRO Bank, N.V., The Bank of Nova Scotia, National Bank of Canada, Royal Bank of Canada, Canadian Imperial Bank of Commerce, N.Y. Agency, The Toronto-Dominion Bank, Morgan Guaranty Trust Company of New York, Credit Suisse First Boston, Merrill Lynch Capital Corporation, Goldman Sachs Credit Partners L.P. and Export Development Corporation, as lenders; and (iii) that certain Revolving Credit Agreement, dated as of July 23, 2001, among THUSC, as borrower, TINC, as guarantor, and Morgan Stanley Senior Funding, Inc., as lender.

(kk)    Debtors. Collectively, the U.S. Debtors and the Canadian Debtors.

(ll)    Debtors' Claims. Collectively, the Canadian Debtors' Claims and the U.S. Estate Claims.

(mm)    Disputed Claim. As it relates to the U.S. Debtors, shall have the meaning ascribed to it in Section 1.64 of the U.S. Plan; and as it relates to any of the Canadian Debtors, shall have the meaning ascribed to "Unresolved Claim" in Section 1.1 of the Canadian Plan.

(nn)    Disputed Claims Reserve. The reserve established pursuant to Sections 1.65 and 11.13 of the U.S. Plan and Section 3.2(a)(iii) of this Plan Administration Agreement.

(oo)    Distribution Claim. Shall have the meaning ascribed to it in Section 1.1 of the Canadian Plan.

(pp)    Effective Date. The Effective Date of the U.S. Plan as defined in Section 1.69 of the U.S. Plan or the Plan Implementation Date pursuant to the Canadian Plan as defined in Section 1.1 of the Canadian Plan, as the case may be, and shall mean the later of those two dates where the context requires reference to both the U.S. Plan and the Canadian Plan.

(qq)    Effective Date Distribution. Shall have the meaning ascribed to it in Section 1.70 of the U.S. Plan.

(rr)    Estimated Amount. Shall have the meaning ascribed to it in Section 1.72 of the U.S. Plan.

(ss)    Final Distribution. Shall have the meaning ascribed to it in Section 1.75 of the U.S. Plan or Section 1.1 of the Canadian Plan, as applicable.

5

RLF1-2812433-4

(tt)     Final Distribution Date. Shall be the date or dates, as the case may be, upon the which the Final Distribution is made.

(uu)     Final Order. An order or judgment of the Bankruptcy Court, the CCAA Court or other court of competent jurisdiction, as entered on its docket, that has not been reversed, stayed, modified or amended, as to which (a) the time to appeal, seek certiorari or move for reconsideration has expired and no appeal, petition for certiorari or motion for reconsideration, respectively, has been timely filed or (b) any appeal, any petition for certiorari or any motion for reconsideration that has been or may be filed has been resolved by the highest court (or any other tribunal having appellate jurisdiction over the order or judgment) to which the order or judgment was appealed or from which certiorari or reconsideration was sought.

(vv)     Indemnified Parties. Shall have the meaning ascribed to it in Section 7.11 of this Plan Administration Agreement.

(ww)     Interim Receiver. The interim receiver shall have the meaning ascribed to it in Section 1.1 of the Canadian Plan.

(xx)     Joint U.S./Canada Claims. All claims of creditors holding Allowed unsecured claims in Class 1C under the U.S. Plan and/or holding Allowed Distribution Claims under the Canadian Plan

(yy)     Joint U.S./Canada Disbursement Account. Shall have the meaning ascribed to it in Section IV(a) of the Litigation Protocol and Section 4.3(a) of this Plan Administration Agreement.

(zz)     Litigation Proceedings. Any and all actions and proceedings in respect of the Debtors' Claims from time to time instituted in Canada or in the United States by or on behalf of the Debtors, the Reorganized U.S. Debtors, the Canadian Debtors, the U.S. Estates, the U.S. Creditors' Committee, the Plan Administrator and/or the Interim Receiver, including, without limitation, any and all actions and proceedings instituted against BCE and/or the officers and directors of BCE and/or the Debtors, and/or others with respect to such causes of action, including the BCE/D&O U.S. Litigation.

(aaa)     Litigation Proceeds. The proceeds, if any, derived from the pursuit of the Debtors' Claims, including, without limitation, the proceedings in respect of any Debtors' Claims and any funds remaining in the Litigation Reserve upon the completion of the Litigation Proceedings.

(bbb)     Litigation Protocol. The Teleglobe U.S.-Canadian Litigation Protocol pertaining to the pursuit of, inter alia, the Litigation Proceedings and the distribution of proceeds derived from such proceedings, which is appended to each of the Canadian Plan and the U.S. Plan.

(ccc)     Litigation Reserve. The reserve established pursuant to the Litigation Protocol, Section 4.2 of this Plan Administration Agreement, Section 1.23 of the U.S. Plan and Section 1.1 of the Canadian Plan.

(ddd)  Operating U.S. Reserve.  The reserve established pursuant to Section 3.2(a)(ii) of this Plan Administration Agreement and referred to in Section 1.95 of the U.S. Plan.

(eee)  Operating Canadian Reserve.  The reserve established pursuant to Section 3.3(a) of this Plan Administration Agreement and referred to in Section 1.1 of the Canadian Plan

(fff)  Other Priority Claim.  Any Claim, other than an Administrative Claim or a Priority Tax Claim against the U.S. Debtors, to the extent such Claim is entitled to priority pursuant to Bankruptcy Code section 507(a).

(ggg)  Plan Committee  The committee formed pursuant to Article VI of this Plan Administration Agreement and Section 8.7.2 of the U.S. Plan and Section 7.1 of the Canadian Plan.

(hhh)  Plans.  Collectively, the U.S. Plan and the Canadian Plan.

(iii)  Post Effective Date Assets.  Shall have the meaning given to it in Section 4.2(b) below.

(jjj)  Prepetition Lenders.  Those parties, whether by origination or assignment, that, pursuant to the Credit Agreements, are lenders and certain of the U.S. Debtors and the Canadian Debtors are borrowers or guarantors, or their respective agents.

(kkk)  Priority Tax Claims.  Any Claim against the U.S. Debtors entitled to priority pursuant to Bankruptcy Code section 507(a)(8).

(lll)  Professional Claims.  Shall be ascribed the meaning set forth in Section 1.110 of the U.S. Plan.

(mmm) Pro Rata Basis.  A proportionate share, so that the ratio of the amount of consideration distributed on account of a particular Allowed Claim to the aggregate amount of that Allowed Claim is the same ratio of the amount of consideration distributed on account of all specified unsubordinated Allowed Claims ranking pari passu and entitled to share with the particular Allowed Claim to the aggregate amount of such specified unsubordinated Allowed Claims.

(nnn)  Reorganized TUSA.  TUSA on and after the Effective Date.

(ooo)  Reorganized U.S. Debtors.  The U.S. Debtors on and after the Effective Date.

(ppp)  Restructuring Transactions.  Shall be ascribed the meaning set forth in Section 8.11 of the U.S. Plan.

(qqq)  Retention Bonus.  Shall be ascribed the meaning set forth in Section 2.3 of this Plan Administration Agreement.

(rrr)  Sanction Order  Shall have the meaning ascribed to it in the Recitals herein.

RLF1-2812433-4

(sss)    Secured Claim. As it relates to the U.S. Debtors, any Claim against the U.S. Debtors, including principal, interest and any other amounts, secured by a lien on, security interest in or charge against property of any of the U.S. Estates or that is subject to setoff under the Bankruptcy Code section 553, to the extent of the value of such creditor's interests in the U.S. Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Bankruptcy Code section 506(a); and, as it relates to the Canadian Debtors, has the meaning ascribed to it in Section 1.1 of the Canadian Plan.

(ttt)    Supplemental Distributions. Shall have the meaning ascribed to it in Section 11.11 of the U.S. Plan.

(uuu)    Supplemental Distribution Date. The date(s) for making of Supplemental Distributions as determined by the Plan Administrator in consultation with the Plan Committee.

(vvv)    TCC. Teleglobe Communications Corporation.

(www) TCLP. Teleglobe Canada Limited Partnership.

(xxx)    THUSC. Teleglobe Holdings (U.S.) Corporation.

(yyy)    TINC. Teleglobe Inc.

(zzz)    TLUX. Teleglobe Luxembourg LLC.

(aaaa)  TMI. Teleglobe Marine (U.S.), Inc.

(bbbb) TTC. Teleglobe Telecom Corporation.

(cccc)  Unresolved Claims. Shall have the meaning ascribed to it in Section 1.1 of the Canadian Plan.

(dddd) Unresolved Claims Reserve. The reserve established pursuant to Section 3.3(a)(ii) of this Plan Administration Agreement and referred to in Section 1.1 of the Canadian Plan.

(eeee)  Unsecured Claims. Shall have the meaning ascribed to it in Section 1.152 of the U.S. Plan or Section 1.1 of the Canadian Plan, as applicable.

(ffff)   U.S. Avoidance Actions. Any and all claims or causes of action of the U.S. Debtors or U.S. Estates under sections 506, 510, 541, 544, 547, 548, 549, 550, 551, 552 or 553 of the Bankruptcy Code.

(gggg) U S Creditors' Committee. Shall have the meaning ascribed to it in the Recitals herein.

(hhhh) U.S. Debtors  THUSC, TTC, TCC, TLUX, TUSA, Teleglobe Holding Corp., Teleglobe Investment Corp., and Teleglobe Puerto Rico, Inc.

8

(iiii)    U.S. Estates. The estates of the U.S. Debtors created pursuant to Bankruptcy Code section 541 by the commencement of the Chapter 11 Cases.

(jjjj)    U.S. Estate Claims. Any and all claims, causes or rights of action (whether by contract, in equity, by way of indemnity, by statute or otherwise), including any applicable insurance policies, that any of the U.S. Debtors and/or the U.S. Estates (including derivatively) may have against any person whatsoever (including any former or present officer, director, shareholder, agent, or advisor of any of the U.S. Debtors), and, for greater certainty, including the claims and causes of action asserted by the U.S. Debtors and the U.S Creditors' Committee on behalf of the U.S. Estates in the BCE/D&O U.S. Litigation and any and all claims in respect of that certain officers' and directors' trust created on May 14, 2002; provided that this definition excludes the claims of the U.S. Debtors and/or the U.S. Estates arising in respect of the U.S. VarTec Notes, the U.S. Avoidance Actions and any claims or causes of action held by the U.S. Debtors and/or U.S. Estates against Verizon Select Services, Inc. and/or any of its affiliated entities or ST Tech Services Inc. and/or any of its affiliated entities.

(kkkk) U.S. Indenture Trustee. The Bank of New York, as Trustee pursuant to the 1999 Indenture.

(llll)    U.S. Petition Date. Shall have the meaning ascribed to it in the Recitals herein.

(mmmm)    U.S. Plan. Shall have the meaning ascribed to it in the Recitals herein.

(nnnn) U.S. VarTec Notes. Notes issued by VarTec Telecom, Inc. and/or VarTec Telecom Holding Company and/or any of their affiliates in favor of any of the U.S. Debtors.

(oooo) VarTec. Collectively, and individually, VarTec Telecom, Inc. and/or VarTec Telecom Holding Company.

(pppp) VarTec Claims. Any and all claims and causes of action of the U.S. Debtors against VarTec.

(qqqq) VarTec Proceeds. The proceeds derived, if any, from the pursuit of the VarTec Claims.

## ARTICLE II

## ACCEPTANCE AND GENERAL TERMS OF RETENTION

Section 2.1    Acceptance.

(a)    Pursuant to Section 8.4.1 of the U.S. Plan and Section 6.1 of the Canadian Plan, Kathy Morgan accepts engagement as the Plan Administrator; and

(b)    Kathy Morgan agrees to observe and perform all duties and obligations imposed upon the Plan Administrator (as Plan Administrator) under this Plan Administration

9

Agreement, the Plans, the Litigation Protocol, applicable orders of the Bankruptcy Court and the CCAA Court and applicable law.

Section 2.2    Retention of Professionals. Upon prior approval of the Plan Committee, the Plan Administrator on behalf of the Reorganized U.S. Debtors and the Canadian Debtors shall have the right to retain and terminate the Administrator Professionals. The Administrator Professionals shall be compensated in accordance with Sections 2.3 and 2.4 of this Plan Administration Agreement.

Section 2.3    Compensation. As approved by the Plan Committee, the Plan Administrator and the Administrator Professionals shall be compensated pursuant to the terms and subject to the conditions set forth in the Plans and this Plan Administration Agreement. The Administrator Professionals retained to represent the interests of and serve on behalf of the Reorganized U.S. Debtors and the Canadian Debtors shall be entitled to reasonable compensation for services rendered and reimbursement of expenses incurred from the respective designated reserves or accounts established pursuant to the U.S. Plan, the Canadian Plan and/or this Plan Administration Agreement. The payment of the fees and expenses of the Plan Administrator and the Administrator Professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court or the CCAA Court. The following shall be the terms for compensating the Plan Administrator:

(a)    Kathy Morgan's base salary for 2005 and 2006 shall be $300,000.00 per year, plus maintenance of current benefits, including ongoing health insurance, life insurance and disability insurance, bar dues, vacation and post-termination insurance.

(b)    Kathy Morgan shall also be entitled to a $300,000 retention bonus (the "Retention Bonus")

(c)    In order to be paid the full Retention Bonus, Kathy Morgan must (i) agree to be employed by the Reorganized U.S. Debtors and the Canadian Debtors as Plan Administrator through December 31, 2006 (the "Retention Period"), (ii) continue to work actively as the Plan Administrator for the Retention Period (unless she is terminated earlier by the Plan Committee) and (iii) at the end of employment, execute a full and final release of all claims against the Reorganized U.S. Debtors, the Canadian Debtors and the U.S. Estates. If Kathy Morgan resigns prior to the end of her Retention Period or is terminated for Cause, the full Retention Bonus will not be paid.

(d)    One-half of the Retention Bonus will be earned and payable the earlier of December 31, 2005 or the date Kathy Morgan is terminated by the Plan Committee without Cause. The second half of the Retention Bonus will be earned and payable the earlier of December 31, 2006 or the date Kathy Morgan is terminated by the Plan Committee without Cause. For the avoidance of doubt, no portion of the Retention Bonus earned and paid is returnable by Kathy Morgan in the event of her subsequent resignation or termination for Cause.

Section 2.4    Payment of Professionals. After the Effective Date, the Administrator Professionals and any other professionals retained to represent the interests of the Reorganized U.S. Debtors, the Canadian Debtors and the U.S. Estates pursuant to Section 2.2 of this Plan Administration Agreement, including professionals retained in or with respect to issues involving

10

the Litigation Proceedings, shall be required to submit reasonably detailed invoices on a monthly basis to the Plan Administrator, including in such invoices a description of the work performed, a description of the professional persons who performed such work, the hourly rate of each such person, and the amount of time expended per task, together with an itemized statement of expenses, with a copy to the members of the Plan Committee. The Plan Administrator shall pay those invoices from the appropriate designated reserves or accounts established pursuant to the Plans within thirty (30) days after receipt of such invoices, unless the Plan Administrator or the Plan Committee, as the case may be, objects in writing to all or part of an invoice within twenty (20) days of receipt of such invoices, or except as otherwise agreed by the Plan Committee with the relevant professional. If there is a dispute as to a part of an invoice, the undisputed portion shall be paid by the Plan Administrator. Any unresolved dispute as to a professional's invoice shall be resolved by the Bankruptcy Court with respect to professionals representing the Reorganized U.S. Debtors and by the CCAA Court with respect to professionals representing the Canadian Debtors, upon notice and an opportunity for a hearing.

Section 2.5   Resignation of Plan Administrator. The Plan Administrator may resign by giving not less than twenty (20) Business Days prior written notice thereof to the Plan Committee. The Plan Administrator shall continue to be fully compensated during this notice period. The resignation of the Plan Administrator, which shall be applicable to the Plan Administrator in its capacity as Plan Administrator and as sole officer and director of the Reorganized U.S. Debtors and the Canadian Debtors and as sole shareholder of TINC, shall become effective upon the earlier of: (i) the appointment of a successor Plan Administrator in accordance with Section 2.7; and (ii) twenty (20) Business Days after delivering written notice to the Plan Committee of the Plan Administrator's intent to resign.

Section 2.6   Termination of Engagement. The termination of the engagement of the Plan Administrator hereunder shall occur upon the earlier of: (a) upon ten (10) Business Days prior written notice to the Plan Administrator of termination by the Plan Committee where termination is without Cause; (b) forthwith upon provision of written notice to the Plan Administrator by the Plan Committee where termination is with Cause; or (c) upon termination of this Plan Administration Agreement and completion of the items contained in Section 5.2 of this Plan Administration Agreement. Except as noted in this section and provided further that Kathy Morgan's termination is not for Cause, if prior to December 31, 2006, the Plan Committee decides that Kathy Morgan's employment is not needed through December 31, 2006, the Plan Committee will provide Kathy Morgan with the notice required herein, the full Retention Bonus less any portion thereof previously earned and paid, plus her base salary through the date of termination. If Kathy Morgan's employment terminates due to death, she or her estate will be entitled to a pro-rated Retention Bonus payment equal to the lesser of: (i) the remaining unpaid portion of the Retention Bonus of $300,000 and (ii) the base salary she earned from January 1, 2005 through the date of her death, and no further base salary will be payable. If Kathy Morgan becomes disabled or takes an unpaid leave of absence during the term of her employment as Plan Administrator, then a pro-rated Retention Bonus will be paid on the date such Retention Bonus is earned and payable, reduced by the period of disability or leave.

Section 2.7   Appointment of Successor Plan Administrator. In the event of a vacancy by reason of the termination of the Plan Administrator's engagement hereunder or a prospective vacancy by reason of resignation, the Plan Committee shall appoint a successor Plan Administrator.

11

Every successor Plan Administrator appointed hereunder shall execute, acknowledge and file with the Bankruptcy Court and the CCAA Court and deliver to the retiring Plan Administrator, if any, an instrument accepting such appointment subject to the terms and provisions hereof. The successor Plan Administrator, without any further act, shall: (a) become vested with all the rights, powers, obligations and duties of the Plan Administrator under this Plan Administration Agreement, the Litigation Protocol, the U.S. Plan, the Canadian Plan, any order of the Bankruptcy Court or the CCAA Court and applicable law and (b) become the sole shareholder of TINC; provided, however, that no Plan Administrator shall be liable for the acts or omissions of any prior or subsequent Plan Administrator.

Section 2.8    Continuity. The termination of the Plan Administrator's engagement hereunder or the resignation of the Plan Administrator shall not operate to invalidate any action theretofore taken by the Plan Administrator. In the event of the termination of the Plan Administrator's engagement hereunder or the resignation of the Plan Administrator, possession of TINC's common stock held by Kathy Morgan as Plan Administrator for the benefit of creditors shall pass to the Plan Committee, to be held by the Plan Committee for the benefit of the creditors until a successor Plan Administrator is appointed by the Plan Committee pursuant to Section 2.7 of this Plan Administration Agreement. Moreover, in any such event, Kathy Morgan as Plan Administrator shall: (a) execute and deliver by the effective date of such termination or resignation such documents, instruments and other writings as may be reasonably requested by the Plan Committee to effect the termination of the Plan Administrator's capacity under this Plan Administration Agreement, including, but not limited to, the Plan Administrator's capacity as the sole shareholder of TINC and as sole officer and director of the Reorganized U.S. Debtors and the Canadian Debtors, as may be applicable; and (b) reasonably assist and cooperate in effecting the assumption of such Plan Administrator's obligations and functions by a successor Plan Administrator. If for any reason Kathy Morgan fails to execute and deliver the documents described in clause (a) of the preceding sentence, the Plan Committee shall be authorized to obtain orders from the Bankruptcy Court and the CCAA Court, respectively, that shall direct the execution and delivery of such documents or shall dispense with their requirement.

Section 2.9    Payment of Employees, Rent and Other Common Expenses. The expenses associated with (i) compensation and expense reimbursement of the Reorganized U.S. Debtors' and the Canadian Debtors' employees, (ii) the Plan Administrator's compensation and expense reimbursement, (iii) the headquarters' lease and associated utility costs, and (iv) other common expenses, shall be split between the Reorganized U.S. Debtors and the Canadian Debtors. The Plan Administrator shall make these payments from the Operating U.S. Reserve and the Operating Canadian Reserve based upon a fair allocation determined by the Plan Administrator.

## ARTICLE III

## DUTIES, OBLIGATIONS, POWERS AND RIGHTS OF THE PLAN ADMINISTRATOR

Section 3.1    Oversight by the Plan Committee. The Plan Administrator shall consult with the Plan Committee on a regular basis with respect to the Plan Administrator's responsibilities under the Plans, the Litigation Protocol and this Plan Administration Agreement and shall have no authority to act on behalf of the Reorganized U.S. Debtors and the Canadian

12

RLF1-2812433-4

Debtors without first obtaining the Plan Committee's prior approval for such actions, other than in connection with actions which are not material or which are administrative in nature (without implied limitation, such actions as employing or compensating Administrator Professionals, prosecuting actions or Claims, seeking estimation of Claims or electing directors and taking action to wind up or dissolve any corporation shall all be deemed material and not administrative in nature). In addition, the Plan Administrator shall provide bi-monthly reports to the Plan Committee summarizing the activities of the Plan Administrator and the Reorganized U.S. Debtors and the Canadian Debtors during the immediately preceding two month period and otherwise as may be reasonably necessary for the Plan Committee to give any required instructions to the Plan Administrator in a timely manner. Other than as provided in Section 3.2(b) herein and Sections 8.11 and 11.14 of the U.S. Plan, notwithstanding anything in the Plans, this Plan Administration Agreement, the Confirmation Order or the Sanction Order to the contrary, the Plan Administrator shall not exercise any rights or take any actions on behalf the of the Reorganized U.S. Debtors and the Canadian Debtors in a manner contrary to the direction of a majority of the Plan Committee; provided, however, that the Plan Administrator shall have the authority to seek direction from the Bankruptcy Court and the CCAA Court solely with respect to directives of the Plan Committee that the Plan Administrator believes would be improper under applicable law if implemented.

Section 3.2    Establishment of Reserves and Accounts Under the U.S. Plan.

(a)    Administrative Claims, Operating and Disputed Claims Reserves.

(i)    Administrative Claims Reserve. On the Effective Date or as soon as practicable thereafter, the Plan Administrator shall create and, with prior approval from the Plan Committee, fund the Administrative Claims Reserve with an amount of cash equal to (a) the aggregate amount of cash sufficient to pay each holder of a Disputed Administrative Claim, Priority Tax Claim, Class 1A or 2A Other Priority Claim or Class 1B or 2B Secured Claim under the U.S. Plan (x) the amount of cash that such holder would have been entitled to receive under the U.S. Plan if such claim had been an Allowed Claim at the time of the Effective Date Distribution or any Supplemental Distribution Date, or (y) such lesser amount as the Bankruptcy Court may determine, plus (b) an amount equal to an estimate made by the Plan Administrator, with the prior approval of the Plan Committee, of Administrative Claims not yet asserted against the U.S. Estates. With respect to Disputed Administrative Claims, Priority Tax Claims, Class 1A or 2A Other Priority Claims and Class 1B or 2B Secured Claims under the U.S. Plan, if, when, and to the extent any such Disputed Claims become Allowed Claims by Final Order, the relevant portion of the cash held in reserve therefor shall be distributed by the Plan Administrator to the creditor in a manner consistent with distributions to similarly situated Allowed Claims. On each Supplemental Distribution Date, any amount held in reserve on account of any Disputed Administrative Claim, Priority Claim, Class 1A or 2A Other Priority Claim or Class 1B or 2B Secured Claim under the U.S. Plan that has been disallowed, settled or released by Final Order shall become Available Cash for use or distribution in accordance with the terms of the U.S. Plan. No payments or distributions shall be made with respect to a claim that is a Disputed Claim pending the resolution of the dispute by Final Order.

(ii)    Operating U.S. Reserve. On the Effective Date or as soon as practicable thereafter, the Plan Administrator shall establish the Operating U.S. Reserve (which may be supplemented from time to time thereafter in accordance with Section 11.14 of the U.S.

13

Plan), which shall be available and used exclusively to pay (a) reasonable and necessary post-Effective Date expenses relating to the Chapter 11 Cases, the Reorganized U.S. Debtors and the U.S. Estates that are incurred by the Reorganized U.S. Debtors, the Plan Administrator, and the Plan Committee or for which the Reorganized U.S. Debtors, the Plan Administrator or the Plan Committee is responsible under the U.S. Plan, including, but not limited to, the post-Effective Date professional fees relating to the Chapter 11 Cases, the Reorganized U.S. Debtors and the U.S. Estates (other than fees and expenses incurred in connection with the Litigation Proceedings), (b) unpaid Professional Claims (as defined in the U.S. Plan), (c) quarterly fees of the office of the United States Trustee, and (d) any and all taxes due with respect to any income of the U.S. Debtors and/or the Reorganized U.S. Debtors; provided, however, that any funds remaining in the Operating U.S. Reserve after payment in full or other satisfaction of the items identified in (a), (b) and (c) above shall become Available Cash that may be distributed on account of any other payments required or permitted to be made under the U.S. Plan.

(iii)    Disputed Claims Reserve. On the Effective Date or as soon as practicable thereafter, the Plan Administrator shall establish the Disputed Claims Reserve and deposit cash in such reserve in the aggregate amount sufficient to pay each holder of a Disputed Class 1C or 2C Claim under the U.S. Plan (i) the amount of cash that such holder would have been entitled to receive under the U.S. Plan if such claim had been an Allowed Claim at the time of the Effective Date Distribution or any Supplemental Distribution Date, or (ii) such lesser amount as the Bankruptcy Court may determine. With respect to such Disputed Claims, if, when, and to the extent any Disputed Claim becomes an Allowed Claim by Final Order, the relevant portion of the cash held in the Disputed Claims Reserve shall be distributed by the Plan Administrator to the creditor in a manner consistent with distributions to similarly situated Allowed Claims. On each Supplemental Distribution Date, the Plan Administrator shall release any amount held in reserve on account of any Disputed Claims under the U.S. Plan that have been disallowed, waived or released by Final Order for distribution to holders of Allowed Class 1C or 2C Claims under the U.S. Plan, subject to the terms of the U.S. Plan. No payments or distributions shall be made with respect to a claim that is a Disputed Claim pending the resolution of the dispute by Final Order.

(b)    Tax Reserve. Following consultation with the Plan Committee, the Plan Administrator may determine, in the Plan Administrator's sole discretion, the maximum potential tax liability associated with a particular receipt of cash by a U.S. Debtor or a Reorganized U.S. Debtor, whether of VarTec Proceeds, the Litigation Proceeds, revenue from TMI's partnership interests or the proceeds from their disposition, or cash from other sources, and retain cash in that amount in the Operating Reserve as contemplated by Section 3.2(a)(ii) until the earlier to occur of the date on which the applicable statute of limitations for the assessment of taxes expires or the U.S. Debtors or the Plan Administrator obtains an administrative or judicial determination to the effect that the U.S. Debtors owe no taxes (and no further taxes) for the year in which the VarTec Proceeds, the Litigation Proceeds, revenue from TMI's partnership interests or the proceeds from their disposition, or other cash amounts were recognized as income (or potentially recognized as income) by the U.S. Debtors and/or the Reorganized U.S. Debtors.

(c)    Subsequent Establishment of Accounts Reserves and Escrows. On or after the Effective Date, the Plan Administrator, with prior approval of the Plan Committee, may establish and maintain such additional accounts, reserves and escrows, including sub-escrows for

14

particular Claims against the U.S. Debtors, as may be required by applicable law or as necessary to carry out the provisions of the U.S Plan and this Plan Administration Agreement.

(d)    Estimation of Claims for Purposes of Calculating Reserves. The Plan Administrator (subject to the requirements of Section 8.4.3 of the U.S. Plan) may, at any time, request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code for purposes of estimating and limiting the amount of cash which shall be deposited in the appropriate reserve on account of such Claim.

Section 3.3    Establishment of Reserves and Accounts under the Canadian Plan.

(a)    Operating Canadian Reserve and the Unresolved Claims Reserve.

(i)    Operating Canadian Reserve. Consistent with the terms of the Canadian Plan and subject to the requirements set forth in such plan, on the Effective Date or as soon as practicable thereafter, the Plan Administrator, with prior approval from the Plan Committee and the Monitor, shall create and fund the Operating Canadian Reserve which shall be available and used exclusively to pay reasonable and necessary post-Effective Date expenses incurred in connection with the Canadian Plan or the CCAA proceedings by the Canadian Debtors, the Plan Administrator and the Plan Committee, or for which the Canadian Debtors, the Plan Administrator or the Plan Committee is responsible under the Canadian Plan, including their respective professional fees incurred after the Effective Date and any professional fees incurred after the Filing Date (as defined in the Canadian Plan) that remain unpaid following the Effective Date; provided, however, that: (A) any funds remaining in the Operating Canadian Reserve after payment in full of all items identified above shall become available for distribution on account of any other payments required or permitted to be made under the Canadian Plan; and (B) for greater certainty, all expenses in respect of the pursuit of the Debtors' Claims (as defined in the Canadian Plan) are to be paid from the Litigation Reserve and not from the Operating Reserve.

(ii)    Unresolved Claims Reserve. Consistent with the terms of the Canadian Plan and subject to the requirements set forth in such plan, within 150 calendar days of the Effective Date, the Plan Administrator, with prior approval of the Plan Committee and the Monitor, shall establish the Unresolved Claims Reserve and deposit cash, in one or more separate accounts, in the aggregate amount sufficient to pay each holder of un Unresolved Claim: (A) the amount of cash that such holder would have been entitled to receive under this Plan if such Unresolved Claim had been an Allowed Claim on the Effective Date or (B) such lesser amounts as the CCAA Court may determine.

(b)    Subsequent Establishment of Accounts Reserves and Escrows. On or after the Effective Date, the Plan Administrator, with prior approval of the Plan Committee and the Monitor, may establish and maintain such additional accounts, reserves and escrows, including sub-escrows for particular claims against the Canadian Debtors, as may be required by applicable law or as necessary to carry out the provisions of the Canadian Plan and this Plan Administration Agreement.

15

Section 3.4    Distributions to Holders of Allowed Claims.

(a)    Effective Date and Subsequent Distributions Under the U.S. Plan. Consistent with the terms of the U.S. Plan (Sections 5.1 through 5.7) and the Confirmation Order, and subject to the requirements set forth therein, the Plan Administrator shall cause the Reorganized U.S. Debtors to make payments and distributions in accordance with Article 11 of the U.S. Plan.

(b)    Effective Date and Subsequent Distributions Under the Canadian Plan. Consistent with the terms of the Canadian Plan and the Sanction Order, and subject to the requirements set forth therein, the Plan Administrator shall cause the Canadian Debtors to make payments and distributions in accordance with Article 5 of the Canadian Plan.

Section 3.5    Conversion of Assets to Cash. Subject to the terms of the Plans, the Plan Administrator, with prior approval of the Plan Committee, shall sell or otherwise dispose of, and liquidate or convert into cash, any remaining non-cash assets of the U.S. Estates and Canadian Debtors, if any, in a manner consistent with the best interests of the holders of Allowed Claims.

Section 3.6    Dissolution of Reorganized U.S. Debtors and Canadian Debtors. The Plan Administrator may, upon the direction of the Plan Committee, take any and all steps necessary to effect the dissolution of any of the Reorganized U.S. Debtors and the Canadian Debtors provided that such Reorganized U.S. Debtors and the Canadian Debtors (other than with respect to Reorganized TUSA) have no remaining marketable assets, including, but not limited to, filing by or on behalf of the Reorganized U.S. Debtors and the Canadian Debtors certificates of dissolution with the appropriate state, provincial or federal authorities. All actions taken by the Plan Administrator in fulfillment of the Plan Administrator's obligations under this Section 3.6 shall be taken in full compliance with all applicable laws.

Section 3.7    Sale and Voting of the Stock. The Plan Administrator shall not sell, transfer or otherwise dispose of the TINC shares absent the prior written consent of the Plan Committee. The Plan Administrator shall (unless otherwise directed by the holders of at least 75% of the dollar value of Allowed Unsecured Claims) vote either directly or indirectly the TINC shares on any matter requiring a vote of shareholders under the Delaware law or Canadian Law, as applicable, in accordance with the written directions of the Plan Committee, provided that from and after the Effective Date, the Plan Administrator (i) shall serve as the sole officer and sole director of the Reorganized U.S. Debtors and the Canadian Debtors and (ii) shall be authorized to execute, deliver, file or record such documents, instruments, releases and other agreements and to take such actions as may be necessary or appropriate to effect and further evidence the terms and conditions of the Plans.

Section 3.8    Causes of Action; Consummation of Settlement Agreements. The Plan Administrator for and on behalf of the Reorganized U.S. Debtors and the Canadian Debtors, may, with prior approval of the Plan Committee, enforce, sue on, settle or compromise (or decline to do any of the foregoing) any or all of the Causes of Action. The Plan Administrator, subject to Section 3.1 of this Plan Administration Agreement, shall monitor and take all reasonable steps necessary to ensure the consummation of any settlement agreement that may affect the amounts available for distribution as set out in Section 3.4 herein.

16

Section 3.9    Authority to Object to and Settle Disputed Claims Under the U.S. Plan.

(a)    The Plan Administrator shall be primarily responsible for the claims reconciliation process with respect to the allowance and payment of Unsecured, Administrative, Priority, or Secured Claims, and shall be authorized (a) to object to any Claims filed against any of the U.S. Estates and (b) pursuant to Bankruptcy Rule 9019(b) and section 105(a) of the Bankruptcy Code, to compromise and settle Disputed Claims. Upon prior approval by the Plan Committee, the Plan Administrator shall be authorized and empowered to settle any Disputed Unsecured Claim for an Allowed amount of less than $250,000 and any Disputed Administrative, Priority Tax, Other Priority or Secured Claim for an Allowed amount of less than $50,000 and execute any documentation necessary in connection with such settlement without an order of the Bankruptcy Court.

(b)    With respect to Disputed Unsecured Claims that the Plan Administrator proposes to settle for greater than $250,000 and Disputed Administrative, Priority Tax, Other Priority or Secured Claims that the Plan Administrator proposes to settle for greater than $50,000, the Plan Administrator shall file a motion with the Bankruptcy Court seeking approval of any such proposed settlements and provide appropriate notice as required by the Bankruptcy Rules.

Section 3.10    Authority to Object to and Settle Unresolved Claims Under the Canadian Plan. The Plan Administrator shall be empowered to object to any Claims asserted against any of the Canadian Debtors and to resolve any Unresolved Claims which exist as at the Effective Date or arise thereafter, pursuant to the terms of the Canadian Plan, the Claims Procedures Order and the Meeting Order (each as defined in the Canadian Plan).

Section 3.11    Additional Powers of the Plan Administrator. The Plan Administrator shall have the following specific powers (all exercisable under and subject to the ongoing guidance, direction and consent of the Plan Committee) in addition to any other powers conferred upon the Plan Administrator by any other section or provision of this Plan Administration Agreement, the Litigation Protocol, the Plans, the Confirmation Order or the Sanction Order; provided, however, that the enumeration of the following powers shall not be considered in any way to limit or control the power of the Plan Administrator to act as specifically authorized by any other section or provision of this Plan Administration Agreement:

(a)    investing the Reorganized U.S. Debtors' and Canadian Debtors' cash, including, but not limited to, the cash held in the reserves set out in Sections 3.2 and 3.3 in this Plan Administration Agreement in (A) direct obligations of the United States of America or obligations of any agency or instrumentality thereof that are guaranteed by the full faith and credit of the United States of America; (B) short term obligations of the United States Treasury and repurchase agreements fully collateralized by obligations of the United States Treasury, including funds consisting solely or primarily of such obligations and repurchase agreements; (C) money market deposit accounts, checking accounts, savings accounts or certificates of deposit, or other time deposit accounts that are issued by a commercial bank or savings institution organized under the laws of the United States of America or any state thereof or Canada; or (D) any other investments that may be permissible under (I) section 345 of the Bankruptcy Code or (II) any order of the Bankruptcy Court entered in the Chapter 11 Cases or the CCAA Court;

17

(b)    calculating and paying all distributions to be made under the Plans, this Plan Administration Agreement and other orders of the Bankruptcy Court or the CCAA Court to holders of Allowed Claims;

(c)    employing, supervising and compensating Administrator Professionals retained from time to time with the consent of the Plan Committee to represent the interests of and serve on behalf of the Reorganized U.S. Debtors and the Canadian Debtors;

(d)    employing, supervising and compensating any employees of the Reorganized U.S. Debtors and the Canadian Debtors;

(e)    increasing the Litigation Reserve in accordance with the Litigation Protocol and as set out herein;

(f)    making and filing tax returns for any of the Debtors and the Reorganized U.S. Debtors and the Canadian Debtors;

(g)    seeking estimation of contingent or unliquidated Claims filed against the Debtors and the U.S. Estates and Canadian Debtors;

(h)    seeking determination of tax liability under section 505 of the Bankruptcy Code or under the *Income Tax Act* (Canada), as applicable;

(i)    prosecuting, settling, dismissing or otherwise disposing of avoidance actions under sections 544, 545, 547, 548, 549 and 553 of the Bankruptcy Code;

(j)    prosecuting, settling, dismissing or otherwise disposing of turnover actions under sections 542 and 543 of the Bankruptcy Code;

(k)    prosecuting, settling, dismissing or otherwise disposing of the VarTec Claims and all other Debtors' Claims;

(l)    pursuing the sale, liquidation and/or recovery of any and all assets of the Debtors;

(m)    dissolving, restructuring and/or merging the Reorganized U.S. Debtors and the Canadian Debtors in accordance with the Plans, including entering into and consummating the Restructuring Transactions, as applicable, and/or at the direction of the Plan Committee;

(n)    exercising all powers and rights, and taking all actions, contemplated by or provided for in this Plan Administration Agreement;

(o)    asserting any claims or commencing any litigation or other proceedings on behalf of any of the Debtors, the Reorganized U.S. Debtors and the Canadian Debtors or the U.S Estates and Canadian Debtors against any person or entity or continuing, amending or discontinuing any litigation or other proceedings;

18

(p)     taking any and all other actions necessary or appropriate to implement or consummate the Plans, the Litigation Protocol and the provisions of this Plan Administration Agreement; and

(q)     entering into one or more tax sharing agreements with Teleglobe Marine (U.S.), Inc. and Teleglobe Submarine Inc. to allocate tax benefits (i.e., net operating losses) to such entities in order to maximize the equity interests of the Reorganized U.S. Debtors and/or U.S. Estates in such entities.

## ARTICLE IV
## DUTIES, OBLIGATIONS, POWERS AND RIGHTS OF THE PLAN ADMINISTRATOR WITH RESPECT TO THE LITIGATION PROTOCOL

Section 4.1     Oversight of the Litigation Proceedings.   With respect to the pursuit, dismissal or settlement of the Litigation Proceedings, including the BCE/D&O U.S. Litigation, the Plan Administrator shall be the sole representative of the Reorganized U.S. Debtors, the Canadian Debtors and the U.S. Estates and shall have all of their respective rights and powers (including, without limitation, any attorney/solicitor-client privilege rights of the Debtors) with respect to the Litigation Proceedings, including the BCE/D&O U.S. Litigation.  The Plan Administrator shall consult with the Plan Committee on a regular basis regarding the status of the Litigation Proceedings.  The Plan Committee shall be solely entitled to instruct and supervise the Plan Administrator with respect to all material decisions concerning the Litigation Proceedings, including the BCE/D&O U.S. Litigation, including the continued prosecution, settlement, commencement or dismissal of the Litigation Proceedings and otherwise as may be reasonably necessary for the Plan Committee to give any required instructions to the Plan Administrator in a timely manner.  Notwithstanding anything in the U.S. Plan, Canadian Plan, Confirmation Order or Sanction Order to the contrary, the Plan Administrator shall have no authority to act on behalf of the Debtors, the Reorganized U.S. Debtors or the U.S. Estates and the Canadian Debtors without first obtaining the Plan Committee's prior approval for such actions (other than actions which are purely administrative in nature) and shall not exercise any rights or take any actions on behalf of the Debtors, the Reorganized U.S. Debtors or the U.S. Estates and the Canadian Debtors with regard to the Litigation Proceedings, including the BCE/D&O U.S. Litigation, in a manner contrary to the direction of a majority of the Plan Committee; provided, however, that the Plan Administrator shall have the authority to seek an order from the Bankruptcy Court and the CCAA Court solely with respect to directives of the Plan Committee which the Plan Administrator believes would be improper under applicable law if implemented.

Section 4.2     The Litigation Reserve.

(a)     Establishment of the Litigation Reserve.   The Plan Administrator shall create and fund the Litigation Reserve in the aggregate initial amount of ten million dollars ($10,000,000.00) (five million dollars ($5,000,000.00) of which shall be funded by the U.S. Estates and five million dollars ($5,000,000.00) of which shall be funded from the Canadian Debtors), which can be increased from time to time in accordance with the Litigation Protocol and this Section 4.2.  The Litigation Reserve shall be established and funded on the Effective Date.  Upon completion of the Litigation Proceedings, any funds remaining in the Litigation

Reserve shall be transferred to the Joint U.S./Canada Disbursement Account and distributed by the Plan Administrator in accordance with the terms of the Litigation Protocol.

(b)    Supplementation of the Litigation Reserve. The Plan Administrator may increase the Litigation Reserve, provided that any increases to the Litigation Reserve shall be made from the net proceeds derived from any realization, dispositions or recovery in respect of the Debtors' assets from and after the Effective Date, including, without limitation, net proceeds derived from the Litigation Proceedings (the "Post Effective Date Assets"). Any supplemental increases made to the Litigation Reserve with proceeds derived from Post Effective Date Assets shall be made on an equal basis by the Canadian Debtors and the U.S. Debtors. If either of the Canadian Debtors or the U.S. Debtors contribute more to the Litigation Reserve than the other parties, then the parties contributing such greater amount shall be repaid the excess amount from the Litigation Reserve or from any net proceeds resulting from the Debtors' Claims, in priority to any distributions. The Debtors and their representatives may also borrow funds to increase the Litigation Reserve on terms acceptable to the Plan Administrator and the Plan Committee, provided that they may only grant security for any such borrowings against the Post Effective Date Assets.

Section 4.3    Distribution of Litigation Proceeds.

(a)    Joint U.S./Canada Disbursement Account. The Litigation Proceeds will be deposited by the Plan Administrator into a single disbursement account established in accordance with Section IV(a) of the Litigation Protocol for the benefit of holders of Allowed Joint U.S./Canada Claims (the "Joint U.S./Canada Disbursement Account").

(b)    Pro Rata Distributions. Upon the date as determined by the Plan Administrator, with the prior approval of the Plan Committee, the Litigation Proceeds shall be distributed to holders of Allowed Joint U.S./Canada Claims (as defined in the Litigation Protocol) on a Pro Rata Basis.

(c)    No Duplicate Distributions. To the extent that more than one Debtor is liable for the same Joint U.S./Canada Claim, such claim shall be considered a single claim against the Debtors for purposes relating to Pro Rata Basis calculation and distribution of any Litigation Proceeds. Claims which were filed both in the Chapter 11 Cases and the CCAA Proceedings, shall be deemed to be the same Claim for purposes of this Section 4.3(b).

(d)    Distributions of the Litigation Proceeds. The timing and manner of distributions of the Litigation Proceeds shall be made in accordance with the Litigation Protocol.

Section 4.4    Rights, Powers and Duties of Plan Administrator. The rights, powers and duties exercisable by the Plan Administrator pursuant to the Plans and the Litigation Protocol shall include (all exercisable under and subject to the ongoing guidance, direction and consent of the Plan Committee), among other things:

(a)    investing the cash held in the Litigation Reserve and the Litigation Proceeds in (A) direct obligations of the United States of America or obligations of any agency or instrumentality thereof which are guaranteed by the full faith and credit of the United States of America; (B) short term obligations of the United States Treasury and repurchase agreements

20

fully collateralized by obligations of the United States Treasury, including funds consisting solely or primarily of such obligations and repurchase agreements; (C) money market deposit accounts, checking accounts, savings accounts or certificates of deposit, or other time deposit accounts that are issued by a commercial bank or savings institution organized under the laws of the United States of America or any state thereof or Canada; or (D) any other investments that may be permissible under (I) section 345 of the Bankruptcy Code or (II) any order of the Bankruptcy Court entered or in the Chapter 11 Cases or the CCAA Court;

(b)     paying all distributions to be made under the Litigation Protocol to holders of Allowed Joint U.S./Canada Claims on a Pro Rata Basis;

(c)     employing, supervising and compensating Administrator Professionals retained to represent the interests of and serve on behalf of the Reorganized U.S. Debtors or the U.S. Estates and the Canadian Debtors in connection with the Litigation Proceedings;

(d)     taking any or all actions necessary or appropriate to implement or consummate the Litigation Protocol; and

(e)     being the representative of the Reorganized U.S. Debtors or the U.S. Estates and the Canadian Debtors with respect to the Litigation Proceedings and pursuing, dismissing, commencing or settling such Litigation Proceedings in accordance with the Plans, the Plan Administrator Agreement and the Litigation Protocol.

## ARTICLE V

## FINAL DUTIES AND OBLIGATIONS

Section 5.1     Final Duties and Obligations. As soon as practicable after the Plan Administrator exhausts the assets of the U.S. Estates and Canadian Debtors by making the Final Distribution of assets under the Plans, this Plan Administration Agreement and the Litigation Protocol, and this Plan Administration Agreement and has complied with and fulfilled her obligations under the Plans, the Plan Administrator shall (a) provide for the retention and storage of the books, records and files that shall have been delivered to or created by the Plan Administrator until such time as all such books, records and files are no longer required to be retained under applicable law, and file a certificate informing the Plan Committee, the Bankruptcy Court and the CCAA Court of the location at which such books, records and files are being stored; (b) file with the Bankruptcy Court and the CCAA Court a certificate stating that the assets of the U.S. Estates and Canadian Debtors, respectively, have been fully realized upon and final distributions have been made under the U.S. Plan and the Canadian Plan; and (c) file with the Bankruptcy Court and the CCAA Court all documents necessary to effect the closing of the Chapter 11 Cases and the CCAA Proceedings. In addition to the foregoing, the Plan Administrator may, upon the direction of the Plan Committee, file the necessary documents with the appropriate authorities to effect the dissolution of the Reorganized U.S. Debtors and the Canadian Debtors, as applicable, in accordance with applicable laws. Upon the assets of the U.S. Estates and Canadian Debtors having been fully realized upon and completion of the action specified in this Section 5.1, this Plan Administration Agreement shall terminate, subject to Section 5.2 of this Plan Administration Agreement. Sections 2.3, 2.6, 7.11 and 7.12 herein shall survive the termination of the Plan Administration Agreement.

Section 5.2    No Other Duties or Obligations.  Except as otherwise specifically provided herein, after the termination of this Plan Administration Agreement pursuant to Section 5.1 above, the Plan Administrator shall have no further duties or obligations hereunder; provided, however, that the Plan Administrator shall do or cause to be done all such acts and things and to execute and deliver all such documents and instruments as may be required to complete all matters set out in or contemplated by this Plan Administration Agreement, the Plans, the Litigation Protocol, the Confirmation Order and the Sanction Order.

## ARTICLE VI

## PLAN COMMITTEE

Section 6.1    Creation of Plan Committee; Procedures.  On the Effective Date, the Plan Committee shall be formed and constituted.  The Plan Committee shall consist of no less than one (1) member and no more than five (5) members who shall be selected jointly on behalf of the holders of Allowed Joint U.S./Canada Claims by counsel to the Prepetition Lenders and the Bondholders and whose identities shall be disclosed to the Bankruptcy Court at or prior to the Confirmation Hearing and the Sanction Hearing.  The initial members of the Plan Committee shall include Provident Investment Management, LLC, Stonehill Capital Management LLC, The Bank of Nova Scotia and DK Acquisition Partners L.P., or their respective designees.

Section 6.2    Function and Duration; Compensation and Expenses.  The Plan Committee (i) shall be responsible for (A) instructing and supervising the Plan Administrator with respect to its responsibilities under the Plans, this Plan Administration Agreement and the Litigation Protocol, (B) overseeing and reviewing the prosecution of the Causes of Action including proposed settlements thereof, (C) reviewing objections to and proposed settlements of Disputed Claims asserted against one or more Debtors, and (D) performing such other duties that are necessary and proper to assist the Plan Administrator and the Reorganized U.S. Debtors' and the Canadian Debtors' professionals, and (ii) shall remain in existence until such time as the Final Distribution Date, at which time the Plan Committee shall be automatically discharged and released of any further responsibilities, powers or obligations.  The members of the Plan Committee shall serve without compensation for their performance of services as members of the Plan Committee, except that they shall be entitled to reimbursement of reasonable expenses incurred in connection with their duties described herein by the Reorganized U.S. Debtors or the Canadian Debtors or by both equally, as the case may be, including professional fees.

Section 6.3    Manner of Acting.

(a)    A majority of the total number of members of the Plan Committee then in office who are not conflicted members (as defined in Section 6.3(c) hereof) shall constitute a quorum for the transaction of business at any meeting of the Plan Committee.  The affirmative vote of a majority of the members of the Plan Committee present and entitled to vote at a meeting at which a quorum is present shall be the act of the Plan Committee except as otherwise required by law.  Any or all of the members of the Plan Committee may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone or similar communications equipment by means of which all persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding thereof.  Any member of the

22

Plan Committee participating in a meeting by this means is deemed to be present in person at the meeting

(b)     Any member of the Plan Committee who is present and entitled to vote at a meeting of the Plan Committee when action is taken is deemed to have assented to the action taken unless: (i) such member of the Plan Committee objects at the beginning of the meeting (or promptly upon his/her arrival) to holding it or transacting business at the meeting; or (ii) his/her dissent or abstention from the action taken is entered in the minutes of the meeting; or (iii) he/she delivers written notice of his/her dissent or abstention to the Plan Committee before its adjournment. The right of dissent or abstention is not available to any member of the Plan Committee who votes in favor of the action taken.

(c)     Prior to the taking of a vote on any matter or issue or the taking of any action with respect to any matter or issue, each member of the Plan Committee shall report to the Plan Committee any conflict of interest such member has or may have in respect to the matter or issue at hand and fully disclose the nature of such conflict or potential conflict (including, without limitation, disclosing any and all financial or other pecuniary interests that such member might have with respect to or in connection with such matter or issue ). A member who has or who may have a conflict of interest shall be deemed to be a "conflicted member" who shall not be entitled to vote or take part in any action with respect to such matter or issue; the vote or action with respect to such matter or issue shall be undertaken only by members of the Plan Committee who are not "conflicted members."

Section 6.4     Plan Committee's Action Without a Meeting. Any action required or permitted to be taken by the Plan Committee at a meeting may be taken without a meeting if the action is taken by unanimous written consent of the Plan Committee as evidenced by one or more written consents describing the action taken, signed by all members of the Plan Committee and filed with the minutes or proceedings of the Plan Committee.

Section 6.5     Tenure, Removal and Replacement of the Members of the Plan Committee. The authority of the members of the Plan Committee will be effective as of the Effective Date and will remain and continue in full force and effect until the Final Distribution Date. The service of the members of the Plan Committee will be subject to the following:

(a)     The members of the Plan Committee will serve until death or resignation pursuant to subsection (b) below, or removal pursuant to subsection (c) below.

(b)     A member of the Plan Committee may resign at any time by providing a written notice of resignation to the remaining members of the Plan Committee. Such resignation will be effective upon the date specified in the written notice.

(c)     A member of the Plan Committee may be removed by the unanimous resolution of the other members of the Plan Committee, a copy of which shall be delivered to the removed member; provided, however, that such removal may only be made for Cause. For purposes of this section, "Cause" shall be defined as: (i) such Plan Committee member's theft or embezzlement or attempted theft or embezzlement of money or tangible or intangible assets or property; (ii) such Plan Committee member's violation of any law (whether foreign or domestic), which results in a felony indictment or similar judicial proceeding; (iii) such Plan Committee

23

member's recklessness, gross negligence, willful misconduct, or breach of fiduciary duty or knowing violation of law, in the performance of his or her duties; or (iv) such Plan Committee member's failure to perform any of his or her other material duties under this Plan Administration Agreement; provided, however, that such Plan Committee member shall have been given a reasonable period to cure any alleged Cause under clauses (iii) (other than willful misconduct) and (iv).

(d)     In the event of a vacancy in the Plan Committee (whether by removal, death or resignation), a new member may be appointed to fill such position by a majority of the remaining members of the Plan Committee. In the event that there are no remaining members of the Plan Committee, appointments to fill such vacancies that would have been made by a majority of the remaining members of the Plan Committee shall be made upon an order entered after an opportunity for a joint hearing by the Bankruptcy Court and the CCAA Court, upon motion of the Plan Administrator with the appropriate consultations of the Prepetition Lenders and the Bondholders. The appointment of a successor member of the Plan Committee will be evidenced by the filing with the Bankruptcy Court and the CCAA Court of a notice of appointment, which notice will include the name, address and telephone number of the successor member of the Plan Committee.

(e)     Immediately upon the appointment of any successor member of the Plan Committee, all rights, powers, duties, authority and privileges of the predecessor member of the Plan Committee hereunder will be vested in and undertaken by the successor member of the Plan Committee without any further act, and the successor member of the Plan Committee will not be liable personally for any act or omission of the predecessor member of the Plan Committee.

Section 6.6     Immunity. To the greatest extent permitted by applicable law, each member of the Plan Committee and the Plan Administrator shall have immunity from any liability which may otherwise attach to such person in exercising his power and authority under this Plan Administration Agreement, the Litigation Protocol and the Plans, provided that such person acts in good faith and, for all purposes, each such person shall be presumed prima facie to be acting in good faith.

Section 6.7     Entitlement of Plan Committee to Reports and Information. The Plan Committee shall be entitled to receive reports and information concerning the business and affairs of the Reorganized U.S. Debtors and the Canadian Debtors but shall not have any powers or authorities with respect thereto except as expressly provided herein. The Plan Committee may from time to time engage professional advisors (including legal counsel and financial advisors) and experts to assist and represent the Plan Committee.

Section 6.8     Trading by Members of Plan Committee. Subject to Article 12 of the U.S. Plan, members of the Plan Committee shall be entitled to trade securities of the Debtors in accordance with applicable laws and regulations and shall be entitled to establish appropriate firewalls to enable their respective institutions to trade securities of the Debtors without restriction, to the extent permitted by applicable laws and regulations.

24

## ARTICLE VII

## GENERAL PROVISIONS

Section 7.1    Descriptive Headings. The headings contained in this Plan Administration Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Plan Administration Agreement.

Section 7 2    Amendment, Waiver and Modification. This Plan Administration Agreement may not be amended except by an instrument executed (a) by the Debtors and the Plan Administrator on or before the Effective Date and (b) by the Plan Committee, the Reorganized U.S. Debtors and the Canadian Debtors and the Plan Administrator following the Effective Date.

Section 7.3    Governing Law. This Plan Administration Agreement shall be jointly governed by and construed in accordance with the laws of the State of Delaware and the laws of the Province of Ontario and the laws of Canada, without regard to the rules of conflict of laws of the State of Delaware or the Province of Ontario or the laws of Canada applicable therein. Where a matter or dispute involves the interests of both the U.S. Debtors or the U.S. Estates and/or the Canadian Debtors, the Plan Administrator and other parties may request that such matters in dispute be referred to a joint hearing before the Bankruptcy Court and the CCAA Court for resolution. However, where a dispute or matter involves only the interests of the U.S. Debtors, the U S. Estates or the Reorganized U.S. Debtors, such dispute or matter shall be governed and construed in accordance with the laws of the State of Delaware and shall be referred to the Bankruptcy Court for resolution. Additionally, where a dispute or matter involves only the interests of the Canadian Debtors, such dispute or matter shall be governed by the laws of the Province of Ontario and the laws of Canada applicable therein, as appropriate, and shall be referred to the CCAA Court for resolution. Finally, all employment related matters or disputes concerning the Plan Administrator shall be governed and construed in accordance with the laws of the State of Delaware and shall be referred to the Bankruptcy Court for resolution.

Section 7.4    Counterparts; Effectiveness. This Plan Administration Agreement may be executed in counterparts and by means of facsimile transmission, each of which shall be deemed to be an original but all of which shall constitute one and the same agreement.

Section 7.5    Severability: Validity. If any provision of this Plan Administration Agreement or the application thereof to any person or circumstance is held invalid or unenforceable, the remainder of this Plan Administration Agreement, and the application of such provision to other persons or circumstances, shall not be affected thereby, and to such end, the provisions of this Plan Administration Agreement are agreed to be severable.

Section 7.6    Notices. Any notice or other communication hereunder shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows (or at such other address for such entity as shall be specified by like notice):

25

*If to the Plan Administrator:*

Kathy Morgan
Teleglobe USA Inc.
11495 Commerce Park Drive
Reston, Virginia 20191
Telephone:  703-755-2042
Facsimile:  703-755-2610

*with copies to:*

HAHN & HESSEN LLP
488 Madison Avenue
14th and 15th Floors
New York, New York 10022
Telephone:  212-478-7200
Facsimile:  212-478-7400
Attn:  Mark S. Indelicato, Esq.

ROSENTHAL, MONHAIT, GROSS & GODDESS, P.A.
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, Delaware 19899
Telephone: 302-656-4433
Facsimile: 302-658-7567
Attn:  Kevin Gross, Esq.

RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
Telephone: 302-651-7700
Facsimile: 302-651-7701
Attn:  Mark D. Collins, Esq.

MAYER BROWN ROWE & MAW
190 South LaSalle Street
Chicago, Illinois 60603-3441
Telephone:  312-782-0600
Facsimile:  312-701-7711
Attn:  J. Robert Stoll, Esq

26

BENNETT JONES, LLP
Suite 3400, 100 King Street West
Toronto, Ontario M5X 1A4
Canada
Telephone: 416-863-1200
Facsimile: 416-863-1716
Attn: S. Richard Orzy, Esq. and Kevin Zych, Esq.

GOODMANS LLP
250 Yonge Street, Suite 2400
Toronto, Ontario M5B 2M6
Telephone: 416-597-6278
Facsimile: 416-863-1716
Attn: Geoffrey Morawetz, Esq. and Robert J. Chadwick, Esq.

Section 7.7    Relationship to Plans and Litigation Protocol.  The Plan Administrator shall have full power and authority to take any action consistent with the purposes and provisions of the Plans and the Litigation Protocol; provided, that, such provisions are not inconsistent with the terms of this Plan Administration Agreement.  In the event that the provisions of either of the Plans or the Litigation Protocol are found to conflict or otherwise be inconsistent with the provisions of the Plan Administration Agreement, the provisions of this Plan Administration Agreement shall govern.

Section 7.8    Retention of Jurisdiction.  Subject to Section 7.3 of this Plan Administration Agreement, the Bankruptcy Court and the CCAA Court, as the case may be, shall retain jurisdiction over the U.S. Estates and the Canadian Debtors, respectively, to the fullest extent permitted by law, including, but not limited to, for the purposes of interpreting and implementing the provisions of this Plan Administration Agreement; provided, however, that the retention of jurisdiction shall not require the retention or payment of the Plan Administrator or Administrator Professionals to be approved by the Bankruptcy Court or the CCAA Court.

Section 7.9    Assignment.  Neither this Plan Administration Agreement nor any of the rights, duties or obligations of either of the parties hereto may be assigned without the prior written consent of the other party hereto; provided, however, that nothing in this section shall limit or be deemed to limit vesting of all rights, powers, obligations and duties of the Plan Administrator under this Plan Administration Agreement, the Litigation Protocol, the U.S. Plan, the Canadian Plan, any order of the Bankruptcy Court or the CCAA Court and applicable law, to any successor Plan Administrator pursuant to Section 2.7 of this Plan Administration Agreement.

Section 7.10    Plan Committee.  In the event that no one is willing to serve on the Plan Committee or there shall have been no Plan Committee members for a period of thirty (30) consecutive days, then:

    (a)    except as otherwise provided in clause (b) of this Section 7.10, the Plan Administrator may, during such vacancy and thereafter, ignore any reference in the Plans, this Plan Administration Agreement or the Confirmation Order, to a Plan Committee, and all references to the Plan Committee's ongoing duties and rights in the Plans, this Plan

27

Administration Agreement and the Confirmation Order will be null and void; or

(b)     the Bankruptcy Court and the CCAA Court, as the case may be, may exercise, during such vacancy and thereafter, the powers, rights and privileges afforded to the Plan Committee under this Plan Administration Agreement.

Section 7.11    Indemnification. The Reorganized U.S. Debtors and the Canadian Debtors shall, to the fullest extent permitted by applicable law, indemnify and hold harmless the Plan Administrator (in its capacity as such), the Plan Committee and each member thereof and each of their respective agents, representatives, professionals, including Administrator Professionals, and employees (collectively the "Indemnified Parties") from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to attorneys' fees, arising out of or due to their actions or omissions, or consequences of such actions or omissions, other than actions or omissions resulting from the Indemnified Party's willful misconduct or gross negligence, with respect to the Reorganized U.S. Debtors or the U.S. Estates and the Canadian Debtors or the implementation or administration of the Plans, the Litigation Protocol and this Plan Administration Agreement. The indemnification provisions of this Plan Administration Agreement shall remain available to and be binding upon any former Plan Administrator and shall survive the termination of this Plan Administration Agreement.

Section 7.12    Insurance. The Plan Administrator shall be authorized to obtain all reasonably necessary insurance coverage for itself, the Debtors, the Plan Committee and each member thereof, their respective agents, representatives, employees or independent contractors, and the Reorganized U.S. Debtors and the Canadian Debtors, including, but not limited to, coverage with respect to (i) any property that is or may in the future become the property of the Debtors or the Canadian Debtors and (ii) the liabilities, duties and obligations of the Plan Administrator, the Plan Committee and each member thereof, and each of their respective agents, representatives, employees or independent contractors (in the form of an errors and omissions policy or otherwise), the latter of which insurance coverage may, at the sole option of the Plan Committee, remain in effect for a reasonable period (not to exceed seven (7) years but in no event less than three (3) years) after the termination of this Plan Administration Agreement.

Section 7.13    Reliance by Plan Administrator. The Plan Administrator and the Plan Committee and every member thereof may rely, and shall be fully protected in acting or refraining from acting if it relies, upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that the Plan Administrator or the Plan Committee reasonably believes to be genuine and to have been signed or presented by the party or parties properly authorized to do so or, in the case of cables, telecopies and telexes, to have been sent by the proper party or parties, and the Plan Administrator and the Plan Committee and every member thereof may conclusively rely as to the truth of the statements and correctness of the opinions expressed therein. The Plan Administrator and the Plan Committee may consult with counsel and other professionals with respect to matters in their area of expertise, and any opinion of counsel shall be full and complete authorization and protection in respect of any action taken or not taken by the Plan Administrator or the Plan Committee. The Plan Administrator and the Plan Committee shall be entitled to rely

28

upon the advice of such professionals in acting or failing to act, and shall not be liable for any act taken or not taken in reliance thereon.

Section 7.14    Transactions with Related Persons.  Notwithstanding any other provisions of this Plan Administration Agreement, the Plan Administrator shall not knowingly, directly or indirectly, sell or otherwise transfer all or any part of the assets of the U.S. Estates or Canadian Debtors to, or contract with, (a) any relative, employee or agent (acting in their individual capacities) of the Plan Administrator or (b) any person of which any employee or agent of the Plan Administrator is an affiliate by reason of being a trustee, director, officer, partner or direct or indirect beneficial owner of five percent (5%) or more of the outstanding capital stock, shares or other equity interest of such persons unless, in each such case, after full disclosure of such interest or affiliation, such transaction is approved by the Plan Committee and the Plan Committee determines that the terms of such transaction are fair and reasonable to the Reorganized U.S. Debtors and the Canadian Debtors and no less favorable to the Reorganized U.S. Debtors and the Canadian Debtors than terms available for a comparable transaction with unrelated persons.

Section 7.15    Use of Assets.  All cash or other property held or collected by the Plan Administrator shall be used solely for the purposes contemplated by the U.S. Plan, the Canadian Plan, the Litigation Protocol or this Plan Administration Agreement.

Section 7.16    Maintenance of Books and Records.  The Plan Administrator shall maintain such books and records as are required under applicable law or requested by the Plan Committee and such books and records may be viewed and copies made thereof by the Plan Committee.

Section 7.17    Compliance with Tax Requirements.  In accordance with the U.S. Plan and the Canadian Plan and the distributions made in accordance therewith, to the extent applicable, the U.S. Debtors, the Reorganized U.S. Debtors, the Canadian Debtors and the Plan Administrator shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit and all distributions pursuant to the U.S. Plan or Canadian Plan shall be subject to such withholding and reporting requirements. The U.S. Debtors, the Reorganized U.S. Debtors, the Canadian Debtors and the Plan Administrator shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

Section 7.18    Exculpations.  The Plan Administrator, the Reorganized U.S. Debtors' and the Canadian Debtors' officers, employees, shareholders and directors, the Plan Committee, and each member of the Plan Committee and its officers, employees, shareholders and directors, shall be exculpated and not be liable for their respective acts and omissions performed or omitted in accordance with this Plan Administration Agreement except to the extent that such acts and/or omissions constitute willful misconduct or gross negligence.

IN WITNESS WHEREOF, the parties have caused this Plan Administration Agreement to be executed on their behalf by their duly authorized officers as of the date first above written.

Kathy Morgan, in her capacity as Plan
Administrator

_Kathe Mor_

KROLL RESTRUCTURING LTD., solely in
its capacity as Interim Receiver for the
Canadian Debtors and not in its personal
capacity

By: _____
Name:
Title:

PROVIDENT INVESTMENT
MANAGEMENT, LLC, in its capacity as a
Plan Committee member

By: _____
Name:
Title:

STONEHILL CAPITAL MANAGEMENT
LLC, in its capacity as a Plan Committee
member

By: _____
Name:
Title:

TELEGLOBE HOLDINGS (U.S.) CORP. (on
behalf of itself and its affiliated U.S. Debtors)

By: _Kathle Morri_
Name: _Kathleen Anne Morgan_
Title: _President_

JP MORGAN CHASE BANK, N.A., in its
capacity as a Plan Committee member

By: _____
Name:
Title:

DK ACQUISITION PARTNERS, L.P., in its
capacity as a Plan Committee member

By: _____
Name:
Title:

30

IN WITNESS WHEREOF, the parties have caused this Plan Administration Agreement to be executed on their behalf by their duly authorized officers as of the date first above written.

Kathy Morgan, in her capacity as Plan Administrator

TELEGLOBE HOLDINGS (U.S.) CORP. (on behalf of itself and its affiliated U.S. Debtors)

By: _____

Name:

Title:

KROLL RESTRUCTURING LTD., solely in its capacity as Interim Receiver for the Canadian Debtors and not in its personal capacity

By: _____
Name: PAUL M. CASEY
Title: PRESIDENT

JP MORGAN CHASE BANK, N.A., in its capacity as a Plan Committee member

By: _____
Name:
Title:

PROVIDENT INVESTMENT MANAGEMENT, LLC, in its capacity as a Plan Committee member

DK ACQUISITION PARTNERS, L.P., in its capacity as a Plan Committee member

By: _____
Name:
Title:

By: _____
Name:
Title:

STONEHILL CAPITAL MANAGEMENT LLC, in its capacity as a Plan Committee member

By: _____
Name:
Title:

30

RLF1-2812433-4

IN WITNESS WHEREOF, the parties have caused this Plan Administration Agreement to be executed on their behalf by their duly authorized officers as of the date first above written.

Kathy Morgan, in her capacity as Plan Administrator

TELEGLOBE HOLDINGS (U.S.) CORP. (on behalf of itself and its affiliated U.S. Debtors)

By: _____

By: _____
Name:
Title:

KROLL RESTRUCTURING LTD., solely in its capacity as Interim Receiver for the Canadian Debtors and not in its personal capacity

JP MORGAN CHASE BANK, N.A., in its capacity as a Plan Committee member

By: _____

By: _____
Name:
Title:

Name: William T. Stront
Title: Managing Director

PROVIDENT INVESTMENT MANAGEMENT, LLC, in its capacity as a Plan Committee member

DK ACQUISITION PARTNERS, L.P., in its capacity as a Plan Committee member

By: _____
Name:
Title:

By: _____
Name:
Title:

STONEHILL CAPITAL MANAGEMENT LLC, in its capacity as a Plan Committee member

By: _____
Name:
Title:

30

IN WITNESS WHEREOF, the parties have caused this Plan Administration Agreement to be executed on their behalf by their duly authorized officers as of the date first above written.

Kathy Morgan, in her capacity as Plan Administrator

TELEGLOBE HOLDINGS (U.S.) CORP (on behalf of itself and its affiliated U.S. Debtors)

By: _____
Name:
Title:

KROLL RESTRUCTURING LTD., solely in its capacity as Interim Receiver for the Canadian Debtors and not in its personal capacity

JP MORGAN CHASE BANK, N.A., in its capacity as a Plan Committee member

By: _____
Name:
Title:

By: _____
Name:
Title:

PROVIDENT INVESTMENT MANAGEMENT, LLC, in its capacity as a Plan Committee member

DK ACQUISITION PARTNERS, L.P., in its capacity as a Plan Committee member

By: _Ben S. Miller_
Name: BEN S. MILLER
Title: VICE PRESIDENT

By: _____
Name:
Title:

STONEHILL CAPITAL MANAGEMENT LLC, in its capacity as a Plan Committee member

By: _____
Name:
Title:

30

RLF1-2812433-4

IN WITNESS WHEREOF, the parties have caused this Plan Administration Agreement to be executed on their behalf by their duly authorized officers as of the date first above written.

Kathy Morgan, in her capacity as Plan Administrator

TELEGLOBE HOLDINGS (U.S.) CORP. (on behalf of itself and its affiliated U.S. Debtors)

_____

By: _____
Name:
Title:

KROLL RESTRUCTURING LTD., solely in its capacity as Interim Receiver for the Canadian Debtors and not in its personal capacity

JP MORGAN CHASE BANK, N.A., in its capacity as a Plan Committee member

By: _____
Name:
Title:

By: _____
Name:
Title:

PROVIDENT INVESTMENT MANAGEMENT, LLC, in its capacity as a Plan Committee member

DK ACQUISITION PARTNERS, L.P., in its capacity as a Plan Committee member, by its General Partner, MH DAVIDSON & Co.

By: _____
Name:
Title:

By: _____
Name:
Title:

STONEHILL CAPITAL MANAGEMENT LLC, in its capacity as a Plan Committee member

By: _____
Name:
Title:

RLF1-2812433-4

IN WITNESS WHEREOF, the parties have caused this Plan Administration Agreement to be executed on their behalf by their duly authorized officers as of the date first above written.

Kathy Morgan, in her capacity as Plan Administrator

TELEGLOBE HOLDINGS (U.S.) CORP. (on behalf of itself and its affiliated U.S. Debtors)

By: _____
Name:
Title:

KROLL RESTRUCTURING LTD., solely in its capacity as Interim Receiver for the Canadian Debtors and not in its personal capacity

JP MORGAN CHASE BANK, N.A., in its capacity as a Plan Committee member

By: _____
Name:
Title:

By: _____
Name:
Title:

PROVIDENT INVESTMENT MANAGEMENT, LLC, in its capacity as a Plan Committee member

DK ACQUISITION PARTNERS, L.P., in its capacity as a Plan Committee member

By: _____
Name:
Title:

By: _____
Name:
Title:

STONEHILL CAPITAL MANAGEMENT LLC, in its capacity as a Plan Committee member

By: _John Motulsky_____
Name:
Title: MM

30

RLF1-2812433-4