# EXHIBIT 7

# ORIGINAL

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **TELEGLOBE COMMUNICATIONS** | : | **Jointly Administered** |
| **CORPORATION, a Delaware** | : | **Case No.: 02-11518 (MFW)** |
| **Corporation, et al.** [1] | : | |
| Debtors. | : | |
| | : | Re: Docket No. 2922 |

### ORDER CONFIRMING FIRST AMENDED JOINT CHAPTER 11 PLAN
### OF LIQUIDATION OF TELEGLOBE HOLDINGS (U.S.) CORPORATION,
### TELEGLOBE USA INC. AND CERTAIN OF THEIR DEBTOR AFFILIATES

WHEREAS, on November 5, 2004, Teleglobe Communications Corporation

("TCC"), Teleglobe USA Inc. ("TUSA"), Optel Telecommunications, Inc. ("Optel"), Teleglobe

Holdings (U.S.) Corporation ("THUSC"), Teleglobe Holding Corp. ("THC"), Teleglobe Telecom

Corporation ("TTC"), Teleglobe Investment Corp. ("TIC"), Teleglobe Luxembourg LLC

("TLUX") and Teleglobe Puerto Rico Inc. ("TPR", collectively with TCC, TUSA, Optel,

THUSC, THC, TTC, TIC, TLUX and TPR, the "U.S. Debtors") filed the Joint Chapter 11 Plan

of Liquidation of Teleglobe Holdings (U.S.) Corporation, Teleglobe USA Inc. and Certain of

Their Debtor Affiliates and related disclosure statement with the United States Bankruptcy Court

for the District of Delaware, 824 N. Market Street, Wilmington, Delaware 19801 (the "Court");

and

WHEREAS, on December 7, 2004, the U.S. Debtors filed the First Amended

Joint Chapter 11 Plan of Liquidation of Teleglobe Holdings (U.S.) Corporation, Teleglobe USA

---

[1] The following entities are debtors in the above-captioned chapter 11 cases: Teleglobe Communications Corporation, Teleglobe USA Inc., Optel Telecommunications, Inc., Teleglobe Holdings (U.S.) Corporation, Teleglobe Marine (U.S.) Inc., Teleglobe Holding Corp., Teleglobe Telecom Corporation, Teleglobe Investment Corp., Teleglobe Luxembourg LLC, Teleglobe Puerto Rico Inc. and Teleglobe Submarine Inc. Debtors Teleglobe Marine (U.S.) Inc. and Teleglobe Submarine Inc. are not proponents of the Plan (as defined herein).

Inc. and Certain of Their Debtor Affiliates (as it may be further amended, the "Plan") and Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code for the First Amended Joint Chapter 11 Plan of Liquidation of Teleglobe Holdings (U.S.) Corporation, Teleglobe USA Inc. and Certain of Their Debtor Affiliates (the "Disclosure Statement") with the Court; and

WHEREAS, on December 8, 2008, the Court entered an order approving the Disclosure Statement, pursuant to section 1125 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"), as containing adequate information; and

WHEREAS, on December 8, 2004, the Court entered an order (i) approving the form and manner of notice of the hearing on the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code, (ii) establishing procedures for the solicitation and tabulation of votes to accept or reject the Plan, including approval of (a) the forms of ballots for submitting votes on the Plan, (b) the deadline for submission of ballots, (c) the contents of proposed solicitation packages to be distributed to creditors and other parties in interest in connection with the solicitation of votes on the Plan (the "Solicitation Packages"), (d) the proposed record date for voting on the Plan and (e) certain related relief and (iii) scheduling a hearing on confirmation of the Plan and approving related notice procedures (the "Solicitation Procedures Order"); and

WHEREAS, Logan & Company Inc., the U.S. Debtors' tabulation and balloting agent (the "Balloting Agent"), transmitted the Solicitation Packages in compliance with the Solicitation Procedures Order, as attested to in (i) the Affidavit of Service of Kathleen M. Logan (Re: Service to Non-Voting Parties) [Docket No. 3038]; (ii) Affidavit of Service of Kathleen M. Logan (Re: Service to Holders of Class 1B Claims) [Docket No. 3039]; (iii) Affidavit of Service of Kathleen M. Logan (Re: Service to Holders of Class 1C Claims) [Docket No. 3045]; (iv) Affidavit of Kathleen M. Logan (Re: Service to Holders of Class 1C Claims - 7.2% Debentures

2

Due July 20, 2009) [Docket No. 3040]; (v) Affidavit of Kathleen M. Logan (Re: Service to Holders of Class 1C Claims - 7.7% Debentures Due July 20, 2029) [Docket No. 3041]; (vi) Affidavit of Kathleen M. Logan (Re: Service to Holders of Class 1C Claims - 8% Debentures Due October 23, 2026 (with master ballot)) [Docket No. 3042]; (vii) Affidavit of Kathleen M. Logan (Re: Service to Holders of Class 1C Claims - 8.35% Debentures Due June 20, 2003 (with master ballot)) [Docket No. 3043]; (viii) Affidavit of Kathleen M. Logan (Re: Service to Holders of Class 1C Claims - 8.85% Debentures Due November 15, 2002 (with master ballot)) [Docket No. 3044]; (ix) Affidavit of Kathleen M. Logan (Re: Service to Holders of Class 1C Claims - 8% Debentures Due October 23, 2026 (without master ballot)) [Docket No. 3046]; (x) Affidavit of Kathleen M. Logan (Re: Service to Holders of Class 1C Claims - 8.35% Debentures Due June 20, 2003 (without master ballot)) [Docket No. 3047]; (xi) Affidavit of Kathleen M. Logan (Re: Service to Holders of Class 1C Claims - 8.85% Debentures Due November 15, 2002 (without master ballot)) [Docket No. 3048]; and (xii) Affidavit of Kathleen M. Logan (Re: Service to Holders of Class 2C Claims) [Docket No. 3049] (collectively, the "Logan Affidavits"); and

WHEREAS, on December 21, 2004, the U.S. Debtors caused the Notice of (A) Deadline for Casting Votes to Accept or Reject Proposed First Amended Joint Chapter 11 Plan of Liquidation of Teleglobe Holdings (U.S.) Corporation, Teleglobe USA Inc. and Certain of Their Debtor Affiliates, (B) Hearing to Consider Confirmation of Proposed Plan and (C) Related Matters (the "Confirmation Hearing Notice") to be published in the national edition of *The Wall Street Journal* in compliance with the Solicitation Procedures Order, as attested in the Affidavit of Denver M. Prince [Docket No. 3088]; and

3

WHEREAS, the U.S. Debtors filed the Declaration of Logan & Company, Inc. Certifying the Methodology for Tabulating Votes on, and the Results of Voting with Respect to, the First Amended Joint Chapter 11 Plan of Liquidation of Teleglobe Holdings (U.S.) Corporation, Teleglobe USA Inc. and Certain of Their Debtor Affiliates [Docket No. 3092] (the "Vote Certification"), attesting to the tabulation of all ballots received by February 3, 2005 at 5:00 p.m. (Eastern Time) from holders of Claims or Interests in Class 1B (Secured Claims against the Consolidated U.S. Debtors), Class 1C (Unsecured Claims against the Consolidated U.S. Debtors), Class 2B (Secured Claims against TLUX), Class 2C (Unsecured Claims against TLUX) and Class 2D (Interests in TLUX) and attesting to the results of the tabulation as follows:

a.    Class 1B Claimants.  The U.S. Debtors did not receive any ballots from the Holders of Class 1B Secured Claims.

b.    Class 1C Claimants.  The U.S. Debtors received 214 acceptances out of 220 votes from Holders of Claims under Class 1C (Unsecured Claims against the Consolidated U.S. Debtors) of the Plan, with Class 1C claimants who voted in favor of the Plan Holding Claims in the amount of $2,256,344,749.28 for voting purposes under the Plan, such acceptances being 96.40 percent in number and 99.82 percent in amount of all ballots received from the Holders of Class 1C Claims.

c.    Class 2B Claimants.  The U.S. Debtors did not receive any ballots from the Holders of Class 2B Secured Claims.

d.    Class 2C Claimants.  The U.S. Debtors received 2 acceptances out of 2 votes from Holders of Claims under Class 2C (Unsecured Claims against TLUX) of the Plan, with Class 2C claimants who voted in favor of the Plan Holding Claims in the amount of

4

$25,034,803.06 for voting purposes under the Plan, such acceptances being 100 percent in number and 100 percent in amount of all ballots received from the Holders of Class 2C Claims.

e.    Class 2D Claimants.    TINC Holds 100 percent of the Class 2D Interests in TLUX. TINC voted its interests in TLUX in favor of the Plan. Accordingly, 100 percent in number and 100 percent in principal amount of all ballots received from Holders of Class 2D Interests voted in favor of the Plan.

WHEREAS, objections to the Plan were filed by the Internal Revenue Service [Docket No. 3074] and Dallas County, Harris County, the City of Houston and Houston ISD [Docket No. 3078] (collectively, the "Objections"); and

WHEREAS, on January 31, 2005, the U.S. Debtors filed the Schedule of Assumed Agreements in Connection with First Amended Joint Chapter 11 Plan of Liquidation of Teleglobe Holdings (U.S.) Corporation, Teleglobe USA Inc. and Certain of Their Debtor Affiliates [Docket No. 3070] (the "Schedule of Assumed Contracts") identifying those executory contracts and unexpired leases which the U.S. Debtors intend to assume in connection with the Plan; and

WHEREAS, on February 9, 2005, the U.S. Debtors filed the Notice of Initial Plan Committee Members Pursuant to Section 8.7.2 of the First Amended Joint Chapter 11 Plan of Liquidation of Teleglobe Holdings (U.S.) Corporation, Teleglobe USA Inc. and Certain of Their Debtor Affiliates [Docket No. 3097] (the "Plan Committee Disclosures") disclosing the identities of the initial members of the Plan Committee; and

WHEREAS, on February 9, 2005, the U.S. Debtors filed drafts of the amendments to be made to the Reorganized U.S. Debtors' certificates of incorporation and by-

5

laws and/or other applicable organization documents in accordance with Section 8.2 of the Plan [Docket No. 3101]; and

WHEREAS, on February 8, 2005, the U.S. Debtors filed the Affidavit of Kathy Morgan in Support of First Amended Joint Chapter 11 Plan of Liquidation of Teleglobe Holdings (U.S.) Corporation, Teleglobe USA Inc. and Certain of Their Debtor Affiliates [Docket No. 3091] (the "Morgan Affidavit"); and

WHEREAS, a hearing to consider confirmation of the Plan was held on February 10, 2005 at 9:30 a.m. (Eastern Time) before The Honorable Mary F. Walrath, United States Bankruptcy Judge for the District of Delaware (the "Confirmation Hearing");

NOW, THEREFORE, the Court having considered the Plan, the Affidavits and Certifications discussed above, objections filed to the Plan, the record of the Confirmation Hearing and the entire record of these chapter 11 cases, and after due deliberation thereon;

A.    Jurisdiction and Core Proceeding (28 U.S.C. § 157(b)(2)). This Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to consider confirmation of the Plan and all provisions thereof. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2).

B.    Venue (28 U.S.C. §§ 1408 and 1409). Venue of the U.S. Debtors' chapter 11 cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    Judicial Notice. The Court takes judicial notice of the docket in these chapter 11 cases maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed, all orders entered, and all arguments made, proffered or adduced, at hearings held before the Court.

6

D.    <u>Eligibility (11 U.S.C. § 109)</u>. The U.S. Debtors are entities eligible for relief under section 109 of the Bankruptcy Code.

E.    <u>Transmittal of Solicitation Packages</u>. The Disclosure Statement (together with all exhibits thereto, including the Plan), the Confirmation Hearing Notice and the ballots were transmitted and served in accordance with the Solicitation Procedures Order and all applicable Bankruptcy Rules and such transmittal and service was adequate and sufficient.

F.    <u>Modifications to the Plan</u>. The U.S. Debtors have modified the Plan as set forth on Exhibit A hereto (the "Modifications"), and the Plan as so modified shall constitute the Plan. The Modifications do not adversely affect the treatment of any Claims against or Interests in the U.S. Debtors under the Plan. In accordance with Bankruptcy Rule 3019, all Holders of Claims against or Interests in the U.S. Debtors who voted to accept that Plan are hereby deemed to have accepted the Plan, as amended, consistent with the Modifications. Accordingly, no Holder of a Claim against or Interest in the Debtors who has voted to accept the Plan shall be permitted to change its acceptance to a rejection as a consequence of the Modifications. Disclosure of the Modifications on the record at the Confirmation Hearing constitutes due and sufficient notice thereof. The Modifications comply with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

G.    <u>Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1) and (a)(2))</u>. The Plan complies with all applicable provisions of the Bankruptcy Code and Bankruptcy Rules, including sections 1122 and 1123 of the Bankruptcy Code.

H.    <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))</u>. Article 3 of the Plan designates the following eight Classes of Claims and Interests: Class 1A (Other Priority Claims against the Consolidated U.S. Debtors); Class 1B (Secured Claims against the

7

Consolidated U.S. Debtors); Class 1C (Unsecured Claims against the Consolidated U.S. Debtors); Class 1D (U.S. Debtors' Intercompany Claims and the Canadian Debtors' Claims against the Consolidated U.S. Debtors); Class 2A (Other Priority Claims against TLUX); Class 2B (Secured Claims against TLUX); Class 2C (Unsecured Claims against TLUX); and Class 2D (Interests in TLUX). Classification of these Claims or Interests is proper and consistent with section 1122 of the Bankruptcy Code because each Claim or Interest classified in such Classes is substantially similar to the other Claims or Interests therein. The Plan thereby satisfies section 1123(a)(1) of the Bankruptcy Code. The classification of Claims and Interests under the Plan is reasonable and necessary to implement the Plan. Additionally, Section 2.1 of the Plan designates (but does not classify) Claims of the type described in section 507(a)(1) of the Bankruptcy Code (Administrative Claims) and Section 2.4 of the Plan designates (but does not classify) Claims of the type described in section 507(a)(8) of the Bankruptcy Code (Priority Tax Claims).

      I.    <u>Specified Treatment of Unimpaired Claims (11 U.S.C. § 1123(a)(2))</u>.

Article 4 of the Plan specifies whether each Class of Claims and Interests is impaired or not impaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

      J.    <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>.

Article 5 of the Plan sets forth the treatment of each impaired Class of Claims or Interests, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

      K.    <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>. Article 5 of the Plan provides that the treatment of each Claim or Interest in each particular Class is the same as the treatment of any such Claim or Interest in such Class, unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such particular Claim or Interest, thereby satisfying section 1124(a)(4) of the Bankruptcy Code

L.    <u>Implementation of the Plan (11 U.S.C. § 1123(a)(5))</u>. Article 8 of the Plan provides adequate and proper means for implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

M.    <u>Nonvoting Equity Securities (11 U.S.C. § 1123(a)(6))</u>. Section 8.1 of the Plan provides that the Reorganized U.S. Debtors shall continue to exist after the Effective Date in accordance with the laws of the State of Delaware and pursuant to the certificates of incorporation, by-laws and/or other applicable organizational documents in effect prior to the Effective Date, except to the extent such organization documents are amended in accordance with the Plan. Section 8.2 of the Plan provides that the certificates of incorporation and by-laws and/or other applicable organizational documents of the Reorganized U.S. Debtors shall be amended as necessary to satisfy the provisions of the Plan and the Bankruptcy Code. Section 8.2 of the Plan further provides that the applicable certificates of incorporation or other applicable organizational documents shall be amended to, among other things:  (a) provide, pursuant to section 1123(a)(6) of the Bankruptcy Code, for a provision prohibiting the issuance of non-voting equity securities; and (b) limit the activities of the Reorganized U.S. Debtors to matters related to the implementation of the Plan. Thus, the requirements of section 1123(a)(6) of the Bankruptcy Code have been satisfied.

N.    <u>Selection of Officers, Directors or Trustee (11 U.S.C. § 1123(a)(7))</u>. From and after the Effective Date, the Plan Administrator shall serve as the sole officer and sole director of the Reorganized U.S. Debtors. Pursuant to Section 8.4.3 of the Plan, the Plan Administrator shall consult with the Plan Committee on a regular basis with respect to the Plan Administrator's responsibilities under the Plan and shall have no authority to act on behalf of the Reorganized U.S. Debtors without first obtaining the Plan Committee's approval for such

9

actions, other than in connection with actions that are not material or that are administrative in nature (without implied limitation, such actions as employing or compensating professionals, prosecuting actions or claims, seeking estimation of claims, or electing directors and dissolving any corporation, shall all be deemed material and not administrative in nature). Section 8.7.2 of the Plan provides that the Plan Committee shall consist of no less than one (1) member and no more than five (5) members who shall be selected jointly by counsel to the Prepetition Lenders and the bondholders and whose identities shall be disclosed to the Court prior to the Confirmation Hearing. In accordance with section 1123(a)(7) of the Bankruptcy Code, selection of the Plan Committee members is consistent with the interests of creditors, equity security holders and with public policy.

O.    Impairment/Unimpairment of Classes (11 U.S.C. § 1123(b)(1)). In accordance with section 1123(b)(1) of the Bankruptcy Code, Article 4 of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims or Interests under the Plan.

P.    Treatment of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)). Section 6.1 of the Plan provides, that, except as otherwise provided in the Plan, or in any contract, instrument, release or other agreement or document entered into in connection with the Plan, each of the executory contracts and unexpired leases to which any U.S. Debtor is a party, to the extent such contracts or leases are executory contracts or unexpired leases pursuant to section 365 of the Bankruptcy Code, shall be deemed rejected by the applicable U.S. Debtor on the Confirmation Date, unless such contract or lease (a) was previously assumed or rejected by the U.S. Debtors, (b) previously expired or terminated pursuant to its own terms or (c) is listed on the Schedule of Assumed Agreements.

Q.    Retention, Enforcement and Settlement of Claims of the Debtors (11 U.S.C. § 1123(b)(3)). Section 8.5 of the Plan provides that, except as otherwise provided therein, the Confirmation Order or in any document, instrument, release or other agreement entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the U.S. Debtors' Causes of Action shall be retained by the Reorganized U.S. Debtors. The Plan Administration Agreement also provides the Plan Administrator with the authority (exercisable under and subject to the ongoing guidance, direction and consent of the Plan Committee) to prosecute, settle, dismiss or otherwise dispose of all Causes of Action of the U.S. Estates.

R.    Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)). Based on the record before the Court, the U.S. Debtors and their agents have solicited votes on the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and are entitled to the protections afforded by section 1129(a)(2) of the Bankruptcy Code.

S.    Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). Based on the record before the Court, the U.S. Debtors have proposed the Plan in good faith and not by any means forbidden by law, and the U.S. Debtors and their respective officers and directors have acted in good faith in the negotiation and formulation of the Plan, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.

T.    Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). Payments made or to be made by the U.S. Debtors for service or for costs and expenses in connection with these chapter 11 cases, or in connection with the Plan and incident to these chapter 11 cases, have been approved by, or are subject to approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

U.     Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)). The U.S.

Debtors have complied with section 1129(a)(5) of the Bankruptcy Code. As Plan Administrator,

Kathy Morgan shall serve as the sole officer and director of the Reorganized Debtors. Ms.

Morgan's compensation as Plan Administrator is clearly set forth in the Plan Administration

Agreement. Additionally, Section 8.7.2 of the Plan provides that the Plan Committee shall

consist of no less than one (1) member and no more than five (5) members who shall be selected

jointly by counsel to the Prepetition Lenders and the Bondholders. The identities and affiliations

of the Plan Committee Members selected by the Prepetition Lenders and the Bondholders is set

forth in Plan Committee Disclosures.

V.     No Rate Changes (11 U.S.C. § 1129(a)(6)). The transactions

contemplated by the Plan do not involve any rates established or approved by, or otherwise

subject to, any governmental regulatory commission.

W.     Best Interests of Creditors Test (11 U.S.C. § 1129(a)(7)). The Plan

satisfies section 1129(a)(7) of the Bankruptcy Code. Specifically, with respect to each Impaired

Class, each Holder of a Claim or Interest against the U.S. Debtors either has accepted the Plan or

will receive or retain under the Plan on account of such Claim or Interest property of a value, as

of the Effective Date, that is not less than the amount that such Holder would receive pursuant to

a liquidation of the U.S. Debtors under chapter 7 of the Bankruptcy Code.

X.     Acceptance of Plan by Each Impaired Class (11 U.S.C. § 1129(a)(8)).

Classes 1A and 2A Other Priority Claims are not impaired by the Plan and are conclusively

presumed to have voted to accept the Plan. Class 1D U.S. Debtors' Intercompany

Claims/Canadian Debtors' Claims and Class 1E Interests will receive no distribution under the

Plan and therefore deemed to have rejected the Plan pursuant to section 1126(g) of the

12

Bankruptcy Code and not entitled to vote. Classes 1B and 2B Secured Claims, Classes 1C and 2C Unsecured Claims and Class 2D Interests are Impaired by the Plan. As attested in the Vote Certification, Classes 1C, 2C and 2D have voted to accept the Plan. The U.S. Debtors did not receive any ballots from the Holders of Class 1B or 2B Secured Claims under the Plan.

      Y.     <u>Treatment of Administrative and Tax Claims (11 U.S.C. § 1129(a)(9))</u>. The treatment of Administrative Claims under Section 2.1 of the Plan, Priority Tax Claims under Section 2.4 of the Plan and Other Priority Claims under Section 5.1 of the Plan satisfy the requirements of section 1129(a)(9)(A), (B) and (C) of the Bankruptcy Code.

      Z.     <u>Impaired Class Approval (11 U.S.C. § 1129(a)(10))</u>. As attested in the Vote Certification, more than a majority in number and two-thirds in dollar amount of non-insider creditors in Class 1C (Unsecured Claims against Consolidated U.S. Debtors) and Class 2C (Unsecured Claims against TLUX) who were entitled to accept or reject the Plan have voted to accept the Plan. Therefore, section 1129(a)(10) of the Bankruptcy Code is satisfied.

      AA.     <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>. The U.S. Debtors have sufficient Assets to satisfy the estimated amounts of Administrative Claims, Priority Claims, Class 1A Other Priority Claims, Class 2A Other Priority Claims, Class 1B Secured Claims and Class 2B Secured Claims and to fund all Reserves to be established under the Plan. The Plan also calls for the liquidation of the U.S. Debtors and, therefore, confirmation of the Plan is not likely to be followed by the need for further financial reorganization of the U.S. Debtors. Thus, section 1129(a)(11) of the Bankruptcy Code has been satisfied.

      BB.     <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>. Section 2.2 of the Plan provides that, on or before the Effective Date, all fees due and payable pursuant to 28 U.S.C. § 1930 shall be paid in full in cash, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

13

CC.     Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)). The U.S.
Debtors do not have or provide any "retiree benefits" programs, as such term is defined in section
1114 of the Bankruptcy Code.

DD.     Identification of Plan Proponents (Fed. R. Bankr. P. 3016(a)). As required
by Bankruptcy Rule 3016(a), the Plan is dated and identifies the Plan proponents.

EE.     Fair and Equitable: No Unfair Discrimination (11 U.S.C. § 1129(b)). The
Plan does not "discriminate unfairly" and is fair and equitable with respect to each Impaired
Class of Claims or Interests that has not voted to accept the Plan. Classes 1A and 2A are not
impaired by the Plan and are conclusively presumed to have voted to accept the Plan. As
attested in the Vote Certification, Classes 1C, 2C and 2D have voted to accept the Plan. Classes
1D and 1E are not receiving any distribution under the Plan and are deemed to have rejected the
Plan. With respect to Class 1D under the Plan, the Holders of such claims have consented to the
proposed treatment under the Plan through the settlements embodied in the Plan (i.e., the deemed
substantive consolidation of the Consolidated U.S. Debtors), to which they are a proponent, or
the waiver of such Claims contained in the Sales Proceeds Allocation Agreement. As for the
Holders of Class 1E Interests, there are no Classes of Claims or Interests junior to the Class 1E
Interests that will receive any property under the Plan. The U.S. Debtors have not received any
votes with respect to the Plan from the Holders of Class 1B or Class 2B Claims. Pursuant to
Section 5.2 of the Plan, the Plan Administrator shall (a) distribute to each Holder of an Allowed
Class 1B or 2B Secured Claim the collateral securing such Allowed Secured Claims, (b)
distribute Cash to each Holder of an Allowed Class 1B or 2B Secured Claim in the full amount
of its Allowed Secured Claim or (c) provide for such other treatment as may be agreed upon by
the Holder of such Allowed Class 1B or 2B Secured Claim and the Plan Administrator on behalf

14

of the Reorganized U.S. Debtors. Accordingly, pursuant to the Plan, the Holders of Class 1B and 2B Secured Claims will realize the indubitable equivalent of their Claims.

FF.    Principal Purpose of the Plan (11 U.S.C. § 1129(d)). The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.

GG.    Only One Plan (11 U.S.C. § 1129(c)). Other than the Plan (including previous versions thereof), no plan has been filed in these chapter 11 cases, thereby satisfying the requirements of section 1129(c) of the Bankruptcy Code.

HH.    Deemed Substantive Consolidation There are no pending objections to the substantive consolidation of the Consolidated U.S. Debtors or their estates under the Plan. The deemed substantive consolidation of the Consolidated U.S. Debtors under the Plan is supported by a substantial identity and extensive and inseparable interrelationship and entanglement between and among many of the Consolidated U.S. Debtors. Many of the Consolidated U.S. Debtors shared employees and administrative services of their Reston, Virginia headquarters, shared the same officers and overlapping boards of directors, utilized a centralized cash management system and filed consolidated federal income tax returns. After giving effect to substantive consolidation, all of the Consolidated U.S. Debtors' creditors will receive the benefit of distributions in satisfaction of their Claims from the single pool of assets of the Consolidated U.S. Debtors. In addition, substantive consolidation will expedite the conclusion of these chapter 11 cases. Absent substantive consolidation, the Consolidated U.S. Debtors would be required to attempt to disentangle their assets and liabilities and litigate the validity and priority of their respective intercompany claims. The reconciliation and resolution of the Consolidated U.S. Debtors' intercompany claims that would be required by such

15

disentanglement likely would be costly and could significantly delay the conclusion of these chapter 11 cases.

II.    Comprehensive Settlement of Claims and Controversies.  In accordance with section 1123(b)(3) of the Bankruptcy Code, and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan, including the exculpation provision set forth in Section 14.4.2 of the Plan, constitute a good faith compromise and settlement of all claims or controversies relating to the rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest or any distribution to be made pursuant to the Plan on account of any Allowed Claim or Allowed Interest.  The settlement or compromise of such claims or controversies, as provided in the Plan, is in the best interests of the U.S. Debtors and their respective estates and Claim and Interest Holders and is fair, equitable and reasonable.

JJ.    Sale Proceeds Allocation Agreement.  By the Sale Proceeds Allocation Agreement, the U.S. Debtors and the Canadian Debtors have agreed to resolve numerous complex disputes between the parties relating to (i) the distribution of the sale proceeds from the sale of the Core Telecom Business and the Latin American Business (collectively, the "Sale Proceeds"), (ii) certain claims alleged by the Canadian Debtors (the "Canadian Administrative Claims") and the U.S. Debtors (the "U.S. Post-Filing Claims") against each other relating to the reimbursement of the post-Petition Date or post-Canadian Application Date, as the case may be, payments that could reasonably be determined to have been made on behalf of the other in respect of, inter alia, (a) professional fees and expenses incurred in connection with the sales of the Core Telecom Business and the Latin American Business, (b) employee related salary, severance, retention and bonus obligations; and (c) other post-Petition Date or post-Canadian

16

Application Date expenses including, without limitation, network costs associated with and payments made pursuant to the settlement agreement and other operational expenses, (iii) Telecom Italia S.p.A. having setoff certain amounts owed to TUSA against amounts owed by Teleglobe Canada Limited Partnership (the "Telecom Italia Receivable") and (iv) certain prepetition intercompany claims of the Canadian Debtors (the "Canadian Debtors' Intercompany Claims") and the U.S. Debtors (the "U.S. Debtors' Intercompany Claims") relating to the provision of goods and services. Litigation of these issues would undoubtedly be both time consuming and exceedingly costly for the U.S. Debtors. The compromise contained in the Sale Proceeds Allocation Agreement will allow the U.S. Debtors and Canadian Debtors to avoid the uncertainly, delay and strain on both the human and financial resources associated with such litigation, to the benefit of their respective creditors. Additionally, the mutual releases contained in the Sale Proceeds Allocation Agreement provide for the release of all intercompany claims between the U.S. Estates and the Canadian Debtors. The mutual release of such claims is fair and reasonable given the complexity of the underlying issues and the risks associated with litigating such claims. Moreover, as a result of the mutual releases, the Sale Proceeds Allocation Agreement significantly reduces the total claims asserted against the U.S. Debtors to the benefit of all other creditors of the U.S. Estates.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.    Confirmation. The Plan is hereby confirmed pursuant to section 1129 of the Bankruptcy Code. A copy of the Plan is attached hereto as Exhibit A.

2.    Capitalized Terms. Capitalized terms not otherwise defined herein have the meanings given to them in the Plan; provided, however, that if there is any direct conflict between the terms of the Plan and the terms of this Order, the terms of this Order shall control.

17

3.    <u>Objections</u>. All of the objections to confirmation of the Plan and all reservation of rights included therein that have not been resolved, withdrawn or rendered moot are overruled.

4.    <u>Binding Effect</u>. Except as otherwise provided in section 1141(d) of the Bankruptcy Code, immediately upon the entry of this Order, the provisions of the Plan shall bind any Holder of a Claim against or Interest in the U.S. Debtors and their respective successors and assigns, whether or not the Claim or Interest of such Holder is impaired under the Plan and whether or not such Holder has accepted the Plan.

5.    <u>Approval of Sale Proceeds Allocation Agreement</u>. The Sale Proceeds Allocation Agreement, a copy of which is attached to the Plan as Exhibit 2, is hereby approved pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a).

6.    <u>Approval of Plan Administration Agreement</u>. The Plan Administration Agreement, a copy of which is attached to the Plan as Exhibit 3, is hereby approved.

7.    <u>Approval of the Litigation Protocol</u>. The Litigation Protocol, a copy of which is attached to the Plan as Exhibit 4, is hereby approved.

8.    <u>Approval of Claims Trading Restrictions</u>. The claims trading restrictions set forth in Article 12 of the Plan are hereby approved.

9.    <u>Deemed Substantive Consolidation</u>. Pursuant to Section 17.1 of the Plan the Consolidated U.S. Debtors shall be substantively consolidated for purposes of implementing the Plan, including for purposes of voting on the Plan, Confirmation of the Plan, and distributions to be made under the Plan, as follows:

a.    all assets and liabilities of the Consolidated U.S. Debtors will be deemed merged and treated as through they were merged;

18

b.    all guarantees by one Consolidated U.S. Debtor of the obligations of any other Consolidated U.S. Debtor will be deemed eliminated so that any Claims against any Consolidated U.S. Debtor and any guarantee thereof executed by any other Consolidated U.S. Debtor and any joint or several liability of any of the Consolidated U.S. Debtors will be deemed to be one obligation of the Consolidated U.S. Debtors; and

c.    each and every Claim filed or deemed filed by or on behalf of a single creditor in a single Class of Claims against any of the Consolidated U.S. Debtors and all Claims filed against more than one Consolidated U.S. Debtor for the same liability shall be deemed one Claim against and the obligation of the Consolidated U.S. Debtors

The deemed substantive consolidation (other than for the purposes of implementing the Plan) will not affect: (i) the legal and corporate structures of the Reorganized U.S. Debtors, subject to the right of the U.S. Debtors and the Reorganized U.S. Debtors to effect the Restructuring Transactions as provided in Section 8.11 of the Plan; (ii) the capital stock of the U.S. Debtors or the Reorganized U.S. Debtors; or (iii) the obligations of the respective Reorganized U.S. Debtors to pay quarterly fees to the Office of the United States Trustee pursuant to section 1930(a)(6) of title 28 of the United States Code that may have come due prior to the Effective Date or that may come due thereafter until such times as a particular U.S. Debtor's case is closed, dismissed or converted.

10.    Plan Classification Controlling.  The classifications of Claims and Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.  The classifications set forth on the ballots tendered to the U.S. Debtors' creditors in connection with voting on the Plan (a) were set forth on the ballots solely for purposes of voting to accept or reject the Plan, (b) do not necessarily represent and in no event shall be deemed to modify or otherwise affect, the actual classifications of such Claims under

19

the Plan or for distribution purposes and (c) shall not be binding on the U.S. Debtors, their estates or the Plan Administrator.

11.    <u>Assumption of Executory Contracts and Unexpired Leases</u>.  The executory contracts and unexpired leases identified on the Schedule of Assumed Contracts, filed with the Court on January 31, 2005, and attached hereto as Exhibit B, are hereby assumed pursuant to section 365 of the Bankruptcy Code.

12.    <u>Rejection of Executory Contracts and Unexpired Leases</u>.  Except as otherwise provided in the Plan, or in any contract, instrument, release or other agreement or document entered into in connection with the Plan, each of the executory contracts and unexpired leases to which any U.S. Debtor is a party, to the extent such contracts or leases are executory contracts or unexpired leases pursuant to section 365 of the Bankruptcy Code, is hereby rejected by the applicable U.S. Debtor, unless such contract or lease (a) was previously assumed or rejected by the U.S. Debtors, (b) previously expired or terminated pursuant to its own terms or (c) is listed on the Schedule of Assumed Agreements attached hereto as Exhibit B; <u>provided</u>, <u>however</u>, that nothing contained herein or in Article 6 of the Plan shall constitute an admission by any U.S. Debtor that such contract or lease is an executory contract or unexpired lease or that any U.S. Debtor or its successors and assigns has any liability thereunder.

13.    <u>Injunction</u>.  Except as expressly provided in the Plan, any and all Entities which have held, hold or may in the future hold a Claim or Interest (whether or not a proof of Claim or Interest with respect thereto has been filed) and any and all successors, assigns or representatives of any of the foregoing shall be precluded and permanently enjoined on and after the Effective Date as against the U.S. Debtors or the Reorganized U.S. Debtors, any and all successors or assigns of the U.S. Debtors or the Reorganized U.S. Debtors, and any of the U.S.

20

Debtors' or the Reorganized U.S. Debtors' assets and properties, from (a) commencing or continuing in any manner any claim, action or other proceeding of any kind with respect to any Claim, Interest or any other right or claim which they possessed or may possess prior to the Effective Date, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any Claim, Interest or any other right or claim which they possessed or may possess prior to the Effective Date, (c) creating, perfecting or enforcing any encumbrance of any kind with respect to any Claim, Interest or any other right or claim which they possessed or may possess prior to the Effective Date and (d) asserting any setoff of any kind against any obligation due with respect to any Claim, Interest or any other right or claim which they possessed or may possess prior to the Effective Date.

14.    Exculpation.  Neither the U.S. Debtors, the Creditors' Committee, the Prepetition Lenders or the Bondholders nor any of their respective directors, officers, employees and professionals, acting in such capacity, shall have incurred or shall incur any liability to any Holder of a Claim or Interest for any act or omission in connection with, or arising out of the chapter 11 cases, the Disclosure Statement, the pursuit of approval of the Disclosure Statement, the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, the pursuit of any Causes of Action, including, but not limited to, the Avoidance Actions, the Litigation Proceedings and the VarTec Arbitration Proceeding, except for willful misconduct or gross negligence, and all such persons shall be entitled to rely in all respects upon the advice of counsel with respect to their duties and responsibilities under the Plan and under the Bankruptcy Code and shall be fully protected from liability in acting or in refraining from action in

21

accordance with such advice; provided, however, that this section shall not limit the obligations of any party under the Plan.

15.  Release of Liens.  Except as otherwise provided in the Plan, this Order or in any document, instrument or other agreement created in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, Liens or other security interests against the property of the U.S. Estates shall be released.

16.  Appointment of Plan Administrator.  From and after the Effective Date, Kathy Morgan shall serve as Plan Administrator in accordance with the terms of the Plan Administration Agreement.  Kathy Morgan shall serve as Plan Administrator until her resignation or discharge and the appointment of a successor Plan Administrator in accordance with the Plan Administration Agreement, a copy of which is attached to the Plan as Exhibit 3. As Plan Administrator, Kathy Morgan (i) shall serve as the sole officer and sole director of the Reorganized U.S. Debtors and (ii) shall be authorized to execute, deliver, file or record such documents, instruments, releases and other agreements and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Plan Administrator shall have the ability to vote the Interests of the Reorganized U.S. Debtors through its possession and voting control of TINC's common stock, subject to the Plan Administration Agreement.

17.  Effectuating Documents.  Without further Court approval, but subject to the direction and consent of the Plan Committee, the Plan Administrator is authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan.

RLF1-2831383-3

18.    Continued Corporate Existence.  The Reorganized U.S. Debtors shall continue to exist after the Effective Date in accordance with the laws of the State of Delaware (TPR with the laws of Puerto Rico) and pursuant to the certificates of incorporation, by-laws and/or other applicable organizational documents in effect prior to the Effective Date, except to the extent such organizational documents are amended in accordance with the Plan. The Plan Administrator, as applicable, may (a) effectuate the dissolution of any remaining Reorganized U.S. Debtors in accordance with the Restructuring Transactions and (b) cause the resignation of the officers and directors of such Reorganized U.S. Debtors.

19.    Rights, Powers and Duties of the Reorganized U.S. Debtors.  The Reorganized U.S. Debtors shall retain and have all the rights, powers and duties necessary to carry out their responsibilities under the Plan, which shall be carried out by the Plan Administrator on behalf of the Reorganized U.S. Debtors.

20.    Preservation of Rights of Action; Settlement of Causes of Action.  Except as otherwise provided in the Plan, this Order or in any document, instrument, release or other agreement entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the U.S. Debtors' Causes of Action shall be retained by the Reorganized U.S. Debtors.

21.    Dissolution of Creditors' Committee.  The Creditors' Committee shall continue in existence until the Effective Date to exercise those powers and perform those duties specified in section 1103 of the Bankruptcy Code and shall perform such other duties as it may have been assigned by this Court prior to the Effective Date. On the Effective Date, the Creditors' Committee shall be dissolved and its members shall be deemed released of all their duties, responsibilities and obligations in connection with the chapter 11 cases or the Plan and

23

its implementation, and the retention or employment of the Creditors' Committee's attorneys,

accountants and other agents shall terminate. On the Effective Date, any and all Causes of

Action being prosecuted by the Creditors' Committee on behalf of the U.S Estates shall be taken

over and prosecuted by the Plan Administrator on behalf of the U.S. Estates in accordance with

the terms of the Plan, including the Litigation Protocol and the Plan Administration Agreement.

22.    Creation of the Plan Committee. On the Effective Date, the Plan

Committee shall be formed and constituted. The Plan Committee shall consist of no less than

one (1) member and no more than five (5) members who shall be selected jointly by counsel to

the Prepetition Lenders and the Bondholders. The initial members of the Plan Committee shall

be Provident Investment Management, LLC, Stonehill Capital Management LLC, JPMorgan

Chase Bank, N.A. and DK Acquisition Partners, L.P. The function and duration of the Plan

Committee, its manner of acting, including expense reimbursement and the tenure, removal and

replacement of its members, shall be governed by the Plan Administration Agreement.

23.    Cancellation of Securities, Instruments and Agreements. Except as

otherwise provided in the Plan or the Canadian Plan and in any contracts, instrument, or other

agreements or documents created in connection with the Plan or the Canadian Plan, on the

Effective Date, any promissory notes, share certificates (including treasury stock), other

instruments evidencing any Claims or Interests (other than Canadian Debtors' Claims against the

Consolidated U.S. Debtors and Interests held by the Canadian Debtors in the U.S. Debtors), and

all options, warrants, calls, rights, puts, awards, commitments or any other agreements of any

character to acquire such Interests shall be deemed canceled and of no further force and effect,

without any further act or action under any applicable agreement, law, regulation, order or rule,

and the obligation of the U.S. Debtors under the notes, share certificates and other agreements

24

and instruments governing such Claims and Interests shall be discharged. The holders of or parties to such canceled notes, share certificates and other agreements and instruments shall have no rights arising from or relating to such notes, share certificates and other agreements and instruments or the cancellation thereof, except the rights provided pursuant to the Plan; provided, however, that the 1992 Indenture, the 1993 Indenture, the 1996 Indenture, the 1999 Indenture and the Debentures shall not be cancelled and shall continue in effect solely for the purposes of (i) allowing the Holders of the Debentures to receive their distributions hereunder, (ii) causing the Canadian Indenture Trustee and the U.S. Indenture Trustee to assert any charging lien they may have under the respective indentures. Nothing in the Plan shall be deemed to impair, waive or discharge each of the Canadian Indenture Trustee's or the U.S. Indenture Trustee's respective rights, liens, priorities or any other rights, if any, of the respective indenture trustee under its respective indentures against the distributions to the Holders of the Debentures. For the avoidance of doubt, Section 8.8 of the Plan shall not be deemed to cancel or otherwise affect any Assets of the U.S. Debtors, including, without limitation, the U.S. VarTec Note.

24.    Restructuring Transactions. On or after the Effective Date and without further Court approval or Plan Committee approval, the Plan Administrator, on behalf of the Reorganized U.S. Debtors, may enter into and consummate the Restructuring Transactions and may take such other actions as may be necessary or appropriate to effect the Plan; provided, however, that the Reorganized U.S. Debtors reserve the right to undertake transactions in lieu of or in addition to such Restructuring Transactions, as the Plan Administrator, under the direction and with the consent of the Plan Committee, may deem necessary or appropriate under the circumstances so long as such other transactions do not have the affect of materially reducing

25

the distributions to any Holder of a Class 1C or Class 2C Claim, unless first authorized by order of this Court. Such transactions may include, without limitation, one or more mergers, consolidations, restructurings, dispositions, transfers or assignments of Assets from one dissolving Reorganized U.S. Debtor to another existing Reorganized U.S. Debtor, liquidations or dissolutions, all as may be determined by the Plan Administrator to be necessary and appropriate. The actions to effect the Restructuring Transactions may include, without limitation: (a) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, assignment, disposition, liquidation or dissolution containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable state law and such other terms to which the applicable Entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, duty or obligation on terms consistent with the terms of the Plan and having such other terms to which the applicable Entities may agree; (c) the filing of appropriate certificates or articles of merger, consolidation or dissolution pursuant to applicable state law; and (d) all other actions that the applicable Entities determine to be necessary and appropriate, including making filings or recordings that may be required by applicable state law in connection with such transactions.

25.    Corporate Action. The Restructuring Transactions; the adoption of new or amended and restated certificates of incorporation and by-laws or similar corporate documents for the Reorganized U.S. Debtors; the initial selection of the Plan Administrator and the directors and officers for the Reorganized U.S. Debtors; the distribution of Cash pursuant to the Plan; the adoption, execution, delivery and implementation of all contracts, leases, instruments, releases and other agreements or documents related to any of the foregoing; and the other

26

matters involving the corporate structure of any of the U.S. Debtors and the Reorganized U.S. Debtors or corporate action to be taken by or required of any Reorganized U.S. Debtor will occur and be effective as of the date specified in the documents effectuating the applicable Restructuring Transactions or on or after the Effective Date, if no such other date is specified in such other documents, and will be authorized and approved in all respects and for all purposes without any requirement of further action by stockholders or directors of any of the Reorganized U.S. Debtors.

26. <u>Dissolution of Reorganized U.S. Debtors</u>. Upon the filing by or on behalf of a Reorganized U.S. Debtor of a certificate of dissolution with the appropriate state authority, such Reorganized U.S. Debtors shall be deemed dissolved for all purposes without the necessity for any further actions to be taken by or on behalf of such entity or payment to be made in connection therewith. From and after the Effective Date, the Reorganized U.S. Debtors shall not be required to file any document or take any action to withdraw its business operation from any states in which the Reorganized U.S. Debtor was previously conducting business.

27. <u>Revesting of Property</u>. On the Effective Date, pursuant to section 1141(b) and (c) of the Bankruptcy Code, the Assets of the U.S. Debtors, including all Causes of Action, shall automatically vest in the Reorganized U.S. Debtors, free and clear of all claims, liens, charges, interests or other encumbrances, except as specifically provided otherwise in the Plan.

28. <u>Conveyance Free and Clear</u>. All Assets of the U.S. Debtors sold at any time during the chapter 11 cases pursuant to section 363 of the Bankruptcy Code was or is sold free and clear of all liens, claims, encumbrances and interests except as may otherwise be specifically provided in a Final Order of the Court approving such sale.

27

29.    Exemption from Certain Transfer Taxes. To the extent provided under section 1146(c) of the Bankruptcy Code and applicable law, (a) any transfers from the U.S. Debtors to the Reorganized U.S. Debtors pursuant to the Plan, (b) the issuance, transfer or exchange of any Security or the making or delivery of any instrument of transfer pursuant to the Plan, or (c) any sale of any Asset occurring upon or after the Effective Date by the Reorganized U.S. Debtors shall all be deemed to be in furtherance of the Plan and shall not be subject to any stamp tax or similar tax. All appropriate state or local governmental officials shall forego the collection of any such stamp or similar tax and shall accept for filing and recordation any applicable instruments or documents without the payment of any such stamp tax or similar tax.

30.    Stay. Unless otherwise provided in the Plan, all injunctions or stays provided for in the chapter 11 cases pursuant to sections 105 and 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Final Distribution Date.

31.    Deadline for Filing Professional Claims and Substantial Contribution Claims. Requests for Professional Claims and Claims of all Persons requesting Compensation or reimbursement of expenses pursuant to Bankruptcy Code sections 327, 328, 330, 331, 503(b) or 1103 for services rendered on or before the Effective Date (including any Substantial Contribution Claims) must be Filed and served on the Plan Administrator on behalf of the Reorganized U.S. Debtors, counsel to the Reorganized U.S. Debtors, counsel to the Bondholders and counsel to the Prepetition Lenders no later than forty-five (45) days after the Effective Date (the "Fee Claims Bar Date") Objections to any such Professional Claims and Substantial Contribution Claims must be Filed and served on the claimant no later than thirty (30) days after the Fee Claims Bar Date.

28

32.    <u>Rejection Damages Bar Date</u>.  Each Entity that is a party to an executory contract or unexpired lease rejected pursuant to the Plan (and only such Entities) will be entitled to File, not later than thirty (30) days from the date of this Order, a proof of claim for damages alleged to have been suffered due to such rejection; <u>provided</u>, <u>however</u>, that the opportunity afforded an Entity whose executory contract or unexpired lease is rejected pursuant to the Plan to File a proof of claim within thirty (30) days of the date of this Order shall in no way apply to Entities who may assert a Claim on account of an executory contract or unexpired lease that was previously rejected by the U.S. Debtors and was the subject of a previously established rejection claims bar date.  In the event that an Entity fails to File a proof of claim for damages in accordance with this provision, such Claim shall be forever barred, shall not be enforceable against the U.S. Debtors, the Reorganized U.S. Debtors, or the U.S. Estates or any of their respective properties and shall receive no distribution under the Plan or otherwise on account of such Claim.

33.    <u>Treatment of Internal Revenue Service's Claims</u>.  Notwithstanding any provision of the Plan to the contrary, each Allowed Priority Tax Claim held by the Internal Revenue Service (the "IRS"), if any, at the option of the Plan Administrator, shall be entitled to receive on account of such Allowed Priority Tax Claim, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Priority Tax Claim, (a) in accordance with Bankruptcy Code section 1129(a)(9)(C), equal cash payments made on the last Business Day of every three-month period following the Effective Date, over a period not exceeding six years after the assessment of the tax on which such Claim is based, totaling the principal amount of such Claim plus interest to accrue at the rate and the method set forth in 26 U.S.C. § 6621; (b) such other treatment agreed to by the IRS and the Plan Administrator on behalf of the U.S.

29

Debtors, provided such treatment is on more favorable terms to the Reorganized U.S. Debtors than the treatment set forth in paragraph (a) hereof; of (c) payment in full to be paid in one lump sum as soon as practicable, but no later than six months, after the Effective Date or within 30 days of the Claim becoming an Allowed Claim under the Plan.

34.    Treatment of Texas Tax Authorities' Claims. To the extent permitted by law, the prepetition claims, if any, of Dallas County, Harris County, the City of Houston and Houston ISD (collectively, the "Texas Tax Authorities") shall be treated as Class 1B Secured Claims under the Plan and the Texas Tax Authorities shall be entitled to interest on such claims at a rate of interest equal to 8 percent per annum for the period accruing from the Petition Date through the date of payment. To the extent that the Texas Tax Authorities hold Allowed Administrative Claims for amounts owed by the U.S. Debtors after the Petition Date, the Texas Tax Authorities shall be paid pursuant to 11 U.S.C. § 503(b).

35.    Findings of Fact and Conclusions of Law. The determinations, finding, judgments, decrees and orders set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. Each finding of fact set forth herein, to the extent it is or may be so deemed a conclusion of law, shall also constitute a conclusion of law. Each conclusion of law set forth herein, to the extent it is or may be so deemed a finding of fact, shall also constitute a finding of fact.

36.    Jurisdiction of the Court. Until the Effective Date, this Court shall retain jurisdiction over the U.S. Debtors and their Assets and the U.S. Estates. Thereafter, jurisdiction of the Bankruptcy Court shall be limited to the subject matters set forth in Article 14 of the Plan.

37.    Effectiveness of Order.  Notwithstanding Bankruptcy Rules 3020(e) and 6004(g) or any other provision of the Bankruptcy Code or Bankruptcy Rules, this Order shall be effective immediately upon its entry, and the period in which an appeal must be filed shall commence immediately upon the entry hereof.

38.    Notice of Effective Date.  On the Effective Date, or as soon thereafter as is reasonably practicable, the Reorganized U.S. Debtors shall file with the Bankruptcy Court a "Notice of Effective Date" in a form reasonably acceptable to the Reorganized U.S. Debtors in their sole discretion, which notice shall constitute appropriate and adequate notice that the Plan has become effective; provided, however, that the Reorganized U.S. Debtors shall have no obligation to notify any Person other than the Creditors' Committee and the Plan Committee of such fact.  A courtesy copy of the Notice of Effective Date may be sent by first class mail, postage prepaid (or at the Plan Administrator's option, by courier or facsimile) to those Persons who have filed with the Court requests for notices pursuant to Bankruptcy Rule 2002.

39.    Modification of the Plan.  Subject to the restrictions on Plan modifications set forth in section 1127 of the Bankruptcy Code, the U.S. Debtors reserve the right to alter, amend or modify the Plan before its substantial consummation.

40.    Substantial Consummation.  Substantial consummation of the Plan shall be deemed to occur on the Effective Date.  Further, the provisions of Federal Rule of Civil Procedure 62(a) and Bankruptcy Rules 3020(e) and 7062 shall not apply to this Order and the U.S. Debtors are authorized to consummate the Plan immediately upon entry of this Order.

41.    References to Plan Provisions.  The failure to specifically include or reference any particular provision of the Plan in this Order shall not diminish or impair the

31

effectiveness of such provision, it being the intent of the Court that the Plan be confirmed in its entirety.

42.    Integration of Confirmation Order Provisions.  The provisions of this Confirmation Order are integrated with each other and are nonseverable and mutually dependent.

43.    Reversal  If any or all of the provisions of this Order are hereafter reversed, modified or vacated by subsequent order of this Court or any other court, such reversal, modification or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the U.S. Debtors' receipt of written notice of any such order.  Notwithstanding any such reversal, modification or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Order and the Plan or any amendments or modifications thereto.

Dated: February 10 , 2005
       Wilmington, Delaware

THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE

RLF1-2831383-3