# EXHIBIT C

From:       LALANDE, MICHEL [michel.lalande@bell.ca]
Sent:       Tuesday, November 20, 2001 12:34 PM
To:         Marc Ryan
Subject:    BOARD RESOLUTIONS

Importance:  High

    

BCE Loan          Bell Canada Loan   Teleglobe Loan      BCE Financial       Teleglobe Financial
solution (2001 11 2   Resolution (2...   Resolution (200...   Assistance Resol...   Assistance...
                                                                                            Marc:

Please find attached drafts of the BCE, Bell and Teleglobe resolutions
for the BCE-Teleglobe and Bell-Teleglobe short term loans (I also
attached the draft BCE and Teleglobe resolutions for the additional BCE
financial assistance). Can you please review and call me to discuss
(mainly the Bell one).

Michel

--
Michel Lalande
Assistant General Counsel
Chef adjoint du service juridique
BCE Inc.
1000, rue de La Gauchetière ouest
Bureau 3700
Montréal (Québec)
H3B 4Y7

Tel.: (514) 391-8386
Mobile: (514) 247-8386
Fax: (514) 391-8389
e-mail: michel.lalande@bell.ca

Executive Assistant (Maria Roussopoulos): (514) 391-8387

1

625

BCE-SUP   125793

## TELEGLOBE INC.

RESOLUTION ADOPTED BY THE
BOARD OF DIRECTORS
NOVEMBER 28, 2001

**Short Term Loan Facilities from BCE Inc. and Bell Canada**

WHEREAS it is desirable for the Corporation to borrow funds from BCE Inc. and Bell Canada pursuant to short term loan facilities;

**Resolution No. •**

On motion duly made and seconded, it was resolved:

1.      THAT the Corporation be and it is hereby authorized to borrow, after the date hereof and prior to December 31, 2001, funds from BCE Inc. pursuant to a short term loan facility in an amount not to exceed $•, upon such terms and conditions as may be approved by the Executive Vice President and Chief Financial Officer, such approval to be conclusively evidenced by the execution of the loan agreement to be entered into between the Corporation and BCE Inc. to give effect to the establishment of the short term loan facility; and

2.      THAT the Corporation be and it is hereby authorized to borrow, after the date hereof and prior to December 31, 2001, funds from Bell Canada pursuant to a short term loan facility in an amount not to exceed $•, upon such terms and conditions as may be approved by the Executive Vice President and Chief Financial Officer, such approval to be conclusively evidenced by the execution of the loan agreement to be entered into between the Corporation and Bell Canada to give effect to the establishment of the short term loan facility; and

3.      THAT any officer of the Corporation be and each of them is hereby authorized to execute such documents and take further action as such person may, in his discretion, consider to be necessary or desirable for the purpose of carrying out the intent and purpose of this resolution.

Secretariat,
November 28, 2001.

### TELEGLOBE INC.

### RESOLUTION ADOPTED BY THE
### BOARD OF DIRECTORS
### NOVEMBER 28, 2001

**Additional Funding**

WHEREAS the Corporation is authorized (i) to accept subscriptions by BCE Inc. or any of its existing or new direct or indirect affiliates (collectively, "BCE") for shares in the share capital of the Corporation, (ii) to enter into any loans with BCE, or (iii) to make additions to the stated capital account in respect of any class of the Corporation's share capital or similar measure or to reduce dividends that would otherwise be declared, the whole pursuant to Resolution No. 8 adopted on January 24, 2001 and Resolution No. 2 adopted on October 24, 2001 (the "Financial Assistance");

WHEREAS the Corporation will require additional financial assistance beyond the Financial Assistance and it is deemed appropriate in the circumstances to seek such additional financial assistance from BCE upon the terms provided below.

**Resolution No. ∗**

On motion duly made and seconded, it was unanimously resolved:

1.      THAT the Corporation be and it is hereby authorized, at any time or from time to time, (i) to accept a subscription or subscriptions by BCE for shares in the share capital of the Corporation, (ii) to enter into any loans, guarantees, indemnities or any combination of the foregoing with BCE, or (iii) to make additions to the stated capital account in respect of any class of the Corporation's share capital or similar measure or to reduce dividends that would otherwise be declared, the whole for an aggregate amount not exceeding US$∗ million (in addition to the Financial Assistance authorized pursuant to the terms of Resolution No. 8 adopted on January 24, 2001 and Resolution No. 2 adopted on October 24, 2001) and, upon the acceptance of any such subscription or subscriptions or the execution of any such loans, guarantees, indemnities or any combination of the foregoing, as the case may be, to issue to BCE a number of shares in the share capital of the Corporation as fully paid and non-assessable, or a corresponding principal amount of debt instruments, or otherwise, as the case may be, the whole in the form and manner and upon such terms and conditions as may be approved from time to time by the Chairman of the Board and Chief Executive Officer of the Corporation or by any officer of the Corporation designated by him;

2.      THAT any officer of the Corporation be and each of them is hereby authorized to take such action and to execute such documents as may be necessary or advisable to carry out the intent and purposes of this resolution.

Secretariat
November 28, 2001

\\MTRLPQCM30Z\B00Z000S\Teleglobe Board\Teleglobe Financial Assistance Resolution (2001 11 28).doc

BCE-SUP    125795

# EXHIBIT D

02-04-'03  12:1..  From-Martine Turcotte        +15148704677        T-315  P 40/46  F-026

TELEGLOBE

February 27, 2002

Deloitte & Touche LLP
1 Place Ville-Marie, Suite 3000
Montreal, QC  H3B 4T9
Attention : Ginette Nantel

Dear Ms. Nantel:

This representations letter is provided in connection with your audits of the consolidated
financial statements of Teleglobe Inc. for the year ended December 31, 2001, the period from
January 1 through October 31, 2000, and the period from November 1 through December 31,
2000 (the "financial statements") for the purpose of expressing an opinion as to whether the
financial statements are presented fairly in accordance with generally accepted accounting
principles. We confirm that we are responsible for the fair presentation in the financial
statements of the financial position, results of operations, and cash flows in conformity with
Canadian generally accepted accounting principles, and, separately, in conformity with
generally accepted accounting principles in the United States of America.

We confirm, to the best of our knowledge and belief, the following representations:

1.    The financial statements referred to above are fairly presented in conformity with
      Canadian generally accepted accounting principles, and, separately, in conformity with
      generally accepted accounting principles in the United States of America, including the
      appropriate disclosure of all information required by statute.

2.    The financial statements are free of material errors and omissions.  Except as listed in
      Appendix A, all transactions have been properly recorded in the accounting records
      underlying the financial statements.

3.    We believe the effects of any uncorrected financial statement misstatements aggregated
      by you during the current audit engagement and pertaining to the latest period presented
      are immaterial, both individually and in the aggregate, to the financial statements taken
      as a whole.  A summary of such uncorrected misstatements has been attached as
      Appendix A.  In addition, we believe the effects of the uncorrected financial statement
      misstatements detected in the current year that relate to the prior year presented, when
      combined with those misstatements aggregated by you during the prior-year audit
      engagement and pertaining to the prior year presented, are immaterial, both individually
      and in the aggregate to the financial statements for the year ended December 31, 2000
      taken as a whole.



SSSPXC 0002134

Deloitte & Touche LLP
February 27, 2002
Page 2

4.   We understand that your audits were conducted in accordance with Canadian generally accepted auditing standards. These standards require that you plan and perform an audit to obtain reasonable assurance that the financial statements are free of material misstatement. However, such an audit is based on selective tests. Because you do not perform a detailed examination of all transactions, there is a risk that material fraud, error, violation or possible violation of law or regulation may exist, but not be detected.

5.   There has been no fraud or possible irregularities involving management or employees who have a significant role in the system of internal control, or that could have a material effect on the financial statements.

6.   We are unaware of any violations or possible violations of laws or regulations that could have an effect on the financial statements.

7.   We have not received any communications from taxation authorities concerning assessments or reassessments that could have a material effect on the financial statements.

8.   There have been no communications from regulatory agencies concerning noncompliance with, or deficiencies in, financial reporting practices.

9.   The Company has complied with all aspects of contractual agreements that could have a material effect on the financial statements in the event of non-compliance.

10.  We have made available to you all:

   a)   Financial records and related data.

   b)   Minutes of the meetings of shareholders, directors, and committees of directors, or summaries of actions of recent meetings for which minutes have not yet been prepared.

11.  We have reviewed the year-end adjusting entries and acknowledge our responsibility for their accuracy.

12.  We have disclosed to you all known related parties and related party transactions, including guarantees and transactions for no consideration. Related party transactions have been measured and disclosed in the financial statements in accordance with generally accepted accounting principles.

13.  Employee future benefit costs, assets, and obligations have been properly recorded and adequately disclosed in the financial statements including those arising under defined benefit and defined contribution plans as well as termination arrangements. We believe that the actuarial assumptions and methods used to measure pension assets, liabilities and costs for financial accounting purposes are appropriate in the circumstances.

SSSPXC 0002135

Deloitte & Touche LLP
February 27, 2002
Page 3

14.  We have identified the operating segments of the business in accordance with generally accepted accounting principles and securities regulations. Information regarding operating segments, geographic areas and major customers has been properly disclosed in the financial statements. The Company's chief operating decision maker is the Chief Executive Officer.

15.  The following have been properly recorded and, when appropriate, adequately disclosed in the financial statements:

- economic dependence on another party;
- losses arising from sale and purchase commitments;
- agreements to buy back assets previously sold;
- assets pledged as collateral;
- provisions for future removal and site restoration costs;
- off-balance sheet derivative financial instruments (e.g. futures, options, swaps), including outstanding commitments to purchase or sell securities, assets and/or commodities under forward placement and standby commitments;
- financial instruments with significant individual or group concentration of credit risk;
- guarantees, whether written or oral, under which the Company is contingently liable;
- sales with recourse provisions.

16.  We have no plans or intentions that may materially affect the carrying value or classification of assets and liabilities reflected in the financial statements.

17.  The Company has satisfactory title to all assets and there are no liens or encumbrances on the Company's assets that are not disclosed.

18.  We have recorded or disclosed all liabilities, both actual and contingent, and have also disclosed all guarantees that we have given to third parties.

19.  We have considered the effect of environmental matters on the Company and have disclosed to you all liabilities or contingencies arising from environmental matters. All liabilities, contingencies and commitments arising from environmental matters, and the effect of environmental matters on the carrying values of the relevant assets are recognized, measured and disclosed, as appropriate, in the financial statements.

20.  No claims or potential claims in connection with litigation have been or are expected to be received that would have a material impact on the financial statements.

21.  We have properly recorded or disclosed in the financial statements all share repurchase agreements and shares reserved for options, warrants, conversions, and other requirements.

SSSPXC 0002136

02-04-03  12:16pm  From-Martino Turcotte                    +15148704077      T-315  P.43/46  F-026

Deloitte & Touche LLP
February 27, 2002
Page 4

22.   In preparing the financial statements in conformity with generally accepted accounting
      principles, management uses estimates. The Company has disclosed in the financial
      statements the nature of measurement uncertainties that are material. It has also
      disclosed all estimates where it is reasonably possible that the estimate will change in
      the near term and the effect of the change could be material to the financial statements.

23.   The Company is responsible for determining and maintaining the adequacy of the
      allowance for doubtful accounts receivable, as well as estimates used to determine such
      amounts. Management believes the allowance is adequate to absorb currently estimated
      bad debts in the account balances.

24.   We believe that all expenditures that have been deferred to future periods are
      recoverable.

25.   Management has evaluated the available evidence about future taxable income and
      other possible sources of realization of future income tax assets. The amount
      recognized for all deductible temporary differences, unused tax losses and income tax
      reductions has been limited to the amount that, based on management's best estimate, is
      more likely than not to be realized.

26.   In estimating fair values of certain assets and liabilities, we believe that the market
      assumptions used were the most appropriate in the circumstances.

27.   In regards to revenue recognition, the Company adopted as guidance the provisions of
      SEC Staff Accounting Bulletin ("SAB") 101, Revenue Recognition in Financial
      Statements as of October 1, 2000. All revenues recorded since then are in compliance
      with all criteria illustrated in SAB 101 and other related guidance on this topic.

      We are satisfied that for all revenues recognized relating to multi-element contracts and
      agreements entered into by the Company, that there exists objective and reliable
      information supporting the fair values of each of the separate components of those
      transactions.

      Furthermore, we are satisfied that the classification of amounts recorded in connection
      with all such contracts have been appropriately classified in the financial statements.

SSSPXC 0002137

Deloitte & Touche LLP
February 27, 2002
Page 5

28.  In the third quarter, the Company adopted a 'formal plan of disposal' for the Excel
     Communications group and recorded a loss on discontinued operations based on
     management's best estimate of the anticipated proceeds and costs of disposal, as well as
     results of operations to the anticipated date of final disposal. Based on our review of
     the actual results for that segment as at December 31, 2001, we are satisfied that the
     estimates used in our initial calculation were fair and that no adjustment to the loss on
     disposal is required.

29.  With respect to the charges recorded in 2001 as part of the restructuring and other
     charges, we are satisfied that, as contemplated by accounting rules governing
     restructuring charges (including but not limited to CICA Handbook section 3460, EIC
     53 and EIC 60, and U.S. accounting standards EITF 94-3, SAB 100 and FAS 121):

     ➢  These amounts include only amounts of a non-recurring and a non-operating nature.
     ➢  No future benefit can be expected from activities directly related to these charges.
     ➢  As regards the costs related to employee severance, we are satisfied that no curtailment
        gain or loss arises from these actions.

30.  The Company has the necessary financial support of its parent company, BCE Inc., to
     support its operations in such a manner relevant to the Company's ability to continue as
     a going concern. BCE has completed its original commitment to contribute $1.0 billion
     in equity. In addition, at the CEO conference held December 12, 2001, BCE committed
     to contribute up to an additional Cdn$1.0 billion to support the working capital and debt
     repayment requirements of the Company over the next twelve months. The Company is
     presently in discussions with its lenders to renegotiate its short-term credit facilities.
     Alternative sources of funding are also being pursued. In any event, management
     believes that the Company will have the financial resources to meet its obligations as
     they become due through alternative sources of financing including the financial
     support of BCE Inc.

31.  As indicated in its accounting policy, the Company assesses the impairment of long-
     lived assets and intangibles when events or changes in circumstances indicate that the
     carrying value may not be recoverable. In connection with the preparation of the
     financial statements as at December 31, 2001, we have completed this assessment based
     on our projection of future undiscounted cash flows and have determined that no
     impairment exists as at December 31, 2001. The future cash flows were prepared using
     management's best estimates, based on reasonable and supportable assumptions and
     considering the currently prevailing market conditions, as to future operating cash flows
     and residual values. We confirm that:
     1.  The projected cash flows are an accurate reflection of the Company's intentions and
         that the Company has the ability (including the financial support of BCE Inc., as
         required) to carry out these intentions.
     2.  The capital expenditures presented in this projection are sufficient to complete the
         network build-out required to support the projected revenues.

SSSPXC 0002138

Deloitte & Touche LLP
February 27, 2002
Page 6

32.  The Company has not completed the process of evaluating the impact that will result from adopting, under US GAAP, Statement of Financial Accounting Standards (SFAS) No. 141, Business Combinations, and SFAS No. 142, Goodwill and Other Intangible Assets, and under Canadian GAAP, Handbook sections 1581 and 3062 under the same names, respectively, as discussed in Note 2. The Company is therefore unable to disclose the impact that adopting these standards will have on its financial position and results of operations when such standards are adopted.

33.  In accordance with the new standards regarding the assessment of impairment of goodwill and other intangible assets that the Company will have to implement effective January 1, 2002, at this time we do not believe that it is likely that the implementation of these standards will cause the Company to be in violation of any of the Company's debt covenants that would require disclosure in the Company or the parent Company's notes to the financial statements as at December 31, 2001.

34.  The unaudited interim financial information accompanying the financial statements in the Company's 2001 Financial Information has been prepared and presented in conformity with generally accepted accounting principles applicable to interim financial information. The accounting principles used to prepare the unaudited interim financial information are consistent with those used to prepare the audited financial statements.

35.  There have been no events subsequent to the balance sheet date up to the date hereof which require adjustment of or disclosure in the financial statements and related notes. Further, there have been no events subsequent to the date of the comparative financial statements that would require adjustment of those financial statements and related notes.

Yours truly,

TELEGLOBE INC.

Jean Monty
Chairman and Chief Executive Officer

Michael Boychuk
Chief Financial Officer

Stephen Skinner
Vice President and Controller

SSSPXC 0002139

02-04-03  12:17pm  From-Martino Turcotte            +15146704877        T-315  P.46/46  F-026

Deloitte & Touche LLP
February 27, 2002
Page 7

APPENDIX A

TELEGLOBE INC.
SUMMARY OF UNCORRECTED FINANCIAL STATEMENT MISSTATEMENTS
YEAR ENDED DECEMBER 31, 2001

| Description | Known | Likely | Total |
|---|---|---|---|
| (in U.S. $millions) | | | |
| Obsolete components inventory | 0.8 | | |
| Other items | 0.4 | 0.9 | |
| Total | 1.2 | 0.9 | 2.1 |
| Tax effect | | | (0.7) |
| Net overstatement of income, Canadian GAAP | | | 1.4 |
| Items affecting US GAAP only | | | |
| Unrecorded fair value of interest rate swaps | (5.4) | | |
| Unrecorded stock compensation expense | 4.4 | | |
| Sub-total of US GAAP items only | (1.0) | | (1.0) |
| Tax effect | | | 0.3 |
| | | | (0.7) |
| Net overstatement of income, US GAAP | | | 0.7 |

In addition, the Company's results contain certain classification errors on the statement of operations as follows:

| Present classification | Correct classification | (in US $ millions) |
|---|---|---|
| Revenue | Other income (gain on sale of equipment) | 10.9 |
| Revenue | Other income (foreign exchange gain) | 1.1 |
| Revenue/Network expense | Overstatement of both | 14.1 |

SSSPXC 0002140

# EXHIBIT E

04/16/02  TUE 11:24 FAX 391 5119            BELL CANADA                                    ☑001

FINAL



TELEGLOBE

February 27, 2002

Deloitte & Touche LLP
1 Place Ville-Marie, Suite 3000
Montreal, QC H3B 4T9
Attention : Ginette Nantel

Dear Ms. Nantel:

This representations letter is provided in connection with your audits of the consolidated financial statements of Teleglobe Inc. for the year ended December 31, 2001, the period from January 1 through October 31, 2000, and the period from November 1 through December 31, 2000 (the "financial statements") for the purpose of expressing an opinion as to whether the financial statements are presented fairly in accordance with generally accepted accounting principles. We confirm that we are responsible for the fair presentation in the financial statements of the financial position, results of operations, and cash flows in conformity with Canadian generally accepted accounting principles, and, separately, in conformity with generally accepted accounting principles in the United States of America.

We confirm, to the best of our knowledge and belief, the following representations:

1.    The financial statements referred to above are fairly presented in conformity with Canadian generally accepted accounting principles, and, separately, in conformity with generally accepted accounting principles in the United States of America, including the appropriate disclosure of all information required by statute.

2.    The financial statements are free of material errors and omissions. Except as listed in Appendix A, all transactions have been properly recorded in the accounting records underlying the financial statements.

3.    We believe the effects of any uncorrected financial statement misstatements aggregated by you during the current audit engagement and pertaining to the latest period presented are immaterial, both individually and in the aggregate, to the financial statements taken as a whole. A summary of such uncorrected misstatements has been attached as Appendix A. In addition, we believe the effects of the uncorrected financial statement misstatements detected in the current year that relate to the prior year presented, when combined with those misstatements aggregated by you during the prior-year audit engagement and pertaining to the prior year presented, are immaterial, both individually and in the aggregate to the financial statements for the year ended December 31, 2000 taken as a whole.


EXHIBIT

BCE-AD 0533704

Deloitte & Touche LLP
February 27, 2002
Page 2

4.    We understand that your audits were conducted in accordance with Canadian generally accepted auditing standards. These standards require that you plan and perform an audit to obtain reasonable assurance that the financial statements are free of material misstatement. However, such an audit is based on selective tests. Because you do not perform a detailed examination of all transactions, there is a risk that material fraud, error, violation or possible violation of law or regulation may exist, but not be detected.

5.    There has been no fraud or possible irregularities involving management or employees who have a significant role in the system of internal control, or that could have a material effect on the financial statements.

6.    We are unaware of any violations or possible violations of laws or regulations that could have an effect on the financial statements.

7.    We have not received any communications from taxation authorities concerning assessments or reassessments that could have a material effect on the financial statements.

8.    There have been no communications from regulatory agencies concerning noncompliance with, or deficiencies in, financial reporting practices.

9.    The Company has complied with all aspects of contractual agreements that could have a material effect on the financial statements in the event of non-compliance.

10.   We have made available to you all:

   a)   Financial records and related data.

   b)   Minutes of the meetings of shareholders, directors, and committees of directors, or summaries of actions of recent meetings for which minutes have not yet been prepared.

11.   We have reviewed the year-end adjusting entries and acknowledge our responsibility for their accuracy.

12.   We have disclosed to you all known related parties and related party transactions, including guarantees and transactions for no consideration. Related party transactions have been measured and disclosed in the financial statements in accordance with generally accepted accounting principles.

13.   Employee future benefit costs, assets, and obligations have been properly recorded and adequately disclosed in the financial statements including those arising under defined benefit and defined contribution plans as well as termination arrangements. We believe that the actuarial assumptions and methods used to measure pension assets, liabilities and costs for financial accounting purposes are appropriate in the circumstances.

BCE-AD 05337(

Deloitte & Touche LLP
February 27, 2002
Page 3

14.    We have identified the operating segments of the business in accordance with generally
       accepted accounting principles and securities regulations. Information regarding
       operating segments, geographic areas and major customers has been properly disclosed
       in the financial statements. The Company's chief operating decision maker is the Chief
       Executive Officer.

15.    The following have been properly recorded and, when appropriate, adequately disclosed
       in the financial statements:

   - economic dependence on another party;
   - losses arising from sale and purchase commitments;
   - agreements to buy back assets previously sold;
   - assets pledged as collateral;
   - provisions for future removal and site restoration costs;
   - off-balance sheet derivative financial instruments (e.g. futures, options, swaps),
     including outstanding commitments to purchase or sell securities, assets and/or
     commodities under forward placement and standby commitments;
   - financial instruments with significant individual or group concentration of credit risk;
   - guarantees, whether written or oral, under which the Company is contingently liable;
   - sales with recourse provisions.

16.    We have no plans or intentions that may materially affect the carrying value or
       classification of assets and liabilities reflected in the financial statements.

17.    The Company has satisfactory title to all assets and there are no liens or encumbrances
       on the Company's assets that are not disclosed.

18.    We have recorded or disclosed all liabilities, both actual and contingent, and have also
       disclosed all guarantees that we have given to third parties.

19.    We have considered the effect of environmental matters on the Company and have
       disclosed to you all liabilities or contingencies arising from environmental matters. All
       liabilities, contingencies and commitments arising from environmental matters, and the
       effect of environmental matters on the carrying values of the relevant assets are
       recognized, measured and disclosed, as appropriate, in the financial statements.

20.    No claims or potential claims in connection with litigation have been or are expected to
       be received that would have a material impact on the financial statements.

21.    We have properly recorded or disclosed in the financial statements all share repurchase
       agreements and shares reserved for options, warrants, conversions, and other
       requirements.

BCE-AD 0533706

04/16/02  TUE 11:26 FAX 391 5119          BELL CANADA                                    ☒004

Deloitte & Touche LLP
February 27, 2002
Page 4

22. In preparing the financial statements in conformity with generally accepted accounting principles, management uses estimates. The Company has disclosed in the financial statements the nature of measurement uncertainties that are material. It has also disclosed all estimates where it is reasonably possible that the estimate will change in the near term and the effect of the change could be material to the financial statements.

23. The Company is responsible for determining and maintaining the adequacy of the allowance for doubtful accounts receivable, as well as estimates used to determine such amounts. Management believes the allowance is adequate to absorb currently estimated bad debts in the account balances.

24. We believe that all expenditures that have been deferred to future periods are recoverable.

25. Management has evaluated the available evidence about future taxable income and other possible sources of realization of future income tax assets. The amount recognized for all deductible temporary differences, unused tax losses and income tax reductions has been limited to the amount that, based on management's best estimate, is more likely than not to be realized.

26. In estimating fair values of certain assets and liabilities, we believe that the market assumptions used were the most appropriate in the circumstances.

27. In regards to revenue recognition, the Company adopted as guidance the provisions of SEC Staff Accounting Bulletin ("SAB") 101, Revenue Recognition in Financial Statements as of October 1, 2000. All revenues recorded since then are in compliance with all criteria illustrated in SAB 101 and other related guidance on this topic.

We are satisfied that for all revenues recognized relating to multi-element contracts and agreements entered into by the Company, that there exists objective and reliable information supporting the fair values of each of the separate components of those transactions.

Furthermore, we are satisfied that the classification of amounts recorded in connection with all such contracts have been appropriately classified in the financial statements.

BCE-AD 0533707

Deloitte & Touche LLP
February 27, 2002
Page 5

28.    In the third quarter, the Company adopted a 'formal plan of disposal' for the Excel
       Communications group and recorded a loss on discontinued operations based on
       management's best estimate of the anticipated proceeds and costs of disposal, as well as
       results of operations to the anticipated date of final disposal. Based on our review of
       the actual results for that segment as at December 31, 2001, we are satisfied that the
       estimates used in our initial calculation were fair and that no adjustment to the loss on
       disposal is required.

29.    With respect to the charges recorded in 2001 as part of the restructuring and other
       charges, we are satisfied that, as contemplated by accounting rules governing
       restructuring charges (including but not limited to CICA Handbook section 3460, EIC
       53 and EIC 60, and U.S. accounting standards EITF 94-3, SAB 100 and FAS 121):

       ➢ These amounts include only amounts of a non-recurring and a non-operating nature.
       ➢ No future benefit can be expected from activities directly related to these charges.
       ➢ As regards the costs related to employee severance, we are satisfied that no curtailment
         gain or loss arises from these actions.

30.    The Company has the financial support of its parent company, BCE Inc., to support its
       operations in such a manner relevant to the Company's ability to continue as a going
       concern. BCE has completed its original commitment to contribute $1.0 billion in
       equity. In addition, at the CEO conference held December 12, 2001, BCE announced its
       intention to contribute up to an additional Cdn$1.0 billion to support the working
       capital and debt service requirements of the Company over the next twelve months on
       the basis that with such support the Company will be able to meet its current business
       plan. The Company is presently in discussion with its lenders to renegotiate its short-
       term credit facilities. In any event, management believes, based on the Company's
       current business plan and management's belief that the credit facility can be
       successfully renegotiated, that the Company will have the financial resources to meet its
       obligations as they become due through various sources of financing including the
       financial support of BCE Inc. BCE Inc. is not obliged to provide such funding and BCE
       Inc.'s future funding decisions will be based on the facts and circumstances prevailing
       at such time.

31.    As indicated in its accounting policy, the Company assesses the impairment of long-
       lived assets and intangibles when events or changes in circumstances indicate that the
       carrying value may not be recoverable. In connection with the preparation of the
       financial statements as at December 31, 2001, we have completed this assessment based
       on our projection of future undiscounted cash flows and have determined that no
       impairment exists as at December 31, 2001. The future cash flows were prepared using
       management's best estimates, based on reasonable and supportable assumptions and
       considering the currently prevailing market conditions, as to future operating cash flows
       and residual values. We confirm that:
       1.  The projected cash flows are an accurate reflection of the Company's intentions and
           that the Company has the ability (including the financial support of BCE Inc., as
           required) to carry out these intentions.
       2.  The capital expenditures presented in this projection are sufficient to complete the
           network build-out required to support the projected revenues.

BCE-AD 0533708

04/16/02  TUE 11:28 FAX 391 5119         BELL CANADA                    ☒006

Deloitte & Touche LLP
February 27, 2002
Page 6

32.    The Company has not completed the process of evaluating the impact that will result
       from adopting, under US GAAP, Statement of Financial Accounting Standards (SFAS)
       No. 141, Business Combinations, and SFAS No. 142, Goodwill and Other Intangible
       Assets, and under Canadian GAAP, Handbook sections 1581 and 3062 under the same
       names, respectively, as discussed in Note 2. The Company is therefore unable to
       disclose the impact that adopting these standards will have on its financial position and
       results of operations when such standards are adopted.

33.    In accordance with the new standards regarding the assessment of impairment of
       goodwill and other intangible assets that the Company will have to implement effective
       January 1, 2002, at this time we do not believe that it is likely that the implementation
       of these standards will cause the Company to be in violation of any of the Company's
       debt covenants that would require disclosure in the Company or the parent Company's
       notes to the financial statements as at December 31, 2001.

34.    The unaudited interim financial information accompanying the financial statements in
       the Company's 2001 Financial Information has been prepared and presented in
       conformity with generally accepted accounting principles applicable to interim financial
       information. The accounting principles used to prepare the unaudited interim financial
       information are consistent with those used to prepare the audited financial statements.

35.    There have been no events subsequent to the balance sheet date up to the date hereof
       which require adjustment of or disclosure in the financial statements and related notes.
       Further, there have been no events subsequent to the date of the comparative financial
       statements that would require adjustment of those financial statements and related
       notes.

Yours truly,

TELEGLOBE INC.

Jean Monty
Chairman and Chief Executive Officer

Michael Boychuk
Chief Financial Officer

Stephen Skinner
Vice President and Controller

BCE-AD 0533709

Deloitte & Touche LLP
February 27, 2002
Page 7

APPENDIX A

TELEGLOBE INC.
SUMMARY OF UNCORRECTED FINANCIAL STATEMENT MISSTATEMENTS
YEAR ENDED DECEMBER 31, 2001

| Description (in U.S. $millions) | Known | Likely | Total |
|---|---|---|---|
| Obsolete components inventory | 0.8 | | |
| Other items | | | |
| Total | 0.4 | 0.9 | |
| Tax effect | 1.2 | 0.9 | 2.1 |
| Net overstatement of income, Canadian GAAP | | | (0.7) |
| Items affecting US GAAP only | | | 1.4 |
| Unrecorded fair value of interest rate swaps | | | |
| Unrecorded stock compensation expense | (5.4) | | |
| Sub-total of US GAAP items only | 4.4 | | |
| Tax effect | (1.0) | | (1.0) |
| | | | 0.3 |
| Net overstatement of income, US GAAP | | | (0.7) |
| | | | 0.7 |

In addition, the Company's results contain certain classification errors on the statement of operations as follows:

| Present classification | Correct classification | (in US $ millions) |
|---|---|---|
| Revenue | Other income (gain on sale of equipment) | 10.9 |
| Revenue | Other income (foreign exchange gain) | 1.1 |
| Revenue/Network expense | Overstatement of both | 14.1 |

BCE-AD 0533710

# EXHIBIT F

# REDACTED