# EXHIBIT A



January 23, 2002

Deloitte & Touche LLP
1 Place Ville-Marie, Suite 3000
Montreal, QC H3B 4T9
Attention: Ms. Ginette Nantel

Dear Ms. Nantel:

This representations letter is provided in connection with your review of the interim consolidated financial statements of Teleglobe Inc. for the quarter ended December 31, 2001 (the "interim financial statements"). We confirm, to the best of our knowledge and belief, the following representations:

1. We acknowledge that we are responsible for the fair presentation of the interim financial statements in conformity with Canadian generally accepted accounting principles, and, separately, in conformity with generally accepted accounting principles in the United States of America, and accordingly for the prevention and detection of fraud, error, violation or possible violation of laws or regulations.

2. The interim financial statements are fairly presented in conformity with Canadian generally accepted accounting principles, and separately, in conformity with generally accepted accounting principles in the United States of America, applied on a consistent basis with that of the interim financial statements for the quarter ended December 31, 2000, and substantially consistent with the audited financial statements as of and for the year ended December 31, 2000.

3. The interim financial statements are free of material errors and omissions. All transactions have been properly recorded in the accounting records underlying the financial statements.

4. We understand that your review of the interim financial statements was conducted in accordance with Canadian generally accepted standards for such reviews and accordingly consisted primarily of enquiry, analytical procedures and discussion related to information we supplied to you. We also understand that such a review would not necessarily detect fraud, error, violation or possible violation of laws or regulations, should any exist.

5. The have been no irregularities that involve management or employees who have a significant role in the system of internal control, or that could have a material effect on the interim financial statements.

6. We are unaware of any violations or possible violations of laws or regulations that could have an effect on the interim financial statements.

7. There have been no communications from regulatory agencies concerning noncompliance with, or deficiencies in, financial reporting practices.




R.2004-BCE 012160

Page 2

8. The Company has complied with all aspects of contractual agreements that could have a material effect on the interim financial statements in the event of non-compliance.

9. We have made available to you all:

   a. Financial records and related data.

   b. Minutes of the meetings of shareholders, directors, and committees of directors, or summaries of actions of recent meetings for which minutes have not yet been prepared.

10. There have been no events subsequent to the date of the interim financial statements which require adjustment to the interim financial statements.

11. In connection with your audit of the Company's annual consolidated financial statements for the year-ended December 31, 2000, we have previously provided representation to you dated April 24, 2001. No matters have since come to our attention that would cause us to believe that any of those representations are no longer true for the interim financial statements.

12. The Company has the necessary financial support of its parent company, BCE Inc., to support its operations in such a manner relevant to the Company's ability to continue as a going concern. BCE has completed its original commitment to contribute $1.0 billion in equity. In addition, at the CEO conference held December 12, 2001, BCE committed to contribute up to an additional Cdn$1.0 billion to support the working capital and debt repayment requirements of the Company over the next twelve months. The Company is presently in discussions with its lenders to renegotiate its short-term credit facilities. Alternative sources of funding are also being pursued. In any event, management believes that the Company will have the financial resources to meet its obligations as they become due through alternative sources of financing including the financial support of BCE Inc.

13. As indicated in its accounting policy, the Company assesses the impairment of long-lived assets and intangibles when events or changes in circumstances indicate that the carrying value may not be recoverable. In connection with the preparation of the financial statements as at December 31, 2001, we have completed this assessment based on our projection of future undiscounted cash flows and have determined that no impairment exists as at December 31, 2001. The future cash flows were prepared using management's best estimates, based on reasonable and supportable assumptions and considering the currently prevailing market conditions, as to future operating cash flows and residual values. We confirm that:

   1. The projected cash flows are an accurate reflection of the Company's intentions and that the Company has the ability (including the financial support of BCE Inc., as required) to carry out these intentions.
   2. The capital expenditures presented in this projection are sufficient to complete the network build-out required to support the projected revenues.

R.2004-BCE 012161

Page 3

14. In accordance with new standards regarding the assessment of impairment of goodwill and other intangible assets that the Company will have to implement effective January 1, 2002, at this time we do not believe that it is likely that the implementation of these standards will cause the Company to be in violation of any of the Company's debt covenants that would require disclosure in the Company or the parent Company's notes to the interim financial statements as at December 31, 2001.

15. In the third quarter, the Company adopted a 'formal plan of disposal' for the Excel Communications group and recorded a loss on discontinued operations based on management's best estimate of the anticipated proceeds and costs of disposal, as well as results of operations to the anticipated date of final disposal. Based on our review of the actual results for that segment as at December 31, 2001, we are satisfied that the estimates used in our initial calculation were fair and that no adjustment to the loss on disposal is required.

16. In regards to revenue recognition, the Company adopted as guidance the provisions of SEC staff Accounting Bulletin ("SAB") 101, Revenue Recognition in Financial Statements as of October 1, 2000. All revenues recorded since then are in compliance with all criteria illustrated in SAB 101 and other related guidance on this topic.

    We are satisfied that for all revenues recognized relating to multi-element contracts and agreements entered into by the Company, that there exists objective and reliable information supporting the fair values of each of the separate components of those transactions.

    Furthermore, we are satisfied that the classification of amounts recorded in connection with all such contracts have been appropriately classified in the interim financial statements.

17. With respect to the charges recorded in 2001 as part of the restructuring and other charges, we are satisfied that, as contemplated by accounting rules governing restructuring charges (including but not limited to CICA Handbook section 3460, EIC 53 and EIC 60, and U.S. accounting standards EITF 94-3, SAB 100 and FAS 121):

    ➢ These amounts include only amounts of a non-recurring and a non-operating nature.
    ➢ No future benefit can be expected from activities directly related to these charges.
    ➢ As regards the costs related to employee severance, we are satisfied that no curtailment gain or loss arises from these actions.

18. We believe the effects of any unrecorded financial statement misstatements aggregated by you during the current review of the interim financial statements for the three-month and twelve-month periods ended December 31, 2001 presented are immaterial, both individually and in aggregate, to the financial statements taken as a whole.

Page 4

Yours truly,

TELEGLOBE INC.

*[signature]*
Jean Monty
Chairman and Chief Executive Officer

*[signature]*
Michael Boychuk
Chief Financial Officer

*[signature]*
Stephen Skinner
Vice President and Controller