# EXHIBIT Q

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: Teleglobe Comm. *et al.*, | ) | Chapter 11 |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Bankr. Case No. 02-11518 (MFW) |
| | ) | |
| Teleglobe USA Inc. *et al.*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Action No. 04-1266 (SLR) |
| | ) | |
| BCE Inc. *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF DANIEL SCHIMMEL REGARDING DISCOVERY FROM SAMSON BELAIR/DELOITTE & TOUCHE S.E.N.C.R.L, OSLER, HOSKIN & HARCOURT LLP, AND DAVIES WARD PHILLIPS & VINEBERG LLP**

I, DANIEL SCHIMMEL, declare as follows:

**Introduction**

1. I am counsel with the law firm of Shearman & Sterling LLP ("Shearman & Sterling"), counsel for BCE Inc. ("BCE") and the other named defendants in this action. I submit this declaration in response to the Court's order, at a discovery hearing held on August 10, 2005, that BCE submit an affidavit setting forth BCE's efforts to assist the Plaintiffs in obtaining discovery from three entities located in Canada: Samson Belair/Deloitte & Touche s.e.n.c.r.l ("Deloitte"), Osler, Hoskin & Harcourt LLP ("Osler"), and Davies Ward Phillips & Vineberg LLP ("Davies Ward").

2. At the hearing on August 10, Plaintiffs' counsel stated that they had made attempts to obtain documents through the Canadian courts, but that "we will not have prompt and efficient justice in Canada." (See August 10, 2005 Tr. at 13, attached hereto as Exhibit 1). As

discussed below, this assertion is belied by Plaintiffs' own efforts to delay certain of the proceedings in the Canadian courts. Plaintiffs' counsel also stated at the hearing on August that each of the three firms had refused to comply with Plaintiffs' subpoenas (Tr. at 13, Exhibit 1 attached hereto), another assertion that is belied by the facts. Finally, Plaintiffs' counsel erroneously suggested that BCE had not made any demand on these firms to produce documents. (Tr. at 13-14, Exhibit 1 attached hereto.) As set forth below, this allegation is unfounded and simply untrue.

### Deloitte

3. On August 10, 2004, Plaintiffs served a subpoena on Deloitte & Touche LLP in New York City requesting the production of documents in connection with this proceeding. On August 23, 2004, Deloitte & Touche USA LLP objected to the subpoena on the grounds that many of the documents sought by Plaintiffs were not within its possession, custody or control, but rather within the possession, custody or control of its Canadian affiliate. (See Letter from Deloitte & Touche USA LLP to Plaintiffs, dated August 23, 2004, attached hereto as Exhibit 2). Deloitte & Touche USA LLP produced to Plaintiffs the relatively small number of documents that were within its possession, custody, or control. BCE received from Plaintiffs a copy of those documents on January 26, 2005.

4. The Plaintiffs then requested BCE, by letter dated January 12, 2005, to "contact Deloitte ... in the United States and/or Canada to facilitate the discovery plaintiffs seek." (See Malatak Letter to Schimmel, dated Jan. 12, 2005, attached hereto as Exhibit 3). In their letter Plaintiffs claimed that Deloitte was BCE's auditor during the relevant time period,

thereby acting as BCE's agent, and as such BCE had the authority to direct Deloitte to comply with the subpoena.[1]

5. In addition to seeking the assistance of BCE, Plaintiffs also sought and obtained a Letter of Request from this Court on February 14, 2005 seeking judicial assistance from the appropriate authorities in Québec, Canada to obtain documents from and conduct the depositions of Samson Belair/Deloitte & Touche s.e.n.c.r.l. and one of its partners, Ginette Nantel.

6. Our legal research indicated that Deloitte's internal documents and work papers were not in BCE's possession, custody or control, but that an argument could be made that documents previously provided by BCE to Deloitte were in BCE's control. Further, Mr. Pierre Brodeur, the Deloitte partner responsible for the relationship with BCE, had already told Martin Cossette, a member of BCE's Law Department, that Deloitte would not make available any of its internal work papers and notes. Accordingly, by letter dated March 4, 2005, Shearman & Sterling informed Plaintiffs that BCE would instruct Deloitte to produce any documents it had received from BCE that were responsive to the subpoena and were created during the relevant time period, subject to any applicable privileges under Canadian law. (See Schimmel Letter to Malatak, dated March 4, 2005, attached hereto as Exhibit 4).[2] In the March 4 letter, Shearman &

---

[1] This assertion of agency was incorrect. An outside auditor is not an agent of its audit client, since an agency relationship is inconsistent with the independence required of an outside auditor of a public company.

[2] Plaintiffs' counsel stated at the hearing on August 10, 2005 that they were asking the Court to suggest to BCE that it encourage the Canadian firms to provide discovery through the Canadian proceedings or if that was not possible, "an order running to BCE, asking it *to demand its documents back* from its providers relating to this matter that they could then produce to us." (Tr. at 14, Exhibit 1 attached hereto (emphasis added.))

Sterling also stated that BCE did not object to Plaintiffs' efforts to obtain the discovery sought from Deloitte through the issuance of a Letter of Request. (See id.)

7. BCE instructed Deloitte in writing on March 9, 2005 to produce to BCE from its files any documents that it had received from BCE, which were created during the relevant time period and were responsive to Plaintiffs' subpoena, subject to any applicable Canadian privileges. (See March 9, 2005 E-mail from Cossette to Brodeur, attached hereto as Exhibit 5). BCE also instructed Deloitte to produce to it any documents that BCE had previously provided to Deloitte relating to BCE's write-down of the value of the goodwill of Teleglobe Inc. ("Teleglobe") in 2002, as well as any documents provided by BCE to Deloitte in connection with the preparation of BCE's 2002 annual report and financial statements filed on April 10, 2003. (See id.)

8. I subsequently discussed the production of those documents with Deloitte's outside counsel. I was informed that Deloitte had conducted a preliminary review of its files to determine the amount of work that would have to be performed in order to separate Deloitte's internal documents and notes from the documents that BCE had previously made available to Deloitte. On or about April 26, 2005, Deloitte's Canadian counsel, Mr. Desrosiers, told me that the preliminary estimate of the cost of reviewing Deloitte's documents in order to respond to the Plaintiffs' subpoena amounted to approximately C$236,000 (i.e., U.S.$198,000), which would have to be paid to Deloitte for the review of those files. BCE's in-house counsel, Martin Cossette, subsequently had several discussions with Mr. Brodeur and other Deloitte personnel in an effort to agree on a more reasonable cost estimate for the review of those documents.

9. While the discussions between BCE and Deloitte were continuing, the Québec Superior Court of Justice, District of Montreal, denied Plaintiffs' application seeking discovery from Deloitte, in a Judgment dated July 7, 2005.[3] (Copies of the Court's Judgment, in both the original French text and the translated English version, are attached hereto as Exhibit 6). In its Judgment, the Court agreed with Deloitte's contention that Plaintiffs' description of the documents sought was vague and imprecise. The Court further held that the production of documents sought by Plaintiffs was prohibited under Section 2 of the Business Concerns Records Act of Québec (L'Article 2 de la Loi sur les dossiers d'entreprises). (See id. at ¶ 15-19). The Court also held that it would be unreasonable to require Deloitte to dedicate a large number of hours to review its documents in order to respond to Plaintiffs' document request. (See id. at ¶ 20-21).

10. On or about July 8, 2005, BCE again reiterated its instruction to Deloitte to produce documents. Deloitte advised that its position had changed in light of the issuance of the July 7 judgment, and that it would not produce any documents from its files.

11. I am advised by Martin Cossette that, in July and August 2005, he made multiple demands on Deloitte, both by telephone and in written correspondence, to produce the above-listed categories of documents in response to Plaintiffs' subpoena. (See Communications from BCE to Deloitte, dated August 2, 2005, August 3, 2005, and August 9, 2005 attached hereto as Exhibits 7, 8 and 9). By letter dated August 18, 2005, BCE once again instructed Deloitte to produce those documents and that, if it refused to comply, to provide a written response no later than Monday, August 22, 2005 detailing Deloitte's position and its asserted legal basis for its

---

[3] This Judgment reversed a prior decision of the court on March 17, 2005 that had granted the Plaintiffs' motion ex parte without prior notification to Deloitte.

refusal to comply. (See August 18, 2005 Letter from Martin Cossette to Ken Fredeen, Deloitte's General Counsel, attached hereto as Exhibit 10).

12. BCE received a response from Deloitte on August 29. In that response, Deloitte stated that it was "not prepared to provide [BCE] with the documents [that BCE had] requested and noted that BCE "[did] not have any legal or contractual right to the documents in issue." (See Letter from Deloitte Counsel to Cossette, dated August 26, 2005 and faxed on August 29, 2005, attached hereto as Exhibit 11). Deloitte pointed to the July 7, 2005 Judgment of the Québec Superior Court of Justice rejecting the Plaintiffs' document demand and noted that the documents sought in that demand included those requested by BCE. (See id.). Deloitte further stated that "[t]he Plaintiffs should not be allowed to do indirectly what the Court has decided they cannot do directly, i.e. conduct a 'fishing expedition' in the files of Deloitte by requesting all documents remitted by BCE to Deloitte." (Id.) Finally, Deloitte noted that the documents sought were likely already in BCE's possession and had been produced in the litigation and that in any event "any copies of documents provided by BCE to Deloitte in the accomplishment of Deloitte's mandate became the property of Deloitte and form part of Deloitte's file and working papers." (Id.) In light of Deloitte's refusal to comply with BCE's instruction, there is little more that BCE can do to compel Deloitte to provide discovery to Plaintiffs.

13. On August 2, 2005, the Plaintiffs filed a motion in this Court seeking a Letter of Request for judicial assistance to compel the deposition of Ginette Nantel, a partner of Deloitte a/k/a Samson Belair/Deloitte & Touche s.e.n.c.r.l. On August 4, 2005, this Court issued an Order granting Plaintiffs' Motion for a Letter of Request to the appropriate Québec authorities. Mr. Desrosiers has advised me that, in his last conversation with Plaintiffs'

Canadian counsel, he was told that Plaintiffs had put their application on hold. Plaintiffs' U.S. counsel, however, have asked us to indicate our availability to participate in a deposition of Ginette Nantel in September in Canada, and we have responded by providing a date.

### Osler

14. On December 14, 2004, Plaintiffs served a subpoena on the New York office of an Osler affiliate demanding the production of documents. On December 28, 2004, the Osler affiliate in New York objected to the subpoena on the grounds that the documents and information sought by Plaintiffs were not within its possession, custody, or control, but rather within the possession, custody, or control of the Osler law firm in Toronto.

15. By letter dated January 12, 2005, Plaintiffs then requested BCE to "contact ... Osler in the United States and/or Canada to facilitate the discovery plaintiffs seek." (See Exhibit 3). In their letter Plaintiffs claimed that Osler had acted as BCE's agent in connection with a March 7, 2002 request for an advance income tax ruling and that, therefore, BCE had the authority to direct Osler to comply with the subpoena.

16. In a letter from me to Committee counsel, dated March 4, 2005, Plaintiffs were advised that BCE would direct Osler to produce non-privileged documents submitted to Osler by BCE during the relevant time period that were responsive to the subpoena, as well as all other responsive non-privileged documents created during the relevant time period. (See Exhibit 4). As with the Deloitte documents, I also reiterated that BCE did not object to efforts by Plaintiffs to obtain the discovery sought through the issuance of a Letter of Request. (See id.)

17. BCE instructed Osler by e-mail dated March 9, 2005 to produce to it a copy of any documents that Osler received from BCE that were responsive to the subpoena and were created in the period January 1, 2000 through May 28, 2002, and subject to all applicable privileges. BCE also directed Osler to produce to it all other responsive non-privileged documents created during that time period. (A copy of the March 9, 2005 E-mail from BCE counsel to Osler is attached as Exhibit 12). In response to this request, Osler produced the following categories of documents:

   a) Correspondence and documentary records of communications between Osler and third parties, including the Canadian tax authorities;

   b) Documents provided to Osler by BCE; and

   c) Documents reflecting communications from BCE to Osler.[4]

18. Shearman & Sterling reviewed those documents for privilege and produced to Plaintiffs on April 23, 2005 all non-privileged documents provided by Osler to BCE that were responsive to Plaintiffs' subpoena served on Osler. Shearman & Sterling also submitted to the Plaintiffs on July 14, 2005 a privilege log for any of those documents that were being withheld by BCE on privilege grounds. The documents produced bear the Bates numbers BCE-AD 0135236-0135439 and BCE-AD 0333791-0333922.

19. In a further attempt to seek discovery from Osler, Plaintiffs moved for a Letter of Request for judicial assistance from this Court on February 10, 2005 and subsequently made an application in the Ontario Superior Court of Justice to pursue their discovery demand. Osler opposed the application, stating in an Affidavit of Andrew Kingissepp, sworn to on June 3, 2005, that Osler had already produced to BCE all responsive non-privileged documents from its files

---

[4] Osler retained documents falling outside of these three categories that consisted of its internal files.

that were responsive to Plaintiffs' discovery request. (A copy of this affidavit is attached hereto as Exhibit 13). Mr. Kingissepp also stated in the affidavit that BCE, not Teleglobe, was Osler's client with respect to a request for an advance income tax ruling from the Canadian tax authorities, dated March 7, 2002, and thus any privileged documents in Osler's possession were properly withheld.

20. By letter to Defendants dated June 21, 2005, Plaintiffs made inquiries as to whether Osler represented Teleglobe in connection with the March 7, 2002 request for an advance income tax ruling. BCE has informed Plaintiffs that it has no information beyond that provided by Mr. Kingissepp in his June 3, 2005 affidavit and the documents in BCE's document production.

21. In the June 21, 2005 letter, Plaintiffs also asked BCE to produce any documents responsive to the Osler discovery request that had not already been produced to Plaintiffs. (See Malatak Letter to Schimmel, dated June 21, 2005, attached hereto as Exhibit 14). Osler confirmed to BCE that it did not in fact have any additional non-privileged documents in its possession that were responsive to Plaintiffs' discovery request, and Defendants informed Plaintiffs of this by letter dated July 6, 2005. (See Wade Letter to Malatak, dated July 6, 2005, attached hereto as Exhibit 15). Osler has since made available one additional non-privileged document responsive to Plaintiffs' discovery request, which was produced to Plaintiffs on August 27, 2005.

22. It is my understanding that the specific issue under consideration by the Ontario court relates to Plaintiffs' challenge of Osler's assertion of the attorney-client privilege with respect to certain documents relating to Osler's representation of BCE in connection with

the application for an advance tax ruling by the Canadian taxing authority. I understand that Plaintiffs have taken the position that Osler also represented Teleglobe and thus there is no claim of privilege vis-à-vis Teleglobe. Osler maintains that Teleglobe was not its client. The Ontario Superior Court thus has before it issues of Canadian law regarding the attorney-client privilege and attorney-client relations between a Canadian law firm and two Canadian corporations, with respect to matters relating to an application to a Canadian taxing authority. Despite this, and as discussed below, Plaintiffs appear to be taking actions to avoid the jurisdiction of the Canadian court to hear and decide these issues.

23. First, Plaintiffs appear to have ignored the Ontario court's ruling with respect to Plaintiffs' entitlement to a privilege log from Osler. By Order dated June 24, 2005, the Ontario Superior Court of Justice ruled that Plaintiffs were entitled to a detailed privilege log from Osler by July 20, 2005 for all the documents withheld on privilege grounds, provided that Plaintiffs met the following two conditions: (1) a written request by Plaintiffs for a privilege log 14 days prior to delivery of the log; and (2) written confirmation that the Plaintiffs would pay Osler the reasonable costs incurred in connection with the preparation of the log. (See June 24, 2005 Order of Ontario Superior Court of Justice, attached hereto as Exhibit 16). It is my understanding that Plaintiffs have not attempted to satisfy either of these two conditions and have allowed the July 20, 2005 deadline to lapse without having requested a log from Osler or an extension of the deadline.

24. Second, Plaintiffs have sought and obtained two adjournments of hearings in the proceedings in the Ontario court. The first adjournment at Plaintiffs' request took place on June 24, 2005, and adjourned the hearing to August 26, 2005. When plaintiffs sought the second adjournment, on August 26, 2005, Osler noted its objection to Plaintiffs' unwarranted delay and

apparent attempt at forum-shopping to avoid the jurisdiction of the Canadian court. (See August 26, 2005 Order of Ontario Superior Court of Justice, attached hereto as Exhibit 17).

25. BCE has made every effort to obtain and produce to Plaintiffs all non-privileged files in Osler's possession, custody, or control that are responsive to Plaintiffs' discovery request to Osler. It is my understanding that the only additional non-privileged information that Plaintiffs could obtain is the privilege log for the internal documents withheld by Osler. Osler has advised me that it would not object to a reasonable request to extend the deadline set by the Ontario court for Plaintiffs to request a privilege log, so long as Plaintiffs indicated their agreement to comply with the other condition set forth in the court's order, namely, an undertaking to pay the cost associated with the preparation of the privilege log.

**Davies Ward**

26. On or about October 15, 2004, Plaintiffs served a subpoena on Davies Ward's New York office, seeking documents and a deposition. Although the relevant documents were apparently located in Canada, Davies Ward produced documents in response to the subpoena, and also submitted objections and responses to the subpoena on or about November 5, 2004. (See Responses and Objections of Davies Ward, attached hereto as Exhibit 18). It is my understanding that Davies Ward also produced three privilege logs: one with respect to BCE/Davies Ward communications, one with respect to Teleglobe/Davies Ward communications, and a third miscellaneous log.

27. It is my understanding that Davies Ward subsequently produced the privileged documents relating to its representation of Teleglobe to representatives of Teleglobe. It is my understanding that Davies Ward had required an order from the court in Teleglobe's Canadian

insolvency proceeding confirming the propriety of such a production, to ensure that Davies Ward would not waive the privilege by producing privileged documents to an inappropriate party. The Canadian court issued such an order.

28. It is also my understanding that by letter dated March 24, 2005, Teleglobe's Plan Administrator, Kathy Morgan, instructed counsel for Davies Ward that it was the position of Teleglobe that there was no privilege or obligation of professional secrecy that prevented Davies Ward from producing documents reflecting communications between Teleglobe and Davies Ward. Ms. Morgan also informed Davies Ward's counsel that she waived the attorney-client privilege on behalf of Teleglobe. It is my understanding that Davies Ward produced to Teleglobe privileged and non-privileged documents from its files that were generated in connection with its representation of Teleglobe. (In fact, Plaintiffs have recently produced to us documents that they described as coming from Davies Ward's files.) Davies Ward has withheld, however, the privileged documents listed on the other two privilege logs, including privileged documents relating to its representation of BCE.

29. By letter dated July 15, 2005, the Plaintiffs asked Davies Ward to produce certain documents that Plaintiffs claim relate to advice provided for the benefit of Teleglobe or at a minimum was provided on behalf of Teleglobe and BCE jointly. (See July 15, 2005 Letter from Davies Ward to Plaintiffs, attached hereto as Exhibit 19). In its response to Plaintiffs' July 15 letter, Davies Ward noted that it had endeavored to cooperate with Plaintiffs' document requests and had complied with the directions of the Ontario Superior Court. It stated that it had produced to Plaintiffs documents in response to the subpoena, as well as Teleglobe documents in response to Ms. Morgan's request. (See Letter from Davies Ward Counsel to Russell Silberglied, dated August 22, 2005, attached hereto as Exhibit 20). Davies Ward stated that

these productions included: (1) all non-privileged BCE and Teleglobe documents relating to "Project X;" (2) Teleglobe documents previously identified as privileged, and including documents pertaining to matters other than "Project X;" and (3) a log of privileged BCE documents. (See id.).

30. Davies Ward further stated that it did not represent Teleglobe or provide legal advice to Teleglobe in connection with the matters referenced in Plaintiffs' July 15 letter until on or about April 10, 2002. (Id.) Davies Ward advised Plaintiffs that it was not in a position to produce BCE privileged documents in its possession without the consent of BCE. (Id.). BCE is not prepared to waive the attorney-client privilege with respect to these documents.

31. On or about August 18, 2005, Plaintiffs' counsel asked one of my colleagues about a deposition of Davies Ward. Shearman & Sterling consulted with Davies Ward's outside U.S. counsel, who advised us that last fall Plaintiffs' counsel had agreed to adjourn the deposition of Davies Ward and had not contacted them about it since then. Shearman & Sterling subsequently advised Plaintiffs' counsel that they should contact Davies Ward about their request for a deposition. As far as I am aware, Plaintiffs' counsel have not done so.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 31st day of August 2005 at New York, New York.

_____
Daniel Schimmel