IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

---

| | |
|---|---|
| IN RE: TELEGLOBE COMMUNICATIONS CORPORATION, *et al.*, | : Chapter 11 <br> : Jointly Administered |
| Debtors. | : <br> : Bankr. Case No. 02-11518 (MFW) |
| TELEGLOBE USA INC. *et al.*, | : <br> : Civ. Action No. 04-1266 (SLR) |
| Plaintiffs, | : |
| v. | : |
| BCE INC. *et al.*, | : |
| Defendants. | : |

---

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION *IN LIMINE* TO EXCLUDE THE EXPERT TESTIMONY OF PAUL CHARNETZKI AND CARLYN TAYLOR AS A SANCTION FOR THE SPOLIATION OF INFORMATION CONSIDERED IN FORMING THEIR OPINIONS**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Pauline K. Morgan (No. 3650)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19899
(302) 571-6600
pmorgan@ycst.com
*Attorneys for Defendants*

Of Counsel:

SHEARMAN & STERLING LLP
Stuart J. Baskin
Jaculin Aaron
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000

Stephen J. Marzen
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2634
(212) 508-8000

Dated: May 23, 2006

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ...........................................................................................3

    A.    Parties Agree to Exchange Drafts and Other Materials Considered in Rendering of Expert Opinions .........................................................................3

    B.    Plaintiffs' Counsel and Expert Witnesses Collaborate to Devise Their Opinions ....................................................................................................4

    C.    Charnetzki and Taylor Shred or Otherwise Destroy the Materials from the "All Experts" Meeting ............................................................................5

    D.    Plaintiffs' Expert Witnesses Continue Their Collaboration during a Series of Telephone Conversations .................................................................6

    E.    Charnetzki and Taylor Destroy Drafts and Other Materials Reviewed and Considered in Forming Their Opinions ............................................7

ARGUMENT ................................................................................................................8

I.    PLAINTIFFS' FAILURE TO RETAIN INFORMATION CONSIDERED BY CHARNETZKI AND TAYLOR IN FORMING THEIR OPINIONS REQUIRES EXCLUSION OF THEIR TESTIMONY UNDER THE FEDERAL RULES ...................................................................................................................8

    A.    The Expert-Disclosure Rule Requires the Retention of All Information Considered by Expert Witnesses such as Charnetzki and Taylor in Forming Their Opinions ....................................................................8

    B.    The Preclusion Sanction Requires the Exclusion of Testimony from Experts such as Charnetzki and Taylor Who Fail to Retain the Information They Considered in Forming Their Opinions .......................................10

        1.    Plaintiffs have no substantial justification for destroying information considered by their experts in forming their opinions ........................................11

        2.    Far from being harmless, Plaintiffs' failure has prejudiced Defendants ...............................................................................12

II.    PLAINTIFFS' SPOLIATION OF INFORMATION CONSIDERED BY CHARNETZKI AND TAYLOR SHOULD RESULT IN THE EXCLUSION OF THEIR TESTIMONY UNDER THE COURT'S INHERENT AUTHORITY ..............13

CONCLUSION ...........................................................................................................15

## TABLE OF AUTHORITIES

### CASES

*American Fid. Assurance Co. v. Boyer*, 225 F.R.D. 520 (D.S.C. 2004)............................12

*Fidelity Nat'l Title Ins. Co v. Intercounty Nat'l Title Ins. Co.* 412 F.3d 745 (7th Cir. 2005) ................................................................................................................9, 11

*Hagans v. Henry Weber Aircraft Distribs.,* 852 F.2d 60 (3d Cir. 1988) ............................11

*Samos Imex Corp. v. Nextel Co.*, 194 F.3d 301 (1st Cir. 1999)........................................10

*Karn v. Rand*, 168 F.R.D. 933 (N.D. Ind. 1996)................................................................12

*Mosaid Techs. v. Samsung Elecs. Co.,* 348 F. Supp. 2d 332 (D.N.J. 2004) ......................14

*Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico*, 248 F.3d 29 (1st Cir. 2001)........................................................................10, 11

*In re Paoli Railroad Yard PCB Litigation*, (Civ. Nos. 86-2229, 87-5304) 1992 WL 323559 (E.D. Pa. Oct. 21, 1992)............................................................................11

*Pell v. E.I. Dupont de Nemours & Co.*, 231 F.R.D. 186 (D. Del. 2005) ...........................11

*Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76 (3d Cir. 1994)...................................14

*Semper v. Santos*, 845 F.2d 1233 (3d Cir. 1988) ...............................................................11

*Shaffer v. RWP Group,* 169 F.R.D. 19 (E.D.N.Y. 1996) ...................................................14

*Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879 (S.D.N.Y. 1999)...................14

*Synthes Spine Co. v. Walden*, 232 F.R.D. 460 (E.D. Pa. 2005) .....................................1, 9

*Trigon Ins. Co. v. U.S.*, 204 F.R.D. 277 (E.D. Va. 2001) ........................................ *passim*

*Vitalo v. Cabot Corp.*, 212 F.R.D. 472 (E.D. Pa. 2002) ......................................................9

*W.R. Grace & Co. v. Zotos Int'l, Inc.*, 2000 WL 1843258 at 10 (W.D.N.Y. Nov. 2, 2000)...........................................................................................................................14

*In re Wechsler*, 121 F. Supp. 2d 404 (D. Del. 2000) .........................................................14

*West v. Goodyear*, 167 F.3d 776 (2d Cir. 1999)................................................................14

*William T. Thompson Co. v. General Nutrition Corp.*, 593 F. Supp. 1443 (C.D. Cal. 1984).................................................................................................................14

## STATUTES AND RULES

Fed. R. Civ. P. 26 ......................................................................................... *passim*

Fed. R. Civ. P. 37(c)(1) ................................................................................. *passim*

Defendants respectfully move under Federal Rule of Civil Procedure 37(c)(1) and the Court's inherent authority to exclude the expert testimony of Paul Charnetzki ("Charnetzki") and Carlyn Taylor ("Taylor") as a sanction for the spoliation of information considered in forming their opinions.

## PRELIMINARY STATEMENT

Federal Rule of Civil Procedure 26(a)(2)(B) – the expert-disclosure rule – requires testifying experts to disclose "*the data or other information **considered** by the witness in forming the opinions*." Fed. R. Civ. P. 26(a)(2)(B) (emphases added). The advisory committee notes to Rule 26 and the decisions construing that rule state that the information "considered" by an expert includes not only the information on which the expert relies, but also the information the expert "***generates, reviews, reflects upon, reads, and/or uses***" in forming his opinions. *Synthes Spine Co. v. Walden*, 232 F.R.D. 460, 463 (E.D. Pa. 2005) (citing advisory committee notes to Rule 26(a)(2)(B)) (emphasis added). The evident purpose of the expert-disclosure rule (as with most disclosure rules) is transparency. The opposing party is entitled not only to the "sausage" of the expert's opinions, but also the ingredients that went into making the sausage, in order to inform the fact-finder (in this case, the Court) if the sausage is adulterated or tainted by the ingredients with which it was made.

If a party fails to disclose the ingredients with which the expert sausage was made, it cannot thereafter be "sold" at trial. Federal Rule of Civil Procedure 37(c)(1) – the "preclusion sanction" – provides automatically that a party who, "without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." In addition to the automatic-preclusion sanction, courts have the inherent authority to sanction the spoliation of information considered by experts in forming their opinions.

In this case, Plaintiffs' experts Charnetzki and Taylor confess that they destroyed draft reports, comments from other experts, comments from Plaintiffs' counsel, and notes of telephone calls and meetings with each other and Plaintiffs' counsel – all of which they considered in forming the opinions to which they propose to testify at trial. By destroying the information that Rule 26 requires to be preserved and disclosed, Plaintiffs have prevented Defendants and this Court from determining whether their experts' testimony is safe for consumption at trial or is instead a synchronized and sanitized written product.

The concerns about the intentional destruction of expert materials are reinforced by the way the experts were encouraged to intermingle with each other and with lawyers, as exemplified by the all-experts meeting orchestrated by Plaintiffs at the offices of their counsel on March 1 of this year. At that meeting, Charnetzki and Taylor met with Plaintiffs' counsel and the staff of Plaintiffs' third expert, Walda Roseman ("Roseman"), for **four to five hours** to consider their testimony and mark up each other's reports. Incredibly, after that, Charnetzki testified that he considered the comments the other experts and lawyers made on their copies of his draft report, incorporated them, and then **destroyed** the comments and drafts. For her part, Taylor professed to have no recollection of what happened to the copies of her report other than the one she took with her. She recalled considering the comments on that copy and making changes to her report, but like Charnetzki, Taylor **destroyed** the comments and draft. Neither Charnetzki nor Taylor recalls the substance of the comments and drafts. Their principal recollection is that after traveling from Chicago or Denver to Delaware, and after meeting over the course of several hours, they sat in a room together and corrected the punctuation on each other's reports.

The expert disclosure process simply cannot function this way. The expert-disclosure

rule requires transparency in general and the disclosure of all information considered by the experts in forming their opinions in particular. The "black box" and "trust me" expert testimony proffered by Plaintiffs is antithetical to the expert-disclosure rule. The automatic preclusion requirement and sanctions decisions under the doctrine of inherent authority require the exclusion of that testimony. Exclusion is particularly appropriate here because, after negotiation, the parties expressly agreed to produce drafts, comments, and notes. (*See* Declaration of Stephen J. Marzen ("Marzen Decl."), Ex. 1, Letter from R. Silberglied dated 3/16/2006 to J. Aaron and J. Aaron's response regarding same (describing categories of expert documents to be produced during expert document production).) Accordingly, Charnetzki's and Taylor's testimony should be excluded.

## STATEMENT OF FACTS

Paul Charnetzki, Carlyn Taylor and Walda Roseman are Plaintiffs' testifying experts. Charnetzki, of Huron Consulting Group, was retained in the spring of 2005 to analyze the solvency issues and quantify damages relevant to the case. (Marzen Decl., Ex. 2, Deposition of Paul Charnetzki ("Charnetzki Dep.") at 43-45; Marzen Decl., Ex. 4, Expert Report of Paul Charnetzki ("Charnetzki Rep.") at 4.) Taylor, of FTI Consulting, Inc., was retained to testify about restructuring issues. (Marzen Decl., Ex. 5, Expert Report of Carlyn Taylor ("Taylor Rep.") at 1.) Walda Roseman, of CompassRose International ("CompassRose"), was retained to discuss the international market context of the case. (Marzen Decl., Ex. 6, Expert Report of Walda Roseman ("Roseman Rep.") at 4.)

### A.    Parties Agree to Exchange Drafts and Other Materials Considered in Rendering of Expert Opinions

On March 16, 2006, counsel for Plaintiffs wrote to counsel for Defendants with a proposal for the "categories of documents the parties will mutually exchange concerning their

experts." (Marzen Decl., Ex. 1 at 2). The first category of documents listed on Plaintiffs'
proposal was "[a]ll documents reviewed or relied upon by any expert." (*Id.* at 3). The fourth
"category" of materials was "[d]rafts of reports." (*Id.*) The fifth category of materials included
"correspondence" between experts and counsel and "notes of any meetings, telephone calls, or
video conferences." (*Id.*) The sixth category of materials was "[a]ll working papers drafted or
compiled by any expert." (*Id.*)

On March 24, 2006, Defendants wrote to Plaintiffs agreeing to the proposal for what
documents the parties would mutually exchange concerning their experts. (Marzen Decl., Ex. 1
(agreeing "[t]he list of other categories of documents attached to your letter is acceptable to
us."). Defendants (unlike Plaintiffs) have complied with that agreement.

**B.      Plaintiffs' Counsel and Expert Witnesses Collaborate to Devise Their
          Opinions**

The degree of coordination between Plaintiffs' testifying experts and counsel is
unprecedented. On March 1, 2006, Plaintiffs held a meeting with their testifying experts at the
offices of their counsel in Wilmington, Delaware. (Charnetzki Dep. at 15-16.) Charnetzki,
Taylor, and two staff members from Roseman's office were present. (*Id.* at 17-18.) Lawyers
from each of Plaintiffs' three law firms and Plaintiffs' in-house counsel were also present.
(Charnetzki Dep. at 18-19; Taylor Dep. at 24-27.) At that stage, none of the experts had
completely formulated his or her opinions on the case. (Charnetzki Dep. at 21-22.) The meeting
lasted four to five hours. (Taylor Dep. at 27, 41-42; Charnetzki Dep. at 22.)

During the meeting, each expert circulated copies of a draft report and presented his or
her preliminary views. (Charnetzki Dep. at 19-25; Taylor Dep. at 27-29.) Each expert discussed
his or her own observations and commented on and/or marked up the draft reports of the other
experts. (Charnetzki Dep. at 19-25; Taylor Dep. at 27-31.) The lawyers also commented on

and/or marked up the draft expert reports.  (*Id.*)  Each expert "considered" the comments he or she received.  (Charnetzki Dep. at 24-25, 28-29; Taylor Dep. at 29-31.)  After the meeting, Charnetzki and Taylor incorporated the comments into their drafts.  (Charnetzki Dep. at 25; Taylor Dep. at 41.)

As to the substance of this meeting, Charnetzki and Taylor both developed amnesia. According to them, after traveling thousands of miles to attend, the principal comments they recall receiving during *a four-to-five-hour discussion* concerned typographical errors, misspelling, commas, and missing words.  (Charnetzki at 24; Taylor Dep. at 29-31, 41-43.)  At most, Taylor recalls giving Charnetzki a list of companies and transactions to include in his report, taking the first page of Charnetzki's report to make sure her own language "matched," and telling CompassRose staff members that Roseman's report overlapped with her own and should be edited.  (Taylor Dep. at 31, 43-45.)

### C.    Charnetzki and Taylor Shred or Otherwise Destroy the Materials from the "All Experts" Meeting

Despite their agreement to the contrary, Plaintiffs did not exchange the drafts, notes, comments, and other materials that were reviewed and considered at the all-experts meeting on March 1, 2006.  Rather, Charnetzki testified that after he finished collecting the marked-up copies of his report and considering and incorporating some of the changes, he *shredded* all of the drafts and notes.  (Charnetzki Dep. at 25).  Similarly, Taylor testified that she has no idea what happened to the many copies of her report other than the one she took with her.  (Taylor Dep. at 39-41.)  She also does not know what happened to her copies of the Roseman and Charnetzki reports.  (*Id*. at 43-46.)  She took one copy of her report and the first page of Charnetzki's report with her when she left.  (*Id*.)  After making changes to her report based on the comments she received, she threw the hard copies in the trash.  (*Id*. at 41.)

**D.     Plaintiffs' Expert Witnesses Continue Their Collaboration during a Series of Telephone Conversations**

After the March 1, 2006 all-experts meeting, coordination among the testifying experts persisted.  Charnetzki and Taylor continued to coordinate and confer by telephone on at least six different occasions – sometimes with the participation of Roseman and/or her staff.[1]  (Charnetzki Dep. at 29-30.)  Usually members of Charnetzki and Taylor's staffs were also present on the calls.  (*Id.*)  Plaintiffs' counsel participated in about half of the calls.  (*Id.* at 30.)

As with the all-experts meeting, neither expert witness recalls anything substantive about these many conversations.  Charnetzki, for example, did not have a "detailed recollection" but thought they may have been "just scheduling calls."  (Charnetzki Dep. at 31-32.)  On further prodding, however, he indicated that he and Taylor discussed "various items," including "the April and May projections made by Teleglobe, where they came from, what was in them, [and whether they were] feasible structuring plans[.]"  (*Id.* at 32-33.)  He wanted to make sure that he was using Taylor's work in a way she would agree to and find appropriate.  (*Id.* at 32.)

Another telephone call occurred between Charnetzki, Taylor, and Plaintiffs' counsel to discuss a draft of Taylor's report.  (*Id.* at 37-39.)  Everyone on the call gave Taylor comments, but again Charnetzki could not remember any of the details.  (*Id.* at 40.)  Taylor commented on Charnetzki's draft as well.  Although Charnetzki may have taken notes on some of the comments, he destroyed all notes.  (*Id.* at 41-42.)

Even after issuing their reports, but before drafting the rebuttal report, Charnetzki and Taylor had another telephone call.  (Taylor Dep. at 9.)  For about a half hour, they exchanged thoughts on Defendants' initial report from NERA and discussed Plaintiffs' rebuttal report,

---

[1] Oddly enough, Taylor could only remember speaking to Charnetzki "two or three times" prior to her initial report.  (Taylor Dep. at 25.)

which Taylor issued.  (Taylor Dep. at 9-12; Charnetzki Dep. at 13.)  After the conversation,

Charnetzki read Taylor's draft rebuttal report and provided comments on the report.  (Charnetzki

Dep. at 13-14.)  Taylor's employee then "took the report back" from Charnetzki.  (*Id*.).

> **E.    Charnetzki and Taylor Destroy Drafts and Other Materials Reviewed and Considered in Forming Their Opinions**

Given that the parties had agreed in writing to exchange drafts, (Marzen Decl., Ex. 1), the

absence from Plaintiffs' expert production of any drafts or versions of Charnetzki and Taylor's

reports was conspicuous.  Defendants first learned of Plaintiffs' spoliation when their counsel

deposed Charnetzki and Taylor on May 3, 2006 and May 9, 2006, respectively.  During their

depositions, both experts testified that they routinely destroyed all drafts, hard copies, electronic

versions, and mark-ups of their reports.  They shredded or discarded all notes, memoranda and

evidence of communications with other experts or counsel that they considered in forming their

opinions.

Charnetzki shredded every document generated by him or his staff other than the final

version of his report.  (Charnetzki Dep. at 25-28, 41-43.)  He also instructed his staff to erase or

destroy any electronic or printed version of the report other than the final version. (*Id*. at 52-53,

55.)  He told Plaintiffs' counsel early on that it was his "normal practice" to destroy such

material and counsel did not respond.  (*Id*. at 26-28.)  He claims that he was never instructed by

counsel to preserve this information.  (*Id*. at 58.)

During his deposition, Charnetzki admitted to intentional and complete destruction of all

drafts and notes:

> Q.  Just so I understand because I have been through your box of materials you
> produced in this matter or boxes, am I correct, sir, that you destroyed every draft of
> your report prior to the draft in front of you, prior to the final version in front of you
> today?
>
> A.  That was my intention, yes, sir.

Q.  Well, that was your conscious decision, correct?

A.  Yes, sir.

Q.  And am I correct that you destroyed every note that you took leading up to the preparation of the report sitting in front of you today?

A.  I don't recall taking very many notes, but – and they would have been more in the nature of edits to the draft.  And I don't retain edits in the drafts.

Q.  And so to the extent you took notes, you destroyed them all; correct, Mr. Charnetzki?

A.  That's correct.

Q.  Every single one?

A.  Yes.

Q.  And every single draft; correct?

A.  Yes.

(Charnetzki Dep. at 42-43.)

Taylor also discarded all drafts, notes, and materials relating to her report other than the final version.  She produced to Defendants one draft, which was inadvertently left on her hard drive and which she purportedly discovered a few days after Charnetzki's deposition.  (Marzen Decl., Ex. 3, Deposition of Carlyn Taylor ("Taylor Dep.") at 31-35.)  Plaintiffs' counsel never told her to preserve draft materials until she received Defendants' production request.  (Taylor Dep. at 35.)  By that time, she had destroyed all of that information.

## ARGUMENT

## I.    PLAINTIFFS' FAILURE TO RETAIN INFORMATION CONSIDERED BY CHARNETZKI AND TAYLOR IN FORMING THEIR OPINIONS REQUIRES EXCLUSION OF THEIR TESTIMONY UNDER THE FEDERAL RULES

### A.    The Expert-Disclosure Rule Requires the Retention of All Information Considered by Expert Witnesses such as Charnetzki and Taylor in Forming Their Opinions

Plaintiffs and their experts violated Rule 26(a)(2)(B) when they failed to retain information that Charnetzki and Taylor considered in forming their expert opinions.  As a result of the 1993 Amendments, Rule 26 now requires disclosure of all materials "considered" by an

expert in rendering his or her opinion. *Trigon Ins. Co. v. U.S.*, 204 F.R.D. 277, 282 (E.D. Va. 2001) (noting particularly that "considered" is broader than the previous terminology of "relied" upon). Courts have thus consistently required testifying experts to disclose all information they considered in forming their opinions. *Id.*; *Synthes Spine Co.*, 232 F.R.D. at 463; *Vitalo v. Cabot Corp.*, 212 F.R.D. 472, 474 (E.D. Pa. 2002) (same).

The necessary implication of the duty to disclose information considered by testifying experts is the antecedent duty to preserve that information for subsequent disclosure. As Judge Richard Posner explained for a unanimous panel of the United States Court of Appeals for the Seventh Circuit:

> The [expert-disclosure] rule does not require merely that the party disclose data that it happens to have retained; it must disclose all the data that an expert that it retained to testify at trial "considered," implying that it must retain those data, as otherwise it could not disclose them.

*Fidelity Nat. Title Ins. Co.v. Intercounty Nat. Title Ins. Co.*, 412 F.3d 745, 751 (7th Cir. 2005).

The United States District Court for the Eastern District of Virginia drew the same necessary implication and imposed sanctions for the destruction of information considered by the government's testifying experts in *Trigon*. As that court reasoned:

> [T]he basic precepts of the Federal Rules of Civil Procedure relating to the work of testifying experts requires, on this record, the ***retention and production*** of draft reports and the correspondence reviewed by the testifying expert. That is obvious from the text of Fed. R. Civ. P. 26(a)(2), which governs mandatory disclosure obligations respecting testifying experts, requires that the testifying expert must file a report which contains, inter alia, "a complete statement of all opinions to be expressed and the basis and reasons therefor; [and] the data or other information *considered* by the witness in forming the opinions...." Fed. R. Civ. P. 26(a)(2) (emphasis supplied).

204 F.R.D. at 281 (bold emphasis added); *see id.* at 288 ("[U]nder the mandatory disclosure rules of Fed. R. Civ. P. 26(a)(2) as applied to the facts of this case, the United States was obligated to produce the allegedly spoiled material ***from the time of their genesis***.") (emphasis added).

Plaintiffs and their experts in this case have completely disregarded not only the expert-disclosure rule, but also the explicit agreement with Defendants that the parties would "mutually exchange" (1) all "documents reviewed or relied upon by any expert"; (2) "[d]rafts of reports"; (3) "correspondence" between experts and counsel; (4) "notes of any meetings, telephone calls, or video conferences"; and (5) "[a]ll working papers drafted or compiled by any expert." (Marzen Decl., Ex. 1). This was not an oversight. It was a systematic purging of information on the development of Charnetzki and Taylor's expert opinions. Indeed, Charnetzki admitted that he destroyed *every single draft* of his report. (Charnetzki Dep. at 42-43). Taylor confessed that she discarded the drafts of her reports, so that only a single, mistakenly-retained draft was produced to Defendants. (Taylor Dep. at 31-35). Plaintiffs thus plainly violated both the expert-disclosure rule and their agreement with Defendants.

### B. The Preclusion Sanction Requires the Exclusion of Testimony from Experts such as Charnetzki and Taylor Who Fail to Retain the Information They Considered in Forming Their Opinions

In situations such as this, where a party has failed to comply with Rule 26(a)(2)(B)'s expert-disclosure requirements, the preclusion sanction bars the "use" of "any witness or information" not produced. Fed. R. Civ. P. 37(c)(1). As the First Circuit stated: Rule 37(c)(1) "clearly contemplates strict[] adherence to discovery requirements, and harsh[] sanctions for breaches of [Rule 26(a)(2)(B)]." *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico*, 248 F.3d 29, 34 (1st Cir. 2001). In the ordinary case, the required sanction is mandatory preclusion. *Id.*; *Samos Imex Corp. v. Nextel Co.*, 194 F.3d 301, 305 (1st Cir. 1999) (the exclusion of evidence such as an expert's testimony is a "standard sanction" for

violating the expert-disclosure rule); *Pell v. E.I. Dupont de Nemours & Co., Inc.*, 231 F.R.D. 186

(D. Del. 2005) (testimony of expert would be precluded if litigant failed to satisfy expert-

disclosure rule).[2]

The preclusion sanction in Rule 37(c)(1) does not require violation of a court order.

*Ortiz-Lopez*, 248 F.3d at 33 (unlike sanctions under other provisions of Rule 37, a court order

need not be violated before the court may impose sanctions under Rule 37(c)(1)).  Rather, the

provision is self-executing and automatic unless the non-disclosing party proves by a

preponderance of the evidence that its non-disclosure was "substantially justified" or "harmless."

*Id*. (citing advisory committee's note (1993)); *see* James Wm. Moore, Moore's Federal Practice

¶ 37.60[2][a], at 37-119 (2003) ("the party who would suffer the sanction must be given an

opportunity to demonstrate that its failure to disclose was substantially justified or harmless").

Neither excuse applies here.

    1.    *Plaintiffs have no substantial justification for destroying information*
               *considered by their experts in forming their opinions*

The only excuse Charnetzki and Taylor provide for shredding and discarding disclosable

material is that the destruction occurred pursuant to their "normal practice."[3]  As Judge Posner

explained in *Fidelity*, however, that argument is "frivolous."  412 F.3d at 750.  "There is no legal

duty to be a pack rat.  But a firm's document-retention policy cannot trump Rule 26(a)(2)(B)."

*Id*. at 751.  The federal district court in *Trigon* concurred: "The document retention policies of

AGE do not trump the Federal Rules of Civil Procedure or requests by opposing counsel, even if

---

[2] The Third Circuit has also indicated that preclusion of expert testimony is appropriate under
Rule 37.  *Hagans v. Henry Weber Aircraft Distrib., Inc.*, 852 F.2d 60, 63-65 (3d Cir. 1988)
(preclusion is appropriate for violating a court order under Rule 37(b)); *Semper v. Santos*, 845
F.2d 1233, 1237-38 (3d Cir. 1988) (same); *In re Paoli Railroad Yard PCB Litigation*, Civ. Nos.
86-2229, 87-5304, 1992 WL 323559, at *3 (E.D. Pa. Oct. 21, 1992).

[3]  (*See* Charnetzki Dep. at 25-28; Taylor Dep. at 47-49.)

the requests primarily are informal.  Moreover, AGE's execution of a document retention policy that is at odds with the rules governing the conduct of litigation does not protect the United States from a finding of intentional destruction." 204 F.R.D. at 289.  If the expert-disclosure rule could be circumvented by a "normal practice" of non-retention, savvy expert witnesses would be able to flout the rule with ease merely by adopting a practice of shredding all such materials. That is simply not the law.

2.        *Far from being harmless, Plaintiffs' failure has prejudiced Defendants*

This is not a case where the parties agreed to forego the exchange of draft expert reports. To the contrary, the parties expressly agreed in writing that drafts would be produced. Particularly in such a case, and in light of the unprecedented degree of coordination and discussion among Plaintiffs' team of experts, Defendants have been prejudiced by Plaintiffs' failure to have their testifying experts retain and produce the information they considered in forming their opinions.

By not preserving drafts, notes of the March 1, 2006 all-experts meeting, and notes of the many phone calls, Plaintiffs' have deprived Defendants of extremely powerful cross-examination materials.  "[T]he ability meaningfully to cross-examine experts is important because their reliability is essential to the adversary system." *Trigon*, 204 F.R.D. at 289.  "[I]t is essential during pretrial discovery that the parties be able to discover 'not only what an opposing expert's opinions are, but also the manner in which they were arrived at, what was considered in doing so, and whether this was done as a result of an objective consideration of the facts, or directed by an attorney advocating a particular position.'" *American Fid. Assurance Co. v. Boyer*, 225 F.R.D. 520, 522 (D.S.C. 2004).  "[U]seful cross-examination and possible impeachment can only be accomplished by gaining access to all the information that shaped or potentially influenced the expert witness's opinion." *Karn v. Rand*, 168 F.R.D. 933, 639 (N.D. Ind. 1996).

There is no uncertainty about what happened here. The experts have admitted that drafts were circulated and edited at the March 1, 2006 all-experts meeting,[4] and the suggestions were "considered" and incorporated into the reports.[5] As one commentator put it:

> A potential pitfall with expert reports involves the issue of draft reports. Any time that counsel, or the client, is involved in reviewing drafts of expert reports, it can seriously compromise the appearance of independence and objectivity, thereby damaging the credibility of the expert witness and also perhaps that of counsel or the client. The draft reports and counsel's comments about those drafts are discoverable by the opposition. The problem is exacerbated if the drafts are no longer available to allow the trier-of-fact to assess the nature and extent of the revisions after the involvement of counsel or the client.

Pamela Levi, et. al, 2 Law & Practice of Insurance Coverage Litigation § 24.9(d)(2000). Because neither Charnetzki nor Taylor could remember anything of substance regarding the March 1, 2006 all-experts meeting and various phone calls, "the rather obvious effect and perhaps even the purpose," of destroying the information has been to "eliminate this source of undeniably meaningful cross-examination resource about the substance of the expert opinions." *Trigon*, 204 F.R.D. at 290.

Under these circumstances, the automatic preclusion sanction of Rule 37 should apply to exclude Charnetzki's and Taylor's testimony.

## II.    PLAINTIFFS' SPOLIATION OF INFORMATION CONSIDERED BY CHARNETZKI AND TAYLOR SHOULD RESULT IN THE EXCLUSION OF THEIR TESTIMONY UNDER THE COURT'S INHERENT AUTHORITY

Exclusion of Charnetzki's and Taylor's testimony is also warranted pursuant to this Court's inherent powers. A party who fails to preserve draft reports and other information considered by an expert has spoliated evidence. "Spoliation is the destruction or significant

---

[4] (Charnetzki Dep. at 19-25; Taylor Dep. at 27-31, 39.)

[5] (Charnetzki Dep. at 24-25, 28-29; Taylor Dep. at 41.)

alteration of evidence, or the failure to preserve property for another's use as evidence in pending

or reasonably foreseeable litigation." *West v. Goodyear*, 167 F.3d 776, 778 (2d Cir. 1999).  A

party in litigation has "an affirmative duty" to preserve evidence that it knows is relevant to the

issues in the lawsuit.  *In re Wechsler*, 121 F. Supp. 2d 404, 415 (D. Del. 2000).  Once this

obligation is triggered, the bound party must "preserve what it knows, or reasonably should

know, is relevant in the action" or "is the subject of a pending discovery request."  *Shamis v.*

*Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 889 (S.D.N.Y. 1999) (*quoting William T.*

*Thompson Co. v. General Nutrition Corp.*, 593 F. Supp. 1443, 1455 (C.D. Cal. 1984)).

A district court has inherent authority to sanction a party for failing to preserve relevant

and discoverable evidence.  *Mosaid Tech., Inc. v. Samsung Elec. Co.*, 348 F. Supp. 2d 332, 335

(D.N.J. 2004); *Shaffer v. RWP Group.*, 169 F.R.D. 19, 24 (E.D.N.Y. 1996).  Potential sanctions

include dismissal of a claim, granting judgment in favor of the prejudiced party, exclusion of

evidence or testimony, an adverse inference, fines, attorneys' fees and costs.  *Id*.  The relief

chosen should "achieve deterrence, burden the guilty party with the risk of an incorrect

determination, and attempt to place the prejudiced party in the evidentiary position it would have

been in but for the spoliation."  *W.R. Grace & Co. v. Zotos Int'l, Inc.*, No. 98-CV-838S(F), 2000

WL 1843258 at *10 (W.D.N.Y. Nov. 2, 2000).  "The decision to impose sanctions, as well as the

appropriate sanction to be fashioned, is within the sound discretion of the trial court."  *Shaffer*,

169 F.R.D. at 24.

In the Third Circuit, a court determining whether a spoliation sanction is appropriate must

consider: (1) the degree of fault of the party who failed to preserve or destroyed evidence; (2) the

degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that

will avoid substantial unfairness while still serving to deter such conduct by others.  *Schmid v.*

*Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994).

These three factors overwhelmingly support exclusion of Charnetzki and Taylor's testimony. Plaintiffs are highly culpable because they demonstrated an inexcusable disregard for their discovery obligations under the Federal Rules and the written agreement between the parties to produce drafts and notes. Defendants have suffered incurable prejudice through the loss of materials relevant to the credibility of Plaintiffs' experts and the reliability of their work. Absent such materials, an essential avenue for cross-examination is completely closed to Defendants. Excluding the testimony of Charnetzki and Taylor is the only sanction that will avoid substantial unfairness and deter such conduct by others.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Exclude Expert Testimony of Paul Charnetzki and Carlyn Taylor Due to Spoliation of Evidence should be granted.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____/s/ Pauline Morgan_____
Pauline K. Morgan (No. 3650)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19899
(302) 571-6600
pmorgan@ycst.com
*Attorneys for Defendants*

Of Counsel:

SHEARMAN & STERLING LLP
Stuart J. Baskin
Jaculin Aaron
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000

Stephen J. Marzen
801 Pennsylvania Avenue, N.W.

Washington, D.C. 20004-2634
(202) 508-8000

Dated:  May 23, 2006

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 23, 2006, I electronically filed a true and correct copy of

foregoing document was filed with the Clerk of the Court using CM/ECF, which will send

notification that such filing is available for viewing and downloading to the following counsel of

record:

Gregory V. Varallo, Esq.
Robert J. Stern, Jr., Esq.
Kelly E. Farnan, Esq.
Anne S. Gaza, Esq.
Richards, Layton & Finger, P.A.
920 N. King Street
Wilmington, DE  19801

Joseph A. Rosenthal, Esq.
Rosenthal, Monhait & Goddess, P.A.
1401 Mellon Bank Center
P.O. Box 1070
Wilmington, DE  19899-1070

I further certify that on May 23, 2006, I caused a copy of the foregoing document on the

to be served upon the following non-registered participants in the manner indicated below:


BY EMAIL
John P. Amato, Esq.
Mark S. Indelicato, Esq.
Zachary G. Newman, Esq.
Jeffrey L. Schwartz, Esq.
Hahn & Hessen LLP
488 Madison Avenue
New York, NY  10022

Gregory V. Varallo, Esq.                          Joseph A. Rosenthal, Esq.
Russell C. Silberglied, Esq.-p                    Rosenthal, Monhait & Goddess, P.A.
Mark D. Collins, Esq.                             1401 Mellon Bank Center
C. Malcolm Cochran, IV, Esq.                      P.O. Box 1070
Robert J. Stern, Jr., Esq.                        Wilmington, DE  19899-1070
Kelly E. Farnan, Esq.
Anne S. Gaza, Esq.
Richards, Layton & Finger, P.A.
920 N. King Street
Wilmington, DE  19801


                          */s/ Margaret B. Whiteman*
                          Pauline K. Morgan (No. 3650)
                          Maribeth Minella (No. 4185)
                          Margaret B. Whiteman (No. 4652)
                          YOUNG CONAWAY STARGATT & TAYLOR, LLP
                          The Brandywine Building
                          1000 West Street, 17th Floor
                          Wilmington, DE 19801
                          P.O. Box 391
                          Wilmington, DE 19899-0391
                          (302) 571-6681
                          pmorgan@ycst.com
                          mminella@ycst.com
                          mwhiteman@ycst.com
                          bank@ycst.com

                          *Attorneys for Defendants*