# Exhibit 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------x
In re                                            )   Chapter 11
                                                 )
TELEGLOBE COMMUNICATIONS                         )
CORPORATION, et al.,                             )   Jointly Administered
                                                 )   Bankr. Case No. 02-11518(MFW)
                                                 )
                  Debtors.                       )
------------------------------------------------x
TELEGLOBE COMMUNICATIONS                         )
CORPORATION,                                     )
et al.,                                          )   C.A. No. 04-1266 (SLR)
                                                 )
                  Plaintiffs,                    )
                                                 )
           v.                                    )
                                                 )
BCE INC., et al.,                                )
                                                 )
                  Defendants.                    )
------------------------------------------------x
```

## EXPERT REPORT OF CARLYN TAYLOR

### EXPERT REPORT OF CARLYN R. TAYLOR, CPA, MA
### FTI CONSULTING, INC.

## 1) INTRODUCTION AND QUALIFICATIONS

I have been retained as an expert in this case by counsel for Teleglobe Communications Corporation, et al. ("U.S. Debtor Estate") and the Official Committee of Unsecured Creditors of Teleglobe Communications Corporation ("creditors") to analyze restructuring issues applicable to this matter.

I am a Senior Managing Director in the Corporate Finance Group of FTI Consulting, Inc. ("FTI"), a publicly traded financial and economic consulting firm with approximately 1000 professionals. I am the national leader of the Communications & Media industry group within the Corporate Finance practice of FTI. I am a Certified Public Accountant with an Accredited Business Valuation certification from the AICPA. I specialize in consulting to companies in the telecommunications industry and have worked on over 200 engagements involving a broad range of telecom companies, including dozens of companies in the international long distance and data business. My work often involves strategic advisory, business restructuring consulting, corporate finance, due diligence, valuation, and litigation expert witness work. My resume is attached as Appendix A to this report.

Of particular relevance to this assignment are the material restructuring or advisory engagements I have led in the international long distance and data business, including the following:

- Global Crossing – Restructuring advisor to the secured lenders from late 2001 through the completion of the bankruptcy.

- Williams Communications – Restructuring advisor to the secured lenders from late 2001 through the completion of the bankruptcy.

- Level(3) Communications – Restructuring advisor to the secured lenders in 2002 in connection with the restructuring amendment to the Credit Facility.

Page 1

- Flag Atlantic – Restructuring advisor to the secured lenders in 2002 through the completion of the restructuring process.

- Broadwing – Restructuring advisor to the secured lenders in 2002 and 2003 through the completion of the restructuring amendment to the Credit Facility and subsequent monitoring of performance up through the sale of the long haul fiber business.

- Reach Communications (based in Hong Kong) – Restructuring advisor to the secured lenders during the restructurings in 2003 and 2004.

- GTS (based in UK) – Restructuring advisor to the former Espirit bondholders during the restructuring process in the UK.

- Genuity – Restructuring advisor to the unsecured lenders from mid-2002 through the bankruptcy proceeding.

- Qwest – Due diligence and business plan advisor to the secured lenders during 2002 and early 2003 to review the business plan and liquidity position of the company.

- 360Networks – Performed valuation and industry analysis for the monitor in Canada before and during the restructuring process.

- Pacific Gateway Exchange – Restructuring advisor to the debtor during the bankruptcy proceeding.

- XO Communications – Restructuring advisor to the secured lenders from late 2001 through the bankruptcy proceeding.

- MFN Communications – Restructuring advisor to the secured lenders during the bankruptcy proceeding.

- Viatel – Restructuring advisor to the unsecured creditor committee during the US bankruptcy/UK restructuring process.

- VarTec – Restructuring advisor to the secured lenders from mid-2004 through the bankruptcy.

- IDT Corp – Various valuation assignments involving international long distance products.

- Pacific Crossing – Valuation of undersea cable for the estate.

- DirectNet (international long distance "LD" wholesaler) – Advisor to company in sale process.

- Tycom – Expert witness in dispute regarding sales on undersea cables.

FTI is being compensated at standard hourly rates for the work we perform in this matter. My hourly rate is $655, and the range of hourly rates of others assigned to this project who worked under my direction is $215 to $565. This compensation is unaffected by the outcome in this matter.

For purposes of providing testimony at trial, I intend to illustrate my testimony with demonstrative aids such as graphs, charts, and/or slides.

## 2) SCOPE OF ASSIGNMENT AND INFORMATION REVIEWED

I have been asked to assume, for purposes of my expert opinion, that the BCE Board authorized $850 million of capital for Teleglobe on November 28, 2001 and that the unspent capital from this authorization was available to Teleglobe in 2002. With this underlying assumption, I was asked to provide expert opinions to answer the following key questions:

1. What analysis would FTI have performed, as compared to the analysis performed by Lazard, if we had been hired by Teleglobe to provide restructuring assistance in first quarter of 2002?
2. What conclusion would FTI have reached regarding the restructuring option(s) that would provide the highest potential value to the Teleglobe estate and its creditors, considering the feasibility of each option, the market conditions in the first six months of 2002, and other relevant facts available at the time?
3. How would the restructuring options have changed if Teleglobe's restructuring advisor Lazard had known that as much as $628 million of additional capital from BCE was available to Teleglobe?
4. What was the condition of the telecom industry, including in particular the condition of logical potential strategic buyers for Teleglobe, during the time period when Teleglobe was being sold in 2002?

During the course of work on this matter I, or FTI professional staff working under my direction, have reviewed information, including but not limited to documents produced by the Defendants; publicly available information such as industry analyst reports, articles and public securities filings; and information already in my possession pertaining to the telecommunications industry. Appendix B to this report presents the list of documents I reviewed and/or relied upon for this matter.

The information and opinions in this report are based on discovery and materials made available to me in sufficient time to review by the date of this report. If my staff and I review additional material relevant to this report, I reserve the right to revise, supplement, or supersede my opinions in a future report.

Page 4

# Exhibit 6

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:

| | | |
|---|---|---|
| TELEGLOBE COMMUNICATIONS CORPORATION, TELEGLOBE USA INC., OPTEL TELECOMMUN- ICATIONS, INC., TELEGLOBE HOLDINGS(U.S.) CORPORATION, TELEGLOBE MARINE (U.S.) INC., TELEGLOBE HOLDING CORP. TELEGLOBE INVESTMENT CORP., TELEGLOBE LUXEMBOURG LLC, TELEGLOBE PUERTO RICO INC. and TELEGLOBE SUBMARINE | : | Chapter 11<br><br>Case No. 02-11518 (MFW)<br><br>Jointly Administered |
| Debtors, | :------X | |
| TELEGLOBE COMMUNICATIONS CORPORATION, TELEGLOBE USA INC., OPTEL TELECOMMUN- ICATIONS, INC., TELEGLOBE HOLDINGS (U.S.) CORPORATION, TELEGLOBE MARINE (U.S.) INC., TELEGLOBE HOLDING CORP. TELEGLOBE INVESTMENT CORP., TELEGLOBE LUXEMBOURG LLC, TELEGLOBE PUERTO RICO INC., TELEGLOBE SUBMARINE and the OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TELEGLOBE COMMUNICATIONS CORPORATION, et al., | : | |
| Plaintiffs, | :------X | Civ. No. 04-1266-SLR |
| v.<br>BCE INC., MICHAEL T. BOYCHUK, MARC A. BOUSHARD, SERGE FORTIN, TERENCE J. JARMAN, STEWART VERGE, JEAN C. MONTY, RICHARD J. CURRIE, THOMAS KIERANS, STEPHEN P. SKINNER, and H. ARNOLD STEINBERG, | : | |
| Defendants. | :------X | |

**EXPERT REPORT OF WALDA W. ROSEMAN**

I.  **OUTLINE OF REPORT**

My report contains the following sections:

I.   Outline of Report

II.  My Qualifications

III. Assignment

IV.  Summary of Opinions

V.   Teleglobe as a Monopoly Provider

VI.  Transformation of the International Telecommunications Market

VII. The Development of the GlobeSystem

VIII. Time Horizon for Investments Like the GlobeSystem

Attachment 1  Resume of Walda W. Roseman

Attachment 2  List of Documents Reviewed

Attachment 3  Glossary of Terms

Exhibits

II. **MY QUALIFICATIONS**

In 1993 I founded CompassRose International, a consulting firm specializing in information and communications technology matters. I have led CompassRose since its founding. CompassRose assists clients on diverse business matters relating to telecommunications technology, international and foreign markets for equipment and services, and government regulation. My consulting practice at CompassRose draws from my experience as a senior business strategist at Intelsat and the Chief Operating Officer of the Corporation for Public Broadcasting; as a senior official in the Office of Telecommunications Policy of the Executive Office of the President; as the first Director of the Office of International

2

Communications of the U.S. Federal Communications Commission; and, from the business and government relationships I developed then and subsequently. I have worked actively in the field for more than 30 years.

My work experience has covered varied business and regulatory issues, including several that are directly germane to this litigation – impact of technology and regulation on international telecommunications market developments, changing structure of foreign and international telecommunications markets, and business development strategies in a dynamic, global environment. Much of my work addresses commercial and regulatory strategies throughout the broad sector of information and communications technology.

My client base and project assignments have included:

- U.S and foreign telecommunications service providers interested in U.S. and international regulation of the sector, such as Intelsat (the leading provider of international satellite services), Inmarsat, Telecomm de Mexico, ICO Global Communications, Iridium, Comsat, Echostar;

- Internet and software companies, looking at international developments and opportunities, such as Microsoft, ICANN and Securicor;

- Global satellite system developers, such as Lockheed Martin and Boeing, with interests in the work of the International Telecommunication Union ("ITU")[1] and international business opportunities; and

- Telecommunications service providers trying to enter markets outside their home countries, such as US West International, Cable and Wireless, MCI, British Telecom and France Telecom.

I have taught international telecommunications in the Graduate Telecommunications Program at the George Washington University in Washington, D.C. I am frequently invited to chair or speak at international conferences on matters related to technology, regulation and

---

[1] The International Telecommunication Union is a body within the United Nations system that was created in 1865 for the purpose of facilitating international telecommunications. Its membership includes 189 governments, more than 600 publicly and privately-owned telecommunications companies, and numerous other non-governmental entities.

3

...
...

markets worldwide, including those in developing countries. Details are reflected in my resume included as Attachment 1 to this report.

All of the opinions contained in this Report are expressed to a reasonable degree of certainty for a professional in my field.

CompassRose is being compensated at standard hourly rates for the work we perform in this matter. My hourly rate is $350 and the range of hourly rates of others assigned to this project who worked under my direction is $200 to $350. This compensation is unaffected by the outcome in this matter.

Unless otherwise specified, all dollar figures in my report are U.S. dollars.

### III.  ASSIGNMENT

Counsel for plaintiffs has asked me to address in general the international market context within which the issues in this case have been raised and specifically to provide opinions on the following:

- What was Teleglobe,[2] including relevant aspects of Teleglobe's corporate history and its technological and asset base prior to 1998?

- What was the market context within which Teleglobe operated and what forces gave rise to the development of the GlobeSystem?

- What was the GlobeSystem as originally planned and as almost completed; what markets was Teleglobe seeking to serve with the GlobeSystem (including a description of relevant network technology); and what were the competitive advantages offered by the GlobeSystem?

- In my professional opinion, what should the appropriate time horizon have been for achieving returns on investments for building out a network like the GlobeSystem?

I have attached as Appendix 3 a glossary of selected telecommunications terms used in this report or in other documents in this case.

---

[2] I use the term "Teleglobe" to refer initially to the original Canadian company and later to encompass all the various entities which made up the Teleglobe group of companies. I do not distinguish between the Canadian and U.S. entities and the various subsidiaries.

4

In forming my opinions, I or one of the CompassRose professional team have reviewed portions of the record in this case, public securities filings, selected security analyst reports, professional literature and assorted general and trade press reports on markets for international telecommunications networks and services. A list of the documents I have considered is set out in Attachment 2. I reserve the right to modify or amend my opinions as new information becomes available.

## IV. SUMMARY OF OPINIONS

Based on my analysis of the material I have reviewed, my knowledge of the operation of international telecommunications markets and my experience in analyzing corporate development strategies in these markets, I offer the following summary of opinions.

Teleglobe as a Monopoly. From 1950 to 1998, Teleglobe was the monopoly provider of international telecommunications services between Canada and the rest of the world, except the United States. Teleglobe's monopoly status gave it a global reach that was unusual in its breadth. Teleglobe was a publicly-traded company from 1987 until November 2000, when it became a subsidiary of BCE. Eighteen months later, in May 2002 Teleglobe filed for bankruptcy.

Teleglobe's initial business focused on international voice services originating and terminating in Canada. During its first 48 years of existence, Teleglobe was part of a network of monopoly carriers, almost all of them government-owned, interconnecting among each other for the purpose of exchanging international telecommunications traffic. Teleglobe had agreements to terminate and receive traffic with operators in 240 countries and territories. Teleglobe had a well-developed submarine cable network and long-term contracts for satellite transmission capacity, which provided an ideal platform for international voice and video transmission. Satellites also provided network redundancy.

5