IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TELEGLOBE COMMUNICATIONS | ) | Jointly Administered |
| CORPORATION, et al., | ) | Bank. Case No. 02-11518-MFW |
| | ) | |
| Debtors. | ) | |
| | | |
| TELEGLOBE COMMUNICATIONS | ) | |
| CORPORATION, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civ. No. 04-1266-SLR |
| | ) | |
| BCE, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**O R D E R**

At Wilmington this 2nd day of June, 2006, having reviewed the final decision of the Special Master on plaintiffs' motion to compel the production of documents withheld by defendants on the basis of privilege, as well as the papers filed in connection therewith;

IT IS ORDERED that said decision (D.I. 213) is affirmed, for the reasons that follow:

1. **Procedural background.** The above captioned litigation arises out of the decision by defendant BCE, Inc. ("BCE"), a Canadian corporation, to cease long term funding of its wholly

owned subsidiary, Teleglobe, Inc. ("Teleglobe"), another Canadian corporation. It is asserted that BCE's decision led Teleglobe's wholly-owned direct and indirect United States subsidiaries to seek protection under Chapter 11 of the United States Bankruptcy Code. The corporate plaintiffs/debtors filed suit for damages and other relief[1] against various defendants, including BCE (Canada's largest communications company) and various of debtors' directors and officers (many of whom also held positions with BCE and/or other BCE subsidiaries). The amended complaint alleges seven theories of liability. As to BCE, plaintiffs have asserted claims for breach of contract, estoppel, misrepresentation, and breach of fiduciary duty.

2. On February 11, 2005, plaintiffs filed a motion to compel the production of documents, including the production of thousands of documents withheld by defendants based on attorney-client privilege and work product doctrine. I referred to the Special Master the "issues relating to the plaintiffs' motion to compel . . . and the parties' privilege logs" and directed the Special Master to "regulate all proceedings and take all measures necessary to manage" such issues and to "rule on same." (D.I. 157, 160)

3. As of December 1, 2005, defendants had agreed to produce

---

[1] Also suing for relief is the Official Committee of Unsecured Creditors of Teleglobe Communications Corporation.

all documents related to matters in which any member of the BCE legal department may have acted as legal counsel to Teleglobe or any of the plaintiffs/debtors.  Defendants also agreed to produce all documents generated as a result of the joint representation of BCE and Teleglobe by legal counsel, or with respect to matters giving rise to a common interest privilege between Teleglobe and BCE for the period from November 1, 2001 to April 23, 2002.[2]

    4.  Consistent with the parameters of production agreed to by the parties, and in order to verify BCE's assertion that the only documents it continued to withhold from production were those involving the provision of legal advice **solely** to BCE, the Special Master allowed plaintiffs to select from BCE's privilege log 50 documents for *in camera* review.  Thereafter, defendants withdrew their privilege assertion for multiple documents and the Special Master determined that the privilege had been wrongfully asserted for multiple other documents among the sample selected by plaintiffs.  Consequently, defendants were ordered to produce for *in camera* review all documents that continued to be withheld. Although defendants continued to withdraw their assertion of privilege on documents, nevertheless, the Special Master was left

---

[2] Given the above concessions, I find that plaintiffs/debtors, as wholly owned subsidiaries of Teleglobe, Inc., fall within the ambit of the Teleglobe - BCE common interest privilege.  See also, Glidden Co. v. Jandernoa, 173 F.R.D. 459, 472-73 (W.D. Mich. 1997); In re Mirant Corp., 326 B.R. 646, 651-52 (Bankr. N.D. Tex. 2005).

with hundreds of documents to review *in camera*.

5. In his February 22, 2006 decision, the Special Master ordered that all withheld documents be produced based on the following reasoning, as I understand the decision. First, defendants' indiscriminate designation of documents as privileged was abusive and would justify the sanction of production. Second, and more significantly, the joint representation of BCE and Teleglobe by in-house counsel for BCE had eviscerated BCE's claim of privilege as to those documents generated from November 1, 2001 to April 23, 2002 that reflect matters of common interest, to wit, Teleglobe's funding and restructuring.

6. On the record presented, I find no error in the Special Master's decision to order the wholesale production of defendants' privileged documents.

   a. When two or more clients having matters of common interest retain or consult the same lawyer, all communications with the lawyer that are relevant to said matters must be shared with all the clients, absent some clear agreement to the contrary. See Del. R. Evid. 502(d)(6); Official Comm. of Unsecured Creditors v. Fleet Retail Fin. Group (In re Hechinger Inv. Co. of Del.), 285 B.R. 601, 612 (D. Del. 2002). In this case, there can be no dispute that BCE's in-house counsel advised both BCE and Teleglobe about Teleglobe's funding and restructuring, matters of common interest as between BCE and

4

Teleglobe. Therefore, the Special Master correctly decided that all communications relating to these matters of common interest that were shared with BCE's in-house counsel must be shared with Teleglobe.[3]

      b.   The universe of communications identified above includes communications from or to the following retained counsel:

      1)   Davies Ward Phillips & Vineberg LLP ("Davies Ward"). The Special Master determined that, because Davies Ward had jointly represented BCE and Teleglobe on those matters of common interest identified above, neither Davies Ward nor BCE could withhold documents from Teleglobe.

      2)   Stikeman Elliot, Osler Hoskin & Harcourt LLP, and Shearman & Sterling. The Special Master determined that all of the documents related to the above counsel had to be produced to Teleglobe, even where it was clear that said counsel offered advice exclusively for BCE's benefit, because the communications were shared with BCE's in-house counsel who jointly represented Teleglobe. This aspect of the Special Master's decision is the most troubling, as it arguably forces a party in BCE's position to choose between two equally unsatisfactory courses of action:

---

[3] There is no indication that, prior to April 23, 2002, BCE provided clear notice to Teleglobe that the attorney-client relationship between Teleglobe and BCE's in-house counsel had been terminated.

either forego the valuable advice of its in-house counsel, or forego the protection of the attorney-client privilege with its retained counsel. As harsh as the result seems, however, I am convinced that the Special Master got it right. BCE is a large and sophisticated business, used to dealing with lawyers of all sorts under many different arrangements. Given the clear law that an attorney representing two clients on a matter of common interest cannot withhold relevant information from either of said clients, it should come as no surprise to BCE that information channeled through its in-house counsel would have to be disclosed to Teleglobe. BCE certainly had the opportunity to isolate its privileged communications with retained counsel from in-house counsel, or to clearly terminate the attorney-client relationship between its in-house counsel and Teleglobe. The record demonstrates that BCE did neither.[4] Therefore, it is appropriate that the documents listed on BCE's privilege logs be disclosed to Teleglobe.

IT IS FURTHER ORDERED, THEREFORE, that BCE produce such documents **on or before June 7, 2006.**

IT IS FURTHER ORDERED that the pretrial conference in the above captioned litigation shall be rescheduled to **Tuesday, June 13, 2006** at **2:00 p.m.** in courtroom 6B, sixth floor of the Federal

---

[4]The fact that BCE was neither candid nor cooperative during this entire exercise does not help its cause.

Courthouse, 844 King Street, Wilmington, Delaware.

                                                _____
                                                United States District Judge