# EXHIBIT A

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22951696 (D.Del.)
**(Cite as: 2003 WL 22951696 (D.Del.))**

Page 1

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
In re: DAIMLERCHRYSLER AG Securities Litigation
TRACINDA CORPORATION, a Nevada Corporation,
Plaintiff,
v.
DAIMLERCHRYSLER AG, a Federal Republic of Germany corporation; Daimler-Benz AG,
a Federal Republic of Germany corporation; Jurgen Schrempp, a citizen of the
Federal Republic of Germany; Manfred Gentz, a citizen of
the Federal Republic
of Germany, Defendants.
**No. Civ.A. 00-993-JJF.**

Nov. 25, 2003.

A. Glichrist Sparks, III, Alan J. Stone, and Jessica Zeldin, of
Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware,
Terry Christensen, Mark G. Krum, Eric P. Early, of
Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro,
LLP, Los Angeles, California. William G. McGuinness, Julie E. Kamps, and Midwin Charles, of Fried, Frank, Harris,
Shriver & Jacobson, New York, New York, for Plaintiff, of
counsel.

Thomas J. Allingham II, and Robert S. Saunders, of Skadden, Arps, Slate, Meagher & Flom LLP, Wilmington,
Delaware, Jonathan J. Lerner, J. Michael Schell, Lea Haber
Kuck, and Joseph N. Sacca, of Skadden, Arps, Slate, Meagher & Flom LLP, New York, New York, for Defendants,
of counsel.

*MEMORANDUM OPINION*
FARNAN, J.

*1 Pending before me is a Motion For Relief For Spoliation
Of Evidence (D.I.584) filed by Defendants, DaimlerChrysler AG, Daimler-Benz AG, Jürgen Schrempp and
Manfred Gentz. By their Motion, Defendants contend that
Tracinda deliberately destroyed relevant evidence thereby

prejudicing Defendants' ability to defend this action. As relief, Defendants request the dismissal of Tracinda's claims
of common law fraud (Counts 7 and 8 of the Complaint)
and violations of Section 10(b) of the Securities and Exchange Act of 1934 (Count 1 of the Complaint). In the alternative, Defendants ask me to draw an adverse inference
against Tracinda at trial based on the destruction of this
evidence. For the reasons discussed, I will deny Defendants'
Motion.

**I. THE PARTIES' CONTENTIONS**

By their Motion, Defendants contend that Mr. Kirk Kerkorian's personal assistant, Jaclyn Thode, destroyed documents
that she used to prepare a list of meetings and/or conversations between Mr. Kerkorian and Mr. Robert Eaton. Defendants contend that Tracinda's general counsel, Richard Sobelle, instructed Ms. Thode to prepare the list, but failed to
instruct her to preserve the documents used in making the
list. Based on these allegations, Defendants contend that
Tracinda engaged in the willful and systematic destruction
of relevant evidence.

In response to Defendants' allegations, Tracinda contends
that Ms. Thode did not engage in any willful or intentional
destruction of evidence. Tracinda contends that Ms. Thode
has no knowledge of the underlying allegations of this lawsuit beyond "coffee room talk," and that any destruction of
evidence was unintentional. Tracinda contends that the underlying documents are no more than 18 pieces of paper
consisting primarily of steno notes or "While You Were
Out" pink message notes. According to Tracinda, the substantive content of these notes was transcribed by Ms.
Thode into a single list virtually verbatim. Tracinda also
contends that the notes did not contain anything about the
substance of the conversations between Mr. Kerkorian and
Mr. Eaton, and merely reflected the fact that a meeting or
telephone conversation occurred. Tracinda further maintains
that Ms. Thode followed her routine practice of destroying
the notes after she documented them. Because the content of
the documents was preserved by Ms. Thode's list and the
destruction of the documents was unintentional, Tracinda
contends that Defendants cannot establish that sanctions are
warranted.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                    Page 2
Not Reported in F.Supp.2d, 2003 WL 22951696 (D.Del.)
**(Cite as: 2003 WL 22951696 (D.Del.))**

II. DISCUSSION

In determining whether sanctions are an appropriate remedy for the alleged destruction of evidence, I must consider three factors: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party, and where the offending party is seriously at fault, will serve to deter conduct in the future. *Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir.1994).* After considering Defendants' allegations and the evidence submitted on this issue in the context of the applicable law, I conclude that sanctions are not warranted as a result of the alleged spoliation of evidence in this case. The unrebutted deposition testimony and affidavit of Ms. Thode establish that she discarded her handwritten notes after converting them into typewritten form, consistent with her practice in the past. [FN1] (Thode Decl. at ¶ 8, Thode Tr. 15:6-9). Ms. Thode had no information or understanding about the substance of this litigation and no information as to the purpose of Mr. Sobelle's request, and thus she had no reason to alter or omit any information from the documents. (Thode Decl. at ¶ 2, 12-13, 15; Thode Tr. 41:16-25, 52:24-25, 53:2- 23, 55:2-6). I am persuaded that Ms. Thode had every incentive to correctly and fully document the notes she was working from in order to comply with Mr. Sobelle's request for information. In these circumstances, I find that Ms. Thode acted unintentionally when she discarded the steno pads and pink message notes. *See S.C. Johnson & Son, Inc. v. Louis & Nashville R.R. Co., 695 F.2d 253, 259 (7th Cir.1982)* (finding that destruction of evidence was not intentional where handwritten notes were discarded after being typed and person handling evidence had no reason to omit or alter necessary information). I further find that Defendants have not suffered any prejudice as a result of Ms. Thode's actions, because they have a complete and accurate chronology of the contents of the documents that were discarded.

> FN1. *See e.g. Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 334 (3d Cir.1995)* (recognizing that adverse inference is not warranted against party who destroyed evidence where destruction of evidence was a matter of routine with no fraudulent

intent or otherwise innocently accounted for); *Ziegler v. Anesthesia Assoc. of Lancaster, Ltd., 2002 WL 387174 (E.D.Pa. Mar. 12, 2002)* (holding that spoliation doctrine was inapplicable where president of defendant company destroyed voter list at conclusion of meeting consistent with his past personal practice).

**\*2** Defendants focus on the fact that the documents from which Ms. Thode made her typewritten list had been stored for two years prior to their destruction. However, Ms. Thode testified that those documents were packed and stored when her office was moved, and she did not have the opportunity to go through them either before or after the move until Mr. Sobelle's request for information. (Thode Decl. at ¶ 9, Thode Tr. at 41:5-15). Ms. Thode explained that when Mr. Sobelle asked her for any information about meetings between Mr. Eaton and Mr. Kerkorian, she initially doubted that she had anything relevant, but later remembered the two boxes that had been shipped from her previous office. (Thode Decl. at ¶ 10-11, Thode Tr. at 40:22-41:15). Ms. Thode also explained that the majority of the contents of the boxes did not contain anything relevant to this litigation, but that she did uncover her pink message notes and steno pads. (Thode Decl. at ¶ 12). In my view, the circumstances Ms. Thode described appear to be consistent with the type of events that occur during the often confusing and hectic move of an office. As such, I do not find anything sinister about the fact that the documents had been in storage for such a long period of time prior to their destruction.

Defendants also suggest that these documents may have contained information regarding the substance of the conversations between Mr. Kerkorian and Mr. Eaton, such that the destruction of these documents prejudiced Defendants' ability to defend this lawsuit and deprived them of relevant information. To establish prejudice, Defendants must show " 'a reasonable possibility, based on concrete evidence rather than a fertile imagination' that access to the [lost material] would have produced evidence favorable to his cause." ' [FN2] *Gates Rubber Co. v. Bando Chem. Indus., Ltd., 167 F.R.D. 90, 104, 109 (D.Colo.1996); Schmid, 13 F.3d at 80* (overturning sanction of judgment in favor of defendant where defendant did not "come forward with plausible, con-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                        Page 3
Not Reported in F.Supp.2d, 2003 WL 22951696 (D.Del.)
**(Cite as: 2003 WL 22951696 (D.Del.))**

crete suggestions as to what that [lost] evidence might have been"). This standard is not satisfied where the evidence lost is merely "cumulative, insignificant or of marginal relevance." *Gates, 167 F.R.D. at 104, 109.*

> FN2. The burden of establishing prejudice must be shown by "direct evidence which is clear and convincing" when dispositive sanctions are sought, and by a preponderance of the evidence when non-dispositive sanctions are sought. *Gates, 167 F.R.D. at 108.*

After considering the facts and circumstances related to this issue, I conclude that Defendants have not met their burden of establishing prejudice under either a clear and convincing or preponderance of the evidence standard. Ms. Thode's un-rebutted testimony is that she included all the information from her pink message notes and steno pads into the list she transcribed and that she discarded the pink message notes and steno pads consistent with her past practice of discarding such documents after she has looked through them. Ms. Thode also testified that she was not present for any meetings or conversations between Mr. kerkorian and Mr. Eaton, that she had no knowledge about the content of any such conversations or meetings, and that the documents she discarded had no information regarding the substance or duration of any conversations or meetings. (Thode Decl. at ¶ 6,7, 9-15; Thode Tr. at 41:16-25, 52:24-25, 53:2-23, 55:2-6). Because the content of this evidence was preserved, and the nature of the discarded documents was unlikely to reveal anything regarding the content or duration of the conversations that took place, I conclude that Defendants have not been prejudiced by the destruction of these documents. *See e.g. Mathias v. Jacobs, 197 F.R.D. 29, 39 (S.D.N.Y.2001)* (finding no prejudice where the substance of the discarded computer printout was transferred to plaintiff's palm pilot, which was produced), *vacated on other grounds, 167 F.Supp.2d 606 (S.D.N.Y.2001)*. Further, I note that Defendants have represented Mr. Eaton throughout this litigation and have deposed Mr. Kerkorian regarding his conversations with Mr. Eaton. Thus, Defendants have had ample opportunity to garner the substance of these conversations from the actual participants, sources which are undoubtedly more accurate and more substantive than the telephone mes-

sage notes of an assistant who was not present during the actual conversations.

**\*3** To the extent that Defendants suggest that Mr. Sobelle acted nefariously in failing to instruct Ms. Thode to preserve the documents, I find that Mr. Sobelle's conduct does not evidence any bad faith. I have read the testimony of Mr. Sobelle and Ms. Thode in this regard and find nothing beyond mere speculation to support Defendants' assertion that Mr. Sobelle made a deliberate choice not to assure the preservation of the phone message slips and steno pads. While it may have been a better litigation practice for Mr. Sobelle to have instructed Ms. Thode to preserve the documents, Defendants have not persuaded me that Mr. Sobelle acted intentionally to impair Defendants' ability to defend against Tracinda's claims. *See e .g. Brewer, 72 F.3d at 334* (holding that negative inference arises " 'only when the spoliation or destruction [of evidence] was intentional, and indicates a desire to suppress the truth' ") (citations omitted); *Universe Tankships, Inc. v. United States, 388 F.Supp. 276, 286 (E.D.Pa.1974), aff'd, 528 F.2d 73 (3d Cir.1975)* (holding that negligence resulting in the destruction of evidence is insufficient to require the court to draw an adverse inference).

With regard to the cases cited by Defendants to support their position that sanctions are warranted, I find the majority of those cases to be distinguishable from the circumstances in this case. The cases cited by Defendants involve the destruction of key pieces of evidence, without which the defendants could not establish a defense or refute the plaintiff's allegations. *See e.g. In re Wechsler, 121 F.Supp.2d 404, 428-429 (D.Del.2000)* (entering an interlocutory finding of liability against plaintiff where plaintiff destroyed his yacht, the central piece of evidence, before inspectors could determine if faulty wiring caused the fire, thereby preventing defendants from discovering the cause of the fire or establishing that the fire was started on plaintiff's yacht); *Bowman v. American Medical Systems, 1998 WL 721079 (E.D.Pa. Oct. 9, 1998)* (holding that defendants were prejudiced where they could not examine the prosthesis which was the subject of the action because plaintiff destroyed it, and they could not obtain the relevant information from the doctor because he died); *Walters v. General Motors Corp., 209 F.Supp.2d 481 (W.D.Pa.2002)* (finding prejudice where plaintiff des-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                    Page 4
Not Reported in F.Supp.2d, 2003 WL 22951696 (D.Del.)
**(Cite as: 2003 WL 22951696 (D.Del.))**

troyed the vehicle that was the subject of her defective-manufacturing claim.) By contrast, as I have observed, Defendants have had ample opportunity to gather the information they seek about the conversations between Mr. Eaton and Mr. Kerkorian from the participants themselves. Thus, I conclude that the destruction of the documents sought by Defendants will not impair their ability to defend this litigation.

In sum, I find that the destruction of the documents used by Ms. Thode in compiling her list of contacts between Mr. Eaton and Mr. Kerkorian was not intentional and did not result in any prejudice to Defendants. Once Ms. Thode discovered these documents, she handled them in a manner consistent with her past practice. The content of the documents has been fully preserved, and I am not persuaded that those documents, by their nature, would have contained the information which Defendants seek. In these circumstances, I conclude that sanctions are not appropriate, and therefore, I will deny Defendants' Motion For Relief For Spoilation Of Evidence.

III. CONCLUSION

*4 For the reasons discussed, Defendants' Motion For Relief For Spoilation Of Evidence will be denied.

An appropriate Order will be entered.

                    *ORDER*
At Wilmington, this 25th day of November 2003, for the reasons discussed in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that Defendants' Motion For Relief For Spoilation Of Evidence (D.I.584) is DENIED.

Not Reported in F.Supp.2d, 2003 WL 22951696 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 2004 WL 1224634 (Trial Motion, Memorandum and Affidavit) Plaintiff Tracinda Corporation's Answering Post Trial Brief (May. 14, 2004)

• 2004 WL 1224637 (Trial Motion, Memorandum and Affi-

davit) Defendants' Responsive Post-Trial Brief (May. 14, 2004)

• 2004 WL 1224635 (Trial Motion, Memorandum and Affidavit) Defendants' Post-Trial Memorandum of Law and Memorandum in Support of Their Motion for Judgment as a Matter of Law (Apr. 23, 2004)

• 2004 WL 1224636 (Trial Motion, Memorandum and Affidavit) Plaintiff Tracinda Corporation's Opening Post Trial Brief (Apr. 23, 2004)

• 2004 WL 481714 (Trial Pleading) Tracinda Corporation's Reply Memorandum in Support of its Motion for Award of Sanctions Against Defendants for Late Production of Documents (Feb. 20, 2004)

• 2004 WL 481715 (Trial Pleading) Defendants' Response to Tracinda Corporation's Objections to the Report of the Special Master (Feb. 04, 2004)

• 2004 WL 481713 (Trial Pleading) Tracinda Corporation's Memorandum of Points and Authorities in Support of its Motion for Award of Sanctions Against Defendants for Late Production of Documents (Jan. 23, 2004)

• 2004 WL 353914 (Trial Motion, Memorandum and Affidavit) Plaintiff Tracinda Corporation's Objections to the Report and Recommendations of Special Master Collins J. Seitz, Jr., Esq. (Jan. 21, 2004)

• 2003 WL 23180946 (Trial Filing) Statement of Plaintiff Tracinda Corporation in Connection With Proceedings Before the Special Master With Respect to Certain Belatedly Produced Documents (Dec. 19, 2003)

• 2003 WL 24282958 (Expert Report and Affidavit) Consolidated Action (Feb. 10, 2003)

• 2003 WL 24282959 (Expert Report and Affidavit) Expert Report of Frederick C. Dunbar (Jan. 10, 2003)

• 2003 WL 24282957 (Expert Report and Affidavit) Report of Expert Witness Richard A. Wines (Jan. 9, 2003)

• 2003 WL 24337540 (Expert Report and Affidavit) Declar-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                        Page 5
Not Reported in F.Supp.2d, 2003 WL 22951696 (D.Del.)
**(Cite as: 2003 WL 22951696 (D.Del.))**


ation of Rolf St%20urner (Jan. 8, 2003)Original Image of
this Document (PDF)

• 2002 WL 32991955 (Expert Report and Affidavit) Report
of Mark E. Zmijewski in the matter of (Dec. 2, 2002)

• 2002 WL 32991956 (Expert Report and Affidavit)
Daimlerchrysler Ag Securities Litigation Preliminary Re-
port of Anticipated Testimony (Dec. 2, 2002)

• 2000 WL 34408517 (Trial Pleading) Class Action Com-
plaint for Federal Securities Law Violations (Nov. 28, 2000)

• 2000 WL 34408518 (Trial Pleading) Class Action Com-
plaint for Federal Securities Law Violations (Nov. 28, 2000)

• 1:00CV00993 (Docket) (Nov. 28, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                           Page 1
Not Reported in F.Supp.2d, 2002 WL 1870293 (S.D.N.Y.)
**(Cite as: 2002 WL 1870293 (S.D.N.Y.))**

H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
GUCCI AMERICA, INC., Plaintiff,
v.
EXCLUSIVE IMPORTS INTERNATIONAL, Cyril Israel-
son, Innopex, Ltd, Aaron Wexel,
Joshua Frankel, Boruch Abraham Teitelbaum, Imperial
Trading Ltd , and John Does
1-10, Defendants.
**No. 99 Civ.11490 RCC FM.**

Aug. 13, 2002.

Trademark holder for watch brought action against alleged
infringer. Counterclaims were filed. Following discovery
dispute, the District Court, Casey, J., reviewed rulings of
Frank Maas, United States Magistrate Judge, and held that:
(1) preclusion of evidence that defendant allegedly tampered
with plaintiff's watches was not clearly erroneous; (2) de-
termination that distribution of allegedly counterfeit watches
to Canadian corporation lacked nexus with United States,
and thus were not relevant, was not clearly erroneous; (3)
magistrate did not clearly err in upholding plaintiff's refusal
to respond to third set of interrogatories; (4) denial of mo-
tion to compel plaintiff to answer deposition question as to
costs incurred in watch production was not clear error; (5)
failure to sanction plaintiff for having human resources vice
president verify interrogatories was not clear error; and (6)
magistrate did not clearly err in determining that plaintiff's
designated deponent was adequate.

Ordered accordingly.

West Headnotes

**[1] Trademarks ⬯1615**
382Tk1615 Most Cited Cases
   (Formerly 382k578)
Magistrate's preclusion of evidence that alleged infringer al-
legedly tampered
with several of trademark holder's watches, while watches

were in possession of defense counsel, during trademark in-
fringement action, was not clearly erroneous; if trademark
holder were allowed to accuse opposing counsel, during tri-
al, of tampering with evidence, without first finding basis
for accusation, new trial could be warranted.

**[2] Trademarks ⬯1615**
382Tk1615 Most Cited Cases
   (Formerly 382k578)
Magistrate's determination that distribution of allegedly
counterfeit watches to Canadian corporation lacked nexus
with United States and thus were not relevant in trademark
holder's trademark infringement action was not clearly erro-
neous; no evidence showed that the Canadian sales were
"processed" through Washington state or that such as al-
leged would have supported a Lanham Act claim. Fed.Rules
Evid.Rule 404(b), 28 U.S.C.A.

**[3] Evidence ⬯129(5)**
157k129(5) Most Cited Cases
Determination that alleged Canadian sales of infringing
watch were not in violation of federal trademark laws, and
thus that Canadian sales did not constitute a similar act un-
der evidentiary rule governing admission of other acts, was
not clearly erroneous; for conduct to be admissible other
acts evidence, it would have to have been adjudicated a viol-
ation of Canadian law, requiring the trial of both an Americ-
an and Canadian case. Fed.Rules Evid.Rule 404(b), 28
U.S.C.A.

**[4] Trademarks ⬯1589**
382Tk1589 Most Cited Cases
   (Formerly 382k565)
Global amended pleading of alleged infringers, in trademark
action, was proper as to one alleged infringer, although it
was improper as to two other alleged infringers; the first al-
leged infringer's initial answer and counterclaims were nev-
er answered by counterclaim defendants, but other in-
fringers had not sought permission to amend. Fed.Rules
Civ.Proc.Rule 15(a), 28 U.S.C.A.

**[5] Federal Civil Procedure ⬯1488.1**
170Ak1488.1 Most Cited Cases
   (Formerly 382k547)
Magistrate did not clearly err in upholding plaintiff's refusal
to respond to third set of interrogatories in trademark in-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1870293 (S.D.N.Y.)
**(Cite as: 2002 WL 1870293 (S.D.N.Y.))**

Page 2

fringement action; although there were six defendants, defendants were acting in unison, and plaintiff had already responded to 45 interrogatories, more than the 25 permitted under governing procedural rule. Fed.Rules Civ.Proc.Rule 33(a), 28 U.S.C.A.

**[6] Federal Civil Procedure ☞1403**
170Ak1403 Most Cited Cases
    (Formerly 382k547)
Magistrate's denial of alleged infringer's motion to compel trademark holder to answer deposition question as to trademark holder's costs incurred in producing its watches was not clear error, in trademark infringement action; whether or not trademark holder's aim was to root out rogue suppliers who sold outside trademark holder's chain of distribution had little connection to trademark holder's cost of producing watches.

**[7] Federal Civil Procedure ☞1636.1**
170Ak1636.1 Most Cited Cases
    (Formerly 382k547)
Magistrate's acceptance of trade mark holder's explanation that it had conducted diligent search for expert's notes, and, to extent any expert's notes existed, they had been destroyed long ago, was not abuse of discretion; representation was made by trademark holder's counsel on the record.

**[8] Federal Civil Procedure ☞1623**
170Ak1623 Most Cited Cases
    (Formerly 382k547)
Magistrate acted within discretion in directing trademark holder's counsel to describe content of documents, which were allegedly protected from discovery by privilege, on the record, and ruling on the privilege assertions on that basis; magistrate was not required to evaluate the documents in camera.

**[9] Federal Civil Procedure ☞1537.1**
170Ak1537.1 Most Cited Cases
    (Formerly 382k547)
Magistrate's failure to sanction trademark holder for having human resources vice president verify interrogatories was not clear error; although, when deposed, vice president admitted she had no knowledge of substantive truth of response and had not independently verified the facts in inter-

rogatories; alleged infringer was not prejudiced by vice president's lack of personal knowledge, and vice president had relied upon discussion with counsel as her basis for making verifications. Fed.Rules Civ.Proc.Rule 33(b), 28 U.S.C.A.

**[10] Federal Civil Procedure ☞1325**
170Ak1325 Most Cited Cases
    (Formerly 382k547)
Magistrate did not clearly err in determining that corporation's designated deponent was adequate; deponent was not required to have personal knowledge on issues related to trademark infringement suit, so long as he could convey information known to the corporation, and corporation represented that the knowledge of deponent was sum of all knowledge known to corporation and its affiliates. Fed.Rules Civ.Proc.Rule 30(b)(6), 28 U.S.C.A.

OPINION AND ORDER

CASEY, J.

\*1 Plaintiff Gucci America, Inc. ("Gucci") filed this action against defendants Exclusive Imports International ("Exclusive"), Imperial Trading, Ltd. ("Imperial"), Innopex, Ltd. ("Innopex"), Cyril Israelson ("Israelson"), Joshua Frankel ("Frankel") and Aaron Wagschal ("Wagschal"). [FN1] Gucci claims, *inter alia,* that defendants infringed its trademark by engaging in the distribution of counterfeit Gucci watches. Defendants hotly contest Gucci's claims, and discovery has been particularly contentious. Now before the Court are the parties' objections to several rulings of Magistrate Judge Maas, who is currently supervising pre-trial proceedings. [FN2]

> FN1. Defendant Teitelbaum was dismissed from the case by stipulation dated April 27, 2001.

> FN2. This is not the first time that the parties have brought their discovery disputes to this Court. *See Gucci America, Inc. v. Exclusive Imports Int'l,* No. 99 Civ. 11490(RCC), 2001 WL 21253 (S.D.N.Y. Jan.9, 2001). Familiarity with the Court's earlier opinion is presumed.

DISCUSSION

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                          Page 3
Not Reported in F.Supp.2d, 2002 WL 1870293 (S.D.N.Y.)
**(Cite as: 2002 WL 1870293 (S.D.N.Y.))**

The district court may reverse a Magistrate's findings as to non-dispositive matters only if they are clearly erroneous or contrary to law. *See* Fed.R.Civ.P. 72(a); 28 U.S.C. § 636(b)(1)(A). Magistrates have broad discretion in resolving discovery disputes and those decisions are reviewed under an "abuse of discretion" standard. *See Moss v. Enlarged City School Dist. of City of Amsterdam,* 166 F.Supp.2d 668, 670 (N.D.N.Y.2001) ( "[M]agistrate judges are given broad discretion with respect to pre-trial discovery issues and reversal is warranted only when that discretion is abused.") (citations omitted); *see also Thomas E. Hoar, Inc. v. Sara Lee Corp.,* 900 F.2d 522, 525 (2d Cir.1990). With respect to dispositive matters, the district court undertakes a de novo review. *See* Fed.R.Civ.P. 72(b).

The Court will address in turn the orders entered by Judge Maas.

I. *The January 31, 2001 Orders*

On January 31, 2001, Judge Maas held a conference during which he made a number of oral rulings. Gucci objects to two of those orders. [FN3] First, Judge Maas precluded Gucci from arguing at trial that certain evidence, consisting of several Gucci watches, was tampered with while in the possession of defendants' counsel. Judge Maas concluded that Gucci had waived this argument by moving for defense counsel's disqualification and a hearing and then withdrawing the motion. (Transcript dated January 31, 2001 ("1/31/01 Tr."), at 3.) Second, Judge Maas denied Gucci's request to take discovery regarding the sale of counterfeit Gucci watches by a Canadian retailer, Costco Canada, Inc. ("Costco Canada"). Costco Canada was supplied with the allegedly counterfeit goods by defendant Innopex and its principal, defendant Joshua Frankel. Judge Maas held that, because there was insufficient proof of a nexus with the United States, discovery as to the Canadian transactions would be "tangential and beyond the appropriate scope of discovery in this case." (*Id.* at 12.) Judge Maas also concluded that the Canadian activity did not constitute a "similar act" for purposes of Federal Rule of Evidence 404(b). (*Id.* at 11.)

> FN3. Gucci also objected to a third ruling requiring Gucci to produce its expert for further deposition.

That issue is now moot because Gucci's expert did in fact provide the additional testimony. (Letter to the Court from Milton Springut dated March 4, 2002, at 2.)

A. *The Tampering Issue*

[1] Gucci argues that preclusion of evidence as to the tampering deprives Gucci of its right to a jury trial because it calls its expert's credibility into question. At deposition, Gucci's expert, Jean Michel Guerry, had identified certain genuine watches as counterfeit, and vice versa. Gucci alleged that the reason for the identification difficulty was that the watches were tampered with while in the possession of defense counsel. Defendants denied that any tampering had occurred and offered to provide testimony to that effect.

*2 Judge Maas ordered a hearing on the issue and directed the parties to submit written statements as to their respective positions. However, by letter dated January 16, 2001, plaintiff withdrew its disqualification motion and request for a hearing, but purported to reserve the issue for trial. [FN4] Judge Maas rejected plaintiff's reservation:

> FN4. Gucci determined that it was no longer in its interest to pursue the disqualification motion at a hearing. Gucci proffered the following reasons for its reversal: (1) defense counsel already had viewed the most sensitive discovery in the case; (2) a hearing would involve considerable expense and inconvenience; (3) the issue of credibility was one for the jury; and (4) disqualification would delay the case. (Plaintiff's Objections dated February 14, 2001, at 4.)

In my view, Mr. Springut, by withdrawing the request to have this heard pretrial, you are waiving the opportunity to challenge or to present the case that the watches that are in the possession of counsel were tampered with while in the possession of counsel, and will not be able to raise that at trial because you'd be sandbagging the defendant who then would have no way of responding without voucher, so at a minimum in my view that is moved out of the case for trial.
(1/31/01 Tr. at 3.)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                Page 4
Not Reported in F.Supp.2d, 2002 WL 1870293 (S.D.N.Y.)
**(Cite as: 2002 WL 1870293 (S.D.N.Y.))**

Judge Maas' ruling was not clearly erroneous. First, Gucci cites no authority for its proposition that its right to a jury trial has been undermined by Judge Maas' ruling. Rather, it is well settled that courts have the discretion to rule on evidentiary matters pre-trial, particularly those that may involve an abuse of the judicial process. *See Gonzalez v. Trinity Marine Grp., 117 F.3d 894, 898 (5th Cir.1997)* (affirming use of pre-trial hearing in order to address allegations of evidence tampering and noting that such a decision is "wholly within the discretion of the district court and does not deprive Plaintiff of his right to a jury trial on his claims"). Indeed, if the Court were to allow plaintiff to accuse opposing counsel during trial of tampering with evidence, without first finding some basis for the accusation, a new trial might be warranted. *See, e.g., Draper v. Airco, Inc., 580 F.2d 91, 94-96 (3d Cir.1978)* (reversing jury verdict where plaintiff implied that defense counsel had engaged in misconduct by withholding evidence).

Gucci simply has not provided any grounds for overturning Judge Maas' ruling. Therefore, pursuant to that ruling, Gucci may not argue or present a case during trial that the watches were tampered with while in the possession of defense counsel.

*B. The Canadian Discovery*

[2] Gucci also appeals Judge Maas' decision to deny discovery regarding the alleged distribution of counterfeit watches to Costco Canada. First, Gucci takes issue with Judge Maas' determination that the Canadian transactions lack a nexus with the United States and therefore are not relevant. Specifically, Gucci claims that an adequate nexus exists because some of the watches were processed through Costco's office in Washington State.

Alternatively, Gucci argues that discovery as to the Canadian sales should be permitted because, contrary to Judge Maas' conclusion, such evidence is admissible on the issue of willfulness under *Fed.R.Evid. 404(b)*. Specifically, Gucci argues that willfulness can be shown because Innopex and Frankel were supplying Costco Canada at the same time they were on notice that the watches they had sold in New York were counterfeit.

*3 Although this issue is a close one, this Court cannot say that Judge Maas' resolution of it was clearly erroneous. First, although Gucci contends that certain Canadian sales were "processed" through Costco's corporate office in Washington State, Gucci submitted no evidentiary support for that allegation and, in contrast, defendants submitted documents to contradict it. Judge Maas specifically found that plaintiff's proof was insufficient to justify discovery. (1/31/01 Tr. at 12.) Nor is it clear in any event that such "processing" would support a Lanham Act claim. *See Vanity Fair Mills, Inc. v. T. Eaton Co., 234 F.2d 633 (2d Cir.1956)* (dismissing Lanham Act claims against a Canadian defendant for sales that occurred in Canada). Therefore, the Court cannot conclude that Judge Maas abused his discretion in denying discovery on that basis.

[3] Second, Judge Maas did not clearly err in concluding that, because the Canadian sales were "not a violation of the U.S. trademark laws," they did not constitute a similar act under *Fed. R. Evid. 404(b)*. (1/31/01 Tr. at 11-12.) Although evidence regarding contemporaneous infringing conduct in the United States probably would be admissible on the issue of willfulness, *see, e.g., International Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc., 80 F.3d 749, 754 (2d Cir.1996)*, at issue here is conduct occurring outside this country which is subject only to Canadian law.

On this appeal, Gucci has submitted excerpts of Canadian statutes and asks this Court to make a determination that defendants' conduct was unlawful thereunder. As a preliminary matter, it should be noted that those legal authorities were not presented to the Magistrate Judge. Moreover, Gucci is in essence asking this Court to try two cases--in other words, to first determine whether defendants' conduct in Canada violated Canadian law and then to use that finding in assessing liability and damages in the instant case. The Court has found no case law, and Gucci has cited to none, requiring it to undertake such a process. [FN5] Therefore, Gucci has failed to show that the Magistrate's decision to disallow the requested discovery was clearly erroneous. Consequently, Judge Maas' determination will be upheld.

> FN5. This is not a situation where defendants have been found guilty by Canadian authorities or had a judgment entered against them by a Canadian

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1870293 (S.D.N.Y.)
(Cite as: 2002 WL 1870293 (S.D.N.Y.))

court. Indeed, according to the record before the Court, an investigation by the Royal Canadian Mounted Police concluded that "there was no evidence to suggest that [defendants] had the requisite knowledge or intent to traffic in counterfeit watches." (Defendants' Response to Plaintiff's Objections dated March 5, 2001, Ex. 4.)

II. *The February 21, 2001, and March 6, 2001 Orders*

Gucci next objects to an oral ruling made by Judge Maas on February 21, 2001, which was memorialized in writing on March 6, 2001. At issue is whether Judge Maas correctly ruled that Gucci Group, N.V. ("Gucci Group"), plaintiff's indirect parent corporation, remains in this action as a counterclaim defendant. [FN6]

> FN6. Plaintiff Gucci is a wholly owned subsidiary of Gucci North America Holdings, Inc., a Delaware corporation, which is a wholly owned subsidiary of Gucci Group, a Netherlands corporation.

This Court, in its earlier Opinion and Order, struck the Amended Answer and Counterclaims filed on December 11, 2000, by defendants Imperial and Exclusive, which contained, among other things, certain antitrust allegations against Gucci Group, 2001 WL 21253, at *5. This Court so ruled because defendants had failed to obtain the prior permission of the Court to amend their pleadings as required by Rule 15 of the Federal Rules of Civil Procedure. (*Id.*) [FN7] This Court also determined that leave to amend would be denied because, *inter alia*, the antitrust counterclaims would inject delay into the case and were factually remote from the counterfeiting issues. (*Id.* at *6.) Given its decision to strike the pleadings of those defendants, it was this Court's assumption that no counterclaims against Gucci Group remained in the case and that therefore Gucci Group was no longer a party to the action. The Court based this assumption on the fact that Innopex, the only other defendant asserting counterclaims against Gucci Group, had apparently dropped those claims by not including them in its amended answer. (*Id.* at *5 n.5.) [FN8]

> FN7. Imperial also had amended its answer and

counterclaims once before without permission, on April 3, 2000.

> FN8. Innopex asserted counterclaims in its initial answer on April 3, 2000, but dropped them in its subsequent amended answer filed on December 11, 2000.

*4 Relying on this Court's decision, Judge Maas ruled in January 2001 that Mr. Tom Ford, a high-level executive of Gucci Group, need not be produced for deposition but instead would have to be subpoenaed under Rule 45. (1/31/01 Tr. at 30.) However, on February 21, 2001, Judge Maas orally reversed that ruling, holding that Gucci Group remained a party to this action based on Innopex's counterclaims. Judge Maas therefore ruled that Mr. Ford could be deposed. Gucci moved for reconsideration, which was denied by Judge Maas in a written Order dated March 6, 2001 (the "March 6, 2001 Order").

In sum, Judge Maas held that, by virtue of Gucci having prevailed on its application to strike the December 11, 2000 Amended Answer and Counterclaims, that pleading was rendered a nullity and therefore the counterclaims raised by Innopex in its initial answer, other than the antitrust counterclaims, were reinstated. (*See* March 6, 2001 Order at 4.)

[4] Judge Maas' decision is based on an incorrect reading of this Court's Opinion and Order. The December 11, 2000 Amended Answer and Counterclaims constituted a global pleading filed on behalf of defendants Imperial, Innopex, Frankel, Wagschal, Exclusive and Israelson. This Court did not exclude that pleading in its entirety; rather, its decision struck the Amended Answer and Counterclaims only as it pertained to defendants Imperial and Exclusive, because those entities did not have permission, either by the Federal Rules or by order of this Court, to file amended pleadings at such a late date. This accords with the language employed by this Court, holding that "the amended answers and counterclaims *filed by defendants Imperial Trading and Exclusive Imports* are hereby stricken...." 2001 WL 21253, at *7 (emphasis added).

In contrast, the amended pleading was proper as to defendant Innopex. Because Innopex's initial answer and counter-

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1870293 (S.D.N.Y.)
(Cite as: 2002 WL 1870293 (S.D.N.Y.))

Page 6

claims, filed on April 3, 2000, were never answered by counterclaim defendants, Innopex was entitled under the Federal Rules to amend its pleading once before a response was served. *See* Fed.R.Civ.P. 15(a) ("A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served...."). Innopex did so by joining the December 11, 2000 pleading but asserting no counterclaims on its behalf. Therefore, Innopex's withdrawal of those counterclaims was proper.

Innopex now argues that it withdrew its counterclaims in reliance on Exclusive and Imperial pursuing those same claims. This statement appears to be nothing more than an after-the-fact rationalization. As Gucci correctly notes, there is no basis in the Federal Rules for a withdrawal of claims conditionally, or in reliance on the pleadings of other parties, nor did Innopex ever indicate at that time that its amendment was so conditioned. Moreover, if Innopex believed that it suffered some actionable injury by virtue of Gucci's conduct, it has an obligation to press the claim on its own behalf, rather than relying on the claims of others.

*5 Therefore, Innopex's counterclaims are no longer in the case, and the Court perceives no basis for reinstating them. Consequently, the only counterclaims remaining in this action are the claims for tortious interference and declaratory judgment asserted by defendant Imperial against Gucci in its pleading of January 26, 2000.

III. *The July 6, 2001 Orders*

Defendants object to certain discovery rulings of Judge Maas issued on the record on July 6, 2001. Specifically, defendants claim that Judge Maas erred by disallowing certain discovery pertaining primarily to Gucci's watch sources, parts, costs and expert notes thereon. Defendants argue that these items are highly relevant to their defense, which rests on contentions that defendants bought and sold genuine Gucci watches made by Gucci assemblers. According to defendants, this parallel sale of genuine products, while admittedly unauthorized by Gucci, does not violate the Lanham Act under the case of *Polymer Tech. Corp. v. Mimram*, 37 F.3d 74 (2d Cir.1994). However, for the reasons set forth below, none of Judge Maas' rulings are clearly erroneous and therefore his orders must be upheld.

A. *Defendants' Third Set of Interrogatories*

[5] On or about March 2, 2001, Gucci made statements in discovery acknowledging that certain unidentified Gucci watch parts were "uniquely styled" for Gucci, while admitting that other parts were not. In addition, Gucci stated that it was aware of "persons or entities other than Gucci" to whom suppliers have "sold components or parts identical or substantially the same as those sold to Gucci." (Defendants' Objections dated July 20, 2001, at 5-6.)

Defendants, in an attempt to identify these persons and parts, served a Third Set of Interrogatories and a Third Request for Documents on April 4, 2001. Plaintiff refused to respond on the grounds that it had already answered 45 interrogatories, more than the 25 permitted pursuant to Fed.R.Civ.P. 33(a), and that defendants had ample opportunity to obtain that information at deposition. Judge Maas upheld plaintiff's position and did not require plaintiff to answer the interrogatories or to produce the documents.

That decision is not clearly erroneous. Defendants now contend that they are entitled to serve 150 interrogatories because there are six defendants in this action. However, where, as here, the parties are acting in unison and are represented by the same counsel, they may be treated as one party for purposes of the interrogatory limits. *See* Wright & Miller, 8A Fed. Prac. & Proc. Civ.2d § 2168.1 (2002). Nor is there anything in the Federal Rules which would entitle defendants to more interrogatories simply because the Magistrate had extended the 25-interrogatory limit once before. In denying the requested discovery, Magistrate Judge Maas properly exercised his discretion to put an end to an already extensive discovery period.

B. *Gucci's Watch Costs*

[6] During deposition, plaintiff's expert Mr. Guerry refused to answer questions as to Gucci's costs incurred in producing its watches. Defendants moved to compel that information, arguing that evidence as to Gucci's costs is relevant to show that an alleged counterfeiter, who purchased the same parts at the same cost, probably received those parts from a genuine Gucci source. Judge Maas did not find the requested information to be sufficiently relevant:

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1870293 (S.D.N.Y.)
(Cite as: 2002 WL 1870293 (S.D.N.Y.))

Page 7

*6 It seems to me that had your questions during the discovery period been, and where do you buy your cases, where do you buy your backs, where do you buy your own component parts ... that is relevant to the question of whether or not the watches are counterfeit.

It seems to me costs, if it is conceivably relevant, is relevant only to the motivation or intent of various players in this case, your argument being why would we spend almost as much money to buy a counterfeit watch or perhaps as much money to buy a counterfeit watch as we would spend to buy in the grey market a genuine Gucci watch ...

But as to that, Gucci's costs of production as opposed to the price at which a genuine Gucci watch may be available on the chain of distribution strikes me as not really relevant. It may well be that Gucci pays less because Gucci buys in volume.

So as to this request, although I'm certainly not pleased that Mr. Guerry apparently without prompting chose not to answer, I am not going to compel answers at this point (Transcript dated July 6, 2001 ("7/6/01 Tr."), at 3.) at 19-20.)

Again, Judge Maas' ruling was not in clear error. Gucci's own costs have no bearing on whether an alleged counterfeiter would find it economical to buy genuine or counterfeit watch components. [FN9] However, defendants now argue that such costs are relevant to Gucci's motive in bringing this suit, which they allege is to identify rogue Gucci suppliers who sell outside the Gucci chain of distribution in order to cut off discount sales. Whether or not Gucci's aim is to root out such suppliers has little, if any, connection to the cost to Gucci of producing watches. Again, there is simply no basis for overturning Judge Maas' use of his discretion in determining what discovery is appropriate and relevant.

> FN9. Nor did Gucci "open the door" on this issue by inquiring of defendants' expert Mr. Lewand as to whether it was economical for a counterfeiter to make high quality watches. Gucci was entitled to cross-examine Mr. Lewand about statements he had made on that subject in his expert report.

C. *Gucci's Expert Notes*

[7] Defendants next take issue with Gucci's claim that it cannot produce the notes taken by its experts, because it has no such notes. According to defendants, this answer is "too pat" and "untrustworthy." (Defendants' Objections dated July 20, 2001, at 11.) Specifically, defendants claim that various evidence and inferences support the conclusion that Jean Martin, Mr. Guerry's assistant, took notes when he aided Mr. Guerry in examining certain watches for Mr. Guerry's expert report. (*Id.* at 12.)

However, Gucci did not represent to Judge Maas that Mr. Martin did not take such notes. Rather, Gucci represented that it undertook a diligent search and that, to the extent the notes ever existed, they were destroyed long ago. (*See* 7/6/01 Tr. at 26-27.) Judge Maas found this explanation acceptable:

> I am satisfied. I am not going to require anything further with respect to the notes of Mr. Guerry or Mr. Martin, despite the fact that those notes may have existed and have now been destroyed or lost. If Mr. Guerry testifies at the trial I would think that would be certainly grist for the mill....

*7 (*Id.* at 27-28.)

Defendants argue that Judge Maas should have ordered further inquiries, and allowed defendants to question Mr. Martin as to whether he retained such notes in his personal files. However, Judge Maas obviously was satisfied with Gucci's representations that no notes existed and there was no abuse of discretion in accepting counsel's statements on the record. [FN10]

> FN10. Defendants suggest that Mr. Martin should be precluded from trial because he was not produced for deposition. This issue is premature. The Court will address it prior to trial after receiving the parties' witness lists.

[8] Defendants also argue that Judge Maas erred by not requiring plaintiff to produce certain documents that Mr. Guerry had reviewed in connection with his supplemental report. Defendants contend that Judge Maas, at the very least, should have evaluated those documents *in camera* before accepting plaintiff's privilege assertions. However, defendants cite no authority for the proposition that Judge

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                    Page 8
Not Reported in F.Supp.2d, 2002 WL 1870293 (S.D.N.Y.)
**(Cite as: 2002 WL 1870293 (S.D.N.Y.))**

Maas was obligated to conduct a hands-on review. Judge Maas acted within his discretion in directing plaintiff's counsel to described the content of those documents on the record, and so ruling on that basis. Again, defendants have failed to make any showing of clear error here.

D. *Interrogatory Verifications*

[9] Gucci at various times served five verifications to interrogatory responses signed by Karen Lombardo, the Gucci Vice President of Human Resources. Defendants took Ms. Lombardo's deposition, allegedly because they suspected she was "merely a figurehead 'primed' by counsel to sign for plaintiff." (Defendants' Objections dated July 20, 2001, at 14.) At the deposition, Ms. Lombardo testified that she had no knowledge of the substantive truth of the interrogatory responses and had taken no independent verification of the facts asserted, but had instead relied upon information furnished by counsel. Defendants now claim that Ms. Lombardo's lack of personal knowledge runs afoul of Fed.R.Civ.P. 33(b).

Judge Maas declined to impose sanctions, stating first that the purpose of the verification requirement is primarily so that the answering party is bound by its responses. (*See* 7/6/01 Tr. at 9.) Judge Maas went on to observe that:

[A]s a practical matter here a lot of the information that was requested had to come from different sources, some which [sic] were not even Gucci America because of the internecine relationships among various Gucci corporations such that counsel may well have been the only person who could coordinate the information.

I know that a lot of this is consistent with [defendants'] theory that [plaintiff's counsel], in effect, is the director of copyright enforcement or trademark enforcement for Gucci. But even if that were the case, that certainly is an option that Gucci has available to it, so long as a corporate officer who felt that he or she could reasonably rely on [counsel's] representations did it and the responses are signed in appropriate form....

(*Id.* at 9-10.)

There was no clear error in Judge Maas' decision to reject defendants' request for sanctions. First and foremost, defendants make no allegation that the substance of the re-

sponses was untrue, thus they have not been prejudiced by Ms. Lombardo's lack of personal knowledge. Moreover, defendants could, and did, ask for the identities of those persons who provided the information contained in the interrogatory responses.

*8 Secondly, defendants cite no case law which would preclude a corporate representative from relying on counsel's efforts in gathering information and drafting appropriate interrogatory responses. Indeed, as one Court of Appeals has noted:

Federal Rule of Civil Procedure 33 expressly permits a representative of a corporate party to verify the corporation's answers without personal knowledge of every response by furnishing such information as is available to the party. Of course, the representative must have a basis for signing the responses and for thereby stating on behalf of the corporation that the responses are accurate. The representative may accomplish this through whatever internal process the corporation has chosen, including discussions with counsel.

*Shepherd v. ABC, Inc.*, 62 F.3d 1469, 1482 (D.C.Cir.1995) (internal citations omitted). Therefore, it cannot be said that Judge Maas' ruling was clearly erroneous.

E. *Gucci's Rule 30(b)(6) Witness*

[10] Similar to the above situation, defendants complain that Gucci designated Robert Artelt as its Rule 30(b)(6) witness, despite Mr. Artelt's lack of familiarity with the noticed subjects, in order to avoid producing a witness with actual knowledge, and because Mr. Artelt was already a named deponent. [FN11] Defendants argue that Mr. Artelt had no personal knowledge of the Rule 30(b)(6) subject matters, but instead based his testimony on information provided by plaintiff's counsel prior to deposition. Defendants therefore contend that Mr. Artelt's testimony was inadequate, especially with respect to (1) the chain of custody of certain alleged counterfeit watches and (2) the sources known to Gucci of those watches and parts.

> FN11. Mr. Artelt is the Managing Director of Gucci Timepieces America, an affiliate of plaintiff.

Judge Maas rejected defendants' argument, holding that the

Westlaw.

Not Reported in F Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1870293 (S.D.N.Y.)
**(Cite as: 2002 WL 1870293 (S.D.N.Y.))**

Rule 30(b)(6) witness need not be the most knowledgeable and finding that "on balance [Mr. Artelt] was marginally adequate." Again, there is no clear error here. Because Rule 30(b)(6) witnesses testify on the corporation's behalf, courts routinely hold that such deponents need not have personal knowledge on a given subject, so long as they are able to convey the information known to the corporation. *See Dravo Corp. v. Liberty Mut. Ins. Co.,* 164 F.R.D. 70, 75 (D.Neb.1995) ("If the persons designated by the corporation do not possess personal knowledge of the matters set out in the deposition notice, the corporation is obligated to prepare the designees so that they may give knowledgeable and binding answers for the corporation.") (citing *Marker v. Union Fidelity Life Ins. Co.,* 125 F.R.D. 121, 126 (M.D.N.C.1989)); *see also Cruz v. Coach Stores, Inc.,* No. 96 Civ. 8099, 1998 WL 812045, at *4 n. 3 (S.D.N.Y. Nov.18, 1998) ("Rule 30(b)(6) does not require a party to produce someone who is 'most knowledgeable' but only someone whose testimony is binding on the party."), *aff'd in part, vacated in part on other grounds,* 202 F.3d 560, 573 (2d Cir.2000).

**\*9** Moreover, plaintiff has represented that the knowledge imparted to Mr. Artelt is the sum of all knowledge known to both Gucci and its affiliates. Thus there is simply no basis for overturning Judge Maas' ruling in this respect.

CONCLUSION

For the foregoing reasons, the Magistrate Judge's Orders of January 31, 2001, and July 6, 2001, are upheld in all respects. The Magistrate Judge's Orders of February 21, 2001, and March 6, 2001, are vacated and remanded, in light of this Opinion and Order, for consideration as to what, if any, discovery should be available from Gucci Group and/or other non-parties. Furthermore, the parties are directed to appear before this Court on September 20, 2002, at 9:30 a.m. for the scheduling of their requested summary judgment motions.

Not Reported in F.Supp.2d, 2002 WL 1870293 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 2001 WL 34611720 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum in Opposition to Defend-

ants' Rule 72 Objections to Discovery Orders of Magistrate Judge (Aug. 03, 2001)

• 1999 WL 33885619 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Opposition to Order to Show Cause and in Support of Cross-Motion for a Protective Order and Expedited Discovery of Plaintiff (Dec. 29, 1999)

• 1:99cv11490 (Docket) (Nov. 22, 1999)

END OF DOCUMENT

**Westlaw Download Summary Report for TUMEY,SARA 4699396**

| | |
|---|---|
| Date/Time of Request: | Wednesday, May 31, 2006 18:26:00 Central |
| Client Identifier: | 149749 |
| Database: | DCT |
| Citation Text: | 1989 WL 70687 |
| Lines: | 93 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson, West and their affiliates.

Westlaw.

1989 WL 70687                                                    Page 1
Not Reported in F.Supp., 1989 WL 70687 (E.D.Pa.)
(Cite as: 1989 WL 70687 (E.D.Pa.))

C
Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
Neva KREMSNER and James Kremsner, h/w, 322 Mul-
berry Street Catasaque,
Pennsylvania 18032
v.
FORTUNA-SAS a/k/a Fortuna Machine Company 32
Stevens Street Haver Hill,
Massachusetts 01830
v.
HAGERSTOWN LEATHER GOODS COMPANY 1877
Fountain Head Road Hagerstown, Maryland
21740.
**CIV. A. No. 87-1202.**

June 23, 1989.
Robert G. Bauer, Abraham Pressman & Bauer, P.C., Phil-
adelphia, Pa., for plaintiffs.

Thomas L. Delevie, Philadelphia, Pa., for Fortuna-SAS a/
k/a Fortuna Machine Companu.

William J. McKinley, Jr., Swartz, Campbell & Detweiler,
Philadelphia, Pa., for Hagerstown Leather Goods Company.

*MEMORANDUM--ORDER*
RICHARD A. POWERS, III, United States Magistrate.

*1 Defendant, Fortuna-SAS a/k/a Fortuna Machine Com-
pany, has filed a Motion To Preclude Plaintiffs' Expert
Testimony Pursuant To F.R.C.P. Rule 3 7(b)(2)(B). Defend-
ant asserts that plaintiffs violated this Court's October 18,
1988 order to exchange expert names and curriculum vitae
by December 15, 1988 and to provide expert reports by
January 13, 1989. The information regarding plaintiffs' ex-
perts was not received in full by defense counsel until May
22, 1989. Defendant requests the Court to sanction the al-
leged dilatory conduct of the plaintiffs and relies upon the
Court's decision in *Higginbotham v. Volkswagenwerk Ak-
tiengesellschaft, 551 F.Supp. 977 (M.D.Pa.1982), aff'd, 720
F.2d 662 (M.D.Pa.1983),* for support. However, *Higgin-
botham* is factually dissimilar from the case at bar and there-
fore, not dispositive. Unlike the sanctioned party in *Higgin-*

*botham,* there is no evidence that the plaintiffs attempted to
mislead the defendant as to their theory of liability or that
the discovery process was "flouted" by plaintiffs. *Id.* at 982.
Rather, the plaintiffs' noncompliance here with the Court's
previous discovery orders was due, in part, to the defend-
ant's late joinder of Hagerstown Leather Goods Company.
Consequently, the pleadings in this case were not closed un-
til April 13, 1989 with the filing of plaintiffs' reply to
Hagerstown Leather Goods Company's counterclaim. Dis-
covery was not completed until April of 1989, whereupon,
plaintiffs forwarded all relevant materials to its liability ex-
pert, Dr. J. Kenneth Blundell, and informed all counsel that
formal expert opinions of plaintiffs' expert would be served
in early May of 1989. Defendant made no objection at that
time and did not file the present motion until June 1, 1989.

Although the Court does not condone the plaintiffs' un-
timely compliance with its discovery mandates, defendant
has failed to demonstrate that it has been prejudiced as a res-
ult. In fact, information on plaintiffs' expert testimony was
received on May 22, 1989, two (2) weeks prior to the res-
cheduled pretrial conference with this Court, while plaintiffs
have not received any information regarding defendant's ex-
pert's report to date. [FN1]

Preclusion of testimony and dismissal are extreme sanctions
to be imposed only in rare situations. *Cine Forty-Second St.
Theatre v. Allied Artists, 602 F.2d 1062, 1064 (2d
Cir.1979).* Preclusion of testimony can be tantamount to dis-
missal. *See United States v. Sumitomo Marine & Fire Ins.
Co., 617 F.2d 1365 (9th Cir.1980).* The following analysis is
used to determine whether the most extreme sanctions, in-
cluding judgment against the disobedient party, are appro-
priate:

(1) the extent of the party's personal responsibilities; (2) the
prejudice to the adversary caused by the failure to meet
scheduling orders and respond to discovery; (3) a history of
dilatoriness; (4) whether the conduct of the party or the at-
torney was willful or in bad faith; (5) the effectiveness of
sanctions other than dismissal, which entails an analysis of
alternative sanctions; and (6) the meritoriousness of the
claim or defense.

*2 *Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863,*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

1989 WL 70687                                                                Page 2
Not Reported in F.Supp., 1989 WL 70687 (E.D.Pa.)
**(Cite as: 1989 WL 70687 (E.D.Pa.))**

868-870 (3d Cir.1984).

As stated above, some delay was caused by the plaintiffs,
but not enough to constitute the "history of dilatoriness" de-
scribed in *Poulis*. Furthermore, as no trial date has been set,
defendant has failed to demonstrate that it is prejudiced by
the timing of its receipt of plaintiffs' expert answers and re-
ports. Moreover, plaintiffs have not attempted to interject
any new theories of liability into the case nor have they
demonstrated any willful or bad faith conduct. Con-
sequently, sanctions are not warranted.

An appropriate Order follows.

### ORDER
Now, this 22nd day of June, 1989, upon consideration of
Defendant, Fortuna-SAS a/k/a Fortuna Machine Company's
Motion To Preclude Plaintiffs' Expert Testimony Pursuant
To F.R.C.P. Rule 37(b)(2)(B) (Document # 26) and
plaintiffs' response (Document # 28) thereto, IT IS
ORDERED that defendant's motion is DENIED.

> FN1. However, defendant alleges that the identity
> of its expert was provided to the plaintiffs on Janu-
> ary 25, 1989.

Not Reported in F.Supp., 1989 WL 70687 (E.D.Pa.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy

Slip Copy, 2006 WL 1286189 (D.N.J.)

(Cite as: 2006 WL 1286189 (D.N.J.))

Page 1

H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

NOT FOR PUBLICATION

United States District Court,

D. New Jersey.

Zev and Linda WACHTEL, et al., Plaintiffs

v.

GUARDIAN LIFE INS. CO., et al., Defendants.

Renee McCoy, individually and on behalf of all others similarly situated,

Plaintiffs

v.

Health Net, Inc., Health Net of the Northeast, Inc., and

Health Net of New

Jersey, Inc., Defendants.

**Civ. Docket Nos. 01-4183, 03-1801.**

May 8, 2006.

Barry M. Epstein, Barbara G. Quackenbos, Sills, Cummis, Epstein & Gross PC, Newark, NJ, for Plaintiffs.

B. John Pendleton, Jr., Heather V. Taylor, McCarter & English, LLP, Herve Gouraige, James P. Flynn, Epstein Becker & Green, PC, John J. Gibbons, Kevin McNulty, Gibbons, Del Deo, Dolan, Griffinger & Vecchione, PC, Newark, NJ, Robert Alan White, Morgan, Lewis & Bockius, LLP, Princeton, NJ, for Defendants.

*OPINION & ORDER*

FAITH S. HOCHBERG, U.S.D.J.

**I. Introduction:**

**\*1** This matter comes before the Court upon Plaintiffs' Motion to Compel production of documents claimed by Defendants to be protected by the attorney-client privilege. The Motion contends that the documents sought fall within the crime-fraud exception to the attorney-client privilege and work product doctrine.

On November 22, 2005, this Court issued an Order setting forth a procedure for review of the contested documents. The Court held oral argument on February 28, 2006.

This opinion and order will also address the production of e-mails ordered by this Court at the hearing held on February 28, 2006; Defendants' Appeal of Judge Shwartz's March 9, 2006 Order; Defendants' Motion on Short Notice for a Stay of Judge Shwartz's March 9, 2006 Order; Plaintiffs' appeal of Judge Shwartz's Order, entered on July 28, 2005, denying Plaintiffs' request for leave to file a supplemental expert report of Bernard Siskin, Ph.D.; Defendants' appeal of Judge Shwartz's August 31, 2005 Order excluding certain defense witnesses for failure to disclose sufficiently the identity of those individuals pursuant to Fed.R.Civ.P. 26(a)(1)(A); Defendants' appeal of Judge Shwartz's October 17, 2005 Order granting sanctions against defendants for spoliation; and Defendants' appeal of Judge Shwartz's December 28, 2005 Order.

**II. Crime-Fraud Exception**

A. *Legal Standard*

The attorney-client privilege protects communications between an attorney and his/her client made in confidence for the purpose of obtaining legal advice. Because the privilege has its costs, it is not absolute. *See United States v. Zolin, 491 U.S. 554, 562 (1989)* ("Since the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose.") (citations omitted); *see also United States v. Doe, 429 F.3d 450, 453 (3d Cir.2005)* ("Because this ancient and valuable privilege is at the expense of the full discovery of the truth, it should be strictly construed.").

The crime-fraud exception allows for disclosure of otherwise privileged communications when they are made with the intent to further a continuing or future crime or a fraud. *See Doe, 429 F .3d at 454 [FN1]* The purpose of the crime-fraud exception is "to assure that the 'seal of secrecy' between lawyer and client does not extend to communications 'made for the purpose of getting advice for the commission of a fraud' or crime." *Zolin, 491 U.S. at 562* (citations omitted).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 2
Slip Copy, 2006 WL 1286189 (D.N.J.)
**(Cite as: 2006 WL 1286189 (D.N.J.))**

FN1. The crime-fraud exception also applies to attorney work product, which "loses its protected status if it relates to efforts to facilitate a crime or fraud, or to conceal illegal conduct, obstruct justice, or subvert the legal system." See *Gutter v. E.I. Dupont De Nemours,* 124 F.Supp.2d 1291, 1294 n. 2 (S.D.Fla.2000); *see also In re Grand Jury Proceedings (FMC Corp.),* 604 F.2d 798, 802-03 (3d Cir.1979).

The Third Circuit has established a multi-step process for determining whether a party's claim of privilege should be pierced by the crime-fraud exception. First, in order to invoke the exception, the party seeking discovery must make a prima facie showing that (1) the client claiming the privilege was engaging or intended to engage in a crime or fraud at the time of the attorney-client communication, and (2) that the communication was in furtherance of the continuing or intended crime or fraud. See *In re Grand Jury Subpoena,* 223 F.3d 213 (3d Cir.2000); *see also In Re: Grand Jury Investigation,* No. 06- 1474 (3d Cir Apr. 21, 2006) (explaining that a client's misuse of communications with her attorney in furtherance of an improper purpose is sufficient to satisfy the second prong of the crime-fraud exception). The prima facie showing requires that the party seeking discovery "present evidence which, if believed by the fact-finder, would be sufficient to support a finding that the elements of the crime-fraud exception were met." *Haines v. Liggett Group, Inc.,* 975 F.2d 81, 95-96 (3d Cir.1992); *see also Zolin,* 491 U.S. at 572 ("Before engaging in *in camera* review to determine the applicability of the crime-fraud exception, the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies.") (citations and quotations omitted).

*2 This evidentiary showing, which is required before the Court may conduct an *in camera* review of the contested documents, is a lesser standard than that which is ultimately required for disclosure under the crime-fraud exception. *Zolin,* 491 U.S. at 572 (holding that a lesser evidentiary showing is needed to trigger *in camera* review than is required ultimately to overcome the privilege); *In Re: Grand*

*Jury Investigation,* No. 06-1474 at 13 (describing as not particularly heavy the burden to make the necessary prima facie showing for the crime-fraud exception); *Haines,* 975 F.2d at 96 (noting that "the decision to engage in *in camera* review implicates a much more lenient standard of proof than the determination to apply the crime/fraud exception, as the intrusion on the asserted privilege is minimal") (citations omitted). Where this Court uses the term "prima facie showing" in this opinion, it is referring to the standard set forth by the Third Circuit, which requires a factual basis "to support a good faith belief by a reasonable person that the materials may reveal evidence of a crime or fraud." See *Haines,* 975 F.2d at 96.

If the court determines that the party seeking discovery has presented sufficient evidence at stage one, it may decide to conduct an *in camera* evaluation of the contested documents. *Zolin,* 491 U.S. at 572 ("[T]he decision whether to engage in *in camera* review rests in the sound discretion of the district court."). The Court then must determine if the party asserting the privilege has sustained its burden of proof, specifically if it has given a reasonable explanation of its conduct. See *Gutter,* 124 F.Supp.2d. at 1307; *see also Feldberg v. Walters,* 862 F.2d 622, 626 (7th Cir.1988) (explaining that the prima facie case requires the adverse party, "the one with superior access to the evidence and in the best position to explain things, to come forward with that explanation"). The Third Circuit requires that "the party defending the privilege be given the opportunity to be heard, by evidence and argument" as to why the privilege should not be pierced. See *Haines,* 975 F.2d at 97; *see also Laser Ind. Ltd. v. Reliant Tech., Inc.,* 167 F.R.D. 417, 430 (N.D.Cal.1996) (finding that a court must "permit the holder of the privilege to submit evidence and argument that tends to rebut an inference of any of the necessary elements of the crime/fraud exception").

Finally, the court must decide if the evidence, including the communications themselves and the arguments presented, shows that it is more likely than not that the holder of the privilege sought or used legal advice to commit or try to commit a crime or fraud. See *Medical Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc.,* 30 F.Supp.2d 1182, 1206 (D.Ariz.1998) (holding that in order to pierce the attorney-cli-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                          Page 3
Slip Copy, 2006 WL 1286189 (D.N.J.)
(Cite as: 2006 WL 1286189 (D.N.J.))

ent privilege based on the crime-fraud exception, "the district court must determine, by a preponderance of the evidence, whether the exception is justified, taking into account 'the entire record' "); *Laser Ind., 167 F.R.D. at 441* (applying the "more likely than not" standard in deciding whether to pierce the privilege under the crime-fraud exception). Thus, if the court accepts the explanation provided by the party asserting the privilege as sufficient to rebut the prima facie case made at stage one, the privilege will be upheld. *Gutter, 124 F.Supp.2d. at 1307* (explaining the procedures outlined in *Haines*); *see also Feldberg, 862 F.2d at 626.* On the other hand, if the Court finds insufficient evidence to rebut the prima facie case, then the attorney-client privilege is pierced.

### B. *Analysis*

**\*3** The plaintiffs have presented evidence sufficient to support a finding, at this preliminary stage, that the elements of the crime-fraud exception may be met. The crime-fraud exception is not limited to evidence that supports a finding of common-law fraud. Rather, under federal law, the exception can encompass communications and attorney work product "in furtherance of an intentional tort that undermines the adversary system itself." *See Madanes v. Madanes, 199 F.R.D. 135, 149 (S.D.N.Y.2001); see also In re Sealed Case, 676 F.2d 793, 812 (D.C.Cir.1982).* This may include communications and work product used in furtherance of the spoliation of evidence. *Rambus, Inc. v. Infineon Tech. AG, 220 F.R.D. 264, 283 (E.D.Va.2004).* The evidence presented here sets forth a prima facie showing sufficient to warrant *in camera* review of Defendants' allegedly privileged documents in the subject matter areas set forth below.

By way of example, the court finds sufficient evidence in the record to suggest that the Health Net Defendants [FN2] made misleading representations, by omission, to agents of the New Jersey Department of Banking and Insurance ("NJDOBI") about the extent of the company's use of improper data to calculate its beneficiaries' out-of-network benefits. In late 2002 and early 2003, Health Net negotiated with NJDOBI to reimburse beneficiaries for its use of outdated HIAA data [FN3] to calculate the usual customary rate ("UCR") for out-of-network medical procedures. Throughout this period of negotiations, leading up to a

signed Consent Order in December 2002, corporate officials within Health Net, including the Chief Financial Officer of Health Net of the Northeast ("HNNE"), knew that the company's use of outdated data began two years before July 2001. Yet top Health Net officials did not disclose this to NJDOBI and conducted the negotiations through representations solely about the use of outdated data beginning in July 2001, which led to a Consent Order limited to the post-July 2001 time period.

> FN2. The Defendants are Health Net, Inc., Health Net of the Northeast, Inc., and Health Net of New Jersey, Inc. In this opinion, they will be referred to collectively as "Health Net," the "Health Net Defendants" or as the "Defendants."

> FN3. When the Court refers to the "HIAA issue" in this Opinion, it refers to the use of outdated HIAA data to calculate Health Net beneficiaries' out-of-network benefits. *See* Class Certification Opinion at 10-12 (Aug. 5, 2004).

Health Net representatives, including plan counsel Eileen O'Donnell, Esq., and her boss, HNNE General Counsel Paul Dominianni, Esq., did not disclose the company's practice of using outdated data as early as 1999, thereby avoiding the obligation to reimburse Health Net beneficiaries hundreds of thousands of dollars. While Ms. O'Donnell testified that she personally did not know that the practice began in 1999, other more senior corporate officials, including the Chief Financial Officer of the Northeast Division, had knowledge that: (1) the use of outdated data in reimbursements to beneficiaries began at least as early as 1999; and (2) that Health Net did not so represent to the state agency, instead limiting Health Net's disclosure to the period after July 1, 2001. This omission of facts rendered the stated facts misleading. Plaintiffs have set forth enough to make out a prima facie showing that Health Net may thus have been utilizing the services of its counsel to engage in a crime or fraud at the time of the communications with NJDOBI.

**\*4** The court also finds sufficient evidence to support a prima facie showing that the Health Net Defendants may have obstructed justice in connection with its dealings with NJDOBI. Evidence adduced constitutes a prima facie show-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                    Page 4
Slip Copy, 2006 WL 1286189 (D.N.J.)
(Cite as: 2006 WL 1286189 (D.N.J.))

ing that, when hearings began in federal court as to whether certain preliminary relief should issue, Health Net, through its counsel, may have misrepresented in Court papers the existence and progress of a purported agreement between Health Net and NJDOBI to reimburse beneficiaries' overpayments resulting from Health Net's use of outdated data between January 1, 1999 and June 30, 2001.

This claimed agreement between Health Net and NJDOBI to make restitution for the earlier period, from January 1, 1999 to June 30, 2001, has been colloquially referred to as the "Second Restitution," even though it refers to an earlier time period than the "First Restitution." It was claimed by Health Net, through counsel at the preliminary injunction hearing on November 20, 2003, that Paul Dominianni, Esq., Chief Plan Counsel for HNNE, and Lee Barry, Assistant Commissioner of NJDOBI reached an agreement to make a "Second Restitution." Individuals within Health Net, including Mr. Dominianni, knew well prior to November 2003 that a Second Restitution to beneficiaries and disclosure to NJDOBI were imperative, but it was not until the very date of this Court's preliminary injunction hearing on November 20, 2003, that Mr. Dominianni finally spoke with Mr. Barry. The phones connected for about seven minutes. What was said during that short call is disputed. Both sides agree that the call involved pleasantries about Mr. Barry's planned day off and a meeting to which he was running. Mr. Dominianni testified that he told Mr. Barry that Health Net had "a problem" from January 1, 1999 to July 2001; that the company intended to resolve it; that Mr. Barry concurred; and that an agreement to make the "Second Restitution" was formed. Mr. Barry contends that nothing substantive was discussed about any further restitution and that no agreement of any kind was made in the short phone call. No confirming e-mail, letter, or draft agreement was ever sent by Mr. Dominianni to Mr. Barry. Mr. Dominianni testified that, "at the time [he] thought there was some chance that Mr. Barry may follow up and some chance that he may not." 10/17/05 Transcript at 155, ln. 2-3. Mr. Dominianni never followed up with Mr. Barry to memorialize any agreement. *Id.* at 155, ln. 7-9.

The short conversation between Mr. Dominianni and Mr. Barry took place about an hour or two before this Court convened its first evidentiary hearing, where the Court would consider whether injunctive relief was necessary to protect Health Net beneficiaries. At the hearing on November 20, 2003, Health Net's counsel, John Pendleton, Jr., Esq., of McCarter & English, assured the Court that no injunctive relief was necessary because "Health Net has since gone back to the New Jersey department, and there may be either an amendment to the consent order, or a separate--there is no investigation. We made disclosure that there are--we've discovered that in 1999 we hadn't paid, and so we're going to rectify that, that's about a $528,000 restitution program that we'll make to small group people in New Jersey." 11/20/03 Transcript at 30, ln. 4-10. Health Net plan counsel, Eileen O'Donnell, Esq., testified on that date that "we have gone back to the department [NJDOBI] to say that we have uncovered other errors and that we would propose, and they accepted our plan of remediation." *Id.* at 149, ln. 13-16.

*5 During the year following the November 20, 2003 hearing, Mr. Pendleton repeated several times in briefs and letters that the Second Restitution was "in the process" of being carried out. However, there is no evidence, during the entire year after the November 20, 2003 hearing, that any "process" for carrying out the Second Restitution had ever begun.

On December 17, 2004, Magistrate Judge Shwartz issued an order demanding an explanation. Mr. Dominianni thereupon began a frantic effort to make it appear that the Second Restitution had been underway. As part of these efforts, Mr. Dominianni (through McCarter & English, Esqs.) submitted an affidavit on January 4, 2005, blaming the failure to accomplish the Second Restitution on the many steps needed to complete the task and on "inadequate continuity of work flow and personnel." The affidavit failed to mention that no work had been done to commence the restitution until the Magistrate Judge demanded an explanation and that by the date of the affidavit, Paul Dominianni, Esq., knew that the "work," i.e. the calculations for the Second Restitution, had already been done 2 years earlier.

This Court finds sufficient evidence to establish a prima facie showing that Mr. Dominianni and Health Net never intended to make a genuine agreement with NJDOBI to make

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works

Westlaw.

Slip Copy                                                                                                        Page 5
Slip Copy, 2006 WL 1286189 (D.N.J.)
**(Cite as: 2006 WL 1286189 (D.N.J.))**

a Second Restitution nor to carry it out, had the Magistrate Judge not blown the whistle. Disclosure that Health Net had begun to use outdated data two years earlier than the time period disclosed during the negotiations leading to the "First Restitution" would have notified NJDOBI that its initial Consent Order with Health Net, in December 2002, was based on misleading statements. Such a realization would likely have caused officials at NJDOBI to open a more searching investigation into Health Net's beneficiary reimbursement practices and, in particular, into its use of outdated data. The claimed agreement for a "Second Restitution," if fully disclosed to NJDOBI, could cause administrative repercussions because it would have revealed the misleading statements made in connection with the "First Restitution." Thus, the evidence presented is adequate to support a prima facie showing that *in camera* review of privileged documents in this case could reveal that Health Net used its counsel to obstruct justice in connection with NJDOBI.

The Court also finds sufficient evidence that the Health Net Defendants may have used their counsel to delay discovery. Throughout discovery, Plaintiffs expressed concerns to Magistrate Judge Shwartz that the Health Net Defendants were not taking all appropriate steps to preserve and produce relevant documents. In response to these concerns, Health Net's counsel, John Pendleton, Jr., stated in a May 8, 2003 letter to Magistrate Judge Shwartz that "we are familiar with our obligations" and that the company "has complied with its obligations to preserve evidence." Despite these assurances, there has been a prima facie showing that Health Net did not have effective procedures in place to ensure the preservation of employees' electronic mail. An associate at McCarter and English stated that she was not made aware of the client (Health Net) of its electronic document procedures.

**\*6** Judge Shwartz issued many discovery orders that should have unearthed hundreds or perhaps thousands of e-mails from Defendants' files during the discovery period. However, it was not until late 2005, when this Court commenced a Rule 37 / Integrity hearing into alleged discovery abuses and misrepresentations to the Court, that most of those e-mails first began to emerge, years after they should have been produced in discovery. For the duration of years

of discovery, and even throughout the Integrity Hearing itself, Health Net counsel did not disclose what this Court and Magistrate Judge Shwartz learned for the first time *after* the Integrity Hearing--that Health Net e-mails were sent to backup disks after 90 days from the date of creation; that these disks were never searched for responsive documents during the three year period of discovery; and that when any employees deleted e-mails within 30 days, those e-mails would be lost permanently upon transfer to storage at 90 days. Moreover, even when a central witness in the case (Eileen O'Donnell, Esq.) retained e-mails by overriding this system, Health Net counsel gave conflicting accounts of whether she was asked to do a search of those e-mails for relevant documents. Ms. O'Donnell testified that she was never asked to do and she never did a comprehensive e-mail search. 03/09/06 Transcript at 157, ln. 12-13. Outside counsel testified that Ms. O'Donnell claimed she turned over all the e-mails that existed on the "HIAA issue," which consisted of a few e-mails between Ms. O'Donnell and Lee Barry. 01/05/06 Transcript at 232, ln. 5- 10, 18-25; 03/01/06 Transcript at 19, ln. 8-14. Inside counsel testified Ms. O'Donnell was aware of the document requests in this case and aware of the need to look through her e-mail files to produce all responsive e-mails, so to the extent that she elected not to search her own e-mails, inside counsel did not get those e-mails from Ms. O'Donnell. 01/05/06 Transcript at 72, ln. 1-13. Three counsel; three statements; no serious e-mail search.

Despite repeated queries by this Court as to why so many highly relevant e-mails had never been timely produced, not one member of Health Net's legal team informed the court about the non-preservation risk and non-search of e-mails older than 90 days until after the conclusion of the Rule 37/Integrity hearing. By this time, it was too late to query Health Net witnesses about their searches for documents. Health Net's newest outside counsel, Morgan Lewis and Bockius, submitted a lengthy certification on December 12, 2005, in response to the Court's questions about whether, when and how certain specified Health Net employees made a reasonable, thorough and diligent search of their files for responsive documents. The December 12, 2005 certification did not state that HNNE employees' e-mails went to a backup tape after 90 days, and thus could not be searched by

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy
Slip Copy, 2006 WL 1286189 (D.N.J.)
(Cite as: 2006 WL 1286189 (D.N.J.))

Page 6

the employees themselves, nor that the backup tapes were not searched by Health Net. Counsel at Morgan, Lewis and Bockius LLP stated that he also did not know of this Health Net electronic document policy, *see* 03/09/06 Transcript at 22, ln. 13-17, but Health Net's other outside counsel at Epstein Becker & Green P.C., Herve Gouraige, Esq., did know about the extent of email searches or lack thereof, *see* Certification of Barry M. Kazan.

*7 In sum, Health Net disclosed to one of three outside firms (Epstein Becker and Green, P.C.) its e-mail policies; no counsel informed either Magistrate Judge Shwartz or this Court until after the conclusion of the Rule 37/Integrity hearing; and Health Net only searched four of its scores of pertinent employees' backup tapes, for limited periods of time, in order to locate responsive e-mails. The most relevant e-mails in the case were produced from a one-month search of backup tapes belonging to a single employee, which were searched only after the Court at the Integrity Hearing demanded to know the origin of a specific document.

These facts are sufficient to support a prima facie showing that *in camera* review of the materials may reveal evidence to establish that the crime-fraud exception applies to certain allegedly privileged documents.

### III. Compliance with Certain Outstanding Discovery Orders

#### A. *July 23, 2003 Order Regarding HIAA issue*

On February 28, 2006, the Court, *inter alia*, inquired into compliance with an Order issued by Judge Shwartz on July 23, 2003, which ordered Health Net to produce, by August 5, 2003, "any and all emails containing information related to the HIAA issue and Consent Order, including redacted emails, which redact information unrelated to the HIAA issue." 02/28/06 Transcript at 125, ln. 16- 18. When counsel for Health Net stated that all e-mails had not been searched, this Court ordered the Defendants to "[p]roduce all electronic information related to the HIAA issue of the use of outdated data that in any way affects the issues in McCoy and Wachtel that are being litigated." *Id.* at 126, ln. 19-22. This Court further ordered that the Health Net Defendants pro-

duce any e-mail communications, by specific individuals on a list provided by the court, which refer or relate to the use of outdated HIAA data in any year. *Id.* at 130, ln. 5-7. The Court set March 14, 2006 as the deadline for such production.

On March 14, 2006, the Health Net Defendants notified the Court by letter that they could not comply with the Court's deadline. The Defendants explained that they would begin production to Plaintiffs on Friday, March 17, 2006, but requested an extension up to and including September 14, 2006 to complete their production. This Court had ordered production of "all responsive e-mails" on November 16, 2005, over four months earlier. Had Defendants complied with the November 16th order, their production of e-mails would be nearly complete by now. This Court will however set a new deadline for production in the Order accompanying this decision.

#### B. *Pattern of Non-compliance with Discovery Orders*

A pattern of non-compliance with discovery orders of the Magistrate Judge has become distressingly commonplace. Defendants have caused Plaintiffs to conduct expensive depositions without full production of documents relevant to each deponent without even the courtesy of informing Plaintiffs' counsel that the document production ordered by the Magistrate Judge to be completed prior each deposition had not been completed. This has occurred repeatedly in this case. Defendants' counsel knew at the time of multiple depositions that they had not completed review of each deponent's e-mails in advance of those depositions, but did not disclose that to Plaintiffs or the Magistrate Judge who so ordered. *See* 11/22/05 Transcript at 11, ln.17-23 and at 13-14, ln. 25, 2-8. This silence implied that Defendants had complied with the Magistrate Judge's Order, when in fact they had not.

*8 Recently, in a December 28, 2005 Order, Judge Shwartz ordered the deposition of former Health Net, Inc. CEO, Jay Gellert, whom plaintiffs had not previously deposed based on Defendants' representations that Mr. Gellert "did not know about the challenged practices in this litigation." Judge Shwartz ordered that, in connection with his deposition, Mr. Gellert shall produce all documents, in whatever

Westlaw.

Slip Copy                                                                Page 7
Slip Copy, 2006 WL 1286189 (D.N.J.)
**(Cite as: 2006 WL 1286189 (D.N.J.))**

form they are kept, that are responsive to the discovery demands served in this case. A month later, Judge Shwartz learned that Defendants were not searching for responsive e-mails nor attempting to restore and search Health Net's e-mail system. This discovery lead the Magistrate Judge to issue a remedial Order on January 30, 2006.

*C. January 30, 2006 and March 9, 2006 Orders*

On January 30, 2006, Judge Shwartz noted that the Court had already ordered Defendants to produce all e-mails responsive to discovery demands and found that "had the defendants searched for responsive e-mails when the discovery demands were made instead of long after discovery closed, the cost and expense that they claim they must now incur would not have been present." She then ordered the Defendants to produce "all emails, including those located in the backup email system/archived emails, that are responsive to the discovery demands served in this case."

Defendants sought reconsideration of Judge Shwartz's January 30th Order, claiming that it required the Defendants to conduct a search that would be unduly burdensome, in terms of time and expense. On March 9, 2006, Judge Shwartz granted in part and denied in part Defendants' motion for reconsideration. She found that Defendants deliberately failed to preserve and diligently search for and produce all responsive documents from all places and people the Defendants believed might have possession of such documents. She also concluded that the unavailability of responsive materials and the difficulty involved in restoring such documents was due to Defendants' own failure to timely provide responsive discovery. In light of these findings, Judge Shwartz ordered Defendants, no later than April 4, 2006, to "review and produce the e-mails of all employees (past and present) who (1) testified at hearings or depositions or were mentioned during any hearing or deposition; (2) were listed in the proposed final pre-trial order, or (3) were identified in any way in discovery, including but not limited to the names (a) listed on any documents, whether in the text, as an author or as a recipient of any document, including emails, (b) identified by Judge Hochberg on February 28, 2006, and (c) identified in the letter of March 17, 2004, which is attached to the certification of Heather Taylor, dated December 12, 2005, at Exhibit A."

On March 24, 2006, Defendants appealed Magistrate Judge Shwartz's March 9, 2006 Order and on March 28, 2006, they sought permission to file a Motion on Short Notice for stay of the March 9, 2006 Order.

*D. Standard of Review*

**\*9** The Magistrates Act requires this Court to apply the clearly erroneous standard of review upon appeal of a magistrate judge's report on certain pretrial, non-dispositive motions. 28 U.S.C. § 636(b); *see also McDonnell Douglas Corp. v. Commodore Bus. Machs. Inc.,* 656 F.2d 1309, 1313 (U.S.App., 1981). A magistrate judge's rulings concerning discovery, including sanction orders, are non-dispositive motions. *See, e.g., Cunningham v. Hamilton County,* 527 U.S. 198, 201 (1999); *Bowen v. Parking Authority,* 214 F.R.D. 188 (D.N.J.2003); *Tarlon v. Cumberland Co. Corr. Facility,* 192 F.R.D. 165 (D.N.J.2000); *Fitz Inc. v. Ralph Wilson Plastics Inc.,* 184 F.R.D. 532 (D.N.J.1999); *see also* L. Civ. R. 72.1(a), cmt. 3 (noting that orders compelling document production and imposing sanctions for discovery abuses are non-dispositive motions). Thus, a magistrate judge's adjudication of a non-dispositive motion will be set aside only if the order is found to be clearly erroneous or contrary to law. *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1111, 1113 (3d Cir.1986), *cert. denied,* 484 U.S. 976, 108 S.Ct. 487 (1987) (*citing* 28 U.S.C. § 636(b)(1)(A)); *see also* Fed.R.Civ.P. 72(a); L. Civ. R. 72.1(c)). A magistrate judge's order is clearly erroneous only "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co. of Wis.,* 131 F.R.D. 63, 65 (D.N.J.1990) (quoting *United States v. Gypsum Co.,* 333 U.S. 365, 395 (1948)). To be contrary to law, a magistrate judge's order must have "misinterpreted or misapplied applicable law." *Gunter v. Ridgewood Energy Corp.,* 32 F.Supp.2d 162, 164 (D.N.J.1998).

*E. Analysis*

Defendants argue in their appeal that Judge Shwartz did not properly consider the expense, burden, and justification for discovery that the Rules of Civil Procedure, in particular Rule 26(b), require. Rule 26(b) provides that:

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy
Slip Copy, 2006 WL 1286189 (D.N.J.)
(Cite as: 2006 WL 1286189 (D.N.J.))

Page 8

The frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that: (i) the discovery sought is duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs the likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Defendants argue that Magistrate Judge Shwartz's March 9th Order does not reflect a balancing of the factors set forth in Rule 26. They also contend that Judge Shwartz's Order is overly burdensome and ask that it be vacated, or, at a minimum, that the search and restoration of e-mails be limited by time period, specific employees and/or key words.

**\*10** There is no evidence to suggest that the discovery ordered in the March 9th Order is cumulative or duplicative of the discovery already produced in this case. On the contrary, one of the reasons Judge Shwartz ordered Defendants to produce such a large number of e-mails is because so many e-mails were not produced during the discovery period. As described above, volumes of e-mails that were created during or prior to the discovery period, and which should have been produced long ago, appeared for the first time during the course of this Court's Rule 37/Integrity hearing after the close of discovery. Defendants admit that, to this day, they have not reviewed for production the vast majority of the thousands of e-mails contained on the company's backup tapes, with no authority for such conduct.

Moreover, Plaintiffs' efforts to obtain internal Health Net e-mails through the process of discovery were often stymied by Defendants. In some instances, Health Net's outside counsel were unaware of the extent to which their clients were not complying with court orders. For example, outside counsel James DelBello, Esq., acknowledged on March 9, 2006, that Plan Counsel Eileen O'Donnell's recently-produced e-mails concerning the NJDOBI and restitution issues should have been produced in 2003 when discovery about

those issues was underway. 03/09/06 Transcript at 134, ln. 12-22. Outside counsel Heather Taylor, Esq., also testified on March 1, 2006, that she was unaware of Health Net's practice of putting e-mails on backup tapes 90 days after creation, which made it impossible for most employees to access the e-mails through a search of their own. Nor was Ms. Taylor told of Health Net's practice of permitting employees to delete e-mails within 30 days of creation or receipt, which could result in spoliation. 03/01/06 Transcript at 2-3, 5-6. Given that even Health Net's own outside counsel did not know about such e-mail retention practices within the company, and that such outside counsel's "search" for e-mails consisted of asking certain employees to search their own emails, [FN4] it cannot be said that plaintiffs had any real opportunity to obtain the e-mails they sought during the discovery process.

> FN4. The Court does not address at this time the apparent conflict between the testimony of Health Net outside counsel and Health Net Plan Counsel, Eileen O'Donnell, who stated that she was never asked to search her own e-mail in any systematic or thorough manner.

This Court is aware that a significant amount of time and expense is required to comply. However, Defendants' predicament is due largely to their own repeated failures to respond in a timely manner to discovery requests and to court orders. The e-mails that are the subject of the Court's recent orders should have been produced long ago in response to Plaintiffs' document demands and in compliance with numerous court orders.

. On June 25, 2003, Judge Shwartz ordered Defendants to "provide a response to plaintiffs' demand for documents, in whatever form they exist, related to Healthnet's compliance with the state [of New Jersey] consent order."

. On July 23, 2003, Judge Shwartz ordered Defendants to produce "any and all emails containing information related to the HIAA issue and the Consent Order."

**\*11** . On November 5, 2003, Judge Shwartz ordered Defendants to produce all non-privileged documents reflecting investigations of HNNE by insurance regulators.

. On November 18, 2003, Judge Shwartz ordered Defendants to respond to all discovery demands in the McCoy

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                          Page 9
Slip Copy, 2006 WL 1286189 (D.N.J.)
**(Cite as: 2006 WL 1286189 (D.N.J.))**

case.

   On November 30, 2004, Judge Shwartz ordered that "all documents for all Healthnet entities shall be produced no later than January 10, 2005."

   On February 16, 2005, Judge Shwartz ordered Defendants, no later than February 25, 2005, to "produce all documents that relate to any and all regulators' past or ongoing investigations of the Health Net entities handling of out-of-network activities" including *but not limited to* various specific types of documents.

   On April 5, 2005, Judge Shwartz ordered Defendants to produce "all outstanding discovery responses to all outstanding discovery demands, including but not limited to those that were the subject of this Court's Order of December 17, 2004."

Judge Shwartz also repeatedly ordered Defendants to retain potentially relevant evidence by issuing the following Orders:

   May 9, 2003 Order following teleconference at which the parties "acknowledged their obligation to retain potentially relevant evidence related to this case;"

   May 28, 2004 Order directing defense counsel to "further ensure that an appropriate communication is sent to those employees who may have responsive documents" and directing them to "make additional inquiries of those individuals they believe would be most responsible for the production of responsive documents;"

   August 18, 2004 Order making clear that discovery demands shall be served on and responded to by all Healthnet entities, regardless of geographic location, and requiring all Healthnet entities to produce certifications setting forth (1) their retention policies, (2) steps taken to ensure preservation of information potentially relevant to these cases, (3) a copy of any notice to preserve, (4) a list of individuals to whom the notice was provided, and (5) how the preservation was implemented and monitored;

   October 7, 2004 Order directing the parties to submit a joint proposed form of notice to preserve records and a consent order setting forth the date on which the Defendants shall produce supplemental certifications concerning the records preservation issues raised at earlier hearings;

   October 13, 2004 Order again directing the parties to submit a joint proposed form of notice to preserve records and to submit a consent order setting forth the date on

which the Defendants shall produce supplemental certifications concerning the records preservation issues raised at earlier hearings.

Defendants' failure to preserve and produce relevant e-mails also led to Judge Shwartz's decision to grant plaintiffs' request for an adverse inference instruction regarding e-mails that Robert McCartt, a Rule 30(b)(6) witness regarding Health Net's practices for its California beneficiaries, admittedly deleted. *See* October 17, 2005 Order. [FN5]

> FN5. This Court affirms Magistrate Judge Shwartz's October 17, 2005 Order granting a spoliation inference to Plaintiffs regarding the e-mails deleted by Robert McCartt, an employee of Health Net of California ("HN-CA"). Defendants argue in their appeal that Judge Shwartz erred by granting an adverse inference against Defendants based on Mr. McCartt's failure to preserve his e-mails regarding the 2000 audit of Health Net of California by the Department of Managed Health Care. Defendants contend that the e-mails could have been deleted prior to a time when Health Net, Inc., HN-CA's corporate parent, had an obligation to ensure that HN-CA preserve e-mails, which they say did not occur, if at all, until late 2003 or early 2004.
>
> This reasoning is not persuasive given that Plaintiffs' *Wachtel* complaint, which was removed to this Court in August 2001 and amended in December 2001, referred to activity throughout the United States and alleged claims on behalf of a nationwide class of *all* Health Net beneficiaries; that Plaintiffs' discovery demands sought information from Health Net subsidiaries, affiliated entities, and from persons of which Defendants had control; and that Defendants opposed a preservation order in this litigation in September 2004, arguing that the preservation orders entered in December 2000 and January 2001 in the MDL litigation involving Health Net were sufficient to ensure preservation of documents relevant to this litigation. Furthermore, as Judge Shwartz noted in her Opinion, "it appears that many of the Health Net's high-level employees were unaware of either this litigation or their obligation to preserve documents." Judge

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                                    Page 10
Slip Copy, 2006 WL 1286189 (D.N.J.)
(Cite as: 2006 WL 1286189 (D.N.J.))

Shwartz's conclusion has, unfortunately, only found further support in the record developed by the Court in the time since her decision. The Court finds that Judge Shwartz did not err in her decision. This Court also affirms the portion of Judge Shwartz's October 17, 2005 Order that directed Defendants to pay Plaintiffs' reasonable attorneys fees and costs associated with bringing the motion to compel the production of fee screens and explanations of benefits. Judge Shwartz was justified in ordering payment of fees given that Plaintiffs expended unnecessary time and money to bring the motion to compel as a result of Health Net's failure to timely respond to Plaintiffs demands for fee screens.

*12 At no time did Defendants inform either Plaintiffs or the Magistrate Judge as to how they stored e-mails; the numbers of e-mails needed to be searched; the cost of such search; or a plan for allocating the burden of e-mail production. Had candid disclosures to the Magistrate Judge occurred, an appropriate order could have been tailored to deal with these issues and keep costs down. [FN6] The huge costs now being complained of could have been minimized by timely compliance when the e-mails were more current.

> FN6. Many cost-sharing options could have been available to Defendants at the outset of discovery, had they been candid with the Court about the e-mail policies of Health Net and the expense of producing that discovery. *See e.g., Zubulake v. UBS Warbug LLC,* 217 F.R.D. 309 (S.D.N.Y.2003).

Moreover, the financial burden is not one-sided. Plaintiffs have taken many depositions and conducted evidentiary hearings of witnesses without the benefit of the document production ordered by the Magistrate Judge, and without even being informed that the documents ordered by the Court to be produced had not in fact been fully produced. They will now face great cost in time and money to decide whom to re-depose. The Court cannot redo the hearings that have gone on for months, and thus Plaintiffs will have lost the benefit of court testimony that might well have been beneficial to their case.

Defendants had three years of open discovery in which to produce e-mails responsive to Plaintiffs' document requests. Never during this period did they inform Judge Shwartz of any difficulties they had retrieving e-mails. [FN7] Boilerplate objections simply stating "burden" did not constitute remotely adequate notice to the Magistrate Judge or Plaintiffs that the backup tapes were not being searched and that most HNNE employees, if asked to search on their own, could not access e-mails older than 90 days.

> FN7. *See* 02/28/06 Transcript at 92, ln. 18-25, 93 ln. 1-22 ("THE COURT: There was no burdensomeness objection that said we have to go back to a back-up tape because after 90 days our e-mails go to a back-up tape. There was nothing like that in any document drawn to this court's attention. Am I incorrect?
> MR. CALVERT: I believe you're correct, at least I haven't see any such document.")

Defendants now assert that compliance with this Court's orders will cost them millions of dollars and take months to complete. Although the cost of compliance is indeed high, Defendants have litigated this case without regard to cost when it has been in their interest to do so. The cost Defendants must now incur is a direct result of non-compliant and deceptive discovery tactics and disregard of court orders throughout the course of discovery. This is evidenced by the various sanctions Judge Shwartz has imposed.

On February 16, 2005, Judge Shwartz granted Plaintiffs' application for sanctions arising from Health Net's failure to comply with her Orders requiring production of documents related to regulatory investigations of Health Net entities' handling of out-of-network activities.

On August 31, 2005, Judge Shwartz excluded 16 of Defendants' trial witnesses for failure to disclose sufficiently the identity of those individuals pursuant to Fed.R.Civ.P. 26(a)(1)(A). [FN8]

> FN8. This Court affirms Judge Shwartz's August 31, 2005 Order excluding several of Defendants' trial witnesses. Judge Shwartz found that 16 of the witnesses identified by Defendants in their final pretrial order had not been previously disclosed pursuant to the requirements of Fed.R.Civ.P. 26.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy
Slip Copy, 2006 WL 1286189 (D.N.J.)
(Cite as: 2006 WL 1286189 (D.N.J.))

Page 11

She found Defendants' boilerplate reference to "[a]ll persons named in any document produced by any party, all persons named in any pleading or depositions, and such other individuals as further investigation and discovery may reveal" did not provide sufficient information about individuals likely to have discoverable information.

After a careful analysis, Judge Shwartz determined that the sanction of exclusion was appropriate based on (1) Defendants' failure to justify their lack of disclosure; (2) the prejudice suffered by Plaintiffs, who likely would have conducted discovery differently and who expended time and resources on deposing "second best" witnesses; (3) the difficulty and disruptiveness of conducting 16 additional depositions and amending summary judgment motions; and (4) Defendants' bad faith and wilfulness in failing to comply with court orders and discovery obligations.

This Court finds no clear error in Judge Shwartz's conclusions. As explained above, Defendants have made a practice of evasive discovery responses in this litigation and have relied on boilerplate responses, claiming they are sufficiently specific to provide notice to Plaintiffs and the Court when in fact they serve to obfuscate the truth. Defendants' aggressive strategy and persistent pattern of nondisclosure have lead to the repeated discovery violations discussed in this opinion and in others by Judge Shwartz. Based on this record, the Court finds sufficient reason to affirm Judge Shwartz's August 31, 2005 Order.

. On October 17, 2005, Judge Shwartz required Defendants to pay reasonable attorneys fees for Plaintiffs' application to compel production of various documents and granted Plaintiffs' request for an adverse inference instruction regarding e-mails that were deleted by a Health Net 30(b)(6) witness.

Simply put, Defendants' history of violating discovery orders has caused enormous unnecessary delays throughout the discovery process, which has in turn contributed to the cost Defendants must now incur in order to recover documents that should have been produced long ago.

*13 In an effort to obtain production of those e-mails that are most important, and to speed up the completion of the production for the benefit of all involved, this Court will limit the scope of Judge Shwartz's March 9, 2006 Order to cover initially the individuals listed in footnote 9 below. [FN9] The earliest production shall be of the list announced by this Court on February 28, 2006. [FN10] The production of e-mails for the remaining individuals listed in footnote 9 shall then immediately follow. The Court will limit the production to e-mails created or received between July 1, 1998 and January 10, 2005. [FN11]

FN9. These individuals are: Mark El-Tawil, Karen Anderson, Kate Longworth-Gentry, Bruce Anderson, Nancy Starts, Nancy Bushnell, Maria "Lisa" Dietz, Mike Sydlaske, Barry Averill, Bill Carr, Franklin Tom, Dan Sibol, Eileen O'Donnell, Paul Dominianni, Steve Camper, Joe Kempf, Tom Messer, Liz Guerin, Marv Rich, Curt Westen, Jay Gellert, Carol Richey, Frank Partridge, Karen Davezac, Rae Joyce, Bob McCartt, Gay Ann Williams, Steve Lynch, Chris Wing, Mark Dashiell, Hilda Gonzalez, Bob Morris, Patter Weller, Pennell Hamilton, Jeff Folick, Eileen Aven, Joe Singer, Tim Mondon, Bill Van Gieson, Anton Glenbonovitch, Alida Dodd, Maureen White, Robert Redding, Marguerite McAleenan, Patricia Normington, Linda Suriano, Don Wallace, Andrea Clapp, Ken Shoquist, Julio Marques, Paul Lambdin, Ardeth Onofrio, Dee Dee Iverson, Mary-Ann Gaynor, Tracy Corraro, Joan Kmotorka, Joyce Li, Greg McDonald, and Tina Stroup.

FN10. These individuals are: Barry Averill, Dan Sibol, Curt Westen, Carol Richey, Karen Davezac, Rae Joyce, Hilda Gonzalez, Bob Morris, Patty Weller, Pennell Hamilton, Joseph Singer, Tim Mondon, Bill Van Gieson, Pat Normington, Mike Sydlaske, Paul Dominianni, Tom Messer and Eileen O'Donnell

FN11. Defendants have also appealed Judge Shwartz's December 28, 2005 Order. As modified herein, Judge Shwartz's Order is affirmed. Defendants also objected to Judge Shwartz's recommenda-

Westlaw.

Slip Copy                                                                                                    Page 12
Slip Copy, 2006 WL 1286189 (D.N.J.)
**(Cite as: 2006 WL 1286189 (D.N.J.))**

tion of sanctions based on Health Net's failure to search the e-mails of all employees for responsive documents. This Court will address the recommendation for sanctions in connection with its decision regarding the Rule 37/Integrity hearing and the briefing submitted in connection thereto.

Nothing herein limits further orders of the Magistrate Judge to search e-mails of other persons or other time periods. If Plaintiffs need to re-depose any witness after review of such emails, they may do so and Defendants shall bear the costs and attorneys fees of such depositions.

**IV. Appeal of Judge Shwartz's July 28, 2005 Order**

Plaintiffs have appealed Judge Shwartz's July 28, 2005 Order denying their request to supplement the report of their expert, Dr. Bernard Siskin, regarding the PHCS and MDR databases distributed by Ingenix and used by Health Net to calculate out-of-network reimbursements. Plaintiffs argue that Health Net intentionally withheld information regarding its use of MDR data in order to derail Plaintiffs' pursuit of third party discovery about the data, which is the subject of the supplemental report. Defendants counter that Plaintiffs had plenty of time to seek third party discovery about the Ingenix databases and that any supplemental report at this stage would prejudice Defendants, who would have altered their approach to the Ingenix depositions and who would now be restricted to challenging only the supplemental aspects of Dr. Siskin's report.

Defendants argue that Plaintiffs knew, in November and December 2003, that this Court was interested in the Ingenix databases, but did not serve third party subpoenas on Ingenix until October 2004. Prior to June 2004, however, Plaintiffs did not know that Health Net's California and Oregon plans used Ingenix's MDR database for determining out-of-network claims, despite the fact that Plaintiffs had specifically requested information from Health Net about its use of MDR data. In fact, at the class certification hearing on June 15, 2004, Health Net's counsel denied that the company's western plans used MDR data only to be contradicted ten days later when, in a court-ordered certification, Health Net disclosed that its western plans use the MDR database from Ingenix for processing out-of-network claims.

According to an e-mail from Robert McCartt, which was produced to Plaintiffs on August 10, 2005 in conjunction with the Special Master's review of Defendants' privilege logs, Health Net of California was using MDR data to calculate out-of-network reimbursements at least as early as January 2004. Yet Mr. McCartt neglected to mention this fact in his January 27, 2004 certification, leaving Plaintiffs in the dark until June 2004 when they sought Judge Shwartz's assistance in order to get a straight answer. Such evasive discovery practices are distressingly commonplace in this case and certainly could have delayed Plaintiffs' pursuit of third party discovery as to the MDR database.

**\*14** Absent surprise or bad faith, an expert may testify beyond the scope of his report. *See Bowersfield v. Suzuki Motor Corp.,* 151 F.Supp.2d 625, 631-32 (E.D.Pa.2001); *Fritz v. Consol. Rail Corp.,* Civ. A. No. 90-7530, 1992 WL 96285 at \*3 (E.D.Pa. Apr. 23, 1992) (citing *DeMarines v. KLM Royal Dutch Airlines,* 580 F.2d 1193 (3d Cir.1978)). In light of Defendants' misrepresentations this Court finds sufficient justification for allowing Plaintiffs to supplement the report of their expert, Dr. Bernard Siskin. This Court therefore reverses Judge Shwartz's Order and grants Plaintiffs' Application. In so ordering, this Court is not reopening discovery.

WHEREFORE IT IS on this 5th day of May, 2006,

ORDERED that, no later than May 19, 2006, Plaintiffs shall, consistent with the specific subject matter areas stated in this opinion, designate those documents in Defendants' privilege logs as to which Special Master Wolin determined that the attorney-client privilege or work product doctrine applies and as to which they seek to pierce those privileges under the crime-fraud exception; and similarly designate those sections of the March 17, 2005 hearing transcript that they believe may be disclosed under the crime-fraud exception; and it is further

ORDERED that once the Court has received the Plaintiffs' designated documents, the Court will decide, based on the volume of the documents submitted for review, whether the *in camera* review of the documents shall be conducted by a Magistrate Judge of this Court or shall be referred to the Special Master; and it is further

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy
Slip Copy, 2006 WL 1286189 (D.N.J.)
(Cite as: 2006 WL 1286189 (D.N.J.))

Page 13

ORDERED that Defendants shall produce the e-mails for the persons identified by this Court's February 28, 2006 Order no later than June 1, 2006; [FN12] and it is further

> FN12. The February 28th Order requires production of all e-mails related to the HIAA issue of outdated data including any e-mails that included, forwarded, attached or otherwise referred to other electronic data regarding HIAA, such as the spreadsheets and/or calculations of the First and Second Restitution amounts. If the electronic data attached to the e-mail has already been produced, it shall not be produced again, but its bates number shall be annotated onto the e-mail.

ORDERED that Judge Shwartz's March 9, 2006 Order is AFFIRMED; and it is further

ORDERED that Defendants' Motion on Short Notice for a stay of Judge Shwartz's March 9, 2006 Order is DENIED; and it is further

ORDERED that Defendants shall comply with Judge Shwartz's March 9, 2006 Order, as modified herein, with all deliberate speed and weekly on a rolling basis (as documents are located) and shall submit weekly reports to the Court detailing which tapes and e-mails have been restored, searched and produced, the number of persons working on such production, and the number of hours spent by each on the production, and the entire production shall be completed by July 15, 2006; and it is further

ORDERED that Judge Shwartz's July 28, 2005 Order denying Plaintiffs' request for leave to file a supplemental expert report of Bernard Siskin, Ph.D. is REVERSED; and it is further

ORDERED that Plaintiffs shall submit a supplemental report by their expert, Dr. Bernard Siskin, no later than June 15, 2006; and it is further

ORDERED that Judge Shwartz's August 31, 2005 Opinion and Order excluding certain defense witnesses for failure to disclose sufficiently the identity of those individuals pursuant to Fed.R.Civ.P. 26(a)(1)(A) is AFFIRMED; and it is further

*15 ORDERED that Judge Shwartz's October 17, 2005 Order granting sanctions against Defendants for spoliation is AFFIRMED; and it is further

ORDERED that Judge Shwartz's December 28, 2005 Order is AFFIRMED.

Slip Copy, 2006 WL 1286189 (D.N.J.)

**Motions, Pleadings and Filings (Back to top)**

• 2006 WL 1042382 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response to Health Net's Proposed Findings of Fact and Conclusions of Law for the Integrity/Rule 37 Hearing (Mar. 28, 2006)Original Image of this Document with Appendix (PDF)

• 2006 WL 1042383 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Plaintiffs' Proposed Findings of Fact and Conclusions of Law (Mar. 28, 2006)Original Image of this Document (PDF)

• 2006 WL 1042416 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response to Health Net's Proposed Findings of Fact and Conclusions of Law for the Integrity/Rule 37 Hearing (Mar. 28, 2006)Original Image of this Document with Appendix (PDF)

• 2006 WL 1042417 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Plaintiffs' Proposed Findings of Fact and Conclusions of Law (Mar. 28, 2006)Original Image of this Document (PDF)

• 2006 WL 653814 (Trial Motion, Memorandum and Affidavit) Health Net Defendants' Memorandum of Law in Opposition to Plaintiffs' Request for Sanctions Based on Spoliation of Documents (Feb. 21, 2006)

• 2006 WL 653855 (Trial Motion, Memorandum and Affidavit) Health Net Defendants' Memorandum of Law in Opposition to Plaintiffs' Request for Sanctions Based On Spoliation of Documents (Feb. 21, 2006)

• 2006 WL 653813 (Trial Motion, Memorandum and Affidavit) Health Net Defendants' Memorandum of Law in Support of Motion for Reconsideration of the Court's Order of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                                    Page 14
Slip Copy, 2006 WL 1286189 (D.N.J.)
**(Cite as: 2006 WL 1286189 (D.N.J.))**

January 30, 2006 (Feb. 14, 2006)

• 2006 WL 653854 (Trial Motion, Memorandum and Affidavit) Health Net Defendants' Memorandum of Law in Support of Motion for Reconsideration of the Court's Order of January 30, 2006 (Feb. 14, 2006)

• 2006 WL 653811 (Trial Motion, Memorandum and Affidavit) Defendants' Reply in Support of the Certification of Jay H. Calvert, Jr., Esq. (Feb. 10, 2006)

• 2006 WL 653853 (Trial Motion, Memorandum and Affidavit) Defendants' Reply in Support of the Certification of Jay H. Calvert, Jr., Esq. (Feb. 10, 2006)

• 2006 WL 381450 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Strike Privilege Logs Numbers 12 and 13 (Jan. 19, 2006)

• 2006 WL 381548 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Strike Privilege Logs Numbers 12 and 13 (Jan. 19, 2006)

• 2006 WL 381449 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Response to Health Net's Opposition to the Issuance of Sanctions Against Herve Gouraige, Esq., Pursuant to the Order of Magistrate Judge Shwartz Dated December 28, 2005 (Jan. 17, 2006)

• 2006 WL 381547 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Response to Health Net's Opposition to the Issuance of Sanctions Against Herve Gouraige, Esq., Pursuant to the Order of Magistrate Judge Shwartz Dated December 28, 2005 (Jan. 17, 2006)

• 2006 WL 381448 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Response to Calvert and Taylor Certifications (Jan. 12, 2006)

• 2006 WL 381546 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum In Response To Calvert And Taylor Certifications (Jan. 12, 2006)

• 2006 WL 381545 (Trial Motion, Memorandum and Affidavit) Memorandum in Response to Order to Show Cause Why Sanctions Should Not Be Imposed On Herve Gouraige, Esq. (Jan. 9, 2006)

• 2006 WL 381544 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion to Strike Privilege Logs 12 and 13 As Untimely (Jan. 5, 2006)

• 2005 WL 3522906 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Opposition to Defendants' Motion for Preclusion of Evidence (Nov. 28, 2005)

• 2005 WL 3522905 (Trial Motion, Memorandum and Affidavit) Defendants' Objections to the Special Master's November 14, 2005 Findings Relating to Selected Documents on Defendants' Privilege Log #11 (Nov. 16, 2005)

• 2005 WL 3522903 (Trial Motion, Memorandum and Affidavit) Memorandum of Law Regarding the Preclusion of Evidence (Nov. 15, 2005)

• 2005 WL 3522904 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Brief Opposing Health Net's Appeal of Special Master Wolin's Report & Recommendation Dated October 18, 2005 (Nov. 15, 2005)

• 2005 WL 3527797 (Trial Motion, Memorandum and Affidavit) Memorandum of Law Regarding the Preclusion of Evidence (Nov. 15, 2005)

• 2005 WL 3527798 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Brief Opposing Health Net's Appeal of Special Master Wolin's Report & Recommendation Dated October 18, 2005 (Nov. 15, 2005)

• 2005 WL 3522902 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Brief Opposing Health Net's Appeal of Judge Shwartz's Order Dated October 17, 2005 (Nov. 14, 2005)

• 2005 WL 3527796 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Brief Opposing Health Net's Appeal of Judge Shwartz's Order Dated October 17, 2005 (Nov. 14, 2005)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                      Page 15
Slip Copy, 2006 WL 1286189 (D.N.J.)
**(Cite as: 2006 WL 1286189 (D.N.J.))**

• 2005 WL 3522899 (Trial Motion, Memorandum and Affi-
davit) Defendants' Objections to the Special Master's Octo-
ber 18, 2005 Report and Recommendation (Nov. 7, 2005)

• 2005 WL 3522900 (Trial Motion, Memorandum and Affi-
davit) Plaintiffs' Reply Memorandum of Law in Support of
Appeal of Magistrate Judge Shwartz's Order Dated Septem-
ber 26, 2005 Precluding Plaintiffs from Asserting Certain
Evidentiary Arguments at Trial that were the Subject of in
Limine Motions Listed in the Final Pretrial Order (Nov. 7,
2005)

• 2005 WL 3522901 (Trial Motion, Memorandum and Affi-
davit) Plaintiffs' Reply Memorandum of Law in Support of
Appeal of Magistrate Judge Shwartz's Order Dated Septem-
ber 26, 2005 Precluding Plaintiffs from Asserting Certain
Evidentiary Arguments at Trial that were the Subject of in
Limine Motions Listed in the Final Pretrial Order (Nov. 7,
2005)

• 2005 WL 3527795 (Trial Motion, Memorandum and Affi-
davit) Plaintiffs' Reply Memorandum of Law in Support of
Appeal of Magistrate Judge Shwartz's Order Dated Septem-
ber 26, 2005 Precluding Plaintiffs from Asserting Certain
Evidentiary Arguments At Trial That Were the Subject of in
Limine Motions Listed in the Final Pretrial Order (Nov. 7,
2005)

• 2005 WL 3172090 (Trial Motion, Memorandum and Affi-
davit) Defendants' Memorandum of Law in Opposition to
Plaintiffs' Appeal of Magistrate Judge Schwartz's Order
Dated September 26, 2005 (Oct. 31, 2005)

• 2005 WL 3172461 (Trial Motion, Memorandum and Affi-
davit) Defendants' Memorandum of Law in Opposition to
Plaintiffs' Appeal of Magistrate Judge Schwartz's Order
Dated September 26, 2005 (Oct. 31, 2005)

• 2005 WL 3172453 (Trial Motion, Memorandum and Affi-
davit) Reply Brief in Support of Appeal of Order Dated Au-
gust 31, 2005 Excluding Defense Witnesses (Oct. 11, 2005)

• 2005 WL 2898967 (Trial Motion, Memorandum and Affi-
davit) Plaintiffs' Brief Opposing Health Net's Appeal of
Judge Shwartz's Order Dated August 31, 2005 Striking Trial
Witnesse (Sep. 28, 2005)

• 2005 WL 2899189 (Trial Motion, Memorandum and Affi-
davit) Plaintiffs' Brief Opposing Health Net's Appeal of
Judge Shwartz's Order Dated August 31, 2005 Striking Trial
Witnesses (Sep. 28, 2005)

• 2005 WL 2898965 (Trial Motion, Memorandum and Affi-
davit) Plaintiffs' Fimemorandum of Law in Opposition to
Health Net's Motion to Preclude Plaintiffs' Objections to
Certain Evidence (Sep. 21, 2005)

• 2005 WL 2899187 (Trial Motion, Memorandum and Affi-
davit) Plaintiffs' Memorandum of Law in Opposition to
Health Net's Motion to Preclude Plaintiffs' Objections to
Certain Evidence (Sep. 21, 2005)

• 2005 WL 2899185 (Trial Motion, Memorandum and Affi-
davit) Plaintiffs' Reply Brief in Further Support of Plaintiffs'
Integrity Motion (Sep. 19, 2005)

• 2005 WL 2898957 (Trial Motion, Memorandum and Affi-
davit) Health Net Defendants' Memorandum of Law In Re-
sponse to Plaintiffs' Request for A Hearing Under the Inher-
ent Power of the Court and Under Fed. R. Civ. P. 37 (Sep.
12, 2005)

• 2005 WL 2899183 (Trial Motion, Memorandum and Affi-
davit) Health Net Defendants' Memorandum of Law in Re-
sponse to Plaintiffs' Request for A Hearing Under the Inher-
ent Power of the Court and Under Fed. R. Civ. P. 37 (Sep.
12, 2005)

• 2005 WL 2511360 (Trial Motion, Memorandum and Affi-
davit) Defendants' Memorandum of Law in Opposition to
Plaintiffs' Appeal of Magistrate Judge Shwartz's Order
Entered July 28,2005 Denying Plaintiffs' Request for Leave
to File a Supplemental Expert Report (Aug. 29, 2005)

• 2005 WL 2511002 (Trial Motion, Memorandum and Affi-
davit) Plaintiffs' Memorandum of Law in Opposition to
Health Net's in Limine Motions (Aug. 22, 2005)

• 2005 WL 2511007 (Trial Motion, Memorandum and Affi-
davit) Defendants' Trial Brief (Aug. 22, 2005)

• 2005 WL 2511010 (Trial Motion, Memorandum and Affi-
davit) Plaintiffs' Trial Memorandum of Law (Aug. 22, 2005)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                           Page 16
Slip Copy, 2006 WL 1286189 (D.N.J.)
(Cite as: 2006 WL 1286189 (D.N.J.))

• 2005 WL 2511346 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Opposition to Health Net's in Limine Motions (Aug. 22, 2005)

• 2005 WL 2511349 (Trial Motion, Memorandum and Affidavit) Defendants' Trial Brief (Aug. 22, 2005)

• 2005 WL 2511355 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Trial Memorandum of Law (Aug. 22, 2005)

• 2005 WL 2510921 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of Their Motion in Limine Excluding Evidence Regarding the Nondisclosure of the USE of 1998 Hiaa Databases and Other Onet Reimbursement Criteria (Aug. 8, 2005)

• 2005 WL 2510930 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of Motion in Limine Excluding Evidence Regarding Alleged Flaws in the Hiaa Databases (Aug. 8, 2005)

• 2005 WL 2510932 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of Their Motion in Limine to Exclude Evidence Regarding the Alleged Inadequacy of Summary Plan Descriptions (Aug. 8, 2005)

• 2005 WL 2510939 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law In Support of Their Motion In Limine to Exclude Evidence of the Selection of 1998 Hiaa Databases for Onet Reimbursements (Aug. 8, 2005)

• 2005 WL 2510948 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of Their Motion in Limine to Exclude Evidence That Either A Summary of Benefits, A Schedule of Benefits, An Explanation of Benefits, or An Evidence of Coverage is A Summary Plan Description (Aug. 8, 2005)

• 2005 WL 2510953 (Trial Motion, Memorandum and Affidavit) Health Net Defendants' Memorandum of Law in Support of Motion Inlimine Excluding Evidence of the Amount of Any Disgorgement Allegedly Owed to Plaintiffs Under Erisa Section 502(a)(3) (Aug. 8, 2005)

• 2005 WL 2510963 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of Motion in Limine Excluding Evidence Relating to Any Claim Assigned By, or Released for the Benefit of, A Class Member (Aug. 8, 2005)

• 2005 WL 2510970 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of Motion in Limine Excluding Evidence Relating to the Claim of Any Class Member Who Did Not Pay A Balance-Bill from his or Her Health Care Provider (Aug. 8, 2005)

• 2005 WL 2510975 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of Their Motion in Limine to Exclude Evidence Regarding "Float" (Aug. 8, 2005)

• 2005 WL 2510978 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of Motion In Limine Excluding Evidence Regarding Time-Barred Claims for Underpayment of Benefits and Breach of Fiduciary Duty (Aug. 8, 2005)

• 2005 WL 2510981 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of Motion in Limine Limiting or Excluding Evidence of Subsequent Remedial Measures (Aug. 8, 2005)

• 2005 WL 2510992 (Trial Motion, Memorandum and Affidavit) Health Net Defendants' Memorandum of Law in Support of A Motion Inlimine Limiting or Excluding Certain Evidence Regarding Matters Within the Jurisdiction of State Regulatory Agencies (Aug. 8, 2005)

• 2005 WL 2510999 (Trial Motion, Memorandum and Affidavit) Health Net Defendants' Memorandum of Law in support of Motion Inlimine Limiting or Excluding Opinion Testimony of Lay Witnesses (Aug. 8, 2005)

• 2005 WL 2511299 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of Their Motion in Limine Excluding Evidence Regarding the Nondisclosure of the USE of 1998 Hiaa Databases and Other Onet Reimbursement Criteria (Aug. 8, 2005)

• 2005 WL 2511303 (Trial Motion, Memorandum and Affi-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                      Page 17
Slip Copy, 2006 WL 1286189 (D.N.J.)
(Cite as: 2006 WL 1286189 (D.N.J.))

davit) Defendant' Memorandum of Law in Support of Motion in Limine Excluding Evidence Regarding Alleged Flaws in the Hiaa Databases (Aug. 8, 2005)

• 2005 WL 2511306 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of Their Motion in Limine to Exclude Evidence Regarding the Alleged Inadequacy of Summary Plan Descriptions (Aug. 8, 2005)

• 2005 WL 2511311 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of Their Motion in Limine to Exclude Evidence of the Selection of 1998 Hiaa Databases for Onet Reimbursements (Aug. 8, 2005)

• 2005 WL 2511316 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of Their Motion in Limine to Exclude Evidence That Either A Summary of Benefits, A Schedule of Benefits, an Explanation of Benefits, or an Evidence of Coverage is A Summary Plan Description (Aug. 8, 2005)

• 2005 WL 2511318 (Trial Motion, Memorandum and Affidavit) Health Net Defendants' Memorandum of Law in Support of Motion in Limine Excluding Evidence of the Amount of any Disgorgement Allegedly Owed to Plaintiffs Under Erisa Section 502(a)(3) (Aug. 8, 2005)

• 2005 WL 2511322 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of Motion in Limine Excluding Evidence Relating to Any Claim Assigned By, or Released for the Benefit of, A Class Member (Aug. 8, 2005)

• 2005 WL 2511326 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of Motion in Limine Excluding Evidence Relating to the Claim of Any Class Member Who Did Not Pay A Balance-Bill From His or Her Health Care Provider (Aug. 8, 2005)

• 2005 WL 2511327 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of Their Motion in Limine to Exclude Evidence Regarding "FLoat" (Aug. 8, 2005)

• 2005 WL 2511332 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of Motion in Limine Excluding Evidence Regarding Time-Barred Claims for Underpayment of Benefits and Breach of Fiduciary Duty (Aug. 8, 2005)

• 2005 WL 2511334 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of Motion in Limine Limiting or Excluding Evidence of Subsequent Remedial Measures (Aug. 8, 2005)

• 2005 WL 2511339 (Trial Motion, Memorandum and Affidavit) Health Net Defendants' Memorandum of Law in Support of a Motion in Limine Limiting or Excluding Certain Evidence Regarding Matters Within the Jurisdiction of State Regulatory Agencies (Aug. 8, 2005)

• 2005 WL 2511341 (Trial Motion, Memorandum and Affidavit) Health Net Defendants' Memorandum of Law in Support of Motion in Limine Limiting or Excluding Opinion Testimony of Lay Witnesses (Aug. 8, 2005)

• 2005 WL 1923700 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply Memorandum of Law in Further Support of Plaintiffs' Cross-motion for Summary Judgment Finding that Health Net, Inc. Is An Erisa Fiduciary (Jul. 5, 2005)

• 2005 WL 1923701 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Defendants' Motion for Summary Judgment (Jul. 5, 2005)

• 2005 WL 1923702 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Further Support of Plaintiffs' Motion for Summary Judgment as to the Appointment of a Monitor and Other Relief (Jul. 5, 2005)

• 2005 WL 2098975 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Defendants' Motion for Summary Judgment (Jul. 5, 2005)

• 2005 WL 1923697 (Trial Motion, Memorandum and Affidavit) Defendants' Opposition to Plaintiffs' Motion for Summary Judgment on Appointment of A Monitor and Other Relief Against Health Net (Jun. 27, 2005)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy
Slip Copy, 2006 WL 1286189 (D.N.J.)
(Cite as: 2006 WL 1286189 (D.N.J.))

• 2005 WL 1923699 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment (Jun. 27, 2005)

• 2005 WL 1585134 (Trial Motion, Memorandum and Affidavit) Memorandum Of Law In Support Of Defendants' Motion For Summary Judgment (Jun. 10, 2005)

• 2005 WL 1585136 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Supplemental Memorandum of Law in Opposition to Health Net, Inc.'s Motion for Summary Judgment and in Support of Plaintiffs' Cross-Motion for Summary Judgment Finding That Health Net, Inc. is an Erisa Fiduciary (Jun. 10, 2005)

• 2005 WL 1585138 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum Of Law In Support Of Plaintiffs' Motion For Summary Judgment On Appointment Of A Monitor And Other Relief Against Health Net (Jun. 10, 2005)

• 2005 WL 1585139 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Supplemental Memorandum Of Law In Opposition To Health Net, Inc.'s Motion For Summary Judgment And In Support Of Plaintiffs' Cross-motion For Summary Judgment Finding That Health Net, Inc. Is An Erisa Fiduciary (Jun. 10, 2005)

• 2005 WL 1585129 (Trial Motion, Memorandum and Affidavit) The Health Net Defendants' Brief in Response to the Court's May 18, 2005 Order (May 31, 2005)

• 2005 WL 1363047 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Opposition to Health Net's Appeal of Magistrate Judge Shwartz's Order Dated March 24, 2005 (May 4, 2005)

• 2005 WL 1363046 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Opposition to Health Net's Appeal of Magistrate Judge Shwartz's Sanctions Orders Dated February 16, 2005 and March 1, 2005 (Mar. 14, 2005)

• 2005 WL 3781755 (Trial Motion, Memorandum and Affidavit) Health Net Defendants' Response to Plaintiffs' Statement Bearing on the Crime-Fraud Exception (Jan. 13, 2005)

• 2005 WL 3781759 (Trial Motion, Memorandum and Affidavit) Health Net Defendants' Response to Plaintiffs' Statement Bearing on the Crime-Fraud Exception (Jan. 13, 2005)

• 2005 WL 1363045 (Trial Pleading) Second Amended Class Complaint (Jan. 10, 2005)

• 2005 WL 3781754 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of A Motion to Strike Plaintiffs' January 2 Filing Entitled "Memorandum of Law on Health Net's Justification for Its Discovery Abuse Consisting of Concealment of Documents" (Jan. 10, 2005)

• 2005 WL 3781758 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of A Motion to Strike Plaintiffs' January 2 Filing Entitled "Memorandum of Law On Health Net's Justification For Its Discovery Abuse Consisting of Concealment of Documents" (Jan. 10, 2005)

• 2005 WL 3781753 (Trial Motion, Memorandum and Affidavit) Health Net Defendants' Memorandum of Law in Response to Plaintiffs' Motion in Further Support of Application for A Discovery Monitor and Default (Jan. 5, 2005)

• 2005 WL 3781757 (Trial Motion, Memorandum and Affidavit) Health Net Defendants' Memorandum of Law In Response To Plaintiffs' Motion in Further Support of Application For A Discovery Monitor and Default (Jan. 5, 2005)

• 2005 WL 2898963 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply Brief in Further Support of Plaintiffs' Integrity Motion (2005)

• 2004 WL 3373278 (Trial Motion, Memorandum and Affidavit) Defendant Health Net, Inc.'s Reply Memorandum of Law in Further Support of Its Motion for Summary Judgment (Oct. 11, 2004)

• 2004 WL 3373279 (Trial Motion, Memorandum and Affidavit) Defendants Health Net Inc., Health Net of the Northeast, Inc. and Health Net of New Jersey, Inc.'s Reply Memorandum of Law in Further Support of Their Motion to Stay Proceedings (Oct. 11, 2004)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                   Page 19
Slip Copy, 2006 WL 1286189 (D.N.J.)
(Cite as: 2006 WL 1286189 (D.N.J.))

• 2004 WL 3373274 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Opposition to the Motion by Defendants Health Net Inc., Health Net of the Northeast, Inc. and Health Net of New Jersey, Inc. to Stay Proceedings (Sep. 28, 2004)

• 2004 WL 3658997 (Trial Motion, Memorandum and Affidavit) Defendant Health Net, Inc.'s Memorandum of Law in Support of Motion for Summary Judgment (Sep. 3, 2004)

• 2004 WL 3659537 (Trial Pleading) Answer to First Amended Complaint (Aug. 31, 2004)

• 2004 WL 3658995 (Trial Motion, Memorandum and Affidavit) Defendants Reply Brief in Further Support of Their Motion for Recusal and to Stay Proceedings (Jun. 25, 2004)

• 2004 WL 3658996 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Recusal and to Stay Proceedings (Jun. 22, 2004)

• 2004 WL 3373270 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law on Behalf of Plaintiffs Renee McCoy and Zev and Linda Wachtel in Further Support of Plaintiffs' Motion for Class Certification (May 3, 2004)

• 2004 WL 3658994 (Trial Motion, Memorandum and Affidavit) Defendants' Brief in Opposition to Plaintiff's Motion for Class Certification (Apr. 13, 2004)

• 2004 WL 3658993 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Support of Consolidation for Trial (Feb. 18, 2004)

• 2004 WL 3658992 (Trial Motion, Memorandum and Affidavit) Defendants Health Net, Inc., Health Net of the Northeast, Inc. and Health Net of New Jersey, Inc.'s Memorandum of Law in Opposition to the Plaintiffs' Motion for Partial Summary Judgment (Jan. 15, 2004)

• 2:03cv01801 (Docket) (Apr. 23, 2003)

• 2003 WL 24093895 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Opposition to the

Motion by Defendant Health Net, Inc. for Summary Judgment (2003)

• 2003 WL 24288729 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Opposition to Health Net's Appeal of Magistrate Judge Shwartz's Order Dated December 28, 2005, and in Further Support of Plaintiffs' Motion for Sanctions for Spoliation of Documents and Discovery Abuse (2003)

• 2003 WL 24288730 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Opposition to Health Net's Motion for Reconsideration of the Court's Order of January 30, 2006 (2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2006, I hand delivered and electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will send notification of such filing(s) to the following:

Pauline K. Morgan, Esq.
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899

Joseph A. Rosenthal , Esq.
ROSENTHAL, MONHAIT, GROSS &
GODDESS, P.A.
1401 Mellon Bank Center
P.O. Box 1070
Wilmington, DE 19801

I hereby certify that on June 7, 2006, I have sent by Federal Express the foregoing document to the following non-registered participants:

John Amato, Esq.
Hahn & Hessen LLP
488 Madison Avenue
New York, NY 10022

George J. Wade, Esq.
Daniel Schimmel, Esq.
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022

Anne Shea Gaza (#4093)
Gaza@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700